## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **MICHAEL O'NEIL** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **Vs.** | ) | **C.A. 23-cv-70** |
| | ) | |
| **PETER F. NERONHA, in his official capacity as** | ) | |
| **Attorney General of the State of Rhode Island, and** | ) | |
| **THE STATE OF RHODE ISLAND** | ) | |
| **Defendants** | ) | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION
### FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Defendants wrongfully denied Plaintiff Michael O'Neil a State-issued concealed carry weapons (CCW) permit based on his supposed lack of "need" for one. This denial violates the Second Amendment of the United States Constitution as set forth in the Supreme Court's decision in New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S.Ct. 2111 (2022) ("Bruen"). Moreover, Defendants based their denial on a statute, R.I.Gen.L. 11-47-18(a), and a set of their own guidelines that violate the Due Process Clause of the Fourteenth Amendment because the statute and the guidelines are void for vagueness and overbroad and the Attorney General's application of them is arbitrary and capricious.

### STATEMENT OF FACTS

O'Neil is over the age of 21, he has not been convicted of any felony, he is not a fugitive from justice, he is not in community confinement or otherwise subject to electronic surveillance, he is not mentally incompetent, a drug addict or a drunkard, he is not an immigrant who entered or remained in the country illegally, and he has obtained a so-called "blue card" from the Rhode Island Department of Environmental Management. (Verified Complaint, ¶ 1). In other words,

O'Neil meets all the statutory requirements under the Rhode Island Firearms Act, R.I.Gen.L. § 11-47-1, et seq., to possess firearms, including handguns. (Id.).

Under the Firearms Act, both the Rhode Island Attorney General and municipalities may issue CCW permits, §§ 11-47-18 and 11-47-11, respectively. (Id., ¶ 2). The provision by which municipalities may issue CCW permits states, in part:

> The licensing authorities of any city or town **shall**, upon application of any person twenty-one (21) years of age or over having a bona fide residence or place of business within the city or town, or of any person twenty-one (21) years of age or over having a bona fide residence within the United States and a license and permit to carry a pistol or revolver concealed upon his or her person issued by the authorities of any other state or subdivision of the United States, issue a license or permit to the person to carry concealed upon his or her person a pistol or revolver everywhere within this state for four (4) years from date of issue, if it appears that the applicant has good reason to fear an injury to his or her person or property or has any other proper reason for carrying a pistol or revolver, and that he or she is a suitable person to be so licensed." (emphasis added).

R.I.Gen.L. § 11-47-11(a). The Section under which the Attorney General issues such permits ("State permit") states, in part:

> The attorney general **may** issue a license or permit to any person twenty-one (21) years of age or over to carry a pistol or revolver, whether concealed or not, upon his or her person **upon a proper showing of need**, subject to the provisions of §§ 11-47-12 and 11-47-15; that license or permit may be issued notwithstanding the provisions of § 11-47-7." (emphasis added).

R.I.Gen.L. §11-47-18(a). The Firearms Act does not define "proper showing" or "need."

The Attorney General has created a set of factors in his "Weapons Carry Permit Packet" (Exhibit A to Plaintiff's Complaint) which his Department purportedly uses to determine whether an applicant has made "a proper showing of need." These factors include:

(1) Has the applicant demonstrated a specific articulable risk to life, limb or property? If so, has the applicant demonstrated how a pistol permit will decrease the risk?

(2) Can the applicant readily alter his or her conduct, or undertake reasonable measures other than carrying a loaded firearm, to decrease the danger to life, limb or property?

(3) Are there means of protection available to the applicant other than the possession of a loaded firearm that will alleviate the risk to his or her person or property?

(4) Has the applicant demonstrated the skill, training and ability to properly use a firearm in accordance with Rhode Island laws?

(5) Has the applicant presented a plan to properly secure the firearm so that it does not fall into unauthorized hands?

(6) How greatly will the possession of a loaded firearm by the applicant increase the risk of harm to the applicant or to the public?

(7) Has the applicant demonstrated that he or she will not use the firearm for an unlawful or improper purpose, and that he or she has not used a firearm for an unlawful or improper purpose in the past?

(8) Does past unlawful, dangerous, or violent conduct of the applicant justify denial at the Attorney General's discretion even if it is not sufficient to disqualify the applicant as a matter of law from possessing a firearm?

(9) Has the applicant been issued a protective order pursuant to chapter 15-5, chapter 15-15, or chapter 8-8.1 of the general laws?

(10) Any and all other factors deemed lawful and appropriate by the Attorney General to demonstrate that the applicant is or is not a person suitable to possess a loaded firearm in public.

(Id., ¶ 11, Exhibit A). However, the information packet also states there is no "set formula or criteria to limit or restrict the Attorney General's decision to issue or deny a pistol permit." (Id.).

3

O'Neil had applied for and had been granted a State CCW permit every four years since 2013. (Id., ¶ 13). He has in the past also been granted CCW permits by the Town of Johnston and the City of Warwick. (Id., ¶ 14).

On October 25, 2020, O'Neil filed an application with the Rhode Island Department of the Attorney General to renew his State CCW permit. (Id., ¶ 15, Exhibit B). On January 25, 2021, the Attorney General's office denied his application, stating the Attorney General had "broad discretion to issue a permit to carry a pistol or revolver,"[1] and "you have not provided a proper showing of need for a permit to be issued" because O'Neil already had a concealed carry permit from the City of Warwick which "provides you with the ability to lawfully carry a pistol or revolver in the State of Rhode Island." (Id., ¶ 16, Exhibit C). However, the denial otherwise failed to articulate any reason set forth in the Defendants' factors for denial.

On March 10, 2021, O'Neil, along with counsel, met via telephone, with representatives from the Attorney General on his appeal and requested reconsideration of the denial. During that meeting, O'Neil's counsel articulated reasons for having the State permit in addition to the municipal permit, including self-defense, as well as that the State permit allows the holder to obtain concealed carry permits in other states, and that having a second permit provides a "backup" in case the municipal permit expires prior to renewal. (Id., ¶ 17).[2] On April 1, 2021, the Attorney General indicated that while O'Neil had cited self-defense as a reason for the permit, as well as the other reasons, the "need" was insufficient, and decided "in its broad discretion to issue a

---

[1] The letter cited Mosby v. Devine, 851 A.2d 1031 (R.I. 2004), for this position. Notably, however, that decision found that the constitutional right to "bear arms" relates exclusively to military service." Id. at 1041. That is an interpretation the Supreme Court has squarely rejected. Bruen, 142 S.Ct at 2134. Accordingly, the decision is of limited precedential value in this case.

[2] The Firearms Act provides that a violation of its provisions, including the CCW permit requirements, carries a criminal penalty of up to five years in prison and a $1,000 fine. R.I.Gen.L. § 11-47-26.

4

permit…to deny your application due to the fact you have not provided a proper showing of need…" (Id., ¶ 18, Exhibit D).

On July 8, 2021, O'Neil filed a motion for reconsideration of this denial. (Id., ¶ 19, Exhibit E). On July 21, 2021, Defendants denied reconsideration of the denial for substantially the same reasons as stated previously. (Id., ¶ 20, Exhibit F). The letter referenced the factors set forth in the Weapons Carry Permit Packet and said "[t]hese factors clearly articulate this Office's general authority to issue a permit only upon a proper showing of need." However, the basis of the denial was not a factor set forth in the Packet.

On August 9, 2021, O'Neil filed a petition for writ of certiorari with the Rhode Island Supreme Court seeking review of the Defendants' denial. (Id., ¶ 21, Exhibit G). On December 17, 2021, the Supreme Court denied O'Neil's petition. (Id., ¶ 22, Exhibit H).

O'Neil has a CCW permit from other states. He is reasonably concerned that the denial of his application by Defendants will prejudice his ability to renew those other permits or obtain others as concealed carry permit applications typically ask whether the applicant has ever had an application denied elsewhere. (Id., ¶ 23).

## STANDARD OF REVIEW

The relevant standard of review to obtain a preliminary injunction includes the burden of a government restriction on O'Neil's constitutional rights. To obtain a TRO or preliminary injunction, O'Neil must demonstrate: (a) he has a likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the hardship if no injunction issues as contrasted with the hardship to the non-moving party if enjoined; and (4) the effect, if any, of the court's ruling on the public interest. Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); Harris v. Wall, 217 F.Supp.3d 541, 552-53 (D.R.I. 2016).

"The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Services, Inc. v. Sprintcom, Inc., 287 F.3d 1, 8-9 (1st Cir. 2002). Additionally, Plaintiff must demonstrate than the injury "cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005).

"Interim injunctive relief is typically used to 'preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrong.'" Harris v. Wall, 217 F.Supp. 3d at 553, quoting Letourneau v. Aul, No. CA 14-421L, 2015 WL 5167854, at *2 (D.R.I. Sept. 3, 2015). Here, Plaintiff seeks to maintain the status quo of retaining the CCW permit that Defendant previously issued.

The infringement of individual freedoms guaranteed under the Bill of Rights constitutes an irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); Harris v. Wall, 217 F.Supp.3d at 560 ("[T]he loss of religious freedom…standing alone—is sufficient to show irreparable harm and…the protection of religious practice is an important public interest.");[3] Boland v. Banta, SACV 22-01421, 2023 WL 2588565 at *9 (C.D.Cal. Mar. 20, 2023) (holding that a violation of Second Amendment rights is an irreparable injury and enjoining a California statute which requires certain safety features on handguns); Spencer v. Nigrelli, No. 22-

---

[3] O'Neil cites to First Amendment precedent because in Bruen and in District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court analogized Second Amendment analysis to First Amendment analysis numerous times. See, Bruen, 142 S.Ct. at 2130, 2132, 2138, 2156; Heller, 554 U.S. at 582, 595, 606, 618, 634-35.

6

CV-6486, 2022 WL 17985966 at *13 (W.D.N.Y. Dec. 29, 2022) (holding that an infringement of Second Amendment rights is an irreparable injury and enjoining a New York statute that makes it a felony for any CCW license holder to possess a firearm in a place of worship).

## ARGUMENT

I.    **Plaintiff has a Likelihood of Success on the Merits**

A.  **Defendants May Not Condition the Renewal of a CCW On An Undefined and Non-Historical Showing of "Need"**

Defendants may not condition the renewal of O'Neil's CCW permit on a showing of "need" as set forth in § 11-47-18(a) and in the Weapons Carry Permit Packet. New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S.Ct. 2111, 2156 (2022). In Bruen, two residents of New York applied to the New York State Police for CCW permits. Both cited a general desire for self-defense. The state police denied their application stating they had failed to show "proper cause" as required by a state statute. The statute did not define "proper cause," but New York courts had held it means the applicant can "demonstrate a special need for self-protection distinguishable from that of the general community." Id. at 2123, citing, In re Klenosky, 75 App.Div.2d 793, 428 N.Y.S.2d 256, 257 (1980). The Supreme Court characterized the "special need" standard as "demanding." Id. The Court noted that judicial review of a denial of an application was limited, and the denial would be upheld if there was any "rational basis for it." Id., citing In re Kaplan, 249 App.Div.2d 199, 201, 673 N.Y.S.2d 66, 68 (1998).

The Court commented that New York was among a small minority of states that gave their officials discretion to deny CCW permits even when the applicant meets the statutory criteria, so-called "may issue" states. Id. at 2123-24. The Court said that by its count, forty-three states were "shall issue" jurisdictions "where authorities must issue concealed carry licenses where authorities satisfy certain threshold requirements, without granting licensing officials discretion to deny

licenses based on a perceived lack of need or suitability." (emphasis added). Id. at 2123. The Court noted that while Rhode Island and two other states have discretionary criteria, they "appear to operate like 'shall issue' jurisdictions." Id. at 2124, n. 1, citing R.I.Gen.L. § 11-47-11 and Gadomski v. Tavares, 113 A.3d 387, 392 (R.I. 2015). In Gadomski, the Court said: "Demonstration of a proper showing of need, which is a requirement under § 11-47-18, is not a component of § 11-47-11" and it overturned the City of East Providence's denial of a CCW permit. Id.

The Supreme Court described that since its decisions in District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. Chicago, 561 U.S. 742 (2010), the courts of appeal had developed a two-step analysis in which governments could justify their regulations of firearms by showing either that the "regulated activity fall[s] outside the scope of the [Second Amendment] right as originally understand" or that the "regulation is 'substantially related to the achievement of an important governmental interest.'" Id. at 2126. The Court rejected the second step and said "[i]nstead the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 2127.

The Court proceeded to review in depth that historical tradition. It began by commenting that "Heller and McDonald expressly rejected the application of any 'judge-empowering' 'interest-balancing inquiry' that 'asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests.'" Id. at 2129, quoting Heller, 554 U.S. at 634 (Breyer, J., dissenting). The Court said: "Heller further confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry…upon the person or in the clothing or in a pocket, for the purpose…of being armed and ready for offensive or defensive action in a case of conflict with another person.'" Id. at 2134,

quoting <u>Heller</u>, 554 U.S. at 584.  After considering various state law limitations on either public carry or concealed carry the Court said:

> The historical evidence from antebellum America does demonstrate that *the manner* of public carry was subject to reasonable regulation.  Under the common law, individuals could not carry deadly weapons in a manner likely to terrorize others.  Similarly, although surety statues did not directly restrict public carry, they did provide financial incentives for responsible arms carrying.  Finally, States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly.  (emphasis original).

<u>Id.</u> at 2150. The Court concluded that New York's statutory scheme was unconstitutional because it gave regulatory authorities discretion.  <u>Id.</u> at 2156.  Notably, Rhode Island requires that a person have the State CCW permit for any open, public carry of firearms.  R.I.Gen.L. § 11-47-18(a).  Thus, it does not distinguish between the manner of public carry in its State-issued CCW requirement.

Accordingly, the Attorney General's denial of O'Neil's application would be unconstitutional unless the statutory scheme by which municipalities "shall issue" CCW permits under § 11-47-11 fulfills the State's constitutional obligation and allows the Attorney General the unbridled discretion he claims to deny permits under § 11-47-18.  But, in one sense, no concealed carry applicant under § 11-47-18 can ever show a "need" because he or she always has the option to apply for a permit from a municipality under § 11-47-11.  Under the Defendants' logic, then, the Attorney General retains unbridled discretion to deny permits for any reason whatsoever.  But, such unbridled discretion was precisely what <u>Bruen</u> rejects.  Further, this interpretation renders Section 11-47-18 completely unnecessary. However, the Rhode Island Supreme Court has held that a statute should not be interpreted to render it "mere surplusage."  See, <u>In re Harrison</u>, 992 A.2d 990, 994 (R.I. 2010), quoting, <u>State v. Clark</u>, 974 A.2d 558, 572 (R.I. 2009) (quoting <u>State v. DeMagistris</u>, 714 A.2d 567, 573 (R.I. 1998) ("no construction of a statute should be adopted that would demote any significant phrase or clause to mere surplusage.").

Further, there are several reasons why it is advantageous for a person to have both the State permit and the municipal permit. Rhode Island does not allow any open carry of firearms unless the person has a State-issued permit. R.I.Gen.L. § 11-47-18. The municipal carry permit only allows for concealed carry. R.I.Gen.L. § 11-47-11. There is a "waiting period" for the sale of concealable weapons under R.I.Gen.L. § 11-47-35.1 which applies to individuals who possess a municipal permit but not those who have a State permit. As O'Neil told the Attorney General's staff during their telephonic meeting on March 10, 2021, having a CCW permit issued by the State means he can get a CCW permit in other states, such as Oklahoma, Mississippi, and Arkansas, just to name a few. See, 21 Okla.St.Ann. § 1290.26; 22 Miss.Admin.Code Pt. 19, R.09; Office of the Attorney General, Ark.Op.Atty.Gen. No. 98-083, 1998 WL 293270 (Ark.A.G. May 20, 1998), respectively. Finally, if one permit expires before it is renewed, a person who holds both permits is protected from potential criminal liability of up to five years in prison and a $1,000 fine. R.I.Gen.L. § 11-47-26.

Further, O'Neil suggests the Court consider the practical ramifications of Defendants' position. First, even if the Attorney General's discretion is limited to those instances when the applicant already has a municipal permit, it still means that the Attorney General can deny a permit to a person who had already been determined by a municipality to be a "suitable person" to have a permit but cannot deny a permit to another person who has not obtained a permit from a municipality. That makes no sense. Moreover, it is simply a coincidence that O'Neil has a municipal CCW permit. If he did not, Defendants would clearly be required to issue him one.

10

Second, the Defendants' position also means that Rhode Island's smallest towns, such as New Shoreham, Little Compton, and Jamestown,[4] with the smallest police departments,[5] can be required to shoulder the responsibility of determining, pursuant to <u>Bruen</u>, whether a person from anywhere in the United States, is entitled to a Rhode lsland CCW permit that would allow that person to engage in concealed carry of a handgun on the streets of Providence.  By comparison, in 2022, the Attorney General had a $38.7-million budget and a staff of 247 full-time employees[6] but can defer, and is differing, its responsibility to those towns.

These ramifications might be literally correct under the strict language of §§ 11-47-11 and 11-47-18, but they are highly irrational. The General Assembly, the Rhode Island Supreme Court, and this Court have said that Rhode Island statutes should not be interpreted to lead to absurd results.  See, R.I.Gen.L. § 43-3-2; <u>O'Neil v. Neronha</u>, 594 F.Supp.3d 463, 468 (D.R.I. 2022); <u>Mitola v. Providence Public Buildings Authority</u>, 273 A.3d 618, 627 (R.I. 2022), quoting <u>Generation Realty, LLC v. Catanzaro</u>, 21 A.3d 253, 259 (R.I. 2011) (quoting <u>Kaya v. Partington</u>, 681 A2d 256, 261 (R.I. 1996) ("[U]nder no circumstances will this Court 'construe a statute to reach an absurd result.'")).

Finally, while Defendants' requirement of a "proper showing of need" under § 11-47-18(a) is unconstitutional under the plain holding of <u>Bruen</u>, even if O'Neil had to make a showing of need

---

[4] These Towns have permanent populations of 1,007, 3,600, and 5,531, respectively, <u>https://www.rhodeisland-demographics.com/cities_by_population</u>.

[5] Based on information on the internet, it appears the New Shoreham Police Department has approximately 17 full- and part-time employees, including civilians; the Little Compton Police Department has 17 full- and part-time employees; and the Jamestown Police Department has 20 full-time employees.

[6]    <u>https://www.providencejournal.com/story/news/politics/2022/11/09/chas-calenda-takes-on-peter-neronha-in-attorney-general-ri-race-results/69630398007/</u>.

for self-defense, the Rhode Island Attorney General recently provided it.   In the executive

summary of his 2022 Gun Crimes Report, Attorney General Neronha states:

> Any way you look at it, this year's report will again demonstrate that, like so many
> other parts of the country, our communities continue to be inundated with guns.
> Law enforcement is seeing it firsthand—we are seeing ghost guns, assault weapons,
> and high-capacity magazines, and we are seeing them in every corner of the State,
> both rural and urban.

(Exhibit I, p. 1, attached). Clearly, this statement provides ample reason for O'Neil to be concerned

about his self-defense.  The Attorney General adds:

> Our Office has continued our aggressive enforcement of all of our firearms laws.
> Regardless of how long the laws have been on the books, <u>we are using them to
> focus our resources on those who are truly driving violent crime in our communities</u>
> and bringing them to justice, with significant sentences that will keep them off the
> streets and keep our communities safer for as long as possible.

(<u>Id.</u>, p. 8). Notably, the report is devoid of any crimes committed by CCW permit holders or any

explanation of how Defendants' denial of the State CCW permits prevents crime. Instead, it may

well subject those denied a permit and those near them to a greater threat of crimes.[7]  Accordingly,

this case is an example of the Attorney General wasting government resources by misusing a gun

law to keep a lawful permit useful for self-defense from a law-abiding citizen.

> ### B.    The Rhode Island Firearms Act and Defendants' Factors Respecting "Need" Are Unconstitutionally Vague and Overbroad in Violation of the Fourteenth Amendment.

The statutory requirement that a State CCW applicant make a "proper showing of need" as

well as the Attorney General's guidelines respecting that showing are vague and overbroad in

violation of the Fourteenth Amendment. See <u>Minnesota Voters Alliance v. Mansky</u>, 138 S.Ct.

---

[7] Plaintiff acknowledges that the question of how often a "good guy with a gun" prevents or mitigates gun violence by criminals is strenuously debated.  Nonetheless, there are specific examples of it occurring.   <u>https://www.heritage.org/firearms/commentary/yes-democrats-sometimes-good-guy-gun-does-stop-the-bad-guys-heres-proof</u>.

1876 (2018) (holding that Minnesota statute banning people from wearing "political apparel" in polling places on Election Day was unconstitutionally vague and violated the First Amendment); F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 258 (2012) (holding that the FCC's regulation on the broadcasting of "fleeting expletives" was unconstitutionally vague and violated the First Amendment); Ashcroft v. Free Speech Coalition, 535 U.S. 234, 256 (2002) (holding the Child Pornography Prevention Act of 1996 was unconstitutionally overbroad and violated the First Amendment).[8]  Moreover, Defendants cannot constrain O'Neil's Second Amendment rights by claiming no "set formula or criteria…limit[s] or restrict[s] the Attorney General's decision to issue or deny a pistol permit." Bruen, at 142 S.Ct. at 2156.

Section 11-47-18(a) is unconstitutionally void for vagueness or overbroad.  The First Circuit has explained the difference between "vagueness" and "overbreadth":

> While related, [the doctrines of overbreadth and vagueness] derive from somewhat different policies and look to different effects.  Overbreadth analysis looks to whether a law "sweeps within its ambit (protected) activities" as well as unprotected ones, while a vagueness inquiry focusses on whether a law states its proscriptions in terms sufficiently indefinite that persons of reasonable intelligence "must necessarily guess at its meaning."

Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115, 1122 n. 9 (1st Cir. 1981).

The "void-for-vagueness" doctrine derives from due process requirements that a law must be written "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). Here, Section 11-47-18(a) is unconstitutionally vague because the General Assembly has not defined "a proper showing of need" and ordinary

---

[8] O'Neil cites to First Amendment jurisprudence in this argument because, as previously stated, the Supreme Court has analogized First and Second Amendment rights and because there is a dearth of post-Bruen decisions applying due process analysis to CCW permit denials.  Indeed, Plaintiff's counsel has located no such decisions.

people could not understand what that phrase means. What is a "proper showing"? Does it require a hearing with admissible evidence or are an applicant's representations sufficient? What constitutes a "need"? Webster's first two definitions for "need" are very different: "1. necessity; compulsion; obligation…" compared to "2. a lack of something useful, required, or desired…" Webster's New World Dictionary, p. 981 (World Pub. Co. 1966). It is difficult to imagine a vaguer standard.

Moreover, it appears it is the particular Attorney General in office at any given time who determines "a proper showing of need" because O'Neil originally received his State-issued CCW permit in 2013 and it was renewed in 2017 when the prior Attorney General was in office. This situation promotes arbitrary and discriminatory enforcement.

A statute is overbroad and unconstitutional under the First Amendment where "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." United States v. Stevens, 559 U.S. 460, 473 (2010). In Stevens, the Supreme Court held that a federal statute criminalizing the commercial creation, sale, or possession of depictions of animal cruelty was substantially overbroad, and thus, it was invalid under the First Amendment. 559 U.S 481-82. Here, Section 11-47-18(a) is substantially overbroad because its critical terms are undefined and the Attorney General's application of the statute is overbroad, ill-defined, and subject to "haphazard interpretations." Minnesota Voters, 138 S. Ct. at 1888. Carroll v. Craddock, 494 F.Supp.3d 158, 169 (D.R.I. 2020) (McElroy, J.) ("A statute is overbroad and therefore unconstitutional when it so lacks standards for application that it 'delegate[s] unlimited discretion to the government officials entrusted to enforce the regulation.'"). In the Minnesota Voters case, the Supreme Court struck down Minnesota's law banning "political apparel" at polls. In attempting to determine examples of what "political apparel" would or would not be

permissible, the Court encountered the same kind of arbitrary distinctions that exist with respect to State CCW permits:

> A shirt declaring "All Lives Matter," we are told, could be "perceived" as political. How about a shirt bearing the name of the [NRA]? Definitely out. That said, a shirt displaying a rainbow flag could be worn "*unless* there was an issue on the ballot" that "related somehow ... to gay rights." A shirt simply displaying the text of the Second Amendment? Prohibited. But a shirt with the text of the First Amendment? "It would be allowed."

Minnesota Voters, 138 S. Ct. at 1891. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity. But the State's difficulties with its restriction go beyond close calls on borderline or fanciful cases. And that is a serious matter..." Id.

Rhode Island has the same problem. The inconsistent application of Section 11-47-18(a)'s requirement of a "proper showing of need" can result in haphazard, arbitrary, and inconsistent decisions. Here, the Attorney General has articulated ten general factors on which to base the grant or denial of a CCW permit with respect to a showing of "need." However, the denial of O'Neil's application to renew the permit he has had since 2013 was founded on none of these. Instead, the Attorney General denied the renewal based on a new, *ad hoc* factor, i.e., that O'Neil did not "need" a State-issued permit because he already had a municipal one. Notably, the Attorney General did not decide that O'Neil was any kind of threat or danger if he had a CCW permit, a decision that was presumably foreclosed by the issuance of the municipal permit which requires that the applicant be a "suitable person to be so licensed." R.I.Gen.L. § 11-47-11(a).

Personalized or "vanity" license plate schemes have faced similar legal challenges. See Lewis v. Wilson, 253 F.3d 1077, 1080 (8th Cir. 2001) (striking down Missouri regulation as providing unfettered discretion when state had authority to restrict plates bearing messages that are "contrary to public policy."); Carroll v. Craddock, 494 F.Supp.2d at 169-70 (striking down statute

that permitted the Director of the Division of Motor Vehicles to deny the application for a vanity license plate that was "offensive to good taste"); Morgan v. Martinez, No. 3:14-02408, 2015 WL 2233214 at *8 (D.N.J. May 12, 2015) (finding that vehicle owner seeking 8THEIST plate had stated a claim in facial challenge to New Jersey's "offensive to good  taste and decency" plate regulation); Matwyuk v. Johnson, 22 F. Supp. 3d 812, 822–24 (E.D. Mich. 2014) (same, citing Shuttlesworth v. City of Birmingham, Alabama, 394 U.S. 147, 150-51 (1969)). Defendants' "need" guideline that there is no "set formula or criteria to limit or restrict the Attorney General's decision to issue or deny a pistol permit" lacks the "narrow, objective,  and definite standards" necessary for a licensing scheme and is therefore unconstitutional.

The Attorney General's "factors" for denying a CCW permit under Section 11-47-18(a) run afoul of the prohibition  against unbridled discretion. "[A]dministrators may not possess unfettered discretion to burden or ban speech, because without standards governing the exercise of discretion, a government  official may decide who may speak and who may not based upon the content of the speech or  viewpoint of the speaker." City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 763-64 (1988). Boundless rules run the risk that the government will use seemingly innocuous standards in pretextual and censorial ways, "hiding the suppression from public scrutiny." Child  Evangelism Fellowship of Maryland, Inc. v. Montgomery Co. Pub. Sch. Dist., 457 F.3d 376, 386  (4th Cir. 2006). Such a scheme may  not delegate overly  broad discretion to  government officials. Forsyth Cty., Ga. v. Nationalist Movement, 505 U.S. 123, 130–31 (1992)  (requiring "narrow, objective, and definite standards to guide the licensing authority").

The Supreme Court in Shuttlesworth v. City of Birmingham explained that "many decisions of this Court over the last 30 years, [have held] that a law subjecting the exercise

16

of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." 394 U.S. at 150–51. Section 11-47-18(a) lacks objective criteria, allowing the Attorney General to deny CCW permits based on ambiguous, subjective, arbitrary, and discriminatory reasons. Defendant has reserved for himself the unfettered ability to deny any permit because he has no "set formula or criteria to limit or restrict [his] decision to issue or deny a pistol permit." Accordingly, the Attorney General can make unpublished and inconsistent decisions respecting CCW permits, and no one will be the wiser. Here, Defendant denied the renewal of a permit O'Neil has had since 2013 because of a supposed lack of need based on a criterion he essentially invented for this application. Accordingly, Section 11-47-18(a) is unconstitutionally vague and overbroad and Defendant's application and enforcement of it is unconstitutionally arbitrary and capricious.

### II.    Monetary damages are unlikely in these circumstances, the balance of equities weighs in favor of the Plaintiff, and the issuance of interim injunctive relief will serve the public's interest.

The balance of harm also weighs in favor of the Plaintiff. The purpose of a preliminary injunction is to maintain the status quo. The status quo should be that O'Neil, a law-abiding citizen, will continue to have the State-issued CCW permit he has had since 2013 without having to make a showing of "need." That is consistent with his Second Amendment right as articulated in Bruen. As the courts have said, the loss of a constitutional right, even for brief periods, is irreparable. Boland v. Bonta, 2023 WL 2588565 at *9 ("Plaintiffs will continue to suffer harm because the government will continue infringing their Second Amendment rights."); Miller v. Bouta, No. 22cv1446, 2022 WL 17811114 at *8 (S.D.Cal. Dec. 19, 2022), citing Elrod v. Burns, 427 U.S. 347, 373 (1976) (enjoining California statute that applied a fee-shifting provision to litigation challenging firearms restrictions). Further, "the government 'cannot suffer harm from

an injunction that merely ends an unlawful practice' such as denying Californians' Second Amendment rights." Boland v. Bonta, 2023 WL 2588565 at *9.

Monetary relief is almost certainly not quantifiable nor recoverable against the Attorney General in these circumstances. Id. Moreover, "[w]hen, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" Id., quoting Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd of Educ., 46 F.3dth 1075, 1098 (9th Cir. 2022). It is always in the public interest to enjoin unconstitutional laws. Id.; see also, Spencer v. Nigrelli, 2022 WL 17985966 at *14, quoting Antonyuk v. Bruen, 2022 WL 3999791 at *36 (N.D.N.Y. 2022) (holding that the public has a significant interest in the sense of safety that a licensed concealed handgun can provide).

Finally, as discussed previously, O'Neil enjoys significant benefits and protections from having both the State and municipal permits.

## CONCLUSION

The Court should grant Plaintiff Michael O'Neil's motion for a preliminary injunction and require Defendants to renew his CCW permit pending a final decision on the merits.

Respectfully submitted,
**MICHAEL O'NEIL**
By his attorneys,

/s/ Thomas W. Lyons
Thomas W. Lyons          #2946
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

/s/ Frank R. Saccoccio
Frank R. Saccoccio Esq. #5949
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island 02919
(401) 944-1600 * 942-8921 Fax
Frank.CSLawOffice@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2023, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons