# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **MICHAEL O'NEIL,** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **C.A. No.: 1:23-cv-00070-WES-PAS** |
| | : | |
| | : | |
| **PETER F. NERONHA, in his official** | : | |
| **capacity as Attorney General of the State** | : | |
| **of Rhode Island, and THE STATE OF** | : | |
| **RHODE ISLAND** | : | |
| *Defendants,* | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## STATE DEFENDANTS' MOTION TO DISMISS

State Defendants Rhode Island Attorney General Peter Neronha in his official capacity and the State of Rhode Island, pursuant to the Federal Rules of Civil Procedure 12(b)(6), files this memorandum of law in support of his Motion to Dismiss. Plaintiff, Mr. O'Neil's claims fail to state a claim upon which relief may be granted.

**FACTS**

**A.     Statutory Background**

Under the Rhode Island General Laws, an applicant has two avenues through which he or she may obtain a permit to concealed carry a pistol or revolver in the state. An applicant may obtain a concealed carry permit from any city or town in which he or she is a bona fide resident or has a place of business. R.I. Gen. Laws § 11-47-11(a). If an applicant satisfies the criteria listed in R.I. Gen. Laws §§ 11-47-11(a), the municipal licensing authority *shall* issue a concealed carry permit. *Id*; *see also Mosby v. Devine*, 851 A.2d 1031, 1047 (R.I. 2004). These criteria are 1) that the applicant is 21 or older; 2) that the applicant is a bona fide resident or has a place of business in the city or town; and 3) "if it appears that the applicant has good reason to fear an injury to his or her person or property *or has any other proper reason* for carrying a pistol or revolver;" and 4) "that he or she is a suitable person to be so licensed." *Mosby*, 851 A.2d at 1047. As discussed further below, the Rhode Island Supreme Court and U.S. Supreme Court have both recognized that there is no requirement to show a special need for a permit under § 11-47-11. *See New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2123 n.1 (2022); *Gadomski v. Tavares*, 113 A.3d 387, 392 (R.I. 2015).

An applicant may also apply to obtain a concealed carry permit with the Office of the Attorney General. The Attorney General retains the discretion to issue or renew concealed carry permits "upon a proper showing of need." *See* R.I. Gen. Laws § 11-47-18. If an individual has either permit, she may carry a concealed pistol or revolver in the State of Rhode Island.

**B.     Facts As Set Forth in the Complaint**

Mr. O'Neil alleges that he is a citizen of Warwick, Rhode Island over the age of 21. Complaint, ¶¶ 1, 6. Mr. O'Neil has a permit to concealed carry from the City of Warwick.

Complaint, ¶ 16. From 2013 to 2021 Mr. O'Neil additionally had a permit to concealed carry from the Rhode Island Office of the Attorney General. Complaint, ¶¶ 13, 16.

On January 25, 2021, the Office of the Attorney General denied Mr. O'Neil's request to renew his concealed carry permit. Complaint, ¶ 16. The Attorney General noted that Mr. O'Neil failed to demonstrate need because he already had a concealed carry permit from the City of Warwick. Complaint, ¶ 16.  Mr. O'Neil requested the Office of the Attorney General reconsider. Complaint, ¶ 17. On April 1, 2021, the Office of the Attorney General denied Mr. O'Neil's request stating once again that Mr. O'Neil failed to properly demonstrate need. Complaint, ¶ 18. Mr. O'Neil then asked for reconsideration a second time, which was denied. Complaint, ¶¶ 19-20. On August 9, 2021, Mr. O'Neil appealed the Attorney General decision to the Rhode Island Supreme Court through a petition for a writ of certiorari. Complaint, ¶ 21. On December 17, 2021, the Rhode Island Supreme Court denied Mr. O'Neil's writ petition. Complaint, ¶ 22.

Over one year following the Rhode Island Supreme Court decision, Mr. O'Neil filed the instant suit alleging that he is concerned that the Attorney General decision could impact his ability to renew concealed carry permits in other, unspecified states. Complaint, ¶ 23. Mr. O'Neil seeks to declare and enjoin the Attorney General's permitting program as unconstitutional under the Second Amendment, Fourteenth Amendment Due Process Clause, and Article I, § 2 of the Rhode Island Constitution and recover both compensatory and punitive damages. Complaint, at 10 (¶¶ 1-5).

## STANDARD OF REVIEW

When reviewing a motion to dismiss, this court employs a two-part analysis. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  First, "[i]t should begin by identifying and disregarding statements in the complaint that merely offer legal conclusion[s]

couched as…fact[ ] or [t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). Then, "[n]on-conclusory factual allegations in the complaint must then be treated as true[.]" *Id.* A court need not, however, credit bald assertions or unverifiable conclusions. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). "The make-or-break standard…is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Ocasio-Hernandez*, 640 F.3d at 12 (quoting *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.)) (emphasis added).

Moreover, "[a]ffirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear 'on the face of the Mr. O'Neil's pleadings.'" *Santana-Castro v. Toledo-Davila*, 579 F.3d 109, 113–14 (1st Cir. 2009) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)).

## ARGUMENT

I.    **THE COMPLAINT MUST BE DISMISSED BECAUSE MR. O'NEIL LACKS ARTICLE III STANDING.**

Mr. O'Neil lacks Article III standing to sue over the Attorney General's denial of Mr. O'Neil's application to renew a concealed carry permit. The standing inquiry has three elements. First, Mr. O'Neil must allege an injury that is "concrete, particularized, and actual or imminent, not conjectural or hypothetical." *Massachusetts v. U.S Dep't of Health & Human Serv.*, 923 F.3d 209, 222 (2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Where, as here, the plaintiff alleges a future injury, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

(2013).  Second, a plaintiff must demonstrate that the "injury is fairly traceable to the challenged action." *Massachusetts v. U.S Dep't of Health & Human Serv.*, 504 U.S. at 222. Finally, a plaintiff must show that "it is likely that the injury will be redressed by a favorable decision." *Id*.

Mr. O'Neil seeks 1) an injunction requiring the Attorney General to issue Mr. O'Neil a concealed carry permit and 2) a declaration that the requirement of "a proper showing of need" in a concealed carry permit application (as set out in R.I. Gen. Laws § 11-47-18) is unconstitutional under the Second Amendment and Due Process clauses of the federal and state Constitutions. Complaint, at 10 (¶¶ 1-3). For all forms of relief, Mr. O'Neil fails to allege facts sufficient to establish either the injury-in-fact or redressability elements of Article III standing.

## A.    Mr. O'Neil's Alleged Injuries Are Speculative, Not Concrete.

Mr. O'Neil fails to allege a non-speculative injury arising from the Attorney General's denial of Mr. O'Neil's application for a concealed carry permit. To claim a future injury as the basis for Article III standing, Mr. O'Neil must show that the injury is "imminent." To satisfy Article III, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or [if] there is a '"substantial risk" that the harm will occur.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (citations omitted). When describing a "substantial risk," the Supreme Court has stated it must be so concrete that it "may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm," citing to examples such as purchasing testing to ensure crops had not been contaminated and specific evidence that an ordinance would be enforced.  *Clapper*, 568 U.S. 414 n.5.  But plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Id.* at 416.  No matter what, to satisfy Article III, this Court must "ensure that the alleged injury is not

too speculative." *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997) (quoting *Lujan*, 504 U.S. at 564 n.2).

Mr. O'Neil entirely fails on this metric; his alleged injury is nothing but speculation. Mr. O'Neil has a concealed carry permit from the City of Warwick. Complaint, ¶ 14. Mr. O'Neil's theory of standing is based exclusively on his speculation that "the denial of his application by [the Attorney General] will prejudice his ability to renew those [permits from other states] or obtain other [permits] as concealed carry permit applications typically ask whether the applicant has ever had an application denied elsewhere." Complaint, ¶ 23. But Mr. O'Neil does not plausibly allege that his ability to renew his concealed carry permits from other states is imperiled—imminently or at all. Mr. O'Neil does not provide the names of the other states where he currently holds a concealed carry permit. *See generally*, Complaint. Nor does Mr. O'Neil allege that denial of a concealed carry permit in any state is a dispositive or even important factor in the renewal process. *Id.* Mr. O'Neil ambiguously claims that other states "typically ask" whether an applicant has been denied a permit. Complaint, ¶ 23. But Mr. O'Neil provides no detail as to how other states use that information. *Id.* Mr. O'Neil has also failed to allege that he has plans to renew his concealed carry permits from other states or that any of his concealed carry permits are up for renewal. *See generally*, Complaint. Whether Mr. O'Neil will even be subjected to other states' permit renewal processes is another speculative contingency that precludes finding an imminent future injury. Even assuming, *arguendo*, other states consider permit denials in their renewal processes, Mr. O'Neil maintains an active municipal permit to concealed carry in Rhode Island. Under this set of circumstances, it is speculative that the Attorney General's denial of Mr. O'Neil's permit would "prejudice" renewal decisions in other unknown states using unknown criteria who will view Mr. O'Neil's continued permission to carry a concealed firearm in Rhode Island through an unknown

lens. This is not a "certainly impending" or "substantial risk" of injury to Mr. O'Neil's constitutional rights.

### B.    Mr. O'Neil Is Unable to Establish Traceability or Redressability Because His Theory of Injury Rests on the Unknown Acts of Third Parties.

Mr. O'Neil is additionally unable to establish the traceability or redressability components of standing because his theory of injury rests on the unknown future acts of third parties. Mr. O'Neil's alleged future injury—that his out-of-state permits will not be renewed—is not traceable to the Attorney General but rather, is contingent on the unknown future decisions of unknown third-party permitting authorities based on unknown standards.

Mr. O'Neil's theory "relies on a highly attenuated chain of possibilities," each of which must occur for any injury to accrue.  *See Clapper*, 568 U.S. at 410.  These possibilities are that 1) Mr. O'Neil's out-of-state permits are imminently up for renewal; 2) the permitting authorities of other, unspecified states would consider the Rhode Island Attorney General's denial of Mr. O'Neil's concealed carry permit renewal  in their own renewal decisions; 3) Mr. O'Neil's continued and uninterrupted ability to concealed carry a pistol in Rhode Island would have no persuasive weight with these unknown authorities; 4) Mr. O'Neil satisfies these other unnamed states' criteria for issuance of a concealed carry permit in the applicable jurisdiction; and 5) these unnamed entities ultimately deny Mr. O'Neil's application despite his satisfaction of the criteria for issuance and the fact that Mr. O'Neil is permitted to concealed carry a pistol in Rhode Island. There is no reason here to depart from federal courts' "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors."  *Id.* at 414.  Mr. O'Neil's asserted injury is not traceable to any action of the Attorney General.

In *Dantzler*, the First Circuit held that plaintiff, a shipping company, was unable to establish the causation and redressability components of Article III standing in a suit seeking to enjoin and declare unconstitutional a Puerto Rico law assessing fees on ocean freight carriers. *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc*., 958 F.3d 38, 43-44 (1st Cir. 2020). The plaintiff argued that because the Puerto Rico Ports Authority, an arm of the Puerto Rican government, charged ocean freight carriers fees, the carriers offloaded the cost of those fees on to plaintiff. *Id*. The court rejected the plaintiff's theory of standing with respect to the constitutional challenge to the fees assessed on the ocean freight carriers. Plaintiff was unable to demonstrate that the imposition of fees on third party ocean freight carriers would *cause* the ocean freight carriers to offload the cost of those fees onto plaintiff. *Id*. at 48-49. And even if plaintiff had prevailed, enjoining the fees would not provide redress because "ocean freight carriers, who were not made parties to the case, would not be bound to treat Dantzler differently" (i.e. charge plaintiff fewer fees). *Id*. at 49.

Similarly, because Mr. O'Neil's future injury is based on his speculation about the decisions of third parties, injunctive and declaratory relief directed at the Attorney General would not "likely redress" Mr. O'Neil's alleged injury. *Katz v. Pershing*, 672 F.3d 64, 72 (1st Cir. 2012). Should this court declare the "need" requirement unconstitutional and enjoin the Attorney General to issue Mr. O'Neil a concealed carry permit, Mr. O'Neil alleges no facts suggesting that he would have better odds of successfully renewing his out-of-state concealed carry permits.  Mr. O'Neil would nevertheless need to list the denial of the permit on any application, albeit with an explanation that the permit was issued under an injunction—an explanation that is equally available to him now, where he may explain that in Rhode Island, he is permitted to concealed carry a pistol without an Attorney General permit.

Any redress Mr. O'Neil seeks is therefore entirely dependent on the unknown future decisions of third parties not privy to the suit. Mr. O'Neil does not allege the other states in which he possesses and plans to renew concealed-carry permits. Nor does Mr. O'Neil provide the standards that other state permitting authorities apply when making renewal decisions. Mr. O'Neil leaves this court unable to assess whether injunctive and declaratory relief would even marginally impact Mr. O'Neil's potential future attempt to renew other concealed carry permits. And even if Mr. O'Neil identified the states where he possesses concealed carry permits, a "federal court [can] act only to redress [an] injury that fairly can be traced to the challenged action of the defendant, and not [an] injury that results from the independent action of some third party not before the court." *Dantzler*, 958 F.3d at 50 (alteration in original). Because Mr. O'Neil's suit is predicated on a "chain of contingencies" concerning "the decisions of independent actors" about whom Mr. O'Neil has failed to provide any concrete facts, Mr. O'Neil cannot demonstrate the traceability and redressability components necessary to establish Article III standing. *Clapper*, 568 U.S. at 410, 414.

## II.    MR. O'NEIL'S CLAIMS ARE NOT RIPE.

Ripeness is another jurisdictional bar to Mr. O'Neil's suit. Mr. O'Neil bears the burden of demonstrating that his suit is both 1) "fit[]" for adjudication and 2) that a delay in adjudication would product "hardship." *See Reddy*, 845 F.3d at 501. The fitness prong has two components: 1) whether there is a sufficiently live case or controversy and 2) whether "resolution of the dispute should be postponed in the name of judicial restraint from unnecessary decision of constitutional issues." *Id.* The first component of the fitness prong is jurisdictional, and the second component is prudential. Finally, the hardship prong is "wholly prudential" and "concerns the harm to the parties seeking relief that would come to those parties from our withholding of a decision at this time."

9

*Id.* (quoting *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 330 (1st Cir. 2016)) (internal quotations omitted).

Mr. O'Neil's suit is unfit for adjudication, and he faces no immediate hardships that counsel against judicial restraint. First, there is no live case or controversy for the same reasons why Mr. O'Neil fails to demonstrate Article III standing. Mr. O'Neil can conceal carry a firearm in the State of Rhode Island. Complaint, ¶ 16. Mr. O'Neil's Second Amendment claim is predicated on multiple "uncertain and contingent event[s]" including 1) whether Mr. O'Neil's out-of-state concealed carry permits are up for renewal 2) whether Mr. O'Neil plans to renew his out-of-state permits and 3) whether the Attorney General's denial of Mr. O'Neil permit renewal would even marginally impact his chances to successfully renew the out-of-state permits. *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 536 (1st Cir. 1995). Mr. O'Neil's suit also rests on undeveloped facts about the decision-making processes of unspecified state or local permitting entities at unspecified times in the future. Finally, the Second Amendment issues raised, which would require this Court to disregard the Supreme Court's assessment of Rhode Island's laws in *Bruen*, counsel against extending jurisdiction. *See Doe v. Bush*, 323 F.3d 133, 138 (1st Cir. 2003) (explaining that one purpose of the ripeness doctrine is "to avoid unnecessary constitutional decisions").

The prudential "hardship" factor additional counsels against extending jurisdiction. Mr. O'Neil can conceal carry firearms in Rhode Island. Mr. O'Neil has not alleged that any state has denied renewal of his other concealed carry permits. Nor does Mr. O'Neil allege that he faces potential prosecution. *Compare Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997). The continued operation of the Attorney General concealed carry permitting program produces no

hardship for Mr. O'Neil and on the contrary, would upend the status quo in Rhode Island in place since the *Mosby* decision nearly 20 years ago.

## III. THE *ROOKER-FELDMAN* DOCTRINE BARS MR. O'NEIL'S SUIT.

The *Rooker-Feldman* doctrine holds that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Tyler v. Sup. Jud. Ct. of Mass.*, 914 F.3d 47, 50 (2019) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). When a "losing party in state court file[s] suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment," the *Rooker-Feldman* doctrine is a bar to jurisdiction. *Id.* (internal quotations omitted).

There is an exception to the *Rooker-Feldman* doctrine for "a general attack on a state law or regulation" when there has been a "prior judgment applying such a law or rule to the federal plaintiff." *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004). Here, Mr. O'Neil challenges the Attorney General's concealed carry permitting program in R.I. Gen. Laws § 11-47-18 arguing it violates both his Second Amendment and Due Process rights. Complaint, 10 (¶¶ 2-3). The exception, however, "does not apply. . . if the relief sought in federal court is directed towards undoing the prior state judgment." *Maymo-Melendez*, 364 F.3d at 34. The application of the *Rooker-Feldman* doctrine thus turns on "the relief sought by the federal-court plaintiff." *Id.* (citing *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002)). Because, as explained below, Mr. O'Neil's suit seeks the same relief in the instant suit that Mr. O'Neil sought before the Rhode Island Supreme Court, the *Rooker-Feldman* doctrine bars Mr. O'Neil's suit.

As an initial matter, the denial of the writ of certiorari was a final state-court judgment on the merits. Mr. O'Neil filed the instant suit after the Rhode Island Supreme Court denied Mr. O'Neil's petition for a writ of certiorari. Complaint, ¶¶ 21-22. A writ petition is the only way an

applicant can seek review of an Attorney General permitting decision. *Mosby v. Devine*, 851 A.2d 1031, 1050 (R.I. 2004) (explaining that Attorney General permitting conceal carry permitting decisions "do[ ] not create a contested case" subject to judicial review under the Administrative Procedures Act). In the context of Attorney General permitting appeals, certiorari review includes "review [of the] department's decision for error of law" as well as an inspection of the record "to determine whether the department's findings are supported by any legally competent evidence." *Id.* In his petition, Mr. O'Neil requested that the Supreme Court "directly order the AG to issue back his CCW license." ECF 1-7, at 8. The Rhode Island Supreme Court denied Mr. O'Neil's petition. *See* ECF 1-8.

Although generally writs of certiorari are discretionary and therefore not final adjudications on the merits, R.I. R. App. Pro. 13(e) ("[a] denial of a petition, *without more*, is not an adjudication on the merits") (emphasis added), that is not the case here.  There is "more" anytime the Rhode Island Supreme Court reviews the Attorney General's denial of a concealed carry permit. In *Mosby v. Devine*, the Rhode Island Supreme Court held that because there are no statutory forms of review for Attorney General denials of concealed carry permits, merits review through common law petitions for writ of certiorari must be available else "the constitutional right to bear arms would be illusory." 851 A.2d at 1031. By guaranteeing merits review of Attorney General permitting decisions through petitions for writ of certiorari, the *Mosby* Court avoided both Second Amendment and due process-related issues. *Id*.  Mr. O'Neil's petition for writ of certiorari in his companion state case, therefore, was a final adjudication on the merits.

Now, Mr. O'Neil seeks "review and rejection" of the Rhode Island Supreme Court's judgment in federal district court through a facial constitutional challenge to the Attorney General's concealed carry permitting program. Mr. O'Neil's constitutional suit is an attempted

end-run around the Rhode Island Supreme Court because Mr. O'Neil seeks substantially the same relief as he sought in his writ petition—renewal of his concealed carry permit. *See* Complaint, at 10 (¶ 1). Further, Mr. O'Neil reveals in both suits that his motivation to renew his Attorney General permit stems from the same "concern[] that the denial of his application by Defendants will prejudice his ability to renew those other permits or obtain other[] [permits] as concealed carry permit applications typically ask whether the applicant has ever had an application denied elsewhere." *Compare* Complaint, ¶ 23, *with* ECF 1-7, at 10 ("AG denial will affect [Mr. O'Neil's] other CCW's [sic] from neighboring states. He will be required to list on all future applications and renewals, specifically his renewal for the Commonwealth of Massachusetts, among others."). While here, Plaintiff also seeks a declaration that R.I. Gen. Laws § 11-47-18 violates the Second Amendment and Due Process Clause, "[t]he *Rooker-Feldman* jurisdictional bar is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit. Instead, the critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment." *Tyler*, 914 F.3d at 51 (citing *Klimowicz v. Deutsche Bank Nat'l Tr. Co*., 907 F.3d 61, 66 (1st Cir. 2018)). Mr. O'Neil's suit has the same remedial goal and is motivated by the same reasons as his unsuccessful state court suit. *Rooker-Feldman* bars Mr. O'Neil's attempt to "undo the consequences of the state court judgment" and take a second bite of the apple.

## IV.    CLAIM PRECLUSION ADDITIONALLY BARS MR. O'NEIL'S SUIT.

The principals of claim preclusion also bar Mr. O'Neil's suit. The federal full faith and credit statute—28 U.S.C. § 1738—"requires that state-court judgments be given both issue and claim preclusive effect in subsequent actions under 42 U.S.C. § 1983." *University of Tennessee v. Elliott*, 478 U.S. 788, 796-797 (1986). Federal courts apply state law preclusion principles to

determine whether a state court decision precludes a subsequent federal suit. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In Rhode Island, claim preclusion bars relitigating a claim if there is an "(1) identity of parties, (2) identity of issues, and (3) finality of judgment in an earlier action." *Reynolds v. First NLC Financial Services, LLC*, 81 A.3d 1111, 1115 (R.I. 2014). Here, the parties to the present litigation—Mr. O'Neil and the State— are the same as the parties to Mr. O'Neil's writ petition to the R.I. Supreme Court.

To determine if there is an identity of issues, the R.I. Supreme Court has adopted the "broad transactional rule" where "the relitigation of all or any part of the transaction, or series of connected transactions, out of which the [first] action arose" is precluded. *Reynolds*, 81 A.3d at 1116 (internal quotations omitted). Here, the transaction litigated before the R.I. Supreme Court and the present action are the same—namely, the Attorney General's administrative decision to not renew Mr. O'Neil's concealed carry permit. *See* ECF 1-7, at 3-4; ECF 1, at ¶¶ 16-22. While the present suit may seek to litigate different *legal* issues than those Mr. O'Neil chose to present in his writ petition to the Rhode Island Supreme Court, Rhode Island claim preclusion law does not require that identical legal arguments or causes of action be employed in each suit. *See Plunkett v. State*, 869 A.2d at 1185, 1189 (R.I. 2005)). Nor does the fact that the initial litigation arose from an appeal of a state administrative proceeding bear on the analysis. *See, e.g.*, *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 463-465 (1982) (holding that a New York state court decision affirming an administrative adjudication was properly given res judicata effect in subsequent federal litigation).

Finally, as explained above, a denial of a writ petition appealing an Attorney General permitting decision is a final judgment. When evaluating "whether or not an adjudication was on the merits for purposes of res judicata, [the Court] look[s] to whether the party has had an opportunity to be heard." *Nugent v. State Pub. Defender's Off.*, 184 A.3 703, 708 (R.I. 2018)

(quoting Huntley v. State, 63 A.3d 526, 532 (R.I. 2013) (internal quotations omitted). Here, Mr. O'Neil indisputably had an opportunity to be heard both through submission of a detailed brief and oral argument before the Rhode Island Supreme Court where he was free to present any arguments he chose, including constitutional arguments. Complaint, ¶ 21. While Rule 13(e) states that "without more" denials of writ petitions are not adjudications on the merits, the *Mosby* Court recognized the special need for the Rhode Island Supreme Court to conduct a merits review of Attorney General permitting decisions given the constitutional interests at stake. *See Mosby*, 851 A.2d at 1050-51 ("The constitutional right to bear arms would be illusory, of course, if it could be abrogated entirely on the basis of an unreviewable unrestricted licensing scheme. Such review is available through a common-law writ of certiorari."); *see also Crowell v. Benson*, 285 U.S. 22, 48-49 (1932) (describing the necessity of judicial review of agency adjudications). Even if a petition for certiorari is ultimately denied, the Rhode Island Supreme Court conducts a "review [of the] department's decision for error of law" as well as an inspection of the record "to determine whether the department's findings are supported by any legally competent evidence" to protect the constitutional interests at stake. *Mosby*, 851 A.2d at 1051. Thus, the denial of Mr. O'Neil's writ petition to the Rhode Island Supreme Court constitutes a final judgment for res judicata purposes.

Claim preclusion therefore bars Mr. O'Neil's challenge to the Attorney General's concealed carry permitting program because Mr. O'Neil's suit is ultimately an attempt to relitigate Mr. O'Neil's initial appeal of the Attorney General's permitting decision.

## V.    *PULLMAN* ABSTENTION COUNSELS AGAINST EXTENDING JURISDICTION UNDER THESE CIRCUMSTANCES.

Finally, in the event the Court finds any ambiguity in Rhode Island's pistol and revolver permitting regime (as explained below, it should not), *Pullman* abstention counsels against extending jurisdiction. *Pullman* abstention holds that "the federal courts should not adjudicate the

constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass on them." *Harrison v. NAACP*, 360 U.S. 167 (1959) (citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941)). The doctrine requires a federal court to decline jurisdiction "where (1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." *Batterman v. Leahy*, 544 F.3d 370, 373 (1st Cir. 2008). As *Gadomski* and *Mosby* demonstrate, the Rhode Island courts are willing and able to construe the dual-permit scheme in a constitutional manner. To the extent *Bruen* introduced any additional ambiguities (and for the reasons discussed below it has not), this Court should defer to Rhode Island courts to interpret Rhode Island law.

## VI.    *WILL* PRECLUDES MR. O'NEIL'S CLAIMS FOR MONETARY RELIEF.

In addition to injunctive and declaratory relief, Mr. O'Neil also seeks compensatory and punitive damages. Complaint, at 10 (¶¶ 4-7). Section 1983, however, does not provide a cause of action for damages suits against official capacity state defendants. *See Will v. Michigan*, 491 U.S. 58 (1989). On this additional basis, Plaintiff's claim for damages must be dismissed.

## VII.    *BRUEN* FORECLOSES MR. O'NEIL'S SECOND AMENDMENT CLAIM.

All of Mr. O'Neil's arguments that the Rhode Island dual concealed carry permit scheme infringes on his Second Amendment rights are foreclosed by the Supreme Court's pronouncements in *Bruen*. Very simply, as Mr. O'Neil himself sets forth, *Bruen* recognized that the "Second and Fourteenth Amendments together guarantee individual Americans not only the right to 'keep' firearms in their homes, but also the right to 'bear arms,' meaning 'to carry a handgun for self-defense outside the home.'" Complaint, ¶ 29. But under Rhode Island law, Mr. O'Neil *and any other municipal permit holder* under R.I.G.L. § 11-47-11 may carry a handgun for self-defense

16

outside the home.  Mr. O'Neil does not contest that R.I.G.L. § 11-47-11 vindicates his Second Amendment rights.  Complaint, ¶ 31 (noting that R.I.G.L. § 11-47-11 was recognized by the Supreme Court as a permissible "shall issue" regime).  While *Bruen* found no evidence that "American governments required law-abiding, responsible citizens to 'demonstrate a special need for self-protection distinguishable from that of the general community,'" the Supreme Court did not disapprove that criteria for *any* purpose.  *Bruen*, 142 S. Ct at 2156. The use of the "special need" criteria is only constitutionally suspect when a government requires its citizen to meet it "in order to carry arms in public."  *Id.*  Mr. O'Neil does not allege that a lack of an Attorney General-issued permit changes his legal ability to "carry arms in public," which he may do by virtue of his existing municipal permit. *See generally*, Complaint.  The Court need not look any further and may dismiss Mr. O'Neil's Second Amendment claim in its entirety.

Any further consideration only affirms the conclusion that Rhode Island's dual permitting scheme is constitutionally permissible.  *Bruen* addressed only the constitutionality of New York's discretionary or "may issue" licensing regime and observed that only six states and the District of Columbia had "may issue" laws.  *See Bruen*, 142 S. Ct. at 2123-24.  Rhode Island was not one of those states.  Instead, the Supreme Court explained that forty-three states had "shall issue" licensing systems, including Rhode Island.  *See id.* at 2124 n.1. The Supreme Court specifically noted that, while Rhode Island law appears to have discretionary criteria for issuance of a permit, based on the Rhode Island Supreme Court's decision in *Gadomski v. Tavares*, 113 A.3d 387 (R.I. 2015), Rhode Island is in practice a "shall issue" statute.  *See Bruen*, 142 S. Ct. at 2123 n.1 (citing *Gadomski*, 113 A.3d at 392).

Moreover, although Section 11-47-11 allows some consideration of whether the applicant is a "suitable person," that discretion is limited.  *Mosby*, 851 A.2d at 1047-48.  *Mosby* explained

that "certain individuals are unsuitable as a matter of law, including convicted felons, habitual drunkards, mental incompetents, illegal aliens, and anyone who has failed to meet the minimum firing qualification score." *Id.* at 1048.  Licensing regimes, like Rhode Island's, "which often require applicants to undergo a background check or pass a firearms safety course," or otherwise "appear to contain only 'narrow, objective, and definite standards' guiding licensing officials," remain constitutional.  *Bruen*, 142 S. Ct. at 2138 n.9, 2161 (Kavanaugh, J., concurring) ("the Court's decision does not affect the existing licensing regimes").  *Bruen* was concerned only with "outlier" regimes that "in effect deny the right to carry handguns for self-defense to many 'ordinary, law-abiding citizens.'" *Id.* at 2161 (Kavanaugh, J., concurring).  That description simply does not apply to Rhode Island's dual permit granting scheme, which grants the right to carry handguns for self-defense in a shall-issue manner through the municipally granted permits but requires an additional showing to be granted a permit through the Attorney General process.  Ordinary, law-abiding citizens may apply for and receive a municipal permit, as Mr. O'Neil has demonstrated by obtaining permits from Johnston and Warwick.  Complaint, ¶ 14.  Again, Mr. O'Neil's Second Amendment right to carry a handgun in self-defense outside of the home has not been affected by the application of Rhode Island's licensing scheme.

**VIII.   MR. O'NEIL FAILS TO ALLEGE ANY VIOLATION OF DUE PROCESS.**

> **A.    Mr. O'Neil Lacks a Constitutional Interest in a Concealed Carry Permit from the Attorney General.**

Mr. O'Neil lacks a cognizable constitutional interest in an Attorney General issued concealed carry permit. To show a deprivation of due process, "a party must first show that the challenged action implicates a constitutionally protected liberty or property interest." *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 9 (1st Cir. 2011). While Mr. O'Neil invokes both a liberty interest in free speech and property interest in the concealed carry permit, Mr. O'Neil does

not plausibly allege a connection between his First Amendment speech rights and the challenged concealed carry permitting program elsewhere in the Complaint. Complaint, ¶ 43. The analysis should be confined to Mr. O'Neil's claim of a property interest in the permit.

For Mr. O'Neil "to establish a constitutionally protected property interest, [he or she] must identify a legitimate claim of entitlement to the property in question—a claim of entitlement created and defined by existing rules or understandings that stem from an independent source such as state law." *Centro Medico del Turabo, Inc., v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005) (internal quotation omitted). There are no "existing rules or understandings" that entitle Mr. O'Neil to an Attorney General concealed carry permit. State law makes clear that the Attorney General retains discretion to issue or deny Mr. O'Neil's application for renewing a concealed carry permit. R.I. Gen. Laws § 11-47-18. For that reason, the Rhode Island Supreme Court in *Mosby* held that there are no constitutional interests in an Attorney General permit sufficient to implicate due process considerations. *Mosby*, 851 A.2d at 1048-49. The holding in *Mosby* accords with the black letter law in Rhode Island, which has long held that "[a] license to engage in a business, occupation or activity otherwise prohibited by law, is the granting of a privilege" and that it is "in no sense a contract or property." *WMS Gaming, Inc. v. Sullivan*, 6 A.3d 1104, 1111 (R.I. 2010) (internal citations omitted) (discussing history of treatment of hairdressing licenses, boxing licenses, and gaming licenses as incapable of conveying a property right). Because Mr. O'Neil lacks a cognizable constitutional interest in an Attorney General concealed carry permit, Mr. O'Neil's due process claims fail as a matter of law.[1]

---

[1] To the extent that Mr. O'Neil also cites the due process clause of the Rhode Island Constitution, the Rhode Island Supreme Court has held that "the applicability of the constitutional guarantee of procedural due process depends in the first instance on the presence of a legitimate 'property' or 'liberty' interest within the meaning of the federal constitution." *Moreau v. Flanders*, 15 A.3d 565,

## B.  To the Extent Mr. O'Neil Challenges R.I. Gen. Laws Under Substantive Due Process, Mr. O'Neil's Claim is Duplicative.

Mr. O'Neil challenges the Attorney General permitting program as "arbitrary" for "impos[ing] an overly stringent and undefined requirement of 'need' in violation of the Second Amendment and the factors grant the Attorney General unbridled discretion." Complaint, ¶ 46, 48. The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotations and citations omitted); *see also Graham v. Connor*, 490 U.S. 386 (1989). To the extent that Mr. O'Neil's attempt to make a substantive due process claim, this court can simply refer to the Second Amendment analysis, *supra*.

## C.  Mr. O'Neil Had an Adequate Opportunity for a Hearing.

Mr. O'Neil alleges that the Attorney General permitting scheme violates Mr. O'Neil's due process rights because Mr. O'Neil is entitled to an "unbiased tribunal for hearing and a decision based exclusively on the evidence submitted." Complaint, ¶ 45. But in *Mosby*, the Rhode Island Supreme Court held that applicants may appeal Attorney General permitting decisions to the Rhode Island Supreme Court through a petition for a writ of certiorari. *Mosby*, 851 A.2d at 1050; *see also Relentless Inc. v. U.S. Dep't of Commerce*, 561 F.Supp.3d 226, 237 n.7 (acknowledging that deference to agency statutory interpretation as embodied in the *Chevron* doctrine does not violate due process). Mr. O'Neil seized upon that opportunity, and the Supreme Court rejected Mr. O'Neil's petition after review of the record, briefing, and oral argument.

---

588 (R.I. 2011) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 164 (1974) (Powell, J., concurring)) (alterations omitted).

### D. MR. O'NEIL FAILS TO PROPERLY ALLEGE A VOID-FOR-VAGUENESS CLAIM UNDER THE DUE PROCESS CLAUSE.

Mr. O'Neil alleges that "on [its] face," the Attorney General permitting statute, R.I. Gen Laws § 11-47-18, and the factors the Attorney General employs in making permitting decisions violate due process because they fail to provide adequate notice of the "showing of need [that] is required" to obtain a concealed carry permit. Complaint, ¶¶ 44, 46-48. In essence, Mr. O'Neil alleges that the statute and standards employed pursuant to the statute are overly subjective and enable arbitrary determinations of "need" sufficient to entitle an applicant to a concealed carry permit. Void-for-vagueness claims outside of the First Amendment context may only be made on an as-applied basis. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016). Mr. O'Neil explicitly frames his void-for-vagueness claim as a facial attack. Complaint, ¶ 47 ("On their face, Defendants' statute and factors are unconstitutionally vague."). Because Mr. O'Neil only alleges a facial void-for-vagueness challenge, his void-for-vagueness claim must be dismissed.

Mr. O'Neil also asserts that the Attorney General's factors for assessing the "need" requirement of an Attorney General permit are "overly broad" in violation of the Fourteenth Amendment Due Process Clause. The overbreadth doctrine, however, is a First Amendment doctrine that invalidates statutes that "prohibit[] a substantial amount of protected speech." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 51 (1st Cir. 2011). Mr. O'Neil's overbreadth claim has nothing to do with protected speech and his attempt to repurpose the overbreadth doctrine should be rejected.

### CONCLUSION

Defendants therefore respectfully ask this Court to grant their Motion to Dismiss for the reasons stated herein.

Respectfully submitted,

Defendants,

**STATE OF RHODE ISLAND AND RHODE ISLAND ATTORNEY GENERAL PETER NERONHA**, in his official capacity,

By:

**PETER F. NERONHA ATTORNEY GENERAL**

*/s/ Samuel Ackerman*
Sarah Rice (#10465)
Assistant Attorney General
srice@riag.ri.gov
Samuel Ackerman (#10586)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2113
(401) 222-2995 (Fax)
sackerman@riag.ri.gov

## <u>CERTIFICATION</u>

I, the undersigned, hereby certify that I have filed the within Document via the ECF System and that it is available for viewing and downloading on this 24th day of April, 2023.

*/s/ Samuel Ackerman*