UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL O'NEIL, : | |
| *Plaintiff,* : | |
| : | |
| v. : | C.A. No.: 1:23-cv-00070-WES-PAS |
| : | |
| : | |
| PETER F. NERONHA, in his official : | |
| capacity as Attorney General of the State : | |
| of Rhode Island, and THE STATE OF : | |
| RHODE ISLAND : | |
| *Defendants,* : | |

### STATE DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS

**I.     Mr. O'Neil Fails to Demonstrate Any Element Necessary for Article III Standing**

Sensing his initial theory of injury to be insufficient to establish a live controversy, Mr. O'Neil's response brief makes several post-hoc attempts to bolster his theory of injury. Each attempt fails.

First, Mr. O'Neil asserts that a legally cognizable injury flows from his general allegation that "he has been deprived of a constitutional right." ECF 11, at 7-8. To establish Article III standing, however, an alleged injury must be both "concrete and particularized" and not a "generally available grievance about government." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 573 (1992).

Next, Mr. O'Neil introduces several new contentions to attempt to show "why it is advantageous for a person to have both the State permit and the municipal permit." ECF 11, at 8. But Mr. O'Neil fails to plead any facts evincing a concrete intention to avail himself of any of these alleged benefits. And pleadings cannot be cured by including additional, unattested facts in memoranda of law. *See Creeden v. Sanieoff*, 621 F.Supp.2d 18, 21 (D. Mass. 2009). Either way,

1

the supposed advantages of holding an Attorney General permit in addition to a municipal permit are insufficient to establish a concrete injury.

Mr. O'Neil's first new theory of injury is that the Attorney General permit is the only way to acquire an open-carry license. ECF 11, at 8. Nowhere in his complaint, however, does Mr. O'Neil even reference open carry of firearms or specific plans to open carry in the future. Rather, Mr. O'Neil attempts to repurpose his lawsuit fundamentally concerning his ability to concealed-carry firearms to manufacture grounds for standing. And even if this court were to reach the merits of a challenge to Rhode Island's open carry program, *Bruen*'s assessment of the historical record dictates that restrictions on some means of public carry are permissible so long as there is not a ban on "public carry altogether." *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2146 (2022).

Mr. O'Neil next claims that only the Attorney General permit enables him to bypass the seven-day waiting period to purchase pistols and revolvers as required in R.I. Gen. Laws § 11-47-35(a)(1). ECF 11, at 8. Mr. O'Neil admits that this theory of injury was "not specifically pled." ECF 11, at 8 n.5. But even if Mr. O'Neil raised this theory of injury in the complaint, Mr. O'Neil has Rhode Island's permitting program backwards. Under R.I. Gen. Laws § 11-47-35.1, the waiting period "provisions of R.I. Gen. Laws § 11-47-35 shall not apply to…persons licensed under § 11-47-11." Rhode Island General Laws § 11-47-11 sets out the procedures for acquiring a *municipal* concealed carry permit. As the holder of a municipal concealed carry permit, Mr. O'Neil is already exempt from the seven-day waiting period.

Mr. O'Neil also adds the contention that "[h]aving a CCW permit issued by the State means he can get a CCW permit in other states" and specifically cites Oklahoma, Mississippi, and Arkansas. ECF 11, at 8. Again, Plaintiff deals in the abstract as he makes no concomitant pleading

2

that he intends to secure a concealed carry permit from Oklahoma, Mississippi, Arkansas, or any other state. And even if he did intend to secure an out of state permit in Oklahoma, Mississippi, or Arkansas, an Attorney General permit would not automatically entitle Mr. O'Neil to a permit in any of those states.[1]

Mr. O'Neil's last new theory of injury is that without an Attorney General permit, his municipal permit could expire, and Mr. O'Neil could then face criminal liability for concealed carrying a firearm. ECF 11, at 9. In his attempt to manufacture an injury, Mr. O'Neil relies on a "highly attenuated chain of possibilities" that are unsupported by concrete factual pleadings. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Mr. O'Neil provides no insight into when and whether his municipal permit will expire, nor does he explain why he believes his municipal permit will not be immediately renewed. Finally, Mr. O'Neil fails to clearly spell out whether, should his municipal permit expire, he plans to continue to concealed carry a firearm in violation of state law. Mr. O'Neil's new theory of injury via potential prosecution is exactly the type of "conjectural or hypothetical" injury that Article III does not countenance. *Massachusetts v. U.S Dep't of Health & Human Serv.*, 923 F.3d 209, 222 (2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Mr. O'Neil also attempts to strengthen his only theory of injury alleged in the complaint—that the denial of the Attorney General permit will "prejudice his renewal applications in other states because they routinely ask whether the applicant has had an application denied." ECF 11, at

---

[1] Under 21 Okla. St. Ann. § 1290.26, an applicant must be an Oklahoma resident to receive reciprocal recognition of the Attorney General permit. Permitting reciprocity in 22 Miss. Admin. Code pt. 19.09 only applies to states "which Mississippi recognizes as having reciprocal requirements for issuing such licenses" and is limited to concealed carry in "Coastal Preservation Areas." Mr. O'Neil's last citation—a 1998 administrative decision of the Arkansas Attorney General—concerned a statutory concealed carry scheme that has since been heavily revised. Finally, across all the authorities Mr. O'Neil cites, there is no indication that a municipally issued permit would be treated any differently from an Attorney General issued permit. After all, the municipal permitting program is part and parcel of the State of Rhode Island's concealed carry permitting program.

9. This time, Mr. O'Neil provides documentation that Connecticut and New Hampshire ask whether a concealed carry applicant has been denied a permit to carry in other states. But he still fails to allege that his permits from these states are to expire and that he will be subject to the application process. Further, Mr. O'Neil provides no rationale for his speculation that listing the Attorney General permit non-renewal decision on the Connecticut and New Hampshire applications will "prejudice" his chances at renewing those permits. In the absence of the concrete standard that licensing authorities apply, Mr. O'Neil claims that he "is entitled to the benefit of all reasonable inferences with respect to Defendants' motion." ECF 11, at 11.  But this misses the point—under *Clapper* and its progeny, the inference that the decisionmaking of an independent third-party stranger to the litigation will go one way or the other is not a reasonable one because it breaks the chain of causation.  Mr. O'Neil has failed to cite any out of state standard for renewal decisions that would allow this court to plausibly infer that the Attorney General permitting denial will "prejudice" the renewal decisions in other states. Even should Plaintiff receive injunctive and declaratory relief, his answer to the question of whether he has ever been denied a concealed carry permit for purposes of other state applications would still be "yes."

Finally, Mr. O'Neil fails to substantively grapple with the causation and redressability requirements of Article III standing. Mr. O'Neil's only theory of harm alleged in the complaint is that unknown out of state licensing authorities may look unfavorably upon the Attorney General's non-renewal decision when making their own renewal decisions. Under this theory, harm would flow only if another state permitting authority rejects Mr. O'Neil's renewal request because of the Rhode Island Attorney General's non-renewal decision. Thus, *Dantzler*, which concerns causation and redressability when an alleged injury is predicated on speculation about the decisions of third parties, is directly on point. Mr. O'Neil cursorily contends that he "alleges direct injury, i.e., the

4

denial of his rights under the Second and Fourteenth Amendments by Defendant." ECF 11, at 14. But the Attorney General permit and the municipal permit, which Mr. O'Neil continues to hold, confer the exact same concealed carry rights. For that reason, Mr. O'Neil has concocted a theory of injury tied to the permitting decisions of other states. Any connection between the Attorney General's permitting decision and out of state permitting decisions, however, is wholly speculative and Mr. O'Neil has provided no insight as to how an injunction to renew the Attorney General permit would change the calculus of future out of state permitting decisions. Thus, Mr. O'Neil also fails to establish the causation and redressability elements of Article III standing.

## II.     Mr. O'Neil's Claims Are Not Ripe

To establish ripeness, Mr. O'Neil repeats the same, incorrect conclusion that he faces an "immediate injury" because "Defendants have already violated his constitutional rights when they refused to renew his CCW permit." ECF 11, at 17. Mr. O'Neil again confuses his theory of injury. As discussed above, the only theory of injury that Mr. O'Neil raised in his Complaint was that the denial of Attorney General permit may impact Mr. O'Neil's *future* attempts to renew out of state licenses. Mr. O'Neil provides no insight as to whether he will renew an out of state license anytime soon or at all. Mr. O'Neil's claims are thus, unfit for adjudication as they are predicated on "uncertain and contingent event[s]" including 1) whether Mr. O'Neil's out-of-state concealed carry permits are up for renewal 2) whether Mr. O'Neil plans to renew his out-of-state permits and 3) whether the Attorney General's denial of Mr. O'Neil permit renewal would even marginally impact his chances to successfully renew the out-of-state permits. *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 536 (1st Cir. 1995).

On the prudential factor, Mr. O'Neil has made no pleadings that suggest the denial of his permit has caused him any immediate hardship. And even if this court entertains Mr. O'Neil's new

5

theories of injury, these theories too—potential criminal liability, potential applications to concealed carry in Oklahoma, Arkansas, and / or Mississippi, and potential desire to open carry—all rest on uncertain contingencies about which Mr. O'Neil has made no additional pleadings.

### III.     The *Rooker-Feldman* Doctrine Bars Adjudication of Mr. O'Neil's Claims

Mr. O'Neil argues that the *Rooker-Feldman* doctrine is inapplicable because in the present suit "there are different issues presented that were not addressed by any Rhode Island state court." ECF 11, at 20. But even if the specific legal theories litigated differ, the *Rooker-Feldman* bar, "is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit." *Tyler v. Sup. Jud. Ct. of Mass.*, 914 F.3d 47, 51 (2019) (citing *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 66 (1st Cir. 2018)). Rather, it turns on whether "the relief sought in federal court is directed towards undoing the prior state judgment." *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004).

Here, Mr. O'Neil's constitutional suit is an attempted end-run around the Rhode Island Supreme Court because Mr. O'Neil seeks substantially the same relief as he sought in his writ petition—renewal of his concealed carry permit. *See* Complaint, at 10 (¶ 1). Further, Mr. O'Neil reveals in both suits that his motivation to renew his Attorney General permit stems from the same "concern[] that the denial of his application by Defendants will prejudice his ability to renew those other permits or obtain other[] [permits] as concealed carry permit applications typically ask whether the applicant has ever had an application denied elsewhere." *Compare* Complaint, ¶ 23, *with* ECF 1-7, at 10 ("AG denial will affect [Mr. O'Neil's] other CCW's [sic] from neighboring states. He will be required to list on all future applications and renewals, specifically his renewal for the Commonwealth of Massachusetts, among others.").

Mr. O'Neil's other arguments similarly fall flat. He cites no authoritative precedent for the proposition that *Rooker-Feldman* only applies when a state court has made an adjudication on the merits. ECF 11, at 21. And even if a merits adjudication is required (it's not), the Rhode Island Supreme Court in *Mosby* held that because there are no statutory forms of review for Attorney General denials of concealed carry permits, merits review through petitions for writ of certiorari must be available else "the constitutional right to bear arms would be illusory." *Mosby v. Devine*, 851 A.2d 1031, 1050 (R.I. 2004). Thus, certiorari review includes "review [of the] department's decision for error of law" as well as an inspection of the record "to determine whether the department's findings are supported by any legally competent evidence." *Id*.

The Rhode Island Supreme Court rejected Mr. O'Neil's appeal of the Attorney General's decision to not renew his permit and now, Mr. O'Neil seeks the same relief that the Rhode Island Supreme Court denied—renewal of an Attorney General issued permit. Thus, *Rooker-Feldman* bars Mr. O'Neil's attempt to undo the final judgment of the Rhode Island Supreme Court.

### IV. Res Judicata Bars Mr. O'Neil's Suit

Res judicata also bars Mr. O'Neil's suit. Mr. O'Neil argues that the Rhode Island Supreme Court's denial of a writ of certiorari was not an adjudication on the merits and thus, res judicata does not apply. ECF 11, at 22-23. But for the reasons described above, under *Mosby*, the Rhode Island Supreme Court's denial of Mr. O'Neil's writ petition was an adjudication on the merits. By guaranteeing merits review of Attorney General permitting decisions through petitions for writ of certiorari, the *Mosby* Court avoided both Second Amendment and due process-related issues.

Mr. O'Neil next argues—without any citations to authoritative precedent—that res judicata does not apply to "narrow" issues decided by administrative agencies. ECF 11, at 23. Mr. O'Neil makes up an exception to res judicata out of whole cloth. This court is required to apply Rhode

7

Island preclusion law. In Rhode Island, claim preclusion bars relitigating a claim if there is an "(1) identity of parties, (2) identity of issues, and (3) finality of judgment in an earlier action." *Reynolds v. First NLC Financial Services, LLC*, 81 A.3d 1111, 1115 (R.I. 2014). The question of whether there is an identity of issues is wholly unrelated to the narrowness of the specific issues presented or of an agency's jurisdiction. Rather, Rhode Island courts apply the "broad transactional rule" where "the relitigation of all or any part of the transaction, or series of connected transactions, out of which the [first] action arose" is precluded. *Reynolds*, 81 A.3d at 1116 (internal quotations omitted). It is undisputed that the same transaction underpins both Mr. O'Neil's appeal to the Rhode Island Supreme Court and the present suit: the Attorney General's decision to deny Mr. O'Neil is application to renew a concealed carry permit.

## V. *Pullman* Abstention Warrants Declining Jurisdiction Should this Court Find *Bruen* Ambiguous on Evaluating Dual Permitting Programs

As *Gadomski* and *Mosby* demonstrate, the Rhode Island courts are willing and able to construe the dual-permit scheme in a constitutional manner. To the extent *Bruen* introduced any additional ambiguities (and for the reasons discussed below it has not), this Court should defer to Rhode Island courts to interpret Rhode Island law.

## VI. *Will* Bars Mr. O'Neil's Damages Action Notwithstanding R.I. Gen. Laws § 9-31-1

*Will* squarely bars Mr. O'Neil's prayer for compensatory and punitive damages against official capacity state defendants. *See Will v. Michigan*, 491 U.S. 58 (1989). Mr. O'Neil's citations to R.I. Gen. Laws § 9-31-1 et seq. and the *Laird* line of cases are inapposite. *Laird* relates to Eleventh Amendment sovereign immunity, not the cause of action bar articulated in *Will*. Moreover, courts have consistently held that § 9–31–1 only applies to actions that are "based either on a state tort action…or on a federal claim which is considered traditionally tortious." *Allendale Leasing, Inc. v. Stone*, 614 F.Supp. 1440, 1451 (D.R.I. 1985), *aff'd*, 788 F.2d 830 (1st Cir. 1986).

Rhode Island has not "relinquished its Eleventh Amendment protection from liability for 'the discretionary administrative acts and omissions of the state's departments, commissions, boards, or the officials thereof, acting in their representative capacities.'" *Bergemann v. Rhode Island*, 958 F. Supp. 61, 68 (D.R.I. 1997) (quoting *Healey v. Bendick*, 628 F.Supp. 681, 694–96 (D.R.I. 1986)). In *Bergemann*, for example, the Rhode Island federal district court held that the Eleventh Amendment barred an official capacity suit against state defendants for promulgating regulations that restricted the plaintiff's shellfishing operations. *Id*. at 684, 694-95. Similarly, in *Kenyon v. Sullivan*, the Rhode Island federal district court held that, notwithstanding § 9–31–1, the Eleventh Amendment barred a suit against the state seeking past payments of cash benefits because "provision of welfare benefits…are part of traditional government responsibilities." *Kenyon v. Sullivan*, 761 F.Supp. 951, 958 (D.R.I. 1991).

The Attorney General's decision to not renew Mr. O'Neil's permit is a "discretionary administrative act" far afield from a traditional common law tort and subject to Rhode Island Supreme Court review. Accordingly, Rhode Island's waiver of sovereign immunity is inapplicable, and, further and separately, *Will* bars the damages remedies against the State as named defendant in a Section 1983 action.

### VII.   *Bruen* Forecloses Mr. O'Neil's Second Amendment Claim

*Bruen* recognized that the "Second and Fourteenth Amendments together guarantee individual Americans not only the right to 'keep' firearms in their homes, but also the right to 'bear arms,' meaning 'to carry a handgun for self-defense outside the home.'" Complaint, ¶ 29. But under Rhode Island law, Mr. O'Neil *and any other municipal permit holder* under R.I.G.L. § 11-47-11 may carry a handgun for self-defense outside the home.

Mr. O'Neil does not contest that R.I. Gen. Laws § 11-47-11 vindicates his Second Amendment rights. Complaint, ¶ 31 (noting that R.I. Gen. Laws § 11-47-11 was recognized by the Supreme Court as a permissible "shall issue" regime); ECF 11, at 28. Mr. O'Neil argues that per the surplusage canon of statutory interpretation, each individual permitting program must be a "shall issue" regime to conform with *Bruen*, else R.I. Gen. Laws § 11-47-18 would be "completely unnecessary." ECF 11, at 30. Mr. O'Neil incorrectly applies the surplusage canon. As Mr. O'Neil quotes, "no construction of a statute should be adopted that would demote any significant *phrase or clause* to mere surplusage." ECF 11, at 30 (emphasis added). The Attorney General's concealed carry program in R.I. Gen. Laws § 11-47-18 is not a mere "phrase or clause"—it is an entire, separate regulatory program that supplements the "shall issue" permitting program administered at the municipal level under R.I. Gen. Laws § 11-47-11. Indeed, there are many duplicative regulatory programs across all levels of government. *See, e.g.*, U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-22-105301, 2022 ANNUAL REPORT: ADDITIONAL OPPORTUNITIES TO REDUCE FRAGMENTATION, OVERLAP, AND DUPLICATION AND ACHIEVE BILLIONS OF DOLLARS IN FINANCIAL BENEFITS (2022). Mr. O'Neil's claim fails because the core Second Amendment right protected in *Bruen* is the legal ability to "carry arms in public," which Mr. O'Neil may do by virtue of his existing municipal permit. *Bruen*, 142 S. Ct at 2156; *see also id*. at 2146 (finding that limits and bans on open carry are permissible so long as there is not a ban on "public carry altogether.").

## VIII. Mr. O'Neil Fails to State a Due Process Claim, Whatever the Theory

Mr. O'Neil has no constitutionally cognizable interest in an Attorney General permit. *See* Def's MTD, at 18-19. Mr. O'Neil cites *Tillinghast* for the proposition that "the holder of a government-issued license has a property interest in its renewal that entitles him to due process protections." ECF 11, at 31. *Tillinghast*, however, recognized that a business owner has a property

10

interest in her ability to continue operating a business. 456 A.2d at 784-85. Mr. O'Neil's permit does not confer any economic benefit. Further still, the *WMS Gaming* decision—which came nearly 30 years after *Tillinghast*—rejects the core logic that individuals have due process interests in government issued permits. Rather, *WMS Gaming* confirms that a permit or "[a] license to engage in a business, occupation or activity otherwise prohibited by law, is the granting of a privilege" and that it is "in no sense a contract or property." *WMS Gaming, Inc. v. Sullivan*, 6 A.3d 1104, 1111 (R.I. 2010) (internal citations omitted) (discussing history of treatment of hairdressing licenses, boxing licenses, and gaming licenses as incapable of conveying a property right). Thus, the Court recognized that "[a] license is a revocable interest under Rhode Island law." *Id*. The holding in *WMS Gaming* also accords with the *Mosby* decision, where the Rhode Island Supreme Court held that are no constitutional interests in an Attorney General permit sufficient to implicate due process considerations. *Mosby*, 851 A.2d at 1048-49. And while *Bruen* recognized that a state may not ban "public carry altogether," *Bruen* did not hold that an individual has a liberty interest in any one specific permit, particularly where an individual already can public carry. *Bruen*, 142 S. Ct. at 2146.

While this court need not go further in its due process inquiry, Mr. O'Neil fails to state a violation of due process. Mr. O'Neil asserts that the "need" requirement to obtain an Attorney General permit in R.I. Gen. Laws § 11-47-18 is "vague and overbroad in violation of the Fourteenth Amendment" (presumably, Mr. O'Neil refers to the Due Process Clause of the Fourteenth Amendment as he did in his complaint, *see* Complaint, ¶¶ 44-45). ECF 11, at 31-32. In support, Mr. O'Neil only cites cases from the First Amendment void-for-vagueness context. Void-for-vagueness challenges outside of the First Amendment context may only be made on an as applied basis, which Mr. O'Neil fails to do. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).

11

Mr. O'Neil's overbreadth challenge also attempts to improperly repurpose a First Amendment doctrine. He admits as much claiming that "[a] statute is overbroad and unconstitutional under the *First Amendment* where a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep. As previously argued, O'Neil submits that the same standard should apply to a statute restricting Second Amendment rights." ECF 11, at 33 (internal quotations and citations omitted) (emphasis added). There is no precedential basis for an overbreadth challenge outside of the First Amendment context, and accordingly, Mr. O'Neil's overbreadth challenge should be rejected.

Finally, Mr. O'Neil ends with a made-up constitutional doctrine—that the Attorney General's application of its permitting program is "unconstitutionally arbitrary and capricious." ECF 11, at 36. It is unclear whether Mr. O'Neil is making a new due process argument or simply conflating his void-for-vagueness argument with "arbitrary and capricious" review in the federal Administrative Procedures Act context. *See* 5 U.S.C. § 706(2)(A). The point remains, however, that the Rhode Island Supreme Court has already held that the Attorney General's discretion in § 11-47-18 does not violate due process and exercises of discretion in permitting decisions are subject to judicial review by the Rhode Island Supreme Court through the common law writ of certiorari. *See Mosby*, 851 A.2d at 1050. Mr. O'Neil's dive into the present and future of the *Chevron* doctrine ignores the general point that both state court precedent and analogy to judicial review of federal agency action confirm that Attorney General permitting decisions accord with due process. *See* ECF 11, at 36-37.

## CONCLUSION

Defendants therefore respectfully ask this Court to grant their Motion to Dismiss for the reasons stated herein.

Respectfully submitted,

Defendants,

**STATE OF RHODE ISLAND AND RHODE ISLAND ATTORNEY GENERAL PETER NERONHA**, in his official capacity,

By:

**PETER F. NERONHA
ATTORNEY GENERAL**

*/s/ Samuel Ackerman*
Sarah Rice (#10465)
Assistant Attorney General
srice@riag.ri.gov
Samuel Ackerman (#10586)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2113
(401) 222-2995 (Fax)
sackerman@riag.ri.gov

## CERTIFICATION

I, the undersigned, hereby certify that I have filed the within Document via the ECF System and that it is available for viewing and downloading on this 1st day of June, 2023.

*/s/ Samuel Ackerman*