UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL O'NEIL )<br>    Plaintiff )<br>)<br>Vs. )<br>)<br>PETER F. NERONHA, in his official capacity as )<br>Attorney General of the State of Rhode Island, and )<br>THE STATE OF RHODE ISLAND )<br>    Defendants ) | C.A. 23-cv-70 |

### PLAINTIFF'S REPLY RESPECTING HIS
### MOTION FOR PRELIMINARY INJUNCTION

Defendants base their Objection to Plaintiff Michael O'Neil's Motion for Preliminary Objection in part on the merits of O'Neil's claims as they argue in their Motion to Dismiss which they largely incorporate by reference. In that regard, O'Neil incorporates the arguments he has made on the merits in his Motion and in his Objection to the Motion to Dismiss. Defendants' new arguments in their Objection to O'Neil's Motion focus on the issue of whether he has shown irreparable harm based on the time lapse between the Rhode Island Supreme Court's denial of his petition for writ of certiorari and the filing of this lawsuit. Accordingly, this Reply will similarly focus on that issue but also address other factors, briefly.

First, O'Neil notes the case law he has previously cited that deprivation of a constitutional right is *per se* an irreparable harm. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); Harris v. Wall, 217 F.Supp.3d at 560 ("[T]he loss of religious freedom…standing alone—is sufficient to show irreparable harm and…the protection of religious practice is an

1

important public interest.");[1] Boland v. Banta, SACV 22-01421, 2023 WL 2588565 at *9 (C.D.Cal. Mar. 20, 2023) (holding that a violation of Second Amendment rights is an irreparable injury and enjoining a California statute which requires certain safety features on handguns); Spencer v. Nigrelli, No. 22-CV-6486, 2022 WL 17985966 at *13 (W.D.N.Y. Dec. 29, 2022) (holding that an infringement of Second Amendment rights is an irreparable injury and enjoining a New York statute that makes it a felony for any CCW license holder to possess a firearm in a place of worship); see also, Barnett v. Raoul, No. 3:23-cv-00209, 2023 WL 3160285 at *4 (S.D.Ill. Apr. 28, 2023) (violation of plaintiff's Second Amendment rights to purchase handguns and accessories constituted irreparable harm); Siegel v. Platkin, C.A. No. 22-7464, 2023 WL 1103676, at *19 (D.N.J. Jan. 30, 2023) (holding that CCW permit holders had shown likelihood of success on the merits in Second Amendment challenge to New Jersey legislation restricting locations where they could engage in concealed carry and that this constituted irreparable harm).

By contrast, most of the decisions Defendants string cite in their Objection are not claims for violation of constitutional or civil rights. (Defendants' Objection, p. 7). Rather, they involve various other common law or statutory claims in which irreparable harm is not presumed. See, e.g., Adventist Health System/SunBelt Inc. v. USHHS, 17 F.3th 793 (8th Cir. 2021) (claim alleging defendants' implementation of the National Organ Transplant Act violated the Administrative Procedure Act); Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244 (11th Cir. 2016) (claim for "reverse-confusion" trademark violation); Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26 (1st Cir. 2011) (trademark dispute); Weight Watchers Int'l v. Luigino's,

---

[1] O'Neil cites to First Amendment precedent because in Bruen and in District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court analogized Second Amendment analysis to First Amendment analysis numerous times. See, Bruen, 142 S.Ct. at 2130, 2132, 2138, 2156; Heller, 554 U.S. at 582, 595, 606, 618, 634-35.

Inc., 423 F.3d 137 (2nd Cir. 2005) (trademark dispute); Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151 (1st Cir. 2004) (claims for breaches of contract and covenant of good faith dealing); Citibank, N.A. v. Citytrust, 756 F.2d 273 (2nd Cir. 1985) (trademark claims); Utah Gospel Mission v. Salt Lake City Corp., 416 F.Supp.2d 1201 (D.Utah 2004), aff'd, 425 F.3d 1249 (10th Cir. 2005) (dispute over sale of an easement).

The constitutional cases on which Defendants rely for this argument are easily distinguished. In Benisek v. Lamone, 138 S.Ct. 1942 (2018), voters filed suit challenging a state redistricting map but did not move for a preliminary injunction until some six years and three general elections after the map was adopted. The district court said this was not reasonable diligence. Further, the challengers filed their motion in May 2017 and demanded the court issue the injunction by August 18, 2017, to ensure the timely completion of a new districting scheme for the 2018 election season. However, that deadline had come and gone by the time the district court rendered its decision denying the motion. Finally, the district court noted that the Supreme Court had another case pending before it which might address the arguments in Benisek. Based on these factors, the district court denied the motion for preliminary injunction and stayed the case. The Supreme Court affirmed, finding these were all good reasons to deny a preliminary injunction and noting that the "'purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" Id. at 1945, quoting, University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

Here, when the Rhode Island Supreme Court denied his petition for writ of certiorari in December 2021, Bruen was pending before the United States Supreme Court. Obviously, it made sense to await the Court's decision before pursuing legal remedies in this court. Indeed, a court might have stayed this action until the Supreme Court had ruled. The Court

3

rendered its decision in June 2022. O'Neil began preparing this action after that decision. O'Neil filed his motion for preliminary injunction soon after filing suit and weeks before Defendants filed their Motion to Dismiss. He has not set any artificial deadline on the court's decision. Finally, he seeks to preserve the status quo ante, i.e., he gets to keep the permit he has had since 2013 and which was renewed in 2017. Id.

In Equity in Athletics, Inc. v. U.S. Dep't of Education, 291 Fed.Appx. 517 (4th Cir. 2008), James Madison University announced a plan in September 2006 to eliminate seven men's sports teams and three women's sports teams from its intercollegiate athletic program to comply with Title IX. The cuts were to become effective in July 2007. A group of athletes, coaches, and fans of the University's sports teams formed the plaintiff organization and, in March 2007, filed suit against the U.S. Department of Education challenging Title IX and the defendant's enforcement of it. Plaintiff asked the University to forebear from making the cuts until a decision in their case. The University declined so plaintiff added it as a defendant in June 2007. The district court denied plaintiff's preliminary injunction motion and defendants appealed.

The Fourth Circuit said a ruling on a preliminary injunction motion required a balancing of the factors involved. It said that for the plaintiff to prevail, plaintiff must show a greater degree of hardship if its likelihood of success was not clear. Id. at 522. The court said that where plaintiff did not file its motion until fifteen days prior to the effective date of the cuts and the University had already terminated the coaches, cancelled games, and reallocated the funding for the teams, there was not an imbalance of hardship in favor of the plaintiff. Id. Moreover, courts had consistently rejected plaintiff's argument. Id. at 523. Accordingly, the Fourth Circuit said the district court had not abused its discretion when it denied the preliminary injunction motion. Id. at 524.

Here, O'Neil has identified hardships. He cannot engage in open carry. He cannot obtain a CCW permit in other states because he no longer has the Rhode Island permit. He may be subject to criminal prosecution if his municipal permit lapses and he engages in concealed carry. His ability to renew his CCW permits from other states may be prejudiced. And, most importantly, he has been deprived of a constitutional right to obtain a state CCW permit without a showing of need, contrary to Bruen. By contrast, Defendants have identified no prejudice to them by the timing of O'Neil's motion. Rather, their only hardship would be the inability to continue enforcing an unconstitutional requirement of "need."[2]

In Doe v. Banos, 713 F.Supp.2d 404 (D.N.J. 2010), the father of a high school student who played lacrosse challenged the school district requirement that a parent consent to the district's policy that any student participating in school-sponsored sports abstain from drugs and alcohol. Both the student and her parents were required to sign forms acknowledging the policy. The father alleged the policy violated his First Amendment right to criticize the policy. The student's parents first filed suit in New Jersey Superior Court in December 2009. In February 2010, the Superior Court dismissed the complaint and instructed plaintiffs to file an administrative complaint with the state Department of Education, which they did. In March 2010, plaintiffs filed suit in federal district court. Shortly thereafter, a state administrative law judge denied their administrative complaint. The plaintiffs subsequently filed a preliminary injunction motion in federal court.

The district said that the policy and the acknowledgement form did not chill the parent's right. Id. at 412. Rather, it was intended to elicit an affirmation that his daughter would comply.

---

[2] Defendants correctly point out that O'Neil misstated that a seven-day waiting period applies to him if he does not have a State CCW permit. (Defendants' Reply respecting their Motion to Dismiss, p. 2). O'Neil regrets the error. However, it highlights why O'Neil would want both the State and a municipal permit because each has its advantages with respect to self-defense.

Further, the court said the policy was likely constitutional. Id. at 413. Only in a footnote did the court address plaintiff's "lack of urgency" in bringing his motion until after the lacrosse season had started. Id. at 415, n. 15. In short, it was at most a passing aspect of the decision.

Here, O'Neil filed his motion shortly after filing this suit. He has suffered hardship in the denial of his permit and the attendant harms already discussed. Defendants have identified no harm to them resulting from the timing of O'Neil's motion. Their only harm is being required to renew the permit O'Neil has had since 2013 and which was previously renewed in 2017, as well as the inability to enforce an unconstitutional requirement of "need." That is no hardship, at all.

With respect to the balance of hardships, they clearly weigh in favor of maintaining the status quo, which is letting O'Neil keep the CCW permit he has had since 2013 and which the Defendants' renewed in 2017 under a previous Attorney General. University of Texas v. Camenisch, 451 U.S. at 395. Contrary to Defendants' argument, they are not implementing a "longstanding policy choice." Rather, they are implementing the policy choice of this particular Attorney General.

Moreover, Defendants make the circular argument that "any time a State is enjoined from effectuating statutes enacted by representatives of its people, it suffers irreparable injury," citing only Maryland v. King, 576 U.S. 1301 (2012). That argument presumes that the statute in question is constitutional as demonstrated by that single decision. In that case, the Maryland Court of Appeals had held that the warrantless collection of a criminal defendant's DNA pursuant to the state's DNA Collection Act violated the Fourth Amendment. The State requested a stay of the judgment pending the Supreme Court's decision on its petition for writ of certiorari. Chief Justice Roberts granted the stay finding the State was likely to prevail on the merits, which it did. Maryland v. King, 569 U.S. 435 (2013).

Significantly, the Chief Justice rejected the defendant's argument that the State's eight-week delay in seeking the stay undercut its stay request commenting that two Courts of Appeal and another state high court had upheld warrantless DNA collection. 576 U.S. at 1303-04. O'Neil also notes that the only two times anyone on the Court has cited the Chief Justice's statement about a state suffering irreparable injury was when Justice Thomas dissented from the <u>denials</u> of a petition for writ of certiorari or of a request for a stay. <u>Republican Party of Pennsylvania v. Degraffenreid</u>, 141 S.Ct. 732, 733 (2021) (dissenting from the denial of a petition for writ of certiorari); <u>Strange v. Searcy</u>, 574 U.S. 1145, 1145 (2015) (dissenting from the denial of a motion for stay). Notably, the Chief Justice did not join him in those dissents. O'Neil submits that this authority would be a very slim reed on which deny O'Neil's Motion.

The court in <u>Siegel v. Platkin</u> rejected this argument in circumstances where the plaintiffs were subject to potential criminal prosecution and the statute was likely unconstitutional, as here. 2023 WL 1103676 at *20 ("The threat of criminal prosecution for exercising their Second Amendment rights, as the holders of valid permits form the State to conceal carry handguns, constitutes irreparable injury on behalf of Plaintiffs, and neither the State nor the public has an interest in enforcing unconstitutional laws."); see also, <u>Barnett v. Raoul</u>, 2023 WL 3160285 at *11, quoting, <u>Joelner v. Village of Washington Park</u>, 378 F.3d 613, 620 ("[T]he can be 'no harm to a [governmental agency] when it is prevented from enforcing an unconstitutional statute.'").

Defendants incorrectly argue that "the core Second Amendment right protected in <u>Bruen</u> is the legal ability to 'carry arms in public' which Mr. O'Neil may do by virtue of his existing municipal permit" citing <u>Bruen</u>, 147 S.Ct. at 2156 and 2146. (Defendants' Reply respecting their Motion to Dismiss, p. 10). Supposedly, this means Defendants can deny O'Neil the right to open carry by denying the renewal of his State CCW permit.

Defendants completely misread Bruen. First, nowhere does the Court state that proposition. The Court actually said: "Respondents cited opinions agreed that concealed carry prohibitions were constitutional only if they did not similarly prohibit *open* carry" (emphasis original), id. at 2146, an argument the Court clearly rejects. Second, the Court distinguished state statutes which permitted open carry but banned concealed carry. Id. at 2144. ("Moreover, the [New Jersey] law prohibited only the *concealed* carry of pocket pistols; it presumably did not by its terms touch the open carry of larger, presumably more common pistols…"). Third, the Court cites Heller in which it similarly discussed with approval state court decisions upholding the right to open carry. 554 U.S. at 570, citing, Nunn v. State, 1 Ga.243, 251 (1846); State v. Chandler, 5 La. Ann. 489, 490 (1850). Here, Defendants' denial of O'Neil's renewal application means they are prohibiting him from open carry, as well as the other benefits of the State permit. Indeed, Defendants' proposition of law would greatly limit the principal holding of Heller that private citizens have a right to carry arms in public for their self-defense by limiting that right to concealable (and presumably concealed) weapons. Notably, Defendants cite no decision so holding and apparently invite this Court to venture first into that dubious jurisprudence.

Defendants also repeatedly argue that O'Neil has not pled all the benefits and reasons to have the State CCW permit in addition to the municipal permit. However, there is no requirement that he do so. To establish standing, he need only plead "an injury" resulting from Defendants' unconstitutional action. Doe v. Shibenette, 16 F.4th 894, 901 (1st Cir. 2021), quoting Spokeo v. Robins, 1540, 1547 (2016). Defendants cite no decision holding that a plaintiff must plead every injury he might have sustained from their unconstitutional action. Here, O'Neil alleges that Defendants denied the renewal of his State CCW permit because he failed to make a required showing of "need," which requirement is precluded by the Second Amendment pursuant to Bruen.

That denial of a constitutional right constitutes an irreparable injury and confers standing regardless of whether O'Neil has other reasons to want the State permit.

Finally, Defendants offer no sworn statement or other evidence in opposition to O'Neil's motion nor do they assert there are other relevant, material facts. O'Neil submits that, in these circumstances, his preliminary injunction motion and Defendants' motion to dismiss are essentially cross motions for summary judgment. See, F.R.Civ.P 65(a)(2);[3] see, Teva Pharmaceuticals USA, Inc. v. Food & Drug Administration, 441 F.3d 1, 3 (D.C.Cir. 1999) (permitting consolidation of hearing on preliminary injunction with motion for summary judgment). Accordingly, the timing of his motion is irrelevant.

## CONCLUSION

The Court should grant O'Neil's motion for a preliminary injunction.

Respectfully submitted,
**MICHAEL O'NEIL**
By his attorneys,

/s/ Thomas W. Lyons
Thomas W. Lyons       #2946
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

/s/ Frank R. Saccoccio
Frank R. Saccoccio Esq. #5949
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island 02919
(401) 944-1600 * 942-8921 Fax
Frank.CSLawOffice@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2023, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons

---

[3] "Before or after the beginning of the hearing on a motion for preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."