UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL O'NEIL, : | |
|     *Plaintiff*, : | |
| : | |
| v. : | C.A. No.: 23-cv-70 |
| : | |
| PETER F. NERONHA, in his official : | |
| Capacity as Attorney General of the State : | |
| Of Rhode Island, and THE STATE OF : | |
| RHODE ISLAND : | |
|     *Defendants*, : | |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DIMISS THE AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1) AND FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6

Defendants Peter F. Neronha, in his official capacity as Attorney General of Rhode Island and the State of Rhode Island ("State Defendants") move to dismiss the Amended Complaint based on lack of subject matter jurisdiction because the new amended factual allegations destroy any present case or controversy between Mr. O'Neil and the State Defendants. If Mr. O'Neil had presented his new assertions that he seeks an Attorney General-issued license to open carry given the particularly dangerous nature of his lawful business, the Attorney General would consider Mr. O'Neil's application and may issue a license even though Mr. O'Neil already possesses a municipally issued concealed carry permit. In fact, the Attorney General has issued a concealed carry permit to an applicant who already possessed a municipal license for similar reasons on at least one occasion. Given that if Mr. O'Neil presents his new factual allegations in a permit application to the Attorney General, he may obtain all of the relief he seeks from this federal lawsuit, he does not have standing and his claim is not ripe for federal adjudication because no current case or controversy exists. Moreover, the State Defendants re-raise the arguments set forth

1

in their first motion to dismiss the original complaint by reference, as explained below, in order to demonstrate that they have not waived those arguments.

## PROCEDURAL AND JURISDICTIONAL BACKGROUND

Mr. O'Neil filed his original complaint in February 2023 and a motion for preliminary injunction in April 2023. Docs. 1; 7. The State defendants filed a motion to dismiss and opposition to the preliminary injunction. Docs. 9; 10. Those matters came before the court for hearing on June 22, 2023. Following the hearing, the Court entered a text order granting in part and denying in part the State Defendant's motion to dismiss. Text Order (June 28, 2023). Specifically, the Court denied the State Defendant's motion insofar as it made arguments under *Rooker-Feldman*, *Pullman* abstention, and res judicata. *Id.* The Court agreed with the State Defendant's motion to dismiss all of the claims for compensatory and punitive damages in the Complaint. *Id.* Lastly, the Court concluded that the Complaint as pleaded did not establish O'Neil's standing because he already is permitted to publicly carry a firearm in Rhode Island, but identified arguments made during oral argument proffering Mr. O'Neil's interest in a general right to "open carry" firearms, in addition to the right to publicly carry firearms described in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022), that could potentially render the claims articulated in the complaint ripe for adjudication. *Id.* Because the Court dismissed the Complaint without prejudice, O'Neil's motion for preliminary injunction was denied as moot. *Id.*

In response to the Text Order, O'Neil filed the Amended Complaint on July 19, 2023. Doc. 14. Although no comparison copy was filed, as it relates to the Text Order, the Amended Complaint primarily adds allegations that "O'Neil wants the option to engage in 'open' carry of a weapon because [he] . . . has recently opened a firearm business in the State of Rhode Island." Amended Compl. ¶ 24. Mr. O'Neil has further alleged a "need for open carry" because, as a result

2

of that business, he will "be in possession of numerous firearms" and "may be required to accept delivery" and "transport" firearms. *Id.* ¶¶ 25-26.

The RIAG Pistol Permit Policy, which has been in effect since 2001, explains that a RIAG pistol permit may be granted if the applicant has demonstrated "a specific articulable risk to life, limb or property" and that a RIAG pistol permit "will decrease the risk." Doc. 14-1, 4. Although the Attorney General retains discretion to issue or deny a permit, *id.*, as a practical matter RIAG has issued pistol permits in circumstances like Mr. O'Neil's. Troiano Decl, attached as Exhibit 1. That is, when an applicant already possesses a municipal permit, but articulates a need to open carry a firearm to deter robbery during the conduct of their lawful business, the RIAG has granted an Attorney General-issues pistol permit to a municipal permit holder. *Id.* Therefore, if Mr. O'Neil adequately described the same circumstances alleged in the Amended Complaint in an application to the RIAG, they would be considered, and RIAG may grant O'Neil the permit. *Id.*

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). "There are two species of 12(b)(1) attacks on subject-matter jurisdiction: facial and factual challenges." *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 265 (1st Cir. 2022), cert. granted, 215 L. Ed. 2d 278, 143 S. Ct. 1053 (2023) (citing *Torres-Negrón v. J & N Recs., LLC*, 504 F.3d 151, 162 (1st Cir. 2007)). "If the attack is factual, then the court 'need not accept the plaintiff's allegations as true but can 'weigh the evidence and satisfy itself as to the existence

3

of its power to hear the case.'" *Id.* (quoting *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 61 n.5 (1st Cir. 2021)).

"When the attack is facial, the relevant facts are the well-pleaded allegations in the complaint, which the court must take as true." *Id.* (citing *Toddle Inn Franchising, LLC*, 8 F.4th at 61 n.5). Nonetheless, even against a facial challenge, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Id.* (citing, inter alia, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). When considering a 12(b)(1) motion that has at its core factual assertions, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Torres-Negrón*, 504 F.3d at 163 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## ARGUMENT

**I.   THE AMENDED COMPLAINT'S ALLEGATIONS DO NOT ESTABLISH ARTICLE III JURISDICTION.**

Even a second bite at the apple was insufficient for Mr. O'Neil to establish a case or controversy capable of federal adjudication regarding his assertions that, despite his active pistol permit allowing him to carry a handgun throughout Rhode Island, he has been deprived of a Second Amendment right. This is so because "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)) (alteration in *Spokeo*). The limitation is necessary to "ensure[] the federal courts aren't morphed into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Laufer v. Acheson Hotels,*

4

*LLC*, 50 F.4th 259, 266 (1st Cir. 2022), cert. granted 143 S. Ct. 1053 (2023) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). "Two of the limitation's manifestations are the justiciability doctrines of standing and ripeness, which are interrelated; each is rooted in Article III." *Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017). Here, O'Neil fails to establish an actual case or controversy exists on both standing and ripeness grounds.

### A. Mr. O'Neil Has Not Alleged An Injury Sufficient to Confer Standing.

To establish standing, Mr. O'Neil must, "[f]irst and foremost," establish an "injury in fact." *Spokeo*, 578 U.S. at 338 (internal quotations omitted). "To satisfy Article III, the injury must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Reddy*, 845 F.3d at 500 (internal quotations omitted). An "injury is imminent if it is certainly impending or if there is a substantial risk that harm will occur." *Id.* Here, Mr. O'Neil alleges a future injury but cannot establish that the injury is either certainly impending or that there is a substantial risk the harm will actually occur.

Mr. O'Neil nowhere alleges that he presented the new allegations in his complaint regarding his new firearms business, or an intent to engage in a firearms business, to RIAG as part of a permit application process. *See generally*, Amended Compl. That is because he cannot do so; he did not present this rationale to RIAG in the application at issue in the Amended Complaint. Troiano Aff. ¶ 6. There is therefore no basis to conclude that any injury is "certainly impending"—there is no decision pending and no indication it would be a denial. In fact, given that the RIAG has granted a RIAG-issued permit to an applicant with a municipal permit based on facts stated in the application regarding a need to open carry in order to deter robbery, Troiano Aff. ¶ 5, it is also

5

far from a "substantial risk" that Mr. O'Neil's permit application would be denied. *See also id.* at ¶ 7.

  **B.**  **Mr. O'Neil's Claims Are Not Yet Ripe.**

"[R]ipeness 'substantially replicate[s] the standing inquiry' in many respects." *Reddy*, 845 F.3d at 499 (quoting Richard H. Fallon et al., Hart and Wechsler's The Federal Courts and the Federal System 219-20 (7th ed. 2015)). Part of ripeness doctrine is rooted in Article III concerns and part of ripeness doctrine consists of prudential concerns. *Id.* at 500. "A claim is not ripe for adjudication if it rests upon '"contingent future events that may not occur as anticipated, or indeed may not occur at all."'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580-81 (1985)). This maxim applies equally to "a facial challenge to a statute." *Reddy*, 845 F.3d at 501. The inquiry is divided into two pieces—the "fitness" prong and the "hardship" prong. *Penobscot Nation v. Frey*, 3 F.4th 484, 509 (1st Cir. 2021).

  The "fitness" prong asks whether the future event "may not occur as anticipated or may not occur at all." *Id.* Even if a court "is capable of resolving a claim intelligently," based primarily on legal factors, it may not be "appropriate for the court to undertake the task." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995). "Federal courts cannot—and should not—spend their scarce resources in what amounts to shadow boxing." *Id.* Mr. O'Neil has not alleged that he should be permitted under the Second Amendment to open carry without any permit at all, and therefore his claim apparently hinges on the RIAG denying him the permit he seeks. But that denial may never occur. Troiano Decl. ¶¶ 4, 5, 7. Even if RIAG did end up denying the permit based on whatever hypothetical materials Mr. O'Neil submitted, it is very possible the denial would not bear on the issue Mr. O'Neil seeks to raise in this case, namely

6

whether the right to public carry articulated in *Bruen* requires, as a matter of constitutional fiat, a state to issue permits both for concealed carry and open carry of firearms. "Until the dispute ripens, and more facts come to light," this Court cannot perform the asked-for constitutional analysis in a claim-specific manner, because the only claims asserted are hypothetical. *Reddy*, 845 F.3d at 505. And, of course, Mr. O'Neil may himself ultimately be permitted to carry his pistols open and concealed if he completes the appropriate application process. "[T]hat the future event may never come to pass augurs against a finding of fitness." *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 72 (1st Cir. 2003).

The hardship prong is also not satisfied here. It "is prudential and asks what harm would come to those seeking relief if" the court were to withhold a decision. *Frey*, 3 F.4th at 509. Here, any harm would be extremely limited. First, Mr. O'Neil received RIAG's final denial of his October 2020 permit in July 2021 and the Rhode Island Supreme Court's decision on his petition for writ of certiorari in December 2021. Amended Compl. ¶¶ 15-21. Mr. O'Neil has therefore been without the ability to open carry in Rhode Island for several years, although he has only just added allegations asserting deprivation of that ability, more than one year after *Bruen*. He has been granted concealed carry firearms permits in Rhode Island and in other states. Amended Compl. ¶¶ 14, 29. Mr. O'Neil may even find relief as rapidly through reapplication as through this court's adjudication process; RIAG responded to his previous application within three months. Amended Compl. ¶ 16. There is therefore "no apparent prejudice" to Mr. O'Neil if he "must wait until" his application is denied (which may never happen) "to sue." *Reddy*, 845 F.3d at 505.

**II.    THE INFIRMITIES IN THE ORIGINAL COMPLAINT REMAIN.**

Mr. O'Neil continues to contend in the Amended Complaint that *other state's* decisions on his permit applications (which have not yet been made) are a basis for his federal claims. *E.g.*

7

Amended Compl. ¶ 50. Mr. O'Neil does not have standing to bring these claims and these claims are not ripe for the reasons stated in the State Defendants' Memorandum in Support of its Motion to Dismiss the Complaint, Document 9, Sections I and II, which are hereby fully incorporated as if fully set forth herein.

Moreover, the State Defendants recognize that this Court partially denied the Motion to Dismiss and that re-raising all of the arguments therein in full would not be an efficient use of the Court's resources. However, for the avoidance of doubt, State Defendants continue to assert and have not waived the arguments set forth in Document 9, and to that end further incorporate the balance of Document 9 by reference into this memorandum as if fully set forth herein. That is, the State Defendants maintain, while recognizing this Court rejected, the argument that the holding of *Mosby v. Devine*, 851 A.2d 1031 (R.I. 2004) implies that decisions of petitions for writs of certiorari are decisions on the merits for handgun permit application reviews and Rhode Island; that Mr. O'Neil here seeks identical relief to that sought in his petition for writ of certiorari; and that therefore *Rooker-Feldman* and claim preclusion are applicable to this case and mandate dismissal. Furthermore, *Pullman* abstention doctrine counsels abstention here for the reasons discussed in Document 9. Last, *Bruen* itself recognized Rhode Island's licensing scheme as constitutionally permissible and the claims should be dismissed on that basis. *Bruen*, 142 S. Ct. at 2138 n.9, 2161 (Kavanaugh, J., concurring) ("the Court's decision does not affect the existing licensing regimes").

## CONCLUSION

For these reasons and those articulated in State Defendants' Motion to Dismiss the Complaint, Document 9, Mr. O'Neil's claims should be dismissed in their entirety.

Respectfully submitted,

Defendants,

**STATE OF RHODE ISLAND AND RHODE ISLAND ATTORNEY GENERAL PETER NERONHA**, in his official capacity,

By:

PETER F. NERONHA
ATTORNEY GENERAL


*/s/ Sarah W. Rice*

Sarah W. Rice (#10465)
Assistant Attorney General
srice@riag.ri.gov
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2054
(401) 222-2995 (Fax)


**CERTIFICATION**

I, the undersigned, hereby certify that I have filed the within Document via the ECF System and that it is available for viewing and downloading on this 2nd day of August, 2023.

*/s/ Sarah W. Rice*