UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL P. O'NEIL )<br>    Plaintiff )<br> )<br>v. )<br> )<br>PETER F. NERONHA, in his official )<br>capacity as Attorney General of the State )<br>of Rhode Island, and THE STATE OF )<br>RHODE ISLAND )<br>    Defendant(s) ) | C.A. No. 23-cv-70 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

The Defendants have moved to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction arguing that Plaintiff's claims are moot because they <u>might</u> give him a concealed carry (CCW) permit under the facts alleged. However, Plaintiff's claims are not moot until Defendants have <u>actually</u> given him a CCW permit. Plaintiff asserts he is presently entitled to a permit under <u>Bruen</u> based on the allegations of his complaint regardless of Defendants' permitting procedures. Moreover, Plaintiff's claim falls within recognized exceptions to the mootness doctrine. Further, Plaintiff will be moving to amend the complaint to add additional plaintiffs to whom Defendants' mootness argument does not apply.

Finally, Defendants restate their arguments in support of their prior motion to dismiss so as to preserve them. The Court should reject those arguments for the same reason it rejected them in its June 28, 2023 text order.

**ALLEGATIONS OF THE AMENDED COMPLAINT**

Various allegations of Plaintiff's Amended Complaint as well as Defendants' Affidavit refute Defendants' Motion to Dismiss based on mootness. Plaintiff holds a municipal-issued CCW

permit which requires that he have a "proper reason for carrying a pistol or revolver" and be a "suitable person to be so licenced." (Amended Complaint, ¶ 8). Plaintiff obtained a State-issued permit in 2013 and it was renewed in 2017. (¶ 13). However, only the State-issued CCW permit allows a person to engage in open carry. (¶¶ 9, 28). Plaintiff wants the option to engage in open carry because he wants to operate and has begun operating a firearm business in Rhode Island. (¶24). As a result, he will be in possession of numerous firearms, will be accepting delivery of firearms, and may be required to transport and deliver firearms to customers. (¶¶ 25-27).

In N.Y. State Rifle and Pistol Association v. Bruen, 142 S.Ct. 2111 (2022), the Supreme Court expressly rejected the statutory schemes of so-called "may issue" states whereby "authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria," such as when "the applicant has not demonstrated…suitability for the relevant license." (¶ 43). Instead, the burden is on the government to justify its regulation as consistent with the "Nation's historical tradition of firearm regulation." (¶ 46). Bruen disapproved of discretion during the permitting process, instead making clear that governments may only rely on stringent statutory criteria. (¶ 48). Accordingly, subject to a few specific limitations, if a member of "the people" "wishes to "bear" a protected "arm," then the government shall not infringe that right. (¶ 44).

Contrary to Bruen, Defendants assert that there is no "set formula or criteria to limit or restrict the Attorney General's decision to issue or deny a pistol permit." (¶ 12, Exhibit A). On January 25, 2021, the Attorney General's office denied Plaintiff's CCW application, stating, *inter alia*, the Attorney General had "broad discretion to issue a permit to carry a pistol or revolver." (¶

2

16, Exhibit C).[1] On April 1, 2021, the Attorney General indicated that while O'Neil had cited self-defense as a reason for the permit, as well as the other reasons, the "need" was insufficient, and decided "in its broad discretion to issue a permit…to deny your application due to the fact you have not provided a proper showing of need…" (Id., ¶ 18, Exhibit D).

Defendants' new motion to dismiss reaffirms their assertion of discretion. Defendants' denial of Plaintiff's application to renew his State CCW permit denies him the right to engage in "open" carry in Rhode Island. (¶ 49). By infringing the right to bear arm in public, Defendants' laws and regulations violate the Second Amendment. (¶ 51). Defendants' denial of Plaintiff's CCW permit infringes his rights under the Second Amendment. (¶ 52).

The fourth paragraph of the Troiano Affidavit states:

> In the general case, if an applicant articulates a sufficient showing of need for a RIAG-issued permit, in addition to a municipal permit the applicant already holds, RIAG will consider that need and **may** issue the second permit. An example of the types of reasons that **may** lead to issuance of a RIAG permit to an applicant who already possesses a municipal permit would include an articulated need to open carry in order to deter robbery in the operation of a federally licensed firearms retail dealership. (emphasis added).

(Troiano Affidavit, ¶ 4). In the seventh paragraph, Troiano says: "If Mr. O'Neil presented the facts alleged in the complaint on his application, the RIAG **would consider** whether to issue a RIAG permit in addition to Mr. O'Neil's municipal permits based on those facts…" (emphasis added) (Troiano Affidavit, ¶ 7).

---

[1] The letter cited Mosby v. Devine, 851 A.2d 1031 (R.I. 2004), for this position. Notably, however, that decision found that the constitutional right to "bear arms" relates exclusively to military service." Id. at 1041. That is an interpretation the Supreme Court has squarely rejected. Bruen, 142 S.Ct at 2134. Accordingly, the decision is of limited precedential value in this case.

# ARGUMENT

## I. DEFENDANTS HAVE NOT ESTABLISHED THAT PLAINTIFF'S CLAIMS ARE MOOT

Defendants have failed to establish that O'Neil's claims are moot under the facts alleged in the Amended Complaint. To the contrary, O'Neil's complaint states a claim against Defendants regardless of whether they will consider another application for the CCW permit. The Supreme Court has said that a party "cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013). The Court continued:

> Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."

Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (Roberts, C.J.), quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 190 (2002) (Ginsburg, J.). This is the so-called "voluntary cessation" doctrine which this Court has previously applied. K.S. v. R.I. Board of Education, 44 F.Supp.3d 193, 196 (D.R.I. 2014) (denying defendants' motion to dismiss based in part on purported mootness).

In Already, Nike filed suit against Already alleging trademark infringement and Already counterclaimed alleging Nike's mark was invalid. Several months later, Nike issued a "Covenant Not to Sue" which stated, in part:

> [Nike] unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s)…against Already or any of its…related business entities…on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution under state or law…relating to the NIKE Mark based on the appearance of any of Already's current and/or previous footwear product designs…

Nike then filed a motion to dismiss the lawsuit arguing that its Covenant Not to Sue rendered the action moot. The district court granted the motion and the Second Circuit affirmed.

4

The Supreme Court granted Already's certiorari petition and reviewed the language of the Covenant. It said: "The breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test.  The covenant is unconditional and irrevocable. Beyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim or any demand." Id. at 93. The Court affirmed. Id. at 101.

By contrast, the Court held plaintiff's claim was not moot in Friends of the Earth. In that case, plaintiff filed suit alleging that defendant was violating the Clean Water Act by not complying with the terms of its federally-issued permit respecting the discharge of pollutants by a hazardous waste incinerator.  Defendant continued to violate its permit after suit was filed but subsequently came into compliance with the permit.  It moved to dismiss plaintiff's suit for lack of standing because of mootness.  The district court denied the motion but the Fourth Circuit reversed.  The Supreme Court granted plaintiff's petition for writ of certiorari.  Sometime between the Fourth Circuit's decision and the grant of the certiorari petition, defendant shut down the offending plant.

Justice Ginsburg said: "[T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent…" 528 U.S. at 189. She then cited the standard that Chief Justice quoted in Already.  "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id. The Court emphasized that since defendant was not in compliance when plaintiff filed suit, its subsequent compliance did not necessarily moot the case, noting that if it did, "the exception to mootness that arises when the defendant's allegedly unlawful conduct is 'capable of repetition, yet evading review, could not exist." Id. at 190-91, citing Olmstead v. L.C., 527 U.S. 594 n. 6 (1999) (holding that where a mentally disabled patient filed a lawsuit

5

challenging her confinement in a segregated institution, her postcomplaint transfer to a community-based program did not moot her action).

Similarly, in Synopsys, Inc. v. Risk Based Security, Inc., 70 F.4th 759 (4th Cir. 2023), the Fourth Circuit addressed the issue of whether a covenant not to sue had mooted a case. The court said it depended on the claims and relief sought in the complaint compared to the scope of the covenant not to sue. Id. at 765. In that case, both plaintiff and defendant were companies that evaluated potential vulnerabilities in open-source code. Plaintiff became authorized by the Department of Homeland Security to engage in certain activities to further this work. Defendant accused plaintiff of engaging in unlawful conduct respecting defendant's database, said plaintiff's activities as authorized by DHS escalated that wrongful conduct, and sent it a cease-and-desist letter. Plaintiff filed suit seeking a declaratory judgment that it had not misappropriated defendants' trade secrets. Defendant issued a covenant not to sue and moved to dismiss the case based on mootness. The district court found the covenant was not sufficiently broad to cover all the activities in which plaintiff wanted to engage and which defendant had threatened. It denied the motion and entered declaratory judgment for plaintiff. The Fourth Circuit said a comparison of the cease-and-desist letter, plaintiff's complaint, and the covenant not to sue showed that defendant had asserted very broad claims against plaintiff, which had filed suit seeking a declaratory judgment respecting all those claims, but the covenant did not address all of them. Accordingly, it agreed with the district court that the covenant did not moot plaintiff's suit.

Here, Plaintiff filed suit alleging that Defendants had asserted and exercised unbounded discretion in the issue of CCW permits, contrary to the Supreme Court's decision in Bruen. Defendants now assert that Plaintiff's allegations that he wants to engage in open carry because he

will be operating a firearms business moots his claims.[2]  However,  all the Defendants have actually said is that if O'Neil resubmits his application with the additional facts about operating a firearms busines that they <u>might</u> give him a permit.  For example, in fourth paragraph of the Troiano Affidavit, he states:

> In the general case, if an applicant articulates a sufficient showing of need for a RIAG-issued permit, in addition to a municipal permit the applicant already holds, RIAG will consider that need and **may** issue the second permit. An example of the types of reasons that **may** lead to issuance of a RIAG permit to an applicant who already possesses a municipal permit would include an articulated need to open carry in order to deter robbery in the operation of a federally licensed firearms retail dealership. (emphasis added).

(Troiano Affidavit, ¶ 4). Similarly, in the seventh paragraph, Troiano says: "If Mr. O'Neil presented the facts alleged in the complaint on his application, the RIAG **would consider** whether to issue a RIAG permit in addition to Mr. O'Neil's municipal permits based on those facts…" (emphasis added) (Troiano Affidavit, ¶ 7).

Defendants do not state that they <u>will</u> issue Plaintiff his State CCW permit. To the contrary, Defendants continue to assert discretion whether to issue a State CCW permit to Plaintiff. Defendants do not identify stringent statutory criteria which limits their discretion nor do Defendants identify facts consistent with the "Nation's historical tradition of firearm regulation" that support their continued assertion of discretion respecting O'Neil application to renew his permit.  In short, Defendants reassert the kind of unbridled discretion of which the Supreme Court

---

[2] Defendants misstate Plaintiff's claim:  "Mr. O'Neil has not alleged that he should be permitted under the Second Amendment to carry without any permit at all, and therefore his claim apparently hinges on the RIAG denying him the permit he seeks."  (Defendants' Memorandum, p. 6).  The first clause is correct, however, what Plaintiff is disputing is Defendants' claim of unbridled discretion to grant or deny the CCW permit.  Plaintiff asserts he has met all constitutional requirements for the permit, Defendants have identified no constitutional ground to deny it, and therefore he is entitled to it under <u>Bruen</u> and the Second Amendment.

7

disapproved in Bruen. Defendants have not ceased the conduct which is the thrust of Plaintiff's complaint. For this reason, Plaintiff's claim is not moot.

The cases Defendants cite do not support their mootness argument. In Spokeo, Inc. v. Robins, 578 U.S. 330 (2016), the Court said plaintiff had not suffered an "injury in fact" at the time he filed suit. Spokeo is an on-line service that provides information about people. An unidentified person had performed a search about plaintiff and Spokeo had reported some incorrect information. Plaintiff sued alleging a violation of the Fair Credit Reporting Act. The Court said that for plaintiff to establish an injury in fact, he must have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 339. The Court said that violation of a statutory right under the FCRA divorced from any concrete harm, did not satisfy the requirement of an injury in fact. The Court held that the circuit court had failed to consider whether the plaintiff had suffered any concrete harm so its standing analysis was incomplete. Id. at 342-43.

Here, Plaintiff has suffered a concrete harm. He applied to renew the CCW permit he has had since 2013 and Defendants denied his application. That denial deprives Plaintiff of various benefits, including the right to open carry, as he has previously argued and now expressly alleges. This case is very different from Spokeo.

The First Circuit does not even discuss mootness in Penobscot Nation v. Frey, 3 F.4th 484 (1st Cir. 2021) (*en banc*). That case dealt with a dispute between the Penobscot Indian Nation and the State of Maine regarding their respective rights to a portion of the Penobscot River. There were two federal acts that established a Penobscot Indian Reservations and addressed at least some of the rights to the River, including one provision which provided that the Penobscots could take fish from the River for their sustenance notwithstanding any other state or federal law. Maine's

8

attorney general issued a legal opinion, the so-called Schneider Opinion, that the River was not part of the Reservation and that Maine had "exclusive regulatory jurisdiction over activities taking place on the River." The Schneider Opinion did not mention the Penobscot's right to sustenance fishing. The Penobscots filed suit seeking declaratory judgment as to their rights respecting the River including sustenance fishing. The district court issued a declaratory judgment generally addressing the Penobscots' rights respecting the River, including sustenance fishing, specifically.

The First Circuit's *en banc* opinion mostly deals with interpreting the federal acts as applied to the conflicting claims of geographic rights to the Rivers. "The dispute here is over ownership of the River and its submerged lands, and we have explained why we have reached the interpretation we have." Id. at 507. However, the court said the claim that Maine had infringed the Penobscots' fishing rights was not ripe: "We see no imminent threat. The Schneider Opinion does not even mention the Nation's sustenance fishing rights. It does not prevent any tribal member from engaging in sustenance fishing. Maine has not prevented any Nation member from engaging in sustenance fishing." Id. at 508. In other words, the state had never harmed the Plaintiff's right.

The First Circuit took a similar approach in Reddy v. Foster, 845 F.3d 493 (1ˢᵗ Cir. 2017). That case addressed a New Hampshire statute establishing "buffer zones" around abortion clinics. After the statute was promulgated, the Supreme Court held a similar Massachusetts statute unconstitutional, McCullen v. Coakley, 134 S.Ct. 2518 (2014). Pro-life advocates then filed suit in New Hampshire challenging that state's statute. The First Circuit's decision is encapsulated in the opening paragraph of its opinion:

> The district court dismissed without prejudice, for lack of Article III standing, the pre-enforcement challenge to a New Hampshire statute that has not been activated or enforced since its enactment in mid-2014. We agree that the challenge is not ripe and that there is no Article III case or controversy before the court. We affirm the dismissal without prejudice.

9

Id. at 495.

Here, Defendants expressly denied Plaintiff's application to renew his CCW permit. Defendants have directly applied an unconstitutional standard to Plaintiff and his permit application. There was no hypothetical or speculative harm. To the contrary, it is Defendants' mootness argument that is hypothetical and speculative. They say to Plaintiff "if you reapply for the permit and tell us some different facts than you told us previously we just might grant your application." However, Defendants do not say they will issue the CCW permit nor do they disavow the unbridled discretion they have claimed all along notwithstanding the Supreme Court's decision in Bruen. They do not acknowledge any obligation to change their ways in light of that decision. They have only said they might treat the application differently if he now makes different statements in his application. But, they might still deny it, in their discretion, contrary to Bruen.

Defendants cite no case in which a court ruled a plaintiff's claim was moot because the defendant represented after suit was filed that it might grant plaintiff a permit if he reapplied with different reasons. Presumably, there are no such cases because they would be contrary to the "voluntary cessation" doctrine and the case law Plaintiff discusses above. Plaintiff's claim is not moot; it is still alive and kicking.

II. PLAINTIFF IS MOVING TO AMEND THE COMPLAINT TO ADD OTHER PLAINTIFFS WHO ALSO SEEK TO ENGAGE IN OPEN CARRY

Plaintiff is moving to amend the complaint to add other plaintiffs who also seek the ability to engage in open carry. Unlike Plaintiff O'Neil, these plaintiffs do not seek to operate a firearms business and, thus, would not be subject to Defendants' mootness argument. The Court should allow the addition of these plaintiffs on the grounds of judicial economy. See, Spomer v. Littleton, 414 U.S. 514, 521-22 (1974) (remanding the case for determining of whether plaintiffs can address mootness issue by amending complaint to add new defendant); In re Thornburgh, 869 F.2d 1503,

1509 (D.C.Cir. 1898) ("There is authority to the effect that a court may respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative."); M.K. v. Tenet, 216 F.R.D. 133, 143 (D.D.C. 2002) (granting plaintiff's motion to amend the complaint to add additional plaintiffs under Rule 20, in part, "to promote trial convenience, expedite the final determination of disputes, and prevent multiple lawsuit.").

Here, Plaintiff proposes to address Defendants' mootness argument by adding additional plaintiffs who would not be subject to that argument. Even if the Court were to agree with Defendants' argument—and Plaintiff asserts it should not—it makes sense and promotes judicial economy to add plaintiffs who can continue the litigation without having to refile another case.

III. THE COURT HAS ALREADY REJECTED PLAINTIFF'S ARGUMENTS TO DISMISS ON THE MERITS

In its June 28, 2023 text order the Court previously rejected Defendants' arguments to dismiss the original complaint based on ripeness, the Rooker-Feldman doctrine, res judicata, and Pullman abstention. That order is law of the case. Moreover, the amended complaint does not assert a claim for compensatory damages against Defendants. For these reasons, and those set forth in Part I of this Memorandum, the Court should reject Defendants restated arguments in Part of their Memorandum.

**CONCLUSION**

The Court should deny Defendants' motion to dismiss.

**MICHAEL O'NEIL**
By his attorneys,

| | |
|---|---|
| /s/ Thomas W. Lyons | /s/ Frank R. Saccoccio |
| Thomas W. Lyons    #2946 | Frank R. Saccoccio Esq. #5949 |
| Strauss, Factor, Laing & Lyons | Saccoccio Law Office |
| One Davol Square, Suite 305 | 928 Atwood Avenue |
| Providence, RI 02903 | Johnston, Rhode Island 02919 |
| (401) 456-0700 | (401) 944-1600 * 942-8921 Fax |

11

tlyons@straussfactor.com                                  Frank.CSLawOffice@gmail.com

CERTIFICATE OF SERVICE

    I hereby certify that on September 1, 2023, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

                                                /s/ Thomas W. Lyons