UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL P. O'NEIL, DANIEL PATTERSON, DONALD LABRIOLE JOSEPH PATTON, RICHARD COOK RICHARD LAPORTE and PETER TREMEENTOZZI    Plaintiffs | : : : : : : : |
| v. | : : C.A. No. 23-cv-70 |
| PETER F. NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and THE STATE OF RHODE ISLAND    Defendants | : : : : : : |

DECLARATION OF CLAYTON CRAMER

Pursuant to 28 U.S.C. §1746, Clayton Cramer states:

# I.   Background and Qualifications

1. My M.A. in History is from Sonoma State University in California. I teach history at the College of Western Idaho. I have nine published books, mostly scholarly histories of weapons ownership and regulation. My 18 published articles (mostly in law reviews) have been cited in *D.C.* v. *Heller*, 554 U.S. 570 (2008); *McDonald* v. *Chicago*, 561 U.S. 742 (2010); *Jones* v. *Bonta*, 34 F.4th 704 (9th Cir. 2022) vacated by *Jones* v. *Bonta*, 47 F.4th 1124 (9th Cir. 2022)(remanded to the district court for further proceedings consistent with *Bruen*); *Young* v. *Hawaii*, 992 F.3d 765 (9th Cir. 2021) cert. granted by *Young* v. *Hawaii*, 142 S.Ct. 2895 (judgment vacated and case remanded to the Ninth Circuit for further consideration in light of *Bruen*); *State* v. *Sieyes*, 168 Wash.2d 276 (Wash. 2010); *Senna* v. *Florimont*, 196 N.J. 469 (N.J.

1

2008); *Mosby* v. *Devine*, 851 A.2d 1031 (R.I. 2004).  A comprehensive list of my scholarly works and citations can be found at https://claytoncramer.com/scholarly/journals.htm.

2. In several cases, my work has been cited in defense of laws limiting firearms ownership: *State* v. *Roundtree* (Wisc. 2021), *State* v. *Christen* (Wisc. 2021), *King* v. *Sessions* (E.D.Penn. 2018). My work was also cited in the *McDonald* v. *Chicago* (2010) dissent.[1]  I reside in Caldwell, Idaho.

3. I have submitted expert declarations in *Association Of New Jersey Rifle & Pistol Clubs, Inc.* v. *Platkin* (D.N.J. 2023); *Arizona* v. *Bolin* (Ariz.Sup. 2023); *Arizona* v. *Coleman* (Ariz.Sup. 2023); *Baird* v. *Bonta* (E.D.Cal. 2023); *Boland* v. *Bonta* (C.D.Cal. 2023); *Brumbeck* v. *Ferguson* (E.D.Wash. 2024); *Gates* v. *Polis* (D.Colo. 2023); *City of Columbus* v. *Ohio* (O.Ct.Com.Pleas 2023); *California Rifle & Pistol Association, Inc.* v. *Los Angeles County Sheriff's Department* (C.D.Cal. 2024); *Delaware State Sportsmen's Association, Inc.* v. *Delaware Department Of Safety And Homeland Security* (D.Del. 2023); *Georgia* v. *Nichols* (Ga.Sup. 2023); *National Association For Gun Rights* v. *Lopez* (D.Haw. 2023); *Wolford* v. *Lopez* (D.Haw. 2023); *National Association For Gun Rights* v. *City of Highland Park* (E.D.Ill. 2023); *Herrera* v. *Raoul* (N.D. Ill. 2023); *May* v. *Bonta* (S.D.Cal. 2024); *New York* v. *Sullivan* (N.Y.Sup. 2023); *National Association For Gun Rights* v. *City Of Naperville* (E.D.Ill. 2023); *State of Ohio* v. *City of Columbus* (Ct.Com.Pleas 2023); *Oregon Firearms Federation* v. *Kotek* (D.Ore. 2023); *Palmer* v. *Dept. of Environmental Management* (R.I.Sup. 2023); *Rhode Island* v. *Ortiz* (R.I.Sup. 2023); *Rhode* v. *Bonta* (S.D.Cal. 2024); *Rocky Mountain Gun Owners* v. *Polis* (D.Colo. 2023); *Rupp* v. *Bonta* (C.D.Cal. 2022); *Siegel* v. *Platkin* (D.N.J. 2023); *U.S.* v. *Ayala*

---

[1] *McDonald* v. *Chicago*, 130 S.Ct. 3022, 3132 (Breyer, J. diss.)

(M.D.Fla. 2023); *U.S.* v. *Fowler* (E.D.Va. 2023); *U.S.* v. *Bailey* (E.D.Tenn. 2023); *U.S.A.* v. *Kazmende* (N.D.Ga. 2023).

4. My published books include: *For The Defense Of Themselves And The State: The Original Intent and Judicial Interpretation of the Right To Keep And Bear Arms* (1994); *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* (1999); *Armed America: The Remarkable Story of How and Why Guns Became as American as Apple Pie* (2007); *Lock, Stock, and Barrel: The Origins of American Gun Culture* (2018).

## II.   Summary

5. Regulation of open carry of arms is rare in American history. What few examples are often cited are usually laws that targeted a particular group regarded as dangerous, a particular dangerous action of which carrying arms was only *one* element, or where the laws were short-lived and whose relevance has been explicitly rejected by *Bruen*.

6. State supreme courts in the era before 1868 often upheld concealed carry regulation because bans on concealed carry did not prohibit open carry. As long as one or the other remained lawful, the right to armed self-defense was preserved. This understanding persisted after 1868, sometimes with absurd results.

## III.   Open Carry Regulation is Modern

7. Laws regulating *open* carrying of arms are surprisingly recent. Even when such laws existed in the Framing Era, they were usually short-lived, atypical, and narrowly focused on particular abuses of carrying arms; particular groups carrying arms; or particular categories of arms; they were not general bans on open carry.

8. Laws regulating *concealed* carry of firearms are more common in the era before 1868. State supreme courts were often asked to judge the constitutionality of such laws, usually with respect to state constitution right to keep and bear arms provisions. (In the case of Tennessee and Arkansas, these provisions including language that seems to have referred only to "common defence," and were interpreted far more narrowly than the Second Amendment.) When the courts have upheld such concealed weapon laws, they have usually done so because open carry remained lawful.

### IV. Framing Era Laws

9. There are very few laws in the Framing Era that regulated the carrying of arms. The East New Jersey law of 1686 prohibited dueling and its associated actions ("send any challenge in writing, by word of mouth, or message"), *concealed* carry ("privately to wear any pocket pistol, skeines, stilladers, daggers or dirks") as well as a ban on riding or going "armed with sword, pistol, or dagger."[2] The latter was certainly a ban on open carry, but as *Bruen* observed, the law was both short-lived and limited to "planters":

> First, although the "planter" restriction may have prohibited the public carry of pistols, it did not prohibit planters from carrying long guns for self-defense —including the popular musket and carbine. … Second, it does not appear that the statute survived for very long. By 1694, East New Jersey provided that no slave "be permitted to carry any gun or pistol ... into the woods, or plantations" unless their owner accompanied them. Grants and Concessions 341. If slave-owning planters were prohibited from carrying pistols, it is hard to comprehend why slaves would have been able to carry them in the planter's presence. Moreover, there is no evidence that the 1686 statute survived the 1702 merger of East and West New Jersey. See 1 Nevill, Acts of the General Assembly of the Province of New- Jersey (1752). At most eight years of history in half a Colony roughly a century before the founding sheds little light on how to properly interpret the Second Amendment.[3]

---

[2] An Act Against Wearing Swords, &c., ch. 9, in GRANTS, CONCESSIONS, AND ORIGINAL CONSTITUTIONS OF THE PROVINCE OF NEW JERSEY 289-290 (2d ed. 1881).
[3] *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 2111, 2145 (2022).

10. The law also exempted "all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably."[4] This was a law aimed at a particular class and not a *general* ban on open carry.

11. Several colonies and states passed laws that punished particular behaviors of which the carrying of arms was only *one* component of the crime. The 1786 Virginia law that ordered that "no man, great nor small, [shall] go nor ride armed by night nor by day, in fairs or markets, or in other places, *in terror of the Country*," [emphasis added] clearly requires that such action must be "in terror of the Country," analogous to, and using some of the language of the Statute of Northampton (1328). This law required not simply the carrying of arms but actions that produced terror. If the law sought to prohibit *all* open carry of arms, there would be no need to specify "in terror of the Country." Finally, the title of the law "An Act Forbidding and Punishing Affrays" establishes that the goal was to avoid causing fear. Blackstone defined "affray" as "the fighting of two or more persons in some public place, to the *terror* of his majesty's subjects."[5] [emphasis added]

12. Case law from the early Republic continued to distinguish the carrying of arms from affray (actions that cause terror). *Simpson* v. *State* (Tenn. 1833) was a case where the defendant was indicted for "with force and arms,... being arrayed in a warlike manner, then and there in a certain public street and highway situate, unlawfully, and to the great terror and disturbance of

---

[4] An Act Against Wearing Swords, &c., op cit. 290.
[5] William Blackstone, 4 COMMENTARIES ON THE LAWS OF ENGLAND 145 (1769) https://books.google.com/books?id=Wn7PPtzK86kC&newbks=1&newbks_redir=0&dq=%22%E2%80%9Cthe%20fighting%20of%20two%20or%20more%20persons%20in%20some%20public%20place%2C%20to%20the%20terror%20of%20his%20majesty%E2%80%99s%20subjects%22&pg=PA145#v=onepage&q=%22%E2%80%9Cthe%20fighting%20of%20two%20or%20more%20persons%20in%20some%20public%20place,%20to%20the%20terror%20of%20his%20majesty%E2%80%99s%20subjects%22&f=false, last accessed November 25, 2024.

divers good citizens of the said state, then and there being, an affray did make, in contempt of the laws of the land." Yet when the defendant appealed, alleging "the record does not present any charge that is known to the law, as cognizable in our courts by indictment," the Tennessee Supreme Court ruled in Simpson's favor because, citing Blackstone:

> A phrase, from a affrayer to terrify, are the fighting of two or more persons, in some public place, to the terror of His Majesty subjects; for if the fighting being in private it is no affray, but an assault. It will be observed, that according to this definition of an affray by Blackstone, three things are necessary to constitute it. First: there must be fighting. Second: this fighting must be by or between two or more persons. And, Third: it must be in some public place to cause terror to the people.[6]

13. Whatever fear Simpson caused, he did fight anyone and his mere "with force and arms, being arrayed in a warlike manner" was not a crime alone.

14. In *State* v. *Huntley* (N.C. 1843), the defendant was not simply carrying arms:

> In the investigation before the jury it appeared, among other things, that the defendant was seen by several witnesses, and on divers occasions, riding upon the public highway, and upon the premises of James H. Ratcliff (the person named in the indictment), armed with a double-barreled gun, and on some of those occasions was heard to declare, "that if James H. Ratcliff did not surrender his negroes, he would kill him"; at others, "if James H. Ratcliff did not give him his rights, he would kill him";[7]

15. Even in this case, the North Carolina Supreme Court distinguished the Statute of Northampton's prohibition of "unusual weapons":

---

[6] *Simpson* v. *State*, 13 Tenn. (5 Yer.) 356, 357, 358 (1833), https://books.google.com/books?id=RFNI4BifGs8C&newbks=1&newbks_redir=0&dq=%22But%20suppose%20it%20to%20be%20assumed%20on%20any%20ground%2C%20that%20our%20ancestors%20adopted%20and%20brought%20over%20with%20them%2C%20this%20English%20statute%22&pg=PA357#v=onepage&q=%22But%20suppose%20it%20to%20be%20assumed%20on%20any%20ground,%20that%20our%20ancestors%20adopted%20and%20brought%20over%20with%20them,%20this%20English%20statute%22&f=false, last accessed November 25, 2024.

[7] *State* v. *Huntley*, 3 N.C. 418 (1843), https://www.claytoncramer.com/primary/rkbadecisions/Huntly1843.pdf , last accessed November 25, 2024.

> It has been remarked that a double-barrel gun, or any other gun, cannot in this country come under the description of "unusual weapons," for there is scarcely a man in the community who does not own and occasionally use a gun of some sort.[8]

16. While decrying the regular wearing of arms "in our peace-loving and law-abiding State," the Court admitted:

> But although a gun is an "unusual weapon," it is to be remembered that the carrying of a gun, *per se*, constitutes no offense. For any lawful purpose — either of business or amusement — the citizen is at perfect liberty to carry his gun. It is the wicked purpose, and the mischievous result, which essentially constitute the crime. He shall not carry about this or any other weapon of death to terrify and alarm, and in such manner as naturally will terrify and alarm a peaceful people.[9]

17. There is a 1795 Massachusetts law that directs justices of the peace to have arrested "all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go *armed offensively*." [emphasis added]   The law did not prohibit any of these actions but directed that the justice of the peace "shall require of the offender to find sureties for his keeping the peace, and being of the good behaviour."[10] Again, the law is aimed narrowly at those "armed

---

[8] Id. at 422.
[9] Id. at 422, 423.
[10] 2 LAWS OF THE COMMONWEALTH OF MASSACHUSETTS FROM NOVEMBER, 28, 1780 TO FEBRUARY 28, 1807, WITH THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND OF THE COMMONWEALTH, PREFIXED 652-653 (Boston: printed by J. T. Buckingham for Thomas & Andrews, 1807), https://books.google.com/books?id=Dh8wAAAAYAAJ&newbks=1&newbks_redir=0&dq=LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASSACHUSETTS%20FROM%20NOVEMBER%2C%2028%2C%201780%20TO%20FEBRUARY%2028%2C%201807%2C%20WITH%20THE%20CONSTITUTION%20OF%20THE%20UNITED%20STATES%20OF%20AMERICA%2C%20AND%20OF%20THE%20COMMONWEALTH%2C%20PREFIXED&pg=PA652#v=onepage&q=LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASSACHUSETTS%20FROM%20NOVEMBER,%2028,%201780%20TO%20FEBRUARY%2028,%201807,%20WITH%20THE%20CONSTITUTION%20OF%20THE%20UNITED%20STATES%20OF%20AMERICA,%20AND%20OF%20THE%20COMMONWEALTH,%20PREFIXED&f=false , last accessed November 25, 2024. Defendants cited this law with chapter numbers and page numbers that do not show where this law appears in official session laws. I have attempted to locate the source for the image on which Defendants rely. That secondary source, HeinOnline, has given several erroneous sources, or sources which cannot be located with their incomplete information. Traceability seems inadequate for any serious scholarly work.

offensively;" a general ban on open carry would be much simpler of a law. Even then, it does not prohibit being armed; at most it makes such persons at risk of forfeiting the bond for "misbehaviour."

18. An 1801 Tennessee law often cited out of context is "An act for the restraint of idle and disorderly persons."[11] Section 6 reuses the language of the Statute of Northampton to prohibit "any person or persons shall publicly ride or go armed to the terror of the people, or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person." Even then, it only directs judges to "bind such person or persons to their good behavior, and if he or they fail to find securities, commit him or them to jail."[12]

19. Reading the entire statute gives some context suggesting that the law targeted *one* disreputable group, and was not a general ban:

> Whereas it becomes necessary for the welfare of the community, to suppress wandering, disorderly and idle persons…. That any person or persons who have no apparent means of subsistence or neglect applying themselves to some honest calling for the support of themselves and families every person so offending, who shall be found sauntering about neglecting his business, and endeavoring to maintain himself by gaming or other undue means, it shall and may be lawful any justice of the peace or court of the county wherein such person may be found, on due proof made, to issue his warrant for such offending person, and caused him to be brought before such said justice…[13]

---

[11] For an example of this out of context quotation, see Judge Edward Scott, *Laws of the State of Tennessee: Including Those of North Carolina Now in Force in this State: From the Year 1715 to the Year 1820*, Inclusive Page 710, Image 714 (Vol. 1, 1821) The Making of Modern Law: Primary Sources, in DUKE CENTER FOR FIREARMS LAW REPOSITORY OF HISTORICAL GUN LAWS, https://firearmslaw.duke.edu/laws/judge-edward-scott-laws-of-the-state-of-tennessee-including-those-of-north-carolina-now-in-force-in-this-state-from-the-year-1715-to-the-year-1820-inclusive-page-710-image-714-vol-1-1821-the/ , last accessed July 17, 2024.

[12] 1801 Tenn. Acts ch. 22, § 6 at 260-261. There is no online copy of this law although § 6 appears in 1 STATUTE LAWS OF THE STATE OF TENNESSEE 10 (1831), https://books.google.com/books?id=OhxEAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22any%20person%20or%20persons%20shall%20publicly%20ride%20or%20%E2%80%9D&pg=PA10#v=onepage&q=%22any%20person%20or%20persons%20shall%20publicly%20ride%20or%20%E2%80%9D&f=false , last accessed November 25, 2024.

[13] 1801 Tenn. Acts ch. 22, § 1 at 259-260.

20. All sections of the law are directed at these "wandering, disorderly and idle persons" and attempts to prevent their wandering without permanent residence or respectable employment.

21. The law appears narrowly focused on vagrant gamblers and even then § 6 only requires posting a bond contingent on "their good behaviour," to avoid jail. This is again, a prohibition on concealed carry and open carry only if "to the terror of the people."

22. Another often misrepresented law is "1786 Mass. Sess. Laws An Act to Prevent Routs, Riots, and Tumultuous assemblies, and the Evil Consequences Thereof." This statute prohibits "if any persons to the number of twelve, or more, being armed with clubs, or other weapons; or if any number of persons, consisting of thirty or more, shall be unlawfully, routously, riotously, or tumultuously assembled."[14] It was not a crime for an individual to be armed or even eleven to be armed. There must be at least twelve armed to constitute a crime.

23. Why was this law written in such a way that it only applied to bodies of twelve or more armed men or groups of thirty or more even if not armed? "Whereas the provision already made by law for the preventing routs, riots, and tumultuous assemblies and the evil consequences thereof have been found insufficient." This law was passed October 28, 1786, shortly after Shays' Rebellion started disrupting courts in western Massachusetts.[15]

---

[14] 1 LAWS OF THE COMMONWEALTH OF MASSACHUSETTS 346-7 (1807).,
https://books.google.com/books?id=px8wAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASSACHUSETTS%22%20clubs&pg=PA346#v=onepage&q=%22LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASSACHUSETTS%22%20clubs&f=false , last accessed November 25, 2024.

[15] John Bach McMaster, 5 A HISTORY OF THE PEOPLE OF THE UNITED STATES, FROM THE REVOLUTION TO THE CIVIL WAR 306 (1884).

9

## V.   Open Carry Protections and Concealed Carry

24. In the antebellum period challenges to concealed weapon laws often ended up in state supreme courts. While these decisions almost always upheld such laws, the way in which the courts resolved the apparent conflict between "right to keep and bear arms" provisions was quite important for open carry.

25. *State v. Reid* (Ala. 1840) upheld a ban on concealed carry. The decision admitted that a ban on gun carrying had constitutional limits:

> We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. *A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional.* But a law which is intended merely to promote personal security, and to put down lawless aggression and violence, and to that end inhibits the wearing of certain weapons, in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the constitution.[16]  [emphasis added]

26. The Georgia Supreme Court in 1846 reviewed a very unclearly written law regulating sale and carrying of arms of many types. Because the Georgia Constitution had no right to keep and bear arms provision, the Georgia Supreme Court ignored *Barron v. Baltimore* (1833), and decided the Second Amendment limited state laws:

> We are of the opinion, then, that so far as the act of 1837 seeks to suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch as it does not deprive the citizen

---

[16] *State* v. *Reid*, 1 Ala. 612, 615, 616, 617 (1840), https://books.google.com/books?id=yUtNAQAAMAAJ&newbks=1&newbks_redir=0&dq=%22A%20statute%20which%2C%20under%20the%20pretence%20of%20regulating%2C%20amounts%20to%20a%20destruction%20of%20the%20right%2C%20or%20which%20requires%20arms%20to%20be%20so%20borne%20as%20to%20render%20them%20wholly%20useless%20for%20the%20purpose%20of%20defence%2C%20would%20be%20clearly%20unconstitutional.%22&pg=PA616#v=onepage&q=%22A%20statute%20which,%20under%20the%20pretence%20of%20regulating,%20amounts%20to%20a%20destruction%20of%20the%20right,%20or%20which%20requires%20arms%20to%20be%20so%20borne%20as%20to%20render%20them%20wholly%20useless%20for%20the%20purpose%20of%20defence,%20would%20be%20clearly%20unconstitutional.%22&f=false , last accessed November 25, 2024.

> of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with the Constitution, and *void*...[17] [emphasis in the original]

27. Several postbellum Southern states attempted to discourage not only the concealed carrying of arms, but open carry as well. Because the Arkansas and Tennessee state constitutions had right to bear arms provisions that referred to "the common defence," these laws limited the categories of arms that might be openly borne, often allowing only "such as are commonly used in the United States military and naval service." These could be privately owned as long as they were the same as were used by the U.S. military.

28. The Arkansas Supreme Court heard an appeal involving a man convicted of carrying a "large army size six shooter, a revolving pistol, 44 caliber, eight inches in the barrel, such as is commonly used in warfare" for the purpose of pig hunting. The trial court refused to allow a statement either by the owner of the pistol or the defendant as to the purpose of having the revolver and refused to charge the jury that carrying "an army size pistol" could not be regulated by Arkansas law.

29. The Arkansas Supreme Court overturned the trial judge's instructions:

> But to prohibit the citizen from wearing or carrying a war arm, except upon his own premises or when on a journey traveling through the country with baggage, or when acting as or in aid of an officer, is an unwarranted restriction upon his constitutional right to keep and bear arms.
>
> If cowardly and dishonorable men sometimes shoot unarmed men with army pistols or guns, the evil must be prevented by the penitentiary and gallows, and not by a general deprivation of a constitutional privilege.[18]

30. The Arkansas Legislature responded to the *Wilson* and *Holland* decisions by passing a new weapons law. The Act of April 1, 1881, prohibited "the carrying of army pistols, except

---

[17] *Nunn* v. *State*, 1 Ga. 243, 250, 251 (1846).
[18] *Wilson* v. *State of Arkansas*, 33 Ark. 557, 558, 559, 560 (1878), https://www.claytoncramer.com/primary/rkbadecisions/WilsonHolland1878.pdf , last accessed November 25, 2024..

11

uncovered and in the hand."[19]  In *Haile* v. *State* (1882), the first two sections of this act (which regulated carrying of handguns) were challenged.  The defendant, Haile, was convicted in Pope County of carrying "uncovered, and buckled around his waist... a large revolving pistol, known as the Colts army pistol, and such as is used in the army and navy of the United States..."  The Arkansas Supreme Court decided:

> The question is, can the Legislature regulate the mode of carrying any arms which the citizens have the constitutional right to keep and bear for their common defense?  We have decided that it may, to some extent, which means that it may, in a reasonable manner, so as, in effect, not to nullify the right, nor materially embarrass its exercise.[20]

31. Ordinarily, requiring a person to carry a handgun "uncovered and in the hand" might qualify as brandishing.  The important point is that the Arkansas Legislature felt so limited by Arkansas' constitutional provision that instead of prohibiting open carry, they required revolvers to be carried in the most dangerous manner imaginable.

32. State v. Wilburn (Tenn. 1872) made much the same distinction.  An 1871 law:

> that it shall not be lawful for any person to publicly or privately carry a dirk, sword-cane, Spanish stiletto, belt or pocket pistol, or revolver, other than an army pistol, or such as are commonly carried and used in the United States army, and in no case shall it be lawful for any person to carry such army pistol publicly or privately about his person in any other manner than openly in his hands.[21]

---

[19] Quoted in *Haile* v. *State*, 28 Ark. 563, 565 (1882), https://books.google.com/books?id=emhcDci6X8QC&newbks=1&newbks_redir=0&dq=%22%E2%80%9Cthe%20carrying%20of%20army%20pistols%2C%20except%20uncovered%20and%20in%20the%20hand.%E2%80%9D%22&pg=PA565#v=onepage&q=%22%E2%80%9Cthe%20carrying%20of%20army%20pistols,%20except%20uncovered%20and%20in%20the%20hand.%E2%80%9D%22&f=false , last accessed November 25, 2024.

[20] *Haile* v. *State*, 38 Ark. 564, 565, 566 (1882).

[21] 1871 Tenn. Acts ch. 90, quoted in *State* v. *Wilburn*, 7 Tenn. 57. 61 (1872), https://books.google.com/books?id=3XMEAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22State%20v.%20Robert%20Wilburn%22&pg=PA57#v=onepage&q=%22State%20v.%20Robert%20Wilburn%22&f=false , last accessed November 25, 2024..

33. The Tennessee Supreme Court upheld this very dangerous method of open carry in the same way as the Arkansas Supreme Court because the Tennessee Constitution's arms provision had the same "common defence" qualifier as Arkansas:

> The Legislature has deemed it a proper prevention of crime to regulate the use of this arm by prohibiting the wearing of it or carrying it about the person, privately or publicly, unless it be carried openly in the hands, or unless it be worn or carried by an officer or policeman engaged in his duties, or by a traveler on a journey.[22]

34. The Court recognized that open carry was protected so strongly that only the most absurd regulation that still allowed open carry in some form was constitutional.

35. Some state supreme courts have ruled that concealed carry of arms could be regulated without violating both state *and* federal guarantees of the right to bear arms as long as open carry remained lawful. Idaho's Supreme Court struck down a territorial era law:

> The second amendment to the federal constitution is in the following language: "A well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." The language of section 11, article 1 of the constitution of Idaho is as follows: "the people have the right to bear arms for their security and defense, but the legislature shall regulate the exercise of this right of law." Under these constitutional provisions, the legislature has no power to prohibit a citizen from bearing arms in any portion of the state of Idaho, whether within or without the corporate limits of cities, towns, and villages. The legislature may, as expressly provided in our state constitution, regulate the exercise of this right, but may not prohibit it. A statute prohibiting the carrying of concealed deadly weapons would be a proper exercise of the police power of the state. But the statute in question does not prohibit the carrying of weapons concealed, which is of itself a pernicious practice, but prohibits the carrying of them in any manner in cities, towns, and villages. We are compelled to hold this statute void.[23]

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on November 11, 2024.

*Clayton Cramer*
Clayton Cramer

---

[22] *State* v. *Wilburn*, 7 Tenn. 57. 62, 63 (1872).
[23] *In Re Brickey*, 8 Ida. 597, 70 Pac. 609, 101 Am. St. Rep. 215, 216 (1902).