UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL P. O'NEIL, DANIEL PATTERSON, DONALD LABRIOLE JOSEPH PATTON, RICHARD COOK RICHARD LAPORTE and PETER TREMEENTOZZI<br>    Plaintiffs<br><br>v.<br><br>PETER F. NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and THE STATE OF RHODE ISLAND<br>    Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    C.A. No. 23-cv-70<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF HIS MOTION IN LIMINE**

Pursuant to F.R.E. 103, 403, 702, and 703, as well as F.R.Civ.P. 56(c)(2), Plaintiffs hereby move in limine to exclude evidence from the so-called Duke Repository of gun laws because it is inadmissible hearsay and otherwise unreliable evidence, and to exclude the expert testimony of Defendants' expert, Robert Spitzer because he relied on "facts" or "data" which were not inherently reliable, specifically, the Duke Repository, and his opinions are not otherwise based on a reliable methodology. Defendants have submitted this proposed evidence in support of their argument that the Second Amendment does not provide Plaintiffs with a right to open, public carry of firearms through Defendants' concealed carry permits. R.I.Gen.L. § 11-47-18(a).

**FACTS**

Defendants have two expert witnesses on the issue of whether laws restricting the possession or carry of firearms are within the nation's historical tradition, Dr. Robert Spitzer and Dr. Brennan Rivas, though Rivas' opinions are more limited and narrow than Spitzer's. In forming their opinions, both Spitzer and Rivas used to different extents an online database of gun laws

1

hosted by Duke University and known colloquially as the Duke Repository.  They both testified that the Duke Repository is a website that purports to include copies of historical gun laws. The Repository was created a little over ten years ago.  (Spitzer deposition, p. 21-22, excerpts of Spitzer deposition attached as Exhibit 1). Spitzer does not know what prompted Duke to begin compiling the Repository.  (Spitzer depo., p. 23).  Spitzer does not know who runs the Repository.  (Spitzer depo., p. 23). Spitzer was not involved in helping compile the Repository.  (Spitzer depo., p. 23). He knows the names of Duke faculty who had "connections" to the Repository but he cannot say "to exactly what degree or what nature."  (Spitzer depo., pp. 23-24).  Neither expert has any knowledge of how the Repository was compiled.  (Rivas deposition, p. 40, excerpts of Rivas deposition attached as Exhibit 2; Spitzer depo., pp. 22-24).   They have no knowledge that anyone has testified in court on behalf of the Repository about how it was prepared or compiled.  (Rivas depo., p. 40; Spitzer depo., p. 24).  They have no knowledge that any court has recognized the Repository as being authoritative or reliable.  (Rivas depo., p. 40; Spitzer depo., p. 44).  The Repository does not indicate when a statute it contains has been amended or repealed or struck down by a court.  (Rivas depo., p. 41; Spitzer p. depo. 58-59). Some of the statutes in the Repository do not include all of the language in the original statute.  (Rivas depo., p. 28; Spitzer depo., p. 58).

> Spitzer testified to his understanding of the purpose of the Repository:
>
> Well, the purpose of it is to present the public policy enactments of legislatures contemporaneously, that is, in this year they enacted such and such a law.· The question of what happened to that law 10 years, 50 years, a hundred years down the line is beyond the reach of the repository and it's also beyond the reach of a historical moment when the law was enacted. Because the key question is, what did lawmakers intend in 1820 when they passed the law about, you know, penalizing concealed carry of weapons, let's say, or whatever it might be.· That is certainly an interesting question, but that kind of historical genealogy is a separate question from what was the public policy intention of lawmakers at the time that they enacted these given laws.

(Spitzer depo., pp. 59-60).

The Repository has a caveat which says: "Conscientious users of this repository should supplement their results with further historical research." (Cramer Declaration, ¶ 25, attached as Exhibit 3). Neither Spitzer nor Rivas were aware of this caveat. (Spitzer depo., p. 60; Rivas depo., p. 29-30). Nonetheless, Spitzer relied on things he found in the Repository as accurate. (Spitzer depo., p. 40). Spitzer says that over the space of ten years, he has occasionally checked to see whether the material in the Repository was accurate (Spitzer depo. p. 42), but he has not checked most of his citations to the Repository. (Spitzer p. 43). Spitzer cannot identify which of the statutes identified in Exhibits B or C of his expert declaration he has personally verified. (Spitzer depo., p. 62). By contrast, Rivas testified that she personally checked in the primary source material all the information she found in the Duke Repository. (Rivas depo., p. 28, 30).

Plaintiffs' expert, Clayton Cramer, has examined Spitzer's expert declaration (Exhibit 4), as well as its citations and the material upon which Spitzer relied from the Duke Repository. (Cramer Declaration, Exhibit 3). In short, Cramer has found that Spitzer relied on erroneous or even apparently non-existent material, often from the Duke Repository, and made erroneous citations. Further, Spitzer has taken actual legislative acts out of literal and historical context in a misleading manner. For example:

- In Paragraph 9 of his Declaration, Spitzer claims that in the late 1700s Virginia and North Carolina passed laws restricting public carry of firearms. However, the citation is to a book that states it is a collection of <u>English</u> statutes. (Cramer Declaration, ¶ 10).
- The Duke Repository contains the identical citation. (<u>Id.</u>).
- Spitzer cites to a 1795 Massachusetts statute he says he found in HeinOnline that does not exist where either Spitzer or HeinOnline cite it. (Cramer Declaration, ¶ 11-23).

3

- The Duke Repository similarly cites to HeinOnline. (Id., ¶ 24).

- In Paragraph 25 of his Declaration, Spitzer cites to a 1701 New Hampshire law in HeinOnline that does not exist at the cited location. (Cramer Declaration, ¶ 26-31).

- The Duke Repository contains the same supposed statute and citation. (Id., ¶ 29).

- In Paragraph 26 of his Declaration, Spitzer quotes a 1801 Tennessee law. Cramer states the quote is out of context and the full statute shows it was aimed at one specific, disreputable group and even then, it does not ban public carry. (Cramer Declaration, ¶ 32-35).

- The Duke Repository contains the same out-of-context language instead of the actual session law. (Cramer Declaration, ¶ 36).

- Spitzer quotes a 1786 Massachusetts act to support an argument that there were laws banning public carry. (Spitzer Declaration, ¶ 24). However, the actual law banned groups of people, armed or otherwise, who were "unlawfully, routously, riotously, or tumultuously assembled." (Cramer Declaration, ¶ 37).

- Moreover, the act was passed in the aftermath of Shays' Rebellion, not in response to a general concern about individual public carry. (Cramer Declaration, ¶ 38).

- In Paragraph 9 of Spitzer's Declaration, he states that "[c]oncealed carry laws targeted pistols as well as the types of fighting knives and various types of clubs discussed here." Cramer states he has "read every concealed carry law from the antebellum period that Spitzer has cited and none of them barred prohibited concealed carry of clubs." (Spitzer Declaration, ¶ 39). There are laws generally banning African-Americans from carrying clubs that Spitzer has cited. (Id.). Only one 1915 North Dakota law prohibited the concealed carry of a club. (Id., ¶ 40).

4

- Spitzer cites a 1692 Massachusetts act as evidence of Massachusetts law. Cramer cannot locate any 1692 Masschusetts act that says what Spitzer claims. (Cramer Declaration, ¶ 41-42).

- In Paragraph 25 of his Declaration, Spitzer cites a 1694 Massachusetts act. Cramer cannot locate any such Massachusetts law. (Cramer Declaration, ¶ 43-44).

- Spitzer's incorrect citation is a direct copy from the Duke Repository. (Cramer Declaration, ¶ 45).

- In Paragraph 26 of his Declaration Spitzer cites to a 1821 Maine law that does not appear at the cited location. (Cramer Declaration, ¶ 46).

- Spitzer apparently relied on the Duke Repository but copied the citation incorrectly. (Id.).

- Regardless, Plaintiffs note that the cited act does not ban public carry of firearms but outlaws "affrayers, rioters, disturbers or breakers of the peace, and such as shall ride or go offensively, to the fear and terror of the good citizens." (Id.).

- Similarly, Spitzer cites an 1880 Georgia statute that makes it a crime to "point or aim a gun." Again, he apparently relies on the Duke Repository but gets the citation wrong. (Cramer Declaration, ¶ 47-48).

## ARGUMENT

Pursuant to Rule 56(c)(2), a party may object that "material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." F.R.Civ.P. 56(c)(2). With respect to Plaintiffs' accompanying motion for summary judgment, they object to Defendants' material citing to the Duke Repository and Spitzer's testimony on the grounds that this material is not admissible in evidence.

The Duke Repository is inadmissible hearsay and otherwise not reliable. The Repository is hearsay under F.R.E 802 because it is an out of court statement being offered for the truth of the matter asserted, i.e., that it is an accurate statement of state statutes and local ordinances promulgated by various jurisdictions many years ago. F.R.E. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."); Smith v. Ford Motor Co., 749 F.Supp.2d 980, 992 (N.D.Cal. 2010) (holding that customer complaints evidence from Ford's customer service databases were inadmissible hearsay).

Further, none of the exceptions in the Federal Rules of Evidence apply to it. Unlike statutes and ordinances compiled and published by a state or local government, the Repository is not a public record because it is not a record of a public office nor was it prepared under the supervision of public officers. F.R.E. 803(8); Cooper v. Meritor, 363 F.Supp.3d 965, 700 (N.D.Miss. 2019); Sobel v. Hertz Corp., 291 F.R.D. 525, 533 (D.Nev. 2013), affirmed in part, vacated in part on other grds, 674 Fed.Appx. 663 (9th Cir. 2017). There is no indication that the Repository constitutes records of a regularly conducted activity, i.e., business records, because the records have not been authenticated by a custodian or other qualified witness as the records of a regularly conducted activity. F.R.E. 803(6); U.S. v. Kimble, 54 F.4th 538, 545 (8th Cir. 2022); U.S. v. Blechman, 657 F.3d 1052, 1065-66 (10th Cir. 2011). Nor is there any information that it would fit within a residual exception to the hearsay rule. F.R.E. 807; U.S. v. Rom, 528 Fed.Appx. 24, 28 (7th Cir. 2023) (uncertified evidence from the Massachusetts Registry of Motor Vehicles database not admissible without the requisite circumstantial guarantees of trustworthiness).

Moreover, while experts may in some circumstances rely on evidence that is not otherwise admissible, F.R.E. 703, that does not make the Duke Repository evidence admissible. To the

6

contrary, Rule 703 says: "But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion <u>substantially outweighs</u> their prejudicial effect." (emphasis added). Here, the probative value does not substantially outweigh the prejudicial effect.  See, <u>Beam v. Watco Transloading, LLC</u>, 639 F.Supp.3d 791, 800 (S.D.Ill. 2022) (database used by expert was not a reliable source of information as to reasonable and customary medical charges where the information in the database came from insurance companies, not health care providers, the information was used to determine reimbursement rates, and the data in the database was incomplete).

There are simply too many unanswered questions about the reliability of the Duke Repository:

- What is the intended purpose of the Repository?
- Who are the people involved in the operation of the Repository?
- Who obtains the purported laws that are included?
- What is known about these people's qualifications and motives?
- To what extent do those people verify the accuracy of the substantive content and citation for the material submitted?
- Why does the Repository have the caveat: "Conscientious users of this repository should supplement their results with further historical research"?
- Does the Repository verify the purported laws that are included?
- Who edits the purported laws?
- What standards does the Repository use for determining what to include and how to edit?

- Does the Repository consider or investigate whether a law has been amended, repealed, or overruled?
- If not, why not?

Moreover, Cramer has pointed out numerous errors in the Repository with respect to Spitzer's citations.

Spitzer's expert opinions are not admissible evidence because they are based on unreliable facts or data, i.e., the Duke Repository and HeinOnline, and are the product of an unreliable methodology. F.R.E. 702, 703; Beam v. Watco Transloading, LLC, 639 F.Supp.2d at 800 (excluding expert's opinion where she relied on information from an unreliable database); Bruno v. Bozzuto's, Inc., 311 F.R.D. 124, 144 (M.D.Penn. 2015); Swierczynski v. Arnold Foods Co., 265 F.Supp.2d 802, 811-12 (E.D. Mich. 2003) (expert's reliance on database that expressly disclaimed accuracy of information in database made expert's opinion unreliable and inadmissible); Stender v. Lucky Stores, Inc., 803 F.Supp. 259, 329 (N.D.Cal. 1992) (excluding expert's opinion where she relied on an unreliable database of information); Stricker v. Secretary of Health and Human Services, 170 Fed.Cl. 701, 717-18 (Ct.Cl. 2024) (same); In re Med Diversified, Inc., 346 B.R. 621, 631-32 (Bankr.E.D.N.Y. 2006) (same); see also, General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) (Neither Daubert nor "the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude there is simply too great an analytic gap between the data and the opinion proffered."); see also Chrysler Corp. v. U.S., 601 F.Supp.2d 1347, 1354 (C.I.T. 2009) (dismissing plaintiff's claims where the claims relied in information in an unreliable database).

Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

F.R.E. 702. Accordingly, Spitzer's testimony must be based on sufficient facts or data, it must be the product of reliable principles and methods, and it must reflect a reliable application of the principles and methods to the facts of the case. Rule 703 says:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

F.R.E. 703. Thus, Spitzer's evidence from the Duke Repository may be disclosed to the jury only if its probative value substantially outweighs its prejudicial effect.

Bruno v. Bozzuto's, Inc., 311 F.R.D. 124 (M.D.Penn. 2015), is a leading case on the admissibility of expert testimony based on unreliable facts. In that case, the owner of a supermarket sued a supplier for breach of contract by which plaintiff's store would have become a store within defendants' wholesale grocery and general merchandise network, and alleged lost profits. However, the store's owners had destroyed the store's financial records before filing suit. Plaintiffs' experts relied on pro forma financial projections respecting plaintiffs' store which had been prepared by defendant. Defendants asserted the pro forma projections were unreliable because the projected sales figures in them were grossly overstated relative to the sales plaintiffs' business actually realized, defendants had internally rejected the pro forma figures, and defendants

9

had not used the pro forma to project sales or potential damages. Plaintiffs' experts acknowledge that they had relied on the data in the pro forma projections without attempting to verify their accuracy.

The court reviewed the applicable law, such as Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999); and In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717 (3d Cir. 1994), as well as another decision in the Pennsylvania federal courts with similar facts, Legendary Art, LLC v. Godard, 2012 WL 3550040 (M.D.Penn. Aug. 17, 2012). The court concluded:

> [F]ederal courts that have opined on this particular evidentiary issue have made certain important points about complete reliance on secondary sources. First, the expert must conduct some sort of independent investigations or verification to ensure that the data he or she plans to use is both accurate and helpful to the court in light of the disputed issues. Second, that investigation should be sufficiently thorough such that the expert has gained a working familiarity with the borrowed data so that the expert can demonstrate the data's reliability. Blind adherence to data of unknown origin does not suffice in federal court.

Id. at 144. The court granted the motion to exclude plaintiff's expert reports in full. Id.

Here, Cramer sets forth, in sum, that although Spitzer claims expertise in the history of arms regulation, examination of his sources shows a lack of expertise in history and even basic scholarship. Spitzer has relied on secondary sources, i.e., the Duke Repository and HeinOnline, instead of looking at the primary sources for these laws. He has made statements of fact based on quoting out-of-context sections of laws rather than reading the law in full. Spitzer has cited laws that do not exist at the specified locations. Those citations are often identical to those in the Duke Repository. Spitzer cites laws in several places as if he had consulted those non-existent primary sources. (He clearly understands that secondary sources need to be identified as such by identifying some citations in his declaration as, "Quoted in *Young v. Hawaii*, 992 F.3d 765, 794 (9th Cir. 2021)). Spitzer has quoted laws without awareness of the larger historical context in

10

which they were passed and thus misses the historical significance of these laws. (Cramer Declaration, ¶ 5-9).

In other words, Spitzer did not use sufficient facts or data in performing his analysis, his analysis was not based on a reliable methodology, and his opinions do not reflect a reliable application of the methods to the facts of the case. For these reasons, the Court should exclude evidence from the Duke Repository and Spitzer's expert testimony.

## CONCLUSION

The Court should grant Plaintiffs' motion in limine to exclude evidence from the Duke Repository and the testimony of Robert Spitzer.

Respectfully submitted,
**PLAINTIFFS**
By their attorneys,

/s/ *Thomas W. Lyons*
Thomas W. Lyons          #2946
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

/s/ *Frank R. Saccoccio*
Frank R. Saccoccio Esq. #5949
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island 02919
(401) 944-1600 * 942-8921 Fax
Frank.CSLawOffice@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons