UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **MICHAEL P. O'NEIL, DANIEL** | : | |
| **PATTERSON, DONALD LABRIOLE** | : | |
| **JOSEPH PATTON, RICHARD COOK** | : | |
| **RICHARD LAPORTE and PETER** | : | |
| **TREMEENTOZZI** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **C.A. No. 23-cv-70** |
| | : | |
| **PETER F. NERONHA, in his official** | : | |
| **capacity as Attorney General of the State** | : | |
| **of Rhode Island, and THE STATE OF** | : | |
| **RHODE ISLAND** | : | |
| **Defendants** | : | |

**DECLARATION OF CLAYTON CRAMER**

Pursuant to 28 U.S.C. §1746, Clayton Cramer states:

**I.     Background and Qualifications**

1. My M.A. in History is from Sonoma State University in California.  I teach history at the College of Western Idaho.  I have nine published books, mostly scholarly histories of weapons ownership and regulation.  My 18 published articles (mostly in law reviews) have been cited in *D.C.* v. *Heller*, 554 U.S. 570 (2008); *McDonald* v. *Chicago*, 561 U.S. 742 (2010); *Jones* v. *Bonta*, 34 F.4th 704 (9th Cir. 2022) vacated by *Jones* v. *Bonta*, 47 F.4th 1124 (9th Cir. 2022)(remanded to the district court for further proceedings consistent with *Bruen*); *Young* v. *Hawaii*, 992 F.3d 765 (9th Cir. 2021) cert. granted by *Young* v. *Hawaii*, 142 S.Ct. 2895 (judgment vacated and case remanded to the Ninth Circuit for further consideration in light of *Bruen*); *State* v. *Sieyes*, 168 Wash.2d 276 (Wash. 2010); *Senna* v. *Florimont*, 196 N.J. 469 (N.J.

2008); *Mosby* v. *Devine*, 851 A.2d 1031 (R.I. 2004). A comprehensive list of my scholarly works and citations can be found at https://claytoncramer.com/scholarly/journals.htm.

2. In several cases, my work has been cited in defense of laws limiting firearms ownership: *State* v. *Roundtree* (Wisc. 2021), *State* v. *Christen* (Wisc. 2021), *King* v. *Sessions* (E.D.Penn. 2018). My work was also cited in the *McDonald* v. *Chicago* (2010) dissent.[1] I reside in Caldwell, Idaho.

3. I have submitted expert declarations in *Association Of New Jersey Rifle & Pistol Clubs, Inc.* v. *Platkin* (D.N.J. 2023); *Arizona* v. *Bolin* (Ariz.Sup. 2023); *Arizona* v. *Coleman* (Ariz.Sup. 2023); *Baird* v. *Bonta* (E.D.Cal. 2023); *Boland* v. *Bonta* (C.D.Cal. 2023); *Brumbeck* v. *Ferguson* (E.D.Wash. 2024); *Gates* v. *Polis* (D.Colo. 2023); *City of Columbus* v. *Ohio* (O.Ct.Com.Pleas 2023); *California Rifle & Pistol Association, Inc.* v. *Los Angeles County Sheriff's Department* (C.D.Cal. 2024); *Delaware State Sportsmen's Association, Inc.* v. *Delaware Department Of Safety And Homeland Security* (D.Del. 2023); *Georgia* v. *Nichols* (Ga.Sup. 2023); *National Association For Gun Rights* v. *Lopez* (D.Haw. 2023); *Wolford* v. *Lopez* (D.Haw. 2023); *National Association For Gun Rights* v. *City of Highland Park* (E.D.Ill. 2023); *Herrera* v. *Raoul* (N.D. Ill. 2023); *May* v. *Bonta* (S.D.Cal. 2024); *New York* v. *Sullivan* (N.Y.Sup. 2023); *National Association For Gun Rights* v. *City Of Naperville* (E.D.Ill. 2023); *State of Ohio* v. *City of Columbus* (Ct.Com.Pleas 2023); *Oregon Firearms Federation* v. *Kotek* (D.Ore. 2023); *Palmer* v. *Dept. of Environmental Management* (R.I.Sup. 2023); *Rhode Island* v. *Ortiz* (R.I.Sup. 2023); *Rhode* v. *Bonta* (S.D.Cal. 2024); *Rocky Mountain Gun Owners* v. *Polis* (D.Colo. 2023); *Rupp* v. *Bonta* (C.D.Cal. 2022); *Siegel* v. *Platkin* (D.N.J. 2023); *U.S.* v.

---

[1] *McDonald* v. *Chicago*, 130 S.Ct. 3022, 3132 (Breyer, J. diss.)

*Ayala* (M.D.Fla. 2023); *U.S.* v. *Fowler* (E.D.Va. 2023); *U.S.* v. *Bailey* (E.D.Tenn. 2023); *U.S.A.* v. *Kazmende* (N.D.Ga. 2023).

4. My published books include: *For The Defense Of Themselves And The State: The Original Intent and Judicial Interpretation of the Right To Keep And Bear Arms* (1994); *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* (1999); *Armed America: The Remarkable Story of How and Why Guns Became as American as Apple Pie* (2007); *Lock, Stock, and Barrel: The Origins of American Gun Culture* (2018).

## II.    Inexpert Work

5. Dr. Spitzer claims expertise in the history of arms regulation.  Examination of his sources shows a lack of expertise in history and even basic scholarship.  In the following sections, I will demonstrate that:

6. He has relied on secondary sources instead of looking at the primary sources for these laws.

7. He has made statements of fact based on quoting out of context sections of laws rather than reading the law in full.

8. He has cited laws that do not exist at the specified locations.  Those citations are often identical to those in the Duke University Center for Firearms Law, *Repository of Historical Gun Laws*. He cites laws in several places as if he had consulted those non-existent primary sources.  (He clearly understands that secondary sources need to be identified as such by identifying some citations in his declaration as, "Quoted in *Young v. Hawaii*, 992 F.3d 765, 794 (9th Cir. 2021)[2]

9. He has quoted laws without awareness of the larger historical context in which they were passed and thus misses the historical significance of these laws.

---

[2] Notes 27, 33, 34, 35.

### III.     Secondary Sources

10. In ¶9 of Dr. Spitzer's declaration he claims with respect to laws restricting open carry: "In the late 1700s, Virginia and North Carolina passed similar laws."  His citation is to "A Collection of Statutes of the Parliament of England in Force in the State of North Carolina, 60-61 (Newbern 1792)."  If Dr. Spitzer read the cited document, he would have seen that North Carolina passed no such law.  The citation's title alone should cause one to ask why a session law has such an odd title.  As the title makes clear, this was not a statute passed by the North Carolina Legislature.  The North Carolina Legislature tasked Martin to sift through all existing British statutes that might have some applicability to North Carolina. "I began at Magna Charta. The old statutes, before that period are generally acknowledged to be rather a matter of mere curiosity, and scarcely an authentic record of any of them is extant.... I have inserted every statute unrepealed by subsequent acts, or which did not appear so glaringly repugnant to our system of government as to warrant its suppression."



11. So how did Dr. Spitzer miss this? His citation is identical to that in the Duke collection.[4] (He repeats this claim in ¶26. It does not become more accurate by repetition.)

12. Dr. Spitzer's declaration references a 1795 Massachusetts law that directs justices of the peace to have arrested "all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go armed offensively." [5] The problem is that Dr. Spitzer's source is "1795 Mass. Acts

---

[3] Xavier Martin, *A Collection of Statutes of the Parliament of England in Force in the State of North Carolina*, iii (1792).

[4] Duke University Center For Firearms Law, *Repository of Historical Gun Laws*, https://firearmslaw.duke.edu/laws/francois-xavier-martin-a-collection-of-statutes-of-the-parliament-of-england-in-force-in-the-state-of-north-carolina-60-61-newbern-1792, last accessed November 25, 2024.

[5] 2 LAWS OF THE COMMONWEALTH OF MASSACHUSETTS FROM NOVEMBER, 28, 1780 TO FEBRUARY 28, 1807, WITH THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND OF THE COMMONWEALTH, PREFIXED 652-653 (Boston: printed by J. T. Buckingham for Thomas & Andrews, 1807), https://books.google.com/books?id=Dh8wAAAAYAAJ&newbks=1&newbks_redir=0&dq=LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASSACHUSETTS%20FROM%20NOVEMBER%2C%2028%2C%201780%20TO%20FEBRUARY%2028%2C%201807%2C%20WITH%20THE%20CONSTITUTION%20OF%20THE%20UNITED%20STATES%20OF%2

436, ch. 2.   Quoted in *Young v. Hawaii*, 799."   Relying on a secondary source is only appropriate when the primary source is not readily available.   The actual session law image is readily accessible on Google Books:



13. Dr. Spitzer and Rhode Island rely on this image from HeinOnline:

0AMERICA%2C%20AND%20OF%20THE%20COMMONWEALTH%2C%20PREFIXED&p g=PA652#v=onepage&q=LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASS ACHUSETTS%20FROM%20NOVEMBER,%2028,%201780%20TO%20FEBRUARY%2028, %201807,%20WITH%20THE%20CONSTITUTION%20OF%20THE%20UNITED%20STATE S%20OF%20AMERICA,%20AND%20OF%20THE%20COMMONWEALTH,%20PREFIXED &f=false, last accessed November 25, 2024.

*In the Year of our LORD, 1795.*

436 | Criminal Offenders.

on said fence, till it comes to the land improved by *George Sumner* ; then through said land nearly the same course, till it comes to the south-west corner of said *George Sumner's* home meadow, so called ; then turning and running easterly in said meadow, as the ditch which forms the fence is made, till it comes to the south end of *Benjamin Hawes's* meadow ; then in the line between said *Hawes's* meadow, and the land of *William Richards* ; then in the line between said *Richards's* home lot, and the meadow lots, till it comes to *Cumming's* brook, so called ; thence on said brook, till it comes to the line between *Stoughton* and *Sharon* ; thence on said line till it comes to *Nepanset river* ; thence westerly on said river, till it comes to *Traphole brook* ; thence on said brook, till it comes to the bounds first mentioned—shall be considered as *one Common and General Field* ; and that the proprietors of said lands, their heirs and successors be, and they hereby are incorporated and invested with all the powers and privileges which the proprietors of Common and General Fields by Law are invested with.

[This Act passed *January* 22, 1795.]

## C H A P.  II.

An Act for repealing an Act, made and passed in the year of our Lord, one Thousand six Hundred and Ninety-two, entitled, " An Act for punishing Criminal Offenders," and for re-enacting certain Provisions therein.

*Act repealed.*

BE it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, That the said Act be, and hereby is repealed, and made wholly null and void.

*Justices of the Peace empowered.*

And be it further enacted by the authority aforesaid, That every Justice of the Peace, within the county for which he may be commissioned, may cause to be staid and arrested, all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth, or such others as may utter any menaces or threatening speeches, and upon view of such Justice, confession of the delinquent, or other legal conviction of any such offence, shall require of the offender to find sureties for his keeping the Peace, and being of the good behaviour ; and in want thereof, to commit him to prison until he shall comply with such requisition : And may further punish the breach of the Peace in any person that shall assault or strike another, by fine to the Commonwealth, not exceeding *twenty shillings*, and require sureties, as aforesaid, or bind the offender, to appear and answer for his offence, at the next Court of General Sessions of the Peace, as the nature or circumstances of the case may require.

[This Act passed *January* 29, 1795.]

C H A P.

14. From where did this image come?  I asked HeinOnline Technical Support.  Their first answer was: *Private and Special Statutes of the Commonwealth of Massachusetts from the Year 1780 to the Close of the Session of the General Court, Begun and Held on the Last Wednesday in May, A.D. 1805* (Boston: Printed for the State, by Manning & Loring, 1805)[6] and *Laws of the*

---

[6] Volume 1, https://books.google.com/books?id=0Frq9-4riT8C&newbks=1&newbks_redir=0&dq=%22Private%20and%20Special%20Statutes%20of%20the%20Commonwealth%20of%20Massachusetts%22&pg=PR1#v=onepage&q=%22Private%20and%20Special%20Statutes%20of%20the%20Commonwealth%20of%20Massachusetts%22&f=false, last accessed November 25, 2024; Volume 2,

*Commonwealth of Massachusetts from November, 28, 1780 to February 28, 1807, with the Constitution of the United States of America, and of the Commonwealth, Prefixed* (Boston: printed by J. T. Buckingham for Thomas & Andrews, 1807).[7]

15. These are both three volumes sets.  Images of both are readily available.  The problem is that neither three volume set contains this page cited as 1795 Mass. Laws 436, ch. 2.

---

https://books.google.com/books?id=GLQvAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22Private%20and%20Special%20Statutes%20of%20the%20Commonwealth%20of%20Massachusetts%22&pg=PP1#v=onepage&q=%22Private%20and%20Special%20Statutes%20of%20the%20Commonwealth%20of%20Massachusetts%22&f=false, last accessed November 25, 2024; Volume 3, https://books.google.com/books?id=XTY7XtgV-8MC&newbks=1&newbks_redir=0&dq=%22Private%20and%20Special%20Statutes%20of%20the%20Commonwealth%20of%20Massachusetts%22&pg=PA1#v=onepage&q=%22Private%20and%20Special%20Statutes%20of%20the%20Commonwealth%20of%20Massachusetts%22&f=false, last accessed November 25, 2024..

[7] Adam J. Tramp email to Clayton Cramer Oct. 21, 2024, Volume 1, Email on file with author, https://books.google.com/books?id=px8wAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22Laws%20of%20the%20Commonwealth%20of%20Massachusetts%20from%20November%2C%2028%2C%201780%20to%20February%2028%2C%201807%22&pg=PP5#v=onepage&q=%22Laws%20of%20the%20Commonwealth%20of%20Massachusetts%20from%20November,%2028,%201780%20to%20February%2028,%201807%22&f=false, last accessed November 25, 2024; Volume 2, https://books.google.com/books?id=bVZHAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22Laws%20of%20the%20Commonwealth%20of%20Massachusetts%20from%20November%2C%2028%2C%201780%20to%20February%2028%2C%201807%22&pg=PA521#v=onepage&q=%22Laws%20of%20the%20Commonwealth%20of%20Massachusetts%20from%20November,%2028,%201780%20to%20February%2028,%201807%22&f=false, last accessed November 25, 2024; https://books.google.com/books?id=sFdHAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22Laws%20of%20the%20Commonwealth%20of%20Massachusetts%20from%20November%2C%2028%2C%201780%20to%20February%2028%2C%201807%22&pg=PP11#v=onepage&q=%22Laws%20of%20the%20Commonwealth%20of%20Massachusetts%20from%20November,%2028,%201780%20to%20February%2028,%201807%22&f=false, last accessed November 25, 2024.



16. As the title suggests, *Private and Special Statutes of the Commonwealth of Massachusetts* does not contain criminal laws. There are no chapter numbers. Volume 1 ends before 1795.

17. Volumes 1 and 2 of *Laws of the Commonwealth of Massachusetts* have no chapter numbers. Examples, 1: 47 and 2:523:

## ACTS AND LAWS

### OF

### *MASSACHUSETTS.*

AN ACT for erecting a Town within the County of *Hampfhire*, by the Name of *Montgomery*.
[This Act paffed *November* 28, 1780.]

An ACT making Provifion for the Accommodation of Soldiers and Seamen belonging to other States or Commonwealths, who may be taken fick and be in Want within this Commonwealth.
[This Act paffed *December* 1, 1780.]

An ACT for repealing certain Parts of an Act poftponing the Payment of Government Securities to a diftant Period ; for the Payment of the Intereft now due on faid Securities ; and for altering the feveral acts of Government which now relate to the Currency of the State, and conforming the fame to the Principles of Equality and juftice.
[This Act paffed *January* 25, 1781.]

An ACT to prevent one feventh Part of the Bills of Credit of the New Emiffion coming into Circulation, and for directing the Treafurer to iffue Gold and Silver out of the Treafury therefor.
[This Act paffed *January* 25, 1781.]

Aa

## ACTS AND LAWS

### OF

### *MASSACHUSETTS.*

AN ACT to incorporate the Plantation of *Wales*, in the County of *Lincoln*, into a Town by the Name of *Monmouth*.
[This Act paffed *January* 30, 1792.]

An ACT to regulate the taking of Fifh called Alewives, in the Town of *Middleborough*, in the County of *Plymouth*, and for repealing a certain Law made for that Purpofe in the Year of our LORD One thoufand feven hundred and forty-nine.   Feb. 8, 1798, June 19, 1801.
[This Act paffed *January* 30, 1792.]

An ACT to incorporate the wefterly Part of the Town of *Vaffalborough*, in the County of *Lincoln*, with the Inhabitants thereof, into a Town by the Name of *Sidney*.
[This Act paffed *January* 30, 1792.]

An ACT for incorporating certain Perfons for the Purpofe of building a Bridge over *Merrimack-River*, at *Patucket Fa'ls*, between the Towns of *Chelmsford* and *Dracut*, in the County of *Middlefex*, and for fupporting the fame.   Feb. 25, 1796.
[This Act paffed *February* 1, 1792.]

**Vol. II.**         A                                     Aa

Digitized by Google          Digitized by Google

18. Volume 1 ends in 1791, before 1795.  Vol. 2 begins in early 1792, Vol. 3 begins in 1801, after 1795.  There are no chapter numbers printed in volume 3, but someone has handwritten what might be chapter numbers in the margin:

---

# A C T S  AND  L A W S

## OF

# *MASSACHUSETTS.*

---

*1800*

*37*

A**N Act to incorporate the Plantation heretofore called *Number-Three*, or *Reedstown*, on the west Side of *Kennebeck* River, in the County of *Kennebeck*, into a Town by the Name of *Strong*.

[This Act passed *January* 31, 1801.]

---

*38*

An Act to alter the Times and Places for holding the Courts of General Sessions of the Peace, and Courts of Common Pleas, in the County of *Cumberland*.

Repealed June 15, 1805.

[This Act passed *February* 6, 1801.]

---

*39*

An Act in addition to an Act passed the nineteenth Day of *February*, *Anno Domini* One thousand seven hundred and ninety-nine, entitled, " An Act concerning the Proprietors of *Lebanon*."

[This Act passed *February* 10, 1801.]

---

*40*

An Act to incorporate certain Persons for building a Bridge over *Belfast* River, in the County of *Hancock*.

[This Act passed *February* 10, 1801.]

VOL. III.        A

Digitized by Google

---

19. As discussed above, the quoted law does appear in 2 *Laws of the Commonwealth of Massachusetts* 652-3 without a chapter number and at a different page number.

20. There are several (many?) different official collections of Massachusetts session laws: 8 ACTS AND LAWS OF THE COMMONWEALTH OF MASSACHUSETTS 319-20, ch. 2 (Boston: 1896) lists a 1795 session law, ch. 2 at pp. 319-20: "An ACT to change the name of William Shelden, of

Hadley, in the County of Hampshire, to the name of Giles Crouch Kellogg."[8]  The statutes on p. 436 are similarly irrelevant to arms regulation.[9]

21. The statute Spitzer likely wants is at p. 654 of 1 GENERAL LAWS OF MASSACHUSETTS, where it is listed as ch. 26.  It was passed during the 1794 session which extended into 1795.  It is 1794 Mass. Acts 454, ch. 26:

---

[8] 8 ACTS AND LAWS OF THE COMMONWEALTH OF MASSACHUSETTS 319-20, ch. 2 (Boston: 1896), https://books.google.com/books?id=olNNAQAAMAAJ&newbks=1&newbks_redir=0&dq=%22An%20ACT%20to%20change%20the%20name%20of%20William%20Shelden%22&pg=PA319#v=onepage&q=%22An%20ACT%20to%20change%20the%20name%20of%20William%20Shelden%22&f=false, last accessed November 25, 2024.

[9] 8 ACTS AND LAWS OF THE COMMONWEALTH OF MASSACHUSETTS 319-20, ch. 2 (1896), https://books.google.com/books?id=olNNAQAAMAAJ&newbks=1&newbks_redir=0&dq=%22An%20ACT%20to%20change%20the%20name%20of%20William%20Shelden%22&pg=PA435#v=onepage&q=%22An%20ACT%20to%20change%20the%20name%20of%20William%20Shelden%22&f=false, last accessed November 25, 2024.

454                          1794. —— Chap. 21—31.

**Chap. 21.** An Act to incorporate certain persons by the name of The Northwest Congregational Society in North-Yarmouth. [June 26, 1794.] Add. act—1795 ch. 15.

**Chap. 22.**
1793 ch. 65.
An Act to suspend the operation of an Act, entitled "An Act ascertaining the Quality of Stone-Lime, and the size of Lime Casks, and for repealing all Laws heretofore made relative thereto." [June 27, 1794.] Original act repealed—1809 ch. 62.

**Chap. 23.** An Act to repeal all Laws of this Commonwealth imposing Duties and Excise on Carriages, and inflicting Penalties for selling Wines and foreign distilled Spirits, so far as the same respect said matters. [June 27, 1794.] Add. act—1796 ch. 21.

**Chap. 24.** An Act for dividing the Commonwealth into Districts for the Choice of Representatives in the Congress of the United States, and prescribing the Mode of Election. [June 27, 1794.] Add. act—1796 ch. 15. See 1801 ch. 47. All expired.

**Chap. 25.** An Act for incorporating certain Land in Dedham and Sharon, in the County of Norfolk, into a Common Field. [Jan. 22, 1795.]

**Chap. 26.**
4 W.& M.ch.6.
An Act for repealing an Act, made and passed in the year of our Lord one thousand six hundred and ninety-two, entitled, "An Act for punishing Criminal Offenders," and for re-enacting certain Provisions therein.

**Act repealed.**
Sect. 1. BE it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, That the said Act be and hereby is repealed, and made wholly null and void.

**Justices of the Peace empowered to stay affrayers, rioters, &c. and bind them to keep the peace.**
Sect. 2. And be it further enacted by the authority aforesaid, That every Justice of the Peace, within the county for which he may be commissioned, may cause to be staid and arrested, all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth, or such others as may utter any menaces or threatening speeches, and upon view of such justice, confession of the delinquent, or other legal conviction of any such offence, shall require of the offender to find sureties for his keeping the peace, and being of the good behaviour; and in want thereof, to commit him to prison until he shall comply with such requisition: And may further

**And to punish breaches of the peace.**

1803 ch.154,!3.
punish the breach of the peace in any person that shall assault or strike another, by fine to the Commonwealth, not exceeding twenty shillings, and require sureties, as aforesaid, or bind the offender to appear and answer for his offence at the next Court of General Sessions of the Peace, as the nature or circumstances of the case may require. [Jan. 29, 1795.]

**Chap. 27.** An Act to set off William Goodspeed, with his estate, from the Town of Washington in the County of Berkshire, and annex him and his estate to the Town of Lenox, in the same County. [Jan. 31, 1795.]

**Chap. 28.** An Act to incorporate Valentine Rathburn, and others, inhabitants of the Town of Pittsfield, into a religious Society, by the name of The Baptist religious Society in the Town of Pittsfield. [Feb. 10, 1795.]

**Chap. 29.** An Act for incorporating certain persons therein named, by the name of The Trustees of the Church and Congregation in the second Precinct in Pembroke. [Feb. 10. 1795.] Add. act—1816 ch. 93.

**Chap. 30.** An Act for erecting and maintaining a Bridge over Westfield-River, in the Town of Norwich, in the County of Hampshire. [Feb. 10, 1795.]

**Chap. 31.** An Act to ascertain the Jurisdiction and Limits of the Counties of Suffolk and Middlesex, over and upon Charles River.

Sect. 1. BE it enacted by the Senate and House of Represen-

                                                                                        10
                                                                                    .

---

[10] 1 GENERAL LAWS OF MASSACHUSETTS 454, ch. 26 (1823), https://books.google.com/books?id=qQ1HAQAAIAAJ&newbks=1&newbks_redir=0&dq=Massachusetts%20Acts%201794%20offensively&pg=PA454#v=onepage&q=Massachusetts%20Acts%201794%20offensively&f=false, last accessed November 25, 2024. Compare to Duke's citation: https://firearmslaw.duke.edu/laws/1795-mass-laws-436-ch-2-an-act-for-repealing-an-act-made-and-passed-in-the-year-of-our-lord-on-ethousand-six-hundred-and-ninty-two-entitled-an-act-for-punishing-criminal-offenders-and-for-r, last accessed November 25, 2024.

22. There is no p. 436 or ch. 2 that matches HeinOnline's first explanation of the page they provided for Spitzer's citation of 436, ch. 2.

23. I pointed out to HeinOnline that their supposed sources lacked such a page. I asked for the title of the published volume from which their p. 436, ch. 2 came. This was their response:



In the Year of our LORD, 1795.

Common Field in *Norfolk.*    435

## Acts *and* Laws

Paſſed by the GENERAL COURT of *Maſſachuſetts :*

Begun and held at BOSTON, in the County of SUFFOLK, on Wednesday the Twenty-eighth Day of MAY, ANNO DOMINI, 1794 ; and from thence continued by adjournment, to Wedneſday, the Fourteenth Day of January, 1795.

C H A P.    I.

An Act for incorporating certain Land in *Dedham* and *Sharon,* in the County of *Norfolk,* into a Common Field.

11

24. There is no publisher, publication date, or publication city. This is not a useful, traceable title page; it is not even a title page! If Spitzer looked up a published primary source, it would be verifiable. HeinOnline is, at best, a secondary source that has no apparent idea from where their images come. Duke's citation and text of this law appear to be not even a secondary source, but a tertiary source relying on what turns out to be an unverifiable secondary source.

---

[11] Adam J. Tramp email to Clayton Cramer Oct. 23, 2024. Email on file with author.

25. This, in itself, is a sign of careless, inexpert work.  The citation matches *at best*, a secondary, perhaps tertiary source, the Duke University Center for Firearms Law, Repository of Historical Gun Laws, which provides no traceable source for this law.[12]  This suggests that Dr. Spitzer never found the primary source, which is readily accessible by any historian familiar with the extensive online sources. The Duke Repository does caution: "Conscientious users of this Repository should supplement their results with further legal and historical research."  I guess it should have said: "Persons writing expert declarations using this Repository should supplement their results with further legal and historical research."[13]  Yes.  Perhaps Dr. Spitzer does not qualify as an expert.

26. In ¶25 of his declaration, Dr. Spitzer claims "New Hampshire enacted a law in 1701 (also in 1708 and 1744) that punished anyone who 'shall go armed offensively' who 'put his Majesty's subjects in fear.'"  At least here, Dr. Spitzer admits that he is relying on a secondary source: HeinOnline ("New Hampshire - Acts and Laws June 1701, 15; available at https://heinonline-org.proxy.wm.edu/HOL/Page?handle=hein.ssl/ssnh0240&id=1&collection=ssl&index=ssl/ssnh; New Hampshire 1708, 'Laws of New Hampshire,' available at https://heinonline.org/HOL/Page?handle=hein.ssl/ssnh0244&id=68&collection=ssl;  N.H. - Acts and Laws, 1744, 9-10, https://heinonline-org.proxy.wm.edu/HOL/Print?collection=ssl&handle=hein.ssl/ssnh0244&id=10.")  These are behind a paywall but fortunately the primary sources are available.

---

[12] Duke University Center For Firearms Law, *Repository of Historical Gun Laws*, https://firearmslaw.duke.edu/laws/1795-mass-laws-436-ch-2-an-act-for-repealing-an-act-made-and-passed-in-the-year-of-our-lord-on-ethousand-six-hundred-and-ninty-two-entitled-an-act-for-punishing-criminal-offenders-and-for-r, last accessed November 25, 2024.
[13] Duke University Center For Firearms Law, *Historical Gun Laws*, https://firearmslaw.duke.edu/repository-of-historical-gun-laws, last accessed November 25, 2024.

27. Along with relying on a secondary source, which at least is an actual law at a location that seems non-verifiable, Dr. Spitzer cites many laws as though he actually looked them up but do not seem to appear in the published session laws. "1701 N.H. Acts and Laws 15." If Spitzer means p. 15, 1 LAWS OF NEW HAMPSHIRE has laws for the years 1692-1702. On p. 15 are laws prohibiting rape, "wilfull burning," and adultery.[14]



28. Perhaps HeinOnline has an alternate universe copy of the New Hampshire session laws, but I think I will give more credit to an official primary source.

---

[14] 1 LAWS OF NEW HAMPSHIRE 15 (1904).,
https://babel.hathitrust.org/cgi/pt?id=mdp.39015047789402&seq=121, last accessed November 25, 2024.

29. In some cases, Dr. Spitzer uses citations that have insufficient information (page number, chapter number) to check, likely because he copied these citations from a secondary source without verifying them. "N.H. Public Carry Prohibition (1708)." This is not a citation of any value for verification. It appears that Spitzer found this law in the Duke University Gun Law Repository. It appears there as Spitzer cites it and he lacked the willingness or ability to find the primary source. The Duke University Gun Law Repository gives no source for this law except a paywalled link to HeinOnline. [15] One would hope that a university law school would at least give the title from which this law came, even if they found it in a secondary source. The 1708 New Hampshire session laws has *one* law: "An Act For The Encouragement Of The Inhabitants Of Her Majesties Province Of New Hampshire In The Makeing Of Tarr To Be Transported Into Her Majesties Kingdom Of Great Brittaine And Otherwise For The Encouragement Of Trade". [16]

---

[15] Duke University Gun Law Repository, *New Hampshire Public Carry Prohibition (1708)*, https://firearmslaw.duke.edu/laws/new-hampshire-public-carry-prohibition-1708, last accessed November 25, 2024.

[16] 2 LAWS OF NEW HAMPSHIRE Ch. 1 at 87 (1913)., https://books.google.com/books?id=PbxGAQAAIAAJ&pg=PA347&dq=%22LAWS+OF+NEW+HAMPSHIRE%22+volume+2+tarr&hl=en&newbks=1&newbks_redir=0&sa=X&ved=2ahUKEwij9M3s872HAxW7DjQIHemRAf8Q6AF6BAgIEAI#v=onepage&q=tarr&f=false, last accessed November 25, 2024.

# LAWS

OF

# NEW HAMPSHIRE

INCLUDING

PUBLIC AND PRIVATE ACTS AND RESOLVES AND THE
ROYAL COMMISSIONS AND INSTRUCTIONS
WITH HISTORICAL AND DESCRIPTIVE
NOTES, AND AN APPENDIX

EDITED BY ALBERT STILLMAN BATCHELLOR, LITT. D.

VOLUME TWO
PROVINCE PERIOD
1702-1745

CONCORD, N. H.
RUMFORD PRINTING COMPANY
1913

17

---

ADMINISTRATION OF JOSEPH DUDLEY      87

Upon **reading** the petition of Samuel Shipperd and ———— True on behalfe of Several other Inhabitants lying neare the line of both provinces
Ordered that what goods has been restrained by the Constable of Hampton from said True be returned to him againe, the tax being taken by the Constable of Salsbury Six dayes before./ [Council order. Journal of the Council and Assembly.]

[*Sixteenth Session, Held at Portsmouth November 17, 18, 1708.*]

[CHAPTER 1.]

AN ACT FOR THE ENCOURAGEMENT OF THE INHABITANTS OF HER MAJESTIES PROVINCE OF NEW HAMPSHIRE IN THE MAKEING OF TARR TO BE TRANSPORTED INTO HER MAJESTIES KINGDOM OF GREAT BRITTAINE AND OTHERWISE FOR THE ENCOURAGEMENT OF TRADE

[Passed Nov. 18, 1708.   7 Anne.   Original Acts, vol. 1, p. 72;   Laws, 1716 edition, p. 29;  1761 edition, p. 196;  1771 edition, p. 32;  repealed June 30, 1792.]

Be it Enacted by his Excellency the Govern' Council and Rep'sentatives Conven⁴ in General Assembly and by the Authority of the Same, that there be Annually by the Assembly of this province, a Rate sett upon all good Tarr of due Assize in Cask made in the Province and that it be received at the said Rate soe sett in the Treasury of the province for the payment of all taxes for the future, And that for the yeare next comeing after the date of this Act the price be twenty shillings ℔ Barrell for every barrel of good Tarr in Cask of Just Assise accordingly.

[ORDERS, RESOLVES, AND VOTES OF LEGISLATIVE NATURE PASSED DURING THIS SESSION.]

1708, Nov. 18.
Ordered that the Sheriffe take care for the Repaire of the prison and the Addition of a Leantoe for a Lodging for the Keeper and a Yard about the whole building to prevent Correspondence with the prisoners, and that he desire the advice of the Gentlemen of the Council in portsmouth for the Dimentions & manner of Building the Charge to be paid by the Treasur' [Council order.   Journal of the Council and Assembly.]

Voted that the Inhabitants ffreeholders of Kingstown within her Majesties province of New Hampshire from this day forward have free liberty for Sending one Representative for the Said Town to Sitt in General Assembly [Concurrent vote.  Journal of the Council and Assembly.]

18

---

30. The following page starts the next year's session laws.

---

17

https://books.google.com/books?id=tuopAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22LAWS%20OF%20NEW%20HAMPSHIRE%22%20volume%202&pg=PR1#v=onepage&q=%22LAWS%20OF%20NEW%20HAMPSHIRE%22%20volume%202&f=false, last accessed November 25, 2024

18

https://books.google.com/books?id=PbxGAQAAIAAJ&newbks=1&newbks_redir=0&dq=%22LAWS%20OF%20NEW%20HAMPSHIRE%22%20volume%202%20tarr&pg=PA87#v=onepage&q=tarr&f=false, last accessed November 25, 2024.

88        NEW HAMPSHIRE PROVINCE LAWS

[*Seventeenth Session, Held at Portsmouth May 4, 5, 6, 12, 13, 14, 16, 17, 18, 1709.*]

[CHAPTER 1.]

AN ACT FOR RAISING ONE THOUSAND SEAVEN HUNDRED AND TWENTY POUNDS FOR PAYMENT OF THE PROVINCE DEBTS PROVIDING FOR SUBSISTANCE OF OUR QUOTA OF MEN TO JOYNE WITH THE FFORCES NOW DESIGNED AGAINST CANADA AND FOR DEFRAYING THE CHARGES OF OUR AGENT FOR ENGLAND./

[Passed May 14, 1709. 8 Anne. Original Acts, vol. i, p. 73; recorded Acts, vol. 1, p. 143.]

Wee your Majesties most dutifull and Loyal Subjects the Representatives of your Majesties province of New Hampshire, Conven⁴ in General Assembly doe Chearfully and Unanimously Give and Grant unto your most Excellent Majestie, the Sum'e of one thousand Seven hundred and Twenty pounds to be applyed towards the payment of the province debts, the Substance of our Quota of men to Joyne with the fforces now designed ag⁵ Canada, for Support of the Goverment and for defraying the Charges of our Agent for England &c according to the vote of the General Assembly./

Be it therefore Enacted and Ordained by the Governour Council and Representatives Conven⁴ in· General Assembly and by the Authority of the Same that a Rate be forthwith made and laid on all persons and Estates both Real and personal throughout this province in proportion to the Several Towns (that is to Say) The Town of Portsmouth three hundred Seventy Seven pounds tenn shill The Town of Exeter three hundred twenty five pounds Eight shillings The Town of Hampton ffive hundred & five pounds thirteen shillings The Town of Dover three hundred Sixty one pounds Nine shillings The Town of Newcastle one hundred and ffifty pounds—And that the Treasurer Send out his warranto to the Constables of the Respective Towns requiring them to Assemble the Inhabitants to make Choice of two Assessors where they are not already Chosen for the yeare to Joyne with the Select men in makeing the Rates and Assesments according to this Act to whome the Treasurer shall alsoe give warrants pursueant thereto, And the Rate and Assessment Soe made to be Comitted to the Constables of the Respective Towns by the first day of June next Ensueing with warrants from a Justice of the peace, and the Select men and Assessors to Collect the Same, and to pay ffour hundred and fforty pounds thereof to the Treasurer for the time being by the first day of September next in mony or in the species foll' at ready mony price and twelve hundred and Eighty pounds by the last day of December then next after in Mony or in the Species at the prices following; Viz Codd ffish and Skale ffish at

19

31. "N.H. - Acts and Laws, 1744, 9-10."  A volume titled New Hampshire Acts and Laws (1744) was not available.  LAWS OF NEW HAMPSHIRE: 1702-1745 has thirteen chapters passed during sessions in 1744-1745, none regulating the display or use of arms.[20]

### IV.    Secondary Source & Out of Context

---

19

https://books.google.com/books?id=PbxGAQAAIAAJ&newbks=1&newbks_redir=0&dq=%22LAWS%20OF%20NEW%20HAMPSHIRE%22%20volume%202%20tarr&pg=PA88#v=onepage&q=tarr&f=false,  last accessed November 25, 2024.
[20] 2 LAWS OF NEW HAMPSHIRE 734-750 (1913),
https://archive.org/details/lawsofnewhampshi02newh/page/88/mode/2up, last accessed November 25, 2024.

32. In ¶26, Dr. Spitzer quotes out of context § 6 of an 1801 Tennessee law: "An act for the restraint of idle and disorderly persons." Section 6 reuses the language of the Statute of Northampton (1328) to prohibit "any person or persons shall publicly ride or go armed to the terror of the people, or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person."[21] Quoting one *section* of this session law without examining its broader context shows a careless, unprofessional, and inexpert approach to historical analysis.

33. Reading the entire statute gives some context suggesting that the law targeted *one* disreputable group, and was not a general ban:

> Whereas it becomes necessary for the welfare of the community, to suppress *wandering, disorderly and idle persons…. That any person or persons who have no apparent means of subsistence or neglect applying themselves to some honest calling for the support of themselves and families every person so offending*, who shall be found sauntering about neglecting his business, and endeavoring to maintain himself by gaming or other undue means, it shall and may be lawful any justice of the peace or court of the county wherein such person may be found, on due proof made, to issue his warrant for such offending person, and caused him to be brought before such said justice…[22] [emphasis added]

34. All sections of the law are directed at these "wandering, disorderly and idle persons" and attempts to prevent their wandering without permanent residence or respectable employment.

35. The law is narrowly focused on these vagrant gamblers and even then § 6 only requires posting a bond contingent on "their good behaviour," to avoid jail. This is again, a prohibition on concealed carry and open carry only if "to the terror of the people."

---

[21] 1801 Tenn. Acts ch. 22, at 259-261, https://archive.org/details/esrp85888526/page/n267/mode/2up?q=disorderly, last accessed November 25, 2024.. Images of the full text, 1 LAWS OF THE STATE OF TENNESSEE 708-711 (1821) are now available at https://firearmslaw.duke.edu/assets/1821,-laws-of-the-state-of-tennessee-including-those-of-north-carolina-now-in-force-in-this-state-from-the-year-1715-to-the-year-1820,-ch.-22,--6.pdf, last accessed November 25, 2024.

[22] 1801 Tenn. Acts ch. 22, § 1 at 259-260, https://archive.org/details/esrp85888526/page/n267/mode/2up?q=disorderly, last accessed November 25, 2024.

36. So how did Dr. Spitzer miss the broader context of § 6?  That section alone appears in the Duke University Center for Firearms Law, *Repository of Historical Gun Laws*.  It seems likely that Dr. Spitzer relied on Duke's out of context text, instead of looking up the session law.[23]  I was fortunate that a friend lived near one of the few libraries with a paper copy of the book.  If Dr. Spitzer had identified that he had not actually read the law in full, but relied only on a secondary source, it would have been more accurate, but less persuasive as evidence.

## V.    Deceptive & Out of Historical Context

37. In a section about "WEAPONS BRANDISHING AND DISPLAY LAWS,"  Dr. Spitzer quotes from "1786 Mass. Sess. Laws An Act to Prevent Routs, Riots, and Tumultuous assemblies, and the Evil Consequences Thereof."  This statute prohibits "if any persons to the number of twelve, or more, being armed with clubs, or other weapons; or if any number of persons, consisting of thirty or more, shall be unlawfully, routously, riotously, or tumultuously assembled."[24]  It was not a crime for an individual to be armed or even eleven to be armed. There must be at least twelve armed to constitute a crime.  To characterize a law aimed only at armed bodies of men as a ban on carrying of arms is misleading.

---

[23] Judge Edward Scott, *Laws of the State of Tennessee: Including Those of North Carolina Now in Force in this State: From the Year 1715 to the Year 1820*, Inclusive Page 710, Image 714 (Vol. 1, 1821) The Making of Modern Law: Primary Sources, in DUKE CENTER FOR FIREARMS LAW REPOSITORY OF HISTORICAL GUN LAWS, https://firearmslaw.duke.edu/laws/judge-edward-scott-laws-of-the-state-of-tennessee-including-those-of-north-carolina-now-in-force-in-this-state-from-the-year-1715-to-the-year-1820-inclusive-page-710-image-714-vol-1-1821-the/, last accessed July 17, 2024.

[24] 1 LAWS OF THE COMMONWEALTH OF MASSACHUSETTS 346-7 (1807)., https://books.google.com/books?id=px8wAAAAYAAJ&newbks=1&newbks_redir=0&dq=%22LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASSACHUSETTS%22%20clubs&pg=PA346#v=onepage&q=%22LAWS%20OF%20THE%20COMMONWEALTH%20OF%20MASSACHUSETTS%22%20clubs&f=false, last accessed November 25, 2024.

38. It also shows a lack of historical context.  Why was this law written in such a way that it only applied to bodies of twelve or more armed men or groups of thirty or more even if not armed? "Whereas the provision already made by law for the preventing routs, riots, and tumultuous assemblies and the evil consequences thereof have been found insufficient."  This law was passed October 28, 1786, shortly after Shays' Rebellion started disrupting courts in western Massachusetts with armed mobs preventing operation of the courts.[25]  This context suggests that this law was a response to a temporary crisis, and hardly indicative of normal operations.

## VI.     Careless, Sloppy Errors

39. In ¶9 of Spitzer's declaration, he asserts, "Concealed carry laws normally targeted pistols as well as the types of fighting knives and various types of clubs discussed here."  Spitzer often uses external Exhibits in declarations in other cases to obscure the fact that many of the laws he references do not match his representation of them.  I have read every concealed weapon law from the antebellum period that Spitzer has cited in other declarations, and none of them prohibit concealed carry of clubs.[26]  There *are* laws prohibiting possession or carrying of clubs,

---

[25] John Bach McMaster, 1 A History of the People of the United States, from the Revolution to the Civil War 306 (1884).
https://books.google.com/books?id=moVtw9UJcuQC&newbks=1&newbks_redir=0&dq=1884%20volume%205%20%22A%20HISTORY%20OF%20THE%20PEOPLE%20OF%20THE%20UNITED%20STATES%2C%20FROM%20THE%20REVOLUTION%20TO%20THE%20CIVIL%20WAR%20%22&pg=PA306#v=onepage&q=1884%20volume%205%20%22A%20HISTORY%20OF%20THE%20PEOPLE%20OF%20THE%20UNITED%20STATES,%20FROM%20THE%20REVOLUTION%20TO%20THE%20CIVIL%20WAR%20%22&f=false, last accessed November 25, 2024.
[26] ACTS PASSED AT THE FIRST SESSION OF THE TWENTY FIRST GENERAL ASSEMBLY FOR THE COMMONWEALTH OF KENTUCKY 100-101 (1813), ("pocket pistol, dirk, large knife, or sword in a cane"); ACTS PASSED AT THE SECOND SESSION OF THE FIRST LEGISLATURE OF THE STATE OF LOUISIANA 172-175 (1813)("a dirk, dagger, knife, pistol or any other deadly weapon"); LAWS OF THE STATE OF INDIANA, PASSED AT THE FOURTH SESSION OF THE GENERAL ASSEMBLY 39 (1820)(" dirk, pistol, sword in a cane, or other dangerous weapon"); REVISED LAWS OF INDIANA,

IN WHICH ARE COMPRISED ALL SUCH ACTS OF A GENERAL NATURE AS ARE IN FORCE IN SAID STATE; ADOPTED AND ENACTED BY THE GENERAL ASSEMBLY AT THEIR FIFTEENTH SESSION 192 (1831)(" dirk, pistol, sword in a cane, or other dangerous weapon"); ACTS PASSED AT THE CALLED SESSION OF THE GENERAL ASSEMBLY OF THE STATE OF ALABAMA chap. 11 at 7 (1837)(" knife or weapon, known as Bowie Knives or Arkansas Tooth-picks, or either or any knife or weapon that shall in form, shape or size, resemble a Bowie-Knife or Arkansaw [*sic*] Tooth-pick"); ACTS OF THE GENERAL ASSEMBLY OF THE STATE OF GEORGIA PASSED IN MILLEDGEVILLE AT AN ANNUAL SESSION IN NOVEMBER AND DECEMBER, 1837 90-91 (1838),(" pistols, dirks, sword canes, spears, &c."); ACTS PASSED AT THE FIRST SESSION OF THE TWENTY-SECOND GENERAL ASSEMBLY OF THE STATE OF TENNESSEE: 1837-8 200-201 (1838)("Bowie knife, Arkansas tooth pick, or other knife or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick"); REVISED STATUTES OF THE STATE OF ARKANSAS, ADOPTED AT THE OCTOBER SESSION OF THE GENERAL ASSEMBLY OF SAID STATE, A.D. 1837 Div. VIII, Art. I, § 13, p. 280 (1838)("pistol, dirk, butcher or large knife, or a sword in a cane"); ACTS OF THE GENERAL ASSEMBLY OF VIRGINIA, PASSED AT THE SESSION OF 1838 76-77 (Richmond: Thomas Ritchie, 1838)(" any species of fire arms, or any bowie knife, Arkansaw [*sic*] tooth-pick, or any other knife of the like kind, dirk, or any other deadly weapon"); ACTS PASSED AT THE ANNUAL SESSION OF THE GENERAL ASSEMBLY OF THE STATE OF ALABAMA chap. 77 at 67-68 (1838 [1839])(" any species of fire arms, or any bowie knife, Arkansaw [*sic*] tooth-pick, or any other knife of the like kind, dirk, or any other deadly weapon"); Act of Feb. 2, 1860, §§ 1-9, N.M. Laws 94, 94-99("any class of pistols whatever, bowie knife (cuchillo de cinto) , Arkansas toothpick, Spanish dagger, slung-shot, or any other deadly weapon") This was one of the extraordinarily rare antebellum bans on open carry.

applicable in most cases only to African-Americans, slave and free,[27] that Spitzer has cited in

defense of laws banning possession or carrying of clubs by law-abiding free people.[28]

---

[27] 1680 Va. Ch. 10 at 481,
https://books.google.com/books?id=SkIVAAAAYAAJ&pg=PA481&dq=1680+club+Virginia+sl
ave&hl=en&newbks=1&newbks_redir=0&sa=X&ved=2ahUKEwjtz7SK8b2HAxVtGDQIHQxc
DwQQ6AF6BAgJEAI#v=onepage&q=1680%20club%20Virginia%20slave&f=false; 1792 Va.
Ch. 103 at 123,
https://books.google.com/books?id=rV83AQAAMAAJ&pg=PA123&dq=NO+negro+or+mulatto
+what%C5%BFoever+shall+keep+or+carry+any+gun,+powder,+shot,+club,&hl=en&newbks=1
&newbks_redir=0&sa=X&ved=2ahUKEwjQmqna8L2HAxVjODQIHfmnnAX0Q6AF6BAgPEAI
#v=onepage&q=NO%20negro%20or%20mulatto%20what%C5%BFoever%20shall%20keep%2
0or%20carry%20any%20gun%2C%20powder%2C%20shot%2C%20club%2C&f=false, last
accessed November 25, 2024; 1797 Del. CH. 43, § 6 at 104,
https://archive.org/details/bim_eighteenth-century_laws-of-the-state-of-
del_1797_1/page/103/mode/2up?q=club&view=theater, last accessed November 25, 2024.; 1798
Ky. Laws ch. 63 § 5 at 113,
https://books.google.com/books?id=CRhEAAAAYAAJ&pg=PA113&dq=%22Statute+Law+of+
Kentucky:+1798-
1801%22+club&hl=en&newbks=1&newbks_redir=0&sa=X&ved=2ahUKEwiOrKyb7r2HAxX
mMjQIHdaoAikQ6AF6BAgDEAI#v=onepage&q=%22Statute%20Law%20of%20Kentucky%3
A%201798-1801%22%20club&f=false, last accessed November 25, 2024; 1798 Miss. Laws ch.
17 § 4 at 379,
https://books.google.com/books?id=_og0QAAAMAAJ&pg=PA379&dq=STATUTES+OF+THE
+MISSISSIPPI+TERRITORY+a+slave+shall+keep+or+carry+any+gun&hl=en&newbks=1&ne
wbks_redir=0&sa=X&ved=2ahUKEwjT8t6jgbaHAxUoOjQIHRrRDYwQ6AF6BAgFEAI#v=on
epage&q=STATUTES%20OF%20THE%20MISSISSIPPI%20TERRITORY%20a%20slave%20
shall%20keep%20or%20carry%20any%20gun&f=false, last accessed November 25, 2024; 1805
Ala. ch. 1 in A DIGEST OF THE LAWS OF THE STATE OF ALABAMA at 627 (1823),
https://books.google.com/books?id=fINPAQAAIAAJ&pg=PA627&dq=%22An+Act+Respectin
g+Slaves%22+club&hl=en&newbks=1&newbks_redir=0&sa=X&ved=2ahUKEwjuh6zAiraHAx
VHBDQIHRIXCb8Q6AF6BAgLEAI#v=onepage&q=%22An%20Act%20Respecting%20Slaves
%22%20club&f=false,  last accessed November 25, 2024; DIGEST OF THE LAWS OF MISSOURI TERRITORY 374
(1818),
https://books.google.com/books?id=NbEwAQAAMAAJ&pg=PA374&dq=%22DIGEST+OF+T
HE+LAWS+OF+MISSOURI+TERRITORY%22+1818+club&hl=en&newbks=1&newbks_redir
=0&sa=X&ved=2ahUKEwiDq43u8b2HAxVaOjQIHa_eApsQ6AF6BAgFEAI#v=onepage&q=
%22DIGEST%20OF%20THE%20LAWS%20OF%20MISSOURI%20TERRITORY%22%2018
18%20club&f=false, last accessed November 25, 2024; Slaves, in LAWS OF THE ARKANSAS TERRITORY
521 (J. Steele & J. M'Campbell, Eds., 1835)
[28] *Declaration Of Robert Spitzer*, Fouts v. Bonta (S.D.Cal. 2022).

40. His Exhibit C has the word "club" in it 41 times.  Only "1915 N.D. Laws 96" on p. 93 prohibits concealed carry of a club.  Being charitable, this misrepresentation of such laws is careless work for an expert.

41. On p. 14 Dr. Spitzer cites "1692 Mass. Acts 10, 11–12," as evidence of existing Massachusetts firearms laws.  It is unclear if he means pp. 10, 11-12 (which is the provincial charter):





or ch. 10: "An act for incorporating of Harvard College, at Cambridge, New England":

---

[29] Massachusetts Province, 1 ACTS AND RESOLVES, PUBLIC AND PRIVATE, OF THE PROVINCE OF THE MASSACHUSETTS BAY 10-12 (1886), https://books.google.com/books?id=ouEwYQ-FKtUC&newbks=1&newbks_redir=0&dq=1886%20%22ACTS%20AND%20RESOLVES%2C%20PUBLIC%20AND%20PRIVATE%2C%20OF%20THE%20PROVINCE%20OF%20THE%20MASSACHUSETTS%20BAY%20%22%20%22volume%201%22&pg=PA10#v=onepage&q&f=false, last accessed November 25, 2024.



30

or perhaps ch. 10 from volume 5:

[30] Id. at 38 https://books.google.com/books?id=ouEwYQ-
FKtUC&newbks=1&newbks_redir=0&dq=1886%20%22ACTS%20AND%20RESOLVES%2C
%20PUBLIC%20AND%20PRIVATE%2C%20OF%20THE%20PROVINCE%20OF%20THE%
20MASSACHUSETTS%20BAY%20%22%20%22volume%201%22&pg=PA38#v=onepage&q
&f=false, last accessed November 25, 2024.



42. None of these make any sense for his claim. Nor does this error come from copying and pasting Duke. Dr. Spitzer owns this one.

43. In ¶25: "1694 Massachusetts law subjected to arrest any who 'shall ride or go armed Offensively before any of their Majesties Justices, or other Their Officers or Ministers doing their Office or elsewhere.'" He cites this as "1694 Mass. Laws 12, no. 6, An Act for the Punishing of Criminal Offenders." Again, it is unclear if Spitzer means ch. 12, or ch. 6. Ch. 6: "An Act For Highwayes."

---

[31] Massachusetts Province, 5 (Part 1) ACTS AND RESOLVES, PUBLIC AND PRIVATE, OF THE PROVINCE OF THE MASSACHUSETTS BAY ch. 10 at 36 (1886), https://books.google.com/books?id=2cE0AQAAMAAJ&newbks=1&newbks_redir=0&dq=%22 An%20act%20for%20impowering%20the%20trustees%20of%20the%20estates%20of%20conce aled%20and%20absconding%20debtors%22&pg=PA36#v=onepage&q&f=false, last accessed November 25, 2024.



44. Ch. 12: "An Act For A New Establishment And Regulation Of The Chancery":

³² Id. at 136, https://books.google.com/books?id=ouEwYQ-FKtUC&newbks=1&newbks_redir=0&dq=For%20the%20better%20amending%20and%20keeping%20in%20repair%20and%20clear%20the%20highways%20and%20common%20roads%20acts%20and%20resolves%20of%20the%20province%20of%20massachusetts&pg=PA136#v=onepage&q=For%20the%20better%20amending%20and%20keeping%20in%20repair%20and%20clear%20the%20highways%20and%20common%20roads%20acts%20and%20resolves%20of%20the%20province%20of%20massachusetts&f=false, last accessed November 25, 2024.



45. Dr. Spitzer's incorrect citation is a direct copy from Duke.[34]

46. In ¶26 of Dr. Spitzer's declaration, Dr. Spitzer assets "Maine's 1821 law outlawed 'affrayers, rioters, disturbers or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens.'"  He cites this as "1821 Me. Laws 285, ch. 73 § 1. Quoted in *Young v. Hawaii*, 798–799."  So he did not attempt to verify the accuracy of the citation.  As is typical, Spitzer is relying on Duke's Gun Law Repository instead of looking up the primary source.[35]  If he had copied their citation correctly, he would have seen they cite

---

[33] Id. at 144, https://books.google.com/books?id=ouEwYQ-FKtUC&newbks=1&newbks_redir=0&dq=%22%E2%80%9CAn%20Act%20For%20A%20New%20Establishment%20And%20Regulation%20Of%20The%20Chancery.%E2%80%9D%20massachusetts&pg=PA144#v=onepage&q=%22%E2%80%9CAn%20Act%20For%20A%20New%20Establishment%20And%20Regulation%20Of%20The%20Chancery.%E2%80%9D%20massachusetts&f=false,  last accessed November 25, 2024.

[34] https://firearmslaw.duke.edu/laws/1694-mass-laws-12-no-6-an-act-for-the-punishing-of-criminal-offenders, last accessed November 25, 2024.

[35] *Laws of the State of Maine; to Which are Prefixed the Constitution of the U. States and of Said State, in Two Volumes, with an Appendix Page 685-686; Image 272-273 (Vol. 2, 1821) available at The Making of Modern Law: Primary Sources,* https://firearmslaw.duke.edu/laws/laws-of-the-state-of-maine-to-which-are-prefixed-the-constitution-of-the-u-states-and-of-said-state-in-two-volumes-with-an-appendix-page-685-686-image-272-273-vol-2-1821-available-at-the-maki,  last

*volume 2.*  Had he checked the primary source, he would have found that the quoted law

appears in *volume 1* as ch. 76 at 352:



47. In ¶29, Spitzer claims, "An 1880 Georgia law, for example, made it a crime to 'point or aim' a

gun but added 'loaded or unloaded.'"  He cites "1880 Ga. Laws 151."  This session law volume

contains no chapter numbers, so we must assume that he means p. 151:

---

accessed November 25, 2024.

[36] 1 LAWS OF THE STATE OF MAINE 352-353, ch. 76 (1821),
https://books.google.com/books?id=ZYc0AQAAMAAJ&newbks=1&newbks_redir=0&dq=Law
s%20of%20the%20State%20of%20Maine%20shall%20ride%20or%20go%20armed%20Offensi
vely%20before&pg=RA1-
PA352#v=onepage&q=Laws%20of%20the%20State%20of%20Maine%20shall%20ride%20or%
20go%20armed%20Offensively%20before&f=false, last accessed November 25, 2024.

PUBLIC LAWS

PASSED BY THE

GENERAL ASSEMBLY

OF THE

STATE OF GEORGIA,

AT ITS

SESSIONS OF 1880-1.

PRICE, SEVENTY-FIVE CENTS.

PUBLISHED BY W. H. HARRISON, LUMPKIN, GA.

FOR SALE AT STATE LIBRARY.

ATLANTA, GEORGIA:
JAS. P. HARRISON & CO., PRINTERS AND PUBLISHERS.
1881.

Digitized by Google

PUBLIC LAWS.                                    151

AN ACT

To provide for carrying into effect paragraph three, of
section one, article eleven, of the Constitution of this
State; and repeal an Act, entitled an Act, to carry into
effect paragraph three, section one, of article eleven of
the Constitution of this State, approved, October 14th,
1879.

SECTION 1. Be it enacted by the General Assembly of
Georgia, and it is hereby enacted by authority of the
same, That, from and after the passage of this Act, county
lines shall be changed in the following manner: Whenever
a citizen, or any number of citizens of any county of this
State, shall desire to have the county line of the county
of his or their residence changed, it shall be competent for
such citizen or citizens to file in the office of the Ordinaries
of the counties to be affected by such change, at least
ninety days before the first day of the next term of the
Superior Court of the counties whose boundaries are to be
affected by the proposed change, a petition in writing,
setting forth the exact character of the changes to be made,
specifying particularly, the situation, direction, and exist-
ing marks and monuments, if any, of the original line, and
describing particularly, the direction, location and length
of the proposed new line, and setting forth the reasons
for such change; the person or person applying for
such change shall also give notice of the intention to
apply for such change, by publishing the same for at least
thirty days next preceding the terms of the Superior Court
to be held in the counties to be affected by the proposed
change, which terms shall be those occurring next after
the filing of the petition with the Ordinaries, as above
provided, by publishing such notice in a public gazette
having general circulation in each of the counties to be
affected by the change, and by posting at the door of the
court-house in each of such counties, and at three public
places in every militia district, adjacent to the line to be
changed, a like notice of the intention to apply for such
change, and such posting shall be for a period at least
thirty days next preceding the terms of the Superior
Court to be held in the counties to be affected by such
change, next after the posting of the notice aforesaid.

37

48. Once again, Spitzer has copied this incorrect citation from Duke,[38] without bothering to look it up.

49. In ¶29, Spitzer claims, "A total of 19 states enacted laws that penalized the mere display or wearing of firearms and other 'deadly weapons.'"  His footnote lists many statutes and

---

[37] Georgia, PUBLIC LAWS PASSED BY THE GENERAL ASSEMBLY OF THE STATE OF GEORGIA, AT ITS SESSIONS OF 1880-1 151-52 (1881), https://books.google.com/books?id=K4lCAQAAMAAJ&newbks=1&newbks_redir=0&dq=%22public%20laws%20passed%20by%20the%20general%20assembly%20of%20the%20State%20of%20Georgia%22%201880&pg=PA151#v=onepage&q=%22public%20laws%20passed%20by%20the%20general%20assembly%20of%20the%20State%20of%20Georgia%22%201880&f=false,  last accessed November 25, 2024.

[38] https://firearmslaw.duke.edu/laws/1880-ga-laws-151-an-act-to-make-penal-the-intentional-pointing-or-aiming-of-fire-arms-at-another-whether-loaded-or-unloaded-c2a7-1,  last accessed November 25, 2024.

ordinances including: "Book of Ordinances of the City of Wichita, Kansas, 1899, § 1." This is another citation that is difficult to verify. Is 1899 the year this ordinance was adopted, an ordinance number, or a page number? It appears that Spitzer is relying on the Duke Historical Gun Laws Repository again. At least Duke gives some information that might nail it down: "Bruce L. Keenan, Book of Ordinances of the City of Wichita Published by Authority of a Resolution Adopted by the City Council April 24, 1899, under the Direction of Judiciary Committee and City Attorney, and Formally Authorized by Ordinance No. 1680 Page 46, Image 70 (1900) available at The Making of Modern Law: Primary Sources."[39] As with so many other examples, Spitzer's citations suggest that his "research" was primarily cut and paste from Duke.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on November 20, 2024.

_____

Clayton Cramer

---

[39] https://firearmslaw.duke.edu/laws/bruce-l-keenan-book-of-ordinances-of-the-city-of-wichita-published-by-authority-of-a-resolution-adopted-by-the-city-council-april-24-1899-under-the-direction-of-judiciary-committee-and-city-attorn,  last accessed November 20, 2024.