# EXHIBIT A

**EXHIBIT A**

April 2024

## Curriculum Vitae

**Robert J. Spitzer**

**Adjunct Professor, College of William and Mary School of Law**

**Distinguished Service Professor, Emeritus
SUNY Cortland**

<u>Address</u>:    5333 Center St.
Williamsburg, VA  23188
(607) 423-1781
Robert.spitzer@cortland.edu; robertjspitzer53@gmail.com
https://sites.google.com/site/robertspitzercortland/

<u>Education</u>:    A.B. (Political Science), <u>summa cum laude</u>, SUNY College at Fredonia, 1975.
M.A. Cornell University, 1978.
Ph.D. Cornell University, 1980.

<u>Positions Held</u>:

Adjunct Professor, College of William and Mary School of Law, Spring 2023-present.
Affiliated Scholar, Research Scholar of Public Policy, College of William and Mary, 2023-present.
Affiliated Scholar, Government Department, College of William and Mary, 2023-present.
Department Chair, SUNY Cortland, 2008-2020.
Interim Department Chair, SUNY Cortland, 2004-2005.
Distinguished Service Professor, SUNY Cortland, 1997-2021.
Visiting Professor, Cornell University, Spring, 2009, Spring 1993; Summers 1980, 1988-1990, 1992-2017.
Professor, SUNY Cortland, 1989 to 1997.
Continuing Appointment, SUNY Cortland, 1986.
Associate Professor, SUNY Cortland, 1984 to 1989.
Department Chair, SUNY Cortland, 1983 to 1989.
Visiting Professor, SUNY College of Technology, Utica-Rome, Graduate Division, 1985, 1986, 1988.
Copy Editor, <u>Administrative Science Quarterly</u>, 1982 to 1983.
Adjunct Professor, Tompkins-Cortland Community College, 1982-83.
Assistant Professor, SUNY Cortland, 1979 to 1984.

1

Instructor, Cornell University, 1979.
Instructor, Eisenhower College, 1978-1979.
Research Assistant, Theodore J. Lowi and Benjamin Ginsberg, 1976-1978.
Reporter (Stringer), Buffalo Courier-Express; Dunkirk Evening Observer, 1974-75.


Honors:

Fellow, the Royal Society for Arts, Manufactures and Commerce (RSA), London, England, 2020.

Founding member, Regional Gun Violence Research Consortium, coordinated with the Rockefeller Institute of Government. Consortium of gun policy experts from eight states to advance research on gun policy, 2018-present.

Member, SUNY Research Council, an advisory council to the SUNY Board of Trustees, SUNY System Administration, campus leadership teams, and the leadership team of the Research Foundation (RF) for SUNY, 2018-2021.

Member, Scholars Strategy Network, 2015-present. Created to improve public policy and strengthen democracy by connecting scholars and their research to policymakers, citizens associations, and the media.

Winner, Pi Sigma Alpha (the national political science honors society) Chapter Advisor of the Year Award for 2013.

Winner, Outstanding Achievement in Research Award, SUNY Cortland, 2010.

Winner, Outstanding Achievement in Research Award, SUNY Cortland, 2005.

Winner, State University of New York's Chancellor's Excellence in Scholarship and Creative Activities Award, 2003.

SUNY Cortland Nominee, National Scholar Competition of the Honor Society of Phi Kappa Phi, 1994-95.

Winner, New York State/United University Professions Excellence Award, 1991, for "outstanding professional performance and superior service."

Member, New York State Commission on the Bicentennial of the U.S. Constitution, 1986-1990.

Member, New York State Ratification Celebration Committee for U.S. Constitution Bicentennial, 1987-88.

Member, National Bicentennial Competition on the Constitution and the Bill of Rights, 1987-1991.

Who's Who in the World, 1996.

Dictionary of International Biography, 1995.

Who's Who in the East, 1995-96; 1997-98

Ex officio member, Cortland County Bicentennial Committee, 1987-89.

Chair, SUNY Cortland Bicentennial Committee, 1987-89.

Phi Eta Sigma, SUNY Cortland, 1994.

Phi Kappa Phi, SUNY Cortland, 1990.

Men of Achievement (1986)

Contemporary Authors, vol. 112 (1985) and subsequent updates.
International Authors and Writers Who's Who, 1985-present.
International Who's Who in Education, Winter 1985-86.
Herbert H. Lehman Graduate Fellowship, 1975-79.
Who's Who Among Students in American Universities and Colleges, 1974-75.
Phi Beta Kappa Club, SUNY College at Fredonia, 1975.
Phi Alpha Theta (History), SUNY College at Fredonia, 1974.
Phi Mu Alpha Sinfonia, (Music), SUNY College at Fredonia, 1973.


Research Fellowships and Projects:

Individual Development Awards, SUNY Cortland, 2001, 2003, 2005, 2006, 2007, 2008, 2009, 2014, 2017, 2020.
Title "F" Leave with pay, Spring 1994.
Professional Development and Quality of Working Life Award, 1989, 1993, 1998, 1999.
National Endowment for the Humanities (NEH) Research Grant for Study of the Constitution, 1986. Project Proposal: "The Presidential Veto: Constitutional Antecedents and Modern Applications."
SUNY Cortland Faculty Research Program Grant, "The Presidential Veto, 1986.
Consultant for Reporting Research Corporation, "Quality of Earnings Report," Thornton L. O'Glove, author; research on presidential veto use, 1984-1987.
SUNY University Awards Program Research Fellowship, "The Right to Life Party and New York State Politics, 1983.
SUNY Cortland Faculty Research Program Fellowship, "New York State Parties and Politics," 1980.


Publications and Papers:

BOOKS:

The Presidency and Public Policy:  The Four Arenas of Presidential Power (University, AL:  The University of Alabama Press, 1983).  A study of the President's relations with Congress in the making of domestic policy.  Revised version of doctoral dissertation.

The Right to Life Movement and Third Party Politics (Westport, CT: Greenwood Press, 1987).  A study of the New York multi-party system, single-issue third parties, and the state-based Right to Life Party.

The Presidential Veto:  Touchstone of the American Presidency (Albany, NY: SUNY Press, 1988), with a foreword by Louis Fisher. A study of the constitutional antecedents and modern applications of the veto power. Published as part of SUNY Press Series on

3

Leadership, edited by Barbara Kellerman.

Editor, <u>The Bicentennial of the U.S. Constitution: Commemoration and Renewal</u> (Cortland, NY: SUNY Cortland, 1990). A compendium of articles based on presentations given at SUNY Cortland pertaining to the Constitution's Bicentennial. Contributors include Senator Daniel Patrick Moynihan, Theodore J. Lowi, Judith A. Best, and Robert Spitzer.

<u>President and Congress: Executive Hegemony at the Crossroads of American Government</u> (New York: McGraw-Hill; and Temple University Press, 1993). Published simultaneously by co-publishing agreement in paper by McGraw-Hill, and hardcover by Temple. An analytic survey and critique of presidential-congressional relations. Received Honorable Mention for the Richard Neustadt Award for Best Book on the Presidency for 1993.

Editor, <u>Media and Public Policy</u> (New York: Praeger, 1993). Published in Praeger's Political Communications Series, edited by Robert E. Denton, Jr. A collection of original essays dealing with various aspects of media's impact on public policy. Contributors include Doris Graber, Julio Borquez, Wenmouth Williams, Marion Just, Ann Crigler, Michael Hawthorne, Dean Alger, Jerry Medler, Michael Medler, Montague Kern, Robert Sahr, Holli Semetko, Edie Goldenberg, Patrick O'Heffernan, and Robert Spitzer.

<u>The Politics of Gun Control</u> (New York: Chatham House, 1995; 2nd edition, 1998; 3rd edition, CQ Press, 2004; 4th ed. 2008; 5th ed., Paradigm/Routledge Publishers 2012; 6th ed., Routledge, 2015, 7th ed., 2018; 8th ed. 2021; 9th ed. 2024). A comprehensive political and policy analysis of the gun issue that applies policy theory to the key elements of the gun debate, including analysis of the Second Amendment, cultural-historical factors, interest group behavior, criminological consequences, legislative and executive politics.

Editor, <u>Politics and Constitutionalism: The Louis Fisher Connection</u>, (Albany, NY: SUNY Press, 2000). A collection of original essays inspired by the works of Louis Fisher. Contributors include Neal Devins, Nancy Kassop, Dean Alfange, David Adler, Loch Johnson, Michael Glennon, Louis Fisher, and Robert Spitzer. Published as part of the SUNY Press Book Series on American Constitutionalism. Nominated by SUNY Press for the 2001 Silver Gavel Award of the American Bar Association.

<u>The Right to Bear Arms: Rights and Liberties Under the Law</u> (Santa Barbara, CA: ABC-CLIO, 2001). An extensive analysis of the Second Amendment "right to bear arms" from legal, historical, and political perspectives. Published as part of the "America's Freedoms" Series edited by Donald Grier Stephenson.

<u>Essentials of American Politics</u>, co-authored with Benjamin Ginsberg, Johns Hopkins; Theodore Lowi, Cornell; Margaret Weir, Berkeley. (W.W. Norton, 2002; 2nd edition,

4

2006). A synthetic, analytic look at American government and politics.

The Presidency and the Constitution: Cases and Controversies, co-authored with Michael A. Genovese (NY: Palgrave/Macmillan, 2005). A combination of analysis and cases examining the courts' view of presidential power.

Saving the Constitution from Lawyers: How Legal Training and Law Reviews Distort Constitutional Meaning (New York: Cambridge University Press, 2008). A sweeping indictment of the legal community when it enters into the realm of constitutional interpretation.

We the People: Essentials Edition, co-authored with Benjamin Ginsberg, Theodore Lowi, Margaret Weir, Caroline Tolbert, Andrea Campbell (W.W. Norton, 7th ed. 2009; 8th ed. 2011; 9th ed., 2013; 10th ed. 2015; 11th ed. 2017; 12th ed. 2019; 13th ed. 2021; 14th ed. 2023).

Gun Control: A Documentary and Reference Guide (Westport, CT: Greenwood Publishing Group, 2009). A combination of analysis, commentary, and original historical and contemporary documents pertaining to the gun issue published in Greenwood's Documentary and Reference Series.

The Gun Debate: An Encyclopedia of Gun Rights and Gun Control, co-authored with Glenn Utter (Grey House Publishers, 2011; third edition 2016). An A-Z compendium of gun issues.

Guns across America: Reconciling Gun Rules and Rights (New York: Oxford University Press, 2015; revised paperback ed. 2017); revised paperback edition published 2017. Argues that our understanding of the gun issue as it has evolved in the U.S. is upside down, looking at gun law history, the Second Amendment, stand your ground laws, and New York State gun laws.

The Gun Dilemma: How History Is Against Expanded Gun Rights (New York: Oxford University Press, 2023). Argues that the courts are ushering in a new era of expanded gun rights, despite the fact that such a movement is contrary to our gun history by examining assault weapons, ammunition magazines, silencers, gun brandishing, and the Second Amendment sanctuary movement.

Book Series Editor, Series on American Constitutionalism, SUNY Press, 1996-present. Books include:
    Daniel Hoffman, Our Elusive Constitution, (1997)
    Martin Sheffer, God and Caesar: Belief, Worship, and Proselytizing Under the First Amendment, (1999)
    Daniel Levin, Representing Popular Sovereignty: The Constitution in American

Political Culture, (1999)

Robert Spitzer, ed., Politics and Constitutionalism, (2000)

Laura Langer, Judicial Review in State Supreme Courts (2002)

Ian Brodie, Friends of the Court (2002)

Samuel Leiter and William Leiter, Affirmative Action in Antidiscrimination Law and Policy (2002)

Artemus Ward, Deciding to Leave: The Politics of Retirement from the United States Supreme Court (2003)

James T. McHugh, Ex Uno Plura: State Constitutions and Their Political Cultures (2003)

Stephen Newman, ed., Constitutional Politics in Canada and the United States (2004).

Stephen Kershnar, Justice for the Past (2004).

Timothy R. Johnson, Oral Arguments and Decision Making on the U.S. Supreme Court (2004).

Christopher P. Banks, David B. Cohen, and John C. Green, eds., The Final Arbiter: The Consequences of Bush v. Gore for Law and Politics (2005)

Kenneth D. Ward and Cecilia R. Castillo, eds., The Judiciary and American Democracy: Alexander Bickel, the Countermajoritarian Difficulty, and Contemporary Constitutional Theory (2005).

G. Alan Tarr and Robert F. Williams, eds., State Constitutions for the Twenty-first Century: The Politics of State Constitutional Reform (2006).

Frank P. Grad and Robert F. Williams, State Constitutions for the Twenty-first Century: Drafting State Constitutions, Revisions, and Amendments (2006).

G. Alan Tarr and Robert F. Williams, eds., State Constitutions for the Twenty-first Century: The Agenda of State Constitutional Reform, 3 vols. (2006).

Cary Federman, The Body and the State: Habeas Corpus and American Jurisprudence (2006).

Christopher S. Kelley, ed., Executing the Constitution: Putting the President Back into the Constitution (2006).

David Fagelson, Justice as Integrity: Tolerance and the Moral Momentum of Law (2006).

Christopher Shortell, Rights, Remedies, and the Impact of State Sovereign Immunity (2008).

Robert Blomquist, The Quotable Judge Posner (2010).

Kirk A. Randazzo, Defenders of Liberty or Champions of Security? (2010).

Pamela Corley, Concurring Opinion Writing on the U.S. Supreme Court (2010).

Samuel Leiter and William Leiter, Affirmative Action in Antidiscrimination Law and Policy (2nd ed. 2010).

Julia R. Azari, et al., eds., The Presidential Leadership Dilemma (2013).

Stephen A. Simon, Universal Rights and the Constitution (2014).

Kirk A. Randazzo and Richard W. Waterman, Checking the Courts (2014).

Anthony Maniscalco, Public Spaces, Marketplaces, and the Constitution (2015).

6

Goirgi Areshidze et al., eds., Constitutionalism, Executive Power, and the Spirit of Moderation (2016).
Peter J. Galie, et al., eds., New York's Broken Constitution (2016).
Robert J. Hume, Ethics and Accountability on the U.S. Supreme Court (2017).
Michael A. Dichio, The U.S. Supreme Court and the Centralization of Federal Authority (2018).
Clyde H. Ray, John Marshall's Constitutionalism (2019).
Daniel P. Franklin, et al., The Politics of Presidential Impeachment (2020).
Robert M. Howard, et al., Power, Constraint, and Policy Change: Courts and Education Finance Reform (2021).
Mark C. Dillon, The First Chief Justice (2022).

Book Series Editor, Presidential Briefing Books, Routledge, 2015-present.
Mary Stuckey, Political Rhetoric (2015)
Michael A. Genovese, Presidential Leadership in an Age of Change (2015)
Christopher Fettweis, Making Foreign Policy Decisions (2016)
Nancy Maveety, Picking Judges (2016)
Richard S. Conley, Presidential Relations with Congress (2017)
Andrew L. Stigler, Governing the Military (2019)
Graham G. Dodds, The Unitary Presidency (2020)


Member, Board of Editors for the Encyclopedia of Guns in American Society, 2 vols. (Santa Barbara, CA: ABC-CLIO, 2003; second ed. 2011). Winner of the Booklist Editors' Choice Award for 2003, American Library Association.

Member, Board of Editors, Issues: Understanding Controversy and Society, ABC-CLIO, 2011-2016.


BOOK CHAPTERS:

"Third Parties in New York," in Governing New York State (formerly New York State Today), ed. by Robert Pecorella and Jeffrey Stonecash (Albany, N.Y.:  SUNY Press, 1984, 1989, 1994, 2001, 2006). Chapter revised for second, third, fourth, and fifth editions.

"Gun Control: Constitutional Mandate or Myth," in Social Regulatory Policy: Recent Moral Controversies in American Politics, ed. by Raymond Tatalovich and Byron Daynes (Boulder, CO:  Westview Press, 1988), 111-141.

"The President's Veto Power," in Inventing the American Presidency: Early Decisions and Critical Precedents, ed. by Thomas Cronin (Lawrence, KA:  University Press of

Kansas, 1989), 154-179.

"President and Congress," in <u>The CQ Guide to the Presidency</u>, ed. by Michael Nelson (Washington, D.C.:  Congressional Quarterly, Inc., 1989; revised for 2nd ed., 1996 and 3rd ed. 2002; 4th ed. 2007; 5th ed. 2012).

Nineteen entries in <u>Encyclopedia of American Political Parties and Elections</u>, ed. by L. Sandy Maisel (New York:  Garland Pub., 1991): American Labor Party, Benjamin Bubar, closed primary, Conservative Party, cross-endorsement rule, Free Soil Party, Greenback Party, Liberal Party, Liberty Party, John V. Lindsay, Allard K. Lowenstein, open primary, Right to Life Committee, Right to Life Party, Prohibition Party, Alex Rose, split ticket voting, telethons, Mary Jane Tobin.

Author of "Thought Boxes" for Theodore J. Lowi and Benjamin Ginsberg, <u>American Government: Freedom and Power</u> (NY: W.W. Norton, 1990, 1992, 1994, 1996, 1998); 50 for 1st ed.; 30 additional for 2nd ed., 45 additional for 3rd ed.; 29 for 4th ed., 26 for 5th.

"Executive Vetoes," in <u>Encyclopedia of the American Legislative System</u>, ed. by Joel Silbey (NY:  Charles Scribner's Sons, 1993).

"The Conflict Between Congress and the President Over War," in <u>The Presidency and the Persian Gulf War</u>, ed. by Marcia Whicker, Raymond Moore, and James Pfiffner (New York:  Praeger, 1993).

"Is the Separation of Powers Obsolete?" in <u>The Presidency Reconsidered</u>, ed. by Richard W. Waterman (Itasca, IL: F.E. Peacock, 1993); also in <u>Understanding the Presidency</u>, ed. by James Pfiffner and Roger Davidson (NY: Longman, 1997; 2nd ed. 2000; 3rd ed. 2002; 4th ed. 2006).

Seven entries in the <u>Encyclopedia of the American Presidency</u>, ed. by Leonard W. Levy and Louis Fisher (NY: Simon and Schuster, 1994), including "Council on Environmental Quality," "Office of Intergovernmental Relations," "Presentation Clause," "Signing Statements," "Item Veto," "Pocket Veto," "Regular Veto".

Two entries in the <u>Encyclopedia of the United States Congress</u>, ed. by Donald C. Bacon, Roger H. Davidson, and Morton Keller (NY: Simon and Schuster, 1994), including "Separation of Powers" and "Presidential Veto".

"The President, Congress, and the Fulcrum of Foreign Policy," in <u>The Constitution and the Conduct of American Foreign Policy</u>, ed. by David Gray Adler, with an introduction by Arthur Schlesinger, Jr. (Lawrence, KS: University Press of Kansas, 1996), 85-113.

"Resources Development in the EOP," in <u>The Executive Office of the President</u>, ed. by

Harold Relyea (Westport, CT: Greenwood Press, 1997).

"Council on Environmental Quality," in the Oxford Historical Guide to American Government (NY: Oxford University Press, 1997).

"From Presidential Shield to 'Go Ahead, Make My Day': The Presidential Veto and the Constitutional Balance of Power," in Liberty Under Law, ed. by Kenneth Grasso and Cecilia R. Castillo (Lanham, MD: University Press of America, 1997; 2nd ed. 1998).

"Multi-Party Politics in New York," in Multi-Party Politics and American Democracy, ed. by Paul Herrnson and John Green (Rowman & Littlefield, 1997; revised for second edition, 2002).

Author of "Cultures" and "Debates" boxes for Benjamin Ginsberg, Theodore Lowi, and Margaret Weir, We the People (NY: W.W. Norton, 1997, 1999). 19 for 1st ed.; 17 for 2nd ed.

"Gun Control: Constitutional Mandate or Myth?" in Moral Controversies in American Politics, ed. by Raymond Tatalovich and Byron Daynes (NY: M.E. Sharpe, 1998; 2005; 2010), 164-195. Revised for new editions.

"The Right to Life Party" and related entries in The Encyclopedia of American Third Parties, ed. by Immanuel Ness and James Ciment (NY: M.E. Sharpe, 2000).

"New York, New York: Start Spreadin' the News," in Prayers in the Precincts, ed. by John Green, Mark Rozell, and Clyde Wilcox (Washington, DC: Georgetown University Press, 2000).

"The Clinton Crisis and Its Consequences for the Presidency," in The Clinton Scandal and the Future of American Politics, ed. by Mark Rozell and Clyde Wilcox (Washington, DC: Georgetown University Press, 2000), 1-17.

"Saving the Constitution from Lawyers," in Politics and Constitutionalism, ed. by Spitzer (Albany, NY: SUNY Press, 2000).

"Gun Control and Policy" and "Veto Power" for the Encyclopedia of American Political History, ed. by Paul Finkelman (Washington, D.C.: Congressional Quarterly, 2000).

"Article I, Section 7," in The Constitution and Its Amendments, ed. by Roger Newman (NY: Macmillan, 2001).

"Lost and Found: Researching the Second Amendment," in The Second Amendment in Law and History, ed. by Carl Bogus (NY: The New Press, 2001), 16-47.

9

"Veto Power" in The Oxford Companion To United States History ed. by Paul Boyer (NY: Oxford University Press, 2001).

"The Independent Counsel and the Post-Clinton Presidency" in The Presidency and the Law: The Clinton Legacy, ed. by David Adler and Michael Genovese (Lawrence, KS: University Press of Kansas, 2002), 89-107.

"The Veto King: The 'Dr. No' Presidency of George Bush," in Honor and Loyalty: Inside the Politics of the Bush White House, ed. by Leslie Feldman and Rosanna Perotti (Westport, CT: Greenwood Press, 2002), 233-53.

Fifty-two entries in the Encyclopedia of Guns in American Society, ed. by Gregg Lee Carter (Santa Barbara, CA: ABC-CLIO, 2003; 2nd ed. 2011; 3rd ed. 2023): including AWARE, assault weapons, Assault Weapons ban of 1994, automatic weapons laws, background checks, Brady Law, Harlon Carter, Eddie Eagle, Federation for NRA, Firearms Owners Protection Act of 1986, NRA-ILA, LSAS, Licensing, MMM, MAVIA, National Board for the Promotion of Rifle Practice, National Guard, NRA, NRA PVF, Presser v. Illinois, Quilici v. Morton Grove, Safety Courses, SAS, semiautomatic weapons, speedloaders, Turner Diaries, Waiting Periods.

Nine entries for the Encyclopedia of the American Presidency, ed. by Michael Genovese (NY: Facts on File, 2004): Edward Corwin, Council on Environmental Quality, Gramm-Rudman-Hollings, Persian Gulf War, legislative veto, presentation clause, item veto, pocket veto, veto.

"Third Parties," "Presidents," and "The Right to Life Party" for The Encyclopedia of New York State, ed. by Peter Eisenstadt (Syracuse: Syracuse University Press, 2004).

"Gun Rights for Terrorists? Gun Control and the Bush Presidency," Transformed By Crisis: The Presidency of George W. Bush and American Politics, ed. by Jon Kraus, Kevin McMahon, and David Rankin (NY: Palgrave Macmillan, 2004), 141-165.

"The Presidential Veto Is An Effective Tool for Governing," in Debating the Presidency, Robert P. Watson and David Freeman, eds. (Dubuque, IA: Kendall/Hunt, 2005).

"Veto: The Power to Say 'No,'" in Thinking About the Presidency, ed. by Gary L. Gregg (Lanham, MD: Rowman & Littlefield, 2005).

"The 'Protective Return' Pocket Veto: Presidential Aggrandizement of Constitutional Power," Executing the Constitution, ed. By Chris Kelley (Albany: SUNY Press, 2006), 109-126.

10

"Gun Violence and Gun Control," in <u>Social Issues in America: An Encyclopedia</u>, 8 vols., ed. By James Ciment (NY: M.E. Sharpe, 2006).

"The Commander-in-Chief Power and Constitutional Invention in the Bush Administration," <u>The Presidency and the Challenge of Democracy</u>, ed. By Michael Genovese and Lori Cox Han (New York: Palgrave Macmillan, 2006), 93-117.

"Right to Bear Arms," <u>Encyclopedia of American Civil Liberties</u>, 4 vols., ed. By Paul Finkelman (NY: Routledge, 2006).

"Gun Violence is a Serious Problem," <u>Gun Violence: Opposing Viewpoints</u>, Margaret Haerens, ed. (New York: Thomson Gale, 2006).

"The Commander-in-Chief Power in the George W. Bush Administration," <u>Presidential Power in America</u>, ed. By Lawrence R. Velvel (Andover, MA: Doukathsan Press, 2007).

"Presidential Veto" and "Gun Control," <u>Encyclopedia of American Government and Civics</u> ed. Michael Genovese and Lori Cox Han (New York: Facts-on-File, 2008).

"Gerald R. Ford," <u>Encyclopedia of Political Communication</u> ed. By Lynda Lee Kaid and Christina Holtz-Bacha (Thousand Oaks, CA: Sage Pubs., 2008).

"Leading Elite Opinion: Law Reviews and the Distortion of Scholarship," in <u>Leadership at the Crossroads</u>, Vol 2, "Leadership and Politics," ed. By Michael Genovese and Lori Cox Han (Westport, CT: Praeger, 2008).

"Gun Control Policy," in <u>Encyclopedia of Issues in U.S. Public Policy</u>, ed. By Mark Rushefsky (Farmington Hills, MI: Gale Publishing, 2009).

"'Hot' and 'Not-So-Hot' Buttons in the 2008 Presidential Election," in <u>Winning the Presidency 2008</u>, William Crotty, ed. (Boulder, CO: Paradigm Publishers, 2009).

"Resolved, that the President Should Not be Given a Line Item Veto," in <u>Debating Reform: Conflicting Perspectives on How to Fix the American Political System</u>, Richard Ellis and Michael Nelson, eds. (Washington, D.C.: CQ Press, 2010; revised for 2nd ed. 2013).

"Looking Through the Other End of the Telescope: Playing in Lowi's Arenas," in <u>Political Science as Public Philosophy: Essays in Honor of Theodore J. Lowi</u>, Benjamin Ginsberg and Gwendolyn Mink, eds. (New York: W.W. Norton, 2010).

"Why Do Americans Love Guns So Much, and Does Everyone Own One?" <u>You Asked: 20 Questions About America</u>, U.S. Department of State, 2010.

"Liberals and the Presidency," <u>Contending Approaches to the American Presidency</u>, Michael Genovese, ed. (Washington, DC: CQ Press, 2011).

"Is the Constitutional Presidency Obsolete?" <u>The American Presidency in the 21st Century</u>, Charles Dunn, ed. (Lexington: University Press of Kentucky, 2011).

"Gun Control," in <u>Governing America</u>, ed. By Paul Quirk and William Cunion (New York: Facts on File, 2011).

"Stricter Gun Laws are Reasonable and Sensible," for <u>Issues: Understanding Controversy and Society</u>, ABC-CLIO, 2011. Web. 28 September.

"Gun Control," <u>Encyclopedia of Applied Ethics</u>, 2nd ed., Vol. 2, Ruth Chadwick, ed. (San Diego: Academic Press/Elsevier, 2012), 538-44.

"Hot Button Issues in the Presidential Campaign: 47% Yes, Guns No?" <u>Winning the Presidency 2012</u>, William J. Crotty, ed. (Boulder, CO: Paradigm Publishers, 2013).

"Meaning of the Second Amendment: The Motives Behind the Second Amendment: Federalism and Military Preparedness." <u>American Government</u>. ABC-CLIO, 2013. Web. September 10.

"Clinton and Gun Control: Boon or Bane?" <u>A True Third Way? Domestic Policy and the Presidency of William Jefferson Clinton</u>, Richard Himmelfarb, ed. (New York: Nova Publishers, 2014), 81-92.

"Gun Control," <u>American Governance</u>, 5 vols. Stephen L. Schechter, ed. (Detroit: Macmillan, 2016).

"John Tyler and the Constitution," <u>American Presidents and the Constitution</u>, Ken Gormley, ed. (New York: New York University Press, 2016).

"The Unitary Executive and the Bush Presidency," <u>The George W. Bush Presidency</u>, Meena Bose, ed. (New York: Nova Publishers, 2016).

"Stricter Gun Laws are Reasonable and Sensible," <u>Gun Control in the United States: A Reference Handbook</u>, Gregg Lee Carter, ed. (Santa Barbara, CA: ABC-CLIO, 2017).

"Gun Policy Research: Personal Reflections on Public Questions," <u>Guns: Interdisciplinary Approaches to Politics, Policy, and Practice</u>, Jennifer Carlson, Kristin Goss and Harel Shapira, eds. (New York: Routledge, 2019).

"Conclusion: The Five Rules of Trump," <u>Presidential Leadership and the Trump Presidency: Executive Power and Democratic Governance</u>, Charles Lamb and Jacob Neiheisel, eds. (New York: Palgrave Macmillan, 2020).

"Looking Down the Barrel of the 2020 Elections," <u>The 2020 Presidential Election: Key Issues and Regional Dynamics</u>, Luke Perry, ed. (New York: Palgrave Macmillan, 2022).

"Gun Policy and Politics in America," <u>Developments in American Politics 9</u>, Gillian Peele, Bruce Cain, Jon Herbert, Andrew Wroe, eds. (Palgrave/Macmillan, 2022).

"How the NRA evolved from backing a 1934 ban on machine guns to blocking nearly all firearm restrictions today" and "US tragedies from guns have often – but not always – spurred political responses," <u>The Conversation on Guns</u>, James A. Densley, ed. (Baltimore: Johns Hopkins University Press, 2023).

"To Brandish or Not to Brandish: The Consequences of Gun Display," <u>New Histories of Gun Rights and Regulation: Essays on the Place of Guns in American Law and Society</u>, Joseph Blocher, Jacob Charles, and Darrell A.H. Miller, eds. (NY: Oxford University Press, 2023).


<u>ARTICLES</u>:

"Jamestown:  Anatomy of an All-American City," <u>Sunday Buffalo Courier Express Magazine</u>, August 24, 1975.

"The Democratic National Telethons: Their Successes and Failures," with John W. Ellwood, <u>The Journal of Politics</u>, 41 (August, 1979): 828-864.

"The Presidency and Public Policy: A Preliminary Inquiry," <u>Presidential Studies Quarterly</u>, 9 (Fall, 1979): 441-457.

"Presidential Policy Determinism: How Policies Frame Congressional Responses to the President's Legislative Program," <u>Presidential Studies Quarterly</u>, 13 (Fall, 1983): 556-574.

"A Political Party is Born: Single-Issue Advocacy and the Election Law in New York State," <u>National Civic Review</u>, 73(July/August, 1984): 321-328.

"More Parties Mean Better Parties," <u>Party Line</u>, 17 (September 1984).

"Shooting Down Gun Myths," <u>America</u>, June 8, 1985, pp. 468-69.  Reprinted in: the <u>Des Moines Register</u>, October 24, 1985; <u>Criminal Justice</u>, ed. by Susan Bursell (St. Paul, MN:

Greenhaven Press, 1986); U.S. News and World Report educational study unit on Gun Control, April/May, 1987; Gun Control, ed. by Robert Emmet Long (New York: H.W. Wilson Co., 1989); and The Informed Argument, 2nd ed., 3rd ed., Robert K. Miller, ed. (NY:  Harcourt, Brace, Jovanovich, 1989, 1992).

"The Item Veto: A Bad Idea That Lives On," America, June 15, 1985.

"The Item Veto Reconsidered," Presidential Studies Quarterly 15(Summer, 1985): 611-17.

"Promoting Policy Theory:  Revising the Arenas of Power" Policy Studies Journal, 15 (June 1987), 675-89. Reprinted in Public Policy Theories, Models, and Concepts, ed. by Daniel C. McCool (Prentice-Hall, 1995).

"A Course Module:  The Politics of Abortion," NEWS for Teachers of Political Science, 53 (Spring, 1987).

"But for A Single Vote...," New York Delegate, July, 1987. Abridged version appeared on editorial page of the Rochester Times Union, 2/10/87.

"Multi-Party Politics in New York: A Cure for the Political System?", Election Politics, 5 (Summer, 1988): 14-16.

"From Complexity to Simplicity: More on Policy Theory and the Arenas of Power," Policy Studies Journal, 17 (Spring, 1989): 529-36.

"Complexity and Induction: Rejoinder to Kellow," Policy Studies Journal, 17(Spring, 1989): 547-49.

"Liberalism and Juridical Democracy," PS:  Political Science and Politics, 23(December 1990): 572-74.

"Presidential Prerogative Power: The Case of the Bush Administration and Legislative Powers," PS:  Political Science and Politics, 24 (March 1991): 38-42.

"Separation of Powers and the War Power," Oklahoma City University Law Review, 16, 2(Summer 1991): 279-293.

"The Disingenuous Presidency: Reagan's Veto and the `Make-My-Day' President," Congress and the Presidency, 21 (Spring, 1994): 1-10.

"Tenure, Speech, and the Jeffries Case: A Functional Analysis," Pace Law Review, 15, 1 (Fall 1994), 111-39.

14

"Can 3.5 Million Americans Be Wrong?" <u>The Spectator</u>, May 27, 1995, 12-13.

"The Constitutionality of the Presidential Line-Item Veto," <u>Political Science Quarterly</u>, 112 (Summer, 1997): 261-84.

"The Item Veto Dispute and the Secular Crisis of the Presidency," <u>Presidential Studies Quarterly</u>, 28 (Fall 1998): 799-805.

"Clinton's Impeachment Will Have Few Consequences for the Presidency," <u>PS: Political Science and Politics</u>, 32 (September 1999).

"The Gun Dispute," <u>American Educator</u>, 23 (Summer 1999): 10-15.  Reprinted in <u>Annual Editions: Criminal Justice</u> (Dushkin/McGraw-Hill, 2000); and in <u>Criminology</u> (Dushkin/McGraw-Hill, 2001).

"The Changing Face of Gun Politics," <u>Congress Monthly</u>, September/October 2000.

"Lost and Found: Researching the Second Amendment," <u>Chicago-Kent Law Review</u> 76 (2000): 349-401. Cited in 2002 by the U.S. Court of Appeals for the Ninth Circuit, <u>Silveira v. Lockyer</u> (312 F.3d 1052; 2002); 2002 U.S. App. LEXIS 24612.

"The 'Protective Return' Pocket Veto: Presidential Aggrandizement of Constitutional Power," <u>Presidential Studies Quarterly</u> 31 (December 2001), 721-34.

"The Second Amendment 'Right to Bear Arms' and the *Emerson C*ase," <u>St. John's Law Review</u> 77 (Winter 2003): 1-27.

"Gun Laws and Policies: A Dialogue," <u>Focus on Law Studies</u> 18(Spring 2003): 1-17.

"Don't Know Much About History, Politics, or Theory," <u>Fordham Law Review</u> 73 (November 2004), 721-30.

"Seven Modest Tips on Publishing," <u>PS: Political Science and Politics</u> 38(October 2005): 746-47.

"Re-Examining the War Power," with Michael Genovese, <u>The PRG Report</u> 30(Fall 2005).

"Tactics, Turnout, and Timing in the Elections of 2004," with Glenn Altschuler, <u>American Literary History</u> 19(Spring 2007): 108-19.

"Reducing Firearm Violence: A Research Agenda," co-authored, <u>Injury Prevention</u> 13

15

(April 23, 2007), 80-84.

"Why History Matters: Saul Cornell's Second Amendment and the Consequences of Law Reviews," Albany Government Law Review 1(Spring 2008): 312-53.

"Saving the Presidency From Lawyers," Presidential Studies Quarterly 38(June 2008): 329-46.

"Still Saving the Constitution from Lawyers: A Response," Gonzaga Law Review 46(December 2010/11): 103-16.

"Gun Law, Policy, and Politics," Government, Law and Policy Journal 14(Summer 2012): 57-64.

"Growing Executive Power: The Strange Case of the 'Protective Return' Pocket Veto," Presidential Studies Quarterly 42(September 2012): 637-55.

"Gun Laws," New York State Bar Association Journal 84(July/August 2012), 35-42.

"Misfire in the 2012 Election," Presidents and Executive Politics Report 35(Fall 2012).

"Writing the Gun Debate," Los Angeles Review of Books, February 10, 2013.

"A Historical Look at Gun Control in America," WCNY Magazine, May/June 2013.

"What's Old Is New Again: Political Science, Law, and Constitutional Meaning," PS: Political Science and Politics 46(July 2013): 493-97.

"Separating Truth and Myth in the American Gun Debate," The Islamic Monthly, Fall 2013.

"Comparing the Constitutional Presidencies of George W. Bush and Barack Obama: War Powers, Signing Statements, Vetoes," White House Studies 12(October 2013): 125-46.

"A Look at the 2014 Elections," WNCY Magazine, March/April 2014.

"New York State and the New York SAFE Act: A Case Study in Strict Gun Laws," Albany Law Review, 78 (2014/2015): 749-87.

"The Unitary Executive and the Bush Presidency," Social Science Docket, 15(Summer-Fall 2015).

"Gun Rights, Tyranny, and Rebellion: John Locke, the American Constitution and the

16

Right to Bear Arms," The Critique (July/August 2016).

"Gun Law History in the United States and Second Amendment Rights," Law and Contemporary Problems 80, 2(2017): 55-83.

"Researching Gun Policy: Futile or Feasible?" Items: Insights from the Social Sciences, Social Science Research Council, October 17, 2018.

"Effective Gun Regulation Can Be Compatible with Gun Rights," The Regulatory Review, University of Pennsylvania Program on Regulation, November 6, 2018.

"Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers," Law and Contemporary Problems 83, 3(2020): 231-55.

"Understanding Gun Law History After Bruen: Moving Forward by Looking Back," Fordham Urban Law Journal 51 (2023): 57-115.

"Historical Weapons Restrictions on Minors," Rutgers University Law Review Commentaries 76(Spring 2024): 101-24.


OP-ED ARTICLES:

"Court Rulings on 2nd Amendment:  No Individual Right to Keep Arms," Des Moines Register, October 24, 1985.

"Gun Control and Pressure Politics," Syracuse Post-Standard, November 30, 1985.

"Pocket Vetoes and Abuse of Power," Rochester Times Union, January 7, 1987.

"But for One Vote, a Different Nation," Rochester Times Union, February 10, 1987.

"Reagan's Veto: It's Mostly Show and Not Much Go," Rochester Times Union, September 14, 1987.

"The Great Gun Fallacy," Syracuse Post-Standard, March 30, 1989.

"Four Cases on Right to Bear Arms," Syracuse Post-Standard, April 22, 1989.

"Don't Start Line-Item Veto," Syracuse Post-Standard, May 9, 1990.

"Clinton Must Balance Activism, Congress' Constitutional Power," Syracuse Post-Standard, January 21, 1993.

"More Permits Mean Less Crime, But Not in Cities," <u>Los Angeles Times</u>, February 19, 1996.

"Door No. 1: Muskets? Or Door No. 2: Free Speech?" <u>Christian Science Monitor</u>, September 19, 1997.

"Assault Weapons Ban," <u>Christian Science Monitor</u>, April 16, 1998.

"As a National Candidate, Pataki Faces Big Hurdles," <u>Syracuse Post-Standard</u>, February 10, 1999.

"Gun Industry Doesn't Know What's Good for It: Regulation," <u>Syracuse Post-Standard</u>, April 20, 1999.

"The Gun Saga in Congress," <u>Intellectual Capital</u>, 4 (May 13-20, 1999).

"Hidden Gun Control or Consumer Protection?" <u>Intellectual Capital</u>, 4 (June 10-17, 1999).

"Welcome to Soviet – er, New York – Politics," <u>Intellectual Capital</u> 5(February 10-17, 2000).

"Gun Control After Columbine," <u>Intellectual Capital</u> 5(April 20-27, 2000).

"Good May Come From Shooting Tragedies," <u>The Catholic Review</u>, March 30, 2000.

"Why Would Anyone Want the Job Now?" <u>Chicago Tribune</u>, November 15, 2000.

"The Supreme Court, Bush, and the Election of the Century," <u>Syracuse Post-Standard</u>, December 18, 2000.

"Ashcroft Playing Politics With the Right to Bear Arms," <u>Syracuse Post-Standard</u>, June 12, 2001.

"Exposure Erodes Clout of NRA," <u>Columbus Dispatch</u>, April 24, 2003.

"Hazing Scandals," <u>Syracuse Post-Standard</u>, November 6, 2003.

"Endorsement Fever," with Glenn Altschuler, <u>Syracuse Post-Standard</u>, February 18, 2004.

"NRA Loses Its Political Firepower," <u>Los Angeles Times</u>, April 12, 2004. Also in the

18

<u>Deseret News</u>.

"A 'Tortured' Interpretation of the President's Vast Powers," <u>Syracuse Post-Standard</u>, June 18, 2004.

"Clearing the Air," <u>Syracuse Post-Standard</u>, August 4, 2004.

"Why Gun Ban Died Quietly," <u>San Jose Mercury News</u>, Sunday "Perspectives," September 19, 2004.

"To Pledge or Not to Pledge," <u>Christian Science Monitor</u>, August 18, 2005. Also published in the <u>Deseret News</u>, <u>Sacramento Bee</u>, the <u>Fresno Bee</u>, the <u>Modesto Bee</u>, the <u>Ithaca Journal</u>, the <u>Johnstown Breeze</u>, Yahoo.com, and World News Network (wn.com), among others.

"Can He Hear You Now? The Defense of Bush's Domestic Spying is Nothing But Static," <u>Syracuse Post-Standard</u>, January 29, 2006.

"Working Hard to Misconstrue the 2nd Amendment," History News Network ([www.hnn.us](www.hnn.us)), March 12, 2007.

"Teens With AK-47 Not Exercising a 'Right,'" <u>Syracuse Post-Standard</u>, January 3, 2008.

"Is Bush Inventing Another Constitutional Power?" History News Network ([www.hnn.us](www.hnn.us)) January 7, 2008.

"The 'Pocket Veto' Peril," <u>Los Angeles Times</u>, January 8, 2008. Reprinted in the <u>St. Louis Post-Dispatch</u>, <u>St. Paul Pioneer Press</u>, <u>Wilmington Star News</u> (NC), <u>News and Observer</u> (NC), <u>The Morning Call</u> (Pa.), <u>Contra Costa Times</u> (CA), the <u>Sun News</u> (FL), <u>The Vindicator</u>, among others.

"Democrats Can Prevent Catastrophe and Hillary Should Help," with Glenn Altschuler, <u>Cleveland Plain Dealer</u>, February 15, 2008.

"Trouble Ahead?" with Glenn Altschuler, <u>Syracuse Post-Standard</u>, February 15, 2008.

"Saving the Constitution from Lawyers, Parts I, II, III," The Faculty Lounge ([www.thefacultylounge.org](www.thefacultylounge.org)), April 16, 19, 22, 2008.

"Saving the Constitution from Lawyers," History News Network ([www.hnn.us](www.hnn.us)), June 9, 2008.

"Heller's Manufactured Gun Rights Can Be Traced to a Flawed Law Review Article,"

History News Network ([www.hnn.us](www.hnn.us)), June 30, 2008.

"Lincoln, FDR, Bush: Which Doesn't Belong?" History News Network ([www.hnn.us](www.hnn.us)), January 12, 2009.

"Early Voting for New York Elections," <u>Cortland Standard</u>, May 27, 2009.

"A Better Way to Run Our Elections," <u>Syracuse Post Standard</u>, June 3, 2009.

"Senate 'Resolution,'" with Glenn Altschuler, The Huffington Post ([www.huffingtonpost.com](www.huffingtonpost.com)), posted December 22, 2009.

"Pres. Obama: Don't Make This Veto Mistake," The Huffington Post ([www.huffingtonpost.com),](www.huffingtonpost.com) posted January 4, 2010.

"Upset About a Census of People? How About a Census of Guns?" The Huffington Post ([www.huffingtonpost.com),](www.huffingtonpost.com) posted April 1, 2010.

"Bart Stupak's First 'Profiles in Courage' Moment," The Huffington Post ([www.huffingtonpost.com),](www.huffingtonpost.com) posted April 10, 2010.

"Are These Guys Really Militias?" *The Huffington Post* ([www.huffingtonpost.com),](www.huffingtonpost.com) posted April 20, 2010.

"Incorporating Guns?" *The Huffington Post*, posted June 29, 2010.

"Why Gun Ruling is a Teachable Moment," CNN.COM, June 30, 2010.

"Why Obama Must Embrace the Veto Strategy," *The Huffington Post*, posted January 5, 2011.

"A Sensible Approach to Guns, From NY to Arizona," *Syracuse Post Standard,* January 16, 2011.

"Double Congress's Pay," *The Huffington Post*, January 18, 2011.

"Campuses Just Say 'No' to Guns," *The Huffington Post*, February 27, 2011.

"Obama, War Powers, and Yoo," *The Huffington Post*, March 29, 2011.

"I'm Not a Candidate, but I Play One on TV," with Glenn Altschuler, *The Huffington Post*, April 11, 2011.

"The Constitution We Nearly Had," *The Huffington Post,* September 15, 2011.

"Libya and Iraq: A Stop and Think Moment," *The Huffington Post,* October 24, 2011.

"The GOP and Presidential Power," *The Huffington Post,* January 3, 2012.

"The Disappearing Faculty," *The Huffington Post,* February 1, 2012.

"The 'Good-Guy-Bad-Guy' Myth Laid Bare," *The Huffington Post*, March 28, 2012.

"The NRA's Silent Motive," *Salon*, April 3, 2012.

"Why We've Learned Nothing from Watergate," *The Huffington Post,* June 20, 2012.

"The NRA's 'Fast and Furious' Gun Walking,' *The Huffington Post,* June 29, 2012.

"Not so Fast: House Committee Wrong on Gun-Running Story," *Syracuse Post-Standard,* July 4, 2012.

"Aurora Won't Change Anything," *Salon,* July 23, 2012.

"Not in New York," *Syracuse Post-Standard* Sunday Opinion, July 29, 2012.

"Sex, Politics, and the Porn Star DA," *The Huffington Post*, November 20, 2012.

"Who Gets Guns," *The Blue Review* (thebluereview.org), December 19, 2012.

"Five Myths About Gun Control," *The Washington Post*, Sunday Outlook Section, December 23, 2012.

"Government can Improve Gun Records," *The Hill,* January 15, 2013.

"Doing Nothing on US Gun Laws No Longer an Option," *The Independent* (Britain), January 17, 2013.

"The President's Need for Speed," *The New York Daily News,* January 17, 2013.

"No Need for Panic," *Cortland Standard*, March 28, 2013.

"From *Duck Dynasty* to the *Ivory Tower*," *The Huffington Post*, September 3, 2013.

"A History Lesson for Foes of N.Y. Gun Law," *New York Daily News,* January 3, 2014.

21

"History Shows Gun Laws Were Common in U.S.," *Syracuse Post-Standard,* January 7, 2014.

"An Assault Weapons Gambit Backfires," *New York Daily News,* April 9, 2014.

"Sensible Regulation of Guns is Necessary," *Rochester Democrat and Chronicle,* April 13, 2014.

"Cortland Can Help Shine Light on Crimes," *Syracuse Post Standard,* April 27, 2014.

"The Jets, Michael Vick and a College Dilemma," *The Huffington Post,* April 28, 2014.

"Obama's Executive Orders: Can We Talk?" *The Huffington Post,* November 18, 2014.

"Leading By Veto," *Los Angeles Times,* February 3, 2015.

"How Obama Can Use Veto Power Without Being President No," *Syracuse Post Standard,* February 8, 2015.

"Stand Your Ground Makes No Sense," *New York Times,* May 4, 2015.

"Gun Laws are as Old as Gun Ownership," *ACS Blog*, American Constitution Society, May 18, 2015.

"Why Are Assault Weapon Sales Jumping? Because They're Fun," *Los Angeles Times,* June 12, 2015.

"Guns Were Much More Strictly Regulated in the 1920s and 1930s than They Are Today," *History News Network,* June 14, 2015. Also in *Time Magazine*, June 15, 2015.

"Why Assault Rifle Sales Are Booming," *Chicago Tribune,* June 15, 2015.

"Think the Charleston shooting will lead to new gun control laws? It won't." *Washington Post,* June 18, 2015.

"The Politics of the Fourth of July from Musical Theatre," *Huffington Post,* June 29, 2015.

"Flanagan's Gun Permit, and Mine," *N.Y. Daily News,* August 31, 2015.

"Why the Oregon Shooting Likely Won't Change Anything," *U.S. News and World Report,* October 2, 2015.

"Obama's Guantanamo Paradox," with Chris Edelson, *U.S. News and World Report,*
November 30, 2015.

"Arming Everyone is Not the Answer," *N.Y. Daily News,* December 6, 2015.

"Why Guns for all Is Not a Good Idea," *Syracuse Post-Standard,* December 13, 2015.

"President Obama's Recent Vetoes Were Unconstitutional. Congress Should Sue Him."
*Washington Post,* December 30, 2015.

"Obama Should be Sued over Unconstitutional Vetoes," *Syracuse Post-Standard,*
January 1, 2016.

"Nutty Gun Rhetoric Meets Reality," *U.S. News and World Report,* January 7, 2016.

"Anti-Fluoride Advocate No Expert," *Cortland Standard,* February 16, 2016.

"What the Orlando Shooting Shows About the Importance of Gun Laws," *Washington
Post*, June 14, 2016.

"Orlando Shooting: Reaction from Cortland Gun Law Expert," *Syracuse Post Standard,*
June 19, 2016.

"Even in the Wild West, There Were Rules About Carrying Concealed Weapons," *Los
Angeles Times,* June 19, 2016.

"Here's What it Would Take for the U.S. to Ban Assault Weapons Again," *MarketWatch,*
June 24, 2016.

"Political Gridlock, Past and Present," *Washington Times,* in conjunction with the
National Constitutional Literacy Campaign, September 12, 2016.

"Guns Return to American Elections," *US Election Analysis 2016: Media, Voters and the
Campaign*, Centre for Politics & Media Research and the Centre for the Study of
Journalism, Culture and Community at Bournemouth University, UK, November 18,
2016.

"Gun Rules and Rights: Where's the Problem?" Guns Issue, CLOG, 2017.

"Why Congress Will Let Trump Keep Business Ties—for Now," *Syracuse Post
Standard,* January 15, 2017.

"Why There Will Be No Trump Impeachment Now—Even Though There Should Be," *Huffington Post,* January 18, 2017.

"The NRA Wants to Suppress One of Guns' Most Important Safety Features," *Washington Post*, January 23, 2017; *Chicago Tribune*, January 24, 2017.

"Trump's Tax Returns and Tax Reform: Can We Get Both?" *Syracuse Post Standard,* April 16, 2017.

"Armed Private Militias like Charlottesville's Offend the Founding Fathers' Intent," *NY Daily News,* August 16, 2017.

"Private Militias and Gun Rights," *Syracuse Post Standard,* August 20, 2017.

"Americans Used to Be Good at Gun Control. What Happened?" *New York Times,* October 3, 2017.

"An American Standoff," *New York Daily News,* October 8, 2017.

"Laws We Used to Have on the Books Could Have Prevented the Florida School Shooting," *Washington Post,* February 15, 2018.

"The NRA's Journey from Marksmanship to Political Brinkmanship," *The Conversation,* February 23, 2018.

"How to Keep the Deadliest Guns Out of Dangerous Hands," *New York Daily News,* March 5, 2018.

"You Can Report a Bad Driver; Why Not an Angry Gun Owner?" *Syracuse Post Standard,* March 11, 2018.

"Here's What Trump Doesn't Know about Knives, Guns and Murder," *Washington Post,* May 9, 2018.

"'Stand Your Ground' Laws Have Failed to Stem Crime or Improve Safety," Rockefeller Institute of Government, June 4, 2018.

"What's Behind NRA TV's Grotesque Take on 'Thomas & Friends,'" *CNN.com*, September 13, 2018.

"The Gun Safety Issue is Actually Helping Democrats," *New York Times,* November 12, 2018.

"Impeachment: Be Careful What You Ask For," *Syracuse Post Standard,* December 30, 2018.

"Why the Supreme Court Will Almost Surely Strike Down New York City's Gun Law," *New York Daily News,* January 24, 2019.

"Why 'Vice' Deserves an Oscar," *Los Angeles Times,* February 7, 2019.

"One Year Later: Parkland Shifted the Politics of Guns," *Syracuse Post Standard,* February 17, 2019.

"There's No Second Amendment Right to Large-Capacity Magazines," *New York Times,* August 6, 2019.

"Can the NRA Survive its Current Crisis?" *History News Network*, hnn.us, August 11, 2019.

"Trump Should Seize This Pivotal Moment and Stop Waffling on Gun Control," *CNN.com,* August 24, 2019.

"One Gun Policy Idea We Can Agree On: Magazine Regulation," *Second Thoughts,* The Center for Firearms Law at Duke University, October 10, 2019.

"William Barr's Upside-Down Constitution," *History News Network,* December 1, 2019.

"Gun Rights Sanctuaries Threaten Law and Order," *Syracuse Post Standard,* February 2, 2020.

"Why Are People Bringing Guns to Anti-quarantine Protests? To Be Intimidating," *Washington Post,* April 27, 2020.

"The NRA is Doomed. It Has Only Itself to Blame." *Washington Post,* August 8, 2020.

"Guns Don't Belong Near Polling Places. Right Wingers Want Them There Anyway." *Washington Post,* September 30, 2020.

"President Trump's Record on Promises: Did He Keep Them?" *Syracuse Post Standard,* October 1, 2020.

"Originalism, Shot Full of Holes: A Primer for Amy Coney Barrett," *New York Daily News,* October 14, 2020.

"Guns and the 2020 Elections," *US Election Analysis 2020,* Daniel Jackson, et al., eds.
Centre for Politics & Media Research and the Centre for the Study of Journalism, Culture
and Community at Bournemouth University, UK, November 15, 2020.

"Capitol Riot a Fitting End to Trump Presidency Built on Lies," *Syracuse Post-Standard,*
January 8, 2021.

"The Problem with a Self-Pardon," *History News Network,* January 14, 2021.

"The Supreme Court's intent isn't concealed: Conservatives are hell bent on expanding
gun rights," *NY Daily News,* April 26, 2021.

"Expert Opinion: The Coming Collision of Gun Laws and Rights," Regional Gun
Violence Research Consortium, Rockefeller Institute of Government, May 10, 2021.

"The NRA could be winning its long game even as it appears to be in dire straits," *The
Conversation,* November 24, 2021.

"Texas and New York: A Tale of Two State Gun Laws," *New York Daily News*, January
25, 2022.

"Despite Tragedy, College Campuses Remain Safe," *Virginia Daily Press/Virginian-
Pilot,* February 8, 2022.

"Sandy Hook-Remington gun marketing settlement shows how to fight gun companies,"
*NBC THINK,* February 19, 2022.

"The Sandy Hook-Remington Settlement: Consequences for Gun Policy," Regional Gun
Violence Research Consortium, Rockefeller Institute of Government, March 21, 2022.

"Study of US Government Requires Examination of Conflict," *Virginia Daily
Press/Virginian-Pilot,* May 1, 2022.

"How the NRA evolved from backing a 1934 ban on machine guns to blocking nearly all
firearm restrictions today," *The Conversation,* May 25, 2022.

"The NRA wasn't always opposed to gun restrictions," *Chicago Sun-Times,* May 27,
2022.

"Originalism, History, and Religiosity are the Faults of Alito's Reasoning in *Dobbs*,"
*History News Network,* May 29, 2022.

"US tragedies from guns have often – but not always – spurred political responses," *The Conversation,* June 8, 2022.

"How the Supreme Court rewrote history to justify its flawed gun decision," *NBC THINK,* June 23, 2022.

"The Road Ahead for Gun Laws in New York State," *New York Daily News*, June 28, 2022.

"Understanding the New Gun Policy Collision," Regional Gun Violence Research Consortium, Rockefeller Institute of Government, July 12, 2022.

"Guns at voting sites have long sparked fears of intimidation and violence – yet few states ban their presence," *The Conversation,* November 2, 2022.

"Guns at voting sites have long sparked fears of intimidation, violence," *Syracuse Post-Standard,* November 4, 2022.

"What our past tells us about young people and guns," *The Hill,* March 28, 2023.

"Stand-Your-Ground, the Castle Doctrine, and Public Safety," Regional Gun Violence Research Consortium, Rockefeller Institute of Government, May 3, 2023.

"For Most of U.S. History We've Had Both Gun Rights and Gun Regulations," *TIME.com,* June 6, 2023.

"Is domestic abuse really protected by the Second Amendment?" *The Hill,* July 14, 2023.

"America's Original Gun Control," *The Atlantic Monthly,* August 12, 2023.  163

"The Unusual Thing About Hunter Biden's Indictment," *CNN.com*, September 15, 2023.


<u>TESTIMONY, BRIEFS, AND REPORTS</u>:

"Report of a Survey of Contributors to the Democratic Telethon," A Report to the Democratic National Committee, Washington, D.C., January 1974.

"Election Laws, Registration and Voting:  Some Recommendations," Testimony presented before the New York State Assembly Committee on Election Law, Albany, N.Y., May 15, 1980.

"New York's Multi-Party System," a presentation given before members of the Mexican

and Canadian Parliaments at the Rockefeller Institute for Governmental Studies, Albany,
N.Y., October 29, 1982.

"Comments and Recommendations on `The New York State Assembly: The Need for
Improved Legislative Management,'" co-authored with Henry Steck, prepared for the
New York State Assembly Republican Study Group, September, 1985.

"Registration, Voting, and the New York Election Law," Testimony presented before the
Governor's Task Force to Encourage Electoral Participation, World Trade Center, New
York City, December 21, 1987.

"The Pocket Veto and Sine Die Adjournments," Testimony presented to the Rules
Committee, Subcommittee on the Legislative Process, House of Representatives,
Washington D.C., July 26, 1989.

"Issues Pertaining to the Pocket Veto," Testimony presented to the Judiciary Committee,
Subcommittee on Economic and Commercial Law, House of Representatives,
Washington, D.C., May 9, 1990.

"The Stealth Veto: Does the President Already Possess Item Veto Powers?" Testimony
presented to the Judiciary Committee, Subcommittee on the Constitution, U.S. Senate,
Washington, D.C., June 15, 1994.

"The Hidden History of the Second Amendment," The National Press Club, Washington,
D.C., May 12, 1998.

"The Second Amendment: A Source of Individual Rights?" Testimony presented to the
Judiciary Committee, Subcommittee on the Constitution, Federalism, and Property
Rights, U.S. Senate, Washington, D.C., September 23, 1998.

"The Gun Industry: The NRA's Silent Partner," National Press Briefing, Atlanta, GA,
February 2, 1999.

"Program Review: SUNY Oswego Political Science Department," prepared as part of the
department's review and assessment process, March 2001.

Meeting on Executive Order 13233, pertaining to presidential records access, hosted by
Alberto Gonzales, Office of Legal Counsel, the White House, Washington, D.C.,
December 7, 2001.

Article ("Lost and Found: Researching the Second Amendment," Chicago-Kent Law
Review, 2000) cited as controlling authority by the U.S. Court of Appeals, Ninth Circuit,
in the case of Silveira v. Lockyer (312 F.3d 1052; 9th Cir. 2002); 2002 U.S. App. LEXIS

24612.

Coauthor, *amicus curiae* brief in the case of *Nordyke v. King*, U.S. Court of Appeals, Ninth Circuit, 319 F.3d 1185 (2003).

White House meeting on changing standards regarding FOIA requests, access to Executive Branch documents, and presidential library design, hosted by White House Counsel Alberto Gonzales and White House Staff Secretary Brett Kavanaugh, Washington, D.C., July 17, 2003.

Invited participant and panelist, "National Research Collaborative Meeting on Firearms Violence," hosted by the Firearm and Injury Center at the University of Pennsylvania, and the Joyce Foundation, Philadelphia, PA, June 15-17, 2005.

Program Review Report, SUNY Geneseo Political Science Department, March, 2009.

Coauthor with Louis Fisher, *amicus curiae* brief in the case of *Republic of Iraq et al. v. Beaty et. al.,* U.S. Supreme Court, filed March 25, 2009; case decided June 8, 2009 (556 U.S. 848; 2009).

Testimony on bills to enact early voting and other state voting reform measures before the New York State Senate Standing Committee on Elections, Syracuse, NY, May 14, 2009.

Co-author, *amicus* brief in the cases of *NRA v. City of Chicago* and *McDonald v. Chicago*, U.S. Supreme Court, argued March 2, 2010, decided June 28, 2010, 561 U.S. 742 (2010).

Consultant for plaintiffs in *Conservative Party of New York and Working Families Party v. NYS Board of Elections* (10 Civ. 6923 (JSR)), 2010, U.S. District Court for the Southern District of New York.

Co-author, *amicus* brief in the case of *Ezell v. Chicago,* U.S. Court of Appeals for the Seventh Circuit, 651 F.3d 684 (2011).

Co-author, *amicus* brief in the case of *People of the State of Illinois v. Aguilar,* Illinois Supreme Court, No. 08 CR 12069, 2012.

Invited panelist and contributor to conference and report, Institute of Medicine and the National Research Council of the National Academies, "Committee on Priorities for a Public Health Research Agenda to Reduce the threat of Firearm-Related Violence," National Academies Keck Center, 500 Fifth St., NW, Washington, DC, April 23, 2013.

"Perspectives on the 'Stand Your Ground' Movement," Testimony submitted to the U.S. Senate Committee on the Judiciary, Subcommittee on the Constitution, Civil Rights and Human Rights, Hearing on "'Stand Your Ground' Laws: Civil Rights and Public Safety Implications of the Expanded Use of Deadly Force," Washington, D.C., October 29, 2013.

Testimony on the Hearing Protection Act to deregulate gun silencers submitted to the U.S. House of Representatives Committee on Natural Resources, Subcommittee on Federal Lands, for Hearings on the Sportsmen's Heritage and Recreational Enhancement Act (SHARE Act), Washington, D.C., September 12, 2017.

Expert testimony submitted for the State of Massachusetts, Office of Attorney General, in the case of *Worman v. Baker*, No. 1:17-cv-10107-WGY, United States District Court for the District of Massachusetts, submitted September 15, 2017, challenging Massachusetts state assault weapons restrictions. In 2019 the U.S. Court of Appeals for the First Circuit upheld the Massachusetts law (922 F.3d 26).

Member, Regional Gun Violence Research Consortium Organizing Committee, a Task Force organized by NY Governor Andrew Cuomo and the State Department of Education to research and investigate the causes of gun violence in a multi-state effort. February 2018.

Program Review Report, SUNY New Paltz Political Science and International Relations Departments, April 2019.

Consultant on Facebook policies and actions regarding gun issues, Quonundrums Market Research for Facebook, August 17, 2021.

Several of my publications cited in the case ruling of *Duncan v. Bonta,* U.S. Court of Appeals for the Ninth Circuit, November 30, 2021.


PAPERS AND PRESENTATIONS (NOT INCLUDING THOSE GIVEN ON THE CORTLAND CAMPUS):

"The President as Policy-Maker:  The Arenas of Presidential Power from 1954 to 1974," American Political Science Association, Washington, D.C., August 28-31, 1980.

"The Right-to-Life Movement as a Third Party:  The Policy Environment and Movement Politics," American Political Science Association, New York City, September 3-6, 1981. Reprinted by Rockefeller Institute for Governmental Studies Working Papers, Vol. I, No. 4, September, 1982.

"Viable Democracy or the French Fourth Republic:  Multi-Party Politics in New York," New York State Political Science Association, Albany, April 6, 1984.

"The Right-to-Life Movement as Partisan Activity," American Political Science Association, Washington, D.C., August 30 - September 2, 1984.

"Biting the Bullet:  Gun Control and Social Regulation," American Political Science Association, New Orleans, La., August 29 - September 1, 1985.

"The Presidential Veto," Northeastern Political Science Association, Boston, MA, November 13-15, 1986.

"Perspectives on the Presidential Veto Power:  Antecedents and Evolution," Bicentennial Conference on the Presidency, co-sponsored by the Center for the Study of the Presidency, the Chautauqua Institution and Gannon University, Erie, PA, April 24-26, 1987.

"The Transformation of a Kingly Power:  The Presidential Veto, Past and Present," American Political Science Association, Chicago, IL, September 3-6, 1987.

"The Pocket Veto:  Expanding Presidential Prerogatives Through the Back Door," American Political Science Association, Washington, D.C., September 1-4, 1988.

"Liberalism and Juridical Democracy; or What's Interesting About Interest Group Liberalism," Western Political Science Association, Newport Beach, CA., March 22-24, 1990.

"Separation of Powers and the War Power," presentation sponsored by the Federalist Society, Cornell University School of Law, April 20, 1990.

"Is the Separation of Powers Obsolete?  An Inquiry into Critiques of the Congressional-Presidential Balance of Power," American Political Science Association, Washington, D.C., August 29-September 1, 1991.

"Hate Speech and the College Campus," conference on Two Hundred Years of Free Expression, SUNY Oneonta, October 2-3, 1992.

"From Presidential Shield to `Go Ahead, Make My Day':  The Presidential Veto and the Constitutional Balance of Power," featured paper presenter for Fall 1992 Symposium on American Constitutionalism, Southwest Texas State University, San Marcos, TX, October 30, 1992.

"The Reagan Presidency and the Veto Power: Symbols and Actions of the `Make-My-

Day' President," Southern Political Science Association, Savannah, GA, November 3-6, 1993.

"Tenure, Speech, and the Jeffries Case: A Functional Analysis," conference on academic Freedom and Tenure, sponsored by New York City Bar Association and Pace University Law School, New York City, March 8, 1994.

"`It's My Constitution, and I'll Cry If I Want To': Constitutional Dialogue, Interpretation, and Whim in the Inherent Item Veto Dispute, " American Political Science Association, Chicago, August 31-September 3, 1995. Winner, 1996 Presidency Research Group Founders' Award for Best Paper on the Presidency presented at the 1995 APSA. Paper received mention in the <u>Washington Post</u>, September 24, 1995.

"Guns and Violence," presentation before Bryn Mawr Presbyterian Church Task Force on Violence, Bryn Mawr, PA, October 8, 1995.

"Guns, Militias, and the Constitution," Distinguished Lecture Series, Utica College, Utica NY, March 26, 1996.

"The Right to Bear Arms: A Constitutional and Criminological Analysis of Gun Control," the Cornell University School of Law, October 8, 1996.

"The Veto King: The `Dr. No' Presidency of George Bush," Conference on the Presidency of George Bush, Hofstra University, Hempstead, NY, April 17-19, 1997.

"Saving the Constitution from Lawyers," American Political Science Association, Washington, D.C., August 28-31, 1997.

"Revolution, the Second Amendment, and Charlton Heston," Gettysburg College, Gettysburg, PA, October 30, 1997.

"Recent Developments in <u>The Politics of Gun Control</u>," Gettysburg College, Gettysburg, PA, November 10, 1998.

"The Second Amendment, Disarmament, and Arms Control," Communitarian Summit, the Washington National Airport Hilton, Arlington, VA, February 27-28, 1999.

"The Argument Against Clinton's Impeachment," Hyde Park Session, American Political Science Association, Atlanta, September 2-5, 1999.

"Gun Politics After Littleton," Gettysburg College, Gettysburg, PA, November 9, 1999.

"Lost and Found: Researching the Second Amendment," Symposium on "The Second

Amendment: Fresh Looks," Chicago-Kent Law School and the Joyce Foundation, Chicago, April 28, 2000.

"The Independent Counsel and the Presidency After Clinton," American Political Science Association, Washington, D.C., August 31-September 3, 2000.

"From Columbine to Santee: Gun Control in the 21st Century," Idaho State University, Pocatello, Idaho, April 19, 2001.

"Gun Control in the New Millennium," Gettysburg College, Gettysburg, PA, November 13, 2001.

"Gun Rights for Terrorists? Gun Control and the Bush Presidency," A Presidency Transformed By Crises: The George W. Bush Presidency, SUNY Fredonia, NY, October 17-18, 2002.

"Gun Control and the Bush Presidency," Gettysburg College, Gettysburg, PA, November 21, 2002.

"The Ashcroft Justice Department and the Second Amendment," American Bar Association Annual Meeting, San Francisco, August 8-11, 2003.

"The Bush Presidency and 9/11," Keynote Address, Conference on 9/11, Cazenovia College, NY, September 11, 2003.

"Report of the National Task Force on Presidential Communication to Congress," co-author, Tenth Annual Texas A&M Conference on Presidential Rhetoric, George Bush Presidential Library and Conference Center, College Station, TX, March 4-7, 2004.

"Don't Know Much About History, Politics, or Law: Comment," Conference on The Second Amendment and the Future of Gun Regulation, co-sponsored by the Fordham School of Law, the Second Amendment Research Center, and the John Glenn Institute for Public Service and Public Policy of the Ohio State University, April 13, 2004, New York City.

"Bush vs. Kerry: Election of the Century?" Colgate University, Hamilton, NY, October 20, 2004.

"The Commander-in-Chief Power and Constitutional Invention in the Bush Administration," a paper presented at a Conference on "Is the Presidency Dangerous to Democracy?", Loyola Marymount University, Los Angeles, CA, February 7, 2005.

Participant, "The Wheler Family Address on International Relations," Academic

33

Conference on World Affairs, Cazenovia College, Cazenovia, NY, September 9, 2005.

"What Ever Happened to Gun Control?", Gettysburg College, Gettysburg, PA, November 1, 2005.

"Clinton and Gun Control: Boon or Bane?" a paper presented at the 11th Presidential Conference on William Jefferson Clinton, Hofstra University, Hempstead, NY, November 10-12, 2005.

"George W. Bush and the Unitary Executive," Keynote Address for "Quest," SUNY Oswego Scholars Day, April 19, 2006.

"Resolving Conflict with Intractable Foes:  The Lessons of International Relations Theory Applied to the Modern Gun Control Debate," Bryant University, Smithfield, RI, April 24, 2006.

"The Unitary Executive and the Commander-in-Chief Power," Conference on Presidential Power in America: The Constitution, the Defense of a Nation and the National Ethos, Massachusetts School of Law Conference Series, Andover, MA, October 14-15, 2006.

"The 2006 Elections," LeMoyne College, Syracuse, NY, November 29, 2006.

"In Wartime, Who Has the Power?" Symposium on Presidential Power and the Challenge to Democracy, Idaho State University, Pocatello, ID, April 26, 2007.

"Saul Cornell's Second Amendment: Why History Matters," Conference on Firearms, the Militia and Safe Cities: Merging History, Constitutional Law, and Public Policy, Albany Law School, Albany, NY, October 18-19, 2007.

"Gun Control and the 2008 Elections," Third Annual Harry F. Guggenheim Symposium on Crime in America, John Jay College, New York City, December 3-4, 2007.

"The Post-Cold War Vice Presidency," Cornell Adult University, Cornell University, Ithaca, NY, July 31, 2008.

"Is the Presidency Constitutional?" Roundtable panel on Restoring the Constitutional Presidency, APSA, Boston, August 28-31, 2008.

"The Future of the American Presidency," Board of the Bristol Statehouse, Bristol, RI, November 30, 2008.

"Is the Constitutional Presidency Obsolete? The Future of the American Presidency,"

34

Symposium on The Future of the American Presidency, Regent University, Virginia Beach, VA, February 6, 2009.

"The Failure of the Pro-Gun Control Movement," SUNY Oneonta, March 19, 2009.

"The Post-Bush Presidency and the Constitutional Order," American Political Science Association, Toronto, Canada, September 3-6, 2009.

"Inventing Gun Rights: The Supreme Court, the Second Amendment, and Incorporation," SUNY Geneseo, March 24, 2010.

"Intelligence Don't Matter," Keynote Address to Phi Kappa Phi Induction Ceremony, SUNY Cortland, April 17, 2010.

"The Law and Politics of Gun Control after Tucson," 6th Annual Harry Frank Guggenheim Symposium on Crime in America, conference on "Law and Disorder: Facing the Legal and Economic Challenges to American Criminal Justice," John Jay College of Criminal Justice, CUNY, New York City, January 31-February 1, 2011.

"Looking Ahead to the 2012 Elections," Tompkins County Democratic Committee, Ithaca, NY, August 7, 2011.

"Growing Executive Power: The Strange Case of the 'Protective Return' Pocket Veto," American Political Science Association, Seattle, WA, September 1-4, 2011.

"Gun Control and the Second Amendment," OASIS Conference, Syracuse, NY, October 3, 2011

"Comparing the Constitutional Presidencies of George W. Bush and Barack Obama: War Powers, Signing Statements, Vetoes," conference on "Change in the White House? Comparing the Presidencies of George W. Bush and Barack Obama," Hofstra University, Hempstead, NY, April 19, 2012.

"Watergate After 40 Years: Dick Cheney's Revenge," American Political Science Association, New Orleans, LA, August 30-September 2, 2012.

"The Media, American Elections, and Democracy," OASIS, Syracuse, NY, October 22, 2012.

"Hot Button Issues in the 2012 Presidential Campaign," Hiram College Conference on the 2012 Elections, Hiram, Ohio, November 15-17, 2012.

"Gun Legislation and Obstacles to Effective Gun Control," Metropolitan Black Bar

Association, New York City Bar Association, November 29, 2012.

"Guns and America," Syracuse University, Syracuse, NY, February 19, 2013.

"The Constitution Between Opponents," conference on "The State of the Presidency," Andrus Center for Public Policy, Boise State University, Boise, ID, February 28, 2013.

"Gun Policy at a Crossroads," Thursday Morning Roundtable, Syracuse, NY, March 7, 2013.

"Gun Policy Cycles and History," Pediatric Grand Rounds at the Upstate Golisano Children's Hospital, Syracuse, NY, March 13, 2013.

"Gun Law and the Constitution," Monroe County Bar Association, Rochester, NY, March 21, 2013.

"The Architecture of the Gun Control Debate," Goldfarb Center for Public Affairs, Colby College, Waterville, ME, April 2, 2013.

"The Campbell Debates: This Assembly Supports the NY SAFE Act," Syracuse University, April 5, 2013.

"What has Sandy Hook Changed? The Evolving Gun Debate," Reisman Lecture Series, Cazenovia College, Cazenovia, NY, April 17, 2013.

"Gun Policy Change: Infringing Rights, or Following History?" Jefferson Community College, Watertown, NY, April 18, 2013.

"Under the Gun," Conference on "Gun Violence, Gun Laws, and the Media," Center on Media, Crime and Justice, John Jay College of Criminal Justice, New York, May 14-15, 2013.

"Five Myths of the Gun Debate," Lawman of the Year, Cortland County Lawman Committee, Cortland, NY, May 20, 2013.

"Gun Law History," Sterling Historical Society, Sterling, NY, June 27, 2013.

"Analyzing the New York SAFE Act," League of Women Voters Forum, Cortland, NY, September 12, 2013.

"Constitution Day, the Second Amendment, and Guns," OASIS, Syracuse, NY, September 16, 2013.

"The Second Amendment and Guns in America," Values, Arts, and Ideas Series Constitution Day Speaker, Manchester University, North Manchester, Indiana, September 17, 2013.

"Live By History, Die By History: The Second Amendment, Heller, and Gun Policy," Georgetown University, Washington, DC, October 18, 2013.

"American Gun Policy," "Gun Violence: A Comparative Perspective," and "American History and Foreign Policy, 1960-1990," King's College, London, England; Southbank Centre, "Superpower Weekend," November 8-11, 2013.

"Gun Politics and the Electoral Process," Oneida County Women's Democratic Club and County Committee, Utica, NY, November 17, 2013.

"The Second Amendment and the Hidden History of Gun Laws," Institute for Legislative Studies, University of North Carolina, Greensboro, NC, November 20-21, 2013.

"The Future of Gun Regulation After Newtown," Fordham University, New York, NY, January 21, 2014.

"The 2014 Elections: The End of the Obama Era?" 22nd Annual Chautauqua, Homer, NY, August 3, 2014.

"New York State and the NY SAFE Act: A Case Study in Strict Gun Laws," conference on "A Loaded Debate: The Right to Keep and Bear Arms in the 21st Century," Albany Law School, Albany, NY, October 9, 2014.

"Is Gun Control Un-American or at Least Unconstitutional?" Temple Concord, Syracuse, NY, October 14, 2014.

"The American Gun Debate is Under Water," TEDxCortland Talk, Hathaway House, Solon, NY, October 25, 2014.

"The Unitary Executive and the Bush Presidency," Conference on the Presidency of George W. Bush," Hofstra University, Hempstead, NY, March 24-26, 2015.

"Assessing the Obama Presidency," Western Political Science Association, Las Vegas, NV, April 1-3, 2015.

"Gun Laws, Gun Policies, and the Second Amendment," Central New York Council of the Social Studies Professional Development Day Conference, Carnegie Conference Center, Syracuse, NY, October 20, 2015.

"The 2016 Elections," The Cornell Club of Cortland County, November 17, 2015,
Cortland, NY.

"Gun Law History in the U.S. and Second Amendment Rights," Conference on The
Second Amendment: Legal and Policy Issues, New York University Law School and the
Brennan Center for Justice, New York City, April 8, 2016.

"The Presidential Elections," The Century Club, June 7, 2016, Syracuse, NY.

"The 2016 Elections," Chautauqua, August 3, 2016, Homer, NY.

"The 2016 Elections" Cortland Rotary, Cortland, N.Y. September 20, 2016.

"The 2016 Elections," Cortland Community Roundtable, October 6, 2016.

"TrumPocalypse 2016," Finger Lakes Forum, Geneva, N.Y., October 16, 2016.

"The 2016 Elections," Homer Congregational Church, Homer, N.Y., October 30, 2016.

"Had Enough? Only Five More Days," OASIS, November 3, 2016, Syracuse, N.Y.

"Guns for Everyone?" OASIS, November 14, 2016, Syracuse, N.Y.

"College and Life: Really the Same," SUNY Cortland Commencement Address, May 14,
2017.

"Sizing Up the Trump Presidency," Cortland County Democratic Party, June 1, 2017.

"Understanding Impeachment," Ladies Literary Society, Lafayette, NY, June 7, 2017.

"Guns Across America," Ithaca College, Ithaca, NY, September 21, 2017.

Guest panelist, "Gun Studies Symposium," University of Arizona, Tucson, AZ, October
20, 2017.

"Gun Policy and Schools After Parkland," SUNY Student Assembly Annual Conference,
Syracuse, NY, April 7, 2018.

"Gun Laws, History, and the Second Amendment: What Does the Constitution Allow?"
Clemson University, SC, April 17, 2018.

"Gun Violence and the History of Gun Laws," League of Women Voters of Tompkins
County, Ithaca, NY, May 23, 2018.

"The Unknown History of Gun Laws in America," Madison-Chenango Call to Action, Hamilton, NY, June 20, 2018.

"It's All Academic: The Meaning of the Second Amendment Versus Heller," Conference on "The Second Amendment: Its Meaning and Implications in Modern America," Lincoln Memorial University School of Law, Knoxville, TN, January 18, 2019.

"Mulling Over the Mueller Report," Indivisible Cortland County, Homer, NY, June 15, 2019.

"Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers," Symposium on Gun Rights and Regulation Outside the Home, Duke University, Durham, NC, September 27, 2019.

"Gun Policy 101: What Policymakers and the Public Need to Know," Rockefeller Institute of Government, Albany, NY, October 1, 2019.

Guest expert, Federalist Society Teleforum on *New York State Rifle and Pistol Association v. NYC,* November 22, 2019.

"To Brandish or Not to Brandish: The Consequences of Gun Display," Duke University Law School Conference on Historical Gun Laws, June 19, 2020 (virtual).

"The 2020 Elections," Cortland Country Club, October 14, 2020.

Panelist, "Gun Law, Politics, and Policy," Midwest Political Science Association, Chicago, April 14-17, 2021 (virtual).

"Gun Violence," Beaches Watch, Florida, August 4, 2021 (virtual).

"Challenging Conversations: Gun Control," Lockdown University (virtual), April 5, 2022.

"Scholars' Circle: Gun Control," June 30, 2022 (virtual).

"Gun Rules and Regulations," Clubhouse AverPoint, July 2, 2022 (virtual).

"A Nation in Crisis: Are Guns the Problem?" Center for Ethics and Human Values' Civil Discourse Forum, The Ohio State University, Columbus, OH, September 23, 2022.

"Explaining the 2022 Midterm Elections," OSHER Lifelong Learning Institute at the College of William and Mary, Williamsburg, Va., October 13, 2022.

"The Gun Rights 2.0 Movement: Public Policy Consequences," 2022 National Research Conference on Firearm Injury Prevention, Omni Shoreham Hotel, Washington, D.C., November 29-December 1, 2022.

"Gun Law History in America," OSHER Lifelong Learning Institute at the College of William and Mary, Williamsburg, Va., February 16, 2023.

"The Obama Presidency and Gun Policy," Paper Presented for Hofstra University's 13th Presidential Conference on The Barack Obama Presidency, Hempstead, NY, April 19-21, 2023. Archived with selected conference papers at: https://www.hofstra.edu/cultural-center/obama/; https://www.hofstra.edu/sites/default/files/2024-02/spitzer-paper.pdf

"Gun Law History and Virginia," League of Women Voters, Williamsburg, Va., June 22, 2023.

"Gun Policy in the U.S.: Past, Present, Future," College of William and Mary, Williamsburg, Va., September 21, 2023.

"Historical Gun Laws Pertaining to Minors," 2023 Cooper-Walsh Colloquium, Conference on *Public Health, History, and the Future of Gun Regulation After Bruen,* Fordham University School of Law, New York City, NY, October 12-13, 2023.

"Presidential Impeachment: What It Is, How It Works, Why It Matters," OSHER Lifelong Learning Institute at the College of William and Mary, Williamsburg, Va., October 19, 2023.

"The Politics of Gun Control," TORCH Club of Williamsburg, VA, January 16, 2024.

"Gun Law History in America and Virginia," OSHER Lifelong Learning Institute at the College of William and Mary, Williamsburg, Va., February 21, 2024.


PANEL PARTICIPATION:

Discussant, "Historical Transformations of Political Institutions in the U.S.," Social Science History Association, Rochester, N.Y., November 7-9, 1980.

Chair, "The Political Economy of Single Issue Movements," 1981 American Political Science Association, New York City, September 3-6.

Discussant, "New York Republicans:  An Emerging Majority Party?", New York State Political Science Association, Albany, N.Y., April 2-3, 1982.

Round table panel member, "Perspectives on the Reagan Administration," New York State Political Science Association, New York, N.Y., April 8-9, 1983.

Discussant, "Toward a Theory of the Chief Executive," 1983 American Political Science Association, Chicago, Ill., September 1-4, 1983.

Chair and Discussant, "Political Parties and Party Organization," 1984 American Political Science Association, Washington, D.C., August 30 - September 2, 1984.

Discussant, "Reforming the Presidential Selection Process," New York State Political Science Association, New York, N.Y., April 25-26, 1985.

Chair, "Theoretical Approaches to Policy Concerns," American Political Science Association, New Orleans, La., August 29 - September 1, 1985.

Discussant, "Perspectives on Presidential Influence," American Political Science Association, New Orleans, La., August 29 - September 1, 1985.

Discussant, "The Item Veto," American Political Science Association, New Orleans, La., August 29 - September 1, 1985.

Chair, "Mobilizing Interests on National Policies," American Political Science Association, Washington, D.C., August 28-31, 1986.

Discussant, "The News Media and American Politics," American Political Science Association, Washington, D.C., August 28-31, 1986.

Chair, "Perspectives on the Bicentennial of the U.S. Constitution," New York State Political Science Association, New York City, April 3-4, 1987.

Discussant, "The Presidency in Comparative Perspective," and "Media and Models of Public Policy-Making," American Political Science Association, Atlanta, Aug. 31 - Sept. 3, 1989.

Discussant, "Presidents and Economic Interests," American Political Science Association, Washington, D.C., August 29 - September 1, 1991.

Panel Chair, "The Presidential Role in Policy Making," American Political Science Association, Chicago, September 3-6, 1992.

Discussant, "Presidential Influence on Congress," American Political Science Association, Washington, D.C., September 2-5, 1993.

41

Discussant, "Bureaucratic Politics," Southern Political Science Association, November 3-6, 1993.

Discussant, "The President's Extra-Constitutional Power," American Political Science Association, New York City, September 1-4, 1994.

Discussant, "Roundtable on the President and Congress in a Republican Age," Western Political Science Association, San Francisco, March 14-16, 1996.

Chair, "Militias, the Second Amendment, and the State: Constitutional, Social, and Historical Implications," American Political Science Association, San Francisco, August 29-September 1, 1996.

Chair, "Roundtable on Teaching the Presidency," American Political Science Association, August 29-September 1, 1996.

Chair, "The Constitutionalism and Presidentialism of Louis Fisher," American Political Science Association, Washington, D.C., August 28-31, 1997.

Chair, "The President as Legislative Leader," American Political Science Association, Boston, September 3-6, 1998.

Chair, Roundtable on "Memo to the President," American Political Science Association, Atlanta, September 2-5, 1999.

Discussant, "Firearms in the U.S.," Midwest Political Science Association, Chicago, April 27-30, 2000.

Chair and discussant, Roundtable on "Is the Presidency Changed?" APSA, San Francisco, August 30-September 2, 2001.

Chair and discussant, "Presidential Use of Strategic Tools," APSA, Boston, August 29 - Sept. 1, 2002.

Discussant, "Executing the Constitution," APSA, Boston, August 29 - Sept. 1, 2002.

Chair, "Marketing the President," APSA, Philadelphia, August 28-31, 2003.

Discussant, "Media Coverage of the Presidency," APSA, Philadelphia, August 28-31, 2003.

Chair and discussant, "Does Presidential Leadership in Foreign Policy Matter?" APSA,

42

Chicago, September 2-5, 2004.

Roundtable member, "The Ins and Outs of Obtaining a Book Contract," APSA, Chicago, September 2-5, 2004.

Discussant, "Presidential Power: Lessons From the Past," APSA, Washington, D.C., September 1-4, 2005.

Chair and Discussant, "The Unitary Executive in a Separated System," APSA, Philadelphia, August 31-September 3, 2006.

Panel chair, "The Culpability of Congress," Conference on Presidential Power in America: The Constitution, the Defense of a Nation and the National Ethos, Massachusetts School of Law Conference Series, Andover, MA, October 14-15, 2006.

Panel chair, "Keeping the Modern Presidency in Check and Balance," APSA, Chicago, August 30-September 2, 2007.

Discussant, "Presidential Endings: George W. Bush and the Final Two Years," APSA, Chicago, August 30-September 2, 2007.

Discussant, "Staffing and Decisionmaking in the White House," APSA, Boston, August 28-31, 2008.

Panel Chair, "Early Assessments of the Obama Presidency," APSA, Washington, D.C., September 2-5, 2010.

Discussant, "Historical Perspectives on the Presidency," APSA, Chicago, August 29-Sept. 1, 2013.

Discussant, "Politics and Presidential Travel," APSA, Washington, D.C., August 27-31, 2014.

Discussant, "The Obama Presidency and Constitutional Law," APSA, San Francisco, Sept. 3-6, 2015.

Discussant, "Presidents, the Courts and the Law," APSA, Philadelphia, Sept. 1-4, 2016.

Discussant, "Executive Power and Democratic Functioning in the Trump Era," APSA, Boston, MA, August 30-September 2, 2018.

Panel chair, "Assessing the Presidency of Donald Trump," APSA, Washington, DC, August 29-September 1, 2019.

Roundtable, "Gun Law, Politics, and Policy," Midwest Political Science Association, April 17, 2021 (virtual).

Roundtable, "Guns and the Political Moment: Political Violence, Self-Defense, and Reckoning with Race," Midwest Political Science Association, Chicago, April 7, 2022.


BOOK REVIEWS:

The American Presidency, by Richard M. Pious, reviewed in The Journal of Politics, November, 1979.

The Politics of Mistrust, by Aaron Wildavsky and Ellen Tenenbaum, reviewed in Administrative Science Quarterly, December, 1981.

Review essay, The President as Policymaker, by Laurence E. Lynn and David DeF. Whitman, review essay in Administrative Science Quarterly, March, 1982.

PL94-142: An Act of Congress, by Erwin L. Levine and Elizabeth M. Wexler, reviewed in the American Political Science Review, June, 1982.

Pure Politics and Impure Science, by Arthur M. Silverstein, reviewed in Administrative Science Quarterly, June, 1984.

Review essay, The President's Agenda, by Paul Light, reviewed in Administrative Science Quarterly, September, 1984.

The Evolution of American Electoral Systems, by Paul Kleppner, et al., reviewed in the American Political Science Review, December, 1983.

A Case of Third Party Activism, by James Canfield, reviewed in Perspective, July-August, 1984.

Winners and Losers: Campaigns, Candidates and Congressional Elections, by Stuart Rothenberg, reviewed in the American Political Science Review, December, 1984.

The Political Presidency, by Barbara Kellerman, reviewed in Perspective, January-February, 1985.

Presidents and Promises, by Jeff Fishel, reviewed in the American Political Science Review, December, 1985.

The Elections of 1984, ed. by Michael Nelson, reviewed in Perspective, May/June, 1985.

Economic Conditions and Electoral Outcomes, by Heinz Eulau and Michael S. Lewis-Beck, reviewed in Perspective, May/June, 1986.

Presidential Transitions: Eisenhower Through Reagan, by Carl M. Brauer, in Perspective, January/February, 1987.

Religion and Politics in the United States, by Kenneth D. Wald, in Journal for the Scientific Study of Religion, September, 1988.

Abortion and Divorce in Western Law, by Mary Ann Glendon, in The Annals of the American Academy of Political and Social Science, September, 1988.

The American Political Economy, by Douglas Hibbs, in Perspective, Spring, 1988.

God in the White House, by Richard G. Hutcheson, Jr., in Perspective, Fall, 1988.

The Reagan Legacy, Charles O. Jones, ed., in Social Science Quarterly, June, 1989.

Dilemmas of Presidential Leadership From Washington Through Lincoln by Richard Ellis and Aaron Wildavsky, in Perspective, September, 1989.

Taming the Prince by Harvey Mansfield, Jr., in Governance, April, 1990.

Public Policy and Transit System Management, ed. by George M. Guess, in Perspective, Spring, 1991.

The Myth of Scientific Public Policy, by Robert Formaini, in Perspective, Winter, 1992.

The Bush Presidency: First Appraisals, ed. by Colin Campbell and Bert Rockman in Public Administration Review, May/June, 1992.

The Illusion of a Conservative Reagan Revolution, by Larry Schwab, in Policy Currents, May, 1992.

The Vital South: How Presidents Are Elected, by Earl Black and Merle Black, in Perspective, Fall, 1993.

The Presidential Pulse of Congressional Elections, by James E. Campbell, in The Journal of American History, March, 1995.

Out of Order, by Thomas Patterson, in Presidential Studies Quarterly, Summer, 1994.

Congress, the President, and Policymaking, by Jean Schroedel, in the American Political Science Review, December, 1994.

The President and the Parties, by Sidney Milkis, in Governance, January 1995.

The Myth of the Modern Presidency, by David K. Nichols, PRG Report, Spring, 1995.

The End of the Republican Era, by Theodore Lowi, The Journal of American History, December, 1995.

Strategic Disagreement: Stalemate in American Politics by John B. Gilmour, in Governance (9), 1996.

Rivals For Power: Presidential-Congressional Relations, by James Thurber, in American Political Science Review, March, 1997.

American Presidential Elections, ed. by Harvey Schantz, in Perspectives, Spring 1997.

The Power of Separation by Jessica Korn, in Congress & the Presidency, Spring 1997.

Strong Presidents by Philip Abbott, in Perspective, Fall 1997.

Other People's Money: Policy Change, Congress, and Bank Regulation, by Jeffrey Worsham, in Perspectives, Spring 1998.

A Third Choice, in Journal of American History, December 1998.

Politics, Power and Policy Making: The Case of Health Care Reform in the 1990s, by Mark Rushefsky and Kant Patel in Perspectives, Winter 1999.

The Paradoxes of the American Presidency, by Thomas Cronin and Michael Genovese, for the American Political Science Review, March 1999.

Republic of Denial, by Michael Janeway, for Perspectives, Spring 2000.

The Art of Political Warfare, by John Pitney, Rhetoric and Public Affairs, Summer 2001.

Arming America, by Michael Bellesiles, Congress Monthly, January/February 2002.

Gun Violence in America by Alexander DeConde, Law and Politics Book Review, August 2001; also in Historynewsnetwork.org, 8/01.

46

Presidents as Candidates, by Kathryn D. Tenpas, in Rhetoric and Public Affairs, Spring 2002.

The Trouble With Government, by Derek Bok, Perspectives, Spring 2002.

King of the Mountain, by Arnold M. Ludwig, Rhetoric and Public Affairs, Winter 2002.

Power, the Presidency, and the Preamble, by Robert M. Saunders, Presidential Studies Quarterly, December 2002.

Presidents, Parliaments, and Policy, ed. by Stephen Haggard and Mathew McCubbins, Perspectives, Winter 2003.

The Modern American Presidency, by Lewis L. Gould, Rhetoric and Public Affairs.

Watergate: The Presidential Scandal that Shook America, by Keith W. Olson, Perspectives, Summer 2003.

The Militia and the Right to Arms, or, How the Second Amendment Fell Silent, by H. Richard Uviller and William G. Merkel, Journal of American History, March 2004.

Power Without Persuasion: The Politics of Direct Presidential Action, by William G. Howell, Perspectives on Politics, June 2004.

The George W. Bush Presidency: An Early Assessment, ed. By Fred Greenstein, Perspectives, Spring 2004.

The Invention of the United States Senate, by Daniel Wirls and Stephen Wirls, Perspectives, Summer 2004.

The Mythic Meanings of the Second Amendment, by David C. Williams, Law and Politics Book Review, April 2004.

Empowering the White House, by Karen M. Hult and Charles E. Walcott, Rhetoric and Public Affairs, Fall 2005.

Defining Americans:  The Presidency and National Identity, by Mary E. Stuckey, Perspectives, Spring 2005.

Presidential Leadership: Rating the Best and Worst in the White House, ed. By James Taranto and Leonard Leo, Rhetoric and Public Affairs, Summer 2006.

A Well-Regulated Militia: The Founding Fathers and the Origins of Gun Control in

America, by Saul Cornell, American Journal of Legal History, October 2006.

The Founders' Second Amendment: Origins of the Right to Bear Arms, by Stephen Halbrook, Law and Politics Book Review 18(October 2008).

Out of the Shadow: George H.W. Bush and the End of the Cold War, by Christopher Maynard, Journal of American History (September 2009).

Guns, Democracy, and the Insurrectionist Idea, by Joshua Horwitz, Law and Politics Book Review 19(June 2009).

Talking Together, by Lawrence Jacobs, Fay Lomax Cook, and Michael Delli Carpini, dailykos.com, posted June 20, 2009, with Glenn Altschuler.

Accidental Presidents, by Philip Abbott, Presidential Studies Quarterly, June 2010.

The Co-Presidency of Bush and Cheney, by Shirley Anne Warshaw, Congress and the Presidency, 2010.

Crisis and Command: The History of Executive Power from George Washington to George W. Bush, by John Yoo, Presidential Studies Quarterly (December 2010).

Declaring War: Congress, the President, and What the Constitution Does Not Say, by Brien Hallett, Law and Politics Book Review 22(November 2012).

Congress vs. the Bureaucracy: Muzzling Agency Public Relations, by Mordecai Lee, The Journal of American History (December 2012).

Arming and Disarming, by R. Blake Brown, Law and History Review (November 2013).

Reclaiming Accountability: Transparency, Executive Power, and the U.S. Constitution, by Heidi Kitrosser, Congress and the Presidency 42(2015).

The Six-Shooter State: Public and Private Violence in American Politics by Jonathan Obert and The Lives of Guns ed. by Jonathan Obert, Andrew Poe and Austin Sarat, Perspectives on Politics 17(September 2019).

The Toughest Gun Law in the Nation by James B. Jacobs and Zoe Fuhr, Criminal Law and Criminal Justice Books, March 2020.

Warped Narratives: Distortion in the Framing of Gun Policy by Melissa K. Merry, Perspectives on Politics 18(September 2020).

The Uses and Misuses of Politics: Karl Rove and the Bush Presidency by William G. Mayer, Presidential Studies Quarterly (December 2022).

SELECTED MEDIA APPEARANCES/QUOTATIONS:

NBC's "Today Show"; ABC's "Good Morning America" and "Network Nightly News"; PBS's "News Hour"; CNN's "Lou Dobbs," "NewsStand," "CNN & Co." CNN's HLN, and "Insight"; CNBC's "Upfront Tonight"; MSNBC's "Countdown with Keith Olbermann," "All In With Chris Hayes," "Ali Velshi"; "Fresh Air With Terry Gross," "The Diane Rehm Show," 1A with Joshua Johnson, NPR; NHK Television (Japan); CGTN (China), documentary films "Guns and Mothers" (PBS, 2003), "Under the Gun" (Katie Couric Film Company, Epix, 2016), "The Price of Freedom" (Flatbush Pictures/Tribeca Films, 2021). Quoted in or by the New York Times, the Washington Post, Time Magazine, Newsweek, Der Spiegel (Germany), USA Today, the Los Angeles Times, the Wall Street Journal, the Christian Science Monitor, the Boston Globe, the Chicago Tribune, the Philadelphia Inquirer, the Miami Herald, Houston Chronicle, the St. Louis Post-Dispatch, San Francisco Chronicle, the Dallas Morning News, the Baltimore Sun, the Detroit Free Press, the Seattle Post-Intelligencer, Newsday, the Denver Post, Kansas City Star, Dallas News, Pittsburgh Post-Gazette, New Orleans Times Picayune, Orlando Sentinel, Columbus Dispatch, Buffalo News, San Jose Mercury News, Albany Times-Union, St. Petersburg Times, Arkansas Democrat-Gazette, Newark Star-Ledger, Bergen Record, Congress Daily, The Hill, CQ Report, Rolling Stone, The Nation, Ladies Home Journal, the National Journal, The Spectator, Legal Times, Financial Times, Toronto Globe, al Jazeera, Reuters, Bloomberg News, Knight Ridder, AP, Gannett, Newhouse, Scripps Howard, McClatchy, Hearst, the BBC (Britain), CBC (Canada), the Voice of America, Radio Free Europe, ABC News Online, Fox News Online, National Public Radio, CBS Radio, media outlets in South Korea, India, Brazil, Denmark, Spain, France, Norway, Germany.

Regular panelist on "The Ivory Tower," a weekly public affairs program broadcast on WCNY-TV, Syracuse, NY, from 2002-2021. A half hour discussion of the week's events conducted by five academics from area colleges.

PROFESSIONAL ASSOCIATIONS:

Scholars Strategy Network.
American Political Science Association.
Center for the Study of the Presidency.
Presidents and Executive Politics Section (formerly the Presidency Research Group),
        APSA; served on Governing Board of PRG, 1991 to 2003.
New York Political Science Association.

Pi Sigma Alpha.
Phi Kappa Phi.


TEACHING AREAS:

American Government:  courses taught include Law and Politics, Introduction to
American Government, The Legislative Process, Political Parties and Social
Movements, The American Presidency, Media and Politics, Gun Control Politics
and Policy, State and Local Government, Abortion Politics, Elections and
American Politics, Media and War, internships in Washington, D.C., Albany, and
Cortland County, Seminars on the Decline of Parties and Third Parties, American
Institutions, Current Developments in American Politics, and Introduction to
College Life.

Public Policy:  courses taught include Politics and Policy, Introduction to Public
Policy, Gun Policy.  Areas of interest include policy theory, policy formation and
decisionmaking, and policy implementation.


TEACHING-RELATED AWARDS:

Three-time recipient of the SUNY Cortland Student Government Association
Outstanding Faculty Award (the "DiGiusto Award"), 1987, 1991, and 2003, for
"Outstanding Service to Students."  (The only faculty member ever to win this award
more than once.)


OTHER PROFESSIONAL ACTIVITIES

External Reviewer, University of Michigan-Dearborn, Project to Expand Promotion and Tenure
Guidelines (PTIE) to Inclusively Recognize Innovation and Entrepreneurial Impact, 2021.

Member, Howard Penniman Graduate Scholarship Selection Committee, Pi Sigma Alpha, 2018.

Member, Advisory Board of Pi Sigma Alpha Undergraduate Journal of Politics, 2014-2016.

Executive Council, Pi Sigma Alpha National Board, 2014-18.

Fund and organizing leader for American Political Science Association's new Distinguished
Teaching Award, 2011-12.

Chair, Presidency Research Group Task Force on Membership and Recruitment, 2007-08.

Chair, Richard E. Neustadt Award Committee for Best Book on the Presidency published in 2005, Presidency Research Group, 2006.

President, Presidency Research Group, American Political Science Association, 2001-2003; Vice-President 1999-2001.

Chair, Best Paper Award Committee, Presidency Research Group, American Political Science Association, for 1991 and 1992 conferences.

Member, Governing Board of the Presidency Research Group of the American Political Science Association, 1991-2003.

Editor, PRG Report, 1993-1997.

Board of Editors, State University of New York Press, 1993-1996; 1997-2000. Board Chair, 1998-2000.

Member, Leonard D. White Award Committee for Best Dissertation in Public Administration, American Political Science Association, 1995.

Conference Organizing Committee, "Presidential Power: Forging the Presidency for the 21st Century," Columbia University, November 15-16, 1996.

Chair, E.E. Schattschneider Award Committee, best doctoral dissertation in American Politics, American Political Science Association, 1997.

Secretary/Treasurer, Presidency Research Group, 1997-99.

Book and article reviews for Houghton Mifflin, Cengage Learning, Random House, McGraw-Hill, St. Martins, W.W. Norton, Oxford University Press, Cambridge University Press, University of Chicago Press, University of California Press, Princeton University Press, Cornell University Press, UNC Press, Pearson Longman, Allyn & Bacon, Palgrave/Macmillan, University of New Mexico Press, Texas A&M University Press, Chatham House, CQ Press, HarperCollins, SUNY Press, Thompson Wadsworth, University of Michigan Press, University of Missouri Press, Westview Press, Brooking Institution, Rowman and Littlefield, Routledge, University of Alabama Press, American Political Science Review, PS, Comparative Politics, American Journal of Political Science, Policy Studies Journal, Policy Studies Review, Political Science Quarterly, the Journal of Politics, Western Political Quarterly, Polity, Social Science Quarterly, Political Behavior, American Politics Quarterly, Political Communication, Legislative Studies Quarterly, Government and Policy, Congress and the Presidency, Social Science Journal, Journal of Policy History, Political Research Quarterly, Presidential Studies Quarterly, Politics and Policy, and the National Science Foundation.

51

<u>SELECTED COMMUNITY SERVICE</u>

Administrative Law Judge/Hearing Officer for Cortland County Board of Health, 1994-present; for Tompkins County, 1997-present; for Chenango County, 1997-present; for Madison County, 2006-2021.

Member, City of Cortland Planning Commission, 2009-2012.

Chair, SUNY Press Board of Editors, 1998-2000 (board member 1993-96, 1997-2000).
Board President, Cortland County Arts Council, 1989-1990 (board member, 1987-1990).

Chair, Homer Zoning Board of Appeals, 1995-1997; board member 1988-1997.

Board member, Cortland County Landmark Society, 1989-1995.

Chair, Planning Committee on Codes and Safety for the village of Homer's (N.Y.) Odyssey 2010 Project, 1996.

**EXHIBIT B**

# EXHIBIT B

## TYPES OF CARRY RESTRICTION LAWS (YEARS OF ENACTMENT)

| STATE | NO CONCEALED CARRY LAWS | NO OPEN/ANY CARRY LAWS | NO CARRY LONG GUNS |
|---|---|---|---|
| Alabama | 1839, 1841 | | |
| Alaska | 1896 | | |
| Arizona | 1889 | 1889, 1901 | 1901 |
| Arkansas | 1837, 1838,1874-75, 1881 | 1875, 1881 | |
| California | 1849, 1864 | 1878,1917 | 1878,1917 |
| Colorado | 1862 | | |
| Connecticut | 1890, 1923 | 1890 | 1890 |
| Delaware | 1852 | | |
| District of Columbia | 1858, 1871 | 1858 | 1858 |
| Florida | 1887 | 1838,1868 | 1868 |
| Georgia | 1837 | 1837,1873 | 1873 |
| Hawaii | 1913 | 1852,1913 | 1852,1913 |
| Idaho | 1909 | | |
| Illinois | 1881,1882,1883,1885 | | |
| Indiana | 1820 | | |
| Iowa | 1882, 1887,1897, 1929 | | |
| Kansas | 1862,1866,1868,1879, 1887 | 1868,1872, 1879,1881, 1899 | 1868,1881, 1899 |
| Kentucky | 1813,1853 | 1801 | |
| Louisiana | 1813 | 1870 | 1870 |
| Maine | 1840 | 1840,1881 | |
| Maryland | 1872 | 1874,1886 | 1874,1886 |
| Massachusetts | 1836 | 1836,1891, 1903,1927 | 1891,1903, 1927 |
| Michigan | 1887 | 1927,1929 | 1929 |
| Minnesota | 1870,1882,1884 | 1851,1870 | |
| Mississippi | 1878 | 1878 | |
| Missouri | 1873 | 1923 | 1923 |
| Montana | 1864, 1883 | | |
| Nebraska | 1881 | 1872 | 1872 |
| Nevada | 1881, 1905 | | |
| New Hampshire | 1909,1923 | 1909,1913 | |
| New Jersey | 1686 | 1871,1873 | 1871,1873 |

| | | | |
|---|---|---|---|
| New Mexico | 1852, 1853,1859/60, 1864/65,1869,1887 | 1869,1887 | |
| New York | 1891 | 1885,1911, 1913 | |
| North Carolina | 1792 | 1792 | |
| North Dakota | 1864/65[1],1895 | 1864/65, 1895 | |
| Ohio | 1859 | | |
| Oklahoma | 1890 | 1890,1891 | 1890,1891 |
| Oregon | 1853 | 1898,1917 | |
| Pennsylvania | 1851 | 1851 | 1851 |
| Rhode Island | 1893 | | |
| South Carolina | 1880 | 1901 | |
| South Dakota | 1864-65,1877 | 1864/65, 1877,1903 | |
| Tennessee | 1821 | 1821,1867, 1869,1879, 1881,1893 | 1869,1881, 1893 |
| Texas | 1870 | 1871,1879, 1879 | 1871,1879 |
| Utah | 1877, 1888 | 1877 | 1877 |
| Vermont | 1892,1895,1897 | 1895 | |
| Virginia | 1838,1847,1870,1877 1884,1887,1908 | 1847 | |
| Washington | 1881 | | |
| West Virginia | 1870 | 1882,1891, 1925 | 1882,1891, 1925 |
| Wisconsin | 1858 | 1858 | |
| Wyoming | 1876 | 1876,1893 | 1893 |
| TOTAL STATES | 50 (plus D.C.) | 38 | 22 |
| TOTAL LAWS | 90 | 72 | 36 |

Source: https://firearmslaw.duke.edu/repository/search-the-repository/

---

[1] The 1864-65 law was enacted for the Dakotas territory, so listed here under both North and South Dakota. The concealed carry restriction applied to pistols and "any sharp or dangerous weapon." 1864-1865 General Laws and Private Laws, and Memorials and Resolutions, of the Territory of Dakota, of the Fourth Session of the Legislative Assembly, 4(General Laws), 30-204; 128, Sec. 455. The 1864-65 Dakota territory law separately punished any carrying, whether open or concealed: "Every person who carries upon his person, whether concealed or not. . .any instrument or weapon of the kind usually known as slung shot or of any similar kind. . . ." 1864-1865 General Laws and Private Laws, and Memorials and Resolutions, of the Territory of Dakota, of the Fourth Session of the Legislative Assembly, 4(General Laws), 30-204; 128, Sec. 454.

**EXHIBIT C**

1

**EXHIBIT C**

**DANGEROUS WEAPONS LAWS**

<u>**ALABAMA**</u>

Harry Toulmin, A Digest of the Laws of the State of Alabama : Containing the Statutes and Resolutions in Force at the End of the General Assembly in January, 1823. To which is Added an Appendix; Containing the Declaration of Independence; the Constitution of the United States; the Act authorizing the People of Alabama to form a Constitution and State Government; and the Constitution of the State of Alabama Page 627, Image 655 (1823) available at The Making of Modern Law: Primary Sources.  1805
Negroes and Mulattoes, Bond and Free – 1805, Chapter I, An Act respecting Slaves. – Passed March 6, 1805: Sec. 4. And be it further enacted, that no slave shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive, except the tools given him to work with, or that he is ordered by his master, mistress, or overseer, to carry the said articles from one place to another, but all and every gun , weapon, or ammunition, found in the possession or custody of any slave, may be seized by any person, and upon due proof made thereof, before any justice of the peace of the county or corporation where such seizure shall be made, shall, by his order, be forfeited to the seizer, for his own use; and moreover, every such offender shall have and receive, by order of such justice, any number of lashes, not exceeding thirty-nine, on his bare back for every such offense : Provided nevertheless, That any justice of the peace may grant, in his proper county, permission in writing to any slave, on application of his master or overseer, to carry and use a gun and ammunition within the limits of his said master's or owner's plantation, for a term not exceeding one year, and revocable at any time within such term, at the discretion of the said justice, and to prevent the inconveniences arising from the meeting of slaves.

1837 Ala. Acts 7, An Act to Suppress the Use of Bowie Knives, §§ 1, 2.
Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened, That if any person carrying any knife or weapon, known as Bowie Knives or Arkansaw [sic] Tooth-picks, or either or any knife or weapon that shall in form, shape or size, resemble a Bowie-Knife or Arkansaw [sic] Tooth-pick, on a sudden rencounter, shall cut or stab another with such knife,

2

by reason of which he dies, it shall be adjudged murder, and the offender shall suffer the same as if the killing had been by malice aforethought.

And be it further enacted, [t]hat for every such weapon, sold or given, or otherwise disposed of in this State, the person selling, giving or disposing of the same, shall pay a tax of one hundred dollars, to be paid into the county Treasury; and if any person so selling, giving or disposing of such weapon, shall fail to give in the same to his list of taxable property, he shall be subject to the pains and penalties of perjury.

1839 Ala. Acts 67, An Act to Suppress the Evil Practice of Carrying Weapons Secretly, § 1

That if any person shall carry concealed about his person any species of fire arms, or any bowie knife, Arkansas tooth-pick, or any other knife of the like kind, dirk, or any other deadly weapon, the person so offending shall, on conviction thereof, before any court having competent jurisdiction, pay a fine not less than fifty, nor more than five hundred dollars, to be assessed by the jury trying the case; and be imprisoned for a term not exceeding three months, at the discretion of the Judge of said court.

1841 Ala. Acts 148–49, Of Miscellaneous Offences, ch. 7, § 4.

Everyone who shall hereafter carry concealed about his person, a bowie knife, or knife or instrument of the like kind or description, by whatever name called, dirk or any other deadly weapon, pistol or any species of firearms, or air gun, unless such person shall be threatened with, or have good cause to apprehend an attack, or be travelling, or setting out on a journey, shall on conviction, be fined not less than fifty nor more than three hundred dollars: It shall devolve on the person setting up the excuse here allowed for carrying concealed weapons, to make it out by proof, to the satisfaction of the jury; but no excuse shall be sufficient to authorize the carrying of an air gun, bowie knife, or knife of the like kind or description.

The Revised Code of Alabama Page 169, Image 185 (1867) available at The Making of Modern Law: Primary Sources.

Taxation, § 10. On All pistols or revolvers in the possession of private persons not regular dealers holding them for sale, a tax of two dollars each; and on all bowie knives, or knives of the like description, held by persons not regular dealers, as aforesaid, a tax of three dollars each; and such tax must be collected by the assessor when assessing the same, on which a special receipt shall be given to the tax payer therefor, showing that such tax has been paid for the year, and in default of such payment when demanded by the assessor, such pistols, revolvers, bowie knives, or knives of like description, must be seized by him, and unless redeemed

by payment in ten days thereafter, with such tax, with an additional penalty of fifty per cent., the same must be sold at public outcry before the court house door, after five days notice; and the overplus remaining, if any, after deducting the tax and penalty aforesaid, must be paid over to the person from whom the said pistol, revolver, bowie knife, or knife of like description, was taken, and the net amount collected by him must be paid over to the collector every month, from which, for each such assessment and collection, the assessor shall be entitled to fifty cents, and when the additional penalty is collected, he shall receive fifty per cent. additional thereto.

Wade Keyes, The Code of Alabama, 1876 : with References to the Decisions of the Supreme Court of the State upon the Construction of the Statutes; and in Which the General and Permanent Acts of the Session of 1876-7 have been Incorporated Page 882, Image 898 (1877) available at The Making of Modern Law: Primary Sources.
Offenses Against Public Peace, § 4109. Carrying Concealed Weapons – Any person who, not being threatened with, or having good reason to apprehend, an attack, or traveling, or setting out on a journey, carries concealed about his person a bowie knife, or any other knife or instrument of like kind or description, or a pistol, or fire arms of any other kind or description, or an air gun, must be fined, on conviction, not less than fifty, nor more than three hundred dollars; and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months. (Footnote – Not unconstitutional. – 1 Ala. 612 Co-extensive only with necessity – 49 Ala. 355. . .)

Wade Keyes, The Code of Alabama, 1876 : with References to the Decisions of the Supreme Court of the State upon the Construction of the Statutes; and in Which the General and Permanent Acts of the Session of 1876-7 have been Incorporated Page 989, Image 1005 (1877) available at The Making of Modern Law: Primary Sources.
Proceedings In Circuit and City Courts, § 4809. Carrying Concealed Weapons. – In an indictment for carrying concealed weapons, it is sufficient to charge that the defendant "carried concealed about his person a pistol, or other description of fire-arms," or "a bowie-knife, or other knife or instrument of the like kind or description," without averring the want of a legal excuse on his part; and the excuse, if any, must be proved by the defendant, on the trial, to the satisfaction of the jury.

Wade Keyes, The Code of Alabama, 1876 : with References to the Decisions of the Supreme Court of the State upon the Construction of the Statutes; and in Which

4

the General and Permanent Acts of the Session of 1876-7 have been Incorporated Page 901, Image 917 (1877) available at The Making of Modern Law: Primary Sources.
Offenses Against Public Health, etc. § 4230 (3751). Selling, giving, or lending, pistol or bowie knife, or like knife, to boy under eighteen. – Any person who sells, gives, or lends, to any boy under eighteen years of age, any pistol, or bowie knife, or other knife of like kind or description, must on conviction, be fined not less than fifty, nor more than five hundred dollars.

Wade Keyes, The Code of Alabama, 1876 : with References to the Decisions of the Supreme Court of the State upon the Construction of the Statutes; and in Which the General and Permenent Acts of the Session of 1876-7 have been Incorporated Page 883, Image 899 (1877) available at The Making of Modern Law: Primary Sources.

Carrying Weapons, Dangerous or Unusual Weapons | Alabama | 1873
Offenses Against Public Justice, &c. § 4110. Carrying, concealed, brass knuckles and slung-shots. – Any person who carries, concealed about his person, brass knuckles, slung-shot, or other weapon of like kind or description, shall, on conviction thereof, be fined not less than twenty, nor more than two hundred dollars, and may also, at the discretion of the court trying the case, be imprisoned in the county jail, or sentenced to hard labor for the county, for a term not exceeding six months. § 4111. Carrying rifle or shot-gun walking canes. – Any person who shall carry a rifle or shot-gun walking cane, shall, upon conviction, be fined not less than five hundred dollars, nor more than one thousand dollars, and be imprisoned in the penitentiary not less than two years.

J. M. Falkner, The Code of Ordinances of the City Council of Montgomery [Alabama], with the Charter Page 148-49, Image 148-49 (1879) available at The Making of Modern Law: Primary Sources.
§ 428. Any person who, not being threatened with or having good reason to apprehend an attack, or travelling or setting out on a journey, carries concealed about his person a bowie-knife or any other knife of like kind or description, or a pistol or fire-arms of any other kind or description, air gun, slung-shot, brass-knuckles, or other deadly or dangerous weapon, must, on conviction, be fined not less than one nor more than one hundred dollars.

William Logan Martin, Commissioner, The Code of Alabama, Adopted by Act of the General Assembly of the State of Alabama, Approved February 16, 1897, Entitled "An Act to Adopt a Code of Laws for the State Alabama " with Such

Statutes Passed at the Session of 1896-97, as are Required to be Incorporated Therein by Act Approved February 17, 1897; and with Citations to the Decisions of the Supreme Court of the State Construing or Mentioning the Statutes Page 1137, Image 1154 (Vol. 1, 1897) available at The Making of Modern Law: Primary Sources.

[License Taxes; From Whom and For What Business Required; Prices; County Levy,] Taxation, § 27. For dealers in pistols, or pistol cartridges, or bowie-knives, or dirk-knives, whether principal stock in trade or not, three hundred dollars. Any cartridges, whether called rifle or pistol cartridges, or by any other name, that can be used in a pistol, shall be deemed pistol cartridges within the meaning of this subdivision. Any person or firm who orders for another, or delivers any cartridges within this state, shall be deemed a dealer under this provision.

## ALASKA

Fred F. Barker, Compilation of the Acts of Congress and Treaties Relating to Alaska: From March 30, 1867, to March 3, 1905 139 1906.
That it shall be unlawful for any person to carry concealed about his person, in any manner whatever, any revolver, pistol, or other firearm, or knife (other than an ordinary pocket knife), or any dirk or dagger, slung shot, metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person.

1896-99 Alaska Sess. Laws 1270, An Act To Define And Punish Crimes In The District Of Alaska And To Provide A Code Of Criminal Procedure For Said District, chap. 6, § 117.
That it shall be unlawful for any person to carry concealed about his person in any manner whatever, any revolver, pistol, or other firearm, or knife (other than an ordinary pocket knife), or any dirk or dagger, slung shot, metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person.

## ARIZONA

Coles Bashford, The Compiled Laws of the Territory of Arizona, Including the Howell Code and the Session Laws From 1864 to 1871, Inclusive: To Which is Prefixed the Constitution of the United States, the Mining Law of the United States, and the Organic Acts of the Territory of Arizona and New Mexico Page 96, Image 102 (1871) available at The Making of Modern Law: Primary Sources, 1867.

6

An Act to prevent the improper use of deadly weapons, and the indiscriminate use of fire arms in the towns and villages of the territory. § 1. That any person in this Territory, having, carrying or procuring from another person, any dirk, dirk knife, bowie knife, pistol, gun or other deadly weapon, who shall, in the presence of two or more persons, draw or exhibit any of said deadly weapons in a rude, angry or threatening manner, not in necessary self defense, or who shall, in any manner, unlawfully use the same in any fight or quarrel, the person or persons so offending, upon conviction thereof in any criminal court in any county of this Territory, shall be fined in any sum not less than one hundred nor more than five hundred dollars, or imprisonment in the county jail not less than one nor more than six months, in the discretion of the court, or both such fine and imprisonment, together with the cost of prosecution.

1889 Ariz. Sess. Laws 16, An Act Defining And Punishing Certain Offenses Against The Public Peace, § 1.
If any person within any settlement, town, village or city within this territory shall carry on or about his person, saddle, or in his saddlebags, any pistol, dirk, dagger, slung shot, sword cane, spear, brass knuckles, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and in addition thereto, shall forfeit to the County in which his is convicted, the weapon or weapons so carried.

1893 Ariz. Sess. Laws 3, An Act To Regulate And Prohibit The Carrying Of Deadly Weapons Concealed, § 1.
It shall be unlawful for any person to have or carry concealed on or about his person any pistol or other firearm, dirk, dagger, slung-shot, sword cane, spear, brass knuckles, or other knuckles of metal, bowie knife or any kind of knife of weapon except a pocket-knife not manufactured and used for the purpose of offense and defense.

1901 Arizona 1251-53, Crimes Against the Public Peace, §§ 381, 385, 390.
§ 381. It shall be unlawful for any person (except a peace officer in actual service and discharge of his duty) , to have or carry concealed on or about his person, any pistol or other firearm, dirk, dagger, slung shot, sword cane, spear, brass knuckles or other knuckles of metal, bowie-knife or any kind of knife or weapon, except a pocket knife, not manufactured and used for the purpose of offense and defense.
§ 385. If any person within any settlement, town, village or city within this territory shall carry on or about his person, saddle, or in saddlebags, any pistol, dagger, slung-shot, sword-cane, spear, brass knuckles, bowie- knife or any other

7

kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and in addition shall forfeit to the county in which he is convicted the weapon or weapons so carried.

§ 390. Persons travelling may be permitted to carry arms within settlements or towns of the territory, for one half hour after arriving in such settlements or towns, and while going out of such towns or settlements; and sheriffs and constables of the various counties of this territory and their lawfully appointed deputies may carry weapons in the legal discharge of the duties . . .

1901 Ariz. Acts 1252, Crimes and Punishments, §§ 387, 391.

§ 387. If any person shall go into church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind or into a ball room, social party or social gathering, to any election precinct, on the day or days of any election, where any portion of the people of this territory are collected to vote at any election, or to any other place where people may be assembled to minister, or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass knuckles, bowie knife or any other kind of knife manufactured and sold for the purposes of offense or defense, he shall be punished by a fine not less than fifty or more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person.

§ 391. It shall be the duty of the keeper of each and every hotel, boarding house and drinking saloon, to keep posted in a conspicuous place in his bar room, or reception room . . . a plain notice to travelers to divest themselves of their weapons in accordance with section 382 . . .

## ARKANSAS

Slaves, in Laws of the Arkansas Territory 521 (J. Steele & J. M'Campbell, Eds., 1835).

Race and Slavery Based | Arkansas | 1835

§ 3. No slave or mulatto whatsoever, shall keep or carry a gun, powder, shot, club or other weapon whatsoever, offensive or defensive; but all and every gun weapon and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person and upon due proof made before any justice of the peace of the district [county] where such seizure shall be, shall by his order be forfeited to the seizor, for his own use, and moreover, every such offender shall have and

receive by order of such justice any number of lashes not exceeding thirty nine on his or her bare back well laid on for every such offense.

Josiah Gould A Digest of the Statutes of Arkansas All Laws of a General and Permanent Character in Force the Close of the Session of the General Assembly of 380 381–82. 1837.
Every person who shall wear any pistol, dirk, butcher or large knife, or a sword in a cane, concealed as a weapon, unless upon a journey, shall be adjudged guilty of a misdemeanor.

A DIGEST OF THE STATUTES OF ARKANSAS, Josiah Gould, Little Rock, 1858
Chap. 51, 381-382
SEC. 13. Every person who shall wear any pistol, dirk, butcher or large knife, or sword in cane, concealed as a weapon, unless upon a journey, shall be adjudged guilty of a misdemeanor, and upon conviction thereof, in the county in which the said offence shall have been committed, shall be fined in any sum not less than twenty-five dollars, nor more than one hundred dollars, one half to be paid into the county treasury, the other half to the informer, and shall also be imprisoned not less than one, nor more than six months. *Rev. Stat., chap. 44, div. 8, art. 1.*
https://books.googleusercontent.com/books/content?req=AKW5Qaf_vv6X7sO9Z6
NtIUMLtH0VYYI_0kkdJjZi44J3x-fRshyXb-
w4GoNceJqk1aEngPSsWbm_GphorW8KcXpNpJYr3imMv0MzFa74XTRuW8w
YP5SsQkMv-NYF0qyrpxY4Ju93WroetKla2dEcEZ-zvHiHp1M7zCcFgVXwk_8-
yRPuJFepuAgF63b6y-
Vq2whoCx3JOPhGO4Z8jGvABY3O_nC75TzRd0Js_3USMF2o4JkCHtxXVMfd9
ov-_--
WCuMBE_AprMdG6JSlGIDoTmlKbU4bHwaWwyQ6D_8aU2Ds4zFVdDUdOfQ

Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, in the Year of Our Independence the Sixty second, and of the State of Second Year Page 280, Image 295 (1838) available at The Making of Modern Law: Primary Sources.
Every person who shall wear any pistol, dirk, butcher or large knife, or a sword in a cane, concealed as a weapon, unless upon a journey, shall be adjudged guilty of a misdemeanor, and upon conviction thereof, in the county in which the said offence shall have been committed, shall be fined in any sum not less than twentyfive dollars, nor more than one hundred dollars, one half to be paid into the county treasury, the other half to the informer, and shall also be imprisoned not less than one, nor more than six months.

9

George Eugene Dodge, A Digest of the Laws and Ordinances of the City of Little
Rock, with the Constitution of State of Arkansas, General Incorporation Laws, and
All Acts of the General Assembly Relating to the City Page 230-231, Image 230-
231 (1871) available at The Making of Modern Law: Primary Sources.
Sentence Enhancement for Use of Weapon | Arkansas | 1871
City Ordinances, § 287. Whenever there shall be found upon the person of any one,
who has been found guilty of a breach of the peace, or for conduct calculated to
provoke a breach of the peace, any pistol, revolver, bowie-knife, dirk, rifle, shot
gun, slung-shot, colt, or knuckles of lead, brass or other metal; or when, upon trial,
evidence shall be adduced proving that such weapons were in the possession or on
the person of any one while in the act or commission of the act aforesaid, such
person shall be fined not less than twenty-five nor more than five hundred dollars,
in addition to the penalty for the breach of the peace aforesaid.

Act of Feb. 16, 1875,1874-75 Ark. Acts 156.
§ 1. That any person who shall wear or carry any pistol of any kind whatever, or
any dirk, butcher or bowie knife, or a sword or a spear in a cane, brass or metal
knucks, or razor, as a weapon, shall be adjudged guilty of a misdemeanor, and
upon conviction thereof, in the county in which said offense shall have been
committed, shall be fined in any sum not less than twenty-five nor more than one
hundred dollars, to be recovered by presentment or indictment in the Circuit Court,
or before any Justice of the Peace of the county wherein such offense shall have
been committed; Provided, That nothing herein contained shall be so construed as
to prohibit any person wearing or carrying any weapon aforesaid on his own
premises, or to prohibit persons traveling through the country, carrying such
weapons while on a journey with their baggage, or to prohibit any officer of the
law wearing or carrying such weapons when engaged in the discharge of his
official duties, or any person summoned by any such officer to assist in the
execution of any legal process, or any private person legally authorized to execute
any legal process to him directed.

1881 Ark. Acts 191, An Act to Preserve the Public Peace and Prevent Crime, chap.
XCVI (96), § §1-3.
§ 1. That any person who shall wear or carry, in any manner whatever, as a
weapon, any dirk or bowie knife, or a sword, or a spear in a cane, brass or metal
knucks, razor, or any pistol of any kind whatever, except such pistols as are used in
the army or navy of the United States, shall be guilty of a misdemeanor. Provided,
that officers whose duties require them to make arrests or to keep and guard
prisoners, together with the persons summoned by such officers to aid them in the

10

discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this act. Provided, further, that nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey or upon his own premises.

§ 2. Any person, excepting such officers, or persons on a journey, and on his premises, as are mentioned in section one of this act, who shall wear or carry any such pistol as is used in the army or navy of the United States, in any manner except uncovered and in his hand, shall be deemed guilty of a misdemeanor.

§ 3. Any person who shall sell, barter or exchange, or otherwise dispose of, or in any manner furnish to any person *any person* any dirk or bowie knife, or a sword or a spear in a cane, brass or metal knucks, or any pistol, of any kind whatever, except such as are used in the army or navy of the United States, and known as the navy pistol, or any kind of cartridge, for any pistol, or any person who shall keep any such arms or cartridges for sale, shall be guilty of a misdemeanor. https://cite.case.law/ark/83/26/

1923 Ark. Acts 379, An Act to Regulate the Ownership of Pistols and Revolvers, No. 430.

Be It Enacted by the People of the State or Arkansas:

From and after the passage of this Act, it shall be unlawful for any person to own or have in his custody or possession any pistol or revolver, except as herein provided:

Section 1. Any person having in his possession or custody any pistol or revolver, shall within 60 days from the approval of this Act, present such firearm to the county clerk of the county, where he resides, and it shall be the duty of the said county clerk to enter upon a separate record provided for that purpose, the name, age, place of residence, and color of the party, together with the make, calibre and number of said pistol or revolver.

## CALIFORNIA

1849 Cal. Stat. 245, An Act to Incorporate the City of San Francisco, § 127.
[I]f any person shall have upon him any pistol, gun, knife, dirk, bludgeon, or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined not more than one hundred dollars or imprisoned in the county jail not more than three months.

S. Garfielde, Compiled Laws of the State of California: Containing All the Acts of the Legislature of a Public and General Nature, Now in Force, Passed at the

11

Sessions of 1850-51-52-53. To Which are Prefixed the Declaration of Independence, the Constitutions of the United States and of California, the Treaty of Queretaro, and the Naturalization Laws of the United States Page 663-664, Image 682-683 (1853) available at The Making of Modern Law: Primary Sources.

Sentence Enhancement for Use of Weapon | California | 1853

Compiled Laws of California, § 127.

If any person shall be found having upon him or her any picklock, crow, key, bitt, or other instrument or tool, with intent feloniously to break and enter into any dwelling house, store, shop, warehouse, or other building containing valuable property, or shall be found in any of the aforesaid buildings with intent to steal any money, goods, and chattels, every person so offending shall, on conviction thereof, be imprisoned in the county jail not more than two years; and if any person shall have upon him any pistol, gun, knife, dirk, bludgeon, or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined not more than one hundred dollars or imprisoned in the county jail not more than three months.

William H. R. Wood, Digest of the Laws of California: Containing All Laws of a General Character Which were in Force on the First Day of January, 1858; Also, the Declaration of Independence, Constitution of the United States, Articles of Confederation, Kentucky and Virginia Resolutions of 1798-99, Acts of Congress Relative to Public Lands and Pre-Emptions. Together with Judicial Decisions, Both of the Supreme Court of the United States and of California, to Which are Also Appended Numerous Forms for Obtaining Pre-Emption and Bounty Lands, Etc., Etc. Page 334, Image 340 (1861) available at The Making of Modern Law: Primary Sources.

Crimes and Punishments, Art. 1904. That any person in this state having, carrying or procuring from another person any dirk, dirk-knife, bowie-knife, sword, sword-cane, pistol, gun or other deadly weapon, who shall, in the presence of two or more persons, draw or exhibit any of said deadly weapons in a rude, angry and threatening manner, not in necessary self-defense, or who shall, in any manner, unlawfully use the same, in any fight or quarrel, the person or persons so offending, upon conviction thereof in any criminal court in any county of this state, shall be fined in any sum not less than one hundred, nor more than five hundred dollars, or imprisonment in the county jail not less than one nor more than six months, at the discretion of the court, or both such fine and imprisonment, together with the costs of prosecution; which said costs shall, in all cases be computed and collected in the same manner as costs in civil cases. . . provided, nevertheless, that no sheriff, deputy sheriff, marshal, constable or other peace officer, shall be held to answer under the provisions of this act, for drawing or exhibiting any of the weapons herein-before mentioned, while in the lawful discharge of his or their duties. . .


Theodore Henry Hittell, The General Laws of the State of California, from 1850 to 1864, Inclusive: Being a Compilation of All Acts of a General Nature Now in Force, with Full References to Repealed Acts, Special and Local Legislation, and Statutory Constructions of the Supreme Court. To Which are Prefixed the Declaration of Independence, Constitution of the United States, Treaty of Guadalupe Hidalgo, Proclamations to the People of California, Constitution of the State of California, Act of Admission, and United States Naturalization Laws, with Notes of California Decisions Thereon Page 261, Image 272 (1868) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | California | 1864

An Act to Prohibit the Carrying of Concealed Weapons, § 1.

Every person not being peace-officer, provost-marshal, enrolling-officer, or officer acting under the laws of the United States in the department of the provost-marshal of this State, State and Federal assessors, collectors of taxes and licenses while in

13

the performance of official duties, or traveler, who shall carry or wear any dirk, pistol, sword in cane, slungshot, or other dangerous or deadly weapon concealed, shall, upon conviction thereof before any court of competent jurisdiction, be deemed guilty of a misdemeanor, and shall be imprisoned in the county jail for not less than thirty nor more than ninety days, or fined in any sum not less than twenty nor more than two hundred dollars. § 2. Such persons, and no others, shall be deemed travelers within the meaning of this act, as may be actually engaged in making a journey at the time.

William. M. Caswell, Revised Charter and Compiled Ordinances and Resolutions of the City of Los Angeles Page 85, Image 83 (1878) available at The Making of Modern Law: Primary Sources. 1878
Ordinances of the City of Los Angeles, § 36. In future, no persons, except peace officers, and persons actually traveling, and immediately passing through Los Angeles city, shall wear or carry any dirk, pistol, sword in a cane, slung-shot, or other dangerous or deadly weapon, concealed or otherwise, within the corporate limits of said city, under a penalty of not more than one hundred dollars fine, and imprisonment at the discretion of the Mayor, not to exceed ten days. It is hereby made the duty of each police officer of this city, when any stranger shall come within said corporate limits wearing or carrying weapons, to, as soon as possible, give them information and warning of this ordinance; and in case they refuse or decline to obey such warning by depositing their weapons in a place of safety, to complain of them immediately.

L. W. Moultrie, City Attorney, Charter and Ordinances of the City of Fresno, 1896 Page 37, Image 35 (1896) available at The Making of Modern Law: Primary Sources. Misdemeanors. § 53.
No junk-shop keeper or pawnbroker shall hire, loan or deliver to any minor under the age of 18 years any gun, pistol or other firearm, dirk, bowie-knife, powder, shot, bullets or any weapon, or any combustible or dangerous material, without the written consent of the parent or guardian of such minor.

L. W. Moultrie, Charter and Ordinances of the City of Fresno Page 30, Image 28 (1896) available at The Making of Modern Law: Primary Sources.
Ordinances of the City of Fresno, § 8.
Any person excepting peace officers and travelers, who shall carry concealed upon his person any pistol or firearm, slungshot, dirk or bowie-knife, or other deadly weapon, without a written permission (revocable at any time) from the president of the board of trustees, is guilty of a misdemeanor.

14

1917 Cal. Sess. Laws 221-225, An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another, § 5.

Carrying Weapons | California | 1917

§ 5. Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver, or other firearm, or any instrument or weapon commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb, or bombshell or any other dangerous or deadly instrument or weapon, is guilty of a felony. The carrying or possession of any of the weapons specified in this section by any person while committing, or attempting or threatening to commit a felony, or breach of the peace, or any act of violence against the person or property of another, shall be presumptive evidence of carrying or possessing such weapon with intent to use the same in violation of this section.

1923 Cal. Stat. 695 An Act to Control and Regulate the Possession, Sale and Use of Pistols, Revolvers, and Other Firearms Capable of Being Concealed Upon the Person

Dangerous or Unusual Weapons, Felons, Foreigners and Others Deemed Dangerous By the State | California | 1923

§ 1. On and after the date upon which this act takes effect, every person who within the State of California manufactures or causes to be manufactured, or who imports into the state, or who keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition, or who carries concealed upon his person any dirk or dagger, shall be guilty of a felony and upon a conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

§ 2. On and after the date upon which this act takes effect, no unnaturalized foreign born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the

15

State of California or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person.

## COLORADO

1862 Colo. Sess. Laws 56, An Act To Prevent The Carrying Of Concealed Deadly Weapons In The Cities And Towns Of This Territory, § 1.
If any person or persons shall, within any city, town, or village in this Territory, whether the same is incorporated or not, carry concealed upon his or her person any pistol, bowie knife, dagger, or other deadly weapon, shall, on conviction thereof before any justice of the peace of the proper county, be fined in a sum not less than five, nor more than thirty-five dollars.

1867 Colo. Sess. Laws 229, Criminal Code, § 149.
Carrying Weapons | Colorado | 1867
If any person or persons shall, within any city, town or village in this territory, whether the same is incorporated or not, carry concealed upon his or her person, any pistol, bowie-knife, dagger or other deadly weapon, such person shall, on conviction thereof before any justice of the peace of the proper county, be fined in any sum not less than five nor more than thirty-five dollars. The provision of this section shall not be construed to apply to sheriffs, constables and police officers, when in the execution of their official duties.

1876 Colo. Const. 30, art. II, § 13.
Post-Civil War State Constitutions | Colorado | 1876
That the right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when hereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.

1876 Colo. Sess. Laws 304, General Laws, § 154:
[I]f any person shall have upon him any pistol, gun, knife, dirk, bludgeon, or other offensive weapon, with intent to assault any person, such person, on conviction shall be fined in any sum not exceeding five hundred dollars, or imprisoned in the county jail no exceeding six months.

Edward O. Wolcott, The Ordinances of Georgetown [Colorado] Passed June 7th, A.D. 1877, Together with the Charter of Georgetown, and the Amendments Thereto: A Copy of the Patent Heretofore Issued to Georgetown by the

16

Government of the United States, and the Rules and Order of Business Page 100, Image 101 (1877) available at The Making of Modern Law: Primary Sources. Offenses Affecting Streets and Public Property, § 9.

If any person or persons, within the corporate limits of Georgetown, shall be found carrying concealed, upon his or her person, any pistol, bowie knife, dagger, or other deadly weapon, such person shall, on conviction thereof, be fined in a sum not less than five dollars, nor more than fifty dollars.

Colo. Rev. Stat 1774, Carrying Concealed Weapons—Penalty—Search Without Warrant—Jurisdiction of Justice, § 248. (1881)

No person, unless authorized so to do by the chief of police of a city, mayor of a town or the sheriff of a county, shall use or carry concealed upon his person any firearms, as defined by law, nor any pistol, revolver, bowie knife, dagger, sling shot, brass knuckles or other deadly weapon . . . .

1885 Colorado - General Assembly, 5th Session: 17-416, 170

AN ACT

TO AMEND CHAPTER TWENTY-FIVE, OF THE GENERAL STATUTES OF THE STATE OF COLORADO, ENTITLED "CRIMINAL CODE."

Be it enacted by the General Assembly of the State of Colorado:

SECTION I. Section one hundred and eighty two (182), of chapter XXV., of the General Statutes of the State of Colorado, entitled "Criminal Code," is hereby repealed, and the following shall stand in lieu thereof as section one hundred and eighty-two (182): "SEC. 182. If any person or persons shall, within any city, or town, or village in this State, whether the same be incorporated or not, carry concealed upon or about his person any pistol, bowie-knife, dagger, or other deadly weapon, such person shall, upon conviction thereof, be punished by a fine not less than fifty ($50) dollars, nor more than two hundred ($200) dollars, or imprisoned in the county jail for a term of not less than ten, nor more than sixty days, or both, in the discretion of the court; Provided, That this section shall not be construed to apply to sheriffs, constables, or other officers of the peace, while on duty." Approved April 10, 1885.

Isham White, The Laws and Ordinances of the City of Denver, Colorado Page 369, Image 370 (1886) available at The Making of Modern Law: Primary Sources.

Sentence Enhancement for Use of Weapon | Colorado | 1886

City of Denver, Slung Shot – Brass Knuckles, § 10.

Whenever there shall be found upon the person of anyone who is guilty of a breach of the peace, or of conduct calculated to provoke a breach of the peace, any slung shot, colt, or knuckles of lead, brass or other metal, or, when upon trial, evidence

17

shall be adduced proving that such weapons were in the possession or on the person of anyone while in the act of commission of the acts aforesaid, such person shall upon conviction be fined not less than twenty-five dollars nor more than three hundred dollars.

1891 Colo. Sess. Laws 129, 130
AN ACT TO AMEND SECTION ONE HUNDRED AND EIGHTY-TWO (182) OF CHAPTER TWENTY-FIVE (25) OF THE GENERAL STATUTES OF THE STATE OF COLORADO, ENTITLED "CRIMINAL CODE" BEING GENERAL SECTION EIGHT HUNDRED AND SEVENTY (870) AS THE SAME WAS AMENDED APRIL 10, 1885.
Be it enacted by the General Assembly of the State of Colorado:
SECTION 1. That Section 182 of Chapter XXV of the General Statutes of Colorado, entitled "Criminal Code" being general section 870, as the same was amended April 10, 1885, be, and the same is hereby amended so as to read as follows: SECTION 182. If any person, or persons shall within any city, town or village in this State, whether the same is incorporated or not carry concealed upon his, her or their person any pistol, revolver, derringer, bowie-knife, razor, dagger, sling-shot or other deadly weapon, such person, or persons shall upon conviction thereof before any police magistrate or justice of the peace, be punished by imprisonment in the county jail for a term not exceeding thirty days, or by a fine of not more than fifty dollars with costs or by both such fine and imprisonment, in the discretion of the court. . . .
All concealed weapons taken from parties violation [violating] this section, shall be forfeited to the county, and confiscated and sold at auction for the benefit of the school fund of the county in which the offense is committed.
Approved April 10th, 1891.

## CONNECTICUT

Charles Stoers Hamilton, Charter and Ordinances of the City of New Haven, Together with Legislative Acts Affecting Said City Page 164, Image 167 (1890) available at The Making of Modern Law: Primary Sources.
Good Order and Decency § 192.
Every person who shall carry in said City, any steel or brass knuckles, pistol, or any slung shot, stiletto or weapon of similar character, or shall carry any weapon concealed on his person without permission of the Mayor or Superintendent of Police in writing, shall, on conviction, pay a penalty of not less than five, nor more than fifty dollars for every such offense.

## DELAWARE

1797 Del. Laws 104, An Act For the Trial Of Negroes, ch. 43, § 6.
Race and Slavery Based | Delaware | 1797
And be it further enacted by the authority aforesaid, That if any Negro or Mulatto slave shall presume to carry any guns, swords, pistols, fowling pieces, clubs, or other arms and weapons whatsoever, without his master's special license for the same, and be convicted thereof before a magistrate, he shall be whipped with twenty-one lashes, upon his bare back.

1881 Del. Laws 987, An Act Providing for the Punishment of Persons Carrying Concealed Deadly Weapons, ch. 548, § 1.
That if any person shall carry concealed a deadly weapon upon or about his person other than an ordinary pocket knife, or shall knowingly sell a deadly weapon to a minor other than an ordinary pocket knife, such person shall, upon conviction thereof, be fined not less than twenty-five nor more than two hundred dollars or imprisoned in the county jail for not less than ten nor more than thirty days, or both at the discretion of the court: Provided, that the provisions of this section shall not apply to the carrying of the usual weapons by policemen and peace officers.

Revised Statutes of the State of Delaware, of Eight Hundred and Fifty-Two. As They Have Since Been Amended, Together with the Additional Laws of a Public and General Nature, Which Have Been Enacted Since the Publication of the Revised Code of Eighteen Fifty-Two. To the Year of Our Lord One Thousand Eight Hundred and Ninety-Three; to Which are Added the Constitutions of the United States and of this State, the Declaration of Independence, and Appendix Page 987, Image 1048 (1893) available at The Making of Modern Law: Primary Sources.
An Act Providing for the Punishment of Persons Carrying Concealed Deadly Weapons, § 1.
§ 1. That if any person shall carry concealed a deadly weapon upon or about his person other than an ordinary pocket knife, or shall knowingly sell a deadly weapon to a minor other than an ordinary pocket knife, such person shall, upon conviction thereof, be fined not less than twenty-five nor more than one hundred dollars or imprisoned in the county jail for not less than ten nor more than thirty days, or both at the discretion of the court: Provided, that the provisions of this section shall not apply to the carrying of the usual weapons by policemen and other peace officers.
§ 2. That if any person shall, except in lawful self-defense discharge any firearm in any public road in this State, shall be deemed guilty of a misdemeanor and upon

19

conviction thereof shall be punished by fine not exceeding fifty dollars or by imprisonment not exceeding one month, or both at the discretion of the court.

## DISTRICT OF COLUMBIA

1 William B. Webb The Laws of the Corporation of the of Washington Digested and Arranged under Appropriate in Accordance with a Joint Resolution of the City 418 (1868), Act of Nov. 18, 1858.

It shall not be lawful for any person or persons to carry or have concealed about their persons any deadly or dangerous weapons, such as dagger, pistol, bowie knife, dirk knife, or dirk, colt, slungshot, or brass or other metal knuckles within the City of Washington; and any person or persons who shall be duly convicted of so carrying or having concealed about their persons any such weapon shall forfeit and pay upon such conviction not less than twenty dollars nor more than fifty dollars; which fines shall be prosecuted and recovered in the same manner as other penalties and forfeitures accruing to the city are sued for and recovered: Provided, That the Police officers when on duty shall be exempt from such penalties and forfeitures.

An Act to Prevent the Carrying of Concealed Weapons, Aug. 10, 1871, reprinted in Laws of the District of Columbia: 1871-1872, Part II, 33 (1872).

Carrying Weapons | | 1871

Ch. XXV. Be in enacted by the Legislative Assembly of the District of Columbia, That it shall not be lawful for any person or persons to carry or have concealed about their persons any deadly or dangerous weapons, such as daggers, air-guns, pistols, bowie-knives, dirk-knives, or dirks, razors, razor-blades, sword-canes, slung-shots, or brass or other metal knuckles, within the District of Columbia; and any person or persons who shall be duly convicted of so carrying or having concealed about their persons any such weapons shall forfeit and pay, upon such a conviction, not less than twenty dollars nor more than fifty dollars, which fine shall be prosecuted and recovered in the same manner as other penalties and forfeitures are sued for and recovered: Provided, That the officers, non-commissioned officers, and privates of the United States army, navy, and marine corps, police officers, and members of any regularly organized militia company or regiment, when on duty, shall be exempt from such penalties and forfeitures.

Washington D.C. 27 Stat. 116 (1892)

CHAP. 159.–An Act to punish the carrying or selling of deadly or dangerous weapons within the District of Columbia, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That it shall not be lawful for any person or persons within the District of Columbia, to have concealed about their person any deadly or dangerous weapons, such as daggers, air-guns, pistols, bowie-knives, dirk knives or dirks, blackjacks, razors, razor blades, sword canes, slung shot, brass or other metal knuckles.

SEC. 2. That it shall not be lawful for any person or persons within the District of Columbia to carry openly any such weapons as hereinbefore described with intent to unlawfully use the same, and any person or persons violating either of these sections shall be deemed guilty of a misdemeanor, and upon conviction thereof shall, for the first offense, forfeit and pay a fine or penalty of not less than fifty dollars nor more than five hundred dollars, of which one half shall be paid to any one giving information leading to such conviction, or be imprisoned in the jail of the District of Columbia not exceeding six months, or both such fine and imprisonment, in the discretion of the court: Provided, That the officers, non-commissioned officers, and privates of the United States Army, Navy, or Marine Corps, or of any regularly organized Militia Company, police officers, officers guarding prisoners, officials of the United States or the District of Columbia engaged in the execution of the laws for the protection of persons or property, when any of such persons are on duty, shall not be liable for carrying necessary arms for use in performance of their duty: Provided, further, that nothing contained in the first or second sections of this act shall be so construed as to prevent any person from keeping or carrying about his place of business, dwelling house, or premises any such dangerous or deadly weapons, or from carrying the same from place of purchase to his dwelling house or place of business or from his dwelling house or place of business to any place where repairing is done, to have the same repaired, and back again: Provided further, That nothing contained in the first or-second sections of this act shall be so construed as to apply. to any person who shall have been granted a written permit to carry such weapon or weapons by any judge of the police court of the District of Columbia, and authority is hereby given to any such judge to grant such permit for a period of not more than one month at any one time, upon satisfactory proof to him of the necessity for the granting thereof; and further, upon the filing with such judge of a bond, with sureties to be approved by said judge, by the applicant for such permit, conditioned to the United States in such penal sum as said judge shall require for the keeping of the peace, save in the case of necessary self defense by such applicant during the continuance of said permit, which bond shall be put in suit by the United States for its benefit upon any breach of such condition.

SEC. 3. That for the second violation of the provisions of either of the preceding sections the person or persons offending shall be proceeded against by indictment

in the supreme court of the District of Columbia, and upon conviction thereof shall be imprisoned in the penitentiary for not more than three years.

SEC. 4. That all such weapons as hereinbefore described which may be taken from any person offending against any of the provisions shall, upon conviction of such person, be disposed of as may be ordered by the judge trying the case, and the record shall show any and all such orders relating thereto as a part of the judgment in the case.

SEC. 5. That any person or persons who shall, within the District of Columbia, sell, barter, hire, lend or give to any minor under the age of twenty-one years any such weapon as hereinbefore described shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, pay a fine or penalty of not less than twenty dollars nor more than one hundred dollars, or be imprisoned in the jail of the District of Columbia not more than three months. No person shall engage in or conduct  the business of selling, bartering, hiring, lending, or giving any weapon or weapons of the kind hereinbefore named without having previously obtained from the Commissioners of the District of Columbia a special license authorizing the conduct of such business by such person, and the said Commissioners are hereby authorized to grant such license, without fee therefor, upon the filing with them by the applicant therefor of a bond with sureties, to be by them approved, conditioned in such penal sum as they shall fix to the United States for the compliance by said applicant with all the provisions of this section; and upon any breach or breaches of said condition said bond shall be put in suit by said United States for its benefit, and said Commissioners may revoke said license. Any person engaging in said business without having previously obtained said special license shall be guilty of a misdemeanor and upon conviction thereof shall be sentenced to pay a fine of not less than one hundred dollars nor more than five hundred dollars, of which one half shall be paid to the informer, if any, whose information shall lead to the conviction of the person paying said fine. All persons whose business it is to sell barter, hire, lend or give any such weapon or weapons shall be and they hereby, are, required to keep a written register of the name and residence of every purchaser, barterer, hirer, borrower, or donee of any such weapon or weapons, which register shall be subject to the inspection of the major and superintendent of Metropolitan Police of the District of Columbia, and further to make a weekly report, under oath to said major and superintendent of all such sales, barterings, hirings, lendings or gifts. And one half of every fine imposed under this section shall be paid to the informer, if any, whose information shall have led to the conviction of the person paying said fine. Any police officer failing to arrest any person guilty in his sight or presence and knowledge, of any violation of any section of this act shall be fined not less than fifty nor more than five hundred dollars.

SEC 6. That all acts or parts of acts inconsistent with the provisions of this act be, and the same hereby are, repealed.

District of Columbia 1932:
1932, Public-No. 275-72D Congress
CHAPTER 465
H.R. 8754
AN ACT To Control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties to prescribe rules of evidence, and for other purposes.

DEFINITIONS

SECTION 1. "Pistol," as used in this Act, means any firearm with a barrel less than twelve inches in length. "Sawed-off shotgun" as used in this Act, means any shotgun with a barrel less than twenty inches in length. "Machine gun," as used in this Act, means any firearm which shoots automatically or semiautomatically more than twelve shots without reloading. . . .

SEC. 2. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than ten years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than fifteen years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than thirty years.

PERSONS FORBIDDEN TO POSSESS CERTAIN FIREARMS

SEC. 3. No person who has been convicted in the District of Columbia or elsewhere of a crime of violence shall own or have in his possession a pistol, within the District of Columbia.

CARRYING CONCEALED WEAPONS

SEC. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

EXCEPTIONS

SEC. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly

appointed law -enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

ISSUE OF LICENSES TO CARRY

SEC. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed. The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.

SEC. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of eighteen years.

TRANSFERS REGULATED

SEC. 8. No seller shall within the District of Columbia deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, except in the case of sales to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law enforcement officers, and, when delivered, said pistol shall be

24

securely wrapped and shall be unloaded. At the time of applying for the purchase of a pistol the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. The seller shall, within six hours after such application, sign and attach his address and deliver one copy to such person or persons as the superintendent of police of the District of Columbia may designate, and shall retain the other copy for six years. No machine gun, sawed-off shotgun, or

blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia. This section shall not apply to sales at wholesale to licensed dealers.

DEALERS TO BE LICENSED

SEC. 9. No retail dealer shall within the District of Columbia sell or expose for sale or have in his possession with intent to sell, any pistol, machine gun. sawed -oft shotgun, or blackjack without being licensed as hereinafter provided. No wholesale dealer shall, within the District of Columbia, sell, or have in his possession with intent to sell, to any person other than a licensed dealer, any pistol, machine gun, sawed -oil shotgun, or blackjack.

DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF

SEC. 10. The Commissioners of the District of Columbia may, in their discretion, grant licenses and may prescribe the form thereof, effective for not more than one year from date of issue, permitting the licensee to sell pistols, machine guns, sawed-off shotguns, and blackjacks at retail within the District of Columbia subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be subject to forfeiture and the licensee subject to punishment as provided in this Act. 1. The business shall be carried on only in the building designated in the license. 2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read. 3. No pistol shall be sold (a) if the seller has reasonable cause to believe that the purchaser is not of sound mind or is a drug addict or has been convicted in the District of Columbia or elsewhere of a crime of violence or is under the age of eighteen years, and (b) unless the purchaser is personally known to the seller or shall present clear evidence of his identity. No machine gun, sawed-off shotgun,

or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to

make such sale has been obtained
from the superintendent of police of the District of Columbia. 4. A true record shall be made in a book kept for the purpose the form of which may be prescribed by the Commissioners, of pistols, machine guns, and sawed-off shotguns in the possession of the licensee, which said record shall contain the date of purchase, the caliber, make, model, and manufacturer's number of the weapon, to which shall be added, when sold, the date of sale. 5. A true record in duplicate shall be made of every pistol, machine gun, sawed-off shotgun, and blackjack sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners of the District of Columbia and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other and shall contain the date of sale, the name, address, occupation, color, and place of birth of the purchaser, and, so far as applicable, the caliber, make, model, and manufacturer's number of the weapon, and a statement signed by the purchaser that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. One copy of said record shall, within seven days, be forwarded by mail to the superintendent of police of the District of Columbia and the other copy retained by the seller for six years. 6. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of said premises where it can readily be seen from the outside. No license to sell at retail shall be granted to anyone except as provided in this section.

FALSE INFORMATION FORBIDDEN

SEC. 11. No person, shall, in purchasing a pistol or in applying for a license to carry the same, or in purchasing a machine sawed-off shotgun, or blackjack within the District of Columbia, give false information or offer false evidence of his identity.

ALTERATION OF IDENTIFYING MARKS PROHIBITED

SEC. 12. No person shall within the District of Columbia change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark or identification on any pistol,
machine gun, or sawed-off shotgun. Possession of any pistol, machine gun, or sawed-off shotgun upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia: Provided, however, That nothing contained in this section shall apply to any officer or agent of any of the departments of the United States or the District of Columbia engaged in experimental work.

SEC. 13. This Act shall not apply to toy or antique pistols unsuitable for use as firearms.

SEC. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms: Provided, however, That machine guns, or sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen,

or other duly appointed law -enforcement officers, officers or employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securities, or other valuables, wholesale dealers

and retail dealers licensed under section 10 of this Act.

PENALTIES

SEC. 15. Any violation of any provision of this Act for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.

CONSTITUTIONALITY

SEC. 16. If any part of this Act is for any reason declared void, provision not to affect remainder, such invalidity shall not affect the validity of the remaining portions of this Act.

Approved, July 8, 1932.

https://www.loc.gov/resource/llsalvol.llsal_047/?sp=675&st=text&r=0.041,0.112,0.75,0.862,0


## FLORIDA

John P. Duval, Compilation of the Public Acts of the Legislative Council of the Territory of Florida, Passed Prior to 1840 Page 423, Image 425 (1839) available at The Making of Modern Law: Primary Sources, 1835.

An Act to Prevent any Person in this Territory from Carrying Arms Secretly. Be it Enacted by the Governor and Legislative Council of the Territory of Florida, That from and after the passage of this act, it shall not be lawful for any person in this Territory to carry arms of any kind whatsoever secretly, on or about their persons; and if any dirk, pistol, or other arm, or weapon, except a common pocket-knife, shall be seen, or known to be secreted upon the person of any one in this Territory, such person so offending shall, on conviction, be fined not exceeding five hundred dollars, and not less than fifty dollars, or imprisoned not more than six months, and

27

not less than one month, at the discretion of the jury: Provided, however, that this law shall not be so construed as to prevent any person from carrying arms openly, outside of all their clothes; and it shall be the duty of judges of the superior courts in this Territory, to give the matter contained in this act in special charge to the grand juries in the several counties in this Territory, at every session of the courts.

1838 Fla. Laws ch. 24, p. 36 (Feb. 10, 1838).

No. 24. An Act in addition to An Act, (approved January 30th, 1835) entitled An Act to prevent any person in this Territory from carrying arms secretly.

Section 1. Be it enacted by the Governor and Legislative Council of the Territory of Florida, That from and after the passage of this act, it shall not be lawful for any person or persons in this Territory to vend dirks, pocket pistols, sword canes, or bowie knives, until he or they shall have first paid to the treasurer of the county in which he or they intend to vend weapons, a tax of two hundred dollars per annum, and all persons carrying said weapons openly shall pay to the officer aforesaid a tax of ten dollars per annum; and it shall be the duty of said officer to give the parties so paying a written certificate, stating that they have complied with the provisions of this act. Four fifths of all monies so collected to be applied by the county courts to county purposes, the other fifth to be paid to the prosecuting attorney.

Sec. 2. Be it further enacted, That if any person shall be known to violate this act, he or they so offending, shall be subject to an indictment, and on conviction, to a fine of not less than two hundred nor exceeding five hundred dollars, at the discretion of the court.

Sec. 3. Be it further enacted, That it shall be the duty of the several Judges of the Superior Courts of this Territory, to give this act in charge to the grand juriors [sic] of their respective districts at each term of the court.

Passed 5th February 1838.—Approved 10th Feb. 1838.

https://www.google.com/books/edition/Acts_of_the_Legislative_Council_of_the_T/-LIwAQAAMAAJ?hl=en&gbpv=1&dq=%22vend+dirks,+pocket+pistols,+sword+canes,+or+bowie+knives%22&pg=PA36&printsec=frontcover

Fla. Act of Aug. 8, 1868, as codified in Fla. Rev. Stat., tit. 2, pt. 5 (1892) 2425.

Manufacturing or selling slung shot: Whoever manufactures, or causes to be manufactured, or sells or exposes for sale any instrument or weapon of the kind usually known as slung-shot, or metallic knuckles, shall be punished by imprisonment not exceeding six months, or by fine not exceeding one hundred dollars.

28

1868 Fla. Laws 2538, Persons Engaged in Criminal Offence, Having Weapons, chap. 7, § 10.

Sentence Enhancement for Use of Weapon | Florida | 1868

Whoever, when lawfully arrested while committing a criminal offense or a breach or disturbance of the public peace, is armed with or has on his person slung shot, metallic knuckles, billies, firearms or other dangerous weapon, shall be punished by imprisonment not exceeding three months, or by fine not exceeding one hundred dollars.

James F McClellan, A Digest of the Laws of the State of Florida: From the Year One Thousand Eight Hundred and Twenty-Two, to the Eleventh Day of March, One Thousand Eight Hundred and Eighty-One, Inclusive, Page 403, Image 419 (1881) available at The Making of Modern Law: Primary Sources. [1868]

Offences Against Public Peace, § 13.

Whoever shall carry arms of any kind whatever, secretly, on or about their person, or whoever shall have about or on their person any dirk, pistol or other arm or weapon, except a common pocket knife, upon conviction thereof shall be fined in a sum not exceeding one hundred dollars, or imprisoned in the county jail not exceeding six months.

1885 Fla. Laws 61-62

CHAPTER 3620-[No. 65.]

AN ACT to Provide a Punishment for Carrying Concealed Weapons and for the Trial of such Offence, Giving the Circuit Court jurisdiction of the same.

SECTION 1. Whoever shall carry arms of any kind whatever secretly on or about their persons or whoever shall have concealed on or about their person any dirk, pistol or other arm or weapon, except a common pocket knife, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding one hundred dollars or imprisoned in the county jail not exceeding six months.

SEC. 2. That the Circuit Court of this State shall have exclusive original jurisdiction to try and determine all cases of violation of this act, and it shall be the duty of the Circuit Judges of the several Circuits to charge the Grand Juries specially upon the crime of carrying concealed weapons, and the State Attorneys of the several Circuits shall receive a fee of ten dollars for each and every conviction, under this act, to be paid as other conviction fees.

SEC. 3. It shall be the duty of the Sheriff or other officer making any arrest under this act to take possession of any arms found upon the person arrested under this act and retain the same until after the trial of such person, and if lie be convicted, then the said arm or arms shall be forfeited, and the Sheriff shall sell the same at

public sale and account for and pay over the proceeds of this sale [the] same as in case of fines collected, but if such person be acquitted then the said arm or arms shall be returned to him.

SEC. 4. That all laws and parts of laws be and the same are hereby repealed in so far they are in conflict with the provisions hereof.

Approved February 12, 1885.

https://heinonline.org/HOL/Page?collection=ssl&handle=hein.ssl/ssfl0257&id=77&men_tab=srchresults

1887 Fla. Laws 164-165, An Act to Establish the Municipality of Jacksonville Provide for its Government and Prescribe it's jurisdiction and powers, chap. 3775, § 4.

The Mayor and City Council shall within the limitations of this act have power by ordinance to . . . regulate and license the sale of firearms and suppress the carrying of concealed weapons. . . .

Florida Act of Aug. 6, 1888, chap. 1637, subchap. 7, § 10, as codified in Fla. Rev. State., tit. 2, pt. 5 (1892) 2423.

Persons Engaged in criminal offense having weapons. – Whoever, when lawfully arrested while committing a criminal offense or a breach or disturbance of the public peace is armed or has on his person slung-shot, metallic knuckles, billies, firearms or other dangerous weapon, shall be punished by imprisonment not exceeding one year and by fine not exceeding fifty dollars.

## GEORGIA

Lucius Q.C. Lamar, A Compilation of the Laws of the State of Georgia, Passed by the Legislature since the Year 1810 to the Year 1819, Inclusive. Comprising all the Laws Passed within those Periods, Arranged under Appropriate Heads, with Notes of Reference to those Laws, or Parts of Laws, which are Amended or Repealed to which are Added such Concurred and Approved Resolutions, as are Either of General, Local, or Private Moment. Concluding with a Copious Index to the Laws, a Separate one to the Resolutions Page 599, Image 605 (1821) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | Georgia | 1816

Offences Against the Public Peace, (1816) § 19.

If any person shall be apprehended, having upon him or her any picklock, key, crow, jack, bit or other implement, with intent feloniously to break and enter into any dwelling-house, ware-house, store, shop, coach-house, stable, or out-house, or shall have upon him any pistol, hanger, cutlass, bludgeon, or other offensive

30

weapon, with intent feloniously to assault any person, or shall be found in or upon any dwelling-house, ware-house, store, shop, coach-house, stable, or out-house, with intent to steal any goods or chattels; every such person shall be deemed a rogue and vagabond, and on conviction, shall be sentenced to undergo an imprisonment in the common jail of the county, or in the penitentiary, at hard labour, for such period of time as the jury shall recommend to the court.

1837 Ga. Acts 90, An Act to Guard and Protect the Citizens of this State, Against the Unwarrantable and too Prevalent use of Deadly Weapons, §§ 1–4.

§ 1 . . . it shall not be lawful for any merchant, or vender of wares or merchandize in this State, or any other person or persons whatsoever, to sell, or offer to sell, or to keep, or to have about their person or elsewhere, any of the hereinafter described weapons, to wit: Bowie, or any other kinds of knives, manufactured and sold for the purpose of wearing, or carrying the same as arms of offence or defense, pistols, dirks, sword canes, spears, &c., shall also be contemplated in this act, save such pistols as are known and used as horseman's pistols, &c.

§ 2. And be it further enacted by the authority aforesaid, That any person or persons within the limits of this State, violating the provisions of this act, except as hereafter excepted, shall, for each and every such offence, be deemed guilty of a high misdemeanor, and upon trial and conviction thereof, shall be fined, in a sum not exceeding five hundred dollars for the first offence, nor less than one hundred dollars at the direction of the Court; and upon a second conviction, and every after conviction of a like offence, in a sum not to exceed one thousand dollars, nor less than five hundred dollars, at the discretion of the Court.

§ 3. And be it further enacted by the authority aforesaid, That it shall be the duty of all civil officers, to be vigilant in carrying the provisions of this act into full effect, as well also as Grand Jurors, to make presentments of each and every offence under this act, which shall come under their knowledge.

§4. And be it further enacted by the authority aforesaid, That all fines and forfeitures arising under this act, shall be paid into the county Treasury, to be appropriated to county purposes: Provided, nevertheless, that the provisions of this act shall not extend to Sheriffs, Deputy Sheriffs, Marshals, Constables, Overseers or Patrols, in actual discharge of their respective duties, but not otherwise: Provided, also, that no person or persons, shall be found guilty of violating the before recited act, who shall openly wear, externally, Bowie Knives, Dirks, Tooth Picks, Spears, and which shall be exposed plainly to view: And provided, nevertheless, that the provisions of this act shall not extend to prevent venders, or any other persons who now own and have for sale, any of the aforesaid weapons, before the first day of March next.

31

1860 Ga. Laws 56, An Act to add an additional Section to the 13th Division of the Penal Code, making it penal to sell to or furnish slaves or free persons of color, with weapons of offence and defence; and for other purposes therein mentioned, § 1.

[A]ny person other than the owner, who shall sell or furnish to any slave or free person of color, any gun, pistol, bowie knife, slung shot, sword cane, or other weapon used for the purpose of offence or defense, shall, on indictment and conviction, be fined by the Court in a sum not exceeding five hundred dollars, and imprisoned in the common Jail of the county not exceeding six months . . .

1870 Ga. Laws 421

An Act to preserve the peace and harmony of the people of this State, and for other purposes.

SECTION 1. Be it enacted, etc., That, from and immediately after the passage of this act, no person in said State of Georgia be permitted or allowed to carry about his or her person any dirk, bowie-knife, pistol or revolver, or any kind of deadly weapon, to any court of justice, or any election ground or precinct, or any place of public worship, or any other public gathering in this State, except militia muster-grounds.

SEC. 2. Be it further enacted, That if any person or persons shall violate any portion of the above recited section of this act, he, she or they shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than twenty nor more than fifty dollars for each and every such offense, or imprisonment in the common jail of the county not less than ten nor more than twenty days, or both, at the discretion of the court.

SEC. 3. All laws and parts of laws militating against this act are hereby repealed.

Approved October 18, 1870.

R. H. Clark, The Code of the State of Georgia (1873) § 4528 – Deadly weapons not to be carried in public places

No person in this State is permitted or allowed to carry about his or her person, any dirk, bowie knife, pistol or revolver, or any kind of deadly weapon, to any Court of justice, or any election ground, or precinct, or any place of public worship, or any other public gathering in this State, except militia muster grounds; and if any person or persons shall violate any portion of this section, he, she or they shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than twenty nor more than fifty dollars for each and every such offense, or imprisonment in the common jail of the county not less than ten nor more than twenty days, or both, at the discretion of the Court.

32

1880 Ga. Laws 151, An Act to make Penal the Intentional Pointing, or Aiming of Fire-arms at Another, whether Loaded or Unloaded, § 1.

. . . from and after the passage of this Act, any person who shall intentionally point or aim a gun or pistol, whether loaded or unloaded, at another not in a sham-battle by the military, and not in self-defense, or in defense of habitation, property, or person, or other instances standing upon like footing of reason and justice, shall be guilty of a misdemeanor . . . .

https://heinonline.org/HOL/Page?handle=hein.ssl/ssga0183&id=151&collection=ssl&index=ssl/ssga

1884-85 Ga. Laws Ch. 457, p. 30 [state property tax valuation]
"The value of guns, pistols, bowie-knives and such articles?"[1]

## HAWAII

1852 Haw. Sess. Laws 19, Act to Prevent the Carrying of Deadly Weapons
Dangerous or Unusual Weapons | Hawaii | 1852
§ 1. Any person not authorized by law, who shall carry, or be found armed with, any bowie-knife, sword-cane, pistol, air-gun, slung-shot or other deadly weapon, shall be liable to a fine of no more than Thirty, and no less than Ten Dollars, or in default of payment of such fine, to imprisonment at hard labor, for a term not exceeding two months and no less than fifteen days, upon conviction of such offense before any District Magistrate, unless good cause be shown for having such dangerous weapons: and any such person may be immediately arrested without warrant by the Marshal or any Sheriff, Constable or other officer or person and be lodged in prison until he can be taken before such Magistrate.

1913 Haw. Rev. Laws ch. 209, § 3089, Carrying Deadly Weapons
Dangerous or Unusual Weapons | Hawaii | 1913
§ 3089. Persons not authorized; punishment. Any person not authorized by law, who shall carry, or be found armed with any bowie-knife, sword-cane, pistol, air-gun, slung-shot, or other deadly weapon, shall be liable to a fine of not more than Two Hundred and Fifty Dollars and not less than Ten Dollars, or in default of payment of such fine, to imprisonment of a term not exceeding one year, nor less than three months, upon conviction for such offense, unless good cause be shown

---

[1] Also appearing in 1886 Ga. L. chap. 101, pp. 26, 28; 1888 Ga. L. chap. 103, p. 261; 1889 Ga. L. chap. 640, p. 993; town of Jessup, 1888 Ga. L. chap. 103, p. 261; charter for Cedartown, 1889 Ga. L. chap. 640, p. 993.

for having such dangerous weapon; and any such person may be immediately arrested without warrant by the high sheriff, or any sheriff, policeman, or other officer or person.

## IDAHO

1864 Idaho Second Sess. Laws 298, 303-304
SEC. 40. That any person in this territory, having, carrying, or procuring from another person, any dirk, dirk-knife, sword, sword-cane, pistol, gun or other deadly weapon, who shall in the presence of two or more persons, draw or exhibit any of said deadly weapons, in a rude, angry, and threatening manner, not in necessary self defense, or who shall, in any manner unlawfully use the same in any fight or quarrel, the person or persons so offending, upon conviction thereof in any criminal court in any county in this territory, shall be fined in any sum not less than one hundred nor more than five hundred dollars, or imprisoned in the county jail not less than one nor more than six months, at the discretion of the court, or both such fine and imprisonment, together with the costs of prosecution. . . .

Crimes and Punishments, in Compiled and Revised Laws of the Territory of Idaho 354 (M. Kelly, Territorial Printer 1875).
Carrying Weapons | Idaho | 1875
§ 133. If any person shall have found upon him or her any pick-lock, crow-key, bit or other instrument or tool, with intent feloniously to crack and enter into any dwelling-house, store, shop, warehouse, or other building containing valuable property, or shall be found in the aforesaid buildings with intent to steal any money, goods and chattels, every person so offending shall, on conviction thereof, be imprisoned in the Territorial prison for a term not less than one year nor more than five years; and if any person shall have upon him or her any pistol, gun, knife, dirk, bludgeon, or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined not more than one hundred dollars, or imprisoned in the county jail not more than three months.

Charter and Revised Ordinances of Boise City, Idaho. In Effect April 12, 1894 Page 118-119, Image 119-120 (1894) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Idaho | 1879
Carrying Concealed Weapons, § 36.
Every person not being a sheriff, deputy sheriff, constable or other police officer, who shall carry or wear within the incorporated limits of Boise City, Idaho, any bowie knife, dirk knife, pistol or sword in cane, slung-shot, metallic knuckles, or

34

other dangerous or deadly weapons, concealed, unless such persons be traveling or setting out on a journey, shall, upon conviction thereof before the city magistrate of said Boise City, be fined in any sum not exceeding twenty-five dollars for each offense, or imprisoned in the city jail for not more than twenty days, or by both such fine and imprisonment.

1888 Idaho Fifteenth Sess. Laws 23
CARRYING DEADLY WEAPONS.
AN ACT REGULATING THE USE AND CARRYING OF DEADLY WEAPONS IN IDAHO TERRITORY.
Be it enacted by the Legislative Assembly of the Territory of Idaho, as follows:
SECTION 1. That it is unlawful for any person, except United States officials, officials of Idaho Territory, County officials, Peace officers, Guards of any jail, and officers or employees of any Express Company on duty, to carry, exhibit or flourish any dirk, dirk-knife, sword, sword-cane, pistol, gun or other-deadly weapons, within the limits or confines of any city, town or village or in any public assembly of Idaho Territory. Every person so doing is guilty of a misdemeanor and is punishable by fine not less than fifty dollars nor more than one hundred dollars, or by imprisonment in the county jail for a period of not less than twenty days nor more than fifty days, or by both such fine and imprisonment.
SEC. 2. One half of all fines collected under the provisions of this act shall be paid to the officer making the arrest, which amount shall be payment in full for his services. The other one half shall he paid into the Common School Fund of the county, after deducting the necessary costs of the prosecution of the case.
SEC. 3. All acts or parts of acts in conflict with this act are hereby repealed.
SEC. 4. This act shall take effect and be in force from and after its passage.
Approved February 4, 1889.

1909 Id. Sess. Laws 6, An Act To Regulate the Use and Carrying of Concealed Deadly Weapons and to Regulate the Sale or Delivery of Deadly Weapons to Minors Under the Age of Sixteen Years to Provide a Penalty for the Violation of the Provisions of this Act, and to Exempt Certain Persons, § 1.
Carrying Weapons | Idaho | 1909
If any person, (excepting officials of a county, officials of the State of Idaho, officials of the United States, peace officers, guards of any jail, any officer of any express company on duty), shall carry concealed upon or about his person any dirk, dirk knife, bowie knife, dagger, slung shot, pistol, revolver, gun or any other deadly or dangerous weapon within the limits or confines of any city, town or village, or in any public assembly, or in any mining, lumbering , logging, railroad, or other construction camp within the State of Idaho . . . .

35

## ILLINOIS

Mason Brayman, Revised Statutes of the State of Illinois: Adopted by the General Assembly of Said State, at Its Regular Session, Held in the Years A. D. 1844-'5: Together with an Appendix Containing Acts Passed at the Same and Previous Sessions, Not Incorporated in the Revised Statutes, but Which Remain in Force Page 176, Image 188 (1845) available at The Making of Modern Law: Primary Sources.
Sentence Enhancement for Use of Weapon | Illinois | 1845
Criminal Jurisprudence, § 139. If any person shall be found,, having upon him or her, any pick-lock, crow, key, bit, or other instrument or tool, with intent feloniously to break and enter into any dwelling house, store, warehouse, shop or other building containing valuable property, or shall be found in any of the aforesaid buildings with intent to steal any goods and chattels, every such person so offending, shall, on conviction, be deemed a vagrant, and punished by confinement in the penitentiary, for any term not exceeding two years. And if any person shall have upon him any pistol, gun, knife, dirk, bludgeon or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined, in a sum not exceeding one hundred dollars, or imprisoned, not exceeding three months.

1867 Ill. Act 650, Chapter VI
City Council, Powers
Thirty-eighth.-To regulate or prohibit the carrying or wearing by any person, under his clothes or concealed about his person. any pistol, or colt, or slung-shot, or cross knuckles, or knuckles of brass, lead or other metal, or bowie-knife, dirk-knife, dirk or dagger or any other dangerous or deadly weapon, and to provide for the confiscation or sale of such weapons.

Harvey Bostwick Hurd, The Revised Statutes of the State of Illinois. A. D. 1874. Comprising the Revised Acts of 1871-2 and 1873-4, Together with All Other General Statutes of the State, in Force on the First Day of July, 1874 Page 360, Image 368 (1874) available at The Making of Modern Law: Primary Sources.
Disorderly Conduct: Disturbing the Peace, § 56.
Whoever, at a late and unusual hour of the night time, willfully and maliciously disturbs the peace and quiet of any neighborhood or family, by loud or unusual noises, or by tumultuous or offensive carriage, threatening, traducing, quarreling, challenging to fight or fighting, or whoever shall carry concealed weapons, or in a

threatening manner display any pistol, knife, slungshot, brass, steel or iron knuckles, or other deadly weapon, day or night, shall be fined not exceeding $100.

Consider H. Willett, Laws and Ordinances Governing the Village of Hyde Park [Illinois] Together with Its Charter and General Laws Affecting Municipal Corporations; Special Ordinances and Charters under Which Corporations Have Vested Rights in the Village. Also, Summary of Decisions of the Supreme Court Relating to Municipal Corporations, Taxation and Assessments Page 64, Image 64 (1876) available at The Making of Modern Law: Primary Sources.
Misdemeanors, § 39.
No person, except peace officers, shall carry or wear under their clothes, or concealed about their person, any pistol, revolver, slung-shot, knuckles, bowie-knife, dirk-knife, dirk, dagger, or any other dangerous or deadly weapon, except by written permission of the Captain of Police.

Ordinance No. 29: Concerning the Carrying of Concealed Weapons, THE NASHVILLE JOURNAL, Mar. 26, 1880 at 4. (Nashville, IL).
Ordinance No. 29.
Concerning the carrying of Concealed Weapons.
*Be it ordained by the City Council of the City of Nashville, Illinois:—*
SEC. 1. That it shall be unlawful for any person to weare or carry under his clothes, or concealed upon his person, or in a threatening manner display any pistol, slung-shot, cross knuckles of lead, brass or other metal, bowie knife, dirk or dagger, or any knife resembling a bowie knife, or any other dangerous, or deadly weapon, instrument or thing within the limits of the city of Nashville.
   Any one violating the provision of this section shall forfit and pay to the city of Nashville a sum not less than 20.00 nor more than $200 and costs of suit for each offence.
SEC. 2. Provided that nothing in the proceeding section shall be construed so as to prohibit any United States, State, County or City Officer from carrying and wearing such weapons as may be necessary in the proper discharge of his duty, or any person aiding in the apprehension of supposed criminals. Provided however that such person have a written permit, signed by the Mayor and City Clerk, and provided, also that the Mayor may issue written permits to such persons as in his judgement he may think necessary for the safety and protection to carry such arms revocable at the pleasure of the Mayor. The same however to be signed by the Mayor and City Clerk, for which permit the person applying for the same shall pay to the City Clerk the sum of fifty cents for his own use. Permits to be good one year from the date unless sooner revoked by the Mayor.
   Adopted March 24th, 1880, and filed in the Clerk's office.

37

Harvey Bostwick Hurd, Late Commissioner, The Revised Statutes of the State of Illinois. 1882. Comprising the "Revised Statutes of 1874," and All Amendments Thereto, Together with the General Acts of 1875, 1877, 1879, 1881 and 1882, Being All the General Statutes of the State, in Force on the First Day of December, 1882 Page 375, Image 392 (1882) available at The Making of Modern Law: Primary Sources. [1881]

Deadly Weapons: Selling or Giving to Minor. § 54b.

Whoever, not being the father, guardian, or employer or the minor herein named, by himself or agent, shall sell, give, loan, hire or barter, or shall offer to sell, give, loan, hire or barter to any minor within this state, any pistol, revolver, derringer, bowie knife, dirk or other deadly weapon of like character, capable of being secreted upon the person, shall be guilty of a misdemeanor, and shall be fined in any sum not less than twenty-five dollars ($25), nor more than two hundred ($200).

Article XLIII. Parks and Public Grounds, The Municipal Code of Chicago (1881). 1690. All persons are forbidden to carry firearms or to throw stones or other missiles within any one of the public parks.  All persons are forbidden to cut, break or in any way injure or deface the trees, shrubs, plants, turf or any of the buildings, fences, bridges or other construction or property within or upon any of the said parks.

1881 Ill. Act of April 16, 1881, as codified in Ill. Stat. Ann. Crim. Code, chap. 38 REGULATING THE TRAFFIC IN DEADLY WEAPONS

1. HAVING IN POSSESSION OR SELLING. § 1. That whoever shall have in his possession, or sell**,** give or loan, hire or barter, or whoever shall offer to sell, give, loan, hire or barter, to any person within this State, any slung-shot or metallic knuckles, or other deadly weapon of like character, or any person in whose possession such weapons shall be found, shall be guilty of a misdemeanor, and upon conviction, shall be fined in any sum not less than ten dollars ($10), nor more than two hundred dollars ($200).

2. SELLING OR GIVING TO MINOR.§ 2. Whoever, not being the father, guardian or employer of the minor herein named, by himself or agent, shall sell, give loan, hire or barter, or shall offer to sell**,** give, loan, hire or barter to ani, minor within this State, any pistol, revolver, derringer, Bowie knife, dirk or other deadly weapon **of** like character, capable of being secreted upon the person, shall be guilty of a misdemeanor, and shall be fined In any sum not less than twenty-five dollars ($25), nor more than two hundred dollars ($200).

3. REGISTER TO BE KEPT—WHAT IT SHALL CONTAIN. § 3. All persons dealing in deadly weapons hereinbefore mentioned, at retail within this State, shall

keep a register of all such weapons sold or given away by them. Such register shall contain the date of the sale or gift, the name and age of the person to whom the weapon is sold or given, the price of the said weapon, and the purpose for which it is purchased or obtained. The said register shall be in the following form [number of weapon, to whom sold or given, age of purchaser, kind and description of weapon, for what purpose purchased or obtained, price of weapon]

Said register, shall be kept open for the inspection of the public, and all persons who may wish to examine the same, may do so at all reasonable times during business hours. A failure to keep such register, or to allow an examination of the same, or to record therein any sale or gift of a deadly weapon, or tie keeping of a false register, shall be a misdemeanor, and shall subject the offender to a fine of not less than twenty-five dollars ($25), nor more than two hundred dollars ($200.)

4. CARRYING CONCEALED WEAPONS. § 4. Whoever shall carry a concealed weapon upon or about his person, of the character in this act specified, or razor as a weapon, or whoever, in a threatening or boisterous manner, shall display or flourish any deadly weapon, shall be guilty of a misdemeanor, and shall be fined in any sum not less than twenty-five dollars (25), nor more than two hundred dollars ($200.)

LAKE, THE REVISED ORDINANCES OF THE TOWN, ch. 32, §§ 1-9 (Beach, Barnard & Co. 1882).

Chapter XXXII.

CONCEALED WEAPONS.

   SECTION 1. It shall be unlawful for any person within the limits of the town to carry or wear under his clothes, or concealed about his person, any pistol, colt or slung shot, cross knuckles, or knuckles of lead, brass or other metal, or bowie knife, dirk knife, or dirk, razor or dagger, or any other dangerous or deadly weapon.

   § 2. Any such weapon or weapons duly adjudged by the police magistrate, or any justice of the peace of said town, to have been worn or carried by any person, in violation of the first section of this chapter, shall be forfeited or confiscated to the said Town of Lake, and shall be so adjudged.

   § 3. Any policeman of The Town of Lake may within the limits of said town without a warrant arrest any person or persons whom such policeman may find in the act of carrying or wearing under their clothes or concealed about their persons, any pistol, or colt, or slung shot, or cross knuckles, or knuckles of lead, brass or other metal, or bowie knife, dirk knife, or dirk, or dagger, or razor or any other dangerous or deadly weapon, and detain him, her or them in the town jail until a summons or warrant can be procured on complaint made (under oath or affirmation) for the trial of such person or persons, and for the seizure and

39

confiscation of such of the weapons above referred to as such person or persons may be found in the act of carrying or wearing under their clothes, or concealed about their persons.

§ 4. Upon complaint made, under oath or affirmation, to any magistrate or justice of the peace in said town, that any person has been guilty of violating any of the provisions of section 1 of this chapter, a summons or warrant shall issue for the summoning or arrest of the offender or offenders, returnable forthwith; upon the return of such summons or warrant, such magistrate or justice shall proceed to the hearing and determination of the matter, and if it shall be adjudged that such person or persons has or have incurred any of the penalties fixed by this chapter, such magistrate or justice of the peace shall so adjudge, and order that the weapon or weapons, concerning the carrying or wearing of which such penalty shall have been incurred, shall be confiscated to The Town of Lake.

§ 5. Any person or persons violating any of the provisions of section 1 of this chapter shall pay a fine of not less than five dollars nor more than fifty dollars, in the discretion of the magistrate or court before whom such conviction shall be had.

§ 6. The prohibitions of this chapter shall not apply to the officers or members of the police force of said town when on duty, nor to any officer of any court whose duty may be to serve warrants or to make arrests; nor to persons whose business or occupation may seem to require the carrying of weapons for their protection, and who shall have obtained from the president of the board of trustees a license so to do, as hereinafter provided.

§ 7. The president may grant to so many and such persons as he may think proper licenses to carry concealed weapons, and may revoke any and all of such licenses at his pleasure.

§ 8. Applications for such licenses shall be made to the clerk, and when granted, the person applying therefor shall pay to the clerk, for the use of the town, the sum of two dollars, and thereupon a license shall be issued by the town clerk, and signed by the president.

§ 9. Every such license shall state the name, age, occupation and residence of the person to whom it is granted, and shall expire on the thirtieth day of June next following.

MONMOUTH, MUNICIPAL CODE, art. 6, §§ 654-662 (Review Book & Job Print 1883).
"ARTICLE VI.
CONCEALED WEAPONS.
654. It shall be unlawful for any person, within the corporate limits of the city, to carry or wear under his clothes, or concealed about his person, any pistol, colt or

slung shot, cross knuckles, or knuckles of lead, brass or other metal, or bowie knife, dirk knife, or dirk, razor or dagger, or other dangerous or deadly weapon.

655. Any such weapon or weapons duly adjudged by any police magistrate or justice of the peace of said city to have been worn or carried by any person, in violation of the first section of this article, shall be forfeited or confiscated to the said city of Monmouth and shall be so adjudged.

656. Any policeman of the city of Monmouth may within the limits of said city without a warrant arrest any person or persons whom such policeman may find in the act of carrying or wearing under their clothes or concealed about their persons, any pistol, or colt, or slung shot, or cross knuckles, or knuckles of lead, brass or other metal, or bowie knife, dirk knife, or dirk, or dagger, or any other dangerous or deadly weapon, and detain him, her or them in custody until a summons or warrant can be procured on complaint made (under oath or affirmation) for the trial of such person or persons, and for the seizure and confiscation of such of the weapons above referred to as such person or persons may be found in the act of carrying or wearing under their clothes, or concealed about their persons.

657. Upon complaint made, under oath or affirmation, to any magistrate or justice of the peace in said city, that any person has been guilty of violating any of the provisions of section 656 of this article, a summons or warrant shall issue for the summoning or arrest of the offender or offenders, returnable forthwith; upon the return of such summons or warrant, such magistrate or justice shall proceed to the hearing and determination of the matter, and if it shall be adjudged that such person or persons has or have incurred any of the penalties fixed by this article, such magistrate or justice of the peace shall so adjudge, and order that the weapon or weapons, concerning the carrying or wearing of which such penalty shall have been incurred, shall be confiscated to the city of Monmouth.

658. Any person or persons violating any of the provisions of this article shall pay a fine of not less than three dollars nor more than fifty dollars.

659. The prohibitions of this article shall not apply to the officers or members of the police force of said city when on duty, nor to any officer of any court whose duty may be to serve warrants or to make arrests; nor to persons whose business or occupation may seem to require the carrying of weapons for their protection, and who shall have obtained from the mayor a permit so to do, as hereinafter provided.

660. The mayor may grant to so many, and such persons as he may think proper, permits to carry concealed weapons, and may revoke any and all of such permits at his pleasure.

661. Applications for such permits shall be made to the mayor, and when granted the person applying therefor shall pay to the city treasurer the sum of fifty cents, and thereupon a permit shall be issued by the city clerk and signed by the mayor.

41

662. Every such permit shall state the name, age, occupation and residence of the person to whom it is granted, and shall expire on the first day of April next following."

Revised Ordinances of the City of Danville [Illinois] Page 66, Image 133 (1883) available at The Making of Modern Law: Primary Sources.
Ordinances of the City of Danville. Concealed Weapons. § 22.
Whoever shall carry concealed upon or about his person any pistol, revolver, derringer, bowie-knife, dirk, slung-shot, metallic knuckles, or a razor, as a weapon, or any other deadly weapon of like character, capable or being concealed upon the person, or whoever shall in a threatening or boisterous manner, flourish or display the same, shall be fined not less than one dollar, nor more than one hundred dollars; and in addition to the said penalty shall, upon the order of the magistrate before whom such conviction is had, forfeits the weapon so carried to the city.

Illinois Act of Apr. 16, 1881, as codified in Ill. Stat. Ann., Crim. Code, chap. 38 (1885) 88. Possession or sale forbidden, § 1.
Be it enacted by the people of the state of Illinois represented in the General Assembly. That whoever shall have in his possession, or sell, or give or loan, hire or barter, or whoever shall offer to sell, give loan, have or barter, to any person within this state, any slung shot or metallic knuckles, or other deadline weapon of like character, or any person in whose possession such weapons shall be found, shall be guilty of a misdemeanor . . .

1885 Ill. Act 771, Concealed Weapon – Flourishing weapon, ch. 38, § 4.
Whoever shall carry a concealed weapon upon or about his person of the character in this Act specified, or razor as a weapon, or whoever, in a threatening or boisterous manner, shall display or flourish any deadly weapon, shall be guilty of a misdemeanor and shall be fined in any sum not less than twenty-five dollars ($25) nor more than two hundred dollars ($200).

## INDIANA

1804 Ind. Acts 108, A Law Entitled a Law Respecting Slaves, § 4.
And be it further enacted, That no slave or mulatto whatsoever shall keep or carry any gun, powder, shot, club or other weapon whatsoever, offensive or defensive, but all and every gun weapon and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person and upon due proof thereof made before any justice of the peace of the district where such seizure shall be, shall by his order be forfeited to the seizor, for his use and moreover every such

42

offender shall have and receive by order of such justice any number of loashes not exceeding thirty nine on his or her bare back, well laid for every such offense.

1819 Ind. Acts 39, An Act to Prohibit the Wearing of Concealed Weapons. 1820. Be it enacted by the General Assembly of the State of Indiana, That any person wearing any dirk, pistol, sword in cane, or any other unlawful weapon, concealed, shall be deemed guilty of a misdemeanor, and on conviction thereof, by presentment or indictment, shall be fined in any sum not exceeding one hundred dollars, for the use of county seminaries: Provided however, that this act shall not be so construed as to affect travellers.

1831 Ind. Acts 192, Fifteenth Session, CHAPTER XXVI.
SEC. 58. That every person, not being a traveller, who shall wear or carry any dirk, pistol, sword in a cane, or other dangerous weapon concealed, shall upon conviction thereof, be fined in any sum not exceeding one hundred dollars. https://heinonline.org/HOL/Page?collection=ssl&handle=hein.ssl/ssin0165&id=192&men_tab=srchresults

1855 Ind. Acts 153, An Act To Provide For The Punishment Of Persons Interfering With Trains or Railroads, chap. 79, § 1.
That any person who shall shoot a gun, pistol, or other weapon, or throw a stone, stick, clubs, or any other substance whatever at or against any locomotive, or car, or train of cars containing persons on any railroad in this State, shall be deemed guilty of a misdemeanor . . .

1859 Ind. Acts 129, An Act to Prevent Carrying Concealed or Dangerous Weapons, and to Provide Punishment Therefor.
§ 1. Be it enacted by the General Assembly of the State of Indiana, That every person not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword in cane, or any other dangerous or deadly weapon concealed, or who shall carry or wear any such weapon openly, with the intent or avowed purpose of injuring his fellow man, shall, upon conviction thereof, be fined in any sum not exceeding five hundred dollars.

1875 Ind. Acts 62, An Act Defining Certain Misdemeanors, And Prescribing Penalties Therefore, § 1.

That if any person shall draw or threaten to use any pistol, dirk, knife, slung shot, or any other deadly or dangerous weapon upon any other person he shall be deemed guilty of a misdemeanor, and upon conviction therefor, shall be fined in any sum not less than one nor more than five hundred dollars, to which may be added imprisonment in the county jail not to exceed six months; That the provisions of this act shall not apply to persons drawing or threatening to use such dangerous or deadly weapons in defense of his person or property, or in defense of those entitled to his protection by law.

The Revised Statutes of Indiana: Containing, Also, the United States and Indiana Constitutions and an Appendix of Historical Documents. Vol. 1 Page 366, Image 388 (1881) available at The Making of Modern Law: Primary Sources.
Sensitive Places and Times | Indiana | 1881
Crimes. § 1957. Attacking Public Conveyance. 56. Whoever maliciously or mischievously shoots a gun, rifle, pistol, or other missile or weapon, or throws a stone, stick, club, or other substance whatever, at or against any stage-coach, locomotive, railroad-car, or train of cars, or street-car on any railroad in this State, or at or against any wharf-boat, steamboat, or other water-craft, shall be imprisoned in the county jail not more than one year nor less than thirty days, and fined not more than one hundred dollars nor less than ten dollars.

1905 Ind. Acts 677, Public Conveyance—Attacking, § 410.
Sensitive Places and Times | Indiana | 1905
Whoever maliciously or mischievously shoots a gun, rifle, pistol or other weapon, or throws a stone, stick, club or any other substance whatever, at or against any stage coach, or any locomotive, railroad car, or train of cars, street car, or interurban car on any railroad in this state, or at or against any wharf-boat, steamboat, or other watercraft, shall be imprisoned in the county jail not less than thirty days nor more than one year, and fined not less than ten dollars nor more than one hundred dollars.

1905 Ind. Acts 688, Weapon— Furnishing to Minor, § 450.
It shall be unlawful for any person to sell, barter or give to any other person under the age of twenty-one years any pistol, dirk or bowie-knife, slung-shot, knucks or other deadly weapon that can be worn or carried concealed upon or about the person, or to sell¸ barter or give to any person under the age of twenty-one years any cartridges manufactured and designed to be used in a pistol or revolver. Any person who shall violate any of the provisions of this section shall be deemed

44

guilty of a misdemeanor, and, on conviction hall be fined not less than five dollars nor more than fifty dollars.

## IOWA

S. J. Quincy, Revised Ordinances of the City of Sioux City. Sioux City, Iowa Page 62, Image 62 (1882) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Iowa | 1882
Ordinances of the City of Sioux City, Iowa, § 4.
No person shall, within the limits of the city, wear under his clothes, or concealed about his person, any pistol, revolver, slung-shot, cross-knuckles, knuckles of lead, brass or other metal, or any bowie-knife, razor, billy, dirk, dirk-knife or bowie-knife, or other dangerous weapon. Provided, that this section shall not be so construed as to prevent any United States, State, county, or city officer or officers, or member of the city government, from carrying any such weapon as may be necessary in the proper discharge of his official duties.

Geoffrey Andrew Holmes, Compiled Ordinances of the City of Council Bluffs, and Containing the Statutes Applicable to Cities of the First-Class, Organized under the Laws of Iowa Page 206-207, Image 209-210 (1887) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Iowa | 1887
Carrying Concealed Weapons Prohibited, § 105.
It shall be unlawful for any person to carry under his clothes or concealed about his person, or found in his possession, any pistol or firearms, slungshot, brass knuckles, or knuckles of lead, brass or other metal or material , or any sand bag, air guns of any description, dagger, bowie knife, or instrument for cutting, stabbing or striking, or other dangerous or deadly weapon, instrument or device; provided that this section shall not be construed to prohibit any officer of the United States, or of any State, or any peace officer, from wearing and carrying such weapons as may be convenient, necessary and proper for the discharge of his official duties.

William H. Baily, The Revised Ordinances of Nineteen Hundred of the City of Des Moines, Iowa Page 89-90, Image 89-90 (1900) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Iowa | 1900
Ordinances City of Des Moines, Weapons, Concealed, § 209.
It shall be unlawful for any person to carry under his clothes or concealed about his person, or found in his possession, any pistol or other firearms, slungshot, brass knuckles, or knuckles of lead, brass or other metal or material, or any sand bag, air

guns of any description, dagger, bowie knife, dirk knife, or other knife or instrument for cutting, stabbing or striking, or other dangerous or deadly weapon, instrument or device. Provided, that this section shall not be construed to prohibit any officer of the United States or of any State, or any peace officer from wearing or carrying such weapons as may be convenient, necessary and proper for the discharge of his official duties.

1913 Iowa Acts 307, ch. 297, § 2
§ 1. It shall be unlawful for any person, except as hereinafter provided, to go armed with and have concealed upon his person a dirk, dagger, sword, pistol, revolver, stiletto, metallic knuckles, picket billy, sand bag, skull cracker, slung-shot, or other offensive and dangerous weapons or instruments concealed upon his person.

1929 Iowa Acts 90, Carrying Firearms in Motor Vehicles, § 30.
No person shall carry a gun or any firearms, except a pistol or revolver, in or on a motor vehicle unless the same be unloaded in both barrels and magazine, and taken down or contained in a case.

## KANSAS

C. B. Pierce, Charter and Ordinances of the City of Leavenworth, with an Appendix Page 45, Image 45 (1863) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Kansas | 1862
An Ordinance Relating to Misdemeanors, § 23.
For carrying or having on his or her person in a concealed manner, any pistol, dirk, bowie knife, revolver, slung shot, billy, brass, lead or iron knuckles, or any other deadly weapon within this city, a fine not less than three nor more than one hundred dollars.

Samuel Kimball, Charter, Other Powers, and Ordinances of the City of Lawrence Page 149, Image 157 (1866) available at The Making of Modern Law: Primary Sources, 1863.
Nuisances, § 10. Any person who shall in this city have or carry concealed or partially concealed, upon his person, any pistol, bowie knife or other deadly weapon, shall, on conviction, be fined not less than one nor more than ten dollars; Provided, This section shall not apply to peace officers of the city or state. The carrying of a weapon in a holster, exposed to full view, shall not be deemed a concealed or partially concealed weapon under this section.

46

1866 Kan. Sess. Laws, 6th Legislature, Regular Session, Ch. 64, 159-160
Lawrence
Thirty-first. To prevent and restrain riots, routs, noises, disturbances or disorderly
assemblies in any street, house or place in the city; to regulate, prevent and punish
the discharge of fire-arms, rockets, powder, fire-works, or any other dangerously
combustible material, in the streets, lots, grounds, alleys, or about or in the vicinity
of any buildings; to regulate, prevent and punish the carrying of concealed
weapons; to arrest, regulate, punish, fine or set at work all vagrants and persons
found in said city, without visible means of support or some legitimate business

1867 Kan. Sess. Laws 25
CHAPTER XII.
ARMS.-PREVENT CARRYING OF.
AN ACT to prevent the carrying of Deadly Weapons.
Be it enacted by the Legislature of the State of Kansas:
SECTION 1. Any person who is not engaged in any legitimate business, any
person under the influence of intoxicating drink, and any person who has ever
borne arms against the Government of the United States, who shall be found
within the limits of this State, carrying on his person a pistol, bowie-knife, dirk or
other deadly weapon, shall be subject to arrest upon charge of misdemeanor; and
upon conviction shall be fined in a sum not exceeding one hundred dollars, or by
imprisonment in the county jail not exceeding three months, or both, at the
discretion of the court. . . .
Approved, February 23d, 1867

1868 Kan. Sess. Laws 378
The General Statutes of the State of Kansas, to Which the Constitutions of the
United State of Kansas, Together with the Organic Act of the Territory of Kansas,
the Treaty Ceding the Territory of Louisiana to the United States, and the Act
Admitting Kansas into the Union are Prefixed Page 378, Image 387 (1868)
available at The Making of Modern Law: Primary Sources, 1868.
Crimes and Punishments, § 282. Any person who is not engaged in any legitimate
business, any person under the influence of intoxicating drink, and any person who
has ever borne arms against the government of the United States, who shall be
found within the limits of this state, carrying on his person a pistol, bowie-knife,
dirk or other deadly weapon, shall be subject to arrest upon the charge of
misdemeanor, and upon conviction shall be fined in a sum not exceeding one
hundred dollars, or by imprisonment in the county jail not exceeding three months,
or both, at the discretion of the court.

47

1872 Kan. Sess. Laws 210; Ch. 100; Cities of the second class.
SEC. 62. The council may prohibit and punish the carrying of fire arms, or other deadly weapons, concealed or otherwise, and may arrest and imprison, fine or set at work all vagrants and persons found in said city without visible means of support, or some legitimate business.

Revised Ordinances of the City of Salina, Together with the Act Governing Cities of the Second Class: Also a Complete List of the Officers of Salina During its Organization as a Town and City of the Second and Third Class Page 99, Image 100 (1879) available at The Making of Modern Law: Primary Sources. 1879 Ordinances of the City of Salina, An Ordinance Relating to the Carrying of Deadly Weapons, § 1. That it shall be unlawful for any person to carry on or about his person any pistol, bowie knife, dirk, or other deadly or dangerous weapon, anywhere within the limits of the city of Salina, save and except as hereinafter provided. § 2. This ordinance shall not apply to cases when any person carrying any weapon above mentioned is engaged in the pursuit of any lawful business, calling or employment and the circumstances in which such person is placed at the time aforesaid, are such as to justify a prudent man in carrying such weapon, for the defense of his person, property or family, nor to cases where any person shall carry such weapon openly in his hands, for the purpose of sale, barter, or for repairing the same, or for use in any lawful occupation requiring the use of the same. § 3. Any person violating any of the provisions of this ordinance shall, upon conviction thereof before the police court, be fined in any sum not less that twenty-five nor more than one hundred dollars.

1881 Kan. Sess. Laws 92, c. 37, § 24.
The Council shall prohibit and punish the carrying of firearms, or other dangerous or deadly weapons, concealed or otherwise, and cause to be arrested and imprisoned, fined or set to work, all vagrants, tramps, confidence men and persons found in said city without visible means of support or some legitimate business.

1883 Kan. Sess. Laws 159, An Act To Prevent Selling, Trading Or Giving Deadly Weapons Or Toy Pistols To Minors, And To Provide Punishment Therefor, §§ 1-2.
§ 1. Any person who shall sell, trade, give, loan or otherwise furnish any pistol, revolver, or toy pistol, by which cartridges or caps may be exploded, or any dirk, bowie knife, brass knuckles, slung shot, or other dangerous weapons to any minor, or to any person of notoriously unsound mind, shall be deemed guilty of a

misdemeanor, and shall upon conviction before any court of competent jurisdiction, be fined not less than five nor more than one hundred dollars.
§ 2. Any minor who shall have in his possession any pistol, revolver or toy pistol, by which cartridges may be exploded, or any dirk, bowie-knife, brass knuckles, slung shot or other dangerous weapon, shall be deemed guilty of a misdemeanor, and upon conviction before any court of competent jurisdiction shall be fined not less than one nore more than ten dollars.

O. P. Ergenbright, Revised Ordinances of the City of Independence, Kansas: Together with the Amended Laws Governing Cities of the Second Class and Standing Rules of the City Council Page 162, Image 157 (1887) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Kansas | 1887
Weapons, § 27. Any person who in this city shall draw any pistol or other weapon in a hostile manner, or shall make any demonstration or threat of using such weapon on or against any person; or any person who shall carry or have on his or her person, in a concealed manner, any pistol, dirk, bowie-knife, revolver, slung-shot, billy, brass, lead, or iron knuckles, or any deadly weapon, within this city, shall be fined not less than five dollars, nor more than one hundred dollars: Provided, that this ordinance shall not be so construed as to prohibit officers of the law while on duty from being armed.

Bruce L. Keenan, Book of Ordinances of the City of Wichita Published by Authority of a Resolution Adopted by the City Council April 24, 1899, under the Direction of Judiciary Committee and City Attorney, and Formally Authorized by Ordinance No. 1680 Page 46, Image 70 (1900) available at The Making of Modern Law: Primary Sources. 1899
Ordinances of the City of Wichita, Carrying Unconcealed Deadly Weapons, § 2. Any person who shall in the city of Wichita carry unconcealed, any fire-arms, slungshot, sheath or dirk knife, or any other weapon, which when used is likely to produce death or great bodily harm, shall upon conviction, be fined not less than one dollar nor more than twenty-five dollars. Using or Carrying Bean Snapper, § 3. Any person who shall, in the city of Wichita, use or carry concealed or unconcealed, any bean snapper or like articles shall upon conviction be fined in any sum not less than one dollar nor more than twenty-five dollars. Carrying Concealed Deadly Weapons, § 4. Any person who shall in the city of Wichita, carry concealed about his person any fire-arm, slung shot, sheath or dirk knife, brass knuckles, or any weapon, which when used is likely to produce death or great bodily harm, shall upon conviction, be fined in any sum not exceeding one hundred dollars.

49

## KENTUCKY

1798 Ky. Acts 106. No negro, mulatto, or Indian whatsoever shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive but all and every gun, weapon and ammunition found in the possession or custody of any negro, mulatto or Indian may be seized by any person and upon due proof thereof made before any justice of the peace of the county where such seizure shall be shall by his order, be forfeited to the seizor for his own use, and moreover every such offender shall have and receive by order of such justice any number of lashes not exceeding thirty nine on his or her back, well laid for every such offense.

KY. REV. STAT., ch. 375, § 33 (Johnston & Pleasants 1810) (Passed 1801).
   "Sec. 33. No person, great or small, of what condition soever he may be, except the ministers of justice in executing their office, and such as may be in their company assisting them, shall be so hardy to come before the justices of any court, or either of their ministers of justice, doing their office, with force and arms, on pain to forfeit their arms to the commonwealth, and of being fined and imprisoned at the discretion of a jury."

1813 Ky. Acts 100, An Act to Prevent Persons in this Commonwealth from Wearing Concealed Arms, Except in Certain Cases, ch. 89, § 1.
Be it enacted by the General Assembly of the Commonwealth of Kentucky, that any person in this Commonwealth, who shall hereafter wear a pocket pistol, dirk, large knife, or sword in a cane, concealed as a weapon, unless when travelling on a journey, shall be fined . . .

1853 Ky. Acts 186, An Act to Prohibit the Carrying of Concealed Deadly Weapons, Ch. 1020. 1854.
Sec 1. Be it enacted by the General Assembly of the Commonwealth of Kentucky, That if any person shall hereafter carry concealed any deadly weapons, other than an ordinary pocket knife, except as provided in the next section, he shall be fined on the first conviction not less than fifth nor more than one hundred dollars, and on any subsequent conviction not less than one hundred nor more than five hundred dollars.
Sec. 2. That the carrying of concealed deadly weapons shall be legal in the following cases: 1. Where the person has reasonable grounds to believe his person, or the person of some of his family, or his property, is in danger from violence or crime. 2. Where sheriffs, constables, marshals, and policemen carry such weapons as are necessary to their protection in the efficient discharge of their duty. 3. Where

50

persons are required by their business or occupation to travel during the night, the carrying concealed deadly weapons during such travel.

Sec. 3. This act shall be given in charge by the judges to the grand juries.

1859 Ky. Acts 245, An Act to Amend An Act Entitled "An Act to Reduce to One the Several Acts in Relation to the Town of Harrodsburg, § 23.

If any person, other than the parent or guardian, shall sell, give or loan, any pistol, dirk, bowie knife, brass knucks, slung-shot, colt, cane-gun, or other deadly weapon, which is carried concealed, to any minor, or slave, or free negro, he shall be fined fifty dollars.

## LOUISIANA

1813 La. Acts 172, An Act Against Carrying Concealed Weapons, and Going Armed in Public Places in an Unneccessary Manner, § 1.

Carrying Weapons | Louisiana | 1813

Be it enacted by the senate and house of representatives of the state of Louisiana, in general assembly convened, That from and after the passage of this act, any person who shall be found with any concealed weapon, such as a dirk, dagger, knife, pistol, or any other deadly weapon concealed in his bosom, coat, or in any other place about him that do not appear in full open view, any person so offending, shall on conviction thereof before any justice of the peace, be subject to pay a fine . . . .

Henry A. Bullard & Thomas Curry, 1 A New Digest of the Statute Laws of the State of Louisiana, from the Change of Government to the Year 1841 at 252 (E. Johns & Co., New Orleans, 1842).

Carrying Weapons | Louisiana | 1842

[A]ny person who shall be found with any concealed weapon, such as a dirk, dagger, knife, pistol, or any other deadly weapon concealed in his bosom, coat, or in any other place about him, that do not appear in full open view, any person so offending, shall, on conviction thereof, before an justice of the peace, be subject to pay a fine not to exceed fifty dollars, nor less than twenty dollars . . . .

Louisiana 1855 law 1855 La. L. Chap. 120, Sec. 115, p. 148

Sec. 115, Be it further enacted, &c., That whoever shall carry a weapon or weapons concealed on or about his person, such as pistols, bowie knife, dirk, or any other dangerous weapon, shall be liable to prosecution by indictment or presentnient, and on conviction for the first offence shall be fined not less than two hundred and fifty dollars nor more than five hundred dollars, or imprisonment for

51

one month; and for the second offence not less than five hundred dollars nor more than one thousand dollars, or imprisonment in the parish prison at the discretion of the court, not to exceed three months, and that it shall be the duty of the Judges of the District Courts in this State to charge the Grand Jury, specially as to this section.

https://babel.hathitrust.org/cgi/pt?id=osu.32437123281277&view=1up&seq=300&q1=Bowie

1870 La. Acts 159–60, An Act to Regulate the Conduct and to Maintain the Freedom of Party Election . . . , § 73.
Subject(s): Sensitive Places and Times
[I]t shall be unlawful for any person to carry any gun, pistol, bowie knife or other dangerous weapon, concealed or unconcealed, on any day of election during the hours the polls are open, or on any day of registration or revision of registration, within a distance of one-half mile of any place of registration or revision of registration; any person violating the provisions of this section shall be deemed guilty of a misdemeanor; and on conviction shall be punished by a fine of not less than one hundred dollars, and imprisonment in the parish jail not less than one month . . . .

La. Const. of 1879, art. III.
Post-Civil War State Constitutions | Louisiana | 1879
A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be abridged. This shall not prevent the passage of laws to punish those who carry weapons concealed.

## MAINE

An Act to Prevent Routs, Riots, and Tumultuous assemblies, and the Evil Consequences Thereof, reprinted in CUMBERLAND GAZETTE (Portland, MA.), Nov. 17, 1786, at 1. On October 26, 1786 the following was passed into law by the Massachusetts Assembly: That from & after the publication of this act, if any persons, to the number of twelve, or more, being armed with clubs or other weapons; or if any number of persons, consisting of thirty, or more, shall be unlawfully, routously, riotously or tumultuously assembled, any Justice of the Peace, Sheriff, or Deputy ... or Constable ... shall openly make [a] proclamation [asking them to disperse, and if they do not disperse within one hour, the officer is] ... empowered, to require the aid of a sufficient number of persons in arms ... and if any such person or persons [assembled illegally] shall be killed or wounded, by reason of his or their resisting the persons endeavoring to disperse or seize them, the said Justice, Sheriff, Deputy-Sheriff, Constable and their assistants, shall be indemnified, and held guiltless.

1821 Me. Laws 285, ch. 76, § 1.
Be it enacted by the Senate, and House of Representatives, in Legislature assembled, That it shall be within the power, and be the duty of every Justice of the Peace within this county, to punish by fine not exceeding five dollars, all assaults and batteries that are not of a high and aggravated nature, and to examine into all homicides, murders, treasons, and felonies done and committed in this county, and commit to prison all persons guilty, or suspected to be guilty of manslaughter, murder, treason or other capital offence; and to cause to be staid and arrested, all affrayers, rioters, disturbers or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this State, or such others as may utter any menaces or threatening speeches; and upon view of such Justice, confession of the delinquent or other legal conviction of any such offence, shall require of the offender to fund sureties to appear and answer for his offence, at the Supreme Judicial Court, or Circuit Court of Common Pleas, next to be held within or for the same county at the discretion of the Justice, and as the nature or circumstances of the case may require;

The Revised Statutes of the State of Maine, Passed October 22, 1840; To Which are Prefixed the Constitutions of the United States and of the State of Maine, and to Which Are Subjoined the Other Public Laws of 1840 and 1841, with an Appendix Page 709, Image 725 (1847) available at The Making of Modern Law: Primary Sources.
Justices of the Peace, § 16.

53

Any person, going armed with any dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without a reasonable cause to fear an assault on himself, or any of his family or property, may, on the complaint of any person having cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term, not exceeding one year, with the right of appeal as before provided.

1841 Me. Laws 709, ch. 169, Title XII, § 16.
*The Revised Statutes of the State of Maine, passed October 22, 1840*
SECT. 15. Whoever, in the presence of any magistrate, mentioned in the second section of this chapter, or before any court of record, shall make any affray or threaten to kill or beat another, or commit any violence against his person or property, or shall contend, with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, or being of the good behavior for a term, not exceeding three months, and, in case of refusal, may be committed to prison as before directed.
SECT. 16. Any person, going armed with any dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without a reasonable cause to fear an assault on himself, or any of his family or property, may, on the complaint of any person having cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term, not exceeding one year, with the right of appeal as before provided.
https://books.googleusercontent.com/books/content?req=AKW5QackIo9b0lWJJiw
gYw4j9rTykSiPPMmiPWWAC8qLnHfxKOCmGJI73nLNzytyCaLhZK8EAcPEG
MuUjd22tY_5j80XftZ-
J_lNMZ3z2lMXJ8_iVF4ZySk6ICZrB4XYmEW251SmutYF3JKpInz_7cNt7GU6
DMgeJ3lSDGcRjrGcpvILEXJPG9_OOmt6PApz3MU57RTpIAQ2j3_Dm613aFZ
ArHK-fl0BBkU14AGTeEWGIBxXXwE8OAsSegF8NfSMm-WyW4g-
eorbGccozHvqhXnnWpdTRQdxZSCPW28fXDw0XZtHu4QRSDQ

The Revised Statutes of the State of Maine, Passed August 29, 1883, and Taking Effect January 1, 1884 Page 928, Image 955 (1884) available at The Making of Modern Law: Primary Sources.
Prevention of Crimes, § 10.
Whoever goes armed with any dirk, pistol, or other offensive and dangerous weapon, without just cause to fear an assault on himself, family, or property, may, on complaint of any person having cause to fear an injury or breach of the peace, be required to find sureties to keep the peace for a term not exceeding one year, and in case of refusal, may be committed as provided in the preceding sections.

54

## MARYLAND

The Laws Of Maryland, With The Charter, The Bill Of Rights, The Constitution Of The State, And Its Alterations, The Declaration Of Independence, And The Constitution Of The United States, And Its Amendments Page 465, Image 466 (1811) available at The Making of Modern Law: Primary Sources.
Sentence Enhancement for Use of Weapon | Maryland | 1809 If any person shall be apprehended, having upon him or her any picklock, key, crow, jack, bit or other implement, with an intent feloniously to break and enter into any dwelling-house, ware-house, stable or out-house, or shall have upon him or her any pistol, hanger, cutlass, bludgeon, or other offensive weapon, with intent feloniously to assault any person, or shall be found in or upon any dwelling-house, warehouse, stable or out-house, or in any enclosed yard or garden, or area belonging to any house, with an intent to steal any goods or chattels, every such person shall be deemed a rouge and vagabond, and, on being duly convicted thereof, shall be sentenced to undergo a confinement in the said penitentiary for a period of time not less than three months nor more than two years, to be treated as law prescribes.

1872 Md. Laws 57, An Act To Add An Additional Section To Article Two Of The Code Of Public Local Laws, Entitled "Anne Arundel County," Sub-title "Annapolis," To Prevent The Carrying Of concealed Weapons In Said City, § 246.
Carrying Weapons | Maryland | 1872
It shall not be lawful for any person to carry concealed, in Annapolis, whether a resident thereof or not, any pistol, dirk-knife, bowie-knife, sling-shot, billy, razor, brass, iron or other metal knuckles, or any other deadly weapon, under a penalty of a fine of not less than three, nor more than ten dollars in each case, in the discretion of the Justice of the Peace, before whom the same may be tried, to be collected. . .

John Prentiss Poe, The Maryland Code : Public Local Laws, Adopted by the General Assembly of Maryland March 14, 1888. Including also the Public Local Acts of the Session of 1888 incorporated therein Page 1457, Image 382 (Vol. 2, 1888) available at The Making of Modern Law: Primary Sources.
Sensitive Places and Times | Maryland | 1874
Election Districts–Fences. § 99.
It shall not be lawful for any person in Kent county to carry, on the days of election, secretly or otherwise, any gun, pistol, dirk, dirk-knife, razor, billy or bludgeon; and any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and on conviction thereof before any justice of the peace of said county, shall be fined not less than five nor more than twenty dollars, and

on refusal to pay said fine shall be committed by such justice of the peace to the jail of the county until the same shall be paid.

John Prentiss Poe, The Maryland Code. Public Local Laws, Adopted by the General Assembly of Maryland March 14, 1888. Including also the Public Local Acts of the Session of 1888 Incorporated Therein Page 522-523, Image 531-532 (Vol. 1, 1888) available at The Making of Modern Law: Primary Sources.
Sentence Enhancement for Use of Weapon | Maryland | 1884
City of Baltimore, § 742.
Whenever any person shall be arrested in the city of Baltimore, charged with any crime or misdemeanor, or for being drunk or disorderly, or for any breach of the peace, and shall be taken before any of the police justices of the peace of the said city, and any such person shall be found to have concealed about his person any pistol, dirk knife, bowie-knife, sling-shot, billy, brass, iron or any other metal knuckles, razor, or any other deadly weapon whatsoever, such person shall be subject to a fine of not less than five dollars nor more than twenty-five dollars in the discretion of the police justice of the peace before whom such person may be taken, and the confiscation of the weapon so found, which said fine shall be collected as other fines are now collected; provided, however, that the provisions of this section shall not apply to those persons who, as conservators of the peace are entitled or required to carry a pistol or other weapon as a part of their official equipment.

1886 Md. Laws 315, An Act to Prevent the Carrying of Guns, Pistols, Dirk-knives, Razors, Billies or Bludgeons by any Person in Calvert County, on the Days of Election in said County, Within One Mile of the Polls § 1:
That from and after the passage of this act, it shall not be lawful for any person in Calvert County to carry, on the days of election and primary election within three hundred yards of the polls, secretly, or otherwise, any gun, pistol, dirk, dirk-knife, razor, billy or bludgeon, and any person violating the provisions of this act, shall be deemed guilty of a misdemeanor and on conviction thereof by the Circuit Court of Calvert County . . . shall be fined not less than ten nor more than fifty dollars for each such offense. . .

John Prentiss Poe, The Maryland Code. Public Local Laws, Adopted by the General Assembly of Maryland March 14, 1888. Including also the Acts of the Session of 1888 Incorporated Therein, and Prefaced with the Constitution of the State Page 468-469, Image 568-569 (Vol. 1, 1888) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Maryland | 1886

Concealed Weapons, § 30.

Every person, not being a conservator of the peace entitled or required to carry such weapon as a part of his official equipment, who shall wear or carry any pistol, dirk-knife, bowie- knife, slung-shot, billy, sand-club, metal knuckles, razor, or any other dangerous or deadly weapon of any kind whatsoever, (penknives excepted,) concealed upon or about his person; and every person who shall carry or wear any such weapon openly, with the intent or purpose of injuring any person, shall, upon conviction thereof, be fined not more than five hundred dollars, or be imprisoned not more than six months in jail or in the house of correction.

John Prentiss Poe, The Baltimore City Code, Containing the Public Local Laws of Maryland Relating to the City of Baltimore, and the Ordinances of the Mayor and City Council, in Force on the First Day of November, 1891, with a Supplement, Containing the Public Local Laws Relating to the City of Baltimore, Passed at the Session of 1892 of the General Assembly, and also the Ordinances of the Mayor and City Council, Passed at the Session of 1891-1892, and of 1892-1893, up to the Summer Recess of 1893 Page 297-298, Image 306-307 (1893) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | Maryland | 1890

Ordinances of Baltimore, § 742A.

Every person in said city of Baltimore not being a conservator of the peace, entitled or required to carry such weapons as a part of his official equipment, who shall wear or carry any pistol, dirk-knife, bowie-knife, sling-shot, billy, sand-club, metal knuckles, razor or any other dangerous or deadly weapon of any kind whatsoever, (pen knives excepted.) concealed upon or about his person; and every person who shall carry or wear such weapons openly, with the intent or purpose of injuring any person, shall, upon a conviction thereof, be fined not more than five hundred dollars, and be imprisoned not more than six months in jail or in the house of correction; that this act shall not release or discharge any person or persons already offending against the general law in such cases made and provided, but any such person or persons may be proceeded against, prosecuted and punished under the general law of this State as if this act had not been passed.

1927 Md. Laws 156, § 388-B.

That not person, persons house, company, association or body corporate, shall deposit, keep or have in his, her, their or its possession any spirituous or fermented liquors, or intoxicating drinks of any kind whatsoever, or any article used or sold as a beverage in the composition of which, whiskey, brandy, high wines or alcoholic, spirituous or fermented liquors shall be an ingredient or ingredients, in any automobile or other vehicle in which any device for the prevention or arrest or

57

apprehension of said motor vehicle, or the occupants thereof of the type commonly known as a smoke screen is carried, whether the said device be attached as a part of said motor vehicle in which any gun, pistol, revolver, rifle machine gun, or other dangerous or deadly weapon of any kind whatsoever is carried, whether in said automobile or vehicle, or on the person of any occupant of the same.

## MASSACHUSETTS

1 Records of the Governor and Company of the Massachusetts Bay in New England 211-12 (Nathanial B. Shurtleff ed., 1853). 1637.
Whereas the opinions & revelations of Mr. Wheeleright & Mrs. Hutchinson have seduced & led into dangerous errors many of the people heare in Newe England, insomuch as there is just cause of suspition that they, as others in Germany, in former times, may, upon some revelation, make some suddaine irruption vpon those that differ from them in judgment, for prevention whereof it is ordered, that all those whose names are vnderwritten shall (vpon warning given or left at their dwelling houses) before the 30th day of this month of November, deliver in at Mr. Canes house, at Boston, all such guns, pistols, swords, powder, shot, & match as they shalbee owners of, or have in their custody, vpon paine of ten pound for ev'y default to bee made therof ; which armes are to bee kept by Mr. Cane till this Court shall take further order therein. Also, it is ordered, vpon like penulty of x', that no man who is to render his armes by this order shall buy or borrow any guns, swords, pistols, powder, shot, or match, vntill this Court shall take further order therein. . . . The like order is taken for other townes, changing the names of those who shall deliver their armes, & keepe them. . . . It was ordered, that if any that are to bee disarmed acknowledg their siun in subscribing the seditions -libell, or do not justify it, but acknowledg it evill to two magistrates, they shalbee thereby freed from delivering in their armes according to the former order./
file:///C:/Users/Bob/Downloads/ocm3522063_vol1.pdf

1692 Mass. Laws [No. 6, at 11–12.?]
Acts and resolves passed by the General Court by Massachusetts
2D Sess. 1692-3, 52-53
Further it is enacted by the authority aforesaid^ [Sect. 6.] That every justice of the peace in the county where the offence is committed, may cause to be staid and arrested all affrayers, rioters, disturbers or breakers of the peace, and such as shall ride, or go armed offensively before any of their majesties' justices or other their officers or ministers doing their office or elsewhere by night or by day, in fear or affray of their majesties' liege people, and such others as shall utter any menaces or threatening speeches ; and upon view of such justice or justices, confession of the

party or other legal conviction of any such offence, shall commit the offender to prison until he find sureties for the peace and good behaviour, and seize and take away his armour or weapons, and shall cause them to be apprized and answered to the king as forfeited ; and may further punish the breach of the peace in any person that shall smite or strike another, by fine to the king not exceeding twenty shillings, and require bond with sureties for the peace, or bind the offender over to answer it at the next sessions of the peace, as the nature or circumstance of the offence may be ; and may make enquiry of forcible entry and detainer, and cause the same to be removed, and make out hue and crys after runaway servants, thiefs and other criminals.

https://archive.org/details/actsresolvespass9214mass/page/52/mode/2up?q=offensively

1694 Mass. Laws 12, no. 6, An Act for the Punishing of Criminal Offenders. Further it is Enacted by the authority aforesaid, That every Justice of the Peace in the County where the Offence is committed , may cause to be staid and arrested all Affrayers, Rioters, Disturbers, or Breakers of the Peace, and such as shall ride or

go armed Offensively before any of their Majesties Justices, or other Their Officers or Ministers doing their Office or elsewhere.

1749-51 Mass. Acts 339, An Act for Preventing and Suppressing of Riots, Routs and Unlawful Assemblies, ch. 12. 1751
"Whereas the Provision already made by Law has been found insufficient to prevent Routs, Riots, and tumultuous Assemblies, and the evil Consequences thereof :    Wherefore,
Be it enacted by the Lieutenant Governour Council and House of Representatives, That from and after the Publication of this Act, if any Persons to the Number of Twelve or more, being Arm'd with Clubs or other Weapons, or if any Number of Persons consisting of Fifty or upwards, whether armed or not, shall be unlawfully riotously or tumultuously assembled; any Justice of the Peace, Field-Officer or Captain of the Militia, Sheriff of the County or Under-Sheriff, or any Constable of the Town, shall among the Rioters, or as near to them as he can safely come, command Silence while Proclamation is making, and shall openly make Proclamation in these or the like Words,
Our Sovereign Lord the KING, chargeth and commandeth all Persons, being assembled, immediately to disperse themselves, and peaceably to depart to their Habitations, or to their lawful Business, upon the Pains contained in the Act of this Province made in the twenty-fourth Year of His Majesty King GEORGE the Second, for preventing and suppressing of Riots, Routs, and unlawful Assemblies. GOD save the King.
And if such Persons so unlawfully assembled, shall after Proclamation made, not disperse themselves within one Hour, it shall be lawful for every such Officer or Officers and for such other Persons as he or they shall command to be assisting, to seize such Persons, and carry them before a Justice of Peace: And if such Person shall be killed or hurt by Reason of their resisting the Persons so dispersing or seizing them, the said Officer or Officers and their Assistants shall be indemnified and held guiltless…"
The following links to a version of this law that is contemporaneous with the original session law, but seems to have been published separately as a notice: An Act for Preventing and Suppressing of Riots, Routs and Unlawful Assemblies, 1750. https://firearmslaw.duke.edu/wp-content/uploads/2020/03/1749-51-Mass.-Acts-339.pdf

1794 Mass. Acts 66-67
Chapter 26.

And be it further Enacted by the authority aforesaid, that every Justice of the peace, within the County for which he may be commissioned, may cause to be staid and arrested all affrayers, rioters, disturbers or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth, or such others as may utter any menaces or threatening speeches, and upon view of such Justice, confession of the delinquent, or other legal conviction of any such offence, shall . require of the offender to find sureties for his keeping the peace, and being of the good behaviour ; & in want thereof to commit him to prison, untill he shall comply with such requisition : And may further punish the breach of the peace in any person that shall assault or strike another, by fine to the Commonwealth not exceeding twenty shillings, and require sureties as aforesaid, or bind the offender to appear and answer for his offence, at the next Court of General Sessions of the Peace, as the nature or circumstances of the case may require. Approved January 29, 1795.
https://archive.org/details/actsresolvespass179495mass/page/66/mode/2up?q=armed

1814 Mass. Acts 464, An Act In Addition To An Act, Entitled "An Act To Provide For The Proof Of Fire Arms, Manufactured Within This Commonwealth," ch. 192, § 1, 2.
All musket barrels and pistol barrels, manufactured within this Commonwealth, shall, before the same shall be sold, and before the same shall be stocked, be proved by the person appointed according to the provisions of an act . . . ; § 2 That if any person of persons, from and after the passing of this act, shall manufacture, within this Commonwealth, any musket or pistol, or shall sell and deliver, or shall knowingly purchase any musket or pistol, without having the barrels first proved according to the provisions of the first section of this act, marked and stamped according the provisions of the first section of the act.

Theron Metcalf, The Revised Statutes of the Commonwealth of Massachusetts, Passed November 4, 1835; to Which are Subjoined, an Act in Amendment Thereof, and an Act Expressly to Repeal the Acts Which are Consolidated Therein, Both Passed in February 1836; and to Which are Prefixed, the Constitutions of the United States and of the Commonwealth of Massachusetts Page 750, Image 764 (1836) available at The Making of Modern Law: Primary Sources.
Of Proceedings to Prevent the Commission of Crimes, § 16.

If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

1850 Mass. Gen. Law, chap. 194, §§ 1, 2, as codified in Mass. Gen. Stat., chap. 164 (1873) § 10.

Whoever when arrested upon a warrant of a magistrate issued against him for an alleged offense against the laws of this state, and whoever when arrested by a sheriff, deputy sheriff , constable, police officer, or watchman, while committing a criminal offense against the laws of this state, or a breach or disturbance of the public peace, is armed with, or has on his person, slung shot, metallic knuckles, bills, or other dangerous weapon, shall be punished by fine . . .

1850 Mass. Gen. Law, chap. 194, §§ 1, 2 as codified in Mass. Gen. Stat., chap. 164 (1873) § 11.

Whoever manufactures, or causes to be manufactured, or sells, or exposes for sale, any instrument or weapon of the kind usually known as slung shot, or metallic knuckles, shall be punished by fine not less than fifty dollars, or by imprisonment in the jail not exceeding six months.

Third Annual Report of the Park Commissioners of the City of Lynn for the year ending December 20, 1891, at 23, Ordinances. 1891

The Board of Park Commissioners of the City of Lynn, by virtue of its authority to make rules for the use and government of the Public Parks of said City, and for breaches of such rules to affix penalties, hereby ordains that within the limits of Lynn Woods, Meadow Park and Oceanside, except with the prior consent of the Board, it is forbidden: . . .

3. To throw stones or other missiles; to discharge or carry firearms, except by members of the police force in the discharge of their duties; to discharge or carry fire – crackers, torpedoes or fireworks; to make fires; to have any intoxicating

beverages; to sell, to offer or expose for sale any goods or wares; to post or display signs, placards, flags or advertising devices; to solicit subscriptions or contributions; to play games of chance, or have possession of instruments of gambling; to utter profane, threatening, abusive or indecent language, or to do any obscene or indecent act; to bathe or fish; to solicit the acquaintance of, or follow, or otherwise annoy other visitors.

Rules and Regulations Governing the Public Parks within the City of Lowell, at 58 (1903)
The Board of Park Commissioners of the City of Lowell, by virtue of its authority to make rules and regulations for the use and government of the Public Parks and Commons of said City, and to fix penalties for breaches of rules and regulations, hereby ordains that, within such Public Parks and Commons, except by and with the consent of the Board: . . .
3. It is forbidden to throw stones, balls or other missiles; to discharge or carry firearms, fire crackers, torpedoes or fire-works; to make fires; to have any intoxicating beverages; to sell, offer or expose for sale any goods or wares; to post or display signs, placards, flags or advertising devices; to solicit subscriptions or contributions, to play games of chance, or to have possession of instruments of gambling; to utter profane, threatening, abusive or indecent language, or to commit any obscene or indecent act; to solicit the acquaintance of, or to follow, or in any way annoy visitors to said Parks and Commons.

1927 Mass. Acts 416, An Act Relative to Machine Guns and Other Firearms, ch. 326, § 5 (amending §10)
Carrying Weapons | Massachusetts | 1927
Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, a pistol or revolver, loaded or unloaded, or possesses a machine gun as defined in section one hundred and twenty-one of chapter one hundred and forty… or whoever so carries any stiletto, dagger, dirk knife, slung shot, metallic knuckles or sawed off shotgun, or whoever, when arrested upon a warrant for an alleged crime or when arrested while committing a crime or a breach or disturbance of the public peace, is armed with, or has on his person, or has on his person or under his control in a vehicle, a billy or dangerous weapon other than those herein mentioned, shall be punished by imprisonment for not less than six months nor more than two and a half years in a jail . . .

## **MICHIGAN**

1887 Mich. Pub. Acts 144, An Act to Prevent The Carrying Of Concealed Weapons, And To Provide Punishment Therefore, § 1.
It shall be unlawful for any person, except officers of the peace and night-watches legitimately employed as such, to go armed with a dirk, dagger, sword, pistol, air gun, stiletto, metallic knuckles, pocket-billy, sand bag, skull cracker, slung shot, razor or other offensive and dangerous weapon or instrument concealed upon his person.

1891 Mich. Pub. Acts 409, Police Department, pt 15:. . . . And all persons who shall carry concealed on or about their persons, any pistol, revolver, bowie knife, dirk, slung shot, billie, sand bag, false knuckles, or other dangerous weapon, or who shall lay in wait , lurk or be concealed, with intent to do injury to any person or property, who shall threaten to beat or kill another or injure him in his person or property . . . shall be deemed a disorderly person, and upon conviction thereof may be punished by a fine not exceeding one hundred dollars and the costs of prosecution, and in imposition of any such fine and costs the court may make a further sentence that in default of payment, such offender be imprisoned in the city prison. . .

1913 Mich. Pub. Acts 452, An Act Defining the Crime of Felonious Assault and Prescribing Punishment Therefor, § 1.
Whoever shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be deemed guilty of a felonious assault, and upon conviction shall be punished by imprisonment in the State Prison for a term not exceeding three years or by imprisonment in the county jail for a term not exceeding one year, in the discretion of the court.

1927 Mich. Pub. Acts 888-89, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3.
Dangerous or Unusual Weapons | Michigan | 1927
It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag or bludgeon. Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison not more

than five years, or by both such fine and imprisonment in the discretion of the court. . . .

1929 Mich. Pub. Acts 529, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3.
Dangerous or Unusual Weapons | Michigan | 1929
It shall be unlawful within this state to manufacture, sell, offer for sale or possess any machine gun or firearm which can be fired more than sixteen times without reloading or any muffler, silencer, or device for deadening or muffling the sound of a discharged firearm, or any bomb, or bomb shell, blackjack, slung shot, billy, metallic knuckles, sand club, sand bag, or bludgeon or any gas ejecting device, weapon, cartridge, container, or contrivance designed or equipped for or capable of ejecting any gas which will either temporarily or permanently disable, incapacitate, injure or harm any person with whom it comes in contact.

## MINNESOTA

Morton Smith Wilkinson, The Revised Statutes of the Territory of Minnesota, Passed at the Second Session of the Legislative Assembly, Commencing January 1, 1851: Printed and Published Pursuant to Law Page 528, Image 538 (Vol. 1, 1851) available at The Making of Modern Law: Primary Sources.
If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person, or to his family, or property, he may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

Ordinance No. 74—An Ordinance Relating to Breaches of the Peace, Disorderly Conduct and the Carrying of Concealed Weapons, § 3, City Charter of the City of Hastings (1870).
"Sec. 3. Any person who shall go armed within the incorporated limits of said city of Hastings with a dirk, dagger, sword, pistol or pistols, or shall carry a slung-shot or metal knuckles or other offensive or dangerous weapon, without reasonable cause to fear an assault or other injury to his person or to his family or property, shall, upon conviction before said justice, be punished by a fine not exceeding one hundred dollars, or by imprisonment not exceeding three months, or both, in the discretion of the justice."
1870, MN, Ordinance no. 74—An Ordinance Relating to Breaches of the Peace, Disorderly Conduct and the Carrying of Concealed Weapons, §§ 1-5

65

City Charter of the City of Hastings (Hastings, MN: Daily News Print, 1884), 74-75. Ordinance no. 74—An Ordinance Relating to Breaches of the Peace, Disorderly Conduct and the Carrying of Concealed Weapons, § 3. Passed May 24, 1870.

SAINT PAUL, MUNICIPAL CODE, art. 18, §§ 1-9 (Daily Globe 1884) (Passed 1882).

"Sec 1. It shall be unlawful for any person, within the limits of the city of St. Paul, to carry or wear under his clothes, or concealed about his person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon.

Sec. 2. Any such weapon or weapons, duly adjudged by the municipal court of said city to have been worn or carried by any person, in violation of the first section of this ordinance, shall be forfeited or confiscated to the said city of St. Paul, and shall be so adjudged.

Sec. 3. Any policeman of the city of St. Paul, may, within the limits of said city, without a warrant, arrest any person or persons, whom such policeman may find in the act of carrying or wearing under their clothes, or concealed about their person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon, and detain him, her or them in the city jail, until a warrant can be procured, or complaint made for the trial of such person or persons, as provided by the charter of the city of St. Paul, for other offenses under said charter, and for the trial of such person or persons, and for the seizure and confiscation of such of the weapons above referred to, as such person or persons may be found in the act of carrying or wearing under their clothes, or concealed about their persons.

Sec. 4. Upon complaint made under oath or affirmation, to the municipal court of the city of St. Paul, that any person has been guilty of violating any of the provisions of section one of this ordinance, a warrant shall issue for the arrest of the offender or offenders, returnable as other warrants are returnable; upon the return of such warrant, the municipal court shall proceed to the hearing and determination of the matter, and if it shall be adjudged that such person or persons has or have incurred any of the penalties fixed by this ordnance, such court shall so adjudge, and order that the weapon or weapons concerning the carrying or wearing of which such penalty shall have been incurred, shall be confiscated to the city of St. Paul. And further, every such person or persons so offending, on conviction, shall be required to find sureties for keeping the peace for a term not exceeding six months.

66

Sec. 5. Any person or person violating any of the provisions of section one of this ordinance shall pay a fine of not less than $5 nor more than $100, or be imprisoned for a term not exceeding ninety days or both, in the discretion of the municipal judge, before whom such conviction shall be had.

Sec. 6. The prohibition of this ordinance shall not apply to the officers and members of the police force of said city, when on duty, nor to any officer of any court whose duty may be to secure warrants or to make arrests, nor to persons whose business or occupation may seem to require the carrying of weapons for protection, and who shall have obtained from the Mayor of said city a license so to do as hereinafter provided.

Sec. 7. The Mayor of the city of St. Paul may grant to so many, and to such persons as he may think proper, licenses to carry concealed weapons; and may revoke any and all of such licenses at his pleasure.

Sec. 8. Application for such licenses shall be made to the mayor of said city, in writing, and when granted, the person applying therefor, shall pay into the city treasury the sum of two dollars, and thereupon a license shall be issued by the city clerk, and signed by the mayor.

Sec. 9: Every such license shall state the name, age, occupation and residence of the person to whom it is granted, and shall expire on the thirty-first day of December of each and every year."

1884, MN, Concealed Weapons-License, Article 18, §§ 1-9, The Municipal Code of Saint Paul

W. P. Murray, The Municipal Code of Saint Paul: Comprising the Laws of the State of Minnesota Relating to the City of Saint Paul, and the Ordinances of the Common Council: Revised to December 1, 1884 (St. Paul, MN: Daily Globe, 1884), 289-290. Article 18, Concealed Weapons-License, §§ 1-9. Passed January 17, 1882.


W. P. Murray, The Municipal Code of Saint Paul: Comprising the Laws of the State of Minnesota Relating to the City of Saint Paul, and the Ordinances of the Common Council; Revised to December 1, 1884 Page 289, Image 295 (1884) available at The Making of Modern Law: Primary Sources.

Concealed Weapons – License, § 1.

It shall be unlawful for any person, within the limits of the city of St. Paul, to carry or wear under his clothes, or concealed about his person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon. § 2. Any such weapons or weapons, duly adjudged by the municipal court of said city to have been worn or carried by any person, in violation of the first section of this ordinance, shall be forfeited or confiscated to the said city of St. Paul, and shall be

so adjudged. § 3. Any policeman of the city of St. Paul, may, within the limits of said city, without a warrant, arrest any person or persons, whom such policeman may be in the act of carrying or wearing under their clothes, or concealed about their person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon, and detain him, her or them in the city jail, until a warrant can be procured, or complaint made for the trial of such person or persons, as provided by the charter of the city of St. Paul, for other offenses under said charter, and for the trial of such person or persons, and for the seizure and confiscation of such of the weapons above referred to, as such person or persons may be found in the act of carrying or wearing under their clothes, or concealed about their persons.

George Brooks Young. General Statutes of the State of Minnesota in Force January 1, 1889 Page 1006, Image 1010 (Vol. 2, 1888) available at The Making of Modern Law: Primary Sources.
Dangerous or Unusual Weapons | Minnesota | 1888
Making, Selling, etc., Dangerous Weapons, §§ 333-334.
§ 333. A person who manufactures, or causes to be manufactured, or sells, or keeps for sale, or offers or gives or disposes of any instrument or weapon of the kind usually known as slung-shot, sand-club, or metal knuckles, or who, in any city of this state, without the written consent of a magistrate, sells or gives any pistol or fire-arm to any person under the age of eighteen years, is guilty of a misdemeanor.
Carrying, using, etc., certain Weapons . . . .
§ 334. A person who attempts to use against another, or who, with intent so to use, carries, conceals, or possesses any instrument or weapon of the kind commonly known as a slung-shot, sand-club, or metal knuckles, or a dagger, dirk, knife, pistol or other fire-arm, or any dangerous weapon, is guilty of a misdemeanor.

## MISSISSIPPI

1799 Miss. Laws 113, A Law For The Regulation Of Slaves. No Negro or mulatto shall keep or carry any gun, powder, shot, club or other weapon whatsoever, offensive or defensive; but all and every gun, weapon and ammunition found in the possession or custody of any negro or mulatto may be seized by any person . . . every such offender shall have and receive by order of such justice, any number of lashes not exceeding thirty-nine, on his or her bare back, well laid on, for every such offense.

1804 Miss. Laws 90, An Act Respecting Slaves, § 4. No Slave shall keep or carry any gun, powder, shot, club or other weapon whatsoever offensive or defensive, except tools given him to work with . . .

1837 Miss. Law 289-90, An Act To Prevent The Evil Practice Of Dueling In This State And For Other Purposes, § 5.
That if any person or persons shall be guilty of fighting in any corporate city or town, or any other town or public place, in this state, and shall in such fight use any rifle, shot gun, sword, sword cane, pistol, dirk, bowie knife, dirk knife, or any other deadly weapon; or if any person shall be second or aid in such fight, the persons so offending shall be fined not less than three hundred dollars, and shall be imprisoned not less than three months; and if any person shall be killed in such fight, the person so killing the other may also be prosecuted and convicted as in other cases of murder.

Laws of the State of Mississippi ; embracing all Acts of a Public Nature from January Session, 1824, to January Session 1838, Inclusive Page 736, Image 738 (Jackson, 1838) available at The Making of Modern Law: Primary Sources, 1838. An Act to Prevent the Evil Practice of Dueling in this State, and for other Purposes, § 5. Be it further enacted, That if any person or persons shall be guilty of fighting in any corporate city or town, or any other town, or public place, in this state, and shall in such fight use any rifle, shot gun, sword, sword cane, pistol, dirk, bowie knife, dirk knife, or any other deadly weapon; or if any persons shall be second or aid in such fight, the persons so offending shall be fined not less than three hundred dollars, and shall be imprisoned not less than three months; and if any person shall be killed in such fight, the person so killing the other may also be prosecuted and convicted as in other cases of murder.

Volney Erskine Howard, The Statutes of the State of Mississippi of a Public and General Nature, with the Constitutions of the United States and of this State: And an Appendix Containing Acts of Congress Affecting Land Titles, Naturalization, &c, and a Manual for Clerks, Sheriffs and Justices of the Peace Page 676, Image 688 (1840) available at The Making of Modern Law: Primary Sources. 1840 Crimes, Misdemeanors and Criminal Prosecution, § 55. If any person having or carrying any dirk, dirk knife, Bowie knife, sword, sword cane, or other deadly weapon, shall, in the presence of three or more persons, exhibit the same in a rude, angry and threatening manner, not in necessary self-defense, or shall in any manner unlawfully use the same in any fight or quarrel, the person or persons so offending, upon conviction thereof in the circuit or criminal court of the proper

county, shall be fined in a sum not exceeding five hundred dollars, and be imprisoned not exceeding three months.

1854 Miss. Laws Ch. 1, p. 50
On each bowie knife, Arkansas toothpick, sword cane, duelling or pocket pistol, a tax of one dollar.

1878 Miss. Laws 175, An Act To Prevent The Carrying Of Concealed Weapons And For Other Purposes, § 1.
That any person not being threatened with or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp) or setting out on a long journey, or peace officers, or deputies in discharge of their duties, who carries concealed in whole or in part, any bowie knife, pistol, brass knuckles, slung shot or other deadly weapon of like kind or description shall be deemed guilty of a misdemeanor, and on conviction, shall be punished for the first offense by a fine of not less than five dollars nor more than one hundred dollars . . .

## **MISSOURI**

Organic Laws:-Laws of Missouri Territory, (Alphabetically Arranged):-Spanish Regulations for the Allotment of Lands:- Laws of the United States, for Adjusting Titles to Lands, &c. to Which are Added, a Variety of Forms, Useful to Magistrates Page 374, Image 386 (1818) available at The Making of Modern Law: Primary Sources. 1818.
Slaves, § 3. No slave or mulatto whatsoever, shall keep or carry a gun, powder, shot, club or other weapon whatsoever, offensive or defensive; but all and every gun weapon and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person and upon due proof made before any justice of the peace of the district [county] where such seizure shall be, shall by his order be forfeited to the seizor, for his own use, and moreover, every such offender shall have and receive by order of such justice any number of lashes not exceeding thirty nine on his or her bare back well laid on for every such offence. § 4. Every free negro or mulatto, being a housekeeper may be permitted to keep one gun, powder and shot; and all negroes or mulattoes bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder shot and weapons, offensive and defensive, by license from a justice of the peace of the district [county] wherein such plantation lies, to be obtained upon the application of free negroes or mulattoes or of the owners of such as are slaves.

Everett Wilson Pattison, The Revised Ordinance of the City of St. Louis, Together with the Constitution of the United States, and of the State of Missouri; the Charter of the City; and a Digest of the Acts of the General Assembly, Relating to the City Page 491-492, Image 499-500 (1871) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | Missouri | 1871

Ordinances of the City of St. Louis, Misdemeanors, §§ 9-10.

§ 9. Hereafter it shall not be lawful for any person to wear under his clothes, or concealed about his person, any pistol, or revolver, colt, billy, slung shot, cross knuckles, or knuckles of lead, brass or other metal, bowie knife, razor, dirk knife, dirk, dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon, within the City of St. Louis, without written permission from the Mayor; and any person who shall violate this section shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be fined not less than ten nor more than five hundred dollars for each and every offence.

§ 10. Nothing in the preceding section shall be so construed as to prevent any United States, State, county or city officer, or any member of the city government, from carrying or wearing such weapons as may be necessary in the proper discharge of his duties.


1873 Mo. Laws 328, *An Act to Incorporate The Town Of Moberly, art. III, § 1, pt. 15*: To restrain . . . any person who shall threaten quarrel, challenge or fight within said city, or any person who shall be found intoxicated, who shall carry concealed deadly weapons in said city, of any person who shall be found guilty of a misdemeanor, and to define what acts shall constitute a misdemeanor.


1883 Mo. Laws 76, An Act To Amend Section 1274, Article 2, Chapter 24 Of The Revised Statutes Of Missouri, Entitled "Of Crimes And Criminal Procedure"

§ 1274.

If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the siting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under the militia law having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slung-shot, or other deadly weapon, or shall in the presence of one or more persons shall exhibit and such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of

intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction be punished by a fine of not less than twenty-five nor more than two hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

William K. Amick, The General Ordinances of the City of Saint Joseph (A City of the Second Class) Embracing all Ordinances of General Interest in Force July 15, 1897, together with the Laws of the State of Missouri of a General Nature Applicable to the City of St. Joseph. Compiled and Arranged Page 508, Image 515 (1897) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Missouri | 1897
Concealed Weapons – Carrying of, § 7.
Any person who shall in this city wear under his clothes or carry concealed upon or about his person, or be found having upon or about his person concealed, any pistol or revolver, colt, billy, slung shot, cross knuckles or knuckles of lead, brass or other metal, dirk, dagger, razor, bowie knife, or any knife resembling a bowie knife, or any other dangerous or deadly weapon, shall be deemed guilty of a misdemeanor.

Joplin Code of 1917, Art. 67, § 1201. Missouri. Weapons; Deadly.
If any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, political, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill, or meetings called under militia law of this state, having upon or about his person, concealed or exposed, any kind of firearms, bowie knife, spring-back knife, razor, knuckles, bill, sword cane, dirk, dagger, slung shot, or other similar deadly weapons, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have any such weapons in his possession when intoxicated, or directly or indirectly shall sell or deliver, loan or barter, to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall be deemed guilty of a misdemeanor. Provided, that nothing contained in this section shall apply to legally qualified sheriffs, police officers, and other persons whose bona fide duty is to execute process, civil or criminal, make arrests, or aid in conserving the public peace, nor to persons traveling in a continuous journey peaceably through this state.

72

1923 Mo. Laws 241-42, An Act to Provide the Exercise of the Police Powers of the State by and through Prohibiting the Manufacture, Possession, Transportation, Sale and Disposition of Intoxicating Liquors. . .§ 17.
Sensitive Places and Times | Missouri | 1923
Any person, while in charge of, or a passenger thereon, who shall carry on his person, or in, on, or about, any wagon, buggy, automobile, boat, aeroplane, or other conveyance or vehicle whatsoever, in, or upon which any intoxicating liquor, including wine or beer, is carried, conveyed or transported in violation of any provision of the laws of this state, any revolver, gun or other firearm, or explosive, any bowie knife, or other knife having a blade of more than two and one-half inches in length, any sling shot, brass knucks [sic], billy, club or other dangerous weapon, article or thing which could, or might, be used in inflicting bodily injury or death upon another, shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by the imprisonment in the state penitentiary for a term of not less than two years. Provided, that this section shall not apply to any person or persons transporting intoxicating liquor for personal use and not for sale in violation of law. Provided, that this section shall not apply to any person or passenger who did not know that such vehicle or conveyance was being used for unlawful purposes.

## MONTANA

1864 Mont. Laws 355, An Act to Prevent the Carrying of Concealed Deadly Weapons in the Cities and Towns of This Territory, § 1.
If any person shall within any city, town, or village in this territory, whether the same is incorporated or not, carry concealed upon his or her person any pistol, bowie-knife, dagger, or other deadly weapon, shall, on conviction thereof before any justice of the peace of the proper county, be fined in any sum not less than twenty five dollars, nor more than one hundred dollars.

1879 Mont. Laws 359, Offences against the Lives and Persons of Individuals, ch. 4, § 23.

If any person shall, by previous appointment or agreement, fight a duel with a rifle, shot-gun, pistol, bowie-knife, dirk, small-sword, back-sword, or other dangerous weapon, and in so doing shall kill his antagonist, or any person or persons, or shall inflict such wound as that the party or parties injured shall die thereof within one year thereafter, every such offender shall be deemed guilty of murder in the first degree, and, upon conviction thereof, shall be punished accordingly [death by hanging].

Concealed Weapons, Ordinance No. 4 of The Charter and Ordinances of the City of Helena (1883).

"Sec. 1. No person shall in this city wear under his clothes, or concealed on or about his person, any pistol or revolver, except by special permission from the mayor; nor shall any person wear under his clothes, or concealed on or about his person, any slung shot, cross knuckles, knuckles of lead, brass or other metal, or any bowie knife, razor, billy, dirk, dirk-knife or dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon. Any person violating any provision or requirement of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof before the police magistrate shall be fined not less than five dollars nor more than one hundred dollars. Provided, however, that this section shall not be so construed as to prevent any United States, territorial, county or city officer, or any member of the city government, from carrying such weapons as may be necessary in the proper discharge of his duties."

1883, MT, Ordinance No. 4, Concealed Weapons

Alexander C. Botkin, The Charter and Ordinances of the City of Helena, Montana with the Rules of Order for the government of the City Council: 1887 (Helena, MT: Journal Publishing Company, 1887), 103-104. Ordinance No. 4: Concealed Weapons. Passed and approved June 14, 1883.

1885 Mont. Laws 74, Deadly Weapons, An Act to Amend § 62 of Chapter IV of the Fourth Division of the Revised Statutes, § 62-63.

Every person in this territory having, carrying, or procuring from another person, any dirk, dirk-knife, sword, sword-cane, pistol, gun, or other deadly weapon, who shall in the presence of one or more persons, draw or exhibit any of said deadly weapons in a rude or angry or threatening manner, not in necessary self defense, or who shall in any manner unlawfully use the same in any fight or quarrel, the person or persons so offending, upon conviction thereof in any criminal court in any county in this territory shall be fined in any sum not less than ten dollars nor more than one hundred dollars, or imprisoned in the county jail not less than one

month nor more than three months, at the discretion of the court, or by both such fine and imprisonment, together with the costs of prosecution, which said costs shall in all cases be computed and collected in the same manner as costs in civil cases; and all fines and forfeitures arising under the provisions of this act shall be paid into the county treasury for school purposes: Provided, that no sheriff, deputy sheriff, constable, marshal, or other peace officer, shall be held to answer, under the provisions of this act, for drawing or exhibiting any of the weapons hereinbefore mentioned while in the lawful discharge of his or their duties.

1887 Mont. Laws 549, Criminal Laws, § 174.
If any person shall have upon him or her any pistol, gun, knife, dirk-knife, bludgeon, or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined not more than one hundred dollars, or imprisoned in the county jail not more than three months.

## NEBRASKA

1858 Neb. Laws 69, An Act To Adopt And Establish A Criminal code For The Territory Of Nebraska, § 135.
And if any person shall have upon him any pistol, gun, knife, dirk, bludgeon or other offensive weapon with intent to assault any person, every such person, on conviction, shall be fined in a sum not exceeding one hundred dollars. . .

Gilbert B. Colfield, Laws, Ordinances and Rules of Nebraska City, Otoe County, Nebraska Page 36, Image 36 (1872) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Nebraska | 1872
Ordinance No. 7, An Ordinance Prohibiting the Carrying of Fire Arms and Concealed Weapons, § 1.
Be it ordained by the Mayor and Councilmen of the City of Nebraska City, That it shall be, and it is hereby declared to be unlawful for any person to carry, openly or concealed, any musket, rifle, shot gun, pistol, sabre, sword, bowie knife, dirk, sword cane, billy slung shot, brass or other metallic knuckles, or any other dangerous or deadly weapons, within the corporate limits of Nebraska City, Neb; Provided, that nothing herein contained shall prevent the carrying of such weapon by a civil or military officer, or by a soldier in the discharge of his duty, nor by any other person for mere purposes of transportation from one place to another.

Guy Ashton Brown, The Compiled Statutes of the State of Nebraska, Comprising All Laws of a General Nature in Force July 1, 1881 Page 666, Image 674 (1881) available at The Making of Modern Law: Primary Sources.

Carrying Concealed Weapons, § 25. Whoever shall carry a weapon or weapons, concealed on or about his person, such as a pistol, bowie-knife, dirk, or any other dangerous weapon, on conviction of the first offense shall be fined not exceeding one hundred dollars, or imprisoned in the county jail not more than thirty days, and for the second offense not exceeding one hundred dollars or imprisoned in the county jail not more than three months, or both, a the discretion of the court; Provided, however, If it shall be proved from the testimony on the trial of any such case, that the accused was, at the time of carrying any weapon or weapons as aforesaid, engaged in the pursuit of any lawful business, calling or employment, and the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid, for the defense of his person, property or family, the accused shall be acquitted.

W. J. Connell, The Revised Ordinances of the City of Omaha, Nebraska, Embracing All Ordinances of a General Nature in Force April 1, 1890, Together with the Charter for Metropolitan Cities, the Constitution of the United States and the Constitution of the State of Nebraska Page 344, Image 356 (1890) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | Nebraska | 1890

Ordinances of Omaha, Concealed Weapons, § 10.

It shall be unlawful for any person to wear under his clothes, or concealed about his person, any pistol or revolver, colt, billy, slung-shot, brass knuckles or knuckles of lead, dirk, dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon within the corporate limits of the city of Omaha. Any person guilty of a violation of this section shall, on conviction, be fined not exceeding one hundred ($100) dollars for each and every offense; nothing in this section, however, shall be so construed as to prevent the United States Marshals and their deputies, sheriffs and their deputies, regular or special police officers of the city, from carrying or wearing such weapons as may be deemed necessary in the proper discharge of their duties. Provided, however, If it shall be proved from the testimony on the trial of any such case, that the accused was, at the time of carrying any weapon as aforesaid, engaged in the pursuit of lawful business, calling or employment and the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid, for the defense of his person, property or family, the accused shall be acquitted.

Compiled Ordinances of the City of Fairfield, Clay County, Nebraska Page 34,
Image 34 (1899) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Nebraska | 1899
Ordinance No. 20, An Ordinance to Prohibit the Carrying of Concealed Weapons
and Fixing a Penalty for the violations of the same. Be it ordained by the Mayor
and Council of the City of Fairfield, Nebraska: § 1.
It shall be unlawful for any person to carry upon his person any concealed pistol,
revolver, dirk, bowie knife, billy, sling shot, metal knuckles, or other dangerous or
deadly weapons of any kind, excepting only officers of the law in the discharge or
their duties; and any person so offending shall be deemed guilty of a misdemeanor,
and on conviction thereof, shall be subject to the penalty hereinafter provided. § 2.
Any such weapon or weapons, duly adjudged by the Police Judge of said city to
have been worn or carried by any person in violation of the first section of this
ordinance, shall be forfeited or confiscated to the City of Fairfield and shall be so
adjudged.

## NEVADA

Bonnifield, The Compiled Laws of the State of Nevada. Embracing Statutes of
1861 to 1873, Inclusive Page 563, Image 705 (Vol. 1, 1873) available at The
Making of Modern Law: Primary Sources.
Of Crimes and Punishments, §§ 35-36; § 133 .
§ 35. If any person shall by previous appointment or agreement, fight a duel with a
rifle, shotgun, pistol, bowie knife, dirk, smallsword, backsword, or other dangerous
weapon, and in doing shall kill his antagonist, or any person or persons, or shall
inflict such wound as that the party or parties injured shall die thereof within one
year thereafter, every such offender shall be deemed guiltily of murder in the first
degree and upon conviction thereof shall be punished accordingly.
§ 36. Any person who shall engage in a duel with any deadly weapon although no
homicide ensue or shall challenge another to fight such duel, or shall send or
deliver any verbal or written message reporting or intending to be such challenge,
although no duel ensue, shall be punished by imprisonment in the State prison not
less than two nor more than ten years, and shall be incapable of voting or holding
any office of trust or profit under the laws of this State.
§ 133. If any persons shall be found having upon him or her any picklock, crow-
key, bit, or other instrument or tool, with intent feloniously to break and enter into
any dwelling house, store, shop, warehouse, or other building containing valuable
property, or shall be found in any of the aforesaid buildings, with intent to steal any
money, goods and chattels, every person so offending shall, on conviction thereof,
be imprisoned in the State Prison not less than one year nor more than five years;

77

and if any person shall have upon him any pistol, gun, knife, dirk, bludgeon, or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined not more than one hundred dollars, or imprisoned in the County Jail not more than three months.

David E. Baily, The General Statutes of the State of Nevada. In Force. From 1861 to 1885, Inclusive. With Citations of the Decisions of the Supreme Court Relating Thereto Page 1077, Image 1085 (1885) available at The Making of Modern Law: Primary Sources.
Possession by, Use of, and Sales to Minors and Others Deemed Irresponsible | Nevada | 1881
An Act to prohibit the carrying of concealed weapons by minors. § 1.
Every person under the age of twenty-one (21) years who shall wear or carry any dirk, pistol, sword in case, slung shot, or other dangerous or deadly weapon concealed upon his person, shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be fined not less than twenty nor more than two hundred ($200) dollars, or by imprisonment in the county jail not less than thirty days nor more than six months or by both such fine and imprisonment.

City Ordinance No. 45, RENO EVENING GAZETTE, Sept. 6, 1905, at 6 (Reno, Nevada).
   "Section 7. It shall be unlawful for any person within the limits of the city of Reno, to wear, carry, or have concealed upon his person any dirk knife, pistol, sword in case, slung shot, brass knuckles, razor or other dangerous weapon without first obtaining permission from the City Council. The City Council may, upon application made in writing showing the reason of the person or the purpose for which any concealed weapon is to be carried, grant permission under the seal of the city and attested by its clerk to the person making such application authorizing such person to carry the concealed weapon described in such permission. Any person who shall violate any of the provisions of this section shall be guilty of a misdemeanor and on conviction thereof shall be fined not less than twenty ($20.00) dollars, nor more than five hundred ($500.00) dollars, or imprisoned in the city jail for not less than thirty (30) days, nor more than six (6) months. This section shall not apply to peace officers in the discharge of their duties, nor to persons acting or engaged in the business of common carriers within this tsate, nor to persons traveling through the state."
Full Text: 1905, Reno Evening Gazette, September 6, City Ordinance no. 45
"City Ordinance No. 45." Reno Evening Gazette, September 6, 1905, p. 6. Volume 70, Number 46. City Ordinance no. 45—An Ordinance concerning Breaches of the Peace, Fighting, Routs, Riots, Affrays, Injury to Property, Malicious Mischief,

78

Disorderly Persons, Lewd or Lascivious Cohabitation or Behavior, Begging, Carrying Deadly Weapons, and Resisting an Officer within the City of Reno; to Restrain and Punish the Same and to Repeal All Ordinances or Sections Thereof in Conflict Therewith, and Other Matters Relating Thereto, § 7. Approved August 29, 1905. (Reno, NV).

## NEW HAMPSHIRE

New Hampshire - Acts and Laws June 1701:
That every justice of the peace within this province, may cause to be stayed and arrested all affrayers, rioters, disturbers or breakers of the peace, or any other that shall go armed offensively, to put his Majesty's subjects in fear by threatening speeches; and upon view of such justice, confession of the Party, or legal proof of any such offence, the justice may commit him to prison, until he the offender find such sureties as is required for his good behavior, and cause his arms or weapons to be taken away, and apprized and answered to his Majesty, as forfeited: And may further punish the breach of the peace, in any person that shall smite or strike another by fine to the King, not exceeding twenty shillings, or require bond for their good behavior, and to pay all just costs; as also may make out hue and cry after run-away-servants, thieves, and other criminals. https://heinonline-org.proxy.wm.edu/HOL/Page?handle=hein.ssl/ssnh0240&id=1&collection=ssl&index=ssl/ssnh

New Hampshire Public Carry Prohibition (1708)*
And every justice of the peace within this province, may cause to be stayed and arrested, all affrayers, rioters, disturbers or breakers of the peace, or any other who shall go armed offensively, or put his Majesty's subjects in fear, by menaces or threatening speeches : And upon view of such justice, confession of the offender, or legal proof of any such offence, the justice may commit the offender to prison, until he or she find such sureties for the peace and good behaviour, as is required, according to the aggravations of the offence ; and cause the arms or weapons so used by the offender, to be taken away, which shall be forfeited and sold for his Majesty's use. And may also punish the breach of the peace in any person, who shall smite, or strike another, by fine to the King, not exceeding twenty shillings; and require bond with sureties for the peace, till the next court of general sessions of the peace, or may bind the offender over to answer for said offence at said court, as the nature and circumstances of the offence may require.
*The original law is dated this way: "PASS'D 11 TH OF WM. 3" King William III ruled from 1689-1702, so the 11th year of his reign would be 1699. See:

https://heinonline-
org.proxy.wm.edu/HOL/Page?collection=ssl&handle=hein.ssl/ssnh0244&id=68&
men_tab=srchresults

New Hampshire - Acts and Laws, 1743, 9-10:*
That if twelve persons or more, being armed with clubs, or other weapons; or that
if fifty persons or more, whether armed or not, shall be unlawfully, riotously,
tumultuously or routerously assembled, any of the officers aforesaid, shall make a
proclamation, in manner and form aforesaid; and if such persons so unlawfully
assembled, shall not thereupon immediately disperse themselves, according to said
proclamation, each of them, and every one who shall wilfully hinder any such
officer (who shall be known, or shall openly declare himself to be such) making
the said proclamation, shall forfeit and pay a fine not exceeding the sum of five
hundred pounds, at the discretion of the said superior court, (which only shall have
cognizance of the offense,) considering the aggravations attending the same, and
shall be whipt thirty stripes on the naked back at the publick whipping-post, and
suffer twelve months imprisonment, and once every three months, during said
twelve months, receive the same number of stripes aforesaid.
https://heinonline-
org.proxy.wm.edu/HOL/Print?collection=ssl&handle=hein.ssl/ssnh0244&id=10
file:///C:/Users/Bob/Downloads/i-1.pdf
*This law was "made and passed in the Seventeenth Year of His present Majesty's
Reign," which would calculate in the reign of King George II (1727-1760) as the
year 1743.

1909 N.H. Laws 451-52
CHAPTER 114
AN ACT TO PROHIBIT CARRYING CONCEALED WEAPONS
SECTION 1. Whoever, except as provided by the laws of this state, carries on his
person a loaded pistol or revolver, or any stilletto, dagger, dirk-knife, slung-shot or
metallic knuckles, shall upon conviction be punished by a fine not exceeding one
hundred dollars or by imprisonment not exceeding one year or by both such fine
and imprisonment; and any such weapon or article so carried by him shall be
confiscated to the use of the state.
SECT. 2. The provisions of the preceding section shall not apply to officers of the
law, to members of military forces, to persons holding hunters' licenses, when
lawfully engaged in hunting, to employees of express companies while on duty, to
watchmen while on duty, or to persons securing a license as provided in the next
section.

80

SECT. 3. The selectmen of towns or the mayor or the chief of police of cities may, upon the application of any person issue a license to such person to carry a loaded pistol or revolver in this state, if it appears that the applicant is a suitable person to be so licensed.

[Approved April 6, 1909.]

1913 N.H. Laws 484

AN ACT IN AMENDMENT TO CHAPTER 111, SECTION 1, OF THE LAWS OF 1909, RELATING TO THE CARRYING OF DANGEROUS WEAPONS.

SECTION 1. Section 1, chapter 114 of the Laws of 1909 is hereby amended by striking out the word "loaded" in the second line so that said section as amended shall read: [SECTION 1.] Whoever, except as provided by the laws of this state, carries on his person a pistol or revolver, or any stiletto, dagger, dirk-knife, slungshot, or metallic knuckles, shall upon conviction be punished by a fine not exceeding one hundred dollars or by imprisonment not exceeding one year or by both such fine and imprisonment; and any such weapon or article so carried by him shall be confiscated to the use of the state.

SECT. 2. This act shall take effect upon its passage.

[Approved March 6, 1913.]

1923 N.H. Laws 138

SECTION 1. Pistol or revolver, as used in this act shall be construed as meaning any firearm with a barrel less than twelve inches in length.

SECT. 2. If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall in addition to the punishment provided for the crime, be punished by imprisonment for not more than five years.

SECT. 3. No unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another shall own or have in his possession or under his control a pistol or revolver, except as hereinafter provided. Violations of this section shall be punished by imprisonment for not more than two years and upon conviction the pistol or revolver shall be confiscated and destroyed.

SECT. 4. No person shall carry a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment not exceeding one year or by both fine and imprisonment.

SECT. 5. The provisions of the preceding sections shall not apply to marshals, sheriffs, policemen, or other duly appointed peace and other law enforcement

officers, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps of the United States, nor to the national guard when on duty, nor to organizations by law authorized to purchase or receive such weapons, nor to duly authorized military or civil organizations when parading, or the members thereof when at or going to or from their customary places of assembly.

SECT. 6. The selectmen of towns or the mayor or chief of police of cities may, upon application of any person issue a license to such person to carry a loaded pistol or revolver in this state, for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury' to his person or property or for any other proper purpose, and that he is a suitable person to be licensed. The license shall be in duplicate and shall bear the name, address, description, and signature of the licensee. The original thereof shall be delivered to the licensee, the duplicate shall be preserved by the selectmen of towns and the chief of police of the cities wherein issued for a period of one year.

SECT. 7. Any person or persons who shall sell, barter, hire, lend or give to any minor under the age of twenty-one years any pistol or revolver shall be deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than one hundred dollars or be imprisoned not more than three months, or both. This section shall not apply to fathers, mothers, guardians, administrators, or executors who give to their children, wards, or heirs to an estate, a revolver.

SECT. 8. No person shall sell, deliver, or otherwise transfer a pistol or revolver to a person who is an unnaturalized foreign-born person or has been convicted of a felony against the person property of another, except upon delivery of a written permit to purchase, signed by the selectmen of the town or the mayor or chief of police of the city. Before a delivery be made the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, sign and forward to the chief of police of the city or selectmen of the town one copy thereof and shall retain the other copy for one year. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than one year, or by both such fine and imprisonment.

SECT. 9. Whoever, without being licensed as hereinafter provided, sells, advertises, or exposes for sale, or has in his possession with intent to sell, pistols or revolvers, shall be punished by imprisonment for not more than two years.

SECT. 10. The selectmen of towns and the chief of police of cities may grant licenses, the form of which shall be prescribed by the secretary of state, effective for not more than one year from date of issue, permitting the licensee to sell at retail pistols and revolvers subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered (a) to a purchaser not personally known to the seller or who does not present clear evidence of his identity; nor (b) to an unnaturalized foreign-born person or a person who has been convicted of a felony and has no permit as required by section 8 of this act.

A true record, in duplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the secretary of state and shall be signed by the purchaser and by the person effecting the sale, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, and nationality of the purchaser. One copy of said record shall, within seven days, be forwarded to the selectmen of the town or the chief of police of the city and the other copy retained for one year.

SECT. 11. If any person in purchasing or. otherwise securing delivery of a pistol or revolver shall give false information or offer false evidence of his identity he shall be punished by imprisonment punished, for not more than two years.

SECT. 12. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearms upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed or obliterated the same. Violations of this section shall be punished by a fine of not more than two hundred dollars or by imprisonment for not more

than one year, or both.

SECT. 13. All licenses heretofore issued within the state permitting the carrying of pistols or revolvers upon the person shall expire at midnight of July 31, 1923.

SECT. 14. This act shall not apply to antique pistols or revolvers incapable of use as such.

SECT. 15. All acts and parts of acts inconsistent herewith are hereby repealed, and this act shall take effect upon its passage.

## **NEW JERSEY**

The Grants, Concessions, And Original Constitutions Of The Province Of New Jersey Page 289-290 (1881) (1686). Laws Passed in 1686.

Chap. IX.

An Act against wearing Swords, &c.

WHEREAS there hath been great complaint by the inhabitants of this Province, that several persons wearing swords, daggers, pistols, dirks, stilladoes, skeines, or any other unusual or unlawful weapons, by reason of which several persons in this Province, receive great abuses, and put in great fear and quarrels, and challenges made, to the great abuse of the inhabitants of this Province. *Be it therefore enacted* by the Governor, and Council, and Deputies now met in General Assembly, and by authority of the same, that no person or persons within this Province, presume to send any challenge in writing, by word of mouth, or message, to any person to fight, upon pain of being imprisoned during the space of six months, without bail or mainprize, and forfeit ten pounds ; and whosoever shall except of such challenge, and not discover the same to the Governor, or some publick officer of the peace, shall forfeit the sum of ten pounds ; the one moiety of the said forfeiture to be paid unto the Treasurer for the time being, for the public use of the Province, and the other moiety to such person or persons as shall discover the same, and make proof thereof in any court of record within this Province, to be recovered by the usual action of debt, in any of the said courts. *And be it further enacted* by the authority aforesaid, that no person or persons after publication hereof, shall presume privately to wear any pocket pistol, skeines, stilladers, daggers or dirks, or other unusual or unlawful weapons within this Province, upon penalty for the first offence five pounds, and to be committed by any justice of the peace, his warrant before whom proof thereof shall be made, who is hereby authorized to enquire of and proceed in the same, and keep in custody till he hath paid the said five pounds, one half to the public treasury for the use of this Province, and the other half to the informer : And if such person shall again offend against this law, he shall be in like manner committed (upon proof thereof before any justice of the peace) to the common gaol, there to remain till the next sessions, and upon conviction thereof by verdict of twelve men, shall receive judgment to be in prison six month, and pay ten pounds for the use aforesaid. *And be it further enacted* by the authority aforesaid, that no planter shall ride or go armed with sword, pistol, or dagger, upon the penalty of five pounds, to be levied as aforesaid, excepting all officers, civil and military, and soldiers while in actual service, as also all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably. https://archive.org/details/grantsconcession00newj/page/288/mode/2up?q=swords

Charles Nettleton, Laws of the State of New-Jersey Page 474, Image 501 (1821) available at The Making of Modern Law: Primary Sources.

84

Sentence Enhancement for Use of Weapon | New Jersey | 1799
[An Act to Describe, Apprehend and Punish Disorderly Persons (1799)], § 2.
And whereas diverse ill disposed persons are frequently apprehended, having upon them implements for house-breaking, or offensive weapons, or are found in or upon houses, warehouses, stables, barns or out-houses, areas of houses, coach-houses, smoke-houses, enclosed yards, or gardens belonging to houses, with intent to commit theft, misdemeanors or other offences; and although their evil purposes are thereby manifested, the power of the justices of the peace to demand of them sureties for their good behavior hath not been of sufficient effect to prevent them from carrying their evil purpose into execution; Be it further enacted, That if any person shall be apprehended, having upon him or her any picklock, key, crow, jack, bit or other implement, with an intent to break and enter into any dwelling-house or out-house; or shall have upon him or her any pistol, hanger, cutlass, bludgeon, or other offensive weapon, with intent to assault any person; or shall be found in or upon any dwelling-house, ware-house, stable, barn, coach-house, smoke-house or out-house, or in any enclosed yard or garden, or area belonging to any house, with an intent to steal any goods or chattels, then he or she shall be deemed and adjudged to be a disorderly person.

Ordinances of Jersey City, Passed By The Board Of Aldermen since May 1, 1871, under the Act Entitled "An Act to Re-organize the Local Government of Jersey City," Passed March 31, 1871, and the Supplements Thereto Page 41, Image 41 (1874) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | New Jersey | 1871
An Ordinance To Prevent the Carrying of Loaded or Concealed Weapons within the Limits of Jersey City. The Mayor and Aldermen of Jersey City do ordain as follows: § 1. That it shall not be lawful for any person or persons (excepting policemen and private watchmen when on duty), within the corporate limits of Jersey City, to carry, have, or keep concealed on his or her person any instrument or weapon commonly known as a slung-shot, billy, sand-club or metal knuckles, and any dirk or dagger (not contained as a blade of a pocket-knife), and loaded pistol or other dangerous weapon, under the penalty of not exceeding twenty dollars for each offense. § 2. That it shall not be lawful for any person or persons (excepting policemen and private watchmen when on duty), within the corporate limits of Jersey City, to carry or wear any sword in a cane, or air-gun, under the penalty of not exceeding twenty dollars for each offense. § 3. Any forfeiture on penalty arising under this ordinance may be recovered in the manner specified by the City Charter, and all persons violating any of the provisions aforesaid shall, upon conviction, stand committed until the same be paid.

Ordinances of Jersey City, Passed By The Board Of Aldermen since May 1, 1871, under the Act Entitled "An Act to Re-organize the Local Government of Jersey City," Passed March 31, 1871, and the Supplements Thereto Page 86- 87, Image 86-87 (1874) available at The Making of Modern Law: Primary Sources.
Carrying Weapons, Registration and Taxation | New Jersey | 1873
An Ordinance In Relation to the Carrying of Dangerous Weapons. The Mayor and Aldermen of Jersey City do ordain as follows: § 1. That with the exceptions made in the second section of this ordinance, no person shall, within the limits of Jersey City, carry, have or keep on his or her person concealed, any slung-shot, sand-club, metal knuckles, dirk or dagger not contained as a blade of a pocket knife, loaded pistol or other dangerous weapon. § 2. That policemen of Jersey City, when engaged in the performance of police duty, the sheriff and constables of the County of Hudson, and persons having permits, as hereinafter provided for, shall be and are excepted from the prohibitions of the first section of this ordinance. § 3. The Municipal Court of Jersey City may grant permits to carry any of the weapons named in the first section to such persons as should, from the nature of their profession, business or occupation, or from peculiar circumstances, be allowed so to do; and may, in granting such permits, impose such conditions and restrictions in each case as to the court shall seem proper. All applications for permits shall be made in open court, by the applicant in person, and in all cases the court shall require a written endorsement of the propriety of granting a permit from at least three reputable freeholders; nor shall any such permit be granted to any person until the court is satisfied that such person is temperate, of adult age, and capable of exercising self-control . Permits shall not be granted for a period longer than one year, and shall be sealed by the seal of the court. The possession of a permit shall not operate as an excuse unless the terms of the same are strictly complied with. In cases of emergency, permits may be granted by a single Justice of the Municipal Court, or by the Chief of Police, to be in force not longer than thirty days, but such permit shall not be renewable. §4. That no person shall, within the limits of Jersey City, carry any air gun or any sword cane. § 5. The penalty for a violation of this ordinance shall be a fine not exceeding fifty dollars, or imprisonment in the city prison not exceeding ten days, or both fine and imprisonment not exceeding the aforesaid amount and time, in the discretion of the court.

Mercer Beasley, Revision of the Statutes of New Jersey: Published under the
Authority of the Legislature; by Virtue of an Act Approved April 4, 1871 Page
304, Image 350 (1877) available at The Making of Modern Law: Primary Sources.
Sentence Enhancement for Use of Weapon | New Jersey | 1877
An Act Concerning Disorderly Persons, § 2.

And whereas, diverse ill-disposed persons are frequently apprehended, having
upon them implements for house-breaking, or offensive weapons, or are found in
or upon houses, warehouses, stables, barns or out-houses, areas of houses, coach-
houses, smoke-houses, enclosed yards, or gardens belonging to houses (as well as
places of public resort or assemblage), with intent to commit theft, misdemeanors
or other offences; and although their evil purposes are thereby manifested, the
power of the justices of the peace to demand of them sureties for their good
behavior hath not been of sufficient effect to prevent them from carrying their evil
purposes into execution; if any person shall be apprehended, having upon him or
her any picklock, key, crow, jack, bit or other implement with an intent to break
and enter into any building: or shall have upon him or her any pistol, hanger,
cutlass, bludgeon, or other offensive weapon, with intent to assault any person; or
shall be found in or near any dwelling house, warehouse, stable, barn, coach-house,
smoke-house, or out-house, or in any enclosed yard or garden, or area belonging to
any house, or in any place of public resort or assemblage for business, worship,
amusement, or other lawful purposes with intent to steal any goods or chattels, then
he or she shall be deemed and adjudged a disorderly person.

An Ordinance Concerning Firearms and Other Deadly Weapons, PLAINFIELD,
N.J., GEN. ORDINANCES §§ 1-2 (1902 Daily Press) (approved April 9, 1895).
An Ordinance Concerning Firearms and Other Deadly Weapons
The Inhabitants of the City of Plainfield, by their Common Council, do enact as
follows:

Section 1. That no person shall fire or discharge any gun, fowling piece or
firearms within the limits of the City of Plainfield, under a penalty of a fine not
exceeding twenty dollars for every such offence; PROVIDED, however, that this
section shall not apply to the use of such weapons at any military exercise or
review, or target practice duly authorized by the military authority of this State, or
by the Common Council, or the Mayor, or in the lawful defence of the person,
family or property of any citizen; and PROVIDED further that this section shall
not apply to the discharge of blank cartridges or charges of powder on the fourth
day of July.

Sec 2. That no person shall carry within the limits of the City of Plainfield
concealed upon or about his person, any pistol, dirk, butcher or bowie knife,
stilletto, dagger, sword, or spear in a cane, brass or metal knuckles, razor, slug

87

shot, or other deadly weapon, under a penalty of a fine not exceeding twenty dollars for each and every offence; PROVIDED that this section shall not apply to officers of the law or persons who are threatened with bodily harm."
An Ordinance Concerning Firearms and Other Deadly Weapons, PLAINFIELD, N.J., GEN. ORDINANCES §§ 1-2 (1902 Daily Press) (approved April 9, 1895). The Charter and General Ordinances of the City of Plainfield, New Jersey: In Force May 9th, 1902 (Plainfield, NJ: The Daily Press Print, 1902), 125-126. An Ordinance Concerning Firearms and Other Deadly Weapons, §§ 1-2. Approved April 9, 1895.

1905 N.J. Laws 324-25, A Supplement to an Act Entitled "An Act for the Punishment of Crimes," ch. 172, § 1.
Any person who shall carry any revolver, pistol or other deadly, offensive or dangerous weapon or firearm or any stiletto, dagger or razor or any knife with a blade of five inches in length or over concealed in or about his clothes or person, shall be guilty of a misdemeanor, and upon conviction thereof shall be punishable by a fine not exceeding two hundred dollars or imprisonment at hard labor, not exceeding two years, or both;. . . .


## NEW MEXICO

1852 N.M. Laws 67, An Act Prohibiting the Carrying a Certain Class of Arms, within the Settlements and in Balls, § 1.
That each and every person is prohibited from carrying short arms such as pistols, daggers, knives, and other deadly weapons, about their persons concealed, within the settlements, and any person who violates the provisions of this act shall be fined in a sum not exceeding ten dollars, nor less than two dollars, or shall be imprisoned for a term not exceeding fifteen days nor less than five days.

1853 N.M. Laws 406, An Act Prohibiting The Carrying Of Weapons Concealed Or Otherwise, § 25.
That from and after the passage of this act, it shall be unlawful for any person to carry concealed weapons on their persons, or any class of pistols whatever, bowie knife, cuchillo de cinto (belt buckle knife), Arkansas toothpick, Spanish dagger, slung shot, or any other deadly weapon, of whatever class or description that may be, no matter by what name they may be known or called under the penalties and punishment which shall hereinafter be described.

1859/60 N.M. Laws 94, § 1-2.

§ 1. That from and after the passage of this act, it shall be unlawful for any person to carry concealed weapons on their persons, of any class of pistols whatever, bowie knife (cuchillo de cinto), Arkansas toothpick, Spanish dagger, slung-shot, or any other deadly weapon, of whatever class or description they may be, no matter by what name they may be known or called, under the penalities and punishment which shall hereinafter be described. § 2. Be it further enacted: That if any person shall carry about his person, either concealed or otherwise, any deadly weapon of the class and description mentioned in the preceeding section, the person or persons who shall so offend, on conviction, which shall be by indictment in the district court, shall be fined in any sum not less than fifty dollars, nor more than one hundred dollars, at the discretion of the court trying the cause, on the first conviction under this act; and for the second conviction, the party convicted shall be imprisoned in the county jail for a term of not less than three months, nor more than one year, also at the discretion of the court trying the cause.

1864-1865 N.M. Laws 406-08, An Act Prohibiting the Carrying of Weapons Concealed or Otherwise, ch. 61, § 25, 1864.
That from and after the passage of this act, it shall be unlawful for any person to carry concealed weapons on their persons, or any class of pistols whatever, bowie knife (cuchillo de cinto), Arkansas toothpick, Spanish dagger, slungshot, or any other deadly weapon, of whatever class or description that may be, no matter by what name they may be known or called, under the penalties and punishment which shall hereinafter be described.

LeBaron Bradford Prince, The General Laws of New Mexico: Including All the Unrepealed General Laws from the Promulgation of the "Kearney Code" in 1846, to the End of the Legislative Session of 1880, with Supplement, Including the Session of 1882 Page 312-313, Image 312-313 (1882) available at The Making of Modern Law: Primary Sources. 1869.
Deadly Weapons, Act of 1869, Ch. 32, § 1. It shall be unlawful for any person to carry deadly weapons, either concealed or otherwise, on or about their persons within any of the settlements of this Territory, except it be in the lawful defense of themselves, their families or their property, and the same being then and there threatened with danger, or by order of legal authority, or on their own landed property, or in execution of an order of court. § 2. Deadly weapons, in the meaning of this act, shall be construed to mean all kinds and classes of pistols, whether the same be a revolver, derringer, repeater, or any other kind or class of pistol; any and all kinds of bowie knives, daggers, poniards, butcher knives, dirk knives and all such weapons with which cuts can be given or by which wounds can be inflicted by thrusting, including sword canes and such sharp-pointed canes with which

89

deadly thrusts can be given, and all kinds of slung-shots, and any other kinds of deadly weapon, by whatever name it may be called, by which a dangerous wound can be inflicted. § 3. The penalty for the violation of the preceding sections of this act shall not be less than ten dollars nor more than fifty dollars for each offense, or not less than ten days' imprisonment nor more than fifty days' imprisonment in the county jail, or both; such fine and imprisonment in the discretion of the jury trying the case.

Ch. 21—Deadly Weapon, §§ 1-3, ALBUQUERQUE, COMPILED ORDINANCES 81, 81-82 (1887 John Knox) (Albuquerque, New Mexico).
"CHAPTER XXI.
DEADLY WEAPON.
   1. It shall be unlawful for any person to carry a deadly weapon, either concealed or unconcealed, within the limits of the town of Albuquerque, unless the same be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority, or unless such person be a regularly authorized officer of the law in the discharge of his official duty.
   2. Deadly weapons, within the meaning of this preceding section, shall be construed to mean any and all kinds and classes of guns, pistols and revolvers, slung-shots, loaded or sword canes or sand-bags, and all kinds and classes of weapons and instruments, by whatever name they may be called, by which a dangerous wound can be inflicted.
   3. Any person convicted of a violation of Sections 1 or 2 shall be punished by a fine of not less than ten dollars nor more than fifty dollars, or by imprisonment in the county jail or town prison for a period not less than ten days nor more than sixty days, or by both such fine and imprisonment, in the discretion of the court."
Full Text: 1887, NM, Compiled Ordinances, Town of Albuquerque, ch. 21—Deadly Weapon, §§ 1-3.
 William C. Heacock, ed., Compiled Ordinances: Town of Albuquerque (Albuquerque, NM:  John Knox, 1887), 81-2. Chapter 21—Deadly Weapon, §§ 1-3. (Not Dated).

## NEW YORK

1642 N.Y. Laws 33, Ordinance Of The Director And Council Of New Netherland Against Drawing A Knife And Inflicting A Wound Therewith
. . . No one shall presume to draw a knife much less to would any person, under the penalty of fl.50, to be paid immediately, or, in default, to work three months with

the Negroes in chains; this, without any respect of person. Let every one take heed against damage and be warned.

Laws And Ordinances Of New Netherland, 1638-1674 Page 35, Image 67 (A1868) available at The Making of Modern Law: Primary Sources. 1643.
Ordinance of the Director and Council of New Netherland Regulating the Burgher Guard, § 4 (1643). After the watch is duly performed, and daylight is come, and the reveille beaten, whosoever discharges any gun or musket, without orders of his Corporal, shall pay one guilder.

1645 N.Y. Laws 47, By The Director And council Of New Netherland Further Prohibiting The Sale Of Firearms, etc., To Indians
Whereas the Director General and Council of New Netherland having long ere this noticed the dangerous practice of selling Guns, Powder and Lead to the Indians, and moreover published at the time an Ordinance prohibiting the same on pain of Death, notwithstanding which some persons have yet undertaken to barter all sorts of ammunition among the Heathen, purchasing the same secretly here and then transporting it up the River and elsewhere, to the serious injury of this Country, the strengthening of the Indians and the destruction of the Christians, as We are now, also, informed with certainty, that our enemies are better provided with Powder than we, which they contrive to obtain through other Barbarians, our friends. . .There, we must expressely forbid, as we hereby do, all persons from this time forth from daring to trade any munitions of War with the Indians, or under any pretense whatsoever, to transport them from here without express permission, on pain of being punished by Death, and having the vessel confiscated in which the same shall be found laden or to have been put on board. Let everyone be warned hereby and save himself from difficulty.

The Colonial Laws Of New York From The Year 1664 To The Revolution, Including The Charters To The Duke Of York, The Commissions And Instructions To Colonial Governors, The Dukes Laws, The Laws Of The Dongan And Leisler Assemblies, The Charters Of Albany And New York And The Acts Of The Colonial Legislatures From 1691 To 1775 Inclusive Page 687, Image 689 (1894) available at The Making of Modern Law: Primary Sources.
Race and Slavery Based | New York | 1664
Laws of the Colony of New York. And be it further enacted by the authority aforesaid that it shall not be lawful for any slave or slave to have or use any gun, pistol, sword, club or any other kind of weapon whatsoever, but in the presence or by the direction of his her or their Master or Mistress, and in their own ground on Penalty of being whipped for the same at the discretion of the Justice of the Peace

91

before whom such complaint shall come or upon the view of the said justice not exceeding twenty lashes on the bare back for every such offense.

Montgomery Hunt Throop, The Revised Statutes of the State of New York; As Altered by Subsequent Legislation; Together with the Other Statutory Provisions of a General and Permanent Nature Now in Force, Passed from the Year 1778 to the Close of the Session of the Legislature of 1881, Arranged in Connection with the Same or kindred Subjects in the Revised Statutes; To Which are Added References to Judicial Decisions upon the Provisions Contained in the Text, Explanatory Notes, and a Full and Complete Index Page 2512, Image 677 (Vol. 3, 1882) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | New York | 1866
An Act to Prevent the Furtive Possession and use of slung-shot and other dangerous weapons. Ch. 716, § 1.
Every person who shall within this state use, or attempt to use or with intent to use against any other person shall knowingly and secretly conceal on his person, or with like intent shall willfully and furtively possess any possess any instrument or weapon of the kind commonly known as slung-shot, billy, sand club or metal knuckles, and any dirk or dagger (not contained as a blade of a pocket knife), or sword-cane or air-gun shall be deemed guilty of felony, and on conviction thereof be punished by imprisonment in the state prison, or penitentiary or county jail, for a term not more than one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment. § 2. The having possession of any of the weapons mentioned in the first section of this act by any other than a public officer, willfully and secretly concealed on the person or knowingly and furtively carried thereon, shall be presumptive evidence of so concealing and possessing or carrying the same with the intent to use the same in violation of the provisions of this act.

George S. Diossy, The Statute Law of the State of New York: Comprising the Revised Statutes and All Other Laws of General Interest, in Force January 1, 1881, Arranged Alphabetically According to Subjects Page 321, Image 324 (Vol. 1, 1881) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | New York | 1881
Offenses Against Public Decency; Malicious Mischief, and Other Crimes not Before Enumerated, Concealed Weapons, § 9.
Every person who shall within this state use, or attempt to use, or with intent to use against any other person, shall knowingly and secretly conceal on his person, or with like intent shall willfully and furtively possess any instrument or weapon of the kind commonly known as a slung-shot, billy, sand club or metal knuckles, and

any dirk shall be deemed guilty of felony, and on conviction thereof may be punished by imprisonment in the state prison, or penitentiary or county jail, for a term not more than one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment.

George R. Donnan, Annotated Code of Criminal Procedure and Penal Code of the State of New York as Amended 1882-5 Page 172, Image 699 (1885) available at The Making of Modern Law: Primary Sources.
Carrying, Using, Etc., Certain Weapons, § 410.
A person who attempts to use against another, or who, with intent so to use, carries, conceals or possesses any instrument or weapon of the kind commonly known as the slung-shot, billy, sand –club or metal knuckles, or a dagger, dirk or dangerous knife, is guilty of a felony. Any person under the age of eighteen years who shall have, carry or have in his possession in any public street, highway or place in any city of this state, without a written license from a police magistrate of such city, any pistol or other fire-arm of any kind, shall be guilty of a misdemeanor. This section shall not apply to the regular and ordinary transportation of fire-arms as merchandise, or for use without the city limits. § 411. Possession, Presumptive Evidence. The possession, by any person other than a public officer, of any of the weapons specified in the last section, concealed or furtively carried on the person, is presumptive evidence of carrying, or concealing, or possessing, with intent to use the same in violation of that section.

Charter and Ordinances of the City of Syracuse: Together with the Rules of the Common Council, the Rules and Regulations of the Police and Fire Departments, and the Civil Service Regulations Page 215, Image 216 (1885) available at The Making of Modern Law: Primary Sources.
[Offenses Against the Public Peace and Quiet,] § 7.
Any person who shall carry about his or her person any dirk, bowie knife, sword or spear cane, pistol, revolver, slung shot, jimmy, brass knuckles, or other deadly or unlawful weapon, or shall use any deadly or unlawful weapon, with intent to do bodily harm to any person, shall be subject to a fine of not less than twenty-five nor more than one hundred dollars, or to imprisonment in the penitentiary of the county for not less than thirty days nor longer than three months, or to both such fine and imprisonment.

1900 N.Y. Laws 459, An Act to Amend Section Four Hundred and Nine of the Penal Code, Relative to Dangerous Weapons, ch. 222, § 1.
Possession by, Use of, and Sales to Minors and Others Deemed Irresponsible | New York | 1900

93

Making, et cetera, dangerous weapons. – A person who manufactures, or causes to be manufactured, or sells or keeps for sale, or offers, or gives, or disposes of any instrument or weapon of the kind usually known as slunghsot, billy, sand-club or metal knuckes, or who, in any city or incorporated village in this state, without the written consent of the police magistrate, sells or gives any pisol or other firearm, to any person under the age of eighteen years or without a like consent sells or gives away any air-gun, or spring-gun, or other instrument or weapon in which the propelling force is a spring or air to any person under ht age of twelve years, or who sells or gives away any instrument or weapon commonly known as a toy pistol, in or upon which any loaded or blank cartridges are used or may be used, to any person under the age of sixteen years, is guilty of a misdemeanor.

1911 N.Y. Laws 442, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, § 1.
Possession by, Use of, and Sales to Minors and Others Deemed Irresponsible | New York | 1911
Section[] eighteen hundred and ninety-six . . . [is] hereby amended . . . § 1896. Making and disposing of dangerous weapons. A person who manufactures, or causes to be manufactured, or sells or keeps for sale, or offers, or gives, or disposes of any instrument or weapon of the kind usually known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, or metal knuckles, to any person; or a person who offers, sells, loans, leases or gives any gun, revolver, pistol or other firearm or any airgun, spring-gun or other instrument or weapon in which the propelling force is a spring or air or any instrument or weapon commonly known as a toy pistol or in or upon which any loaded or blank cartridges are used, or may be used, or any loaded or blank cartridges or ammunition therefor, to any person under the age of sixteen years, is guilty of a misdemeanor.

1911 N.Y. Laws 442-43, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, § 1.

Section . . . eighteen hundred and ninety-seven . . . [is] hereby amended to read as follows: § 1897. Carrying and use of dangerous weapons. A person who attempts to use against another, or who carries, or possesses any instrument or weapon of the kind commonly known as a blackjack, slunghsot, billy, sandclub, sandbag, metal knuckles or bludgeon, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly instrument or weapon, is guilty of a felony. Any person under the age of sixteen years, who shall have, carry, or have in his possession, any of the articles named or described in the last section, which is forbidden therein to offer, sell, loan, lease or give to him, shall be guilty of a misdemeanor. . . . Any person over the age of sixteen years, who shall have or carry concealed upon his person in any city, village, or town of this state, any pistol, revolver, or other firearm without a written license therefor, theretofore issued to him by a police magistrate of such city or village, or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance of such city, village or town, shall be guilty of a felony.

1913 N.Y. Laws 1627-30, vol. III, ch. 608, § 1, Carrying and Use of Dangerous Weapons

Carrying Weapons, Dangerous or Unusual Weapons | New York | 1913

§ 1. A person who attempts to use against another, or who carries or possesses, any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bludgeon, bomb or bombshell, or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly instruments or weapon, is guilty of a felony.

1931 N.Y. Laws 1033, An Act to Amend the Penal Law in Relation to Carrying and Use of Glass Pistols, ch. 435, § 1.

Dangerous or Unusual Weapons | New York | 1931

A person who attempts to use against another an imitation pistol, or who carries or possesses any instrument or weapon of the kind commonly known as a black-jack, slungshot, billy, sand club, sandbag, metal knuckles, bludgeon, or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine gun, sawed off shot-gun, or any other dangerous or deadly instrument, or weapon is guilty of a misdemeanor, and if he has been previously convicted of any crime he is guilty of a felony.

95

## NORTH CAROLINA

N.C. Acts, General Sessions 1741, Chap. 5, 46-47
An Act to Appoint Constables
YOU shall swear, that you will well and truly serve our sovereign lord the King, in the office of a constable; you shall see and cause his Majesty's peace to be well and duly preserved and kept, according to your power; you shall arrest all such persons as, in your sight, shall ride or go armed offensively, or shall commit or make any riot, affray, or other breach of his Majesty's peace; you shall do your best endeavour, upon complaint to you made, to apprehend all felons and rioters, or persons riotously assembled and if any such offenders shall make resistance with force, you shall make hue and cry, and shall pursue them, according to law; you shall faithfully, and without delay, execute and return all lawful precepts to you directed; you shall well and duly, according to your knowledge, power and ability, do and execute all other things belonging to the office of a constable, so long as you shall continue in this office.

Francois Xavier Martin, A Collection of Statutes of the Parliament of England in Force in the State of North Carolina, 60-61 (Newbern 1792)
Item, it is enacted, that no man great nor small, of what condition soever he be, except the King's servants in his presence, and his Ministers in executing of the King's precepts, of their office, and such as be in their company assisting them, and also upon a cry made for arms to keep the peace, and the same in such places where such acts happen, be so hardy to come before the King's justices, or other of the King's Ministers doing their office with force and arms, nor bring no force in affray of peace, nor to go nor ride armed by night nor by day, in fairs, markets nor in the presence of the King's Justices, or other ministers, nor it [sic, likely "in"] no part elsewhere, upon pain to forfeit their armour to the King, and their bodies to prison at the King's pleasure. And that the King's Justices in their presence, Sheriffs and other ministers in their bailiwicks, Lords of Franchises, and their bailiffs in the same, and Mayors and Bailiffs of cities and boroughs, within the same cities and boroughs, and boroughholders, constables and wardens of the peace within their wards shall have power to execute this etc. [in original] And that the Justices assigned, at thier coming down into the country , shall have power to enquire how such officers and lords have exercised their offices in this case, and to punish them whom they find that have not done that which pertain to their office.

James Iredell, A Digested Manual of the Acts of the General Assembly of North Carolina, from the Year 1838 to the Year 1846, Inclusive, Omitting All the Acts of

a Private and Local Nature, and Such as were Temporary and Whose Operation Has Ceased to Exist Page 73, Image 73 (1847) available at The Making of Modern Law: Primary Sources, 1840.

Crimes and Punishments, 1840 – 1. – Ch. 30, If any free negro, mulatto, or free person of color shall wear, or carry about his or her person, or keep in his or her house, any shot gun, musket, rifle, pistol, sword, dagger, or bowie knife, unless he or she shall have obtained a license therefor from the Court of Pleas and Quarter Sessions of his or her county, within one year preceding the wearing, keeping or carrying thereof, he or she shall be guilty of a misdemeanor and may be indicted therefor.

James Iredell, A Digested Manual of the Acts of the General Assembly of North Carolina, from the Year 1838 to the Year 1846, Inclusive, Omitting All the Acts of a Private and Local Nature, and Such as were Temporary and Whose Operation Has Ceased to Exist Page 75, Image 75 (1847) available at The Making of Modern Law: Primary Sources, 1846.

Crimes and Punishments, 1846 – 7- Ch. 42. It shall not be lawful for any person or persons to sell or barter and deliver, to any slave, or slaves, any gun cotton, fire arms, swords, dirks or other side arms, unless those articles be for the owner or employer, and by the written order of the owner or employer of such slave or slaves, under the penalty of one hundred dollars for each offence, to be recovered, by warrant, before any Justice of the Peace, and applied, one half to the use of the party suing for the same, and the other half to the wardens of the poor of the county; and, moreover, may be indicted in the County or Superior Courts of Law; and the defendant, on conviction, shall be fined or imprisoned at the discretion of the Court; the fine, however, not to exceed fifty dollars, or the imprisonment three months.

1856-1857 N.C. Sess. Laws 34, Pub. Laws, An Act Entitled "Revenue," ch. 34, § 23, pt. 4, 1856.

On every pistol, except such as are used exclusively for mustering, and on every bowie-knife, one dollar and twenty five cents; on dirks and swordcanes, sixty five cents: Provided, however, That of said arms, only such shall be taxable, as at some time within the year have been used, worn or carried about the person of the owner, or of some other, by his consent.

1858-1859 N.C. Sess. Laws 34-36, Pub. Laws, An Act Entitled Revenue, chap. 25, § 27, pt. 15, 1858.

The following subjects shall be annually listed, and be taxed the amounts specified: . . . Every dirk, bowie-knife, pistol, sword-cane, dirk-cane and rifle cane, used or

worn about the person of any one at any time during the year, one dollar and twenty-five cents. Arms used for mustering shall be exempt from taxation.

1860-1861 N.C. Sess. Laws 68, Pub. Laws, An Act to Amend Chapter 107, Section 66, of the Revised Code, Relating to Free Negroes Having Arms, ch. 34, § 1, 1860.

That chapter 107, section 66, of the Revised Code be amended to read as follows: If any free negro shall wear or carry about his person or keep in his house any shot gun, musket, rifle, pistol, sword, sword cane, dagger, bowie knife, powder or shot, he shall be guilty of a misdemeanor, and upon conviction fined not less than fifty dollars.

North Carolina: N.C. Sess. Laws (1879) chap. 127, as codified in North Carolina Code, Crim. Code, chap. 25 (1883) § 1005, Concealed weapons, the carrying or unlawfully, a misdemeanor.

If any one, except when on his own premises, shall carry concealed about his person any pistol, bowie knife, dirk, dagger, slungshot, loaded case, brass, iron or metallic knuckes or razor or other deadly weapon or like kind, he shall be guilty of a misdemeanor, and be fined or imprisoned at the discretion of the court. And if anyone not being on his own lands, shall have about his person any such deadly weapon, such possession shall be prima facie evidence of the concealment thereof. . .

## NORTH DAKOTA

1864-1865 General Laws and Private Laws, and Memorials and Resolutions, of the Territory of Dakota, of the Fourth Session of the Legislative Assembly, 4(General Laws), 30-204; 128.

Sec. 453. Every person who manufactures or causes to be manufactured, or sells, or offers or keeps for sale, or gives or disposes of any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a misdemeanor.

Sec. 454. Every person who carries upon his person, whether concealed or not, or uses or attempts to use against another, any instrument or weapon of the kind usually known as slung shot or of any similar kind, is guilty of felony.

Sec. 455. Every person who carries concealed about his person any description of fire-arms, being loaded or partly loaded or any sharp or dangerous weapon such as is usually employed in attack or defense of the person, is guilty of a misdemeanor.

1895 N.D. Rev. Codes 1293, Penal Code, Crimes Against the Public Health and Safety, ch. 40, §§ 7312-13.

§ 7312. Carrying or using slung shot. Every person who carries upon his person, whether concealed or not, or uses or attempts to use against another, any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a felony.

§ 7313. Carrying concealed weapons. Every person who carries concealed about his person any description of firearms, being loaded or partly loaded, or any sharp or dangerous weapon, such as is usually employed in attack or defense of the person, is guilty of a misdemeanor.

1915 N.D. Laws 96, An Act to Provide for the Punishment of Any Person Carrying Concealed Any Dangerous Weapons or Explosives, or Who Has the Same in His Possession, Custody or Control, unless Such Weapon or Explosive Is Carried in the Prosecution of a Legitimate and Lawful Purpose, ch. 83, §§ 1-3, 5.

§ 1. Any person other than a public officer, who carries concealed in his clothes any instrument or weapon of the kind usually known as a black-jack, slung-shot, billy, sand club, sand bag, bludgeon, metal knuckles, or any sharp or dangerous weapon usually employed in attack or defense of the person, or any gun, revolver, pistol or other dangerous fire arm loaded or unloaded, or any person who carries concealed nitro-glycerin, dynamite, or any other dangerous or violent explosive, or has the same in his custody, possession or control, shall be guilty of a felony, unless such instrument weapon or explosive is carried in the prosecution of or to effect a lawful and legitimate purpose. § 2. The possession, in the manner set forth in the preceeding Section, of any of the weapons or explosives mentioned therein, shall be presumptive evidence of intent to use the same in violation of this act. § 3. Penalty – Any person upon conviction of violating the provisions of this Act, shall, in the discretion of the court, be imprisoned in the State Penitentiary nor more than two years, or in the county jail not more than one year, or by a fine of not more than one hundred dollars, or by both such fine and imprisonment. Provided, however, that any citizen of good moral character may, upon application to any district court, municipal, or justice of the court, be granted the permission to carry a concealed weapon upon the showing of reasonable cause. . . . § 5. Emergency. An emergency is hereby declared to exist in that professional criminals are frequently found to carry concealed about their persons, the dangerous weapons or explosives mentioned in Section 1 of this Act. And, whereas, the present law is inadequate to prevent such criminals from carrying concealed weapons or explosives; therefore, this Act shall take effect and be in force from and after its passage and approval.

# OHIO

1788-1801 Ohio Laws 20, A Law Respecting Crimes and Punishments . . . , ch. 6.
Sentence Enhancement for Use of Weapon | Ohio | 1788
Burglary . . . If the person or persons so breaking and entering any dwelling house, shop, store or vessel as aforesaid, shall commit, or attempt to commit any personal abuse, force, or violence, or shall be so armed with any dangerous weapon or weapons as clearly to indicate a violent intention, he, she or they so offending, upon conviction thereof, shall moreover, forfeit all his, her or their estate, real and personal, to this territory, out of which the party injured shall be recompensed as aforesaid, and the offender shall also be committed to any gaol [jail] in the territory for a term not exceeding forty years.

1859 Ohio Laws 56, An Act to Prohibit the Carrying or Wearing of Concealed Weapons, § 1.
Carrying Weapons | Ohio | 1859
[W]hoever shall carry a weapon or weapons, concealed on or about his person, such as a pistol, bowie knife, dirk, or any other dangerous weapon, shall be deemed guilty of a misdemeanor, and on conviction of the first offense shall be fined not exceeding two hundred dollars, or imprisoned in the county jail not more than thirty days; and for the second offense, not exceeding five hundred dollars, or imprisoned in the county jail not more than three months, or both, at the discretion of the court.

Joseph Rockwell Swan, The Revised Statutes of the State of Ohio, of a General Nature, in Force August 1, 1860. With Notes of the Decisions of the Supreme Court Page 452, Image 464 (1860) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Ohio | 1859
An Act to Prohibit the Carrying or Wearing of Concealed Weapons, §§ 1-2.
§ 1. Be it enacted by the General Assembly of the State of Ohio, that whoever shall carry a weapon or weapons, concealed on or about his person, such as a pistol, bowie knife, dirk, or any other dangerous weapon, shall be deemed guilty of a misdemeanor, and on conviction of the first offense shall be fined not exceeding two hundred dollars, or imprisoned in the county jail not more than thirty days; and for the second offense, not exceeding five hundred dollars, or imprisoned in the county jail not more than three months, or both, at the discretion of the court. Sec. § 2. If it shall be proved to the jury, from the testimony on the trial of any case presented under the [section of this act banning the carrying of concealed weapons], that the accused was, at the time of carrying any of the weapon or

100

weapons aforesaid, engaged in the pursuit of any lawful business, calling, or employment, and that the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid for the defense of his person, property or family, the jury shall acquit the accused.

Michael Augustus Daugherty, The Revised Statutes and Other Acts of a General Nature of the State of Ohio: In Force January 1, 1880 Page 1633, Image 431 (Vol. 2, 1879) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Ohio | 1880
Offences Against Public Peace, § 6892.
Whoever carries any pistol, bowie-knife, dirk, or other dangerous weapon, concealed on or about his person, shall be fined not more than two hundred dollars, or imprisoned not more than five hundred dollars, or imprisoned not more than three months, or both.

Ordinance No. 8191, §§ 9 & 25, COLUMBUS, ANN. REP. OF THE VARIOUS DEP'TS OF THE CITY at 16, 16-31 (Law Passed 1894; Published 1896 by Westbote).
"AN ORDINANCE—No. 8191.
Making certain offenses therein named misdemeanors...
...Concealed Weapons.
   SEC. 9. Whoever shall wear under his clothes, or concealed about his person, any pistol or revolver, colt, billy, slungshot, brass knuckles or knuckles of lead, dirk, dagger or any knife resembing a bowie knife or any other dangerous or deadly weapon within the corporate limits of the city of Columbus, shall, on conviction thereof, be fined not exceeding one hundred dollars for each and every offense; nothing in this section, however, shall be so construed as to prevent the United States marshals and their deputies, sheriffs and their deputies, and regular or special police officers of the city from carrying or wearing such weapons as may be deemed necessary in the proper discharge of their duties; provided, however, if it shall be proved from the testimony on the trial of any such case that the accused was, at the time of carrying any weapon as aforesaid, engaged in the pursuit of any lawful business, calling or employment, and the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid for the defense of his person, property or family the accused shall be acquitted...
...Firearms, Firecrackers, Etc.
   SEC. 25. Whoever shall throw, cast or let off any skyrocket, squib, cracker, firework or other thing charged with gunpowder; or discharge any common gun or

pistol in this city, without a written permit from the mayor, shall be deemed guilty of a misdemeanor and upon conviction thereof be fined not less than one nor more than twenty dollars, or be imprisoned not more than ten days, or both...

...Passed January 22, 1894."

## OKLAHOMA

1890 Okla. Laws 495, art. 47
Brandishing, Carrying Weapons, Hunting, Possession by, Use of, and Sales to Minors and Others Deemed Irresponsible | Oklahoma | 1890

§ 1. It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

§ 2. It shall be unlawful for any person in the Territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

§ 3. It shall be unlawful for any person within this Territory, to sell or give to any minor any of the arms or weapons designated in sections one and two of this article.

§ 4. Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under to other circumstances: Provided, however, That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

§ 5. Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while traveling or removing from one place to another, and not otherwise.

§ 7. It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly, any of the weapons designated in sections one and two of this article.

§ 8. It shall be unlawful for any person in this Territory to carry or wear any deadly weapons or dangerous instrument whatsoever, openly or secretly, with the intent or for the avowed purpose of injuring his fellow man.

§ 9. It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise.

1890 Okla. Sess. Laws 475, Crimes Against The Public Health And Safety, §§ 18-19.

§ 18. Every person who manufactures or causes to be manufactured, or sells or offers or keeps for sale, or gives or disposes of any instrument or weapon of the kind usually known as slung shot, or of any similar kind is guilty of a misdemeanor.

§ 19. Every person who carries upon his person, whether concealed or not or uses or attempts to use against another, any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a felony.

General Laws Relating to Incorporated Towns of Indian Territory Page 37, Image 33 (1890) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Oklahoma | 1890
Revised Ordinances of the Town of Checotah, Ordinance No. 11, § 3.
To wear or carry any pistol of any kind whatever, or any dirk, butcher knife or bowie knife, or a sword, or a spear in a cane, brass or metal knuckles or a razor, slung shot, sand bag, or a knife with a blade over three inches long, with a spring handle, as a weapon.

Leander G. Pitman, The Statutes of Oklahoma, 1890. (From the Laws Passed by the First Legislative Assembly of the Territory) Page 495-496, Image 511-512 (1891) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Oklahoma | 1891
Concealed Weapons, §§ 1, 2, 4-10.
§ 1. It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

§ 2. It shall be unlawful for any person in this territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

§ 4. Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances: Provided, however That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

§ 5. Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while travelling or removing from one place to another, and not otherwise.

§ 6. Any person violating the provisions of any one of the forgoing sections, shall on the first conviction be adjudged guilty of a misdemeanor and be punished by a fine of not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not to exceed thirty days or both at the discretion of the court. On the second and every subsequent conviction, the party offending shall on conviction be fined not less than fifty dollars nor more than two hundred and fifty dollars or be imprisoned in the county jail not less than thirty days nor more than three months or both, at the discretion of the court.

§ 7. It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly, any of the weapons designated in sections one and two of this article.

§ 8. It shall be unlawful for any person in this territory to carry or wear any deadly weapons or dangerous instrument whatsoever, openly or secretly, with the intent or for the avowed purpose of injuring his fellow man.

§ 9. It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise.

§ 10. Any person violating the provisions of section seven, eight, or nine of this article; shall on conviction, be punished by a fine of not less than fifty dollars, nor more than five hundred and shall be imprisoned in the county jail for not less than three nor more than twelve months.

Wilson's Rev. & Ann. St. Okla.(1903) § 583, c. 25.
It shall be unlawful for any person in the territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife,

dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

## OREGON

1853 Or. Laws 220, Proceedings to Prevent Commission of Crimes, ch. 16, §17. If any person shall go armed with dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault, injury, or other violence to his person, or to his family or property, he may, on complaint of any other person, having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided.

1885 Or. Laws 33, An Act to Prevent Persons from Carrying Concealed Weapons and to Provide for the Punishment of the Same, §§ 1-2.
§ 1. It shall be unlawful for any person to carry concealed about his person in any manner whatever any revolver, pistol, or other fire-arm, or any knife (other than an ordinary pocket knife), or any dirk or dagger, slung-shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person.
§ 2. Any person violating any of the provisions of section one of this act shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than ten dollars nor more than two hundred dollars, or by imprisonment in the county jail not less than five days nor more than one hundred days, or by both fine and imprisonment, in the discretion of the court.

Laws of Oregon (1885), An Act to Prevent Persons from Carrying Concealed Weapons, § 1-4, p. 33, as codified in Ore. Code, chap. 8 (1892) § 1969.
It shall be unlawful for any person to carry concealed about his person in any manner whatever any revolver, pistol, or other fire-arm, or any knife (other than an ordinary pocket knife), or any dirk or dagger, slung-shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person.

The Charter of Oregon City, Oregon, Together with the Ordinances and Rules of Order Page 259, Image 261 (1898) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Oregon | 1898

An Ordinance Providing for the Punishment of Disorderly Persons, and Keepers and Owners of Disorderly Houses, § 2.

It shall be unlawful for any person to carry any sling shot, billy, dirk, pistol or any concealed deadly weapon or to discharge any firearms, air gun, sparrow gun, flipper or bean shooter within the corporate limits of the city, unless in self-defense, in protection of property or an officer in the discharge of his duty; provided, however, permission may be granted by the mayor to any person to carry a pistol or revolver when upon proper representation it appears to him necessary or prudent to grant such permission.

1917 Or. Sess. Laws 804-808, An Act Prohibiting the manufacture, sale, possession, carrying, or use of any blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, dirk, dagger or stiletto, and regulating the carrying and sale of certain firearms, and defining the duties of certain executive officers, and providing penalties for violation of the provisions of this Act, §§ 7-8.

Carrying Weapons | Oregon | 1917

§ 7. Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other firearm, or any instrument or weapon of the kind commonly known as a blackjack, slung-shot, billy, sandclub, sandbag, metal knuckles, bomb or bomb-shell, or any other dangerous or deadly weapon or instrument, is guilty of a felony. The carrying or possession of any of the weapons specified in this section by any person while committing, or attempting or threatening to commit a felony, or a breach of the peace, or any act of violence against the person or property of another, shall be presumptive evidence of carrying or possessing such weapon with intent to use the same in violation of this section.

Any person who violates the provisions of this section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine of not less than $50.00 nor more than $500.00, or by imprisonment in the county jail for not less than one month nor more than six months, or by imprisonment in the penitentiary for not exceeding five years.

§ 8. Whenever any person shall be arrested and it shall be discovered that such person possesses or carries or has possessed or carried upon his person any loaded pistol, revolver or other firearm, or any weapon named or enumerated in Section 7 of this Act, in violation of any of the sections of this Act, it shall be the duty of the person making the arrest to forthwith lay an information for a violation of said section or sections against the person arrested before the nearest or most accessible magistrate having jurisdiction of the offense, and such magistrate must entertain and examine such information and act thereon in the manner prescribed by law.

106

Section 11. Any person not a citizen of the United States of America, who shall be convicted of carrying a deadly weapon, as described in Sections 1, 2 and 7 of this Act, shall be guilty of a felony and on conviction thereof shall be punished by imprisonment in the State prison for a period not exceeding five years.

## PENNSYLVANIA

1851 Pa. Laws 382, An Act Authorizing Francis Patrick Kenrick, Bishop Of Philadelphia, To Convey Certain Real Estate In The Borough Of York, And A supplement To The Charter Of Said Borough, § 4.
That any person who shall willfully and maliciously carry any pistol, gun, dirk knife, slung shot, or deadly weapon in said borough of York ,shall be deemed guilty of a felon, and being thereof convicted shall be sentenced to undergo an imprisonment at hard labor for a term not less than 6 months nor more than one year and shall give security for future good behavior for such sum and for such time as the court before whom such conviction shall take place may fix . . . .

Laws of the City of Johnstown, Pa., Embracing City Charter, Act of Assembly of May 23, 1889, for the Government of Cities of the Third Class, General and Special Ordinances, Rules of Select and Common Councils and Joint Sessions Page 86, Image 86 (1897) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Pennsylvania | 1897
An Ordinance for the Security of Persons and Property of the Inhabitants of the City of Johnstown; The preservation of the Public Peace and Good Order of the City, and Prescribing Penalties for Offenses Against the Same, § 12.
No person shall willfully carry concealed upon his or her person any pistol, razor, dirk or bowie-knife, black jack, or handy billy, or other deadly weapon, and any person convicted of such offense shall pay a fine of not less than five dollars or more than fifty dollars with costs.

## RHODE ISLAND

1893 R.I. Pub. Laws 231, An Act Prohibiting The Carrying Of Concealed Weapons, chap. 1180, §§1-3.
Carrying Weapons, Sentence Enhancement for Use of Weapon | Rhode Island | 1893
§ 1. No person shall wear or carry in this state any dirk, bowie knife, butcher knife, dagger, razor, sword in cane, air gun, billy, brass or metal knuckles, slung shot, pistol or fire arms of any description, or other weapons of like kind and description

107

concealed upon his person: Provided, that officers or watchmen whose duties require them to make arrests or to keep and guard prisoners or property, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this act.

§ 2. Any person convicted of a violation of the provisions of section 1 shall be fined not less than twenty dollars nor more than two hundred dollars, or be imprisoned not less than six months nor more than one year.

§ 3. Whenever any person shall be arrested charged with any crime or misdemeanor, or for being drunk or disorderly, or for any breach of the peace, and shall have concealed upon his person any of the weapons mentioned in section 1, such person, upon complaint and conviction , in addition to the penalties provided in section 2, shall be subject to a fine of not less than five dollars nor more than twenty five dollars, and the confiscation of the weapon so found.


General Laws of the State of Rhode Island and Providence Plantations to Which are Prefixed the Constitutions of the United States and of the State Page 1010-1011, Image 1026-1027 (1896) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | Rhode Island | 1896

Offences Against Public Policy, §§ 23, 24, 26.

§ 23. No person shall wear or carry in this state any dirk, bowie-knife, butcher knife, dagger, razor, sword-in-cane, air-gun, billy, brass or metal knuckles, slung-shot, pistol or fire-arms of any description, or other weapons of like kind and description concealed upon his person: provided, that officers or watchmen whose duties require them to make arrests or to keep and guard prisoners or property, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this and the two following sections.

§ 24. Any person convicted of a violation of the provisions of the preceding section shall be fined not less than ten nor more than twenty dollars, or be imprisoned not exceeding three months, and the weapon so found concealed shall be confiscated . . . .

§ 26. No negative allegations of any kind need be averred or proved in any complaint under the preceding three sections, and the wearing or carrying of such concealed weapons or weapons shall be evidence that the wearing or carrying of the same is unlawful; but the respondent in any such case my show any fact that would render the carrying of the same lawful under said sections.

1908 (January Session) R.I. Pub. Laws 145, An Act in Amendment of section 23 of chapter 283 of the General Laws
Carrying Weapons | Rhode Island | 1908
§ 23. No person shall wear or carry in this state any dirk, dagger, razor, sword-in-cane, bowie knife, butcher knife, or knife of any description having a blade of more than three inches in length, measuring from the end of the handle, where the blade is attached to the end of said blade, any air gun, billy, brass or metal knuckles, slung-shot, pistol or firearms of any description, or other weapons of like kind and description, concealed upon his person: Provided, that officers or watchmen whose duties require them to arrest or to keep and guard prisoners or property, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provision of this and the two other following sections.

## SOUTH CAROLINA

1880 S.C. Acts 448, § 1, as codified in S.C. Rev. Stat. (1894). § 129 (2472.)
§ 1. Be it enacted by the Senate and House of Representatives of the State of South Carolina, not met and sitting in General Assembly, and by the authority of the same, That any person carrying a pistol , dirk, dagger, slung shot, metal knuckles, razor, or other deadly weapon usually used for the infliction of personal injury, concealed about his person shall be guilty of a misdemeanor and upon conviction thereof, before a Court of competent jurisdiction shall forfeit to the County the weapon so carried concealed and be fined in a sum not more than two hundred dollars, or imprisoned for not more than twelve months, or both, in the discretion of the Court.
§ 2. It shall be the duty of every Trial Justice, Sheriff, Constable, or other peace officer, to cause all persons violating this Act to be prosecuted therefor whenever they shall discover a violation hereof.

Act of Feb. 20, 1901, ch. 435, §1, 1901 S.C. Acts 748
Sec. 1. Be it enacted by the General Assembly of the State of South Carolina: That from and after the first day of July 1902 it shall be unlawful for any one to carry about the person whether concealed or not any pistol less than 20 inches long and 3 pounds in weight. And it shall be unlawful for any person, firm or corporation to manufacture, sell or offer for sale, or transport for sale or use into this State, any pistol of less length and weight. Any violation of this Section shall be punished by a fine of not more than one hundred dollars, or imprisonment for not more than thirty days and in case of a violation by a firm or corporation it shall forfeit the sum of one hundred dollars to and for the use of the school fund of the County

109

wherein the violation takes place to be recovered as other fines and forfeitures: Provided, this Act shall not apply to peace officers in the actual discharge of their duties, or to persons while on their own premises.

1923 S.C. Acts 221

If any person shall knowingly sell, offer for sale, give, or in any way dispose of to a minor any pistol or pistol cartridge, brass knucks, bowie knife, dirk, loaded cane or sling shot, he shall be guilty of a misdemeanor. Any person being the parent or guardian, of or attending in loco parentis to any child under the age of twelve years who shall knowingly permit such child to have the possession or custody of, or use in any manner whatever any gun, pistol, or other dangerous firearm, whether such firearm be loaded or unloaded, or any person who shall knowingly furnish such child any firearm, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not exceeding Fifty Dollars or imprisoned not exceeding thirty days.

## **SOUTH DAKOTA**

1864-1865 General Laws and Private Laws, and Memorials and Resolutions, of the Territory of Dakota, of the Fourth Session of the Legislative Assembly, 4(General Laws), 30-204; 128.

Sec. 453. Every person who manufactures or causes to be manufactured, or sells, or offers or keeps for sale, or gives or disposes of any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a misdemeanor.

Sec. 454. Every person who carries upon his person, whether concealed or not, or uses or attempts to use against another, any instrument or weapon of the kind usually known as slung shot or of any similar kind, is guilty of felony.

Sec. 455. Every person who carries concealed about his person any description of fire-arms, being loaded or partly loaded or any sharp or dangerous weapon such as is usually employed in attack or defense of the person, is guilty of a misdemeanor.

S.D. Terr. Pen. Code (1877), § 457 as codified in S.D. Rev. Code, Penal Code (1903), §§ 470-471. 1877; 1903.

§ 470. Every person who carries upon his person, whether concealed or not, or uses or attempt to use against another, any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a felony.

§ 471. Every person who carries concealed about his person any description of firearms, being loaded or partly loaded, or any sharp or dangerous weapons, such as is usually employed in attack or defense of the person, is guilty of a misdemeanor.

110

1933 S.D. Sess. Laws 245-47, An Act Relating to Machine Guns, and to Make Uniform the Law with Reference Thereto, ch. 206, §§ 1-8.

§ 1. "machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded from which more than five shots or bullets may be rapidly or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. "Crime of Violence" apples to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering, and larceny. "Person" applied to and includes firm, partnership, association or corporation.

§ 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than twenty years.

§ 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than fifteen years.

§ 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose; (a) When the machine gun is on premises not owned or rented for bona fide permanent residence or business occupancy by the person in whose possession the machine gun may be found; or (b) when in the possession of, or used by, an unnaturalized foreign born person, who has been convicted of a crime of violence in any court of record, state or federal of the United States of America, its territories or insular possessions; or (c) when the machine gun is of the kind described in §8 and has not been registered as in said section required; or (d) when empty or loaded pistol shells of 30 or larger caliber which have been or are susceptible or use in the machine gun are found in the immediate vicinity thereof.

§ 5. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

§ 6. Exceptions. Nothing contained in this act shall prohibit or interfere with (1.) the manufacture for, and sale of, machine guns to the miltary forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose; (2.) The possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake; (3.) The possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifstly not aggresive or offensive.

§ 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of

111

manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned given or delivered, or from whom received. Upon demand every manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provisions of this section shall be punishable by a fine of not more than five hundred dollars, or by imprisonment in the county jail, nfor not exceeding six months or by both such fine and imprisonment.

§ 8. Every machine gun now in this state adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the Secretary of State, on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within 24 hours after its acquisition. Blanks for registration shall be prepared by the Secretary of STate, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, ande from whom and the purpose for which, the gun was acquired. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section shall be presumed to possess the same for offensive and aggressive purpose.

## TENNESSEE

Judge Edward Scott, Laws of the State of Tennessee: Including Those of North Carolina Now in Force in this State: From the Year 1715 to the Year 1820, Inclusive Page 710, Image 714 (Vol. 1, 1821) The Making of Modern Law: Primary Sources. 1801

An Act for the Restraint of Idle and Disorderly Persons § 6. Be it enacted, That if any person or persons shall publicly ride or go armed to the terror of the people, or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person, it shall be the duty of any judge or justice, on his own view, or upon the information of any other person on oath, to bind such person or persons to their good behavior, and if he or they fail to find securities, commit him or them to jail, and if such person or persons shall continue so to offend, he or they shall not only forfeit their recognizance, but be liable to an indictment, and be punished as for a breach of the peace, or riot at common law.

1821 Tenn. Pub. Acts 15-16, An Act to Prevent the Wearing of Dangerous and Unlawful Weapons, ch. 13.

Robert Looney Caruthers, A Compilation of the Statutes of Tennessee, of a General and Permanent Nature, from the Commencement of the Government to the Present time: With References to Judicial Decisions, in Notes, to Which is Appended a New Collection of Forms Page 100, Image 105 (1836) available at The Making of Modern Law: Primary Sources. 1821

An Act of 1821, § 1. Every person so degrading himself by carrying a dirk, sword cane, Spanish stiletto, belt or pocket pistols, either public or private, shall pay a fine of five dollars for every such offence, which may be recovered by warrant before any justice of the peace, in the name of the county for its use, in which the offence may have been committed; and it shall be the duty of a justice to issue a warrant on the application, on oath, of any person applying; and it shall be the duty of every judge, justice of the peace, sheriff, coroner, and constable within this state, to see that this act shall have its full effect: Provided, that nothing herein contained shall affect any person that may be on a journey to any place out of his county or state.

1837-38 Tenn. Pub. Acts 200-01, An Act to Suppress the Sale and Use of Bowie Knives and Arkansas Tooth Picks in this State, ch 137, § 2.

That if any person shall wear any Bowie knife, Arkansas tooth pick, or other knife or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas toothpick under his clothes, or keep the same concealed about his person, such person shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than two hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail not less than three months and not more than six months.

1837-1838 Tenn. Pub. Acts 200, An Act to Suppress the Sale and Use of Bowie Knives and Arkansas Tooth Picks in this State, ch. 137, § 1.
That if any merchant, . . . shall sell, or offer to sell . . . any Bowie knife or knives, or Arkansas tooth picks . . . such merchant shall be guilty of a misdemeanor, and upon conviction thereof upon indictment or presentment, shall be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail for a period not less than one month nor more than six months.

1837-1838 Tenn. Pub. Acts 201, An Act to Suppress the Sale and Use of Bowie Knives and Arkansas Tooth Picks in the State, ch. 137, § 4.
That if any person carrying any knife or weapon known as a Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape or size resemble a Bowie knife, on a sudden rencounter [sic], shall cut or stab another person with such knife or weapon, whether death ensues or not, such person so stabbing or cutting shall be guilty of a felony, and upon conviction thereof shall be confined in the jail and penitentiary house of this state, for a period of time not less than three years, nor more than fifteen years.

Seymour Dwight Thompson, A Compilation of the Statute Laws of the State of Tennessee, of a General and Permanent Nature, Compiled on the Basis of the Code of Tennessee, With Notes and References, Including Acts of Session of 1870-1871 Page 125, Image 794 (Vol. 2, 1873) available at The Making of Modern Law: Primary Sources. [1856]
Offences Against Public Policy and Economy. § 4864.
Any person who sells, loans, or gives, to any minor a pistol, bowie-knife, dirk, Arkansas tooth-pick, hunter's knife, or like dangerous weapon, except a gun for hunting or weapon for defense in traveling, is guilty of a misdemeanor, and shall be fined not less than twenty-five dollars, and be imprisoned in the county jail at the discretion of the court.

William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, Together with the Acts of the Legislature Relating to the City, with an Appendix Page 190, Image 191 (1863) available at The Making of Modern Law: Primary Sources.

Offences Affecting Public Safety: Carrying Concealed Weapons, § 3.

It shall not be lawful for any person or persons to carry concealed about his or their persons any pistol, Bowie-knife, dirk, or any other deadly weapon; and any person so offending, shall upon conviction thereof before the Recorder, be fined not less than ten nor more than fifty dollars for each and every offence.

William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, from 1826 to 1867, Inclusive, Together with the Acts of the Legislature Relating to the City, with an Appendix Page 44, Image 44 (1867) available at The Making of Modern Law: Primary Sources.

Police Regulations Of The State, Offences Against Public Peace, §§ 4746, 4747, 4753, 4757.

§ 4746. Any person who carries under his clothes or concealed about his person, a bowie-knife, Arkansas tooth-pick or other knife or weapon of like form and shape or size, is guilty of a misdemeanor.

§ 4747. It is a misdemeanor to sell, or offer to sell, or to bring into the State for the purpose of selling, giving away or otherwise disposing of any knife or weapon mentioned in the preceding section.

§ 4753. No person shall ride or go armed to the terror of the people, or privately carry any dirk, large knife, pistol or any dangerous weapon, to the fear or terror of any person.

§ 4757. No person shall either publicly or privately carry a dirk, sword-cane, Spanish stiletto, belt or pocket pistol, except a knife, conspicuously on the strap of a shot-pouch, or on a journey to a place out of his county or State.

William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, from 1826 to 1867, Inclusive, Together with the Acts of the Legislature Relating to the City, with an Appendix Page 50, Image 50 (1867) available at The Making of Modern Law: Primary Sources.

Police Regulations of the State. Selling Liquors or Weapons to Minors. § 4864.

Any person who sells, loans or gives to any minor a pistol, bowie-knife, dirk, Arkansas toothpick, hunter's knife, or like dangerous weapon, except a gun for hunting or weapon for defense in traveling, is guilty of a misdemeanor and shall be fined not less than twenty-five dollars, and imprisoned in the county jail at the discretion of the court.

115

William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, from 1826 to 1867, Inclusive, Together with the Acts of the Legislature Relating to the City, with an Appendix Page 44, Image 44 (1867) available at The Making of Modern Law: Primary Sources.

Police Regulations Of the State. Offences Against Public Peace. Concealed Weapons. §§ 4746-4747.

§ 4746. Any person who carries under his clothes or concealed about his person, a bowie-knife, Arkansas tooth-pick or other knife or weapon of like form and shape or size, is guilty of a misdemeanor. Selling such weapons misdemeanor.

§ 4747. It is a misdemeanor to sell, or offer to sell, or to bring into the state for the purpose of selling, giving away or otherwise disposing of any knife or weapon mentioned in the preceding Section.

James H. Shankland Public Statutes of the State of Tennessee, since the Year 1858. Being in the Nature of a Supplement to the Code Page 108, Image 203 (Nashville, 1871) available at The Making of Modern Law: Primary Sources. 1869 Elections.

§ 2. That it shall not be lawful for any qualified voter or other person attending any election in this State, or for any person attending any fair, race course, or other public assembly of the people, to carry about his person, concealed or otherwise, any pistol, dirk, Bowie-knife, Arkansas toothpick, or weapon in form, shape, or size resembling a Bowie knife or Arkansas tooth-pick, or other deadly or dangerous weapon.

§ 3. That all persons convicted under the second section of this act shall be punished by fine of not less than fifty dollars, and by imprisonment, or both, at the discretion of the court.

Tenn. Pub. Acts (1879), chap. 186, as codified in Tenn. Code (1884). 5533: It shall not be lawful for any person to carry, publicly or privately, any dirk, razor concealed about his person, sword cane, loaded cane, slung-shot or brass knucks, Spanish stiletto, belt or pocket pistol, revolver, or any kind of pistol, except the army or navy pistol used in warfare, which shall be carried openly in hand.

William King McAlister Jr., Ordinances of the City of Nashville, to Which are Prefixed the State Laws Chartering and Relating to the City, with an Appendix Page 340-341, Image 345-346 (1881) available at The Making of Modern Law: Primary Sources.

Ordinances of the City of Nashville, Carrying Pistols, Bowie-Knives, Etc., § 1. That every person found carrying a pistol, bowie-knife, dirk-knife, slung-shot, brass knucks or other deadly weapon, shall be deemed guilty of a misdemeanor, and, upon conviction of such first offense, shall be fined form ten to fifty dollars, at the discretion of the court, but upon conviction of every such subsequent offense, shall be fined fifty dollars; Provided, however, that no ordinary pocket knife and common walking-canes shall be construed to be deadly weapons.

Claude Waller, Digest of the Ordinances of the City of Nashville, to Which are Prefixed the State Laws Incorporating, and Relating to, the City, with an Appendix Containing Various Grants and Franchises Page 364-365, Image 372-373 (1893) available at The Making of Modern Law: Primary Sources.

Ordinances of the City of Nashville, § 738.

Every person found carrying a pistol, bowie-knife, dirk-knife, slung-shot, brass knucks, or other deadly weapon, shall be deemed guilty of a misdemeanor, and, upon conviction of such first offense, shall be fined from ten to fifty dollars, at the discretion of the court; but, upon conviction of every subsequent offense, shall be fined fifty dollars; Provided, however, That no ordinary pocket-knife and common walking canes shall be construed to be deadly weapons. . .

## TEXAS

A Digest of the General Statute Laws of the State of Texas: to Which Are Subjoined the Repealed Laws of the Republic and State of Texas (Austin, Texas: Williamson S. Oldham & George W. White, comp., 1859)

Texas, Chapter 3, Act of August 28, 1856

Art. 493. If any person shall assault another with intent to murder, he shall be punished by confinement in the Penitentiary, not less than two years, nor more than seven years. If the assault be made with a bowie-knife, or dagger, the punishment shall be doubled. Page 520

https://babel.hathitrust.org/cgi/pt?id=mdp.39015073228879&view=1up&seq=538&q1=bowie%20knife

Art. 610. If any person be killed with a *bowie knife* or *dagger*, under circumstances which would otherwise render the homicide a case of manslaughter, the killing shall nevertheless be deemed murder, and punished accordingly. [emphasis in original] Page 534

117

https://babel.hathitrust.org/cgi/pt?id=mdp.39015073228879&view=1up&seq=552&q1=bowie%20knife

1870 Tex. Gen. Laws 63, An Act Regulating The Right To Keep And Bear Arms, Chap. 46, § 1

That if any person shall go into any church or religious assembly, any school room or other place where persons are assembled for educational, literary or scientific purposes, or into a ballroom, social party or other social gathering composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this State are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly, and shall have about his person a bowie-knife, dirk or butcher-knife, or fire-arms, whether known as a six shooter, gun or pistol of any kind, such person so offending shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than fifty or more than five hundred dollars, at the discretion of the court or jury trying the same. . .

1871 Tex. Laws 25, An Act to Regulate the Keeping and Bearing of Deadly Weapons.

§ 1. Be it enacted by the Legislature of the State of Texas, That any person carrying on or about his person, saddle, or in his saddle bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense, unless he had reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense of the State, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and on conviction thereof shall, for the first offense, be punished by fine of not less then than twenty-five nor more than one hundred dollars, and shall forfeit to the county the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fined imposed and collected shall go into the treasury of the county in which they may have been imposed; provided, that this section shall not be so contrued as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the State from keeping or carrying arms with their baggage; provided

118

further, that members of the Legislature shall not be included under the term "civil officers" as used in this act.

§ 2. Any person charged under the first section of this act, who may offer to prove, by way of defense, that he was in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

Tex. Act of Apr. 12, 1871, as codified in Tex. Penal Code (1879).
Art. 163.
If any person other than a peace officer, shall carry any gun, pistol, bowie knife, or other dangerous weapon, concealed or unconcealed, on any day of election , during the hours the polls are open, within the distance of one-half mile of any poll or voting place, he shall be punished as prescribed in article 161 of the code.

1879 Tex. Crim. Stat. tit. IX, Ch. 4 (Penal Code)
Art. 318. If any person in this state shall carry on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense, he shall be punished by fine of not less than twenty-five nor more than one hundred dollars; and, in addition thereto, shall forfeit to the county in which he is convicted, the weapon or weapons so carried.
Art. 319. The preceding article shall not apply to a person in actual service as a militiaman, nor to a peace officer or policeman, or person summoned to his aid, not to a revenue or other civil officer engaged in the discharge of official duty, not to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack, upon legal process.
Art. 320. If any person shall go into any church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball-room, social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other fire-arm, dirk,

119

dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of a knife manufactured and sold for the purposes of offense and defense, he shall be punished by fine not less than fifty nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person.

Art. 321. The preceding article shall not apply to peace officers, or other persons authorized or permitted by law to carry arms at the places therein designated.

Art. 322. Any person violating any of the provisions of articles 318 and 320, may be arrested without warrant by any peace officer, and carried before the nearest justice of the peace for trial; and any peace officer who shall fail to refuse to arrest such person on his own knowledge, or upon information from some credible person, shall be punished by fine not exceeding five hundred dollars.

Art. 323. The provisions of this chapter shall not apply to or be enforced in any county which the governor may designate, by proclamation, as a frontier county and liable to incursions by hostile Indians.

The Laws of Texas 1822-1897 Austin's Colonization Law and Contract; Mexican Constitution of 1824; Federal Colonization Law; Colonization Laws of Coahuila and Texas; Colonization Law of State of Tamaulipas; Fredonian Declaration of Indpendence; Laws and Decrees, with Constitution of Coahuila and Texas; San Felipe Convention; Journals of the Consultation; Proceedings of the General Council; Goliad Declaration of Independence; Journals of the Convention at Washington; Ordinances and Decrees of the Consultation; Declaration of Independence; Constitution of the Republic; Laws, General and Special, of the Republic; Annexation Resolution of the United States; Ratification of the same by Texas; Constitution of the United States; Constitutions of the State of Texas, with All the Laws, General and Special, Passed Thereunder, Including Ordinances, Decrees, and Resolutions, with the Constitution of the Confederate States and the Reconstruction Acts of Congress Page 1061, Image 1063 (Vol. 9, 1898) available at The Making of Modern Law: Primary Sources.

Unlawfully Carrying Arms, § 1. Be it enacted by the Legislature of the State of Texas: That Article 318 of the Penal Code shall be and the same is hereby amended so as to hereafter read as follows: Article 318. If any person in this state shall carry on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, or knuckles made of any metal or any hard substance, bowie-knife, or any other knife manufactured or sold for purposes of offence or defense, he shall be punished by fine of not less than twenty-five nor more than two hundred dollars, or by imprisonment in the county jail not less than ten nor more than thirty days, or both by such fine and imprisonment; and during the time of such imprisonment such offender may be put to work upon any public work in the county in which said offense is committed.

120

1897 Tex. Gen. Laws 221, An Act To Prevent The Barter, Sale And Gift Of Any
Pistol, Dirk, Dagger, Slung Shot, Sword Cane, Spear, Or Knuckles Made Of Any
Metal Or Hard Substance To Any Minor Without The Written Consent Of The
Parent Or Guardian Of Such Minor. . ., chap. 155.

That if any person in this State shall knowingly sell, give or barter, or cause to be
sold, given or bartered to any minor, any pistol, dirk, dagger, slung shot, sword-
cane, spear or knuckles made of any metal or hard substance, bowie knife or any
other knife manufactured or sold for the purpose of offense or defense, without the
written consent of the parent or guardian of such minor, or of someone standing in
lieu thereof, he shall be punished by fine of not less then twenty-five nor more than
two hundred dollars, or by imprisonment in the county jail not less than ten nor
more than thirty days, or by both such fine and imprisonment and during the time
of such imprisonment such offender may be put to work upon any public work in
the county in which such offense is submitted.

Theodore Harris, Charter and Ordinances of the City of San Antonio. Comprising
All Ordinances of a General Character in Force August 7th, Page 220, Image 225
(1899) available at The Making of Modern Law: Primary Sources.
Brandishing | Texas | 1899
Ordinances of the City of San Antonio, Ordinances, ch. 22, § 4.

If any person shall, within the city limits, draw any pistol, gun, knife, sword-cane,
club or any other instrument or weapon whereby death may be caused, in a
threatening manner, or for the purpose of intimidating others, such person shall be
deemed guilty of an offense.

## UTAH

Chapter 5: Offenses Against the Person, undated, reprinted in The Revised
Ordinances Of Provo City, Containing All The Ordinances In Force 105, 106-7
(1877) (Provo, Utah).

§ 182: Every person who shall wear, or carry upon his person any pistol, or other
firearm, slungshot, false knuckles, bowie knife, dagger or any other dangerous or
deadly weapon, is guilty of an offense, and liable to a fine in any sum not
exceeding twenty-five dollars; Provided, that nothing in this section, shall be
construed to apply to any peace officer, of the United States, the Territory of Utah,
or of this city.[2]

---

[2] See http://www.supremecourt.gov/DocketPDF/18/18-
280/99640/20190514123503867_Charles%20Appendix.pdf.

Dangerous and Concealed Weapon, Feb. 14, 1888, reprinted in The Revised
Ordinances Of Salt Lake City, Utah 283 (1893) (Salt Lake City, Utah). § 14.
Any person who shall carry any slingshot, or any concealed deadly weapon,
without the permission of the mayor first had and obtained, shall, upon conviction,
be liable to a fine not exceeding fifty dollars.

## VERMONT

Laws of Vermont, Public Acts, No. 85.—An Act Against Carrying Concealed
Weapons, Ch. 85, p. 95. 1892.
Section 1. A person who shall carry a dangerous or deadly weapon, openly or
concealed, with the intent or avowed purpose of injuring a fellow man, shall, upon
conviction thereof, be punished by a fine not exceeding two hundred dollars, or by
imprisonment not exceeding two years, or both, in the discretion of the court.
Sec. 2. A person who shall carry or have in his possession while a member of and
in attendance upon any school, any firearms, dirk knife, bowie knife, dagger or
other dangerous or deadly weapon shall, upon conviction thereof, be fined not
exceeding twenty dollars.
Approved November 19, 1892.
https://www.google.com/books/edition/Acts_and_Laws_Passed_by_the_Legislatur
e/DXFOAQAAIAAJ?hl=en&gbpv=1&dq=Vermont+%22while+a+member+of+an
d+in+attendance+upon+any+school,%22++%22any+firearms,+dirk+knife,+bowie
+knife,+dagger+or+other+dangerous+or+deadly+weapon%22%C2%A0&pg=PA9
5&printsec=frontcover

Ordinances of the City of Barre, Vermont
Carrying Weapons, Firing Weapons | Vermont | 1895
CHAPTER 16, § 18.
No person, except on his own premises, or by the consent and permission of the
owner or occupant of the premises, and except in the performance of some duty
required by law, shall discharge any gun, pistol, or other fire arm loaded with ball
or shot, or with powder only, or firecrackers, serpent, or other preparation whereof
gunpowder or other explosive substance is an ingredient, or which consists wholly
of the same, nor shall make any bonfire in or upon any street, lane, common or
public place within the city, except by authority of the city council.
CHAPTER 38, SEC. 7. No person shall carry within the city any steel or brass
knuckles, pistol, slung shot, stilletto, or weapon of similar character, nor carry any

weapon concealed on his person without permission of the mayor or chief of police in writing.[3]

---

[3] See http://www.supremecourt.gov/DocketPDF/18/18-280/99640/20190514123503867_Charles%20Appendix.pdf.

## VIRGINIA

1786 Va. Laws 35, ch. 49, An Act forbidding and punishing Affrays.
Be it enacted by the General Assembly, that no man, great nor small, of what condition soever he be, except the Ministers of Justice in executing the precepts of the Courts of Justice, or in executing of their office, and such as be in their company assisting them, be so hardy to come before the Justices of any Court, or other of their Ministers of Justice, doing their office, with force and arms, on pain, to forfeit their armour to the Commonwealth, and their bodies to prison, at the pleasure of a Court; nor go nor ride armed by night nor by day, in fair or markets, or in other places, in terror of the Country, upon pain of being arrested and committed to prison by any Justice on his own view, or proof of others, there to abide for so long a time as a Jury, to be sworn for that purpose by the said Justice shall direct, and in like manner to forfeit his armour to the commonwealth; but no person shall be imprisoned for such offence by a longer space of time than one month.
https://firearmslaw.duke.edu/wp-content/uploads/2020/03/1786-VA-Ch.-49-An-Act-Forbidding-and-Punishing-Affrays.pdf

Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force; with a New and Complete Index. To Which are Prefixed the Declaration of Rights, and Constitution, or Form of Government Page 187, Image 195 (1803) available at The Making of Modern Law: Primary Sources.
Race and Slavery Based | Virginia | 1792
[An Act to Reduce into one, the Several Acts Concerning Slaves, Free Negroes, and Mulattoes (1792),] §§ 8-9.
§8. No negro or mulatto whatsoever shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive, but all and every gun, weapon, and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person, and upon due proof thereof made before any Justice of the Peace of the County or Corporation where such seizure shall be, shall by his order be forfeited to the seizor for his own use ; and moreover, every such offender shall have and receive by order of such Justice, any number of lashes not exceeding thirty-nine, on his or her bare back, well laid on, for every such offense.

§ 9. Provided, nevertheless, That every free negro or mulatto, being a house-keeper, may be permitted to keep one gun, powder and shot; and all negroes and mulattoes, bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder, shot, and weapons offensive or defensive, by license from a Justice of Peace of the County wherein such plantation lies, to be obtained upon the application of free negroes or mulattoes, or of the owners of such as are slaves.

Acts of the General Assembly of Virginia, Passed at the Session of 1838, chap. 101, at 76; 1838.
Be it enacted by the general assembly, That if any person shall hereafter habitually or generally keep or carry about his person any pistol, dirk, bowie knife, or any other weapon of the like kind, from this use of which the death of any person might probabily ensue, and the same be hidden or concealed from common observation, and he be thereof convicted, he shall for every such offense forfeit and pay the sum of not less than fifty dollars nor more than five hundred dollars, or be imprisoned in the common jail for a term not less than one month nor more than six months, and in each instance at the discretion of the jury; and a moiety of the penalty recovered in any prosecution under this act, shall be given to any person who may voluntarily institute the same.

Acts of the General Assembly of Virginia, Passed at the Session of 1838, chap. 101, at 76
It is against the law to habitually or generally keep or carry about his person any pistol, dirk, bowie knife, or any other weapon of the like kind . . . hidden or concealed from common observation.

1847 Va. Laws 127, c. 14, § 16.
If any person shall go armed with any offensive or dangerous weapon without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may be required to find sureties for keeping the peace for a term not exceeding twelve months, with the right of appealing as before provided.

1847/48 Va. Laws 109
CHAPTER VII, OF OFFENSES AGAINST THE PUBLIC PEACE
8. Any free person who shall habitually carry about his person, hidden from common observation, any pistol, dirk, bowie knife, or weapon of the like kind, from the use of which the death of any person might probably ensue, shall for every offence be punished by fine not exceeding fifty dollars, and one moiety of

the recovery shall go to the person who shall voluntarily cause a prosecution for the same.

Staunton, The Charter and General Ordinances of the Town of Lexington, Virginia Page 87, Image 107 (1892) available at The Making of Modern Law: Primary Sources, 1867.

Ordinances of The Town of Lexington, VA, Of Concealed Weapons and Cigarettes, § 1. If any person carrying about his person, hid from common observation, any pistol, dirk, bowie-knife, razor, slung-shot, or any weapon of the like kind, he shall be fined not less than twenty dollars nor more than one hundred dollars; and any of such weapons mentioned shall be forfeited to the town. Nothing in this section shall apply to any officer of the town, county or state while in the discharge of his duty.

1869/70 Va. Laws 510

§ 7. If a person habitually carry about his person, hid from common observation, any pistol, dirk, bowie-knife, or any weapon of the like kind, he shall be fined fifty dollars, and imprisoned for not more than twelve months in the county jail. The informer shall have half of such fine.

Approved October 29, 1870

1874-75 Va. Acts Ch. 239, pp. 282-83.

Eighteenth. The aggregate value of all rifles, muskets, and other fire-arms, bowie-knives, dirks, and all weapons of a similar kind: provided, that all fire-arms issued by the state to members of volunteer companies or for purposes of police, shall not be listed for taxation.[4]

1881/82 Va. Laws 233

§ 7. If a person carry about his person, hid from common observation, any pistol, dirk, bowie-knife, or any weapon of the like kind, he shall be fined not more than fifty dollars, nor less than fifteen dollars.

Approved March 6, 1882

---

[4] The same provision also appeared in 1875 Va. Acts Chap. 162, p. 164; 1881 Va. Acts Chap. 119, p. 499; 1883 Va. Acts Chap. 450, p. 563; 1889 Va. Acts Chap. 19, p. 19; 1889 Va. Acts Chap. 244, p. 200; 1893 Va. Acts Chap. 797, p. 931.

The Code of Virginia: With the Declaration of Independence and the Constitution of the United States; and the Constitution of Virginia Page 897, Image 913 (1887) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Virginia | 1887
Offences Against the Peace, § 3780. Carrying Concealed Weapons, How Punished. Forfeiture and Sale of Weapons. If any person carry about his person, hid from common observation, any pistol, dirk, bowie-knife, razor, slung-shot, or any weapon of the like kind, he shall be fined not less than twenty nor more than one hundred dollars, and such pistol, dirk, bowie-knife, razor, slung-shot, or any weapon of the like kind, shall be forfeited to the commonwealth and may be seized by an officer as forfeited; and upon the conviction of the offender the same shall be sold and the proceeds accounted for and paid over as provided in section twenty-one hundred and ninety: Provided, that this section shall not apply to any police officer, town or city sergeant, constable, sheriff, conservator of the peace, or collecting officer, while in the discharge of his official duty.

1895/96 Va. Laws 826
§ 3780. Carrying concealed weapons; how punished; forfeiture and sale of weapons.-If any person carry about his person, hid from common observation, any pistol, dirk, bowie-knife, razor, slung-shot or any weapon of like kind, he shall be fined not less than twenty dollars nor more than one hundred dollars, or be committed to jail not more than thirty days, or both in the discretion of the court or jury trying the case, and such pistol, dirk, bowie-knife, razor, slung-shot, or any weapon of like kind shall be forfeited to the commonwealth and may be seized by an officer as forfeited.
Approved March 4, 1896.


## **WASHINGTON**

1854 Wash. Sess. Law 80, An Act Relative to Crimes and Punishments, and Proceedings in Criminal Cases, ch. 2, § 30.
Brandishing | Washington | 1854
Every person who shall, in a rude, angry, or threatening manner, in a crowd of two or more persons, exhibit any pistol, bowie knife, or other dangerous weapon, shall on conviction thereof, be imprisoned in the county jail not exceeding one year, and be fined in any sum not exceeding five hundred dollars.

1859 Wash. Sess. Laws 109, An Act Relative to Crimes and Punishments, and Proceedings in Criminal Cases, ch. 2, § 30.
Brandishing | Washington | 1859

Every person who shall, in a rude, angry or threatening manner, in a crowd of two or more persons, exhibit any pistol, bowie knife or other dangerous weapon, shall, on conviction thereof, be imprisoned in the county jail not exceeding one year, and be fined in any sum not exceeding five hundred dollars.

1869 Wash. Sess. Laws 203-04, An Act Relative to Crimes and Punishments, and Proceedings in Criminal Cases, ch. 2, § 32.
Brandishing | Washington | 1869
Every person who shall, in a rude, angry or threatening manner, in a crowd of two or more persons, exhibit any pistol, bowie knife, or other dangerous weapon, shall on conviction thereof, be imprisoned in the county jail not exceeding one year and be fined in any sum not exceeding five hundred dollars.

1881 Wash. Code 181, Criminal Procedure, Offenses Against Public Policy, ch. 73, § 929.
Carrying Weapons | Washington | 1881
If any person carry upon his person any concealed weapon, he shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not more than one hundred dollars, or imprisoned in the county jail not more than thirty days[.]

1881 Wash. Sess. Laws 76, An Act to Confer a City Govt. on New Tacoma, ch. 6, § 34, pt. 15.
Carrying Weapons | Washington | 1881
[T]o regulate the transportation, storage and sale of gunpowder, giant powder, dynamite, nitro-glycerine, or other combustibles, and to provide or license magazines for the same, and to prevent by all possible and proper means, danger or risk of injury or damages by fire arising from carelessness, negligence or otherwise . . . to regulate and prohibit the carrying of deadly weapons in a concealed manner; to regulate and prohibit the use of guns, pistols and firearms, firecrackers, and detonation works of all descriptions[.]

William Lair Hill, Ballinger's Annotated Codes and Statutes of Washington, Showing All Statutes in Force, Including the Session Laws of 1897 Page 1956, Image 731 (Vol. 2, 1897) available at The Making of Modern Law: Primary Sources.
Brandishing | Washington | 1881
Flourishing Dangerous Weapon, etc. Every person who shall in a manner likely to cause terror to the people passing, exhibit or flourish, in the streets of an incorporated city or unincorporated town, any dangerous weapon, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine in

any sum not exceeding twenty-five dollars. Justices of the peace shall have exclusive original jurisdiction of all offenses arising under the last two preceding sections.

1883 Wash. Sess. Laws 302, An Act to Incorporate the City of Snohomish, ch. 6, § 29, pt. 15.
Carrying Weapons | Washington | 1883
[The city has power] to regulate and prohibit the carrying of deadly weapons in a concealed manner; to regulate and prohibit the use of guns, pistols, and fire-arms, fire crackers, bombs and detonating works of all descriptions . . . .

Albert R. Heilig, Ordinances of the City of Tacoma, Washington Page 333-334, Image 334-335 (1892) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Washington | 1892
Ordinances of the City of Tacoma, An Ordinance Defining Disorderly Persons and Prescribing the Punishment for Disorderly Conduct Within the City of Tacoma. All persons (except police officers and other persons whose duty it is to execute process or warrants or make arrests) who shall carry upon his person any concealed weapon consisting of a revolver, pistol or other fire arms or any knife (other than an ordinary pocket knife) or any dirk or dagger, sling shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person.

129

Rose M. Denny, The Municipal Code of the City of Spokane, Washington. Comprising the Ordinances of the City (Excepting Ordinances Establishing Street Grades) Revised to October 22, 1896 Page 309-310, Image 315-316 (1896) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | Washington | 1896

Ordinances of Spokane, An Ordinance to Punish the Carrying of Concealed Weapons within the City of Spokane, § 1.

If any person within the City of Spokane shall carry upon his person any concealed weapon, consisting of either a revolver, pistol or other fire-arms, or any knife (other than an ordinary pocket knife) or any dirk or dagger, sling-shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty dollars, nor more than one hundred dollars and costs of prosecution, and be imprisoned until such fine and costs are paid; provided, that this section shall not apply to police officers and other persons whose duty is to execute process or warrants or make arrests, or persons having a special written permit from the Superior Court to carry weapons

Richard Achilles Ballinger, Ballinger's Annotated Codes and Statutes of Washington: Showing All Statutes in Force, Including the Session Laws of 1897 Page 1956-1957, Image 731-732 (Vol. 2, 1897) available at The Making of Modern Law: Primary Sources.

Carrying Weapons | Washington | 1897

Carrying Concealed Weapons, § 7084.

If any person shall carry upon his person any concealed weapon, consisting of either a revolver, pistol, or other fire-arms, or any knife, (other than an ordinary pocket knife), or any dirk or dagger, sling-shot, or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty dollars nor more than one hundred dollars, or imprisonment in the county jail not more than thirty days, or by both fine and imprisonment, in the discretion of the court: Provided, That this section shall not apply to police officers and other persons whose duty it is to execute process or warrants or make arrests.

## WEST VIRGINIA

1870 W. Va. Code 692, Of Offenses against the Peace, ch. 148, § 7.
If any person, habitually, carry about his person, hid from common observation, any pistol, dirk, bowie knife, or weapon of the like kind, he shall be fined fifty dollars. The informers shall have one half of such fine.

1870 W. Va. Code 703, For Preventing the Commission of Crimes, ch. 153, § 8.
If any person go armed with a deadly or dangerous weapon, without reasonable cause to fear violence to his person, family, or property, he may be required to give a recognizance, with the right of appeal, as before provided, and like proceedings shall be had on such appeal.

1882 W. Va. Acts 421–22
Carrying Weapons | West Virginia | 1882
If a person carry about his person any revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metalic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, and fined not less that twenty-five nor more than two hundred dollars, and may, at the discretion of the court, be confined in jail not less than one, nor more than twelve months; and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe to be under the age of twenty-one years, he shall be punished as hereinbefore provided; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again. And if upon the trial of an indictment for carrying any such pistol, dirk, razor or bowie knife, the defendant shall prove to the satisfaction of the jury that he is a quiet and peacable citizen, of good character and standing in the community in which he lives, and at the time he was found with such pistol, dirk, razor or bowie knife, as charged in the indictment, he had good cause to believe and did believe that he was in danger of death or great bodily harm at the hands of another person, and that he was, in good faith, carrying such weapon for self-defense and for no other purpose, the jury shall find him not guilty. But nothing in this section contained shall be construed as to prevent any officer charged with the execution of the laws of the state from carrying a revolver or other pistol, dirk or bowie knife.

1891 W. Va. Code 915, Of Offences Against the Peace, ch. 148, § 7.

131

Carrying Weapons | West Virginia | 1891

If a person carry about his person any revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, and fined not less than twenty-five nor more than two hundred dollars, and may, at the discretion of the court, be confined in jail not less than one nor more than twelve months; and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe to be under the age of twenty-one years, he shall be punished as hereinbefore provided; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises, any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired and back again. And if upon the trial of an indictment for carrying any such pistol, dirk, razor or bowie knife, the defendant shall prove to the satisfaction of the jury that he is a quiet and peaceable citizen, of good character and standing in the community in which he lives, and at the time he was found with such pistol, dirk, razor or bowie knife, as charged in the indictment he had good cause to believe and did believe that he was in danger of death or great bodily harm at the hands of another person, and that he was in good faith, carrying such weapon for self-defense and for no other purpose, the jury shall find him not guilty. But nothing in this section contained shall be so construed as to prevent any officer charged with the execution of the laws of the State, from carrying a revolver or other pistol, dirk or bowie knife.

1925 W.Va. Acts 25-30, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms. . . , ch. 3, § 7, pt. a. Carrying Weapons, Possession by, Use of, and Sales to Minors and Others Deemed Irresponsible, Registration and Taxation | West Virginia | 1925

§ 7 (a). If any person, without a state license therefor, carry about his person any revolver or other pistol, dirk, bowie-knife, slung shot, razor, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor and upon conviction thereof be confined in the county jail for a period of not less than six nor more than twelve months for the first offense; but upon conviction of the same person for the second offense in this state, he shall be guilty of a felony and be confined in the penitentiary not less than one or more than five years, and in either case fined not less than fifty nor more than two hundred dollars, in the discretion of the court. . . .

132

## WISCONSIN

1858 Wis. Rev. Stat. 985, Of Proceedings to Prevent the Commission of Crime, ch. 175, § 18.

If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person, or to his family or property, he may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

1872 Wis. Sess. Laws 17, ch. 7, § 1, An Act to prohibit and prevent the carrying of concealed weapons.

SECTION 1. If any person shall go armed with a concealed dirk, dagger, sword, pistol, or pistols, revolver, slung-shot, brass knuckles, or other offensive and dangerous weapon, he shall, on conviction thereof, be adjudged guilty of a misdemeanor, and shall be punished by imprisonment in the state prison for a term of not more than two years, or by imprisonment in the county jail of the proper county not more than twelve months, or by fine not exceeding five hundred dollars, together with the costs of prosecution, or by both said fine and costs and either of said imprisonments; and he may also be required to find sureties for keeping the peace and against the further violation of this act for a term not exceeding two years: provided, that so going armed shall not be deemed a violation of this act whenever it shall be made to appear that such person had reasonable cause to fear an assault or other injury or violence to his person, or to his family or property, or to any person under his immediate care or custody, or entitled to his protection or assistance, or if it be made to appear that his possession of such weapon was for a temporary purpose, and with harmless intent.

1883 Wis. Sess. Laws 713, An Act to Revise, consolidate And Amend The Charter Of The City Of Oshkosh, The Act Incorporating The City, And The Several Acts Amendatory Thereof, chap. 6, § 3, pt. 56.

To regulate or prohibit the carrying or wearing by any person under his clothes or concealed about his person any pistol or colt, or slung shot, or cross knuckles or knuckles of lead, brass or other metal or bowie knife, dirk knife, or dirk or dagger, or any other dangerous or deadly weapon and to provide for the confiscation or sale of such weapon.

https://firearmslaw.duke.edu/laws/charter-and-ordinances-of-the-city-of-la-crosse-with-the-rules-of-the-common-council-page-25-26-image-28-89-1888-available-at-the-making-of-modern-law-primary-sources

The common council has power. . . Pt. 36. To regulate or prohibit the carrying or wearing by any person, any pistol, slung-shot, knuckles, bowie knife, dirk or any other dangerous weapon, and to provide for the confiscation and sale of such weapons.

Charter and Ordinances of the City of Superior; Also Harbor Act, Municipal Court Act, Rules of the Common Council and Board of Education Page 390, Image 481 (1896) available at The Making of Modern Law: Primary Sources. 1896 Ordinances of the City of Superior, Carrying Concealed Weapons, § 18. It shall be unlawful for any person, other than a policeman or other officer authorized to maintain the peace or to serve process, to carry or wear any pistol, sling-shot, knuckles, bowie knife, dirk, dagger or any other dangerous weapon within the limits of the City of Superior, and any person convicted of a violation of this section shall be punished by a fine of not less than ten (10) dollars nor more than one hundred (100) dollars.

## WYOMING

1876 Wyo. Comp. Laws 352, An Act to Prevent the Carrying of Fire Arms and Other Deadly Weapons, ch. 52, § 1-3.
§ 1. That hereafter it shall be unlawful for any resident of any city, town or village, or for any one not a resident of any city, town or village, in said territory, but a sojourner therein, to bear upon his person, concealed or openly, any fire arm or other deadly weapon, within the limits of any city, town or village. § 2. That if any person not a resident of any town, city or village of Wyoming Territory, shall, after being notified of the existence of the last preceding section by a proper peace officer, continue to carry or bear upon his person any fire arm or other deadly weapon, he or she, shall be deemed to be guilty of a violation of the provisions of said section and shall be punished accordingly. § 3. Any person violating any of the provisions of this act shall be deemed guilty of misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five dollars nor more than fifty dollars, and, in the default of the payment of any fine which may be assessed against him, shall be imprisoned in the county jail for not less than five days nor more than twenty days.

1876 Wyo. Comp. Laws 273, An Act Defining Crime and Providing for the Punishment Thereof, ch. 35, tit. 9, § 127.
If any person or persons shall have upon him any pistol, gun, knife, dirk, bludgeon or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined in any sum not exceeding five hundred dollars, or imprisoned in the county jail not exceeding six months.

1884 Wyo. Sess. Laws, chap. 67, § 1, as codified in Wyo. Rev. Stat., Crimes (1887): Exhibiting deadly weapon in angry manner. § 983.
Whoever shall, in the presence of one or more persons, exhibit any kind of fire-arms, Bowie Knife, dirk, dagger, slung-shot or other deadly weapon, in a rude, angry or threatening manner not necessary to the defense of his person, family or property, shall be deemed guilty of misdemeanor, and on conviction thereof, shall be punished by a fine not less than ten dollars, nor more than one hundred dollars, or by imprisonment in the county jail not exceeding six months . . . .

Wyo. Comp. Laws (1876) chap. 35 § 127, as codified in Wyo. Rev. Stat., Crimes (1887) Having possession of offensive weapons. § 1027.
If any person or persons have upon him any pistol, gun, knife, dirk, bludgeon or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined in any sum not exceeding five hundred dollars, or imprisoned in the county jail not exceeding six months.

An Act Defining Crimes, Regulating Criminal Procedure and for Other Purposes, ch. 73, § 97, in 1890 Wyo. Sess. Laws 127, 140.
"SEC. 97. It shall be unlawful for any person to sell, barter or give to any other person under the age of twenty-one years any pistol, dirk or bowie-knife, slung-shot, knucks or other deadly weapon that can be worn or carried concealed upon or about the person, or to sell, barter or give to any person under the age of sixteen years any cartridges manufactured and designed for use in a pistol; and any person who shall violate any of the provisions of this section shall be fined in any sum not more than fifty dollars."

A. McMicken, City Attorney, The Revised Ordinances of the City of Rawlins, Carbon County, Wyoming Page 131-132; Image 132-133 (1893) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Wyoming | 1893
Revised Ordinances of the City of Rawlins, Article VII, Carrying Firearms and Lethal Weapons, § 1.

135

It shall be unlawful for any person in said city to keep or bear upon the person any pistol, revolver, knife, slungshot, bludgeon or other lethal weapon, except the officers of the United States, of the State of Wyoming, of Carbon County and of the City of Rawlins. § 2. Any person convicted of a violation of the preceding section shall be fined not exceeding one hundred dollars, or imprisoned in the city jail not exceeding thirty days. § 3. Persons not residing in said city shall be notified of this Ordinance by the police or any citizen, and after thirty minutes from the time of notification, shall be held liable to the penalties of this article, in case of its violation. § 4. The city marshal and policemen of the city shall arrest, without warrant, all persons found violating the provisions of this article, and are hereby authorized to take any such weapon from the person of the offender and to imprison the offender for trial, as in case of violations of other Ordinances of said city.

Attorney General Josiah A. Van Orsdel, Revised Statutes of Wyoming, in Force December 1, 1899 Including the Magna Charta, Declaration of Independence, Articles of Confederation, Organic Act of Territory of Wyoming, Act of Admission of the State of Wyoming, Constitution of the United States and of Wyoming, and the Rules of the Supreme Court Page 1252-1253, Image 1252-1253 (1899) available at The Making of Modern Law: Primary Sources.
Crimes Against Public Peace, Drawing Dangerous Weapons, § 5050. Whoever draws or threatens to use any pistol, dirk, knife, slung-shot, or any other deadly or dangerous weapon, already drawn, upon any other person, shall be fined in a sum not more than one hundred dollars, to which may be added imprisonment in the county jail not more than six months; Provided, That the provisions of this section shall not apply to a person drawing or threatening to use such dangerous or deadly weapon in defense of his person or property, or in defense of those entitled to his protection by law.

1925 Wyo. Sess. Laws 110, An Act Prohibiting Persons not Citizens of the United States, from Possessing, Wearing or Carrying any Dangerous or Deadly Weapon. . . , ch. 106, § 1.
Every person not being a citizen of the United States, who shall own, possess, wear or carry any dirk, pistol, shot gun, rifle, or other fire arm, bowie knife, dagger, or any other dangerous or deadly weapon, shall upon conviction thereof, be adjudged guilty of a misdemeanor and shall be fined in any sum not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00) or imprisoned in the county jail not more than six months, or by both such fine and imprisonment.

1933 Wyo. Sess. Laws 117, An Act Relating to the Registering and Recording of Certain Facts Concerning the Possession and Sale of Firearms by all Wholesalers, Retailers, Pawn Brokers, Dealers and Purchasers, Providing for the Inspection of Such Register, Making the Violation of the Provisions Hereof a Misdemeanor, and Providing a Penalty Therefor, ch. 101, §§ 1-4.

§ 1. All wholesalers, retailers, dealers and pawn brokers are hereby required to keep a record of all firearms which may come into their possession, whether new or second hand, which record shall be known as the Firearms Register. Such register shall contain the following information, to wit: the name of the manufacturer, person, persons, firm or corporation from whom the firearm was obtained, the date of its acquisition, its manufacturer's number, its color, its caliber, whether the same is new or second hand, whether it is automatic, a revolver, a single shot pistol, a rifle, a shot gun or a machine gun, the name of the party to whom said firearm is sold in such purchasers handwriting and the date of such sale.

§ 2. Every person who purchases any firearm from any retailer, pawn broker or dealer, shall sign his name or make his mark properly witnessed, if he cannot write, on said Firearm Register, at the time of the delivery to him of any firearm so purchased.

§ 3. The firearm register, herein required to be kept, shall be prepared by every wholesaler, retailer, pawn broker and dealer in firearms in the state of Wyoming within 30 days after this Act shall become effective and shall thereafter be continued as herein provided. It shall be kept at the place of business of said wholesaler, retailer, pawn broker or dealer, and shall be subject to inspection by any peace officer at all reasonable times.

§ 4. Any person, firm or corporation who shall fail or refuse to comply with the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not to exceed $100.00, or imprisoned in the County Jail for a period of not to exceed six months, or by both such fine and imprisonment.

SOURCE:  https://firearmslaw.duke.edu/repository/search-the-repository/; HeinOnline

**EXHIBIT D**

## EXHIBIT D

## TABLE OF WEAPONS LICENSING LAWS*

| STATE | CARRY OR HAVE | FIRE OR DISCHARGE PERMIT | HUNT SPORT | COMMERCIAL WEAPON SALE FIRE TRANSPORT | GUNPOWDER EXPLOSIVES LICENSING | SELLER REGISTERS BUYER | NAMED GROUPS | PRE-CIVIL WAR BLACKS | REG TAX |
|---|---|---|---|---|---|---|---|---|---|
| Alabama | | 1879 | | 1892, 1898 | | | | 1805 | 1867 |
| Alaska | | | | | | | | 1838 | |
| Arizona | | | | | | | | | |
| Arkansas | 1923, 1931, 1935 | 1871 | | 1882 | | | | | |
| California | 1890, 1891, 1896, 1917, 1923 | 1869 | | 1854 | 1883, 1889 | 1917,1923, 1931 | | | |
| Colorado | | 1875 | | | | 1911 | | | |
| Connecticut | 1890, 1923, 1935 | 1835, 1845, 1869, 1877 | | 1923 | 1775, 1827, 1874, 1901, 1909 | 1918 | 1665 | | |
| Delaware | | | | 1911 | 1911 | 1911 | 1909 | 1797, 1832, 1841, 1843 | |
| District of Columbia | 1892, 1932 | | | | | | | | |
| Florida | 1893, 1931 | | | 1887, 1895 | | | 1847 | | |

| State | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Georgia | 1910 | | | 1902 | 1921 | | | 1768 | 186 6 |
| Hawaii | 1925, 1927, 1933 | | 1870, 1933 | 1927, 1933 | | 1927,1933, 1933 | | | |
| Idaho | | | | | | | | | |
| Illinois | 1876, 1893, 1914, 1917, 1931 | 1841, 1869 | | 1814, 1914 | 1851, 1869, 1881 | 1885 | | | |
| Indiana | 1925 | 1855 | | 1895, 1925 | 1847 | | 1925 | | |
| Iowa | | 1853, 1880 | | 1887 | 1873 | | | | |
| Kansas | | | | | | | | | |
| Kentucky | | | | | 1864, 1874 | | | | |
| Louisiana | | 1870 | | 1857 | | | | 1848 | |
| Maine | | | | | 1848, 1873, 1874 | | | | |
| Maryland | | | 1876, 1882 | | | | 1882 | 1806 | |
| Massachusetts | 1906, 1927 | | | | 1651, 1895, 1898 | | 1769,1884 1922 | | |
| Michigan | 1925, 1927 | 1848, 1895 | | | | 1913,1925, 1927 | | | |
| Minnesota | 1882, 1933 | 1858 | | | 1858, 1889 | | | | |
| Mississippi | 1900 | | | 1906 | | | | 1804 | 186 7 |
| Missouri | 1871, 1880, 1892, 1921 | 1843, 1894 | | 1888, 1921 | 1899 | 1921 | 1844 | 1818, 1854 | |
| Montana | 1895, | | | | | 1918 | 1913 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1935 | | | | | | | | |
| Nebraska | 1895 | | | | 1869 | | | | |
| Nevada | | | | | | | | | |
| New Hampshire | 1917, 1923 | 1823, 1870 | | | 1820 | | 1917, 1923 | | |
| New Jersey | 1873, 1905, 1927, 1934 | 1871 | 1902 | | | | 1914, 1916 | | |
| New Mexico | | | 1915 | | | | | | |
| New York | 1881, 1885, 1891 | 1824, 1881, 1898 | 1923 | | 1885, 1890, 1903 | 1911 | 1680,1884 1885,1911, 1923 | | |
| North Carolina | 1919 | | | 1919 | | 1919 | | 1840 | 1909 |
| North Dakota | 1915, 1923, 1925, 1931 | | | | | 1923 | | | |
| Ohio | 1933 | 1823, 1855, 1856 | | | 1835,1878, 1884,1889, 1900,1902 | | | | |
| Oklahoma | | | | 1890 | | | | | |
| Oregon | 1898, 1913, 1917, 1925 | 1868, 1879 | | | 1872 | 1913,1917 | | | |
| Pennsylvania | 1929, 1931 | 1713,1721, 1721,1750, 1750,1824 | | | | | 1763,1903 | | |
| Rhode Island | 1927 | | 1907 | | 1821, 1902 | | | | |
| South Carolina | 1934 | 1802 | | 1890, 1893 | | | | 1740 | 1923 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| South Dakota | 1933 | | 1899 | | | | | | |
| Tennessee | | | | 1863, 1879 | | | | | |
| Texas | | 1898 | 1919 | 1872,1880, 1899 | | 1931 | | | |
| Utah | 1888 | | 1905 | | 1875 | | 1850,1905 | | |
| Vermont | | 1890, 1895 | 1908 | | 1891,1894 | | | | |
| Virginia | 1908, 1926, 1934 | 1859 | | | | 1926 | | 1792, 1805, 1806 | 1926 |
| Washington State | 1895 | 1890 | | 1892 | 1881,1881, 1883 | | 1911 | | |
| West Virginia | 1881, 1925 | 1875 | 1909 | 1876 | | 1925 | | | |
| Wisconsin | 1896, 1931-33 | 1888 | | | 1888 | | | | |
| Wyoming | | 1893 | 1899, 1913 | | | 1933 | 1915 | | |
| TOTAL STATES | 32 | 26 | 12 | 21 | 22 | 17 | 14 | 11 | 6 |
| TOTAL LAWS | 72 | 45 | 15 | 31 | 46 | 24 | 24 | 17 | 6 |

*Source: https://firearmslaw.duke.edu/repository/search-the-repository/. Note that the unit of analysis is the law, but for the sake of clarity, they are organized by state.

**EXHIBIT E**

# EXHIBIT E

# LICENSE AND LICENSING LAWS

## ALABAMA

Harry Toulmin, A Digest of the Laws of the State of Alabama: Containing the Statutes and Resolutions in Force at the End of the General Assembly in January, 1823. To which is Added an Appendix; Containing the Declaration of Independence; the Constitution of the United States; the Act authorizing the People of Alabama to form a Constitution and State Government; and the Constitution of the State of Alabama Page 627, Image 655 (1823) available at The Making of Modern Law: Primary Sources. 1805

Negroes and Mulattoes, Bond and Free – 1805, Chapter I, An Act respecting Slaves. – Passed March 6, 1805: Sec. 4. And be it further enacted, that no slave shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive, except the tools given him to work with, or that he is ordered by his master, mistress, or overseer, to carry the said articles from one place to another, but all and every gun , weapon, or ammunition, found in the possession or custody of any slave, may be seized by any person, and upon due proof made thereof, before any justice of the peace of the county or corporation where such seizure shall be made, shall, by his order, be forfeited to the seizer, for his own use; and moreover, every such offender shall have and receive, by order of such justice, any number of lashes, not exceeding thirty-nine, on his bare back for every such offense : Provided nevertheless, That any justice of the peace may grant, in his proper county, permission in writing to any slave, on application of his master or overseer, to carry and use a gun and ammunition within the limits of his said master's or owner's plantation, for a term not exceeding one year, and revocable at any time within such term, at the discretion of the said justice, and to prevent the inconveniences arising from the meeting of slaves.

[REGULATORY TAX] The Revised Code of Alabama Page 169, Image 185 (1867) available at The Making of Modern Law: Primary Sources. 1867

Taxation, § 10. On All pistols or revolvers in the possession of private persons not regular dealers holding them for sale, a tax of two dollars each; and on all bowie knives, or knives of the like description, held by persons not regular dealers, as aforesaid, a tax of three dollars each; and such tax must be collected by the assessor when assessing the same, on which a special receipt shall be given to the tax payer therefor, showing that such tax has been paid for the year, and in default of such payment when demanded by the assessor, such pistols, revolvers, bowie knives, or knives of like description, must be seized by him, and unless redeemed by payment in ten days thereafter, with such tax, with an additional penalty of fifty per cent., the same must be sold at public outcry before the court house door, after five days notice; and the overplus remaining, if any, after deducting the tax and penalty aforesaid, must be paid over to the person from whom the said pistol, revolver, bowie knife, or knife of like description, was taken, and the net amount collected by him must be paid over to the collector every month, from which, for each such assessment and collection, the assessor shall be entitled to fifty cents, and when the additional penalty is collected, he shall receive fifty per cent. additional thereto.

2

J. M. Falkner, The Code of Ordinances of the City Council of Montgomery, with the Charter Page151, Image 151 (1879) available at The Making of Modern Law: Primary Sources. 1879 [Ordinances of the City of Montgomery,] § 449. Any person who fires or discharges, or causes to be fired or discharged, any pistol, gun, cannon, anvil, or anything of like kind or character; or who lets off or discharges any rocket, fire-crackers, squib or other fire-works, without first having obtained permission of the Mayor, who shall designate the place where such firing may be done, must, on conviction, be fined not less than one nor more than one hundred dollars.

William Logan Martin, Commissioner, The Code of Alabama, Adopted by Act of the General Assembly of the State of Alabama, Approved February 16, 1897, Entitled "An Act to Adopt a Code of Laws for the State Alabama " with Such Statutes Passed at the Session of 1896-97, as are Required to be Incorporated Therein by Act Approved February 17, 1897; and with Citations to the Decisions of the Supreme Court of the State Construing or Mentioning the Statutes Page 1137, Image 1154 (Vol. 1, 1897) available at The Making of Modern Law: Primary Sources. 1892
[License Taxes; From Whom and For What Business Required; Prices; County Levy,] Taxation, § 27. For dealers in pistols, or pistol cartridges, or bowie-knives, or dirk-knives, whether principal stock in trade or not, three hundred dollars. Any cartridges, whether called rifle or pistol cartridges, or by any other name, that can be used in a pistol, shall be deemed pistol cartridges within the meaning of this subdivision. Any person or firm who orders for another, or delivers any cartridges within this state, shall be deemed a dealer under this provision.

1898 Ala. Acts 190, An Act To Amend The Revenue Laws Of The State Of Alabama, pt. 66-67. 66th. For dealers in pistol, bowie or dirk knives, whether principal stock in trade or not, one hundred dollars. 67th. For wholesale dealers in pistol or rifle cartridges in towns or cities of twenty thousand or more inhabitants, ten dollars. In all other places, five dollars: Provided, That the wholesale dealers license shall entitle them to sell at retail.

## ARKANSAS

Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A. D. 1837, in the Year of Our Independence the Sixty-second, and of the State of Second Year Page 587, Image 602 (1838) available at The Making of Modern Law: Primary Sources. 1838
Negroes and Mulattoes, § 17. No free negro shall be suffered to keep or carry any gun or rifle, or weapon of any kind, or any ammunition without a license first had and obtained, for that purpose, from some justice of the peace of the county in which such free negro or mulatto resides, and such license may be granted and revoked by any justice of the peace of the county. §18. Every gun, rifle, or weapon of any kind, or ammunition, found in the possession or custody of any free negro or mulatto, not having a license as required by the preceding section, may be seized by any person, and upon due proof thereof made before some justice of the peace of the county in which such seizure was made, shall by order of such justice be forfeited to the use of the person making the seizure, and such justice shall also impose a fine on such negro or mulatto, for the use of the county, not exceeding twenty dollars.

3

George Eugene Dodge, A Digest of the Laws and Ordinances of the City of Little Rock, with the Constitution of State of Arkansas, General Incorporation Laws, and All Acts of the General Assembly Relating to the City Page 231, Image 231 (1871) available at The Making of Modern Law: Primary Sources. 1871
[Offenses Affecting the Public Safety, § 288. No person shall fire or discharge any cannon, gun, fowling piece, pistol, or fire-arms, of any description, or fire, explode, or set off any squibs, cracker, or other thing containing powder or other combustible or explosive material, without permission from the may which permission shall limit the time of such firing, and shall be subject to be revoked by the mayor at any time after it has been granted. Any violation hereof shall subject the party to a fine of not less than two nor more than ten dollars.]

John H. Herry, Digest of the Laws and Ordinances of the City of Little Rock, with the Constitution of the State of Arkansas; General Incorporation Laws; and All Acts of the General Assembly Relating to the City; in Force March 10, 1882 Page 149, Image 334 (1882) available at The Making of Modern Law: Primary Sources. 1882
[Ordinances of the] City of Little Rock, [§ 344. That it shall be unlawful for any person to engage in, exercise or pursue any of the following avocations or business without first having obtained and paid for a license therefor from the proper city authorities the amount of which licenses are hereby fixed as follows, to wit: . . . ]§ 27. Shooting galleries, or pistol galleries, $25 per annum, in advance.

1923, An Act to Regulate the Ownership of Pistols and Revolvers, No. 430, 1-4, Ark. Acts 379, 379-80 (requiring persons having pistols and revolvers to present such firearms to the county clerk for registration and requiring such persons to apply for a license to possess the firearm).

1931 Ark. Laws 704, 704-6
ACT 225.
AN ACT to Prohibit the Possession, Transportation or Sale of Machine Guns, and Inflicting Penalty for Violation Thereof.
SECTION 1. It shall be unlawful for any person or persons in any manner to transport from one place to another in this State, or for any railroad company, or express company, or other common carrier, or any officer, agent; or employee of any of them, or any other person acting in their behalf knowingly to ship or to transport from one place to another in this State in any manner or by any means whatsoever, except as hereinafter provided, any firearm of the type commonly known as a machine gun.
SECTION 2. It shall be unlawful for any person to store, keep, possess, or have in possession, or permit another to store, keep, possess, or have in possession, except as hereinafter provided, any firearm of the type commonly known as a machine-gun.
SECTION 3. It shall be unlawful for any person to sell, or give away, or be interested directly or indirectly, in the sale or giving away, of any firearm of the type commonly known as a machine-gun.
SECTION 4. Provided, this Act shall not apply to the military authorities of the State or nation, and provided further, that any peace officer of the State, counties or political subdivision thereof, may possess machine-guns when required in the performance of their duties. After April 1, 1931, every person permitted by this Act to possess a machine-gun, shall file in the office of the Secretary of State, on a blank to be supplied by the Secretary of State, an application to be

4

properly sworn to, which shall include his name and address, and the serial number of the machine-gun which he desires to possess. Thereupon, the Secretary of State shall file such application his office, registering such officer in a book or index to be kept for that purpose, and assign to him a number, and issue to him a card, which he shall keep with him while he has such machine-gun in his possession. Such registration shall be made on the date application is received and filed with the Secretary of State, and shall expire on December 31, of the year in which said license is issued.

SECTION 5. Any person violating any part of this law shall upon conviction be fined in any sum not more than $1,000.00, and not less than $100.00, and the machine-gun or guns found in his possession shall be confiscated and-the title thereof shall pass to the political subdivision of the State making the capture.

SECTION 6. All laws and parts of laws in conflict herewith are hereby repealed, and whereas criminals are using machine-guns for illegal purposes, this Act being necessary for the immediate preservation of the public peace, health, and safety, an emergency is hereby declared, and it shall be in force and effect from and after its passage.

Approved: March 26th, 1931.

1935 Ark. Laws 171, 171-75
ACT 80.
"AN ACT Relating to Machine Guns, and to Make Uniform the Law With Reference Thereto."
Be It Enacted by the General Assembly of the State of Arkansas;

SECTION 1. "Machine Gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than five shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. . . .

SECTION 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of (not less than twenty years).

SECTION 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of (not less than ten years).

SECTION 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose;

(a) when the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) when in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) when the machine gun is of the kind described in Section 8 and has not been registered as in said section required; or

(d) when empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

SECTION 5. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

5

SECTION 6. Nothing contained in this act shall prohibit or interfere with 1. the manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose; 2. the possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake; 3. the possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifestly not aggressive or offensive.

SECTION 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given, or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every manufacturer shall permit any 'marshal, sheriff or police officer to inspect his entire stock of machine guns, parts, and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provision of this section shall be punishable by a fine of (not less than ............ hundred dollars).

SECTION 8. Every machine gun now in this State adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the (Secretary of state), on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within 24 hours after its acquisition. Blanks for registration shall be prepared by the (secretary of State), and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which the gun was acquired. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section, shall be presumed to possess the same for offensive or aggressive purpose.

SECTION 9. Warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record upon application of the (district attorney), shall have jurisdiction and power to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the State or a political subdivision thereof. . . .

SECTION 14. WHEREAS, under the present law of the state of Arkansas the officers of the state are powerless to effectively combat crime, therefore, it being necessary for the preservation of the public peace, health and safety, an emergency is hereby declared, and this act shall take effect and be in force from and after its passage and approval.

APPROVED: February 26, 1935.

## CALIFORNIA

Ordinances and Joint Resolutions of the City of San Francisco; Together with a List of the Officers of the City and County, and Rules and Orders of the Common Council Page 220, Image 256 (1854) available at The Making of Modern Law: Primary Sources. 1854

Ordinances of the [City of San Francisco], § 13. Every person, house, or firm engaged in keeping a pistol or rifle shooting gallery, shall pay for a license to carry on the same, the sum of ten dollars per quarter, in addition to the amount of the powder license.

General orders of the Board of Supervisors providing regulations for the government of the City and County of San Francisco. 1869
[Discharge of Cannon: Permit to be given by Mayor, and filed in office of Chief of Police. Discharge of Fire Arms prohibited within certain limits.]Sec. 22. No person shall discharge any cannon within that portion of this city and county lying between Larkin and Ninth Streets and the outer line of the streets forming the water-front, except by special permission, in writing, from the Mayor, which permit shall designate the time and particular locality of the firing, and the number of discharges which are authorized. A copy of such permit shall be filed by the person obtaining the same, in the office of the Chief of Police, at least two hours before the time of such firing; and the person or persons engaged in the discharge of such cannon, shall, on the demand of any citizen or peace officer, exhibit the permit by which such firing is authorized; and no person shall discharge any fire-arm of any other description in that portion of the city and county bounded by Devisadero, Ridley, Market, and Ninth streets, and the outer line of the streets forming the water-front, or within three hundred yards of any public highway, or upon any ground set apart as a cemetery, or public square, or park, or within three hundred yards of any dwelling-house. But this section shall not be construed so as to prohibit any person from shooting destructive animals within or upon his own inclosure. Any person who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor; and upon conviction thereof, shall be punished by a fine of not less than one hundred dollars, or by imprisonment in the county jail out more than thirty days.

1883 Cal. Stat. 156, § 153.
The Municipal Council shall provide by ordinance, for the payment into a "Fireman's Charitable Fund" of such city, or city and county, of all moneys received for licenses for the storage, manufacture, or sale of gunpowder, blasting powder, gun cotton, fireworks, nitro-glycerine, dualine, or any explosive oils or compounds, or as a municipal tax upon the same; also all fines collected in the police court for violations of fire ordinances.

Nathan Newmark, The Political Code of the State of California. As Enacted in 1872, and Amended in 1889. With Notes and References to the Decisions of the Supreme Court Page 963 (1889) available at The Making of Modern Law: Primary Sources. 1889
[Political Code of the State of California,] Charitable Fund, §153. The Municipal Council shall provide, by ordinance, for the payment into a "Fireman's Charitable Fund" of such city, or city and county, of all moneys received for licenses for the storage, manufacture, or sale of gunpowder, blasting powder, gun cotton, fireworks, nitro-glycerine, dualine, or any explosive oils or compounds, or as a municipal tax upon the same; also, all fines collected in the Police Court for violations of fire ordinances. Said fund shall be under the direction and control of and subject to such regulations as may be prescribed by the Board of Fire Commissioners.

Fred L. Button, ed., General Municipal Ordinances of the City of Oakland, California (Oakland, CA; Enquirer, 1895), p. 218, Sec. 1, An Ordinance to Prohibit the Carrying of Concealed Weapons, No. 1141. 1890

Section 1 . It shall be unlawful for any person in the City of Oakland, not being a public officer or a traveler actually engaged in making a journey, to wear or carry concealed about his person without a permit, as hereinafter provided, any pistol, slung-shot, brass or iron knuckles, sand club, dirk or bowie knife, or iron bar or other dangerous or deadly weapon, or any sling or other contrivance by which shot or other missiles are or may be hurled or projected. A written permit may be granted by the Mayor for a period of not to exceed one year to any peaceable person whose profession or occupation may require him to be out at late hours of the night to carry a concealed deadly weapon upon his person.

Charter and Ordinances of the City of Stockton (Stockton, CA: Stockton Mail Printers and Bookbinders, 1908), p. 240, Ordinance No. 53. 1891
Be it ordained by the City Council of the City of Stockton as follows:
One-Concealed Weapons, Burglars' Tools.
Section 1. It shall be unlawful and a misdemeanor: 1. For any person not being a peace officer or actually prosecuting a journey to or from the town, city or county of his residence, to wear or carry concealed about his person any pistol, dirk, bowie-knife, slungshot, sand-club, metallic knuckles or any other deadly or dangerous weapon, except he first have a written permit to so do from the Mayor of the City of Stockton.

L. W. Moultrie, Charter and Ordinances of the City of Fresno Page 30, Image 28 (1896) available at The Making of Modern Law: Primary Sources. 1896
Ordinances of the City of Fresno, § 8. Any person excepting peace officers and travelers, who shall carry concealed upon his person any pistol or firearm, slungshot, dirk or bowie-knife, or other deadly weapon, without a written permission (revocable at any time) from the president of the board of trustees, is guilty of a misdemeanor.

1917 Cal. Sess. Laws 221-225, An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another, §§ 3-4.
SEC. 3. Every person who carries in any city, city and county, town or municipal corporation of this state any pistol, revolver, or other firearm concealed upon his person, without having a license to carry such firearm as hereinafter provided in section six of this act, shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony.
SEC 4. The unlawful possessing or carrying of any of the instruments, weapons, or firearms enumerated in section one to section three inclusive of this act, by any person other than those authorized and empowered to carry or possess the same as hereinafter provided, is a nuisance, and such instruments, weapons or firearms are hereby declared to be nuisances, and when any of said articles shall be taken from the possession of any person the same shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, city and county, town or other municipal corporation the same shall be surrendered to the head of the police force, or

police department thereof. The officers to whom the same may be so surrendered, except upon certificate of a judge of a court of record, or of the district attorney of any county that the preservation thereof is necessary or proper to the ends of justice, shall proceed at such time or times as he deemds proper, and at least once in each year to destroy or cause to be destroyed such instruments, weapons, or other firearms in such manner and to such extent that the same shall be and become wholly and entirely ineffective and useless for the purpose for which it was manufactured.

SEC 6. It shall be lawful for the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, city and county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry concealed a pistol, revolver or other fire-arm; provided, however, that the application to carry concealed such firearm shall be filed in writing and shall state the name and residence of the applicant, the nature of applicant's occupation, the business address of applicant, the nature of the weapon sought to be carried and the reason for the filing of the application to carry the same.

1923 Cal. Stat. 696, An Act to Control and Regulate the Possession, Sale and Use of Pistols, Revolvers, and Other Firearms Capable of Being Concealed Upon the Person; To Prohibit the Manufacture, Sale, Possession or Carrying of Certain Other Dangerous Weapons Within this State; To Provide for Registering All Sales of Pistols, Revolvers or Other Firearms Capable of Being Concealed Upon the Person; To Prohibit the Carrying of Concealed Firearms Except by Lawfully Authorized Persons; To Provide for the Confiscation and Destruction of Such Weapons in Certain Cases; To Prohibit the Ownership, Use or Possession of Any of Such Weapons by Certain Classes of Persons; To Prescribe Penalties for Violations of This Act and Increased Penalties for Repeated Violations Hereof; To Authorize, In Proper Cases, The Granting of Licenses or Permits to Carry Firearms Concealed Upon the Person; To Provide for Licensing Retail Dealers in Such Firearms and Regulating Sales Thereunder; And To Repeal Chapter One Hundred Forty-Five of California Statutes of 1917, Relating to the Same Subject, ch. 339, § 3, 8.

Sec. 2. On and after the date upon which this act takes effect, no unnaturalized foreign born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the State of California or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. The terms "pistol," "revolver," and "firearms capable of being concealed upon the person" as used in this act shall be construed to apply to and include all firearms having a barrel less than twelve inches in length. Any person who shall violate the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

Sec. 3. If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section one hereof or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, upon conviction of such felony, he shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment om a state prison for not less than five nor more than ten years…

9

Sec. 8. It shall be lawful for the sheriff of a county, and the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, city and county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or other police head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue such person a license to carry concealed a pistol, revolver or other firearm for a period of one year from the date of such license…

1923 Cal. Stat. 698–99, An Act to Control and Regulate the Possession, Sale and Use of Pistols, Revolvers, and Other Firearms Capable of Being Concealed Upon the Person; To Prohibit the Manufacture, Sale, Possession or Carrying of Certain Other Dangerous Weapons Within this State; To Provide for Registering All Sales of Pistols, Revolvers or Other Firearms Capable of Being Concealed Upon the Person; To Prohibit the Carrying of Concealed Firearms Except by Lawfully Authorized Persons; To Provide for the Confiscation and Destruction of Such Weapons in Certain Cases; To Prohibit the Ownership, Use or Possession of Any of Such Weapons by Certain Classes of Persons; To Prescribe Penalties for Violations of This Act and Increased Penalties for Repeated Violations Hereof; To Authorize, In Proper Cases, The Granting of Licenses or Permits to Carry Firearms Concealed Upon the Person; To Provide for Licensing Retail Dealers in Such Firearms and Regulating Sales Thereunder; And To Repeal Chapter One Hundred Forty-Five of California Statutes of 1917, ch. 339, § 8.
Sec. 8. It shall be lawful for the sheriff of a county, and the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, city and county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or other police head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue such person a license to carry concealed a pistol, revolver or other firearm for a period of one year from the date of such license…

1931 Cal. Stat. 2317, An Act to Control and Regulate the Possesion, Sale and Use of Pistols, Revolvers and Other Firearms Capable of Being Concealed Upon the Person, ch. 1098, §9.
Every person in the business of selling, leasing, or otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, lessor or transferor is a retail dealer, pawnbroker, or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, caliber, or other marks of identification on such pistol, revolver or other firearm. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to such dealers on application at a cost of three dollars per one hundred leaves in triplicate . . . [t]he purchaser of any firearm capable of being concealed upon the person shall sign, and the dealer shall require him to sign his name and affix his address to said register in triplicate, and the salesman shall affix his signature in triplicate as a witness to the signature of the purchaser. . . [t]his section shall not apply to wholesale dealers in their business intercourse with retail dealers.

## COLORADO

Thomas M. Patterson, The Charter and Ordinances of the City of Denver, as Adopted Since the Incorporation of the City and Its Organization, November, 1861, to the First Day of February, A.D., 1875, Revised and Amended, Together with an Act of the Legislature of the Territory of

Colorado, in Relation to Municipal Corporations, Page 78, Image 78 (1875) available at The Making of Modern Law: Primary Sources. 1875
[City of Denver,] Charter and Ordinances: Offenses Affecting Public Safety, § 1. If any person shall, within this city, fire or discharge any cannon, gun, fowling piece, pistol or fire arms of any description, or fire, explode or set off any squib, cracker, or other thing containing powder or other combustible or explosive material, without permission from the Mayor (which permission shall limit the time of such firing, and shall be subject to be revoked by the Mayor or City Council at any time after the same has been granted), every such person shall, on conviction, be fined in a sum not less than one dollar and not exceeding one hundred dollars: Provided, that no permission shall be granted to any person or persons to hold or conduct any shooting match or competitive trial of skill with fire arms within the limits of this city.

1911 Colo. Sess. Laws 408
Section 3. Every individual, firm or corporation engaged, within this commonwealth, in the-retail sale, rental or exchange of firearms, pistols or revolvers, shall keep a record of each pistol or revolver sold, rented or exchanged at retail. Said record shall be made at the time of the transaction in a book kept for that purpose and shall include the name of the person to whom the pistol or revolver is sold or rented, or with whom exchanged; his age, occupation, residence, and., if residing in a city, the street and number therein where he resides; the make, calibre and finish of said pistol, or revolver, together with its number and serial letter, if any; the date of the sale, rental or exchange of said revolver; and the name of the employee or other person making such sale, rental or exchange. Said record- book shall be open at all times to the inspection of any duly authorized police officer.
Section 4. Every individual, firm or corporation fail- ng to keep the record provided for in the first section of this act, or who shall refuse to exhibit such record when requested by a police officer, and any purchaser, lessee or exchanger of a pistol or revolver, who shall, in connection with the making of such record, give false information, shall be guilty of a Misdemeanor, and shall, upon conviction, be punished by a fine of not less than twenty-five, nor more than one hundred dollars, or by imprisonment in the county jail for a term not exceeding one year, or by both such fine and imprisonment.

## **CONNECTICUT**

The Public Records Of The Colony Of Connecticut, Prior To The Union With New Haven Colony, May, 1665 Page 79, Image 91 (1850) available at The Making of Modern Law: Primary Sources. 1665
It is ordered, that no man within this Jurisdiction shall directly or indirectly amend, repair, or cause to be amended or repaired, any gun small or great belonging to any Indian, nor shall endure the same, nor shall sell or give to any Indian, directly or indirectly, any such gun or gunpowder, or shot, or lead, or mold, or military weapons, or armor, nor shall make any arrow heads, upon pain of a ten pound fine for every offense at least, nor sell nor barter any guns, powder, bullets or lead, whereby this order might be evaded, to any person inhabiting out of this Jurisdiction, without license of this or the particular court, or some two magistrates, upon pain of ten pound for every gun, five pound for every pound of powder, 40s for every pound of bullets or lead, and so proportionately for any greater or lesser quantity.

11

The Public Records Of The Colony Of Connecticut. Hartford, 1890 Page 190-192, Image 194-196, available at The Making of Modern Law: Primary Sources. 1775
An Act for Encouraging the Manufacture of Salt Petre and Gun Powder. . .Be it enacted, That no salt petre, nitre or gun-powder made and manufactured, or that shall be made and manufactured in this Colony, shall be exported out of the same by land or water without the license of the General Assembly or his Honor the Governor and Committee of Safety, under the penalty of twenty pounds for every hundred weight of such salt petre, ntire or gun-powder, and proportionately for a greater or lesser quantity so without license exported; to be recovered by bill, plaint, or information, in any court of record in this Colony by law proper to take cognizance thereof. . . Be it further enacted by the authority aforesaid, That no powder-mill shall be erected in this Colony for the manufacture of gun-powder without the license of the general assembly, or in their recess the Governor and Council, first had and obtained under the penalty of thirty pounds for every such offence; to be recovered as the other forgoing personalities in this act are above directed to be recovered.

Charter and By-Laws of the City of New Haven, November, 1848 Page 48-49, Image 48-49 (1848) available at The Making of Modern Law: Primary Sources. 1827
A By-Law Relative to the Storage and Sale of Gunpowder. Be it ordained by the Mayor, Aldermen, and Common Council of the city of New Haven, in Court of Common Council assembled, 1st. That hereafter no person or persons shall, within the limits hereafter described, either directly or indirectly, sell and deliver any gunpowder, or have, store, or keep any quantity of gunpowder greater than one pound weight, without having obtained a license for that purpose from said Court of Common Council, in the manner herein prescribed. Provided, that nothing in this by-law contained shall be construed to prevent any person or persons from having or keeping in his or their possession, a greater quantity of powder than one pound weight, during any military occasion or public celebration, while acting under any military commander, and in obedience to his orders, or under permission and authority therefor, first had and obtained of the Mayor or some one of the Aldermen of said city. Provided also, That any person or persons purchasing gunpowder, shall be allowed between the rising and setting of the sun, sufficient time to transport the same from any place without said limits, through said limits to any place without the same. 2d. The Court of Common Council aforesaid, shall have power, on application to them made, to grant and give any meet person or persons a license to sell gunpowder, and for that purpose to have, store, and keep gunpowder in quantity not exceeding at any one time seven pounds weight, and that well secured in a tin canister or canisters, and at such place or places within said limits and for such term of time, not exceeding one year, as said Court shall deem fit; which license shall be signed by the Clerk of said Court, and shall be in the form following, viz — Whereas the Mayor, Aldermen, and Common Council of the City of New Haven, in Court of Common Council convened, have approved of ___, as a suitable and proper person to keep, store, and sell gunpowder within the City of New Haven: We do therefore give license to said ____, to sell gunpowder at (describe the place) and for the purpose aforesaid, to have, keep, and store in said building any quantity of gunpowder not exceeding at any one time seven pounds weight, until the ___ day of ___. Dated, Signed per order, A.B., Clerk. For which license the person receiving the same shall pay the City Clerk twenty-five cents; and the same shall be by said Clerk recorded at full length. And before any license shall be given as aforesaid, the person or persons receiving the same shall pay to the Clerk aforementioned, for the use of said city, a sum after the rate of five dollars per annum. 3d. Before any shall proceed to sell or to store or

12

keep gun-powder by virtue of any such license so given as aforesaid, such person shall put in a conspicuous place upon the front part of the building in which such powder is to be stored or sold, a sign, with the following words plainly and legibly inscribed thereon, viz., "Licensed to keep Powder," and shall continue the same during the time he shall keep, store, or sell gunpowder in said building. 4th section repealed. 5th. That no person or persons shall put or receive or have any quantity of gunpowder on board of any steamboat, for transportation therein in any of the waters within the limits of said city. 6th. If any person shall sell, keep, or store any gunpowder within the limits aforesaid, contrary to the true intent and spirit of this by-law, or without complying with all the pre-requisites enjoined thereby; or if any person or persons shall put or receive, or have on board of any steamboat for transportation on any of the waters within the limits of said city, any quantity of gunpowder, such person or persons shall forfeit and pay the sum of thirty-four dollars, one half to him who shall give information, and the other half to the use of the city.

The By-Laws of the City of New London, with the Statute Laws of the State of Connecticut Relative to Said City Page 47-48, Image 47-48 (1855) available at The Making of Modern Law: Primary Sources. 1835
Chapter 26. A ByLaw in relation to the Firing of Guns and Pistols, within the limits of the city of New-London, and making parents and guardians, and masters, liable for breaches of by-laws by minors and apprentices. Be it ordained by the mayor and aldermen, and common council and freemen of the city of New-London, That no gun or pistol shall be fired at any time within the limits of said city, <u>unless on some public day of review, and then</u> by order of the officers of the military companies of said city, or by permission of the mayor, or one of the aldermen of said city; and whosoever shall fire any gun or pistol, <u>contrary to the form and effect of this by-law</u>, shall for every such offence, forfeit and pay the sum of two dollars, to be recovered by due process in any court in said city, proper to try the same. § 2. And whereas the firing of guns and pistols, crackers, or other fire works is most frequently done by apprentices and minors under age, who are unable to pay the forfeiture incurred by the by-law of this city – be it also ordained that where any minor or apprentice shall be guilty of any breach of the by-laws relating to the firing of guns, pistols, crackers, or other fire-works, the parent, guardian, or master of such minor or apprentice, shall be liable to pay the forfeitures incurred by said by-law, and the same shall be recoverable of any parent, guardian or master, by action of debt brought on said by law, before any court in said city proper to try the same. And it shall be the duty of the city attorney and lawful for any other person to prosecute for said penalty; and one-half of said penalty shall go to the informer, or the person prosecuting for the same, and the other half to the use of the city.

1845 Conn. Acts 10, An Act Prohibiting the Firing of Guns and Other Fire Arms in the City of New Haven, chap. 10.
[E]very person who shall fire any gun or other fire-arm of any kind whatever within the limits of the city of New Haven, except for military purposes, <u>without permission first obtained from the mayor</u> of said city, shall be punished by fine not exceeding seven dollars, or by imprisonment in the county jail not exceeding thirty days.

Charles L. Upham, The Charter and By-Laws of the City of Meriden. With Extracts from the Public and Private Acts of the State of Connecticut, Applicable to the City of Meriden; Together with Certain Votes of the Common Council; the Rules and Regulations of the Board of Water

13

Commissioners, and of the Police Department; and the Rules of Order of the Common Council of the City of Meriden Page 135, Image 140 (1875) available at The Making of Modern Law: Primary Sources. 1869

A by-law concerning the discharge of fire-arms and fire-works [, City of Meriden, Conn.], § 1. Be it enacted by the Court of Common Council of the City of Meriden, § 1. That no person shall discharge any pistol, gun, cannon, or other fire-arm of any sort or description, within the limits of said city, unless on occasion of some public festivity, and then by permission of the mayor or one of the aldermen of said city, or unless on occasion of military exercises and parade, and then by order of some military officer; and whoever shall discharge any pistol, gun, cannon, or other fire-arm of any sort, contrary to the form and effect of this by-law, shall, for every such offense, forfeit and pay, for the use of the treasury of said city, a fine of five dollars.

Charter and Ordinances of the City of Bridgeport: as Amended and Adopted Page 194 (1874) available at The Making of Modern Law: Primary Sources. 1874

An Ordinance Relative to Gunpowder and Explosive Substances. Be it ordained by the Common Council of the City of Bridgeport, § 1. No person shall have, or keep for sale or for any other purpose, within the limits of this city, any quantity of gunpowder or gun-cotton, exceeding one pound in weight; no person shall have, keep for sale, use, or other purpose, within the city limits, any quantity of nitro-glycerine, or other explosive substances or compounds exceeding six ounces, without special license thereof from the common council. No person shall transport any gunpowder through said city without a permit first had and obtained from the fire marshal, and in accordance with such rules and regulations as may be established by said fire marshal. No person shall, within said city, place, receive, or have any gunpowder on board of any steamboat used for the carrying of passengers, with intent to transport the same therein.

J. M. Meech, Charter and Revised Ordinances of the City of Norwich With the Amendments Thereto, and Statutes of the State Relating to Municipal Corporations, in Force January 1st, 1877 Page 178, Page 185 (1876) available at The Making of Modern Law: Primary Sources. 1877

Ordinances of Norwich. § 15. No person or persons shall fire any swivel, musket, fowling-piece, pistol, or other gun of any description within said city at a less distance than fifty rods from any dwelling house, or public highway, or street without written permission from the Mayor or one of the aldermen of said city; and every person so offending shall, for every such offence, forfeit and pay for the use of said city the sum of three dollars: Provided always, that nothing herein contained shall be construed to extend to the members of any military company when under the command of any military officer, not to prevent the firing of any gun or guns for the destruction of any noxious birds or animals by any person or persons upon his or their premises.

Charles Stoers Hamilton, Charter and Ordinances of the City of New Haven, Together with Legislative Acts Affecting Said City Page 164, Image 167 (1890) available at The Making of Modern Law: Primary Sources. 1890

Good Order and Decency § 192. Every person who shall carry in said City, any steel or brass knuckles, pistol, or any slung shot, stiletto or weapon of similar character, or shall carry any weapon concealed on his person without permission of the Mayor or Superintendent of Police in writing, shall, on conviction, pay a penalty of not less than five, nor more than fifty dollars for every such offense.

1901 Conn. Pub. Acts 602, § 20.

The warden and burgesses, when assembled according to law, shall have power to make, alter, repeal, and enforce such bylaws, orders, ordinances, and enactments as they deem suitable and proper, not inconsistent with this resolution or contrary to the laws of this state or of the United States, for the following purposes: . . . to license, regulate, or prohibit the manufacture, keeping for sale, or use of fireworks, torpedoes, firecrackers, gunpowder, petroleum, dynamite, or other explosive or inflammable substance, and the conveyance thereof through any portion of the borough . . . .

Sale of Firearms, ch. 137, Conn. Gen. Stat. 2678 (1918) (requiring any person engaged in the business of selling or exchanging firearms to keep a register).

1923 Conn. Pub. Acts 3707, An Act Concerning the Possession, Sale and Use of Pistols and Revolvers, ch. 252, § 2, 3.

No person shall advertise, sell, deliver, offer or expose for sale or delivery or have in his possession with intent to sell or deliver any pistol or revolver at retail without having a permit therefor issued as hereinafter provided.

The chief of police or, where there shall be no chief of police, the warden of the borough of the first selectman of the town, as the case may be, may, upon the application of any person, issue a permit in such form as may be prescribed by the superintendent of state police for the sale at retail of pistols and revolvers within the jurisdiction of the authority issuing such permit. Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority or, upon the application of any bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any state or sub-division of the United States, such chief of police, warden or selectmen may issue a permit to such person to carry a pistol or revolver within the jurisdiction of the authority issuing the same, provided such authority shall find that such applicant intends to make no use of the pistol or revolver thereunder other than a proper use and that such person is a suitable person to receive such permit. The superintendent of state police may, upon application, issue to any holder of any permit to carry any pistol or revolver hereinbefore provided for, a permit to carry a pistol or a revolver within the state . . . .

Sec. 5. No sale of any pistol or revolver shall be made except in the room, store or place described in the permit for the sale of pistols and revolvers, and such permit or a copy thereof certified by the authority issuing the same shall be exposed to view within the room, store or place where pistols or revolvers shall be sold or offered or exposed for sale, and no sale or delivery of any pistol or revolver shall be made unless the purchaser or person to whom the same is to be delivered shall be personally known to the vendor of such pistol or revolver or the person making delivery thereof or unless the person making such purchase or to whom delivery thereof is to lic made shall provide evidence of his identity. The vendor of any pistol or revolver shall keep a record of every pistol or revolver sold in a book kept for that purpose, which record shall be in such form as shall be prescribed by the superintendent, of state police and shall include the date of the sale, the caliber, make, model and manufacturer's number of such pistol or revolver and the name, address and occupation of the purchaser thereof, which record shall be signed by the purchaser and by the person making the sale, each in the presence of the other, and shall be preserved by the vendor of such pistol or revolver for a period of at least six years.

15

Sec. 7. No person, firm or corporation shall sell at retail, deliver or otherwise transfer any pistol or revolver to any alien, nor shall any person deliver any pistol or revolver at retail except upon written application therefor and no sale or delivery of any pistol or revolver shall be mode upon the date of the filing or receipt of any written application for the purchase thereof, and when any pistol or revolver shall b delivered in connection with the sale or purchase, such pistol or revolver shall be enclosed in a package, the paper or wrapping of which shall be securely fastened, and no pistol or revolver when delivered on tiny sale or purchase shall be loaded or contain therein any gunpowder or other explosive or any bullet, ball or shell. Upon the delivery of any pistol or revolver the purchaser shall sign in triplicate a receipt for such pistol or revolver which shall contain the name, address and occupation of such purchaser, the date of sale, caliber, make, model and manufacturer's number and a general description thereof. One of such triplicate receipts shall, within twenty-four hours thereafter, be forwarded by the vendor of such pistol or revolver to the superintendent of state police and one to the authority issuing the permit for the sale of such pistol or revolver and the other shall be retained by such vendor for at least six years. Sec. 8. No person shall make any false statement or give any false information connected with any purchase, sale or delivery of any pistol or revolver, and no person shall sell, barter, hire, lend, give or deliver to any minor under the age of eighteen years any pistol or revolver.

1930 Conn. Stat. 903, Dealing in Explosives; License., ch. 147, § 2644. 1909
No person shall manufacture, store, sell, or deal in gunpowder or any material or compound . . . unless he shall first obtain from the commissioner of state police or the fire marshal of the town where such business is conducted a written license therefor . . . which license shall specify the building where such business is to be carried on or such material deposited or used.

1935 Conn. 389, 389-94
CHAPTER 152
AN ACT CONCERNING MACHINE GUNS.
Be it enacted by the Senate and House of Representatives in General Assembly convened:
SECTION 1. The term "Machine Gun," as used in this act, shall apply to and include a weapon of any description, loaded or unloaded, from which more than five shots or bullets may be rapidly, or automatically, or semi-automatically, discharged from a magazine, by a single function of the firing device. . . .
SEC. 2. Any person who shall possess or use a machine gun in the perpetration or attempted perpetration of a crime of violence shall be imprisoned not more than twenty years.
Sc. 3. Any person who shall possess or use a machine gun for an offensive or aggressive purpose shall be imprisoned not more than ten years.
SEC. 4. The possession or use of a machine gun shall be presumed to be for an offensive or aggressive purpose: (a) When the machine gm shall be on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun was found; or (b) when in the possession of, or use by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any state or federal court of record of the United States of America, its territories or insular possessions; or (e) when the machine gun shall be of the kind described in section seven hereof and has not been registered as in said section required; or (d) when empty or loaded pistol shells of thirty (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun shall be found in the immediate vicinity thereof.

16

SEc. 5. The presence of a machine gun in any room, boat or vehicle shall be presumptive evidence of the possession or use of the machine gun by each person occupying such room, boat or vehicle.

SEc. 6. Each manufacturer shall keep a register of all machine guns manufactured or handled by him. Such register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of each machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered. Upon demand, any manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, and parts and supplies therefor, and shall produce the register, herein required, for inspection. Any person who shall violate any provision of this section shall be fined not more than two thousand dollars.

SEc. 7. Each machine gun in this state on July 1, 1935, adapted to use pistol cartridges of thirty (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the commissioner of the state police on July 1, 1935, and annually thereafter on the first day of July. If acquired after July 1, 1935, it shall be registered within twenty-four hours after its acquisition and, thereafter, annually, on the first day of July. Blanks for registration shall be prepared by said commissioner and furnished upon application. To comply with this section, the application as filed shall show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which the gun was acquired. The registration data shall not be subject to inspection by the public. Any person who shall fail to register any gun as required by this section shall be presumed to possess the same for an offensive or aggressive purpose. The provisions of this section shall not apply to any machine gun which has been registered under the provisions of section six of this act and which is still in the actual possession

of the manufacturer.

SEC. 8. A warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of thirty (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record, upon application of the state's attorney, shall have authority to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the state or of a political subdivision thereof.

SEC. 9. No provision of this act shall apply to the manufacture of machine guns for sale or transfer to the United States government, to any state, territory or possession of the United States or to any political subdivision thereof or to the District of Columbia.

Sec. 10. This act shall take effect from its passage.

## **DELAWARE**

1797 Del. Laws 104, An Act For the Trial Of Negroes, ch. 43, §6.
And be it further enacted by the authority aforesaid, That if any Negro or Mulatto slave shall presume to carry any guns, swords, pistols, fowling pieces, clubs, or other arms and weapons whatsoever, without his master's special license for the same, and be convicted thereof before a magistrate, he shall be whipped with twenty-one lashes, upon his bare back.

1832 Del. Laws 208, A Supplement to an Act to Prevent the Use of Firearms by Free Negroes and Free Mulattoes, and for Other Purposes, chap. 176, § 1.

. . . it shall not be lawful for free negroes and free mulattoes to have, own, keep or possess any gun, pistol, sword or any warlike instruments whatsoever: Provided however, that if upon application of any such free negro or free mulatto to one of the justices of the peace of the county in which such free negro or free mulatto resides, it shall satisfactorily appear upon the written certificate of five or more respectable and judicious citizens of the neighborhood, that such free negro or free mulatto is a person of fair character, and that the circumstances of his case justify his keep and using a gun, then and in every such case it shall and may be lawful for such justice to issue a license or permit under his hand and authorizing such free negro or free mulatto to have use and keep in his posession a gun or fowling piece.

1841 Del. Laws 430, An Act Concerning Fees, ch. 368, § 1.

Justices of the Peace shall receive . . . For licenses to negroes to keep a gun, twenty five cents.

9 Del. Laws 552 (1843), A Further Supplement To An Act Entitled "An Act To Prevent The Use Of Fire-arms By Free Negroes And Free Mulattoes And For Other Purposes, § 1. 1843

That the proviso in the first section of the act to which this is a further supplement, and all and every the provisions of the said act, or any other supplemental act thereto, which authorizes the issuing, by a justice of the peace, of a license or permit to a free negro or free mulatto to have, use and keep in his possession, a gun or fowling piece, be and the same are hereby repealed, made null and void.

1909 Del. Laws 577, House Joint Resolution Providing for Increase in Non-Resident Gunners License Fee, ch. 271.

Whereas, there are numerous gunners from other States who make it a practice to gun in this State, and under existing laws a license fee of Five Dollars is collected from them. And Whereas, our neighboring States charge non-resident gunners a license fee of more than Five Dollars. Therefore be it resolved by the Senate and House of Representatives of the State of Delaware in General Assembly met: That from and after the passage of this Resolution up to and including April 30th, 1911, all non-resident gunners shall be required to pay a license fee of Ten Dollars per annum, said license fee to be collected in the same manner and by the same agency as non-resident gunners' licenses are now collected.

Vol. 26 Del. Laws 28, 28- 29 (1911)

Section 1. That from and after the first day of June, in the year of our Lord, one thousand nine hundred and eleven, it shall be unlawful for any person or persons, firm, company or corporation, to sell, or expose to sale, any pistol or revolver, or revolver or pistol cartridges, stiletto, steel or brass knuckles, or other deadly weapons made especially for the defense of one's person, without first having obtained a license therefor, which license shall be known as "Special License to Sell Deadly Weapons;" provided, however, that this provision shall not relate to toy pistols, pocket knives, or knives used in the domestic household, or surgical instruments or tools of any kind.

Section 2. Any person or persons, firm, company or corporation, desiring to engage in the business of selling revolvers, pistols, or revolver or pistol cartridges, stilettos, steel or brass knuckles, or other weapons made for the defense of one's person, shall, after the above

mentioned date, apply to the Clerk of the Peace of the County in which it is desired to conduct such business and shall obtain a license therefor, for which he, they, or it shall pay the sum of twenty-five dollars, which said license shall entitle the holder thereof to conduct said business for the term of one year from its date.

Section 3. It shall be unlawful for any person or per- sons, or a member of any firm, or the agents or officers of any corporation to sell to a minor, or any intoxicated person, any revolver, pistol, or revolver or pistol cartridges, stiletto, steel or brass knuckles, or other deadly weapons, made especially for the defense of one's person.

Section 4. It shall be the duty of any person or persons, firm, company or corporation, desiring to engage in the business aforesaid, to keep and maintain in his place of business at all times, a book which shall be furnished him by the Clerk of the Peace of the County wherein he does business in which said book he shall enter the date of the sale, the name and address of the person purchasing any such deadly weapon, the number and kind of deadly weapon so pur- chased, the color of the person so purchasing the same, and the apparent age of the purchaser; and no sale shall be made weapon, etc. until the purchaser has been positively identified. This book shall at all times be open for inspection by any Judge, Justice of the Peace, Police Officer, Constable, or other Peace Officer of this State.

## DISTRICT OF COLUMBIA

Washington D.C. 27 Stat. 116 (1892)

CHAP. 159.–An Act to punish the carrying or selling of deadly or dangerous weapons within the District of Columbia, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That it shall not be lawful for any person or persons within the District of Columbia, to have concealed about their person any deadly or dangerous weapons, such as daggers, air-guns, pistols, bowie-knives, dirk knives or dirks, blackjacks, razors, razor blades, sword canes, slung shot, brass or other metal knuckles.

SEC. 2. That it shall not be lawful for any person or persons within the District of Columbia to carry openly any such weapons as hereinbefore described with intent to unlawfully use the same, and any person or persons violating either of these sections shall be deemed guilty of a misdemeanor, and upon conviction thereof shall, for the first offense, forfeit and pay a fine or penalty of not less than fifty dollars nor more than five hundred dollars, of which one half shall be paid to any one giving information leading to such conviction, or be imprisoned in the jail of the District of Columbia not exceeding six months, or both such fine and imprisonment, in the discretion of the court: Provided, That the officers, non-commissioned officers, and privates of the United States Army, Navy, or Marine Corps, or of any regularly organized Militia Company, police officers, officers guarding prisoners, officials of the United States or the District of Columbia engaged in the execution of the laws for the protection of persons or property, when any of such persons are on duty, shall not be liable for carrying necessary arms for use in performance of their duty: Provided, further, that nothing contained in the first or second sections of this act shall be so construed as to prevent any person from keeping or carrying about his place of business, dwelling house, or premises any such dangerous or deadly weapons, or from carrying the same from place of purchase to his dwelling house or place of business or from his dwelling house or place of business to any place where repairing is done, to have the same repaired, and back again: Provided further, That nothing contained in the first or-second sections

19

of this act shall be so construed as to apply. to any person who shall have been granted a written permit to carry such weapon or weapons by any judge of the police court of the District of Columbia, and authority is hereby given to any such judge to grant such permit for a period of not more than one month at any one time, upon satisfactory proof to him of the necessity for the granting thereof; and further, upon the filing with such judge of a bond, with sureties to be approved by said judge, by the applicant for such permit, conditioned to the United States in such penal sum as said judge shall require for the keeping of the peace, save in the case of necessary self defense by such applicant during the continuance of said permit, which bond shall be put in suit by the United States for its benefit upon any breach of such condition.

SEC. 3. That for the second violation of the provisions of either of the preceding sections the person or persons offending shall be proceeded against by indictment in the supreme court of the District of Columbia, and upon conviction thereof shall be imprisoned in the penitentiary for not more than three years.

SEC. 4. That all such weapons as hereinbefore described which may be taken from any person offending against any of the provisions shall, upon conviction of such person, be disposed of as may be ordered by the judge trying the case, and the record shall show any and all such orders relating thereto as a part of the judgment in the case.

SEC. 5. That any person or persons who shall, within the District of Columbia, sell, barter, hire, lend or give to any minor under the age of twenty-one years any such weapon as hereinbefore described shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, pay a fine or penalty of not less than twenty dollars nor more than one hundred dollars, or be imprisoned in the jail of the District of Columbia not more than three months. No person shall engage in or conduct  the business of selling, bartering, hiring, lending, or giving any weapon or weapons of the kind hereinbefore named without having previously obtained from the Commissioners of the District of Columbia a special license authorizing the conduct of such business by such person, and the said Commissioners are hereby authorized to grant such license, without fee therefor, upon the filing with them by the applicant therefor of a bond with sureties, to be by them approved, conditioned in such penal sum as they shall fix to the United States for the compliance by said applicant with all the provisions of this section; and upon any breach or breaches of said condition said bond shall be put in suit by said United States for its benefit, and said Commissioners may revoke said license. Any person engaging in said business without having previously obtained said special license shall be guilty of a misdemeanor and upon conviction thereof shall be sentenced to pay a fine of not less than one hundred dollars nor more than five hundred dollars, of which one half shall be paid to the informer, if any, whose information shall lead to the conviction of the person paying said fine. All persons whose business it is to sell barter, hire, lend or give any such weapon or weapons shall be and they hereby, are, required to keep a written register of the name and residence of every purchaser, barterer, hirer, borrower, or donee of any such weapon or weapons, which register shall be subject to the inspection of the major and superintendent of Metropolitan Police of the District of Columbia, and further to make a weekly report, under oath to said major and superintendent of all such sales, barterings, hirings, lendings or gifts. And one half of every fine imposed under this section shall be paid to the informer, if any, whose information shall have led to the conviction of the person paying said fine. Any police officer failing to arrest any person guilty in his sight or presence and knowledge, of any violation of any section of this act shall be fined not less than fifty nor more than five hundred dollars.

SEC 6. That all acts or parts of acts inconsistent with the provisions of this act be, and the same hereby are, repealed.

Washington D.C. 47 Stat. 650, 651-652 (1932)
CARRYING CONCEALED WEAPONS
SEC. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.
EXCEPTIONS
SEC. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.
ISSUE OF LICENSES TO CARRY
SEC. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business-within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed. The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.
SELLING TO MINORS AND OTHERS
SEC. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of eighteen years.

**FLORIDA**

Leslie A. Thompson, A Manual or Digest of the Statute Law of the State of Florida, of a General and Public Character, in Force at the End of the Second Session of the General Assembly of the State, on the Sixth Day of January, 1847 Page 547, Image 582 (1847) available at The Making of Modern Law: Primary Sources. 1847

For the Prevention of Indians Roaming at Large Throughout the State, § 1. From and after the passage of this act, if any male Indian of the years of discretion, venture to roam or ramble beyond the boundary lines of the reservations, which have been assigned to the tribe or nation to which said Indian belongs, it shall and may be lawful for any person or persons to apprehend, seize, and take said Indian, and carry him before some Justice of the Peace, who is hereby authorized, empowered, and required, to direct (if said Indian have not a written permission from the agent to do some specific act) not exceeding thirty-nine stripes, at the discretion of the Justice, to be laid on the bare back of said Indian; moreover, to cause the gun of said Indian (if he has one) to be taken from him, and deposited with the colonel of the county, or captain of the district, in which said Indian may be taken, subject to the order of the superintendent of Indian Affairs.

1887 Fla. Laws 164-165, An Act to Establish the Municipality of Jacksonville Provide for its Government and Prescribe it's jurisdiction and powers, chap. 3775, § 4.
The Mayor and City Council shall within the limitations of this act have power by ordinance to . . . regulate and license the sale of firearms and suppress the carrying of concealed weapons.

1893 Fla. Laws 71-72, An Act to Regulate the Carrying of Firearms, chap. 4147, §§ 1-4. 1898
§ 1. That in each and every county of this State, it shall be unlawful to carry or own a Winchester or other repeating rifle or without first taking out a license from the County Commissioner of the respective counties, before such persons shall be at liberty to carry around with him on his person and in his manual possession such Winchester rifle or other repeating rifle. § 2. The County Commissioners of the respective counties in this State may grant such licenses at any regular or special meeting. § 3. The person taking out such license shall give a bond running to the Governor of the State in the sum of one hundred dollars, conditioned on the proper and legitimate use of the gun with sureties to be approved by the County Commissioners, and at the same time there shall by kept by the County Commissioners granting the same a record of the name of the person taking out such license, the name of the maker of the firearm so licensed to be carried and the caliber and number of the same. § 4. All persons violating the provisions of Section 1 of this Act shall be guilty of a misdemeanor, and on conviction shall be fined not exceeding one hundred dollars or imprisonment in the county jail not exceeding sixty days.

1895 Fla. Laws 14
Fourteenth. No merchant, store-keeper or dealer shall keep for sale or sell pistols, Springfield rifles, repeating rifles, bowie knives or dirk knives, without first paying a license tax of ten dollars; Provided, Said pistols, Springfield rifles, repeating rifles, bowie knives or dirk knives, shall not be sold to minors. Every violation of this paragraph shall be punished by a fine of fifty dollars, or by imprisonment in the county jail not more than six months.

1931 Fla. Laws 2069, § 7.
The village shall have the following rights and powers . . . To license, tax, regulate, or prohibit, within the village or any part thereof . . . explosives, guns, pistols and other weapons . . . .

## GEORGIA

A Digest of the Laws of the State of Georgia. From Its First Establishment as a British Province down to the Year 1798, Inclusive, and the Principal Acts of 1799: In Which is Comprehended the Declaration of Independence; the State Constitutions of 1777 and 1789, with the Alterations and Amendments in 1794. Also the Constitution of 1798 Page 153-154, Image 160-161 (1800) available at The Making of Modern Law: Primary Sources. 1768

Laws of Georgia, An Act to amend and Continue "An Act for the Establishing and Regulating Patrols, and for Preventing any Person from Purchasing Provisions or any Other Commodities from, or Selling Such to any Slave, Unless Such Slave Shall Produce a Ticket from His or Her Owner, Manager or Employer . . . Be it enacted, That immediately from and after passing of this act, it shall not be lawful for any slave, unless in the presence of some white person, to carry or make use of fire arms, or any offensive weapon whatsoever, unless such slave shall have a ticket or license in writing from his master, mistress, or overseer, to hunt and kill game, cattle, or mischievous birds or beasts of prey, and that such license be renewed every week, or unless there be some white person of the age of sixteen years or upwards in the company of such slave when he is hunting or shooting, or that such slave be actually carrying his master's arms to or from his master's plantation by a special ticket for that purpose, or unless such slave be found in the day-time, actually keeping off birds within the plantation to which such slave belongs, loading the same gun at night, within the plantation to which such slave belongs, loading the same gun at night, within the dwelling house of his master, mistress or white overseer: Provided always, That no slave shall have liberty to carry any gun, cutlass, pistol, or other offensive weapon, abroad at any time between Saturday evening after sunset and Monday morning before sun rise, notwithstanding a license or ticket for so doing. II. And be it further enacted, That in case any or either of the patrols, established or to be established within this province, by virtues of the said act, on searching and examining any negro house for offensive weapons, fire arms and ammunition, shall find any such, or in case any person shall find any slave using or carrying fire arms or other offensive weapons, contrary to the intent and meaning of this act, such patrol, or person or persons, may lawfully seize and take away such offensive weapons, fire arms, and ammunition, but before the property thereof shall be vested in the person or persons who shall seize the same, such person or persons shall, within three days next after such seizure, go before a justice of the peace, and shall make oath of the manner of taking thereof, and if such justice of the peace, after such oath made, or upon due examination, shall be satisfied that the said fire arms, offensive weapon, or ammunition, shall have been seized according to the directions, and agreeable to the true intent and meaning of this act, the said justice shall, by certificate under his hand and seal, declare them forfeited, that the property is lawfully vested in the person or persons who seized the same.

1866 Ga. Laws 27-28, An Act to Authorize the Justices of the Inferior Courts of Camden, Glynn and Effingham Counties to Levy a Special Tax for County Purposes, and to regulate the same, §§ 3-4.

§ 1. . . . collect a tax of two dollars per head on each and every dog over the number of three, and one dollar a piece on every gun or pistol, musket or rifle over the number of three kept or owned on any plantation in the counties aforesaid; the said tax to be applied to such county purposes as the said courts shall direct. § 2. That the owner of every plantation in said counties shall be

required to render, upon oath, a full return of every dog, gun, pistol, musket, or rifle so held or kept as aforesaid, and shall be held responsible for the tax imposed upon them, which tax the said Inferior Courts are hereby authorized and empowered to enforce, as in other cases.

1902 Ga. Laws 434-35, § 16.
Be it further enacted by the authority aforesaid, That the mayor and aldermen of the said city of Forsyth shall have full power to license, regulate and control by ordinance all . . . gun shops, dealers in guns or pistols . . . .

Orville Park, Park's Annotated Code of the State of Georgia 1914, Penal Code, Article 3, Carrying pistols without license, § 348(a)-(d). 1910
§ 348 (a). Carrying pistols without license. [It shall be unlawful for any person to have or carry about his person, in any county in the State of Georgia, any pistol or revolver without first taking out a license from the ordinary of the respective counties in which the party resides, before such person shall be at liberty to carry around with him on his person, or to have in his manual possession outside of his own home or place of business: Provided that nothing in this law shall be construed to alter, affect, or amend any laws now in force in this State relative to the carrying of concealed weapons on or about one's person, and provided further, that this shall not apply to sheriffs, deputy sheriffs, marshals, or other arresting officers of this State or United States, who are now allowed, by law, to carry revolvers; nor to any of the militia of said State while in service or upon duty; nor to any students of military colleges or schools when they are in the discharge of their duty at such colleges.] § 348 (b). License, how obtained. [The ordinary of the respective counties of this State in which the applicant resides may grant such license, either in term time or during vacation, upon the application of party or person desiring to apply for such license; provided applicant shall be at least eighteen years old or over, and shall give a bond payable to the Governor of the State in the sum of one hundred dollars, conditioned upon the proper and legitimate use of said weapon with a surety approved by the ordinary of said county, and the ordinary granting the license shall keep a record of the name of the person taking out such license, the name of the maker of the fire-arm to be carried, and the caliber and number of the same.] § 348 (c). Fee for license. [The person making such application and to whom such license is granted, shall pay to the ordinary for granting said license the sum of fifty cents, which license shall cover a period of three years from date of granting same.] § 348 (d). Punishment. [Any person violating any of the provisions of the three preceding sections shall be punished as for a misdemeanor, as prescribed in section 1065 of this Code.]

1921 Ga. Laws 248, Explosives, Use of Regulated, § 1.
That from and after the passage of this Act, It shall be unlawful for any person, association of persons, co-partnerships or corporations to have, own, possess or control within the State of Georgia, any dynamite, nitro-glycerine, gun cotton, or any other high explosive of any name whatsoever, without first having registered his, their or its name with the Ordinary of the County where such person, association or persons, co-partnership or corporation resides, or does business, in a book to be kept by said Ordinary to be known as the Explosive Register . . . .

## HAWAII

1870 Haw. Sess. Laws 26, An Act to License the Carrying of Fowling Pieces and Other Firearms, chap. 20, §§ 1 to 3.

Lawrence McCully, Compiled Laws of the Hawaiian Kingdom Page 539, Image 545 (1884) available at The Making of Modern Law: Primary Sources. 1870

An Act to License the Carrying of Fowling Pieces and Other Fire-Arms. Whereas, the Act for the protection of Kolea or Plover and other useful birds, approved on the 20th day of April, A.D. 1859, has proved ineffectual for the purposes intended thereby, and Whereas, The general and indiscriminate use of fire-arms, which are frequently used for the destruction of useful, imported and migratory insectivorous birds and their progeny, is an injury to the agricultural and pastoral interests of this Kingdom, therefore, Be it Enacted by the King and Legislative Assembly of the Hawaiian Islands in the Legislature of the Kingdom assembled: § 1. That the Minister of the Interior may at any time license for a term of one year, any applicant for such license, to use and carry fire-arms for sporting purposes, in the District of Kona, Island of Oahu, on receiving for such license the sum of five dollars. § 2. Any person in said district who shall use or carry for sporting purposes, any gun, carbine, rifle, pistol, or other fire-arms, without having at first obtained a license as hereinbefore provided, shall, upon conviction therefor, before any police or district justice, be fined in a sum not to exceed fifty dollars for every such offense, and in default of payment of such sum, shall be imprisoned at hard labor, until such fine and costs are paid, according to law. § 3. All such licenses shall be signed by the Minister of the Interior, numbered according to their respective dates and impressed with the seal of his department, and no such license shall be transferable.

Revised Laws of Hawaii 1925, 791-92 (1925).

Section 2137. Form or report. It shall be the duty of the sheriff to prepare and furnish to all persons applying therefor [meaning applying under Section 18 of 1927 Haw. Sess. Laws 209-217], proper blanks upon which such information shall be furnished, in the following form: [requiring name of owner, name of possessor, number, description, makers name, factory number, and number disposed of and date].

1927 Haw. Sess. Laws 209-217, AN ACT Regulating the Sale, Transfer and Possession of Certain Firearms and Ammunitions, and Amending Sections 2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2146 and 2147 of the Revised Laws of Hawaii 1925 (the "Small Arms Act"), §§ 10-11, § 17.

Section 1. Definitions. "Pistol" or "revolver" as used in this Act, means any firearm with barrel less than twelve inches in length. "Crime of Violence", as used in this Act means any of the following crimes, namely, murder, manslaughter, rape, mayhem, assault to do great bodily harm, robbery, larceny, burglary and house-breaking. Section 2. Committing crime when armed. If any person, when armed with a pistol or revolver, shall commit or attempt to commit an act constituting a crime of violence, he may in addition to the punishment otherwise provided for the crime, be punished by imprisonment for not more than one year or by a fine of not more than one thousand dollars ($1,000.00) or by both; provided, that the act aforesaid be one which is capable of being committed or facilitated by means of a pistol or revolver. Section 3. Being armed prima facie evidence of intent. In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol or revolver and had no license to carry the same, shall be prima facie evidence of his intention to commit said crime of violence; provided,

that the criminal act committed or attempted be one which is capable of being committed or facilitated by means of a pistol or revolver.

Section 5. Carrying or keeping small arms by unlicensed persons. Except as otherwise provided in Sections 7 and 11 hereof in respect of certain licensees, no person shall carry, keep, possess, or have under his control a pistol or revolver; provided, however, that any person who shall have lawfully acquired the ownership or possession of a pistol or revolver may, for purposes of protection and with or without a license, keep the same in the dwelling house or business office personally occupied by him, and, in case of an unlawful attack upon any person or property in said house or office, said pistol or revolver may be carried in any lawful, hot pursuit of the assailant.

Section 6. Exceptions. The provisions of the preceeding section shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, policemen, mail carriers, or other duly appointed law enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States, or of the National Guard, when on duty, or of organizations by law authorized to purchase or receive such weapons from the United States or this territory, or to officers or employees of the United States authorized by law to carry a concealed pistol or revolver, or to duly authorized military organizations when on duty, or to the members thereof when at or going to or from their customary places of assembly, or to the regular and ordinary transportation of pistols or revolvers as merchandise, or to any person while carrying a pistol or revolver unloaded in a wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

Section 9. Transfers regulated. No person shall transfer by way of sale, gift, loan or otherwise, a pistol or revolver unless the prospective transferee, when he applies for the transfer, presents a permit duly granted under Section 2141 of the Revised Laws of Hawaii 1925; nor shall he make such transfer unless the transferee be a person in respect of whom there is no reasonable cause, known to the transferor, for believing that such transferee has committed or attempted, or has been convicted of committing or attempting, a crime of violence. No seller shall in any event deliver a pistol or revolver on the day when the application to purchase and the statement hereinafter mentioned shall be made. When delivered, said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, race, nationality, color and place of birth, the date of sale, the caliber, make, model, and manufacturer's number of the weapon, and stating that he has never been convicted of a crime of violence. The seller shall promptly sign and forward by registered mail one copy thereof to the treasurer of the territory, and one copy thereof to the sheriff of the county or city and county of which the seller is a resident, and shall retain the other copy for six years. A statement shall be deemed promptly forwarded if it is forwarded within seven days, unless a shorter time is provided therefor in regulations established by the Governor.

Section 10. Dealers to be licensed. No retail dealer or selling agent shall sell or otherwise transfer, or expose for sale or transfer, or have in his possession with intent to sell, or otherwise transfer, any pistol or revolver without being licensed as hereinafter provided.

Section 11. Dealers' Licenses; by whom granted, and conditions thereof. The duly constituted licensing authorities of any political subdivision of this territory may grant licenses in form prescribed by the treasurer of the territory, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision,

pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4. The seller shall faithfully comply with the requirements of Section 9 hereof and with all other provisions of this Act and of Chapter 128, Revised Laws of Hawaii 1925. A copy of the statement required by Section 9 hereof shall be entered by the seller in a book of record to be kept in his place of business and to be always open to the inspection of the officers and authorized representatives of the territorial government, including the police. Said book shall be preserved for six years.

5. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

No license to sell at retail shall be granted to anyone except as provided in this section.

Section 12. False information forbidden. No person shall, in purchasing or otherwise securing delivery of a pistol or revolver, or in applying for a license to carry the same, give false information or offer false evidence of his identity.

Section 17. Penalties. Any violation of any provision of this Act shall constitute an offense punishable by a fine of not more than one thousand dollars ($1,000.00) or imprisonment for not more than one year, or both.

Section 25. Section 2143 of the Revised Laws of Hawaii 1925, is hereby amended by inserting, after the first sentence in said section ["The permit mentioned in section 2141 shall not be issued to any alien until the applicant has filed with the sheriff or a deputy sheriff of the county or city and county a request in writing, signed by two responsible citizens requesting that such permit be issued, and recommending and vouching for the applicant."], the following: "The request aforesaid shall include (1) an expression of the belief of such citizens that the applicant has never committed or attempted a crime of violence, as that phrase is defined in the Small Arms Act; that he has never been convicted thereof anywhere and that he is not likely to commit or attempt any such crime and (2) a brief statement of the facts relating to the age, character, nativity and personal history of the applicant, insofar as these facts are within the personal knowledge of such responsible citizens. Such facts as are within the personal knowledge of one of them, only, shall be included in a supplemental written statement signed by the person having such knowledge." [The rest of Section 2143 reads: "Aliens obtaining a permit as prescribed by the above section shall be required to secure an annual license from the treasurer of the county or city and county, and to pay to the treasurer an annual license tax of five dollars; provided, however, that to aliens who must necessarily use fire-arms in carrying on their business, such as rice planting, such license shall be issued free of charge upon a certificate from the sheriff of the county or city and county in which they carry on such business to the effect that the fire-arms and ammunition mentioned in their permit are necessary to the conduct of their business."]

Section 26. Section 2146 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows: "Section 2146. Penalties. Any person who shall be found in the possession of any firearm or firearms or any ammunition without having complied with the provisions of this chapter, or who shall fail to give, file or forward required information, reports or statements, or

who shall otherwise violate the provisions of this chapter in matters not covered by Section 2142 hereof, shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined by the court of appropriate jurisdiction in a sum of not more than five hundred dollars ($500.00). Any person, firm, corporation, copartnership, failing to file any information herein required to be filed, shall be deemed guilty of a misdemeanor and upon conviction shall be fined by the court of appropriate jurisdiction not more than five hundred dollars ($500.00).

The divulging of official information recorded or on file in a public office shall be punishable in like manner; provided, however, that where the information divulged has not tended, or been designed to encourage, or to render formidable armed resistance to the law, the fine shall not exceed twenty-five dollars ($25.00)."

1933 Haw. Sess. Laws 36-37, An Act Regulating the Sale, Transfer, and Possession of Firearms and Ammunition, § 3.

Every person residing or doing business or temporarily sojourning within the Territory on the effective date of this Act who possesses a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, not already registered in the name of the present possessor, or who possesses ammunition of any kind or description, except shotgun ammunition, shall, within ten days of said effective date, register the same with the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn. Every person arriving in the Territory after the effective date of this Act, who brings with him firearms or ammunition of the type and description set out in this section, shall register the same in similar manner within forty-eight hours after arrival. The registration shall be on such forms as may be designated by the bureau of crime statistics and shall include a description of the class of firearm or firearms and ammunition owned by him, or in his possession, together with the name of the maker and the factory number, if known or ascertainable, and the source from which possession was obtained. Within sixty days after the effective date of this Act, the chief of police of the city and county of Honolulu and the sheriffs of the several counties, other than the city and county of Honolulu, shall furnish the bureau of crime statistics a record of all registrations now on file in their respective offices. Within ten days after the end of each month the chief of police of the city and county of Honolulu and the sheriffs of the several counties, other than the city and county of Honolulu, shall furnish to the bureau of crime statistics duplicate copies of all registrations made during the preceding month. No fee shall be charged for such registration. Any person who fails to comply with the provisions of this section shall he punished by a fine of not more than two hundred and fifty dollars ($250.00).

1933 Haw. Sess. Laws 37-38, An Act Regulating the Sale, Transfer, and Possession of Firearms and Ammunition, § 4.

§ 4. No person residing or doing business or temporarily sojourning within the Territory shall take possession of any fire arm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior Acts or unregistered, or of any ammunition of any kind or description, except shotgun ammunition, either through sale, gift, loan, bequest, or otherwise, whether procured in the Territory or imported by mail, express, freight, or otherwise, until he shall first have procured from the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu,

28

wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn, a permit to acquire as prescribed herein. The chief of police of the city and county of Honolulu or the sheriffs of the several counties, other than the city and county of Honolulu, are hereby authorized, within their discretion, to issue permits, within their respective jurisdictions, to acquire rifles, pistols, and revolvers to citizens of the United States, of the age of twenty years or more, and to duly accredited official representatives of foreign nations. Permits to acquire ammunition for rifles, pistols and revolvers acquired prior to the effective date of this Act and registered in accordance with the provisions hereof, may be granted persons [sic] of the age of twenty years or more irrespective of citizenship. Permits to acquire shotguns may be granted to persons of the age of sixteen years or more, irrespective of citizenship. Applications for such permits shall be signed by the applicant upon forms to be specified by the bureau of crime statistics, and shall be signed by the issuing authority. One copy of such permit shall be retained by the issuing authority, as a permanent official record. Such permit shall be void unless used within ten days after the date of issue. In all cases where possession is acquired from another person in the Territory the permit shall be signed in ink by the holder thereof and shall thereupon he delivered to and taken up by the person selling, loaning, giving or delivering the firearm or ammunition, who shall make entry thereon setting forth in the space provided therefor the name of the person to whom the firearm or ammunition was delivered, and the make, style, caliber, and number, as applicable. He shall then sign it in ink and cause it to he delivered or sent by registered mail to the issuing authority within forty-eight hours. In case receipt of such firearms or ammunition is had by mail, express, freight, or otherwise, from sources outside the Territory, the person to whom such permit has been issued, shall make the prescribed entries thereon, sign in ink, and cause it to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearms or ammunition. No person shall sell, give, loan, or deliver into the possession of another any firearm or ammunition except in accordance with the Provisions of this section. Any person acquiring a firearm or ammunition under the provisions of this section shall, within five days of acquisition, register same in the manner prescribed by Section 3 of this Act. No fee shall be charged for permits under this section. Any person who violates any provision of this section shall be punished by a fine of not more than five hundred dollars ($500.00) or imprisonment for not more than one year, or by both.

1933 Haw. Sess. Laws 38, An Act Regulating the Sale, Transfer, and Possession of Firearms and Ammunition, § 5. 1933
Any person who has procured a hunting license under the provisions of Sections 2028-2032, inclusive, of the Revised Laws of Hawaii 1925, as amended, shall, while actually engaged in hunting or while going to or from the place of hunting, be authorized to carry and use any lawfully acquired rifle or shotgun and suitable ammunition therefor.

1933 Haw. Sess. Laws 39, An Act Regulating the Sale, Transfer, and Possession of Firearms and Ammunition, § 8, 10-16.
§ 8. In an exceptional case, when the applicant shows good reason to fear injury to his person or property, the chief of police of the city and county of Honolulu or the sheriff of a county, other than the city and county of Honolulu, may grant a license to a citizen of the United States or a duly accredited official representative of a foreign nation, of the age of twenty years or more, to carry concealed on his person within the city and county or the county in which such license is

granted, a pistol or revolver and ammunition therefor. Unless renewed, such license shall automatically become void at the expiration of one year from date of issue. No such license shall issue unless it appears that the applicant is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony, or adjudged insane, in the Territory or elsewhere. All licenses to carry concealed weapons heretofore issued shall expire at midnight on the effective date of this Act. No person shall carry concealed on his person a pistol or revolver or ammunition therefor without being licensed so to do under the provisions of this section. For each such license there shall he charged a fee of ten dollars ($10.00), which shall be covered into the treasury of the city and county or the county in which such license is granted. Any person violating this section shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than one year, or by both.

1933 Haw. Special Sess. Laws 117, An Act . . . Regulating The Sale, Transfer And Possession Of Certain Firearms, Tear Gas And Ammunition: § 2.
Except as permitted under the provisions of this Act, no person, firm or corporation shall own, possess, sell, offer for sale or transport any firearm of the kind commonly known as a machine gun or any shell cartridge or bomb containing or capable of emitting tear gas or any other noxious gas. Provided, however, that nothing in this Act contained shall prohibit the sale to, purchase by, or possession of such firearms by any city and county, county, territorial or federal officer where such firearms are required for professional use in the discharge of his duties, nor to the transportation of such firearms for or on behalf of police departments and members thereof, sheriffs, or the military or naval forces of this Territory or of the United States and "Provided, further that nothing in this Act shall prohibit police departments and members thereof, sheriffs, or the military or naval forces of the territory or of the United States from possessing or transporting such shells, cartridges or bombs for professional use in the discharge of their duties. "The term 'shell, cartridge or bomb', as used in this Act shall be construed to apply to and include all shells, cartridges, or bombs capable of being discharged or exploded through or by the use of percussion caps, fuses, electricity, or otherwise, when such discharge or explosion will cause or permit the release or emission of tear gases. The term 'machine gun' as used in this Act shall be construed to apply to and include machine rifles, machine guns and submachine guns capable of automatically and continuously discharging loaded ammunition of any caliber in which the ammunition is fed to such guns from or by means of clips, disks, drums, belts or other separable mechanical device."

## **ILLINOIS**

An Act concerning the Kaskaskia Indians, in Nathaniel Pope, Laws of the Territory of Illinois (1815). 1814
That it shall not be lawful for any person whatever without license from the Governor or some sub-agent appointed by him to purchase or receive by gift or other wise of any of the before mentioned Indians, any horse, mare, gun, tomohawk, knife, blanket, shrouding, calico, saddle, bridle, or any goods wares or merchandize whatever, that all such sales or gifts shall be considered as fraudulent on the part of the buyer or receiver and that any white person or free person of coulour whatever so buying or receiving any such articles of any one of those Indians shall be liable to pay a fine of twenty dollars to be recovered before a justice of the peace . . . ."

Samuel P. Church, The Revised Ordinances of the City of Quincy, Ill. to Which are Prefixed the Charter of the City of Quincy, and the Amendment Thereto Page 47, Image 47 (1841) available at The Making of Modern Law: Primary Sources. 1841

[An Ordinance Regulating the Police of the City of Quincy], § 5. Be it further ordained by the City Council of the City of Quincy, That no person shall, within the limits of said city, fire or discharge any cannon, musket, rifle, fowling piece, or other fire arms, or air-gun, except in cases of necessity, or in the performance of a public or lawful act of duty, or discharge or set of any cracker, rocket, torpedo, squib, or other fire works, within the limits of said city, without permission first obtained from the Mayor or one of the Aldermen, or Marshal of said city; and every person so offending shall forfeit and pay, for the use of said city, not less than one dollar, nor more than three dollars, for every such offense.

George Manierre, The Revised Charter and Ordinances of the City of Chicago: To Which are Added the Constitutions of the United States and State of Illinois Page 123-125, Image 131-133 (1851) available at The Making of Modern Law: Primary Sources. 1851

Ordinances of the City of Chicago: Regulating the Keeping and Conveying Gun Powder and Gun Cotton; § I. (Be it ordained by the Common Council of the city of Chicago) That no person shall keep, sell, or give away gun powder or gun cotton in any quantity without permission of the common council or mayor in writing, signed by the mayor and clerk and sealed with the corporate seal, under a penalty of twenty-five dollars for every offence. § II. All applications for permits shall be addressed to the common council or mayor in writing, signed by the applicant. Not exceeding four permits shall be granted in any block. When the number of applications in any block shall at any time exceed the number to be granted, the requisite number shall be chosen by ballot. When issued the clerk shall make an entry thereof in a register to be provided for the purpose which entry shall state the name and place of business and date of permit. Persons to whom permits may be issued shall not have or keep at their place of business or elsewhere within the city, a greater quantity of gun powder or gun cotton than fifty pounds at one time, and the same shall be kept in tin canisters or cases containing not to exceed thirteen pounds each, and in a situation remote from fires or lighted lamps, candles or gas from which they may be easily removed in case of fire. Nor shall any person sell or weigh any gun powder or gun cotton after the lighting of lamps in the evening, unless in sealed canisters or cases. It shall be the duty of every person to whom a permit shall be given to keep a sign at the front door of his place of business with the words "gun powder and gun cotton" painted or printed theron in large letters. A violation of any clause of this section shall subject the offender to a fine of not less than ten dollars nor exceeding one hundred dollars. § III. No person shall convey or carry any gun or carry any gun powder or gun cotton, (exceeding one pound in quantity), through any street or alley in the city, in any cart, carriage, wagon, dray, wheelbarrow, or otherwise, unless the gun powder or gun cotton be secured in tight cases or kegs well headed and hooped, and put into and entirely covered with a leather bag or case, sufficient to prevent such gun powder or gun cotton from being spilled or scattered under a penalty of one hundred dollars. IV. No vessel, laden in whole or in part with gun powder or gun cotton, shall land at, or make fast to any dock or wharf upon the Chicago river, or either branch thereof, between the south line of the school section and Chicago avenue, or to discharge such gun powder or gun cotton within said limits. If any master, or owner of any vessel, or other person shall violate any provision of this section, he shall be subject to a fine of not less then twenty-five dollars and not exceeding one hundred dollars. § V. The mayor shall have power to cause any vessel to be removed form the limits

mentioned in the previous section, to any place beyond the same, by a written order, which shall be executed by the marshal or some other member of the police. If any person shall neglect or refuse to obey such order, or shall resist any officer in the execution of the same, he shall be subject to a penalty of one hundred dollars. § VI. Al permissions granted under this ordinance shall expire on the tenth day of June each year. And no permit shall be granted to any retailer of intoxicating liquors or to any intemperate person. The clerk shall be entitled to a fee of one dollar for every permit so issued. § VII. It shall be the duty of the officers of the police department, fire-wardens, and firemen, to report all violations of this ordinance which may come to the knowledge of the city attorney for prosecution.

James M. Cunningham, The City Charter and the Revised Ordinances of the City of Peoria, Illinois; Also, the Original City Charter, and the Several Amendments Thereto, and the State Laws Relating to the City or Specially Affecting Its Interests; Together with the Rules of Order and Business for the Government of the City Council. Arranged, Revised, and Published, Under the Authority of the City Council, in the Year 1869 Page 254, Image 284 (1869) available at The Making of Modern Law: Primary Sources. 1869
Revised Ordinances [of the City of Peoria: Public Safety and Convenience], § 1. That it shall not be lawful for any person in said city, without permission from the mayor or superintendent of police, to fire or discharge any cannon, musket, rifle, fowling-piece, pistol, or other fire-arms or air guns, except it is done in cases of necessity, or in the performance of a public act of lawful duty, or by military companies when on parade or in the discharge of duty; and every person violating the provisions of this section shall, on conviction, forfeit and pay not less than one dollar nor more than one hundred dollars for every offense.

Revised Ordinances of the City of Galesburg, the Charter and Amendments, State Laws Relating to the Government of Cities and Appendix Page 122-123, Image 127-128 (1869) available at The Making of Modern Law: Primary Sources. 1869
Revised Ordinances [of Galesburg, Ill.], Gunpowder-Fires, Fire-Arms, § 1. The keeping for sale or selling gunpowder, without a license therefor, is prohibited, and no license shall be issued allowing the keeping in store more than twenty-five pounds of gun powder at any one time, unless kept in some secure magazine or fire-proof powder house, located at least one hundred feet from any other occupied building, and when kept in a store or place for retail it shall be kept in tin or other metallic canisters or cases, and in a part of the building remote from any fire, lamp, candle or burning matter liable to produce explosion, and whoever shall violate this section, or any provision of it, shall be subject to a penalty of twenty dollars. § 2. Each person licensed to sell gunpowder shall keep a sign, with the words "Gunpowder for Sale," in plain letters, in some conspicuous place in the front of the building where such powder is kept. And no sales of gunpowder, except in unopened cans shall be sold after night, and any person convicted of violation of any of the provisions of this section shall be subject to a penalty of ten dollars. § 3. Whoever shall bring or cause to be brought into the city any gunpowder concealed in any box or other package, or in any package marked as containing other articles, in which such powder is contained, shall be subject to a penalty of twenty-five dollars. §4. The carrying gunpowder through the streets or other public places, in a careless or negligent manner, or the remaining with such powder in any place longer than necessary for the transportation of the same from one place to another, shall subject the party offending to a penalty of not less than five dollars. . .

Consider H. Willett, Laws and Ordinances Governing the Village of Hyde Park Together with Its Charter and General Laws Affecting Municipal Corporations; Special Ordinances and Charters under Which Corporations Have Vested Rights in the Village. Also, Summary of Decisions of the Supreme Court Relating to Municipal Corporations, Taxation and Assessments Page 64, Image 64 (1876) available at The Making of Modern Law: Primary Sources. 1876 Misdemeanors, § 39. No person, except peace officers, shall carry or wear under their clothes, or concealed about their person, any pistol, revolver, slung-shot, knuckles, bowie-knife, dirk-knife, dirk, dagger, or any other dangerous or deadly weapon, except by written permission of the Captain of Police.

Egbert Jamieson, The Municipal Code of Chicago: Comprising the Laws of Illinois Relating to the City of Chicago, and the Ordinances of the City Council; Codified and Revised Page 301-304, Image 309-312 (1881) available at The Making of Modern Law: Primary Sources. Ordinances of Chicago, § 1264. No person shall keep, sell or give away any gunpowder or gun-cotton in any quantity, without permission in writing, signed by the mayor and city clerk, and sealed with the corporate seal, under a penalty of twenty-five dollars for every offense: Provided, any person may keep for his own use a quantity of gunpowder or guncotton not exceeding one pound. . . § 1271. It shall be unlawful for any person or persons to carry or convey any gunpowder or guncotton (exceeding fifty pounds in quantity) through any street, alley, highway or road in the city, or within one miles of the limits thereof, in any cart, carriage, wagon, dray or wheelbarrow, or otherwise, unless the said gunpowder or guncotton be secured in tight cases or kegs well headed and hooped, and put into and entirely covered with a good tight and substantial leather bag sufficient to prevent the same from being spilled or scattered or unless the same is put into a well covered and perfectly water tight box, the bottom and sides which shall be completely covered with zinc, or unless such gunpowder or guncotton be secured in water tight patent metallic cases or kegs. . . § 1275. Any person or persons, corporation or corporations, violating any of the provisions of sections (storage, manufacturing and sale §§) shall be subject to a fine of not less than fifty dollars, and not exceeding two hundred dollars, for each and every offense, and each and every day that gunpowder or guncotton shall be kept in any place contrary to any provision of this article shall constitute a violation thereof. § 1276. No vessel laden in whole or in part with gunpowder or guncotton shall land or make fast to any dock or wharf upon the Chicago river, or either branch thereof between the south line of the school section and Chicago avenue, or discharge such gunpowder or guncotton within said limits. If any master or owner of any vessel or other person shall violate any provision of this section he shall be subject to a fine of not less than twenty dollars, and not exceeding one hundred dollars.

Merritt Starr & Russell H. Curtis, Annotated Statutes of the State of Illinois in Force (1885), Criminal Code Ch. 38, para. 90.
All persons dealing in deadly weapons, hereinbefore mentioned, at retail within this State shall keep a register of all such weapons sold or given away by them. Such register shall contain the date of the sale or gift, the name and age of the person to whom the weapon is sold or given, the price of the said weapon, and the purpose for which it is purchased or obtained. The said register shall be in the following form. [Form of Register] Said register is to be kept open for inspection of the public, and all persons who may wish to examine the same may do so at all reasonable times during business hours. A failure to keep such register, or to allow an examination of the same, or to record therein any sale or gift of a deadly weapon, or the keeping of a false register,

shall be a misdemeanor, and shall subject the offender to a fine of not less than twenty-five dollars ($25) nor more than two hundred dollars ($200).

George W. Hess, Revised Ordinances of the City of Evanston : Also Special Laws and Ordinances of General Interest Page 131-132, Image 143-144 (1893) available at The Making of Modern Law: Primary Sources. 1893
Concealed Weapons, §531. It shall be unlawful for any person within the limits of the city of Evanston to carry or wear under his clothes or concealed about his person, any pistol, colt or slung shot, cross knucklet, or knuckles of lead, brass or other metal, or bowie knife, dirk, dagger, or any other dangerous or deadly weapon. . . § 537. The Mayor may grant to so many and such persons as he may think proper, licenses to carry concealed weapons, and may revoke any and all such licenses at his pleasure. § 538. Applications for such licenses shall be made to the city clerk, and when granted, the applicant therefor shall pay to the said clerk, for the use of the city, the sum of two dollars. § 539. Every such license shall state the name, age and occupation and residence of the person to whom it is granted.

Samuel A. Ettelson, Opinions of the Corporation Counsel and Assistants from May 1, 1915, to June 30, 1916 Page 458-459, Image 458-459 (Vol. 7, 1916) available at The Making of Modern Law: Primary Sources. 1914
Ordinance of May 25, 1914, § 4a. It shall be unlawful for any person, firm or corporation to sell, barter or give away to any person within the City of Chicago, any pistol, revolver, derringer, bowie knife, dirk or other weapon of like character which can be concealed on the person, except to licensed dealers and to persons who have secured a permit for the purchase of such articles from the general superintendent of police as hereinafter required; provided, this section shall not apply to sales made of such articles which are delivered or furnished outside the City of Chicago. § 5. It shall be unlawful for any person to purchase any pistol, revolver, derringer, bowie knife, dirk or other weapon of like character, which can be concealed on the person, without first securing from the General Superintendent of Police a permit so to do. Before any such permit is granted, an application in writing shall be made therefor, setting forth in such application the name, address, age, height, weight, complexion, nationality and other elements of identification, of the person desiring such permit, and the applicant shall present such evidence of good character as the General Superintendent of Police in his discretion may require. § 6. It shall be the duty of the General Superintendent of Police to refuse such permit to (a) All persons having been convicted of any crime. (b) all minors. "Otherwise, in case he shall be satisfied that the applicant is a person of good moral character, it shall be the duty of the General Superintendent of Police to grant such permit, upon the payment of a fee of one dollar. § 8. Any person, firm or corporation violating any of the provisions of this ordinance, shall be fined not less than Fifty Dollars ($50.00) nor more than Two hundred Dollars ($200.00) for each offense, and every purchase, sale or gift of any weapon mentioned in this ordinance shall be deemed a separate offense.

Samuel Irwin, Reports of Cases At Law And In Chancery 566 (vol. #278, Chicago, Ill, 1917). 1917
It shall be the duty of the general superintendent of police to refuse such permit to (a) all persons having been convicted of any crime; (b) all minors. Otherwise, in case he shall be satisfied that

34

the applicant is a person of good moral character, it shall be the duty of the general superintendent of police to grant such permit upon the payment of a fee of one dollar.

1931 Ill. Laws 453, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, § 4.
Every manufacturer or merchant shall keep a register of all machine guns manufactured or handled by him. This register shall show the date of the sale, loan, gift, delivery or receipt of any machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received, and the purpose for which the person to whom the machine gun was sold, loaned, given or delivered, purchased or obtained said machine gun. Upon demand, every manufacturer or merchant shall permit any sheriff or deputy sheriff, or any police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register herein required and all written permits to purchase or possess a machine gun, which he has retained and filed in his place of business for inspection by such officer.

## INDIANA

1847 Ind. Acts 93, An Act to Reduce the Law Incorporating the City of Madison, and the Several Acts Amendatory Thereto Into One Act, and to Amend the Same, chap 61, § 8, pt. 4.
To regulate and license, or provide by ordinance for regulating and licensing . . . the keepers of gunpowder and other explosive compounds . . . .

W. G. Armstrong, The Ordinances and Charter of the City of Jeffersonville Page 15-17, Image 15-17 (1855) available at The Making of Modern Law: Primary Sources. 1855 Ordinances [of Jeffersonville], § 3, Pt. 11. It shall also be a nuisance and unlawful . . . To discharge or cause to be discharged any fire arms, squibs, bombs or fire works of any kind without license being first obtained therefor.

Revision of 1895. The General Ordinances of the City of Indianapolis. Containing also, Acts of the Indiana General Assembly so far as they Control Said City, to which Prefixed a Chronological Roster of Officers from, 1832 to 1895 and Rules Governing the Common Council Page 290-291, Image 372-373 (1895) available at The Making of Modern Law: Primary Sources. 1895
Laws and Ordinances [of the City of Indianapolis], An Ordinance Licensing Rifle and Pistol Practice in the City of Indianapolis, § 1. Be it ordained by the Common Council and Board of Aldermen of the City of Indianapolis, That it shall hereafter be unlawful for any person to conduct or carry on any shooting gallery or room where rifle or pistol shooting is practiced, in the City of Indianapolis, without first having procured a license so to do, as hereinafter provided. § 2. A license fee of twenty-five dollars for six months and fifty dollars for one year shall be paid by the person conducting such business. Upon the payment of twenty-five dollars to the City Treasurer by any person desiring to carry on such a gallery or room, the City Treasurer shall issue to him a receipt therefor, designating therein what said money is paid for; and upon the surrender thereof to the City Clerk [Comptroller] that officer shall issue to such person a license for the said term of six months; and likewise, upon the payment of fifty dollars, a license for one year shall issue. The Clerk [Comptroller] shall be entitled to charge one dollar for the issue of

every such license. Said license shall be in the usual form. § 3. Any person opening or carrying on such a gallery or room without such license shall be fined in any sum not exceeding fifty dollars; and every day's continuance shall constitute a spate offense.

1925 Ind. Acts 495, 495-98

Pistols and Revolvers Defined.

SECTION 1. Be it enacted by the general assembly of the State of Indiana, That the term "pistol or revolver," as used in this act, shall be construed as meaning any firearm with a barrel less than twelve inches in length.

Crime-Committing When Armed With Pistol or Revolver.

SEc. 2. If any person shall, within the State of Indiana, commit or attempt to commit a crime, when armed with a pistol or revolver, and having no permit to carry the same, he shall, in addition to the punishment provided for the crime, be guilty of a felony and shall be punished by imprisonment for not less than one year and not more than five years.

Subsequent Offenses.

SEc. 3. The judge shall have the power to sentence any person who may be convicted for a second or third, or other subsequent offense under section 2 of this act, to double or triple the penalty imposed thereby.

Felony-Conviction For-Prohibited From Possessing Pistol.

SEC. 4. No person who has been convicted of a felony committed against the person or property of another shall own or have in his possession or under his control, within the State of Indiana, a pistol or revolver. A violation of this section shall constitute a felony and be punishable by imprisonment for not less than one year, and not more than five years.

Pistol or Revolver-Possession Without Permit.

SEc. 5. No person shall carry, within the State of Indiana, a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a permit therefor as hereinafter provided. Violations of this section shall constitute a misdemeanor and be punished by a line of one hundred dollars ($100.00), to which may be added imprisonment for not more than one year, and upon conviction the pistol or revolver shall be confiscated and destroyed by the sheriff on order of the court.

Persons Exempt From Act.

SEc. 6. The provisions of the preceding section shall not apply to marshals, sheriffs, deputy sheriffs, policemen or any other duly appointed peace officers, nor the pistols or revolvers of any bank, trust company, or common carriers, or to the officers or employes of any bank, trust company, or common carriers, while such officers or employes are guarding money or valuables within the line of their duties as such employes, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps or the mail service of the United States, or the national guard, when on duty, or organizations by law authorized to purchase or receive such weapons from the United States, or the State of Indiana, nor to duly authorized military or civil organizations when parading, nor to the members thereof when at .or going to or from their customary places of assembly.

Permits-Clerk of Circuit Court-Application-Form Fee.

SEC. 7. The clerk of any circuit court of the State of Indiana, shall, upon application of any citizen having a bona fide residence or place of business within the State of Indiana, or of any person having a bona fide residence or place of business within the United States, and a permit to carry a firearm concealed upon his person issued by the authorities of any other state or

36

subdivision of the United States, issue a permit to such citizen to carry a pistol or revolver within the State of Indiana, during the period of one year or until revoked, as herein provided. Such application for permit Shall be signed by two resident householders and freeholders of the county in which the applicant lives, and it shall appear from such application that the applicant is a suitable person to be granted a

permit under the law. The permit shall be in duplicate, in form to be prescribed by the adjutant general of the State of Indiana, and shall bear the name, address, description and signature of the applicant and reason given for desiring a permit. The original thereof shall be delivered to the applicant, the duplicate shall be preserved for six years by the clerk of the circuit court issuing the same. For each permit so issued, the applicant shall pay the sum of one dollar ($1.00).

Minors-Sale of Pistols or Revolvers to Prohibited.

SEc. 8. Any person or persons who shall, within the State of Indiana, sell, barter, hire, lend, or give to any minor under the age of twenty-one years, any pistol or revolver shall be deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than one hundred dollars ($100.00), or be imprisoned for not more than three months, or both, except for uses as hereinbefore provided.

Sale of Pistols and Revolvers-Record-Penalty.

SEc. 9. No person shall within the State of Indiana sell, deliver or otherwise transfer a pistol or revolver to a person who he has reasonable cause to believe either is not a citizen or has been convicted of a felony against the person or property of another, nor in any event shall he deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made, the purchaser or his duly authorized agent and the seller or his duly authorized agent shall in the presence of each other sign in duplicate a statement containing the purchaser's full name, age, dress, place of birth, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, forward by registered mail, to the clerk of the circuit court of the county in which the seller resides, one copy thereof and shall retain the other copy for six years. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall constitute a misdemeanor and shall be punished by a fine of not less than one hundred dollars ($100.00), or by imprisonment for not more than one year, or by both such fine and imprisonment.

Pistols and Revolvers-Sale Without License.

SEC. 10. Whoever, within the State of Indiana, without being licensed as hereinafter provided, sells, delivers, transfers, advertises, or exposes for sale, or has in his possession with intent to sell, pistols or revolvers, shall be deemed guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than one year nor more than two years.

Dealers' Licenses-Conditions on Which Sold-Record Advertisement.

SEC. 11. The clerk of the circuit court of any county may grant licenses, to any reputable, established dealer, on forms to be prescribed by the adjutant general, permitting the licensee to sell at retail within the State of Indiana pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered: (a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor, (b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor, (c) If the seller has reasonable cause to believe that the purchaser is an unnaturalized foreign-born person or has been convicted of a felony against the person or property of another.

4. A true record, in duplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the adjutant general and shall be signed by the purchaser and by the person effecting the sale, and in the presence of each other, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, age, place of birth, nationality of the purchaser. One copy of said record shall,
within seven days, be forwarded by registered mail to the clerk of the circuit court of the county in which the seller resides, and the other copy shall be retained by the seller for six years.

5. No pistol or revolver, or placard advertising the sale thereof, or imitation thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

False Information.

SEC. 12. If any person in purchasing or otherwise securing delivery of a pistol or revolver or applying for a permit to carry same within the State of Indiana shall give false information or offer false evidence of his identity he shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment for not less than one year nor more than five years.

Obliteration of Make, Model, Number-Penalty.

SEC. 13. No person shall within the State of Indiana, change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearms upon which the same shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that such possessor has changed, altered, removed, or obliterated the same. Violations of this section shall be a misdemeanor and shall be punished by imprisonment for not less than six months nor more than one year.

Felony-Possession of Revolver Prima Facie Evidence.

SEC. 14. In the trial of a person charged with committing or attempting to commit a felony against the person or property of another while armed with a pistol or revolver, without having a permit to carry such firearm as hereinbefore provided, the fact that such person was so armed shall be prima facie evidence of his intent to commit such felony.

Weapons Exempt.

SEC. 15. This act shall not apply to antique pistols or revolvers incapable of use as a deadly weapon.

Prior Licenses.

SEC. 16. Any or all licenses heretofore issued to carry or possess revolver or pistol shall be revoked and rendered null and void on and after thirty days from the taking effect of this act.

Revocation of License.

SEC. 17. Hereafter in any court of record upon trial of any person for a penal offense, and upon a showing that such person is not a fit person to carry concealed weapons, the court may enter an order revoking such person's license to carry concealed weapons and such fact shall be communicated to the public officer issuing the same.

Licensed Dealers-Statement–Penalty.

SEC. 17 1/2. It shall be unlawful from and after the taking effect of this act, for any person, firm or corporation to receive or have in his or its possession within the State of Indiana any pistol or

revolver purchased or acquired after the taking effect of this act, except a licensed dealer, who shall not have signed and forwarded to the clerk of the county in which he resides the statements provided for in section 9 of this act, before or at the time of taking possession of such pistol or revolver. Whoever shall violate the provisions of this section of this act shall be deemed guilty of a misdemeanor and shall upon conviction thereof be- fined not more than $100, to which may be added imprisonment for not more than sixty days.

Repeal.

SEC. 18. All laws and parts of laws in conflict herewith are hereby repealed.

Unconstitutional Provisions.

SEC. 19. If any provision or section of this act shall be held void or unconstitutional, all other provisions and all other sections of this act, which are not expressly held to be void or unconstitutional, shall remain in full force and effect.


## IOWA

John F. Dillon, The Revised Ordinances of the City of Davenport, Revised and Digested by Order of the City Council, Containing the Original and Amended City Charters, with Notes and References to Judicial Decisions Page 145, Image 145 (1866) available at The Making of Modern Law: Primary. 1855

[Ordinances of Davenport Iowa,] Chapter 19, An Ordinance to Prohibit the Discharge of fire-arms, fire-crackers, and rockets within the city, § 1. No person shall discharge any gun, pistol or other fire-arms, or use or discharge any fire-crackers, rockets, or any other description of fire-works, within the limits of said city, without permission in writing from the Mayor. § 2. Any person violating any provision of this ordinance, shall pay a fine of not less than two dollars nor more than ten dollars for each offense.


The Code: Containing All the Statutes of the State of Iowa, of a General Nature, Passed at the Adjourned Session of the Fourteenth General Assembly Page 76-77, Image 88-89 (1873) available at The Making of Modern Law: Primary Sources. 1873

Cities and Incorporated Towns, Powers, § 456. They shall have power to prevent injury or annoyance from anything dangerous offensive or unhealthy, and to cause any nuisance to be abated; to regulate the transportation and keeping of gunpowder or other combustible, and to provide or license magazines for the same; to prevent and punish fast or immoderate riding through the streets; to regulated the speed of trains and locomotives on railways running over the streets or through the limits of the city or incorporated town by ordinance, and enforce the same by a fine not exceeding one hundred dollars: to establish and regulate markets; to provide for the measuring or weighing of hay, coal, or any other article of sale; to prevent any riots, noise, disturbance, or disorderly assemblages; to suppress and restrain disorderly houses, houses of ill fame, billiard tables, nine or ten pin alleys, or tables and ball alleys, and to authorize the destruction of all instruments or devices used for purposes of gaming, and to protect the property of the corporation and its inhabitants and to preserve peace and order therein.


E. E. Aylesworth, Compiled Ordinances of the City of Council Bluffs; Containing the Original and Amended City Charter, with Statutes, Notes and References to Judicial Decisions Page 175, Image 175 (1880) available at The Making of Modern Law: Primary Sources. 1880

[Ordinances of the] City of Council Bluffs, [Misdemeanors,] § 16. Whoever shall discharge any cannon, gun, pistol or other fire-arms in or across any street or other public place, or in or across any private lot, tract of land or other place not of his own property, without first obtaining a permit to do so from the Mayor of the city, if in a public place, or from the owner of the lot or land if in a private place, shall be deemed guilty of misdemeanor, and on conviction thereof shall be punished by a fine of not less than three nor more than thirty dollars.

Geoffrey Andrew Holmes, Compiled Ordinances of the City of Council Bluffs, and Containing the Statutes Applicable to Cities of the First-Class, Organized under the Laws of Iowa Page 168-169, Image 171-172 (1887) available at The Making of Modern Law: Primary Sources. 1887 Ordinances, City of Council Bluffs, Shooting Gallery, § 5. No person shall carry on or take part in carrying on any pistol gallery or shooting gallery without license therefor from said city, and the charge for such license shall be ten dollars per month, or fifty dollars per annum. §6. No licensee or his employee, or any person in charge of any pin alley, ball alley, pistol gallery or shooting gallery, shall at any time, without gain or profit, permit or allow any minor to be or remain in or about the same to play thereat, under penalty of the same fine and forfeiture as set forth in section 2 of this chapter.

## KENTUCKY

Charter of the City of Covington, and Amendments Thereto up to the Year 1864, and Ordinances of Said City, and Amendments Thereto, up to the Same Date Page 148-149, Image 148-149 (1864) available at The Making of Modern Law: Primary Sources. 1864
Ordinances of the City of Covington, An Ordinance Regulating the Sale of Powder in the City of Covington, § 1. Be it ordained by the City Council of Covington, That it shall not be lawful for any person or persons to erect, within the limits of the corporation, any powder magazine, or any other building for the purpose of storing gun powder in greater quantities than is hereinafter specified; and any person violating the provision of this section, shall, on conviction before the Mayor, forfeit and pay a fine of one hundred dollars, and ten dollars for every twenty-four hours said building shall be used or occupied for the storage of more than twenty-five pounds of powder. § 2. Be it further ordained, That it shall not be lawful for any person to keep, in storage or for sale, more than one hundred pounds of powder in any one house in said city, at any one time: and that amount, or any part thereof, shall be securely and carefully kept, and closed up in a good and sufficient safe, so that it can not by any means be exposed. A violation of this section shall subject the person to a fine, on conviction, of five dollars for every offense. § 3. Be it further ordained, That no person or persons shall sell, or keep for sale, in said city, any gun powder without having first obtained a permission so to do from the Mayor of said city, who shall, before said license is granted, be fully assured and satisfied that the applicant has good and sufficient safes to keep powder in, in conformity with the second section of this ordinance; and when the Mayor is satisfied that the license may be granted, without too much risk to the community at large, he shall issue said license to the applicant, upon his paying into the City Treasury the sum of twenty dollars for one year's license, and to the Mayor fifty cents, and to the City Clerk twenty-five cents, for their certificates. Any person who shall sell any gun powder in said city from and after the passage of this ordinance, without having first obtained a license therefor, shall, for each and every offense, forfeit, pay, on conviction, the sum of five dollars and costs.

40

1874 Ky. Acts 327, An Act to Revise and Amend the Charter of the City of Newport, § 6.
To prohibit the manufacture of gunpowder or other explosive, dangerous, or noxious compounds or substances in said city, and to regulate their sale and storage by license.

## LOUISIANA

John C. White, Digest of the Laws and Ordinances of the Parish of East Feliciana, Adopted by the Police Jury of the Parish Page 68, Image 70 (1848) available at The Making of Modern Law: Primary Sources. 1848
[Ordinances of the Parish of East Feliciana,] Of Slaves, § 5. No slave shall carry a gun to hunt, except on the plantation of his master or mistress; nor then unless accompanied by the overseer or some other free white member of the family, or has a written permit from his owner or overseer, which permit shall state for what said slave is hunting: Any person having the charge of slaves, who shall permit this section to be violated, shall pay a fine of twenty dollars, for the use of the parish, upon information to any Justice, whose duty it is to take cognizance of the case.

Henry Jefferson Leovy, The Laws and General Ordinances of the City of New Orleans, Together with the Acts of the Legislature, Decisions of the Supreme Court, and Constitutional Provisions, Relating to the City Government. Revised and Digested, Pursuant to an Order of the Common Council Page 242, Image 268 (1857) available at The Making of Modern Law: Primary Sources. 1857
[Ordinances of the City of New dueOrleans,] Revenue – Taxes and Licenses, § No. 680. Every keeper of a pistol gallery, the whole tax being levied on each and every gallery, sixty dollars.

Henry Jefferson Leovy, The Laws and General Ordinances of the City of New Orleans, Together with the Acts of the Legislature, Decisions of the Supreme Court. And Constitutional Provisions Relating to the City Government. Revised and Digested, Pursuant to an Order of the Common Council Page 257, Image 257 (1870) available at The Making of Modern Law: Primary Sources. 1870
[Ordinances of the City of New Orleans,] Offences and Nuisances, § 635. No person shall fire or discharge any gun, pistol, fowling piece or fire-arms, within the limits of the city, or set fire to, or discharge any rocket, cracker, squib or serpent, or shall throw any lighted rocket, cracker, squib or serpent, within the limits of the city, without the license of the common council; Provided, that nothing herein contained shall apply to military reviews or to the lawful use of weapons in self defense.

## MAINE

The Revised Ordinances of the City of Portland, 1848 Page 22, Image 22 (1848) available at The Making of Modern Law: Primary Sources.
[Ordinances of the City of Portland,] Of Gunpowder, § 1. No person not licensed to keep and sell gunpowder shall keep or have in his shop, store, dwelling house or other tenement, at any one time, a larger quantity of gunpowder than one pound. § 2. No person licensed to keep and sell

gunpowder shall have or keep in his store, shop, dwelling house or in any other tenement or place whatever at any one time, a larger quantity of gunpowder then twenty-five pounds. § 3. Every person licensed to keep and sell gunpowder shall provide himself with a strongly made copper chest or box with a copper cover well secured, with hinges and a lock of the same material, and the keg or canister in which said powder may be, shall be kept in said copper chest or box, which shall at all times be placed near the outer door of the building in which it is kept, in convenient place to remove in case of fire. § 4. No person shall haul unto, or lay at any wharf in the city, any vessel having on board a quantity of gunpowder exceeding twenty-five pounds, or receive gunpowder on board exceeding twenty-five pounds, without first having obtained a permit from the mayor and aldermen, and said permit shall designate the wharf at which said powder may be landed, or received on board.

The Charter, Amendments, and Acts of the Legislature Relating to the Municipal Court, and the Ordinances of the City of Lewiston, Together with the Boundaries of the Several Wards, Regulations Respecting Gunpowder, and an Abstract of the Laws Relating to the Powers and Duties of Cities and Towns Page 43, Image 43 (1873) available at The Making of Modern Law: Primary Sources. 1873
Regulations Relating to Gunpowder, § 1. No person shall keep or have in any shop, store, dwelling house or tenement, in the city of Lewiston, at any one time a larger quantity of gun-powder than one pound, unless he is licensed by the mayor and aldermen to keep and sell gunpowder, or except as hereinafter provided. § 2. It shall not be lawful for any person or persons to sell any gunpowder which may at the time be within said city, in any quantity, by wholesale or retail, without having first obtained from the mayor and aldermen a license to sell gunpowder, and every license shall be written or printed, and duly signed by the mayor, on a paper upon which shall be written or printed a copy of the rules and regulations established by the city relative to keeping, selling and transporting gunpowder within said city; and every such license shall be in force one year from the date thereof, unless revoked by the mayor and aldermen; but such license may, prior to its expiration, be renewed by an endorsement thereon by the mayor, for the further term of one year, and so from year to year, provided, always, that it may at any time be rescinded or revoked by the mayor and aldermen, for good and sufficient reasons. § 3. Every person who shall receive a license to sell gunpowder, as aforesaid, shall pay for the same to the treasurer of the city the sum of three dollars, and for each renewal of the same, the sum of one dollar.

A.G. Davis, City Clerk, Charter and Ordinances, and Rules and Orders of the City Council. Revised February 1874 Page 52, Image 53 (1874) available at The Making of Modern Law: Primary Sources. 1874
City Ordinances, § 4. No person shall haul unto, or lay at any wharf in the city, any vessel having on board more than twenty-five pounds of gun-powder, nor discharge or receive on board exceeding that quantity, without having first obtained from the Mayor a permit therefor, designating the wharf at which said powder may be landed or received on board.

## MARYLAND

1806 Md. Laws 44, An Act To Restrain The Evil Practices Arising From Negroes Keeping Dogs, And To Prohibit Them From Carrying Guns Or Offensive Weapons, ch. 81

…it shall not be lawful for any negro or mulatto within this state to keep any dog, bitch or gun , except he be a free negro or mulatto, and in that case he may be permitted to keep one dog, provided such free negro or mulatto shall obtain a license from a justice of the peace for that purpose, and that the said license shall be in force for one year, and no longer, and if any dog or bitch owned by any negro, not possessed of such license, shall be seen going at large, it shall be lawful for any person to kill the same, and in case of any suit instituted therefor, the person or persons killing the said dog or bitch may plead the general issue, and give this act in evidence. II. …it shall not be lawful for any free negro or mulatto to go at large with any gun, or other offensive weapon; and in case any free negro or mulatto shall be seen going at large carrying a gun, or other offensive weapon, he shall be liable to be carried before any magistrate, in virtue of a warrant to be issued by any justice of the peace, directed to a constable of the county, and on conviction of having violated the provisions of this section of the act, such offender shall thereupon forfeit, to the use of the informant, such gun, or other offensive weapon, which shall thus have been found in his or her possession, and be subject to the payment of the costs which shall have accrued in such prosecution; provided, that nothing in this act shall extend to prevent any free negro or mulatto from carrying a gun, or other offensive weapon, who shall, at the time of his carrying the same, have a certificate from a justice of the peace, that he is an orderly and peacable person, which certificate shall be in force for one year from the date thereof and no longer.

Lewis Mayer, Revised Code of the Public General Laws of the State of Maryland, with the Constitution of the State Page 173, Image 202 (1879) available at The Making of Modern Law: Primary Sources. 1876
Wild Fowl and Game, § 23. The clerk of the Circuit Court for Harford county, and the clerk of the Circuit Court for Cecil county, shall upon the application of any resident of the State of Maryland, being the owner of any sink-box, craft or sneak-boat, such as is allowed by this act to be used and employed in shooting at wild water fowl therefrom; and giving satisfactory evidence to said clerk that the said applicant is a resident of the State of Maryland, and is the bona fide owner of the sink-box, craft, or sneak-boat, grant a license under the seal of his court, to such applicant to gun after and shoot at wild water-fowl from such sink-box or sneak-boat northward of the line named and described in first section of this act from the first day of November in each and every year to the thirty-first day of March next succeeding thereafter in each and every year; provided that such license shall not authorize any person using such sink-box or sneak-boat to gun after or shoot at wild water-fowl therefrom within a less distance than half a mile from any shore in Harford or Cecil County, or southward of the line particularly described in the first section of this act.

1882 Md. Laws 257, An Act to . . . Exempt All That Portion of the Waters of the Chesapeake Bay Lying Northward of a Certain Line Therein Described from the Operation and Effect of Sections One and Three . . ., ch. 180, § 8
. . . the special police appointed by this act are authorized to arrest any person or persons who may be discovered in the act of hunting or shooting crippled ducks, or in purloining ducks that have been killed by other persons having a proper license to shoot, as well as other persons violating the provisions of this section, and upon conviction thereof before any justice of the peace of Cecil or Harford Counties, the license of such persons or persons shall be revoked, and such persons or persons, whether licensed or not, shall be fined not less than twenty dollars for

43

each offense, and shall forfeit the boat and gun or guns, and material so employed in violation of the provisions of this section, which boat and gun or guns, and material shall be sold, and the proceeds of such fine and sale, after the costs of prosecution have been paid, shall go to the officer or officers making the arrest. . .

1882 Md. Laws 656
Section 1. Be it enacted by the General Assembly of Maryland, That it shall be unlawful for any person or persons within the State of Maryland to manufacture or sell, barter or give away the cartridge toy pistol to any one whomsoever Sec. 2. Be it enacted, That it shall be unlawful for any person, be he or she licensed dealer or not, to sell, barter or give away any firearm whatsoever or other deadly weapons, except shotgun, fowling pieces and rifles, to any person who is a minor under the age of twenty-one years. Any person or persons violating any of the provisions of this act shall, on conviction thereof, pay a fine of not less than fifty nor more than two hundred dollars, together with the cost of prosecution, and upon failure to pay said fine and cost, be committed to jail and confined therein until such fine and costs are paid, or for the period of sixty days, whichever shall first occur.

## <u>MASSACHUSETTS</u>

William Henry Whitmore, The Colonial Laws of Massachusetts: Reprinted From the Edition of 1672, with the Supplements Through 1686: Containing Also, a Bibliographical Preface and Introduction, Treating of All the Printed Laws From 1649 to 1686: Together with the Body of Liberties of 1641, and the Records of the Court of Assistants, 1641-1644 Page 126, Image 330 (1890) available at The Making of Modern Law: Primary Sources. 1651
Prescriptions, (1651) § 2. And it is further ordered; that no person (except for the defence of themselves and their vessels at Sea) shall transport any gunpowder out of this jurisdiction, without license first obtained from some two of the Magistrates, upon penalty of forfeiting all such powder as shall be transporting or transported, or the value thereof.

A Collection Of Original Papers Relative To The History Of The Colony Of Massachusetts-Bay Page 492, Image 497 (1769) available at The Making of Modern Law: Primary Sources. 1769 Laws of the Colony of Massachusetts, That notwithstanding the ancient law of the country, made in the year 1633, that no person should sell any arms or ammunition to any Indian upon penalty of 10l. for every gun, 5l. for a pound of powder, and 40s. for a pound of shot, yet the government of the Massachusetts in the year 1657, upon the design to monopolize the whole Indian trade did publish and declare that the trade of furs and peltry with the Indians in their jurisdiction did solely and properly belong to their commonwealth and not to every indifferent person, and did enact that no person should trade with the Indians for any fort or peltry, except such as were authorized by the court, under the penalty of 100l. for every offence, giving liberty to all such as should have license from them to sell, unto any Indian, guns, swords, powder and shot, paying to the treasurer 3d. for each gun and for each dozen of swords; 6d. for a pound of powder and for every ten pound of shot, by which means the Indians have been abundantly furnished with great store of arms and ammunition to the utter ruin and undoing of many families in the neighboring colonies to enrich some few of their relations and church members.

44

The Revised Ordinances of 1885, of the City of Boston, as Passed and Approved December 14, 1885. (With Amendments Thereto, Passed and Approved, to May 1, 1886): Being the Ninth Revision. To Which are Added the Revised Standing Regulations of the Board of Aldermen. 9th Rev. Page 172, Image 182 (1886) available at The Making of Modern Law: Primary Sources. 1884
Ordinances of the City of Boston. Of Fire-Arms, Bonfires, and Brick-Kilns. § 4. No person shall sell to any child under the age of sixteen years without the written consent of a parent or guardian of such child, any cartridge or fixed ammunition of which any fulminate is a component part, or any gun, pistol, or other mechanical contrivance arranged for the explosion of such cartridge, or of any fulminate. But the provisions of this section shall not apply to paper caps of which the only component parts are chlorate of potash and sulphide of antimony, nor to any appliance for exploding the same. The provisions of this section shall be inserted in every license granted for the sale of gunpowder.

Revised Ordinances of 1892, of the City of Boston, and the Revised Regulations of 1892, of the Board of Aldermen of the City of Boston, Being the Eleventh Revision, Third Edition, Containing All Ordinances Passed Between March 3, 1892, and February 1, 1895, and All Regulations of the Board of Aldermen Passed Between July 22, 1892, and February 1, 1895 Page 115, Image 129 (1895) available at The Making of Modern Law: Primary Sources. 1895
Ordinances of Boston, Prohibitions and Penalties, § 91. No person shall manufacture or sell, or expose for sale, any guncotton, nitro-glycerine, or any compounds of the same, nor any fulminate or substance, except gunpowder, intended to be used by exploding or igniting it, in order to produce a force to propel missiles, or to rend substances apart, except in accordance with a permit from the board of fire commissioners; nor shall any person send or carry through the public streets any such substance, except in the manner and in the quantities allowed by statute or ordinance.

Revised Ordinances of the City of Woburn. Revised Woburn, Massachusetts Page 91 Image 91 (1898) available at The Making of Modern Law: Primary Sources. 1898
License to Sell Gunpowder in the City of Woburn. No person shall sell any gunpowder within the city, without such license. Every license shall be in force one year from the date thereof; provided, that any license may be rescinded by the City Council, at their discretion. § 3. Every person so licensed shall keep a sign over and outside of the principal entrance from the street of the building in which the powder is kept, in which shall be printed in capitals the words: "License to keep and sell gunpowder" § 4. The city clerk shall keep a record of all licenses, and of the places designated therein, which places shall not be changed, unless by consent of the City Council, in writing. Every person who receives a license shall sign his name to a copy of the rules prescribed in this chapter, as evidence of his assent thereto. §5. The provisions of the foregoing four sections shall not apply or extend to the keeping or storing of metallic cartridges in fire proof magazines, nor to cartridge manufacturers, so long as they shall keep their powder in canisters, as prescribed in section one, and in fire proof magazines, located and built to the satisfaction of the City Council so long as such manufacturers allow no more than one hundred pounds of gunpowder in any magazine, or five pounds of gunpowder not made into cartrdiges, in any workshop at any one time.

1906 Mass. Acts 150, ch. 172, An Act to Regulate by License the Carrying of Concealed Weapons
Section 2. Whoever, except as provided by the laws of this Commonwealth, carries on his person a loaded pistol or revolver, without authority or permission as provided in section one of this act, or whoever carries any stiletto, dagger, dirk-knife, slung-shot or metallic knuckles, shall upon conviction be punished by a fine of not less than ten nor more than one hundred dollars, or by imprisonment for a term not exceeding one year, or by both such fine and imprisonment.

1922 Mass. Acts 563, ch. 485, An Act Relative to the Sale and Carrying of Firearms, ch. 485, § 8 (amending § 130)
§ 8 (amending § 130). Whoever sells or furnishes to a minor under the age of fifteen, or to an unnaturalized foreign born person who has who has not a permit to carry firearms under section one hundred and thirty-one, any firearm, air gun or other dangerous weapon or ammunition therefor shall be punished by a fine of not less than ten nor more than fifty dollars, but instructors and teachers may furnish military weapons to pupils for instruction and drill.

1927 Mass. Acts 413, An Act Relative to Machine Guns and Other Firearms, ch. 326, §§ 1-2 (amending §§ 121, 123)
In sections one hundred and twenty-two to one hundred and twenty-nine, inclusive, "firearms" includes a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of barrel, not including any revolving, detachable or magazine breach, does not exceed twelve inches, and a machine gun, irrespective of the length of the barrel. Any gun of small arm calibre designed for rapid fire and operated by a mechanism, or any gun which operates automatically after the first shot has been fired, either by gas action or recoil action, shall be deemed to be a machine gun for the purposes of said sections, and of sections one hundred and thirty–one and one hundred and thirty one B. . . § 2. . . Eighth, That no pistol or revolver shall be sold, rented or leased to a person who has not a permit, then in force, to purchase, rent or lease the same issued under section one hundred and thirty-one A, and that no machine gun shall be sold, rented or leased to a person who has not a license to possess the same issued under section one hundred and thirty-one. . .

## <u>MICHIGAN</u>

The Revised Charter and Ordinances of the City of Detroit Page 150, Image 151 (1848) available at The Making of Modern Law: Primary Sources. 1848
[Ordinances of Detroit,] Prevention of Fires, § 9. No person shall fire or set off any squib, cracker, gunpowder or fire works, or fire any gun or pistol in any part of this city, unless by written permission of the Mayor or two Aldermen, which permission shall limit the time of such firing, and shall be subject to be revoked at any time by the Common Council; and any person or persons violating any of the provisions of this section, shall forfeit the penalty of five dollars for each and every offence. § 10. Every person firing a cannon within this city, unless by permission of the Mayor or two Aldermen, shall forfeit the penalty of twenty-five dollars: Provided, that nothing in this or the preceding section shall be construed to prohibit any military company from firing any gun or cannon when authorized by their commanding officer or officers.

1895 Mich. Local Acts 596, § 44

46

SEC. 44. No person shall fire or discharge any gun or pistol firearms or fireworks. or carry firearms, or throw stones or other missiles within said park or boulevard, nor shall any person fire, discharge or set off any rocket, cracker, torpedo, squib or other fireworks or things containing any substance of any explosive character on said park or boulevard, without the permission of said commissioners, and then only under such regulations as they shall prescribe.

1913 Mich. Pub. Acts 472, An Act Providing for the Registration of the Purchasers of Guns, Pistols, Other Fire-arms and Silencers for Fire-arms and Providing a Penalty for Violation, § 1-2. Every person, firm or corporation engaged in any way or to any extent in the business of selling at retail guns, pistols, other fire-arms and silencers for fire-arms shall keep a register in which shall be entered the name, age, occupation and residence (if residing in the city with the street number of such residence) of each and every purchaser of such guns, pistols, other fire-arms or silencers for fire-arms together with the number or other mark of identification, if any, on such gun, pistol, other fire-arms or silencer for firearms which said register shall be open to the inspection of all peace officers at all times. § 2. Every person violating any of the provisions of this act shall be deemed guilty of a misdemeanor and shall upon conviction be subject to a fine of not more than fifty dollars or to imprisonment in the county jail for not more than ten days or to both such fine and imprisonment in the discretion of the court.

1925 Mich. Pub. Acts 473, An Act to Regulate the Possession and Sale of Pistols, Revolvers and Guns; to Provide a Method of Licensing Those Carrying Such Weapons Concealed; and to Provide Penalties for Violations of Such Regulations, § 2-4.
§ 2. Any person who shall commit or attempt to commit a felony when armed with a pistol, revolver or gun, as defined in section one, shall, in addition to the punishment provided for committing the crime, be punished by imprisonment for not less than two nor more than five years within the discretion of the court. § 3. The court shall have power to sentence any person who may be convicted of a second offense to double the addition penalty imposed under section two thereof for carrying such concealed weapon without a license. § 4. In the trial of a person for the commission of murder, assault with intent to do great bodily harm, robbery, larceny, or any attempt to commit any of such offenses, the fact that he was armed with a pistol, revolver or gun as herein defined and had no permit to carry the same, shall be prima facie evidence of his intention to commit the crime with which he is charged[.]
No person shall carry a pistol, revolver or gun concealed on or about his person or in any vehicle owned or operated by him, except in his dwelling house, place of business or on his premises, without a license therefor, as hereinafter provided. The provisions of this section, however, shall not apply to the regular and ordinary transportation of pistols, revolvers or guns as merchandise, or to any member of the army, navy or marine corps of the United States, or to the national guard when on duty, or organizations by law authorized to purchase or receive such weapons from the United States or from this state, nor to duly authorized military organizations when on duty, nor to the members thereof when going to or returning from their customary places of assembly, nor to wholesale or retail dealers therein, nor to peace officers of the state.

1925 Mich. Pub. Acts 47, An Act to Regulate the Possession and Sale of Pistols, Revolvers and Guns; to Provide a Method of Licensing Those Carrying Such Weapons Concealed; and to Provide Penalties for Violations of Such Regulations, § 7.

No person shall deliver or otherwise transfer a pistol, revolver or gun as defined in this act, to a person unless it be securely wrapped and unloaded. Before the same is delivered to the purchaser, he shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, nationality, the date of sale, the caliber, make, model and manufacturer's number of the weapon. The seller shall, within thirty days thereafter, sign and mail by registered letter one copy thereof to the secretary of state, one copy to the chief of police of the city or village in which the same was sold or to the sheriff of the county of which the seller is a resident and shall retain the other copy. This section shall not apply to sales at wholesale. Any person convicted of wilfully violating the provisions of this section shall be punished by a fine of not less than one hundred dollars or by imprisonment of not more than one year or by both such fine and imprisonment in the discretion of the magistrate.

1927 Mich. Pub. Acts 888-89, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3.
It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag or bludgeon. Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison not more than five years, or by both such fine and imprisonment in the discretion of the court. . . .

1927 Mich. Pub. Acts 891, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 9.
SEC. 9. On or before the first day of November, nineteen hundred twenty-seven, any person within this state who owns or has in his possession a pistol as defined in this act, shall, if he reside in an incorporated city or an incorporated village having an organized police department, present such weapon for safety inspection to the commissioner or chief of police of such city or village; if such person reside in a part of the county not included within the corporate limits of such city or village he shall so present such pistol for safety inspection to the sheriff of such county. Any person owning or coming into possession of a pistol after the first day of November, nineteen hundred twenty-seven, shall forthwith present such pistol for safety inspection in the manner provided in this section. A certificate of inspection shall thereupon be issued in triplicate on a form provided by the commissioner of public safety, containing the name, age, address, description and signature of the person presenting such pistol for inspection, together with a full description thereof; the original of such certificate shall be delivered to the registrant; the duplicate thereof shall be mailed to the commissioner of public safety and field and indexed by him and kept as a permanent official record for a period of six years, and the triplicate of such certificate shall be retained and filed in the office of said sheriff, or commissioner or chief of police, as the case may be. The provisions of this section shall not apply to wholesale or retail dealers in firearms or to collections of pistols kept solely for the purpose of display, as relics, souvenirs, curios or antiques, nor to weapons heretofore registered under the provisions of section eleven of act number three hundred thirteen of the public acts of nineteen hundred twenty-five. Any person who fails to comply with the provision of this section shall be guilty of a misdemeanor and shall be punished by a fine not exceeding one hundred dollars or

imprisonment in the county jail not exceeding ninety days, or by both such fine and imprisonment in the discretion of the court.

## MINNESOTA

Henry John Horn, The Charter and Ordinances of the City of St. Paul, Together with Legislative Acts Relating to the City, and the State Constitution, in an Appendix Page 113, Image 114 (1858) available at The Making of Modern Law: Primary Sources. 1858
Revised Ordinances [of the City of St. Paul], An Ordinance to Restrain the Use of Fire Arms and the Exhibition of Fire Works. The Common Council of the City of Saint Paul do ordain as follows: § 1. It shall not be lawful for any person to fire or discharge any cannon, gun, fowling piece, pistol or fire arms of any description, or fire, explode or set off any squib, cracker or other thing containing powder or other combustible or explosive material, or to exhibit any fire works or make or exhibit any bonfire, within the limits of said city, without permission from the Common Council or written permission from the Mayor, which permission shall limit the time of such firing, and shall be subject to be revoked by the Common Council at any time after it has been granted. §2. Any person violating any provision of this ordinance, shall on conviction thereof, be punished by a fine not exceeding one hundred dollars.

The Charter and Ordinances of the City of St. Paul, (To August 1st, 1863, Inclusive,) Together with Legislative Acts Relating to the City. Page 166-167, Image 167-168 (1863) available at The Making of Modern Law: Primary Sources. 1858
Ordinances of the City of St. Paul, An Ordinance to Regulate the Sale of Gunpowder, § 1. No person shall keep, sell or give away gunpowder or guncotton in any quantity without first having paid into the City Treasurer the sum of five dollars, and obtain from the Common Council a permission in writing, signed by the Mayor and Clerk, and sealed with the corporate seal, under a penalty not exceeding fifty dollars, for every offence, provided any person may keep for his own use not exceeding one pound of powder or one pound of gun cotton, at one and the same time. § 2. All applications for permits shall be addressed to the Common Council, in writing, signed by the applicant. Not exceeding four permits shall be granted in any one block; when the number of applications in any block shall at any time exceed the numbers to be granted, the requisite number shall by chosen by ballot. When issued, the Clerk shall make an entry thereof in a register to be provided for the purpose which entry shall state the name and place of business, and date of permits. Persons to whom permits may be issued, shall not have or keep at their place of business or elsewhere within the city, a greater quantity of gunpowder or guncotton than fifty pounds at one time, and the same shall be kept in tin canisters or cans, or kegs securely looped and headed, containing not to exceed twenty-five pounds each and in a situation remote from fires or lighted lamps, candles or gas, from which they may be easily removed in case of fire. Nor Nor shall any person sell or weigh any gunpowder or guncotton, after the lighting of lamps in the evening, unless in sealed canisters or cans. It shall be the duty of every person to whom a permit shall be given to keep a sign at the front door of his place of business, with the word "gunpowder" painted or printed thereon in large letters. Any person violating any clause of this section, shall, upon conviction therof be punished by a fine of not less than ten, nor more than one hundred dollars. § 3. No person shall convey or carry any gunpowder or guncotton, exceeding (one pound in quantity) through any street or alley in the city, in any cart, carriage, wagon, dray, wheelbarrow, or otherwise, unless the said gunpowder or guncotton be secured in

49

tight cans or kegs well headed and hooped, sufficient to prevent such gunpowder or guncotton from being spilled or scattered, under a penalty of fifty dollars. § 4. All permissions granted under this ordinance shall expire on the second Tuesday of May in each year; and no permit shall be granted to any retailer of intoxicating liquors, or to any intemperate person. The clerk shall be entitled to a fee of one dollar for every permit which may be issued.

W. P. Murray, The Municipal Code of Saint Paul: Comprising the Laws of the State of Minnesota Relating to the City of Saint Paul, and the Ordinances of the Common Council; Revised to December 1, 1884 Page 289, Image 295 (1884) available at The Making of Modern Law: Primary Sources. 1882
Concealed Weapons – License, § 1. It shall be unlawful for any person, within the limits of the city of St. Paul, to carry or wear under his clothes, or concealed about his person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon. § 2. Any such weapons or weapons, duly adjudged by the municipal court of said city to have been worn or carried by any person, in violation of the first section of this ordinance, shall be forfeited or confiscated to the said city of St. Paul, and shall be so adjudged. § 3. Any policeman of the city of St. Paul, may, within the limits of said city, without a warrant, arrest any person or persons, whom such policeman may find in the act of carrying or wearing under their clothes, or concealed about their person, any pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, bowie-knife, dirk-knife or razor, or any other dangerous or deadly weapon, and detain him, her or them in the city jail, until a warrant can be procured, or complaint made for the trial of such person or persons, as provided by the charter of the city of St. Paul, for other offenses under said charter, and for the trial of such person or persons, and for the seizure and confiscation of such of the weapons above referred to, as such person or persons may be found in the act of carrying or wearing under their clothes, or concealed about their persons.

George Brooks Young. General Statutes of the State of Minnesota in Force January 1, 1889 Page 1006, Image 1010 (Vol. 2, 1888) available at The Making of Modern Law: Primary Sources. 1888.
Making, Selling, etc., Dangerous Weapons, § 333. A person who manufactures, or causes to be manufactured, or sells, or keeps for sale, or offers or gives or disposes of any instrument or weapon of the kind usually known as slung-shot, sand-club, or metal knuckles, or who, in any city of this state, without the written consent of a magistrate, sells or gives any pistol or fire-arm to any person under the age of eighteen years, is guilty of a misdemeanor. Carrying, using, etc., certain Weapons, § 334. A person who attempts to use against another, or who, with intent so to use, carries, conceals, or possesses any instrument or weapon of the kind commonly known as a slung-shot, sand-club, or metal knuckles, or a dagger, dirk, knife, pistol or other fire-arm, or any dangerous weapon, is guilty of a misdemeanor.

Harry Toulmin, Ordinances of the City of Saint Paul, from May, 1887, to July, 1889 Page 90, Image 90 (1889) available at The Making of Modern Law: Primary Sources. 1889
Ordinances of the City of St. Paul, [Establishing and Fixing the License to be Paid to the City of St. Paul for Conducting, Managing or Carrying on Either or any of the Different Branches of Business Hereinafter Mentioned and Limiting the Duration Thereof, and Also Repealing Certain

50

Ordinances Herein Named,] § 2. The different and various kinds of business, employments and avocations for which licenses are hereby fixed and established, and the sum and amount of the license for each separate one are as follows, to wit: Gun powder ……………..$15.00.

1933 Minn. Laws 231-33, An Act Making It Unlawful to Use, Own, Possess, Sell, Control or Transport a "Machine Gun", as Hereinafter Defined, and Providing a Penalty for the Violation Thereof, ch. 190, §§ 1-3.

§ 1. Definitions. (a) Any firearm capable of loading or firing automatically, the magazine of which is capable of holding more than twelve cartridges, shall be a machine gun within the provisions of the Act. (b) Any firearm capable of automatically reloading after each shot is fired, whether firing singly by separate trigger pressure or firing continuously by continuous trigger pressure; which said firearm shall have been changed, altered or modified to increase the magazine from the original design as manufactured by the manufacturers thereof, or by the addition thereto of extra and/or longer grips or stocks to accommodate such extra capacity, or by the addition, modification and/or attachment thereto of any other device capable of increasing the magazine capacity thereof, shall be a machine gun within the provisions of this Act. (c) A twenty-two caliber light sporting rifle, capable of firing continuously by continuous trigger pressure, shall be a machine gun within the provisions of this Act. But a twenty-two caliber light sporting rifle, capable of automatically reloading but firing separately by separate trigger pressure for each shot, shall not be a machine gun within the provisions of this Act and shall not be prohibited hereunder, whether having a magazine capacity of twelve cartridges or more. But if the same shall have been changed, altered, or modified, as prohibited in section one (b) hereof, then the same shall be a machine gun within the provisions of this Act.

§ 2. Application. This Act shall not apply to sheriffs, coroners, constables, policemen or other peace officers, or to any warden, superintendent or head keeper of any prison, penitentiary, county jail or other institution for retention of any person convicted or accused of crime, while engaged in the discharge of official duties, or to any public official engaged in the enforcement of law; nor to any person or association possessing a machine gun not usable as a weapon and possessed as a curiosity, ornament or keepsake; when such officers and persons and associations so excepted shall make and file with the Bureau of Criminal Apprehension of this state within 30 days after the passage of this Act, a written report showing the name and address of such person or association and the official title and position of such officers and showing a particular description of such machine gun now owned or possessed by them or shall make such report as to hereinafter acquired machine guns within 10 days of the acquisition thereof; nor to any person legally summoned to assist in making arrests or Preserving peace, while said person so summoned is engaged in assisting such officer; nor shall this Act apply to the armed forces of the United States or of the State of Minnesota.

§ 3. Machine guns prohibited. Any person who shall own, control, use, possess, sell or transport a machine gun, as herein defined, in violation of this Act, shall be guilty of a felony.

## MISSISSIPPI

1804 Miss. Laws 90-91, An Act Respecting Slaves, § 4.

[Slaves not to carry offensive or defensive weapons]. [N]o Slave shall keep or carry any gun, powder, shot, club or other weapon whatsoever offensive or defensive, except tools given him to work with, or that he is ordered by his master, mistress or overseer to carry the said articles from

51

one place to another, but all, and every gun, weapon or ammunition found in the possession or custody of any slave, may be seized by any person, and upon due proof thereof made before any justice of the peace of the county or corporation, where such seizure shall be made, by his order, be forfeited to the seizer for his own use; and moreover, every such offender shall have and receive by order of such justice, any number of lashes not exceeding thirty nine, on his bare back for every such offence: Provided nevertheless, That any justice of the peace may grant, in his proper county, permission in writing, to any slave, on application of his master, or overseer to carry and use a gun and ammunition within the limits of his said master's or owner's plantation, for a term not exceeding one year, and recoverable, at any time within such term, at the discretion of said justice.

[REGULATORY TAX] 1867 Miss. Laws 327-28, An Act To Tax Guns And Pistols in The County Of Washington, ch. 249, § 1.
[A] tax of not less than five dollars or more than fifteen dollars shall be levied and assessed annually by the board of Police of Washington county upon every gun and pistol which may be in the possession of any person in said county, which tax shall be payable at any time on demand, by the Sheriff, and if not so paid, it shall be the duty of the Sheriff to forthwith distrain and seize such gun or pistol, and sell the same for cash at the door of the Court House, after giving ten days notice by advertisement, posted in front of said Court House, and out of the proceeds of such sale, there shall be paid the amount of such tax and the cost of sale, and if any surplus remains, it shall be paid to the owner of such gun or pistol. The amount of the tax so assessed and collected, shall be paid to the county Treasurer, and shall constitute a part of the bridge fund of said county.

1900 Miss. Laws 51-52, An Act to Amend Chapter 32 of the Acts of 1894 Relating to Personal Assessment Rolls, ch. 49, § 1.
The auditor of the public accounts shall, by the first day of February in each year, furnish the clerk of the board of supervisors of each county with three copies of blank assessment rolls, and counties having two judicial districts shall be furnished with four copies; said roll shall be made of good paper, neatly and substantially bound and properly ruled and headed for the assessment of personal property and polls, in which to enter the following items: . . . sixteenth column, number of guns over one; seventeenth column, number of pistols, bowie knives, dirks or sword canes[.]

1906 Miss. Laws 367, Privilege Taxes, ch. 114, § 3887.
Dealers in Deadly Weapons: On each person or firm dealing in pistols, dirk knives, sword canes, brass or metallic knuckles, or other deadly weapons (shotguns and rifles excepted) – 100.00. And which shall be in addition to all and any other taxes or privileges paid. On each firm or dealer selling air guns, target or flobert rifles (and this shall apply even if the same has a license to sell merchandise, pistols or cartridges) – $25.00.

## **MISSOURI**

Henry S. Geyer, A Digest of the Laws of Missouri Territory. Comprising: An Elucidation of the Title of the United States to Louisiana:-Constitution of the United States:-Treaty of Session:-Organic Laws:-Laws of Missouri Territory, (Alphabetically Arranged):-Spanish Regulations for

the Allotment of Lands:- Laws of the United States, for Adjusting Titles to Lands, &c. to Which are Added, a Variety of Forms, Useful to Magistrates Page 374, Image 386 (1818) available at The Making of Modern Law: Primary Sources. 1818

Slaves, § 3. No slave or mulatto whatsoever, shall keep or carry a gun, powder, shot, club or other weapon whatsoever, offensive or defensive; but all and every gun weapon and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person and upon due proof made before any justice of the peace of the district [county] where such seizure shall be, shall by his order be forfeited to the seizor, for his own use, and moreover, every such offender shall have and receive by order of such justice any number of lashes not exceeding thirty nine on his or her bare back well laid on for every such offence. § 4. Every free negro or mulatto, being a housekeeper may be permitted to keep one gun, powder and shot; and all negroes or mulattoes bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder shot and weapons, offensive and defensive, by license from a justice of the peace of the district [county] wherein such plantation lies, to be obtained upon the application of free negroes or mulattoes or of the owners of such as are slaves.

Adam B. Chambers, The Revised Ordinances of the City of Saint Louis, Revised and Digested by the Fifth City Council during the First Session, Begun and Held in the City of St. Louis, on the Second Monday of May, A. D. 1843. with the Constitutions of the United States and the State of Missouri, and the City Charter Page 304, Image 305 (1843) available at The Making of Modern Law: Primary Sources. 1843

[Ordinances of Kansas City,] Misdemeanors, § 10. Every person who shall discharge any cannon or other ordinance, or fire off any carbine, fusil, rifle, musket, gun, pistol, or other arms, or set off any squib or cracker, or fly any kite in the air, within the city, shall be deemed guilty of a misdemeanor. This section shall not apply to the firing of salutes by any military corps, or to the firing of salutes upon any occasion of general public interest. Provided, such firing be caused by persons, associations or companies, volunteers or otherwise, who may be engaged in lawful celebrations of public rejoicings, or in the lawful military exercises of said companies or volunteers; nor to prevent any manufacturer from trying or proving the articles manufactured by him within the limits of the city, provided the same be done without danger or injury to the neighborhood. § 11. Every person who shall fire any heavy cannon, or set off any rockets or fire works, or illuminate in any unusual manner any house or building, without first having obtained written permission from the Mayor, specifying the time and place, when and where the same shall be allowed, shall be deemed guilty of a misdemeanor.

1844 Mo. Laws 577, An Act To Restrain Intercourse With Indians, ch. 80, § 4.

No person shall sell, exchange or give, to any Indian, any horse, mule, gun, blanket, or any other article or commodity whatever, unless such Indian shall be traveling through the state, and leave a written permit from the proper agent, or under the direction of such agent in proper person.

1854 Mo. Laws 1094, An Act Concerning Free Negros and Mulattoes, ch. 114, §§ 2-3.

§ 2. No free negro or mulatto shall be suffered to keep or carry any firelock, or weapon of any kind, or any ammunition, without license first had and obtained for the purpose, from a justice of the peace of the county in which such free negro or mulatto resides, and such license may be revoked at any time by the justice granting the same or by any justice of the county. § 3. Any gun, firelock, or weapon of any kind, or any ammunition, found in the possession of any free

negro or mulatto not having a license, as required by the last preceding section, may be seized by any person, and upon due proof thereof, before any justice of the peace of the county in which such seizure shall have been made, shall be forfeited by order of such justice, to the person making the seizure, for his own use.

Everett Wilson Pattison, The Revised Ordinance of the City of St. Louis, Together with the Constitution of the United States, and of the State of Missouri; the Charter of the City; and a Digest of the Acts of the General Assembly, Relating to the City Page 491-492, Image 499-500 (1871) available at The Making of Modern Law: Primary Sources. 1871
Ordinances of the City of St. Louis, Misdemeanors, § 9. Hereafter it shall not be lawful for any person to wear under his clothes, or concealed about his person, any pistol, or revolver, colt, billy, slung shot, cross knuckles, or knuckles of lead, brass or other metal, bowie knife, razor, dirk knife, dirk, dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon, within the City of St. Louis, without written permission from the Mayor; and any person who shall violate this section shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be fined not less than ten nor more than five hundred dollars for each and every offence. § 10. Nothing in the preceding section shall be so construed as to prevent any United States, State, county or city officer, or any member of the city government, from carrying or wearing such weapons as may be necessary in the proper discharge of his duties.

An Ordinance in the Revision of the Ordinances Governing the City of Kansas (Kansas City, MO; Isaac P. Moore's Book and Job, 1880), p. 264, Sec. 3. 1880
Chapter XXXIV. Public Safety. . . .
Sec. 3. No person shall, in this city, wear under his clothes or concealed about his person, any pistol or revolver, except by special permission from the Mayor; nor shall any person wear under his clothes, or concealed about his person, any slung-shot, cross knuckles, knuckles of lead, brass or other metal, or any bowie knife, razor, billy, dirk, dirk-knife or dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon. Any person, violating any provision or requirement of this section, shall be deemed guilty of a misdemeanor, and, upon conviction thereof before the City Recorder, shall be fined not less than fifty dollars nor more than five hundred dollars : Provided, however, That this section shall not be so construed as to prevent any United States, State, County or City officer, or any member of the City government, from carrying such weapons as may be necessary in the proper discharge of his duties.

Henry Smith Kelley, Laws Applicable to and Governing the City of Saint Joseph, Mo., As a City of the Second Class, Contained in the Revised Statutes of 1879, and Subsequent Legislative Enactments; Also the General Ordinances Now in Force, Revised and Made to Conform to the Laws Governing Such Cities Page 192, Image 222 (1888) available at The Making of Modern Law: Primary Sources. 1888
General Ordinances [of the City of St. Joseph], [Amusement-Shows,] Shooting Gallery; license for. — § 3. No person shall carry on or take part in carrying on, any pistol gallery or shooting gallery, without a license therefor from said city; and the charge for such license shall be five dollars per month.

The Municipal Code of St. Louis (St. Louis: Woodward 1901), p.738, Sec. 1471. 1892
Chapter 18. Of Misdemeanors.

54

Sec. 1471. Concealed weapons – carrying of, prohibited.
Hereafter it shall not be lawful for any person to wear under his clothes, or concealed about his person, any pistol or revolver, colt, billy, slung shot, cross knuckles, or knuckles of lead, brass or other metal, bowie knife, razor, dirk knife, dirk, dagger, or any knife resembling a bowie knife or any other dangerous or deadly weapon, within the City of St. Louis, without written permission from the mayor; and any person who shall violate this section shall be deemed guilty of a misdemeanor, and upon conviction thereof, be fined not less than ten nor more than five hundred dollars for each and every offense.

The Revised Ordinances of the City of Huntsville, Missouri, of 1894. Collated, Revised, Printed and Published by Authority of the Mayor and Board of Aldermen of the City of Huntsville, Missouri, Under an Ordinance of the Said City, Entitled: "An Ordinance in Relation to Ordinances, and the Publication Thereof." Approved on the 11th Day of June, 189 Page 58-59, Image 58-59 (1894) available at The Making of Modern Law: Primary Sources. 1894 Ordinances of the City of Huntsville, An Ordinance in Relation to Carrying Deadly Weapons, § 1. If within the city any person shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under militia law of the state, having upon or about his person any kind of fire arms, bowie-knife, dirk, dagger, sling-shot, or other deadly weapon or shall in the presence of one or more persons exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, he shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five nor more than one hundred dollars, or by imprisonment in the city prison not exceeding thirty days nor less than five days or by both such fine and imprisonment; provided, the Mayor may grant permission to any person to discharge gun, pistol or other firearms under the proper circumstances shown to him. § 2. The next preceding section shall not apply to police officers, nor to any officer or person whose duty it is to exercise process or warrants, or to suppress breaches of the peace or to make arrests, nor to persons moving or travelling peaceably through this state; and it shall be good defense to the charge of carrying such weapon, if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his home, person or property.

Francis M. Wilson, The Revised Statutes of the State of Missouri, 1899. To This Volume are Annexed the Acts of Congress in Relation to the Election of United States Senators, in Relation to Fugitives from Justice, Concerning Naturalization and the Authentication of Public Records; an Appendix Containing the Scheme and Charter of and Laws Specially Applicable to the City of St. Louis and the Acts Establishing the Criminal Court of the Fifteenth Circuit, the Criminal Court of Jackson County, the Criminal Court of Buchana County, the Criminal Court of Greene County, the Louisiana Court of Common Pleas, the Hannibal Court of Common Pleas, the Cape Girardeau Court of Common Pleas and the Sturgeon Court of Common Pleas. Revised and Promulgated by the Fortieth General Assembly Page 1752, Image 645 (Vol. 2, 1899) available at The Making of Modern Law: Primary Sources. 1899

55

[Permit to Keep Explosives, § 7457. No person, corporation or joint-stock company shall, on and after ten days after this article shall take effect, have retain or keep in his possession or under his or her control, nor sell, give away or in any manner or way dispose of dynamite, giant powder, nitro-glycerine or any explosive substance, except gunpowder and blasting powder for ordinary purposes, without first obtaining a permit authorizing the same from the clerk of the county court, or mayor of the city of St. Louis, in whichever county or city such applicant may desire to do such business, nor without first making and delivering the affidavit required by the next succeeding section of this article.]

1921 Mo. Laws 691, 692

Section 1. Pistol, revolver or firearms to be plainly marked. No wholesaler or dealer therein shall have in his possession for the purpose of sale, or shall sell, any pistol, revolver, or other firearm of a size which may be concealed upon the person, which does not have plainly and permanently stamped ,upon the metallic portion thereof, the trademark or name of the maker, the model and the serial factory number thereof, which number shall not be the same as that of any other such weapon of the same model made by the same maker, and the maker, and no wholesale or retail dealer therein shall have in his possession for the purpose of sale, or shall sell, any such weapon unless he keep a full and complete record of such description of such weapon, the name and address of the person from whom purchased and to whom sold, the date of such purchase or sale, and in the' case of retailers the date of the permit and the name of the circuit clerk granting the same, which record shall be open to inspection at all times by any police officer or other peace officer of this state.

Sec. 2. Shall secure permit to acquire weapon.-No person, other than a manufacturer or wholesaler thereof to or from a wholesale or retail dealer therein, for the purposes of commerce, shall directly or indirectly buy, sell, borrow, loan, give away, trade, barter; deliver or receive, in this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, unless the buyer, borrower or person receiving such weapon shall first obtain and deliver to, and the same be demanded and received by, the seller, loaner, or person delivering such weapon, within thirty days after the issuance thereof, a permit authorizing such person to acquire such weapon. Such permit shall be issued by the circuit clerk of the county in which the applicant for a permit resides in this state, if the sheriff be satisfied that the person applying for the same is of good moral character and of lawful age, and that the granting of the same will not endanger the public safety. The permit shall recite the date of the issuance thereof and that the same is invalid after thirty days after the said date, the -name and address of the person to whom granted and of the person from whom such weapon is to be acquired, the nature of the transaction, and a full description of such weapon, and shall be countersigned by the person to whom granted in the presence of the circuit clerk. The circuit clerk shall receive therefor a fee of $0.50. If the permit be used, the person receiving the same shall return it to the circuit clerk within thirty days after its expiration, with a notation thereon showing the date and manner of the disposition of such weapon. The circuit clerk shall keep a record of all applications for such permits and his action thereon, and shall preserve all returned permits. No person shall in any manner transfer, alter or change any such permit or make a false notation thereon or obtain the same upon any false representation to the circuit clerk granting the same, or use or attempt to use a permit granted to another.

Sec. 3. Weapons must be stamped.-No person within this state shall lease, buy or in anywise procure the possession from any person, firm or corporation within or without the state, of any

pistol, revolver or other firearm of a size which may be concealed upon the person, that is not stamped as required by section 1 of this act; and no person shall buy or otherwise acquire the possession of any such article unless he shall have first procured a written permit so to do from the circuit clerk of the county in which such person resides, in the manner as provided in section 2 of this act.

Sec. 4. Manufacture not prohibited.-Nothing herein contained shall be considered or construed as forbidding or making it unlawful for a dealer in or manufacturer of pistols, revolvers or other firearms of a size which may be concealed upon the person, located in this state, to ship into other states or foreign countries, any such articles whether stamped as required by this act or not so stamped.

## MONTANA

Decius Spear Wade, The Codes and Statutes of Montana. In Force July 1st, 1895. Including the Political Code, Civil Code, Code of Civil Procedure and Penal Code. As Amended and Adopted by the Fourth Legislative Assembly, Together with Other Laws Continued in Force Page 873, Image 914 (Vol. 2, 1895) available at The Making of Modern Law: Primary Sources. 1895 Crimes Against the Public Peace, § 759: Every person who brings into this state an armed person or armed body of men for the preservation of the peace or the suppression of domestic violence, except at the solicitation and by the permission of the legislative assembly or of the governor, is punishable by imprisonment in the state prison not exceeding ten years and by a fine not exceeding ten thousand dollars.

1913 Mont. Laws 53, An Act to Provide that Aliens Shall Pay a Gun License, and Providing a Penalty for Failure to Obtain License; to Provide for and Regulate the Duties of the Game and Fish Warden and His Deputies, and to Provide for the Disposition of the Fines so Collected, ch. 38, § 1.

There is hereby created a gun license for aliens. No person not a bona fide citizen of the United States shall own or have in his possession, in the State of Montana, any gun, pistol or other firearm without first having obtained from the Game and Fish Warden a license therefor, which said license shall cost the owner of said firearm the sum of Twenty-five ($25) Dollars, and shall expire one year from date of issuance thereof; provided, however, that this section shall not apply to one who has obtained the Twenty-five ($25) Dollar hunting license required by the laws of Montana; provided, further, that the provisions of this section shall not apply to any alien who is a bona fide resident of the State of Montana and the owner of not less than one hundred and sixty acres of land therein, nor shall it apply to any settler on the public lands of the State of Montana who shall have begun to acquire land under the laws of the United States by filing thereon, nor shall it apply to persons engaged in tending or herding sheep or other animals, held in herd.

1918 Mont. Laws 6-7,9, An Act Entitled "An Act Providing for the Registration of All Fire Arms and Weapons and Regulating the Sale Thereof and Defining the Duties of Certain County Officers and Providing Penalties for a Violation of the Provisions of This Act," ch. 2, §§ 1, 3, 8. § 1. Within thirty days from the passage and approval of this Act, every person within the State of Montana, who owns or has in his possession any fire arms or weapons shall make a full, true, and complete verified report upon the form hereinafter provided to the sheriff of the County in

which such person lives, of all fire arms and weapons which are owned or possessed by him or her or are in his or her control, and on sale or transfer into the possession of any other person such person shall immediately forward to the sheriff of the County in which such person lives the name and address of that purchaser and person into whose possession or control such fire arm or weapon was delivered. § 3. Any person signing a fictitious name or address or giving any false information in such report shall be guilty of misdemeanor, and any person failing to file such report as in this Act provided, shall be guilty of a misdemeanor. § 8. For the purpose of this Act a fire arm or weapon shall be deemed to be any revolver, pistol, shot gun, rifle, dirk, dagger, or sword.

1935 Mont. Laws 57, 57-60
CHAPTER 43
An Act Relating to Machine Guns, and Their Association with Crimes of Violence as Herein Defined, Providing Presumptions Respecting the Use or Possession Thereof, Search Warrants for Machine Guns, Registration of the Same, and to Make Uniform the Law with Reference Thereto. Be it enacted by the Legislative Assembly of the State of Montana:

Section 1. Definitions. "Machine Gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than six shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. . . .

Section 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the State Penitentiary for a term of not less than twenty years.

Section 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the State Penitentiary for a term of not less than ten years.

Section 4. Possession or use of a machine gun shall be used for presumed to be for offensive or aggressive purpose: offensive or aggressive purpose:

(a) When the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) When in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) When the machine gun is of the kind described in Section 8 and has not been registered as in said section required; or

(d) When empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

Section 5. The presence evidence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

Section 6. Exceptions. Nothing contained in this Act shall prohibit or interfere with:

1. The manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose;

2. The possession of a machine gun for scientific purpose, or the possession of a machine gun not useable as a weapon and possessed as a curiosity, ornament, or keepsake;

3. The possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifestly not aggressive or offensive.

Section 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts, and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provision of this section shall be punishable by a fine of not less than One Hundred Dollars ($100.00).

Section 8. Every machine gun now in this state adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the Secretary of State, on the effective date of this Act, and annually thereafter. If acquired hereafter it shall be registered within twenty-four hours after its acquisition. Blanks for registration shall be prepared by the Secretary of State, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which, the gun was acquired. The registration date shall not be subject to inspection by the public. Any person failing to register any gun as required by this Section, shall be presumed to possess the same for offensive or aggressive purpose.

Section 9. Warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this Act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record, upon application of the County Attorney, shall have jurisdiction and power to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the state or a political subdivision thereof.

Section 10. If any provision of this Act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable. . . .

Approved February 20, 1935.

## NEBRASKA

1869 Neb. Laws 53, An Act to Incorporate Cities of the First Class in the State of Nebraska, § 47.

The City Council shall have power to license all . . . vendors of gunpowder[.]

1895 Neb. Laws 210, Laws of Nebraska Relating to the City of Lincoln, An Ordinance Regulating and Prohibiting the Use of Fire-arms, Fire-works and Cannon in the City of Lincoln . . . Prescribing Penalties for Violation of the Provisions of This Ordinance, and Repealing Ordinances in Conflict Herewith, Art. XVI, § 6.

The Mayor may grant to so many and such persons as he may think proper, licenses to carry concealed weapons, and may revoke any and all of such licenses at his pleasure. Every such license shall state the name, age, occupation, and residence, of the person to whom granted, and shall be good for one year. A fee of fifty cents shall be paid therefor to the City Treasurer, and by him placed in the police fund.

## NEW HAMPSHIRE

1820 N.H. Laws 274-76, An Act to Provide for the Appointment of Inspectors and Regulating the Manufacture of Gunpowder, ch. 25, §§ 1-9.

§ 1. [T]he Governor . . . is hereby authorized to appoint an inspector of gunpowder for every public powder magazine, and at every manufactory of gunpowder in this state, and such other places as may by him thought to be necessary[.] § 2. [F]rom and after the first day of July next, all gunpowder which shall be manufactured within this state shall be composed of the following proportions and quality of materials . . . § 3. It shall be the duty of each of said inspectors to inspect, examine and prove all gunpowder which after the first day of July shall not be deposited at any publick [sic] powder magazine, or manufactory of this state . . . § 4. [N]o gunpowder within this state shall be considered to be of proof unless one ounce thereof, placed in a chamber of a four and an half inch howitzer, with the howitzer elevated so as to form an angle of forty-five degrees with the horizon, will, upon being fired throw a twelve pound shot seventy-five yards at the least. § 5. [W]henever any of said inspectors shall discover any gunpowder, deposited at any public powder magazine, or any other place within this state, which is not well manufactured or which is composed of impure materials . . . the inspector in such case, shall mark each cask containing such impure, ill manufactured, or deficient gunpowder, with the word "Condemned" on both heads of the cask . . . § 6. [I]f any person shall knowingly sell any condemned gunpowder . . . every such person, so offending, shall forfeit and pay not less than two hundred nor more than five hundred dollars . . . § 7. [E]ach inspector . . . be sworn to the faithful and impartial discharge of the duties of his office, and each inspector shall be allowed one cent for each pound of gunpowder, by him examined, inspected and proved . . . to be paid by the owner or owners of the gunpowder. § 8. [I]f any manufacturer of gunpowder shall sell or dispose of, or shall cause or permit to be sold or disposed of, or shall export or cause to be exported withou the limits of this state, any powder of his manufacture, before the same has been inspected and marked agreeably to the provisions of this act, he shall forfeit and pay the sum of fifty cents for every pound of powder so sold, disposed of, or exported, to be recovered in the manner provided in the sixth section of this act. § 9. [I]f any person with within this state . . shall knowingly sell, expose, or offer for sale, within this state, any gunpowder which is not well manufactured, or which is composed of impure materials, and which shall not be composed of the proof herein before required, shall forfeit and pay not less than five dollars nor more than fifty dollars for each and every offence, to be recovered in the manner provided in the sixth section of this act.

1823 N.H. Laws 73-74, An Act to Establish a System of Police in the Town of Portsmouth, and for Other Purposes, ch. 34, § 4.

That if any person or persons shall within the compact part of the town of Portsmouth, that is to say, within one mile of the courthouse, fire or discharge any cannon, gun, pistol or other fire arms, or beat any drum, (except by command of a military officer, having authority therefor) or

60

fire or discharge any rockets, squibs, crackers, or any preparation of gunpowder, (except by the permission of the police officers, or of a major part of them first had in writing) . . . every such person, for every such act shall be taken and deemed to be an offender against the police of Portsmouth, and shall be liable to the penalties hereinafter expressed.

The Charter, with Its Amendments and the General Ordinances of the City of Dover Page 32, Image 32 (1870) available at The Making of Modern Law: Primary Sources. 1870 General Statutes [Ordinances of the City of Dover, [New Hampshire] Offences Against the Police of Towns,] § 5. No person shall, within the compact part of any town, fire or discharge any cannon, gun, pistol, or other fire-arms, or beat any drum, except by command of a military officer having authority therefor, or fire or discharge any rockets, squibs, crackers, or any preparation of gunpowder, except by permission of a majority of the police officers or selectmen in writing, or make any bonfire, or improperly use or expose any friction matches, or knowingly raise or repeat any false cry of fire.

1917 N.H. Laws 727-28, An Act for the Regulation of the Sale and Use of Explosives and Firearms, ch. 185, §§ 1-3, 6.
§ 1. No person shall manufacture, sell, or deal in firearms or in gunpowder, dynamite, nitro-glycerine, or other form of high explosive, unless he shall first obtain, from the selectmen of the town or the chief of police of the city where such business is to be conducted, a written license therefor, and no person shall conduct such business within the state but outside the limits of any organized town or city, unless he shall first obtain such license from the county commissioners of the county in which such business is to be conducted; which license shall specify the building where such business is to be carried on or material deposited or used. § 2. No such licensed person shall sell or deliver firearms to any person not a citizen of the United States, unless he shall have legally declared his intention of becoming a citizen, or any such explosive material or compound to any person, except upon presentation of a permit such as is hereinafter provided for, nor unless satisfied that the same is to be used for a lawful purpose. § 3. Every person so licensed shall keep, on blanks to be furnished by the secretary of state, a record of the names and residences of all persons to whom he shall sell or deliver firearms or any such explosive material or compound, the purpose of which the same is to be used¸ the date of sale, the amount paid, the date of the purchaser's permit, the name and title of the person by whom the permit was issued, and, within five days after such sale or delivery, shall file such record thereof with the clerk of the city or town wherein he sale or delivery was made, or with the county commissioners in case of sales or deliveries within the state, but outside the limits of any organized city or town. The records thus filed shall at all times be open to the inspection of the police departments, or other public authorities. He shall also affix to the receptacle containing such explosive material or compound a label with the name of the compound, his own name, and the date of sale.
§ 6. No person not a citizen of the United States or one who has legally declared his intention of becoming such a citizen shall have in his possession any firearm or firearms of whatsoever kind or description unless he has a written permit to have such possession issued and signed as hereinafter provided. Any such person desiring to possess a firearm or firearms for any lawful purpose shall first make written application to the chief of police or selectmen of the town wherein he resides . . . stating the purposes for which the possession of the firearm or firearms is desired and a description of the firearm or firearms. The applicant shall also state his full name, occupation, place of residence and if in a city the street and number. If such chief of police or

61

selectmen or county commissioners are satisfied that the applicant intends to use the firearm or firearms in a lawful manner and as set forth in his application, a permit shall be issued, signed by the chief of police of the city, a selectmen of the town, or county commissioners, as the case may be, giving to the applicant the right to have in his possession such firearm or firearms. The holder of any such permit shall keep the permit on his person at all times when he is in possession of the firearm or firearms as authority for such possession and shall exhibit the same when so requested by any person.

1917 N.H. Laws 728-29, An Act for the Regulation of the Sale and Use of Explosives and Firearms, ch. 185, § 6.

No person not a citizen of the United States or one who has legally declared his intention of becoming such a citizen shall have in his possession any firearm or firearms of whatsoever kind or description unless he has a written permit to have such possession issued and signed as hereinafter provided. Any such person desiring to possess a firearm or firearms for any lawful purpose shall first make written application to the chief of police or selectmen of the town wherein he resides . . . stating the purposes for which the possession of the firearm or firearms is desired and a description of the firearm or firearms. The applicant shall also state his full name, occupation, place of residence and if in a city the street and number. If such chief of police or selectmen or county commissioners are satisfied that the applicant intends to use the firearm or firearms in a lawful manner and as set forth in his application, a permit shall be issued, signed by the chief of police of the city, a selectmen of the town, or county commissioners, as the case may be, giving to the applicant the right to have in his possession such firearm or firearms. The holder of any such permit shall keep the permit on his person at all times when he is in possession of the firearm or firearms as authority for such possession and shall exhibit the same when so requested by any person.

1923 N.H. Laws 138

SECTION 1. Pistol or revolver, as used in this act shall be construed as meaning any firearm with a barrel less than twelve inches in length.

SECT. 2. If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall in addition to the punishment provided for the crime, be punished by imprisonment for not more than five years.

SECT. 3. No unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another shall own or have in his possession or under his control a pistol or revolver, except as hereinafter provided. Violations of this section shall be punished by imprisonment for not more than two years and upon conviction the pistol or revolver shall be confiscated and destroyed.

SECT. 4. No person shall carry a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment not exceeding one year or by both fine and imprisonment.

SECT. 5. The provisions of the preceding sections shall not apply to marshals, sheriffs, policemen, or other duly appointed peace and other law enforcement officers, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps of the United States, nor to the national guard when on duty, nor to organizations by law authorized to purchase or receive such weapons, nor to duly authorized

military or civil organizations when parading, or the members thereof when at or going to or from their customary places of assembly.

SECT. 6. The selectmen of towns or the mayor or chief of police of cities may, upon application of any person issue a license to such person to carry a loaded pistol or revolver in this state, for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury' to his person or property or for any other proper purpose, and that he is a suitable person to be licensed. The license shall be in duplicate and shall bear the name, address, description, and signature of the licensee. The original thereof shall be delivered to the licensee, the duplicate shall be preserved by the selectmen of towns and the chief of police of the cities wherein issued for a period of one year.

SECT. 7. Any person or persons who shall sell, barter, hire, lend or give to any minor under the age of twenty-one years any pistol or revolver shall be deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than one hundred dollars or be imprisoned not more than three months, or both. This section shall not apply to fathers, mothers, guardians, administrators, or executors who give to their children, wards, or heirs to an estate, a revolver.

SECT. 8. No person shall sell, deliver, or otherwise transfer a pistol or revolver to a person who is an unnaturalized foreign-born person or has been convicted of a felony against the person property of another, except upon delivery of a written permit to purchase, signed by the selectmen of the town or the mayor or chief of police of the city. Before a delivery be made the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, sign and forward to the chief of police of the city or selectmen of the town one copy thereof and shall retain the other copy for one year. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than one year, or by both such fine and imprisonment.

SECT. 9. Whoever, without being licensed as hereinafter provided, sells, advertises, or exposes for sale, or has in his possession with intent to sell, pistols or revolvers, shall be punished by imprisonment for not more than two years.

SECT. 10. The selectmen of towns and the chief of police of cities may grant licenses, the form of which shall be prescribed by the secretary of state, effective for not more than one year from date of issue, permitting the licensee to sell at retail pistols and revolvers subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered (a) to a purchaser not personally known to the seller or who does not present clear evidence of his identity; nor (b) to an unnaturalized foreign-born person or a person who has been convicted of a felony and has no permit as required by section 8 of this act.

A true record, in duplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the secretary of state and shall be signed by the purchaser and by the person effecting the sale, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, and

nationality of the purchaser. One copy of said record shall, within seven days, be forwarded to the selectmen of the town or the chief of police of the city and the other copy retained for one year.

SECT. 11. If any person in purchasing or. otherwise securing delivery of a pistol or revolver shall give false information or offer false evidence of his identity he shall be punished by imprisonment punished, for not more than two years.

SECT. 12. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearms upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed or obliterated the same. Violations of this section shall be punished by a fine of not more than two hundred dollars or by imprisonment for not more
than one year, or both.

SECT. 13. All licenses heretofore issued within the state permitting the carrying of pistols or revolvers upon the person shall expire at midnight of July 31, 1923.

SECT. 14. This act shall not apply to antique pistols or revolvers incapable of use as such.

SECT. 15. All acts and parts of acts inconsistent herewith are hereby repealed, and this act shall take effect upon its passage.

## NEW JERSEY

Ordinances of Jersey City, Passed By The Board Of Aldermen since May 1, 1871, under the Act Entitled "An Act to Re-organize the Local Government of Jersey City," Passed March 31, 1871, and the Supplements Thereto Page 46, Image 46 (1874) available at The Making of Modern Law: Primary Sources. 1871
[Ordinances of Jersey City, NJ, In Relation to the Sidewalks, Public Grounds and Streets in Jersey City,] § 26. No person shall, within this city, fire or discharge any gun, pistol, cannon, or fowling piece or other fire-arms, unless in defense of his property or person; nor let off any squibs, crackers or other fireworks, unless by permission of the city authorities, under the penalty of ten dollars for each and every offense; provided, however, that this section of the ordinance shall not apply to the Fourth of July.

Ordinances of Jersey City, Passed By The Board Of Aldermen since May 1, 1871, under the Act Entitled "An Act to Re-organize the Local Government of Jersey City," Passed March 31, 1871, and the Supplements Thereto Page 86- 87, Image 86-87 (1874) available at The Making of Modern Law: Primary Sources. 1873
An Ordinance In Relation to the Carrying of Dangerous Weapons. The Mayor and Aldermen of Jersey City do ordain as follows: § 1. That with the exceptions made in the second section of this ordinance, no person shall, within the limits of Jersey City, carry, have or keep on his or her person concealed, any slung-shot, sand-club, metal knuckles, dirk or dagger not contained as a blade of a pocket knife, loaded pistol or other dangerous weapon. § 2. That policemen of Jersey City, when engaged in the performance of police duty, the sheriff and constables of the County of Hudson, and persons having permits, as hereinafter provided for, shall be and are excepted from the prohibitions of the first section of this ordinance. § 3. The Municipal Court of Jersey City may grant permits to carry any of the weapons named in the first section to such persons as should, from the nature of their profession, business or occupation, or from peculiar

circumstances, be allowed so to do; and may, in granting such permits, impose such conditions and restrictions in each case as to the court shall seem proper. All applications for permits shall be made in open court, by the applicant in person, and in all cases the court shall require a written endorsement of the propriety of granting a permit from at least three reputable freeholders; nor shall any such permit be granted to any person until the court is satisfied that such person is temperate, of adult age, and capable of exercising self-control . Permits shall not be granted for a period longer than one year, and shall be sealed by the seal of the court. The possession of a permit shall not operate as an excuse unless the terms of the same are strictly complied with. In cases of emergency, permits may be granted by a single Justice of the Municipal Court, or by the Chief of Police, to be in force not longer than thirty days, but such permit shall not be renewable. §4. That no person shall, within the limits of Jersey City, carry any air gun or any sword cane. § 5. The penalty for a violation of this ordinance shall be a fine not exceeding fifty dollars, or imprisonment in the city prison not exceeding ten days, or both fine and imprisonment not exceeding the aforesaid amount and time, in the discretion of the court.

1902 N.J. Laws 780, An Act to Require Non-residents to Secure Licenses before Hunting or Gunning within the State of New Jersey and Providing Penalties for Violation of Its Provisions, ch. 263, § 1.
Every non-resident of this state shall be required to take out a license before he shall begin hunting or gunning in this state, which license the several county clerks of this state, and each of them, are hereby authorized and required to issue upon the payment by the applicant of a license fee of ten dollars, and an issuance fee of fifty cents to the county clerk issuing the same; such license shall be a certificate of permission to hunt and gun within the state of New Jersey and shall include the name, age and place of residence and business of the applicant with his description as nearly as may be[.]

1905 N.J. Laws 324-25, A Supplement to an Act Entitled "An Act for the Punishment of Crimes," ch. 172, § 1.
Any person who shall carry any revolver, pistol or other deadly, offensive or dangerous weapon or firearm or any stiletto, dagger or razor or any knife with a blade of five inches in length or over concealed in or about his clothes or person, shall be guilty of a misdemeanor, and upon conviction thereof shall be punishable by a fine not exceeding two hundred dollars or imprisonment at hard labor, not exceeding two years, or both; provided, however, that nothing in this act shall be construed to prevent any sheriff, deputy sheriff, police officer, constable, state detective, member of a legally organized detective agency or any other peace officer from carrying weapons in the discharge of his duty; nor shall this act apply to any person having a written permit to carry such weapon, firearm, stiletto, razor, dagger or knife, from the mayor of any city, borough or other municipality, having a mayor, or from the township committee or other governing body of any township or other municipality not having a mayor, which permits such officers and governing bodies are hereby authorized to grant; said permits shall be issued at the place of residence of the person obtaining the same and when issued shall be in force in all parts of the state for a period of one year from date of issue unless sooner revoked by the officer or body granting the same; and provided further, that nothing contained herein shall prevent any person from keeping or carrying about his or her place of business, dwelling house or premises any such weapon, firearm, stiletto, dagger, razor or knife, or from carrying the same from any

place of purchase to his or her dwelling house, or place of business, or from his or her dwelling house or place of business to any place where repairing is done to have the same repaired and returned; and provided further, that nothing in this act shall be construed to make it unlawful for any person to carry a gun, pistol, rifle or other firearm or knife in the woods or fields or upon the waters of this state for the purpose of hunting; a fee of twenty-five cents may be lawfully charged by such officer or body granting such permit.

1914 N.J. Laws 65, Supplement to an Act Entitled "An Act to License Citizens of this State to Hunt and Pursue Wild Animals and Fowl," ch. 43, § 1.
No license to hunt, pursue or kill with a gun or any fire-arm any of the game birds¸ wild animals or fowl of this State, shall be issued to any person under the age of fourteen years, and if any applicant for license shall misrepresent his age he shall be liable to a penalty of twenty dollars, to be sued for and recovered as other penalties under the fish and game laws.

1916 N.J. Laws 275-76, An Act to Prohibit Any Person from Going into the Woods or Fields with a Gun or Other Firearm when Intoxicated, or under the Influence of any Drug or Intoxicating Liquor, ch. 130, §§ 1-2.
1. It shall be unlawful for any person to go into the woods or fields at any time with a gun or firearm when intoxicated or under the influence of any drug or drugs or of intoxicating liquor. 2. Any person violating any of the provisions of this act shall be liable to a penalty of fifty dollars for each offense, to be sued for and recovered in the manner provided and by the persons authorized to sued for and recover penalties. . . . Upon the conviction of any person for violating the provisions of this act, the license to hunt and fish of such person issued to him . . . shall become void, and the justice of the peace, District Court judge, or police magistrate before whom such conviction is had, shall take from the person so convicted the license, mark the same "revoked" and send it to the Board of Fish and Game Commissioners. If such conviction is reversed on appeal the license shall be restored to the defendant. Any license to hunt or fish issued to any person convicted of a violation of this act during the calendar year in which such offense occurred shall be null and void.

1927 N.J. Laws 180-81, A Supplement to an Act Entitled "An Act for the Punishment of Crimes," ch. 95, §§ 1-2.
1. The term "machine gun or automatic rifle," as used in this act, shall be construed to mean any weapon, mechanism or instrument not requiring that the trigger be pressed for each shot and having a reservoir, belt or other means of storing and carrying ammunition which can be loaded into the said weapon, mechanism or instrument and fired therefrom at a rate of five or more shots to the second. 2. Any person who shall sell, give, loan, furnish or deliver any machine gun or automatic rifle to another person, or any person who shall purchase, have or possess any machine gun or automatic rifle, shall be guilty of a high misdemeanor; provided, the provisions of this section shall not apply to any person who has procured and possesses a license to purchase, have and possess a machine gun or automatic rifle as hereinafter provided for; nor to the authorized agents and servants of such licensee; or to the officers and members of any duly authorized military organization; nor to the officers and members of the police force of any municipality, nor to the officers and members of the State Police force; nor to any sheriff or undersheriff; nor to any prosecutor of the pleas, his assistants, detectives and employees.

66

1927 N.J. Laws 742

No retail dealer shall sell or expose for sale, or have in his possession with intent to use, any of the firearms or instruments enumerated in section one hereof without being licensed as hereafter provided. The Common Pleas judge of any court of this State, by the Secretary of State, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political-division, pistols or revolvers, subject to the follow-ing conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building or buildings designated in the license.

2. The license or a copy thereof certified by the issuing authority shall be displayed in a conspicuous place on the premises where it can be easily read.

3. No pistol or revolver, or imitation thereof, or placard advertising the sale thereof, shall be placed in any window or in any part of said premises where it can be readily seen from the outside.

4. No pistol or revolver shall be delivered (a) unless the purchaser shall have obtained a permit to purchase days shall have elapsed after the application for the permit; (c) unless the purchaser either is personally known to the seller or shall present evidence of his identity; (d) unless the pistol or revolver shall be unloaded and securely wrapped; provided, however, a permit to cover a pistol or revolver shall, for the purposes of this section and of section nine of this act, be equivalent to a permit to purchase a pistol or revolver. 5. A true record of every pistol shall be made in a book kept for the purpose, the form of which shall be prescribed by the Secretary of State and shall be personally signed by the person effecting the sale, and shall contain the date of the sale, the calibre, make, model, and manufacturer's number of the weapon, and the name, address and permit number of the purchaser.

Any person who shall knowingly sell any of the firearms or instruments enumerated in section one hereof to a minor under the age of eighteen years, or to a person not of sound mind, or to a drug addict, or to a person who has been convicted of committing or attempting to commit any of the crimes enumerated in section two hereof when armed with any of the firearms or instruments enumerated in section one hereof, shall he guilty of misdemeanor.

No person shall sell a pistol or revolver to another person unless the purchaser has first secured a permit to purchase or carry a pistol or revolver. No person of good character and who is of good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in other sections of this act, shall be denied a permit to purchase a pistol or revolver. The judge of any court within this State (except, however, justices of the peace), the sheriff of a county or the chief of police of a city, town or municipality shall upon application issue-to any person qualified under the provisions of this section a permit to purchase a pistol or revolver, and the Secretary of State shall have concurrent jurisdiction to issue such permit in any case, notwithstanding it has been refused by any other licensing official, if in his opinion the applicant is qualified.

Applications for such permits shall be in form as prescribed by the Secretary of State and shall set forth the name, residence, place of business, age, occupation, sex, color, and physical description of the applicant, and shall state whether the applicant is a citizen, and whether he has ever been convicted of any of the crimes enumerated in section two hereof as defined in this act. Such application shall he signed by the applicant and shall contain as reference the names and addresses of two reputable citizens personally acquainted with him. Application blanks shall be obtainable from the Secretary of State and from any other officers authorized to grant such permit.. and may be obtained from licensed retail dealers. The application, together with a fee of

fifty cents. shall be delivered or forwarded to the licensing authority who shall investigate the same, and unless food cause for the denial thereof shall appear, shall rant said permit within seven days from the date of the receipt of the application. The permit shall be in form prescribed by the Secretary of State and shall be issued to the applicant in triplicate. The applicant shall deliver to the seller the permit in triplicate and the seller shall indorse on the back of each copy the make, model, calibre and serial number of the pistol or revolver, sold tinder the permit. One copy shall then be returned to the purchaser with the pistol or revolver, one copy shall be kept by the seller as a permanent record, and the third copy shall be forwarded by the seller within three days to the Secretary of State. If the permit is not granted, the fee shall be returned to the applicant.

All fees for permits shall be paid into the general fund of the State if the permit be issued by the Secretary of State; to the municipality if the permit be issued by a municipal officer; in all other instances to the general fund of the county wherein the officer acts or the licensee resides or does business.

A person shall not be restricted as to the number of pistols or revolvers he may purchase, if he applies for and obtains permits to purchase the same, but only one pistol or revolver shall be purchased or delivered on each permit.

1934 N.J. Laws 394-95, A Further Supplement to an Act Entitled "An Act for the Punishment of Crimes," ch. 155, §§ 1-5.

1. A gangster is hereby declared to be an enemy of the state. 2. Any person in whose possession is found a machine gun or a submachine gun is declared to be a gangster; provided, however, that nothing in this section contained shall be construed to apply to any member of the military or naval forces of this State, or to any police officer of the State or of any county or municipality thereof, while engaged in his official duties. 3. Any person, having no lawful occupation, who is apprehended while carrying a deadly weapon, without a permit so to do and how has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster. 4. Any person, not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster; provided, however, that nothing in this section contained shall in any wise be construed to include any participant or sympathizer in any labor dispute. 5. Any person convicted of being a gangster under the provisions of this act shall be guilty of a high misdemeanor, and shall be punished by a fine not exceeding ten thousand dollars ($10,000.00), or by imprisonment not exceeding twenty years, or both.

## NEW MEXICO

1915 N.M. Law 153, An Act to Amend Sections . . . of Chapter 85 of the Laws of 1912 Relative to the Protection of Game and Fish, ch. 101, §7.

. . . No person shall at any time shoot, hunt or take in any manner any wild animals or birds or game fish as herein defined in this state without first having in his or her possession a hunting license as hereinafter provided for the year in which such shooting, fishing or hunting is done. The presence of any person in any open field, prairie or forest, whether enclosed or not with

traps, gun or other weapon for hunting, without having in possession a proper hunting license as herein provided, shall be prima facie evidence of the violation of this section.

## NEW YORK

The Colonial Laws Of New York From The Year 1664 To The Revolution, Including The Charters To The Duke Of York, The Commissions And Instructions To Colonial Governors, The Dukes Laws, The Laws Of The Dongan And Leisler Assemblies, The Charters Of Albany And New York And The Acts Of The Colonial Legislatures From 1691 To 1775 Inclusive Page 40-41, Image 62-63 (1896) available at The Making of Modern Law: Primary Sources. 1680. Laws of the Colony of New York, Indians. No person shall sell, give or barter directly or indirectly any gun or guns, powder, bullet, shot, lead nor any vessel or burthen, or row boat, canoes only excepted without license first had and obtained under the governors hand and seal to any Indian whatsoever, nor to any person inhabiting out of this Government, nor shall amend or repair any gun belonging to any Indian, nor shall sell any armor or weapons, upon penalty of ten pounds for every gun, armor, weapon, vessel, or boat so sold given or bartered, five pounds for every for every pound of powder, and forty shillings for every pound of shot or lead and proportionately for any greater or lesser quantity.

Laws of the State of New-York, Relating to the City of Schenectady: And the Laws and Ordinances of the Common Council of the City of Schenectady Page 58, Image 58 (1824) available at The Making of Modern Law: Primary Sources. 1824
[Ordinances of the City of Schenectady,] XI. And be it further ordained, That if any person shall fire or discharge any gun, pistol, rocket, cracker, squib or other fire works, in any street, lane or alley, or in any yard, garden or other enclosure, or in any place which persons frequent to walk within the limits aforesaid, without permission of the mayor or one of the aldermen or assistants of this city, such person shall forfeit for every such offence the sum of one dollar…

Elliott Fitch Shepard, Ordinances of the Mayor, Aldermen and Commonalty of the City of New York, in Force January 1, 1881; Adopted by the Common Council and Published by Their Authority Page 214-215, Image 214-215 (1881) available at The Making of Modern Law: Primary Sources. 1881
Carrying of Pistols, § 264. Every person except judges of the federal, state and city courts, and officers of the general, state and municipal governments authorized by law to make arrests, and persons to whom permits shall have been issued, as hereinafter provided, who shall have in his possession within the city of New York a pistol of any description concealed on his person, or not carried openly, shall be deemed guilty of a misdemeanor, and shall be punished, on conviction by a fine not exceeding ten dollars, or, in default of payment of such fine by imprisonment not exceeding ten days. § 265. Any person, except as provided in this article, who has occasion to carry a pistol for his protection, may apply to the officer in command at the station-house of the precinct where he resided, and such officer, if satisfied that the applicant is a proper and law abiding person, shall give said person a recommendation to the superintendent of police, or the inspector in command at the central office in the absence of the superintendent, who shall issue a permit to the said person allowing him to carry a pistol of any description. Any non-resident who does business in the city of New York, and has occasion to carry a pistol while in said city, must make application for permission to do so to the officer in command of the

station-house of the police precinct in which his so does business, in the same manner as is required by residents of said city, and shall be subject to the same conditions and restrictions.

Charles Wheeler, By-Laws of the Village of Mechanicville. Adopted by the Trustees October 18, 1881 Page 7, Image 8 (1881) available at The Making of Modern Law: Primary Sources. 1881 [Ordinances of the Village of Mechanicville, NY,] Fires and Their Prevention, Fire Arms and Fire Works, § 20. No person, except on the anniversary of our national independence, and on that day only, at such place or places as the President or Trustees shall permit, shall fire, discharge or set off, in the village, any gun, cannon, pistol, rocket, squib, cracker or fire ball, under the penalty of five dollars for each offense.

George R. Donnan, Annotated Code of Criminal Procedure and Penal Code of the State of New York as Amended 1882-5 Page 172, Image 699 (1885) available at The Making of Modern Law: Primary Sources. 1884
Carrying, Using, Etc., Certain Weapons, § 410. A person who attempts to use against another, or who, with intent so to use, carries, conceals or possesses any instrument or weapon of the kind commonly known as the slung-shot, billy, sand –club or metal knuckles, or a dagger, dirk or dangerous knife, is guilty of a felony. Any person under the age of eighteen years who shall have, carry or have in his possession in any public street, highway or place in any city of this state, without a written license from a police magistrate of such city, any pistol or other fire-arm of any kind, shall be guilty of a misdemeanor. This section shall not apply to the regular and ordinary transportation of fire-arms as merchandise, or for use without the city limits. § 411. Possession, Presumptive Evidence. The possession, by any person other than a public officer, of any of the weapons specified in the last section, concealed or furtively carried on the person, is presumptive evidence of carrying, or concealing, or possessing, with intent to use the same in violation of that section.

George R. Donnan, Annotated Code of Criminal Procedure and Penal Code of the State of New York as Amended 1882-5. Fourth Edition Page 298, Image 824 (1885) available at The Making of Modern Law: Primary Sources. 1885
An Act to Limit the Carrying and Sale of Pistols and other fire arms in the cities of this state. Chap. 375, § 1. No person under the age of eighteen years shall have, carry or have in his possession in any public street, highway or place in any of the cities of this state, any pistol or other firearms of any kind, and no person shall in such cities sell or give any pistol or other fire-arms to any person under such age. § 2. Any person violating any of the provisions of this act shall be guilty of a misdemeanor, and in all trials or examinations for said offense the appearance of the person so alleged or claimed to be under the age of eighteen years shall be evidence to the magistrate or jury as to the age of such person. § 3. Nothing herein contained shall apply to the regular and ordinary transportation of pistols or fire-arms as articles of merchandise in said cities, or to the carrying of a gun or rifle through a street or highway of any city, with the intent to use the same outside the said city; nor to any person under such age carrying an pistol or firearms under license given by the mayor of said cities; but no license so given shall be in force more than one year from its date; and all such licenses may be revoked at the pleasure of the mayor, and a full complete and public record shall be kept by the mayor of said cities of all such licenses and the terms and date thereof.

70

Charter and Ordinances of the City of Syracuse: Together with the Rules of the Common Council, the Rules and Regulations of the Police and Fire Departments, and the Civil Service Regulations Page 184, Image 185 (1885) available at The Making of Modern Law: Primary Sources. 1885

Ordinances of [the City of Syracuse,] Gunpowder, Etc. § 1. No person except when on military duty in the public service of the United States, or of this State, or in case of public celebration with permission of the mayor or common council, shall have, keep or possess in any building, or carriage, or on any dock, or in any boat or other vessel, or in any other place within the city limits, gun-powder, giant- powder, nitro-glycerine, dynamite or other explosive material, in quantity exceeding one pound, without written permission from the chief engineer of the fire department. Any person violating any of the provisions of this section shall be liable to a fine of not less than ten nor more than one hundred dollars, or to imprisonment in the penitentiary of the county for not less than thirty days nor more than three months, for each offense.

Mark Ash, The New York City Consolidation Act, as in Force in 1891: With Notes Indicating the Statutory Sources, References to Judicial Decisions, and All Laws Relating to New York City, Passed Since January 1, 1882, Together with an Appendix of the Royal English Colonial Charters of New York City Page 209, Image 233 (Vol. 1, 1891) available at The Making of Modern Law: Primary Sources. 1890

Ordinances of the City of New York, § 455. No person shall manufacture, have, keep, sell, or give away any gunpowder, blasting powder, gun-cotton, niro-glycerine, dualin, or any explosive oils or compounds, within the corporate limits of the city of New York, except in the quantities limited, in the manner, and upon the conditions herein provided, and under such regulations as the board of fire commissioners shall prescribe : and said board shall make suitable provision for the storage and safe keeping of gunpowder and other dangerous and explosive compounds or articles enumerated under this title, beyond the interior line of low water-mark in the city and county of New York. The said board may issue licenses to persons desiring to sell gunpowder or any of the articles mentioned under this section at retail, at a particular place in said city to be named in said license (provided that the same shall not be in a building used in any part thereof as a dwelling unless specially authorized by said license), and persons so licensed may on their premises, if actually kept for sale, persons so licensed may have on their premises, if actually kept for sale, a quantity not exceeding at any one time, of nitro-glycerine, five pounds; of gun-cotton, five pounds of gunpowder, fourteen pounds; blasting powder, twenty-five pounds. . .

1891 N.Y. Laws 129, 177, An Act to Revise the Charter of the City of Buffalo, ch. 105, tit. 7, ch. 2, § 209.

No person other than members of the police force, regularly elected constables, the sheriff of Erie county, and his duly appointed deputies, shall, in the city, carry concealed upon or about his person, any pistol or revolver, or other dangerous weapon or weapons, without first obtaining a permit, as hereinbefore provided; and such permit shall be produced and exhibited by any person holding the same, upon the request of a member of the police force. A violation of any of the provisions of this section shall be a misdemeanor and punishable as such; and all fines imposed and collected for such violations shall be deposited to the credit of said pension fund by the clerk of the court imposing the same.

Rules, By-Laws and Ordinances of the Village of Wappingers Falls. Adopted September 13, 1898 Page 34, Image 32.(Wappingers Falls, 1898) available at The Making of Modern Law: Primary Sources. 1898

Ordinances of Wappinger Falls. Park Ordinances. § 1. No person or persons shall fire or discharge any gun or pistol or other firearm, or any rocket torpedo, or other fireworks of any description, nor send up any balloon, nor throw stones or missiles, nor play ball within the limits of Mesier Park, without the permission obtained of the Park Commissioners at a meeting of the Board.

An Ordinance to regulate the government of parks and other public pleasure grounds of The City of New York, at 600 (1903). 1903

Be it Ordained by the Board of Aldermen of The City of New York, as follows: All persons are forbidden . . .

XXIV. No one shall fire or carry any firearm, fire cracker, torpedo or fire-works, nor make a fire, nor make any oration, nor conduct any religious or other meeting or ceremony within any of the parks, parkways, squares or places in The City of New York under the jurisdiction of the Department of Parks without special permission from the Commissioner having jurisdiction.

1911 N.Y. Laws 442-43, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, §1.

Section . . . eighteen hundred and ninety-seven . . . [is] hereby amended to read as follows: § 1897. Carrying and use of dangerous weapons. A person who attempts to use against another, or who carries, or possesses any instrument or weapon of the kind commonly known as a blackjack, slunghsot, billy, sandclub, sandbag, metal knuckles or bludgeon, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly instrument or weapon, is guilty of a felony. Any person under the age of sixteen years, who shall have, carry, or have in his possession, any of the articles named or described in the last section, which is forbidden therein to offer, sell, loan, lease or give to him, shall be guilty of a misdemeanor. . . . Any person over the age of sixteen years, who shall have or carry concealed upon his person in any city, village, or town of this state, any pistol, revolver, or other firearm without a written license therefor, theretofore issued to him by a police magistrate of such city or village, or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance of such city, village or town, shall be guilty of a felony.

1911 N.Y. Laws 443, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, §1.

Any person over the age of sixteen years, who shall have in his possession in any city, village or town of this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, without a written license therefor, issued to him by a police magistrate of such city or village, or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance in such city, village or town, shall be guilty of a misdemeanor.

1911 N.Y. Laws 444-45, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, § 2.

Such chapter is hereby amended . . . § 1914. Sale of pistols, revolvers and other firearms. Every person selling a pistol, revolver or other firearm of a size which may be concealed upon the person whether such seller is a retail dealer, pawnbroker or otherwise, shall keep a register in which shall be entered at the time of sale, the date of sale, name, age, occupation and residence of every purchaser of such a pistol, revolver or other firearm, together with the calibre [sic], make, model, manufacturer's number or other mark of identification on such pistol, revolver or other firearm. Such person shall also, before delivering the same to the purchaser, require such purchaser to produce a permit for possessing or carrying the same as required by law, and shall also enter in such register the date of such permit, the number thereon, if any, and the name of the magistrate or other officer by whom the same was issued. Every person who shall fail to kep a register and enter therein the facts required by this section, or who shall fail to exact the production of a permit to possess or carry such pistol, revolver or other firearm, if such permit is required by law, shall be guilty of a misdemeanor. Such register shall be open at all reasonable hours for the inspection of any peace officer. Every person becoming the lawful possessor of such pistol, revolver or other firearm, who shall sell, give or transfer the same to another person without first notifying the police authorities, shall be guilty of a misdemeanor. This section shall not apply to wholesale dealers.

1923 N.Y. Laws 140–141, An Act to Amend the Conservation Law in Relation to Aliens, ch. 110, § 2.
2. It shall be unlawful for any unnaturalized foreign born person to hunt for, or capture or kill, in this state any wild bird or animal, either game or otherwise, of any description except in defense of person or property or except under a special license issued directly by the conservation commission; and to that end it shall be unlawful for any unnaturalized foreign born person within this state, to own or be possessed of a shotgun or rifle of any make, unless he possess such special license.


## NORTH CAROLINA

James Iredell, A Digested Manual of the Acts of the General Assembly of North Carolina, from the Year 1838 to the Year 1846, Inclusive, Omitting All the Acts of a Private and Local Nature, and Such as were Temporary and Whose Operation Has Ceased to Exist Page 73, Image 73 (1847) available at The Making of Modern Law: Primary Sources. 1840
Crimes and Punishments, 1840 – 1. – Ch. 30, If any free negro, mulatto, or free person of color shall wear, or carry about his or her person, or keep in his or her house, any shot gun, musket, rifle, pistol, sword, dagger, or bowie knife, unless he or she shall have obtained a license therefor from the Court of Pleas and Quarter Sessions of his or her county, within one year preceding the wearing, keeping or carrying thereof, he or she shall be guilty of a misdemeanor and may be indicted therefor.

1909 N.C. Sess. Laws 777, Priv. Laws, An Act for a New Charter for the City of Southport, North Carolina, ch. 345, § 23, pt. 14.
[O]n dealers in pistols, guns, dirks, bowie knives, sling shots, brass or metal knuckles or other like deadly weapons, in addition to all other taxes, a license tax not exceeding fifty dollars; on

dealers in firecrackers, Roman candles, skyrockets, toy pistols or fireworks of any kind, a tax not exceeding fifty dollars.

1919 N.C. Sess. Laws 397-99, Pub. Laws, An Act to Regulate the Sale of Concealed Weapons in North Carolina, ch. 197, §§1, 5.
§ 1. That it shall be unlawful for any person, firm, or corporation in this State to sell, give away or dispose of, or to purchase or receive, at any place within the State from any other place within or without the State, without a license or permit therefor shall have first been obtained by such purchaser or receiver from the clerk of the Superior Court of the county in which such purchase, sale, or transfer is intended to be made, any pistol, so-called pump-gun, bowie knife, dirk, dagger or metallic knucksn[sic]. . . § 5. That each and every dealer in pistols, pistol cartridges and other weapons mentioned in section one of this act shall keep and accurate record of all sales thereof, including the name, place of residence, date of sale, etc., of each person, firm, or corporation, to whom or which any and all such sales are made, which said record shall be open to the inspection of any duly constituted State, county or police officer, within this State.

## NORTH DAKOTA

1915 N.D. Laws 96, An Act to Provide for the Punishment of Any Person Carrying Concealed Any Dangerous Weapons or Explosives, or Who Has the Same in His Possession, Custody or Control, unless Such Weapon or Explosive Is Carried in the Prosecution of a Legitimate and Lawful Purpose, ch. 83, §§ 1-3, 5.
§ 1. Any person other than a public officer, who carries concealed in his clothes any instrument or weapon of the kind usually known as a black-jack, slung-shot, billy, sand club, sand bag, bludgeon, metal knuckles, or any sharp or dangerous weapon usually employed in attack or defense of the person, or any gun, revolver, pistol or other dangerous fire arm loaded or unloaded, or any person who carries concealed nitro-glycerin, dynamite, or any other dangerous or violent explosive, or has the same in his custody, possession or control, shall be guilty of a felony, unless such instrument weapon or explosive is carried in the prosecution of or to effect a lawful and legitimate purpose. § 2. The possession, in the manner set forth in the preceeding Section, of any of the weapons or explosives mentioned therein, shall be presumptive evidence of intent to use the same in violation of this act. § 3. Penalty – Any person upon conviction of violating the provisions of this Act, shall, in the discretion of the court, be imprisoned in the State Penitentiary nor more than two years, or in the county jail not more than one year, or by a fine of not more than one hundred dollars, or by both such fine and imprisonment. Provided, however, that any citizen of good moral character may, upon application to any district court, municipal, or justice of the court, be granted the permission to carry a concealed weapon upon the showing of reasonable cause. . . . § 5. Emergency. An emergency is hereby declared to exist in that professional criminals are frequently found to carry concealed about their persons, the dangerous weapons or explosives mentioned in Section 1 of this Act. And, whereas, the present law is inadequate to prevent such criminals from carrying concealed weapons or explosives; therefore, this Act shall take effect and be in force from and after its passage and approval.

1923 N.D. Laws 379, 380-82 ch. 266
Sec. 2. Commiting Crime When Armed. If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall be

in addition to the punishment provided for the crime, be punished by imprisonment for not less than ten years.

Sec. 6. Carrying Pistol Concealed. No person shall carry a pistol or revolver concealed in any vehicle or in any package, satchel, grip, suit case or carry in any way or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by imprisonment for not less than one year, and upon conviction the pistol or revolver shall be confiscated or destroyed.

Sec. 8. Issue of Licenses to Carry. The justice of a court of record, the chief of police of a city or town and the sheriff of a county, or persons authorized by any of them shall upon the application of any person having a bonafide residence or place of business within the jurisdiction of said licensing authority, or of any person having a bona fide residence or place of business within the United States and license to carry a fire arm concealed upon his person issued by the authorities of any State or sub-division of the United States, issue a license to such person to carry a pistol or revolver within this State for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property or for any other proper purpose, and that he is a suitable person to be so licensed . . .

Sec. 10. SALES REGULATED. No person shall sell, deliver, or otherwise transfer a pistol or revolver to a person who he has reasonable cause to believe either is an unnaturalized foreign born person or has been convicted of a felony against the person or property of another, or against the Government of the United States or any State or subdivision thereof, nor in any event shall he deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered, said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, sign and forward by registered mail one copy thereof to the Secretary of State, and one copy thereof to the chief of police of the city or town, or the sheriff of the county of which the seller is a resident, and shall retain the other copy for six years. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall be punished by a fine of not less than $100 or imprisonment for not less than one year, or by both such fine and imprisonment.

Sec. 11. DEALERS TO BE LICENSED. Whoever, without being licensed as hereinafter provided, sells, or otherwise transfers, advertises, or exposes for sale, or transfers or has in his possession with intent to sell, or otherwise transfer, pistols or revolvers, shall be punished by imprisonment for not less than two years.

Sec. 12. DEALERS' LICENSES: By WHOM GRANTED, AND CONDmoNs THEREOF.) The duly constituted licensing authorities of any city, town or subdivision of this state, may grant licenses in form prescribed by the Secretary of State, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

The business shall be carried on only in the building designated in the license.

The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

No pistol or revolver shall be delivered-

(a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor

(b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor

(c) If the seller has reasonable cause to believe that the purchaser either is an unnaturalized foreign born person or has been convicted of a felony against the person or property of another, or against the Government of the United States or any State or subdivision thereof.

A true record, in triplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Secretary of State, and shall be personally signed by the purchaser and by the person affecting the sale, each in the presence of the other, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, occupation, and nationality of the purchaser. One copy of said record shall, within seven days, be forwarded by registered mail to the Secretary of State and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and the other copy retained for six years.

No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

1925 N.D. Laws 216–17, Pistols and Revolvers, ch. 174, § 2.

§ 2 Committing Crime When Armed. If any person shall commit, or attempt to commit, a crime when armed with a pistol or revolver, and has no permit to carry the same, he may be punished by imprisonment for not more than ten years, in addition to the punishment provided for the crime. Such imprisonment, if not exceeding one year, to be in the County jail, and if exceeding one year to be in the State Penitentiary.

1931 N. D. Laws 305-06, An Act to Prohibit the Possession, Sale and Use of Machine Guns, Sub-Machine Guns, or Automatic Rifles and Defining the Same . . . , ch. 178, §§ 1-2.

§ 1. The term "machine gun, sub-machine gun or automatic rifle" as used in this act shall be construed to mean a weapon mechanism or instrument not requiring the trigger be pressed for each shot and having a reservoir, belt or other means of storing and carrying ammunition which can be loaded into the said weapon, mechanism or instrument and fired therefrom at a rate of five or more shots to the second. § 2. Any person who shall sell, give, loan, furnish or deliver any machine gun, sub-machine gun, automatic rifle of a caliber larger than twenty-two, or a bomb loaded with explosives or poisonous or dangerous gases to another person, or any person who shall purchase, have or possess any machine gun, sub-machine gun, automatic rifle, or a caliber larger than twenty-two or a bomb loaded with explosives or poisonous or dangerous gases, shall be guilty of a felony and shall be punished by imprisonment in the state penitentiary not to exceed ten years, or by a fine of not more than three thousand dollars, or both. Provided, that the provisions of this act shall not apply to any person who has procured and possesses a license to purchase, sell, have or possess a machine gun, sub-machine gun, automatic rifle, of a caliber larger than twenty-two, or bomb loaded with explosives or poisonous or dangerous gases, as hereinafter provided for, nor to the authorized agents and servants of such licensee or to the officers and members of any duly authorized military organization, nor to the officers and members of the police force of any municipality, nor to any Sheriff, deputy sheriff, nor any other officer having police powers under the laws of the State.

## OHIO

The Act of Incorporation, and the Ordinances and Regulations of the Town of Marietta, Washington County, Ohio Page 17-18, Image 17-18 (1837) available at The Making of Modern Law: Primary Sources. 1823
[Ordinances of Marietta, Ohio; An Ordinance For Preventing the Wanton Use of Fire Arms, Etc., § 1. Be it ordained by the Town of Marietta, in Town meeting legally assembled, and by the authority thereof it is ordained and enacted , That if any person, after this ordinance takes effect, shall discharge or explode, or aid or assist in discharging or exploding any gun powder, from guns, fire arms, or by any other means, within the limits of the town plot of Marietta, where by the quiet of any of the inhabitants may be disturbed, or their lives and safety endangered (unless such firing shall by authorized by permission in writing from the town council then in office, or by the command of some military officer in discharge of his duty as such,) the person so offending may be complained of before any justice of the peace for the town and upon conviction, shall be fined by such justice not than less one dollar (sic), nor more than five dollars for the first offence, and for the second and all subsequent offences against this ordinance, such person shall be fined not less than five, nor more than ten dollars, and pay all costs, to be collected as other penalties by law are. . .

An Act Incorporating the City of Cincinnati: And a Digest of the Ordinances of Said City, of a General Nature, Now in Force, with an Appendix Page 57-58, Image 58-59 (1835) available at The Making of Modern Law: Primary Sources. 1835
Ordinances of the City of Cincinnati, An Ordinance to Regulate the Keeping of Gunpowder, § 1. Be it ordained by the City Council of the City of Cincinnati, That no person or persons in the city of Cincinnati, shall keep, have, or possess, in any house, warehouse, shop, shed, or other building, nor in any street, side walk, lane, alley, passage, way, or yard, nor in any cellar, wagon, cary, or carriage, of any kind whatever; nor in any other place, within said city, Gun Powder, in any way or manner, other than as provided for by this ordinance; nor in any quantity exceeding twenty-five pounds, to be divided into six equal parts. § 2. Be it further ordained, That it shall not be lawful for any person or persons to sell gun powder by retail within said city, without having first obtained a license from the city council for that purpose; and every person obtaining a grant for a license to sell gun powder, shall receive a certificate of such grant from the city clerk, and pay into the city treasury, a sum not exceeding one hundred dollars, nor less than ten dollars; besides fifty cents to the Mayor for issuing the same; Provided that license be granted to not more than four persons in any one ward, and so that they be separated from each other, by at least two entire blocks or squares; and all applications for such license, shall be in writing, stating the situation where such gunpowder is to be kept. § 3. Be it further ordained, That every person who obtains a license as aforesaid to retail gun powder, shall keep the same in tin canisters, well secured with good and sufficient covers; and shall place on the store or building containing the same, a sign with the words, LICENSED TO SELL GUN POWDER, Provided that nothing in this ordinance shall be so construed to prevent any person from carrying gun powder through the streets in its exportation, or to some place of deposit, without the limits of the corporation, if the same be put up in tight and well secured kegs or vessels. § 4. Be it further ordained, That it shall be the duty of the city marshal and his deputies, and any of the fire

wardens, on any day, (Sundays excepted) between sun rising and setting, to enter into any house or building, or any other place within said city, where gun powder is kept or suspected to be kept, and examine the premises, and if they or either of them shall find any gun powder, contrary to the provisions of this ordinance, they or either of them shall seize such powder, together with the vessel containing the same, in the name of the city of Cincinnati; and the officer making such seizure, if he be other than the marshal, shall forthwith report such seizure to the marshal, who shall immediately take charge of the gun powder so seized, as if in case of seizure by himself; and in either case he shall immediately take charge of the gun powder so seized; to be conveyed to some safe place of deposit without the limits of the city. And the marshal shall, moreover, forthwith report such seizure to the mayor, with the name of the person in whose possession such gun powder was seized, or with the name of the owner, if his name be known, whereupon the mayor shall issue a citation against the owner, if known and within his jurisdiction, and if not, then against the person whose possession such gunpowder was seized, citing the defendant to appear on a day to be named in such citation, and show cause, if any he have, why the gun powder so seized should not be forfeited to the city, and a fine imposed agreeably to the provisions of this ordinance; upon which citation proceedings shall be had as in other cases upon the city ordinances, and if a final judgment of forfeiture be pronounced against the gun powder so seized, the marshal shall proceed to sell and dispose of the same for the benefit of said city, after having given three days notice of such sale, by advertisement in at least three public places in the city, and at one of the market houses on market day, to the highest bidder; and the net proceeds thereof shall be credited on the execution against the person fined for keeping the same contrary to the provisions of this ordinance: Provided, that, of any lot of powder seized according to the provisions of this ordinance, not more shall be sold by the marshal than will pay the fine and costs of suit and expense attending the seizure.

George W. Malambre, Laws and General Ordinances of the City of Dayton, Containing the Laws of the State upon Municipal Government; All the General Ordinances in Force August 30th, 1855; a List of the Officers of the City under the New Act of Incorporation, Together with the Amount of Taxes Levied in Each Year for General and Special Purposes, since 1851, and the Total Amount in Each Year, of Property Subject to Taxation Page 214, Image 219 (1855) available at The Making of Modern Law: Primary Sources. 1855
Ordinances of the City of Dayton. Offenses. § 38. Sec. XXXIX. If any person, or persons, shall fire any cannon, gun, or other firearms, within the bounds of the building lots, or cemetery ground in this city, or within one hundred yards of any public road, within this corporation, except by permission of council, and except in proper situations for firing salutes, or by command of a military officer in performance of military duty, every person, so offending, on conviction thereof, shall pay a fine not exceeding ten dollars, and costs.

W. H. Gaylord, Standing Rules of Order of the Cleveland City Council: With a Catalogue of the Mayors and Councils of the City of Cleveland, from Its Organization, April, 1836, to April, 1871, and Officers of the City Government for 1872 Page 101, Image 124 (1872) available at The Making of Modern Law: Primary Sources. 1856
[Ordinances of the City of Cleveland,] An Ordinance to Prevent the Firing of Guns and Fire-works, § 1. Be it ordained by the City Council of the City of Cleveland, That no person shall fire any cannon, gun, rifle, pistol, or fire-arms of any kind, or fire or explode any squib, rocket, cracker, Roman candle, or other combustible fire-works within the city. § 2. This ordinance shall

not apply to any military company, when drilling under command of any officer thereof, or to the use of fire-arms in the lawful defense of the person, family or property of any person, or to the killing of any dog whose owner or possessor has not complied with the provisions of the ordinance relating to dogs. § 3. The board of city improvements may, at its discretion, give permission to any person or persons to discharge fire-arms or fire-works on the fourth day of July; such permission may be given through any public paper of the city, or otherwise. § 4. That any person violating any provision of this ordinance shall, on conviction thereof, be fined in any sum not exceeding twenty dollars.

1878 Ohio Laws 199, An Act to Amend, Revise, and Consolidate the Statutes Relating to Municipal Corporations, to Be Known as Title Twelve, Part One, of the Act to Revise and Consolidate the General Statutes of Ohio, div. 3, ch. 3, § 1, pt. 14.
To regulate the transportation and keeping of gunpowder, and other explosive and dangerous combustibles, and to provide or license magazines for the same.

M. Augustus Daugherty, Supplement to the Revised Statutes of the State of Ohio Containing All the Statutes Amendatory of or Supplementary to the Revised Statutes, Together with the Miscellaneous Acts, General or Permanent in Their Nature, In Force January 1, 1884. 3d ed. Edited by James M. Williams Page 633, Image 641 (1884) available at The Making of Modern Law: Primary Sources. 1884
Licenses, § 24. All vendors of gunpowder shall pay a license fee of fifteen (15) dollars per annum. All keepers or owners of gunpowder magazines shall pay a license fee of one hundred (100) dollars per annum.

1889 Ohio Laws 164, An Act to Amend Section 2669 of the Revised Statutes, as Amended April 22, 1885, § 1.
The council of the city or village may provide by ordinance for licensing all exhibiters of shows or performances of any kind, not prohibited by law, hawkers, peddlers, auctioneers of horses and other animals on the highways or public grounds of the corporation, venders [sic] of gun powder and other explosives, taverns and houses of public entertainment, and hucksters in the public streets or markets, and in granting such license, may extract and receive such sum of money as it may think reasonable[.]

1900 Ohio Laws 730, An Act to Provide a License on Trades, Business and Professions Carried on . . . , §§24-25.
§ 24. All keepers or owners of gun powder magazines shall pay a license fee of one hundred dollars ($100) per annum, and shall notify the chief of the fire department, in writing, of the place where the same is kept or stored; but no license shall be issued under this section without the consent of the mayor. § 25. All keepers of shooting galleries shall pay a license fee of fifty dollars ($50) per annum, or for a less period of one year at a rate of ten dollars ($10) per month, no license to be issued for a less period than one month.

1902 Ohio Laws 23, Extraordinary Sess.,  An Act to Provide for the Organization of Cities and Incorporated Villages . . . and to Repeal All Sections of the Revised Statutes Inconsistent Herewith, § 7, pt. 11.

To regulate the transportation, keeping and sale of gunpowder and other explosives or dangerous combustibles and materials and to provide or license magazines for the same.

1933 Ohio Laws 189-90, Reg. Sess., An Act. . . Relative to the Sale and Possession of Machine Guns, § 1.

That § 12819 of the General Code be supplemented . . . to read as follows:  Definitions. § 12819-3. For the purpose of this act, a machine gun, a light machine gun or a sub-machine gun shall be defined as any firearm which shoots automatically, or any firearm which shoots more than eighteen shots semi-automatically without reloading. Automatically as above used means that class of firearms which, while the trigger on the firearm is held back continues to fire successive shots. Semi-automatically means that class of firearm which discharges one shot only each time the trigger is pulled, no manual reloading operation being necessary between shots. Machine gun permit; application; bond or applicant; exceptions. § 12819-4. No person shall own, possess, transport, have custody of or use a machine gun, light machine gun or sub-machine gun, unless he first procures a permit therefor from and at the direction of the adjutant general of Ohio, who shall keep a complete record of each permit so issued. A separate permit shall be obtained for each gun so owned, possessed or used. The adjutant general shall require each applicant for such permit to give an accurate description of such weapon, the name of the person from whom it was or is to be obtained, the name of the person or persons to have custody thereof and the place of residence of the applicant and custodian. Before obtaining such permit each applicant shall give bond to the state of Ohio, to be approved by the adjutant general in the sum of five thousand dollars, conditioned to save the public harmless by reason of any unlawful use of such weapon while under the control of such applicant or under the control of another with his consent; and any person injured by such improper use may have recourse on said bond. Provided, however, that this section shall not affect the right of the national guard of Ohio, sheriffs, regularly appointed police officers of incorporated cities and villages, regularly elected constables, wardens and guards of penitentiaries, jails, prisons, penal institutions or financial institutions maintaining their own police force and such special officers as are now or may be hereafter authorized by law to possess and use such weapons when on duty.  Any person who owns, possesses or has custody of a machine gun, light machine gun or sub-machine gun at the time when this section shall become effective, shall have thirty days thereafter in which to comply with the provisions of this section. Penalty for possession, transportation, etc., without permit. § 12819-5. Whoever owns, possesses, transports or has custody of or uses a machine gun, light machine gun or sub-machine gun without a permit, as provided by section 12819-4 of the General Code, or whoever having such permit, uses or consents to the use by another of such weapon in an unlawful manner, shall be guilty of a felony and upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than ten years. [War trophies excepted].

## OKLAHOMA

General Laws Relating to Incorporated Towns of Indian Territory Page 43, Image 39 (1890) available at The Making of Modern Law: Primary Sources. 1890
Revised Ordinances of the Town of Checotah, [An Ordinance Requiring Persons Engaged in Certain Businesses or Avocations to Procure a License for so Doing and Providing of Penalty for Failure so to do, § 1. That the licenses hereinafter named shall be fixed, imposed and collected at

80

the following rates and sums, and it shall be unlawful for any person or persons to exercise or pursue any of the following avocations or businesses within the corporate limits of Checotah without having first obtained a license therefor from the proper authority, having paid for the same in lawful money of the united States as hereinafter provided,] 29th. Pistol or shooting Gallery – For each and every pistol and shooting gallery, per month, five dollars.

## OREGON

Charter of the City of Portland, Street and Fire Department Laws, Ordinances, Regulations &C. Page 205-206, Image 206-207 (1872) available at The Making of Modern Law: Primary Sources. 1868
[Concerning Offences and Disorderly Conduct, § 2. That any person or persons who shall fire any pistol, gun or rifle, or any other species of fire-arms within the following limits: the Willamette river on the east and (10) Tenth Street on the west, Caruther's Addition on the south nd F Street on Couch's Addition on the north, shall on conviction thereof before the Recorder, be subject to a penalty of not less than five nor more than fifty dollars, or imprisonment, at the discretion of the Recorder, not exceeding twenty days. Provided that the Marshal shall permit upon the national holidays and other days of public celebration, any appropriate display of fire-arms and other instruments named in this section.]

Charter of the City of Portland, Street and Fire Department Laws, Ordinances, Regulations &C. Page 225-227, Image 226-228 (1872) available at The Making of Modern Law: Primary Sources. 1872
Ordinances of the City of Portland, To Regulate the Storage and Sale of Gunpowder, and Other Explosive Materials, § 1. No person shall keep for sale any gunpowder in any building, store or place in the City of Portland, without having first obtained a license therefor. § 2. The license for selling gunpowder shall be five dollars per quarter, to be issued as other licenses are issued under the provisions of Ordinance 984, entitled "An Ordinance to impose and regulate licenses in the City of Portland." § 3. No person shall receive, keep or store, or aid or assist any person in receiving, keeping or storing gunpowder in a larger quantity than five pounds, in or into any building, or upon any premises, unless the person receiving, keeping or storing the same is duly licensed to sell gunpowder. § 4. No person or persons duly authorized to sell gunpowder, as hereinbefore provided, shall keep, store, or have in any one place more than twenty five pounds of powder, which shall be kept in any air-tight metallic vessel marked with the word "Gunpowder," in plain Roman letters, not less than three inches in height, and of proportionate width, which vessel shall be placed or kept at all times, conspicuously in view near the entrance of the premises where kept, and convenient for removal therefrom. § 5. Upon the front of every building or premises where powder is kept in a conspicuous place a sign with the word "gunpowder" painted thereon in Roman letters, not less than three inches in height. § 6. No person shall convey, cause to be conveyed, or assist in conveying in any vehicle and gunpowder, unless the same shall be securely packed in close packages, nor unless such packages shall be securely covered while on the vehicle. § 7. No vessel shall be allowed to remain at any wharf more than twenty-four hours with gunpowder on board, except such as may be kept for ship's use, and if such vessel shall be at the wharf overnight, a watchman shall be kept on duty on board all night. All gunpowder landed or placed on a wharf, sidewalk, street or public way for forwarding or shipment shall be forwarded or shipped immediately after it shall be so landed or

81

placed. § 8. The provisions of this Ordinance shall be deemed to apply to "giant powder" "gun cotton" or any other explosive substance having an explosive power equal to that of ordinary gunpowder. § 9. Any person or persons violating any of the provisions of this ordinance, shall be deemed guilty of a misdemeanor, and on conviction before the Police Judge, shall be fined not less than ten nor more than one hundred dollars, or by imprisonment in the city jail not less than two nor more than twenty days, or both, at the discretion of the Police Judge. § 10. The officers of the Fire Department and Police are directed to see that the provisions of this Ordinance are enforced, and to make complaint before the Police Judge for the violation of its provisions.

J.C. Moreland, Charter and Ordinances of the City of Portland and Table of Grades: Together with the Rules of Order, Reports of officers, etc. Page 207, Image 212 (1879) available at The Making of Modern Law: Primary Sources. 1879
Ordinances [of the City of Portland], Concerning Offenses and Disorderly Conduct, § 2. The City of Portland does ordain as follows… That any person or persons who shall fire any pistol, gun or rifle, or any other species of fire-arms, within the corporate limits of the city, shall, on conviction thereof before the Police Court, be fined not less than five dollars nor more than fifty dollars: Provided, That all circumstances of necessity may be plead as a defense to the offense described in this section; and, provided further, that the Chief of Police may permit upon the national holidays and other days of public celebration any appropriate display of firearms named in this section.

The Charter of Oregon City, Oregon, Together with the Ordinances and Rules of Order Page 259, Image 261 (1898) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Oregon | 1898
An Ordinance Providing for the Punishment of Disorderly Persons, and Keepers and Owners of Disorderly Houses, § 2.
It shall be unlawful for any person to carry any sling shot, billy, dirk, pistol or any concealed deadly weapon or to discharge any firearms, air gun, sparrow gun, flipper or bean shooter within the corporate limits of the city, unless in self-defense, in protection of property or an officer in the discharge of his duty; provided, however, permission may be granted by the mayor to any person to carry a pistol or revolver when upon proper representation it appears to him necessary or prudent to grant such permission.

1913 Or. Laws 497
Section 1. It shall be unlawful for any person, firm or corporation to display for sale at retail any pocket pistol or revolver or to sell at retail, barter, give away or dispose of the same to any person whomsoever, excepting a policeman, member of the militia or peace officer of the State of Oregon, unless the purchaser or person attempting to procure the same shall have a permit for the purpose of procuring such pocket pistol or revolver signed by the municipal judge or city recorder of the city or county judge or a justice of the peace of the county wherein such person resides.
Section 2. Provided, that no judge, city recorder or justice of the peace shall issue such permit until said applicant has furnished him with an affidavit from at least two reputable freeholders as to the applicant's good moral character.
Section 3. All persons, firms or corporations engaged in the retail sale of pocket pistols or revolvers shall keep a record of the sale of such pocket pistols or revolvers by registering the

name of the person or persons and the number of the pocket pistol or revolver and shall transmit same to the sheriff of the county in which purchase is made on the 1st and 15th day of each calendar month.

1917 Or. Sess. Laws 804-808, An Act Prohibiting the manufacture, sale, possession, carrying, or use of any blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, dirk, dagger or stiletto, and regulating the carrying and sale of certain firearms, and defining the duties of certain executive officers, and providing penalties for violation of the provisions of this Act, § 9.

Section 1. No person shall carry in any city, town, or municipal corporation of this State any pistol, revolver or other firearm concealed upon his or her person, or of a size which may be concealed upon his or her person, without a license or permit therefor, issued to him or her by a chief of police or sheriff of such city, town or municipal corporation, or in such manner as may be prescribed by ordinance of such city, town or municipal corporation. This section, however, shall not apply to sheriffs and their deputies, constables, marshals, police officers or any other duly appointed peace officers, nor to any person or persons summoned by such officers to assist in making arrest or preserving the peace while said person or persons are engaged in assisting such officers; nor to duly authorized military organizations when parading, nor to members thereof when going to and from places of meeting of their respective organizations.

Section 3-A. Any person who violates the provisions of Section 1, Section 2, or Section 3 of this Act, shall be fined in a sum no greater than $100.00, or be imprisoned in the county jail for a term no longer than three months, or by both such fine and imprisonment.

Section 4. Any person who violates the provisions of Section 1, Section 2 or Section 3 of this Act, who theretofore has once been convicted of a violation of any of said sections, is guilty of a misdemeanor, and upon conviction thereof shall be imprisoned in a county jail or reformatory for not less than thirty days nor for more than one year.

Section 4-A. Any person who violates the provisions of Section 1, Section 2 or Section 3 of this Act, who theretofore has more than once been convicted of a violation of any of said sections, is guilty of a felony, and shall be punished by imprisonment in the State prison for a term not exceeding three years.

Section 4-B. Any person who violates any of the provisions of Section 1, Section 2 or Section 3 of this Act, who theretofore has been convicted of a felony, upon conviction thereof shall be imprisoned in the penitentiary of this State for a period not exceeding five years.

Section 4-C. For the purposes of this Act any pistol, revolver, or other firearm of a size which may be concealed upon his or her person shall be deemed a dangerous weapon.

Section 9. It shall be lawful for the sheriff of any county, chief of police, city or town marshal, or other head of the police department of any city, town or other municipal corporation of this State, upon proof before him that the person applying therefor is of good moral character, and that proper cause exists for the issuance thereof, to issue to such person a license for one year, to have and carry concealed a pistol, revolver or other firearm; provided, however, that no such license shall be issued to any person under the age of twenty-one years.

The person obtaining a permit to carry a concealed pistol or revolver shall pay to the officer issuing such permit the sum of One Dollar. Said license for carrying a concealed pistol or revolver is revocable at any time and must be immediately surrendered on demand. The license while in force entitles the holder to carry the said arm in any county in the State of Oregon.

1925 Or. Laws 468, 469-471

83

Section 5. Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm, as hereinafter provided in section 8 hereof. Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony. This section shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by section 2 hereof, from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen. Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of this section.

## PENNSYLVANIA

Charter To William Penn, And Laws Of The Province Of Pennsylvania, Passed Between The Years 1682 And 1700 Page 32, Image 37 (1879) available at The Making of Modern Law: Primary Sources. 1676
Laws of the Duke of York, Indians (1676). No person shall sell give or barter directly or indirectly any gun or guns powder, bullet, shot, lead nor any vessel of burthen, or row boat canoes only excepted without license first had and obtained under the Governor's hand and Seal, to any Indian whatsoever, nor to any person inhabiting out of this government nor shall amend or repair any gun belonging to any Indian, nor shall sell any armor or weapons, upon penalty of ten pounds for every gun, armor, weapons, vessel or boat, so sold given or bartered, five pounds for every pound of shot or lead and proportionally for any greater or lesser quantity.

Pennsylvania Archives. Selected And Arranged From Original Documents In The Office Of The Secretary Of The Commonwealth, Conformably To Acts Of The General Assembly, February 15, 1851, & March 1, 1852 Page 160, Image 162 (1852) available at The Making of Modern Law: Primary Sources. 1713
Pennsylvania Archives 1713, The Act for the Better Government of the City of Philadelphia (1713), This Act inflicts 5s penalty on persons riding a gallop and 10s for persons trotting, with Drays or their Teams in the streets, and 5th for suffering a Dog or a Bitch going at large; or firing a Gun without license, or if a Negro be found in any disorderly practices or other Misbehaviors may be whipped 21 lashes for any one offence or committed to prison, which words "other misbehaviors," are very uncertain and give very arbitrary power where the punishment is great. [(Summary of Statute from Archive compilation)].

Act of 26th August 1721. 1721
[An Act of 9th of February, 1750-51, § 1. If any person or persons whatsoever, within any county, town or within any other town or borough in this province, already built and settled, or hereafter to be built and settled , not hitherto restricted nor provided for by our laws, shall set on fire their chimneys to cleanse them, or shall suffer them or any of them to take fire, and blaze out at the top, or shall fire any gun or other fire arm, or shall make or cause to be made, or sell or

utter, or offer to expose to sale, and squibs, rockets, or other fire works, shall cast, throw or fire any squibs, rockets, or other fire works within any of the said towns or boroughs without the governor's special license for the same, every such person or persons so offending shall be subject to the like penalties and forfeitures, and be recovered in like manner, as in and by an act, passed in the eighth year of the reign of king George the first, entitled 'An act for preventing accidents that may happen by fire are directed to be levied and recovered.]

John C. Lowber, Ordinances of the Corporation of the City of Philadelphia; to Which are Prefixed, the Original Charter, the Act of Incorporation, and Other Acts of Assembly Relating to the City; with an Appendix, Containing the Regulation of the Bank of the River Delaware, the Portraiture of the City, as Originally Laid Out by the Proprietor, &c. &c. Page 15-16, Image 18-19 (1812) available at The Making of Modern Law: Primary Sources. 1721
[An Act for Preventing Accidents that may Happen by Fire, § IV. And whereas much mischief may happen by shooting of guns, throwing casting and firing of squibs, serpents, rockets, and other fire-works, within the city of Philadelphia, if not speedily prevented: Be it therefore enacted, That if any person or persons, of what sex, age, degree or quality soever, from and after publication hereof, shall fire any gun or other fire-arms, or shall make, or cause to be made, or sell or utter, or offer to expose to sale, any squibs, rockets or other fire works, or shall cast, throw or or fire, any squibs, rockets, or other fire works, within the city of Philadelphia, without the governor's special license for the same, of which license due notice shall first be given to the mayor of the said city, such person or persons so offending, and being thereof convicted before any one justice of the peace of the said city, either by confession of the party so offending, or by the view of any of the said justices, or by the oath or affirmation of one or more witnesses, shall for every such offence forfeit and pay the sum of five shillings; one half to the use of the poor of the said city, and the other half to the use of him or them who shall prosecute, and cause such offender to be as aforesaid convicted; which forfeitures shall be levied by distress and sale of the offenders goods as aforesaid; and for want of such distress, if the offender refuse to pay the said forfeiture, he shall be committed to prison, for every such offence the space of two days without bail or main-prize; Provided, that such conviction be made within ten days after such offence committed [ and if such offender be a negro or Indian slave, he shall instead of imprisonment be publically whipped, at the discretion of the magistrate.]

1750 Pa. Laws 208, An Act For The More Effectual Preventing Accidents Which May Happen By Fire, And For Suppressing Idleness, Drunkenness, And Other Debaucheries
That if any persons or persons whatsoever, within any county town, or within any other town or borough, in this province, already built and settled, or hereafter to be built and settled . .. shall fire any gun or other fire-arm, or shall make or cause to be made, or sell or utter, or offer or expose for sale, any squibs, rockets or other fire-works, … within any of the said towns or boroughs without the Governor's special license for the same, every such person or persons, so offending shall be subject to the like penalties and forfeitures, and to be recovered in like manner, as in and by an act, passed in the eighth year of the reign of King George the first, entitled, An act for preventing accidents that may happen by fire, are directed to be levied and recovered.

Ordinances of the Corporation of the District of Southwark and the Acts of Assembly Relating Thereto Page 49, Image 47 (1829) available at The Making of Modern Law: Primary Sources. 1750

[Ordinances of the District of Southwark,] An Act for the More Effectual Preventing [of] Accidents, etc. § 1. Be it enacted, That if any person shall fire any gun or other fire-arm, or shall make, or cause to be made, or sell or utter, or offer to expose to sale, any squibs, rockets or other fire-works, or shall cast, throw or fire any squibs, rockets or other fire-works, within any of the said towns or boroughs, without the Governor's special license for the same, every such person or persons, so offending, shall be subject to the like penalties and forfeitures, and to be recovered in like manner, as in and by an act, passed in the eighth year of the reign of King George the first, entitled, " An Act for Preventing Accidents, Etc

1763 Pa. Laws 319, An Act to Prohibit the Selling of Guns, Gunpowder or Other Warlike Stores to the Indians, § 1.

If any person or persons whatsoever shall directly or indirectly give to, sell barter or exchange with any Indian or Indians whatsoever any guns, gunpowder, shot, bullets, lead or other warlike stores without license . . . every such person or persons so offending, being thereof legally convicted . . . shall forfeit and pay the sum of five hundred pounds . . . and shall be whipped with thirty-nine lashes on his bare back, well laid on, and be committed to the common gaol(jail) of the county, there to remain twelve months without bail or mainprise.

An Act of Incorporation for that Part of the Northern Liberties, Lying between the Middle of Sixth Street and the River Delaware, and between Vine Street and Cohocksink Creek, with Ordinances for the Improvement of the Same Page 51, Image 52 (1824) available at The Making of Modern Law: Primary Sources. 1824

[An Ordinance for the Suppression of Nuisance, and for the regulation of drivers of carriages and horses, in and through the streets, lanes and alleys, within the incorporated part of the township of the Northern Liberties, and for enforcing useful regulations therein.] § 8. And be it further ordained and enacted by the authority aforesaid, That no person or persons shall fire, or discharge any cannon, or piece of artillery, or small arms, or prove any pistol, gun, musket barrels, or cannon, or illuminate, or cause to be illuminated, any house within the regulated parts, incorporated as aforesaid, in said township, without permission from the president of the board of commissioners, under the penalty of forfeiting and paying for every piece of cannon or other artillery, or small arms, or pistol, gun, or musket barrel so fired, or house so illuminated, the sum of two dollars.

1903 Pa. Laws 178, An Act Requiring non-resident hunters, and unnaturalized, foreign born, resident-hunters, to procure a license before hunting in the Commonwealth … §§1 and 2

§ 1. . . . every non-resident and every unnaturalized foreign-born resident of this Commonwealth shall be required to take out a license from the treasurer of the county in which he proposes to hunt. . . § 2. Possession of a gun, in the fields or in the forests or on the waters of this Commonwealth, by an unnaturalized, foreign-born resident or a non-resident of this Commonwealth, without having first secured the license required by this act, shall be prima facie evidence of a violation of its provisions; and any person so offending shall be liable to a penalty of twenty-five dollars for each offense. . .

1929 Pa. Laws 777, An Act prohibiting the sale, giving away, transfer, purchasing, owning, possession and use of machine guns: §§1 and 2

§ 1. Be it enacted, etc., That the term "machine gun" as used in this act, shall mean any firearm that fires two or more shots consecutively at a single function of the trigger or firing device. § 2. It shall be unlawful for any person, copartnership, association or corporation to sell, or give, or transfer, any machine gun to any person, copartnership, association or corporation within this Commonwealth; and it shall be unlawful for any person, copartnership, association, or corporation to purchase, own or have in possession any machine gun. Any person violating any of the provisions of this section shall be guilty of a felony, and, on conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars, and undergo imprisonment by separate or solitary confinement at labor not exceeding five years. § 3. Any person who shall commit, or attempt to commit, any crime within this Commonwealth, when armed with a machine gun, shall, upon conviction of such crime or attempt to commit such crime, in addition to the punishment for the crime for which he has been convicted, be sentenced to separate and solitary confinement at labor for a term not exceeding ten years. Such additional penalty of imprisonment shall commence upon the expiration or termination of the sentence imposed for the crime of which he stands convicted, and shall not run concurrently with such sentence. § 4. Nothing contained in this act shall prohibit the manufacture for, and sale of, machine guns to the military forces of the United States, or of the Commonwealth of Pennsylvania, or to any police department of this Commonwealth, or of any political subdivision thereof, nor to the purchase or possession of machine guns by such governments and departments; and nothing contained in this act shall prohibit any organization, branch, camp or post of veterans, or any veteran of any war in which the United States was engaged, from owning and possessing a machine gun as a relic, if a permit for such ownership or possession has been obtained from the sheriff of the county, which permit is at all times attached to such machine gun. The sheriffs of the several counties are hereby authorized, upon application and the payment of a fee of one dollar, to issue permits for the ownership and possession of machine guns by veteran and organizations, branches, camps or posts of veterans and organizations, branches, camps or posts of veterans, upon production to the sheriff of such evidence as he may require that the organization, branch, camp or post is a bona fide organization of veterans, or that any such veteran applicant is a veteran of good moral character and reputation, and that the ownership and possession of such machine gun is actually desired as a relic.

1931 PA. Laws 498, No. 158
Sec. 4. No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control.
Sec. 5. No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided.

## RHODE ISLAND

The Charter and Ordinances of the City of Providence, Together with the Acts of the General Assembly Relating to the City Page 89-96, Image 89-96 (1854) Available at The Making of Modern Law: Primary Sources. 1821

An Act Regulating the Storage, Safe Keeping and Transportation of Gunpowder in the Town of Providence, (1821) § 2. And be it further enacted, That is shall not be lawful for any person or persons to sell any gunpowder which may at the time be within the town of Providence in any quantity, by wholesale or retail, without first having obtained from the town council of said town a license to sell gunpowder; and every such license shall be written or printed, and signed by the president of said council or their clerk, on a paper upon which shall be written or printed a copy of this act; and every such license shall be in force for one year from the date thereof, unless annulled by said council, and no longer; but such license may, prior to the expiration of that time, be renewed, by endorsement thereon, for a further term of one year, and so from year to year: provided, always, that the said town council may annul any such license, if in their opinion the person or persons licensed have forfeited the right of using the same by any violation of the law relative thereto; and every person who shall receive a license as aforesaid shall pay therefor the sum of five dollars, and on having the same renewed shall pay therefor the sum of one dollar, which shall be paid to the clerk of said council, for their use, for the purpose of defraying the expense of carrying this act into execution. § 3. And be it further enacted, That any person or persons who shall keep, have, possess or transport any gunpowder within the town of Providence, contrary to the provisions of this act, or who shall sell any gunpowder therein, without having a license therefor, then in force, shall forfeit and pay a fine of not less than twenty dollars, and not exceeding five hundred dollars, for each and every offence; and if any gunpowder kept contrary to the provisions of this act shall explode in any shop, store, dwelling-house, ware-house or other building, or in any place in said town, the occupant, tenant or owner of which has not a license in force to keep and sell gunpowder therein, or which gunpowder shall have been kept in a manner contrary to the terms and conditions of such license, such occupant tenant or owner shall forfeit and pay a fine of not less than twenty dollars nor more than five hundred dollars. . . § 6. And be it further enacted, That the said firewards, or any of them, may enter the store or place of any person or persons licensed to sell gunpowder, to examine and ascertain whether the laws relating thereto are strictly observed; and also whenever there may be an alarm or fire; and in such last case may cause the powder there deposited to be removed to a place of safety, or to be destroyed by wetting or otherwise, as the exigency of the case may require; and it shall be lawful for any one or more of the firewards aforesaid to enter any dwelling house, store, building or other place in said town to search for gunpowder which they may have reason to suspect to be concealed or unlawfully kept therein; first having obtained from some justice of the peace of said town a search warrant therefor; which warrant any one of the justices of said town is hereby respectively authorized to issue, upon the complaint of such fireward or firewards, supported by his or their oath or affirmation. . . And be it further enacted, That all persons who wish have a license to keep and sell gunpowder within the town shall make application to the town council in writing, stating the place of business and whether they wish to sell by wholesale or retail, or both; and to each person or firm who may be approbated, a certificate of license shall be granted, on payment of the fee established by law. § 14. And be it further enacted, That every person or firm who may be licensed to sell gunpowder by retail, shall be allowed to keep in the place or building designated in the license, twenty-five pounds of gunpowder, and no more, at one time, which shall always be kept in tin or copper canisters, capable of containing no more than twelve and a half pounds each with a small aperture at the top, and a tin or copper cover thereto. § 15. And be it further enacted, That every person or firm who may be licensed to sell gunpowder by wholesale, shall provide and keep a tine or copper chest, with two handles and a tight cover, furnished with a hinge, and secured with a padlock, all

of tin or copper chest, with two handles and a tight cover furnished with a hinge and secured padlock, all of tin or copper; such chest shall always be kept on the lower floor, on the right side of and close to the principal door or entrance from the street into the building so licensed, except when otherwise designated by the council and shall always be kept locked, except when powder is put in or taken out; and such person or firm, so licensed shall be allowed to deposit and keep, in such tin or copper chest, a quantity of gunpowder not exceeding four casks of twenty-five pounds each; the heads of each cask not to be opened, and each cask to be kept in a strong leather bag, closely tied and marked as aforesaid. § 16. And be it further enacted, that every person or firm licensed to keep and sell gunpowder as aforesaid, by wholesale or retail, shall have and keep a signboard placed over the door or building in which such powder is kept, on which shall be painted in Roman capitals the words "Licensed to sell Gunpowder"

1902 R.I. Pub. Laws 67, An Act in addition to chapter 40 of the General Laws, Entitled "Of the Town Council": § 1.
Town councils and city councils may from time to time make and ordain all ordinances and regulations for their respective towns, not repugnant to law, which they may deem necessary for the safety of their inhabitants from the manufacture, storage, keeping, having in possession, transportation, sale, or use of gunpowder, gun-cotton, dynamite, nitro-glycerine, nitro-gelatine, lyddite, chlorate of potash, picric acid, sodium calcium carbide, acetylene gas, gasoline gas, and any and all other explosives and explosive chemicals; and may prohibit the manufacture, storage, keeping having in possession, transportation , sale , or use by any and all persons or persons of any or all said substances and gases in their respective towns, unless a license for the same shall be first obtained from the town council or board of aldermen, which license shall be for the term of one years from the date thereof unless sooner revoked by order of said town council or board of aldermen. Any person violating any provision of any such ordinance or regulation, or any such prohibition, shall be fined not less than twenty dollars nor more than one hundred dollars for each such offense.

1907 R.I. Pub. Laws 66, An Act for the Protection of Deer
§ 1. It shall be unlawful to pursue or shoot deer in this state except in accordance with the provisions of this act. § 2. Any person owning or occupying any farm or orchard and any person in his employ may, while on his own premises or the premises of his employer, kill any deer which shall be found destroying any crops, vegatables, or fruit trees belonging to such person or his employer: Provided, however, that no such person shall shoot any deer unless he has obtained from the secretary of state a permit so to do; and the secretary of state shall, upon application, issue to any responsible land owner, or his employees, a permit authorizing such person to shoot deer in accordance with the provisions of this section. No person shall pursue or shoot any deer except with a shot gun, or employ any missile larger than buck shot. § 3. Any person violating the provisions of this act shall be fined not less than one hundred dollars nor more than five hundred dollars for each offence.

1927 (January Session) R.I. Pub. Laws 256, An Act to Regulate the Possession of Firearms: § § 1, 4, 5 and 6
§ 1. When used in this act the following words and phrases shall be construed as follows: "Pistol" shall include any pistol or revolver, and any shot gun, rifle or similar weapon with overall less than twenty-six inches, but shall not include any pistol without a magazine or any

pistol or revolver designed for the use of blank cartridges only. "machine gun" shall include any weapon which shoots automatically and any weapon which shoots more than twelve shots semi-automatically without reloading. "Firearm shall include any machine gun or pistol. . . "Crime of violence" shall mean and include any of the following crimes or any attempt to commit any of the same, viz.: murder, manslaughter, rape, mayhem, assault or battery involving grave bodily injury, robbery, burglary, and breaking and entering. "Sell" shall include let or hire, give, lend and transfer, and the word "purchase" shall include hire, accept and borrow, and the expression "purchasing" shall be construed accordingly.

§ 2. If any person shall commit or attempt to commit a crime of violence when armed with or having available any firearm, he may in addition to the punishment provided for such crime of violence be punished as provided in this act. In the trial of a person for committing or attempting to commit a crime of violence the fact that he was armed with or had available a pistol without license to carry the same, or was armed with or had available a machine gun, shall be prima facie evidence of his intention to commit said crime of violence.

§ 4. No person shall, without a license therefor, issued as provided in section six hereof, carry a pistol in any vehicle or concealed on or about his person, except in his dwelling house or place of business or on land possessed by him, and no person shall manufacture, sell, purchase or possess a machine gun except as otherwise provided in this act. § 5. The provisions of section four shall not apply to sheriffs, deputy sheriffs, the superintendent and members of the state police, prison or jail wardens or their deputies, members of the city or town police force or other duly appointed law enforcement officers, nor to members of the army, navy or marine corps of the United States, or of the national guard, when on duty, or of organizations by law authorized to purchase or receive firearms from the United States or this state, nor to officers or employees of the United States authorized by law to carry a concealed firearm, nor to duly authorized military organizations when on duty, nor to members thereof when at or going to or from their customary places of assembly, nor to the regular and ordinary transportation of pistols as merchandise, nor to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business, or in moving goods from one place or abode or business to another. § 6. The licensing authorities of any city or town shall upon application of any person having a bona fide residence or place of business within such city or town, or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the authorities of any other state or subdivision of the United States, issue a license to such person to carry concealed upon his person a pistol within this state for not more than one years from date of issue, if it appears the applicant has good reason to fear an injury to his person or property or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the attorney-general and shall bear the fingerpring, name, address, description and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent to the attorney-general and the triplicate shall be preserved for six years by the licensing authorities issuing said license. A fee of two dollars may be charged and shall be paid for each license, to the officer issuing the same. Before issuing any such permit the applicant for the same shall be required to give bond to the city or town treasurer in the penal sum of three hundred dollars, with surety satisfactory to the authority issuing such permit, to keep the peace and be of good behavior. Every such permit shall be valid for one year from the date when issued unless sooner revoked. The fee charged for the issuing of such license or

permit shall be applied in accordance with the provisions of section thirty-three of chapter 401 of the general laws.

§ 7. The attorney-general may issue a permit to any banking institution doing business in this state or to any public carrier who is engaged in the business of transporting mail, money, securities or other valuables, to possess and use machine guns under such regulations as the attorney general may prescribe.

§ 8. It shall be unlawful within this state to manufacture, sell, purchase or possess except for military or police purposes, any muffler, silencer or device for deadening or muffling the sound of a firearm when discharged.

## SOUTH CAROLINA

1731-43 S.C. Acts 168, § 23.  1740

It shall not be lawful for any slave, unless in the presence of some white person, to carry or make use of firearms or any offensive weapon whatsoever, unless such negro or slave shall have a ticket or license in writing from his master, mistress or overseer, to hunt and kill game, cattle, or mischievous birds or beasts of prey, and that such license be renewed once every month, or unless there be some white person of the age of 16 or upwards, in the company of such slave when he is hunting or shooting; or that such slave be actually carrying his masters arms to or from his masters plantation, by a special ticket, for that purpose, or unless such slave be found in the day time actually keeping off rice birds, or other birds within the plantation to which such slave belongs, lodging the same gun at night within the dwelling house of his master, mistress or white overseer. And provided also that no negro or other slave shall have liberty to carry any guns, cutlass, pistol or other weapon abroad form at any time between Saturday evening after sunset and Monday morning before sunrise notwithstanding a license or ticket for so doing. And in case any person shall find any slave using or carrying fire-arms, or other offensive weapons, contrary to the true intention of this act; every such person may lawfully seize and take away such fire-arms or offensive weapons; but before the property of such goods shall be vested in the person who shall seize the same, such person shall, within 48 hours next after such seizure, go before the next justice of the peace, and shall make oath of the manner of the taking; and if such justice of the peace after such oath shall be made, or upon any other examination, he shall be satisfied, that the said fire-arms or other offensive weapons, shall have been seized according to the directions and agreeable to the true intent and meaning of this act, the said justice shall, by certificate under his hand and seal, declare them forfeited, and that the property is lawfully vested in the person who seized the same. Provided that no such certificate shall be granted by any justice of the peace until the owner or owners of such fire-arms or other offenisve weapons so to be seized as aforesaid, or the overseer or overseers who shall or may have the charge of such slave or slaves from, whom such fire-arms or other offensive weapons shall be taken or seized shall be duly summoned, to show cause (if any such they have) why the same should not be condemned as forfeited; or until 48 hours after the service of such summons and oath made of the service thereof before the said justice.

Alexander Edwards, Ordinances of the City Council of Charleston, in the State of South-Carolina, Passed since the Incorporation of the City, Collected and Revised Pursuant to a Resolution of the Council Page 289, Image 299 (1802) available at The Making of Modern Law: Primary Sources. 1802

[Ordinances of the City of Charleston, An Ordinance for Appointing Commissioners of the Streets, Defining their Powers, and for other Purposes therein Mentioned, § 8. And be it further ordained by the authority aforesaid, That no person or persons, shall fire any squibs, crackers, or other fireworks, except at times of public rejoicing, and at such places as the intendant for the time being may permit, by license under his hand; nor burn any chips, shavings, or other combustible matters, in any of the streets, lanes, wharves, alleys, or open or enclosed lots of the city, nor fire any gun, pistol, or fire arms, within the limits of the city, except on occasion of some military parade, and then by the order of some officer having the command, under the penalty of ten dollars, for every such offense; nor shall any person or persons, raise or fly any paper or other kite, within the said city, under the said penalty of ten dollars.]

John E. Breazeale, The Revised Statutes of South Carolina, Containing the Code of Civil Procedure, and the Criminal Statutes. Also The Constitutions of the United States and of the State, and the Rules of the Supreme and of the Circuit Courts of the State Page 431, Image 529 (Vol. 2, 1894) available at The Making of Modern Law: Primary Sources. 1890
Chapter XXVIII Violations of the License Laws by Insurance and Other Companies, Emigrant Agents, owners or shows, etc., Persons Selling Pistols, etc. §490. No person or corporation within the limits of this State shall sell or offer for sale any pistol, rifle, cartridge or pistol cartridge less than .45 caliber, or metal knuckles, without first obtaining a license from the county in which such person or corporation is doing business so to do. The County Board of Commissioners of the several Counties of this State are authorized to issue licenses in their respective Counties for the sale of pistols and pistol and rifle cartridges of less than .45 caliber, and metal knuckles, upon the payment to the County Treasurer by the person or corporation so applying for said license of the sum of twenty-five dollars annually; and any person who shall sell or offer for sale any pistol, or pistol or rifle cartridge of less than .45 caliber, or metal knuckles, without having obtained the license provided in this Section shall be deemed guilty of a misdemeanor, and on conviction shall be punished by a fine not exceeding five hundred dollars, or by imprisonment not exceeding one year, or both, at the discretion of the court.

1893 S.C. Acts 426, An Act To Amend An Act Entitled "An Act To Provide For A License For The Sale Of Pistols Or Pistol Cartridges Within The Limits Of This State", § 2
. . . That the County Commissioners of the Several Counties of the State be, and they are herby, authorized to issue licenses in their respective Counties for the sale of pistols and pistol cartridges upon the payment to County Treasurer by the person or corporation so applying for said licenses of the sum of twenty-five dollars annually.

1923 S.C. Acts 19-20, License Tax on Ammunition — Candy — Admissions — Regulations to have force of law.
That every person, firm or corporation doing business within the State of South Carolina and engaging in the business of selling at retail or in any individual instance selling to the final consumer, such articles as are named in this section, for the privilege of carrying on such business, shall be subject to the payment of a license tax which shall be measured by and graduated in accordance with the volume of sales of such person, firm or corporation as follows: (a) There shall be levied, assessed, collected and paid upon all ammunition, including shells for shotguns and cartridges for rifles, pistols, revolvers, automatic pistols, rifles and machine guns, and upon such shells and cartridges partially prepared for use but lacking powder or shot or other

92

necessary constituent, and upon blank shells and cartridges (but not upon powder or shot or caps not prepared and not in form to use in modern firearms), when sold at retail or to the ultimate consumer, the following: Upon all shotgun or other shells, two ($2.00) dollars per thousand rounds; Upon all cartridges, twenty-five (25) caliber or greater, two ($2.00) dollars per thousand rounds. (b) The license taxes imposed upon ammunition shall be paid by stamps to be affixed and cancelled by the retailer or other final seller, and said stamps shall be affixed to the smallest container in which or from which articles are sold, as soon as the original packages are opened or broken, or if received in no other form than that in which sold, as soon as the containers are placed in the place of business of the retailer; in the case of articles inteneded for sale in the packages in which received from outside the State of South Carolina without opening or alteration of any sort, each package must be immediately marked with the date of receipt and the place from which received and no stamps need be affixed so long as such package remains unopened and unaltered.

1934 S.C. Acts 1288, An Act regulating the use and possession of Machine Guns: §§ 1 to 6. § 1. "Machine gun" defined. – Be it enacted by the General Assembly of the State of South Carolina: For the purposes of this Act the word "machine gun" applies to and includes all firearms commonly known as machine rifles, machine guns and sub-machine guns of any caliber whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts or other separable mechanical device. § 2. Transportation of Machine Gun. – It shall be unlawful for any person or persons in any manner to transport from one place to another in this State, or from any railroad company, or express company, or other common carrier, or any officer, agent or employee of any of them, or any other person acting in their behalf knowingly to ship or to transport form one place to another in this State in any manner or by any means whatsoever, except as hereinafter provided, any firearm as described hereinabove or commonly known as a machine gun. § 3. Storing, Keeping, and/or Possessing Machine Gun. – It shall be unlawful for any person to store, keep, possess, or have in possession, or permit another to store, keep, possess, or have in possession, except as hereinafter provided, any firearem of the type defined above or commonly known as a machine gun. § 4. Selling, Renting or Giving away Machine Gun. – It shall be unlawful for any person to sell, rent, or give away, or be interested directly or indirectly, in the sale, renting or giving away, or otherwise disposing of any firearm of the type above described or commonly known as a machine gun. § 5. Exceptions – Register Machine Guns. – The provisions of this Act shall not apply to the army, navy or marine corps of the United States, the National Guard, and organizations authorized by law to purchase or received machine guns from the United States, or from this State, and the members of such corps. National Guard and organizations while on duty or at drill, may possess, carry and transport machine guns, and, Provided, further, That any peace officer of the State, counties or political sub-division thereof. State Constable, member of the Highway patrol, railway policemen, warden, superintendents, headkeeper or deputy of any State prison, penitentiary, workhouse, county jail, city jail, or other institution for detention of persons convicted or accused of crime, or held as witnesses in criminal cases, or persons on duty in the postal service of the United States, or common carrier while transporting direct to any police department, military or naval organization, or persons authorized by law to possess or use a machine gun, may possess machine guns when required in the performance of their duties, nor shall the provisions of this Act be construed to apply to machine guns kept for display as relics and which

are rendered harmless and not useable. Within thirty days after the passage of this Act every person permited by this Act to possess a machine gun or immediately after any person is elected to or appointed to any office or position which entitles such person to possess a machine gun, shall file on the office of the Secretary of State on a blank to be supplied by the Secretary of State on application therefor, an application to be properly sworn to, which shall be approved by the Sheriff of the county in which the applicant resides or has its principal place of business, which shall include the applicants name, residence and business address, description including sex, race, age weight, height, color of eyes, color of hair, whether or not ever charged or convicted of any crime, municipal, State or otherwise, and where, if so charged, and when same was disposed of. The applicant shall also give the description including the serial number and make the machine gun which he possesses or desires to possess. Thereupon the Secretary of State shall file such application in his office, registering such applicant togther with the information required in the application in a book or index to be kept for that purpose, and assign to him a number, an dissue to him a card which shall bear the signature of the applicant, and which he shall keep with him while he has such machine gun in his possession. Such registeration shall be made on the date application is received and filed iwth the Secretary of State, and shall expire on December 31, of the year in which said license is issued. § 6. Penalty – Any person violating any of the provisions of this Act shall be guilty of a felony, and, on conviction thereof shall be sentenced to pay a fine not exceeding One Thousand Dollars, and undergo imprisonment by separate or solitary confinement at labor not exceeding twenty (20) years.

## SOUTH DAKOTA

1899 S.D. Sess. Laws 112, An Act For The Protection Of Game And The Appointment Of Wardens, And The Licensing Of Hunters And Prescribing Penalties For The Violation Of Its Provisions, pt. 3
At any time kills or shoots any wild duck, goose or brant with any swivel gun or other gun, except as is commonly shot form the shoulder, or in hunting such birds makes us of any artificial light or battery. . .

1933 S.D. Sess. Laws 245-47, An Act Relating to Machine Guns, and to Make Uniform the Law with Reference Thereto, ch. 206, §§ 1-8.
§ 1. "machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded from which more than five shots or bullets may be rapidly or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. "Crime of Violence" apples to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering, and larceny. "Person" applied to and includes firm, partnership, association or corporation. § 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than twenty years. § 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than fifteen years. § 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose; (a) When the machine gun is on

94

premises not owned or rented for bona fide permanent residence or business occupancy by the person in whose possession the machine gun may be found; or (b) when in the possession of, or used by, an unnaturalized foreign born person, who has been convicted of a crime of violence in any court of record, state or federal of the United States of America, its territories or insular possessions; or (c) when the machine gun is of the kind described in §8 and has not been registered as in said section required; or (d) when empty or loaded pistol shells of 30 or larger caliber which have been or are susceptible or use in the machine gun are found in the immediate vicinity thereof. § 5. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found. § 6. Exceptions. Nothing contained in this act shall prohibit or interfere with (1.) the manufacture for, and sale of, machine guns to the miltary forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose; (2.) The possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake; (3.) The possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifstly not aggresive or offensive. § 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned given or delivered, or from whom received. Upon demand every manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provisions of this section shall be punishable by a fine of not more than five hundred dollars, or by imprisonment in the county jail, nfor not exceeding six months or by both such fine and imprisonment. § 8. Every machine gun now in this state adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the Secretary of State, on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within 24 hours after its acquisition. Blanks for registration shall be prepared by the Secretary of State, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which, the gun was acquired. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section shall be presumed to possess the same for offensive and aggressive purpose.

## TENNESSEE

William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, Together with the Acts of the Legislature Relating to the City, with an Appendix Page 148-149, Image 149-150 (1863) available at The Making of Modern Law: Primary Sources. 1863 [Ordinances of the City of Memphis, Shooting Galleries, § 1. That no person or persons shall set up or use any pistol gallery, or place for the discharging of pistols, guns or other firearms in the first story of any building in the city; nor shall any gallery be used in any manner involving risk or danger to any person in the city; nor shall any person setting up or using such pistol gallery be

exempt from the ordinance and penalties now in force, for discharging or shooting any pistol, gun or firearms within the city limits, until such person or persons have applied and paid for license to set up and use such pistol gallery, according to the provisions of this ordinance. § 2. That the person or persons applying for license to keep such pistol gallery, shall, at the time of obtaining such license, enter into bond with good security, to be approved by the City Register, in the sum of three thousand dollars, payable as other city bonds, conditioned that no gambling of any kind be permitted in such pistol gallery, or in the room used for such pistol gallery, or any room adjacent thereto, under the control and connected with said pistol gallery, or its proprietors or keepers; and that all shooting or discharging of firearms shall be done only with the perfect security against any harm to persons or property in the vicinity of such pistol gallery; such penalty to be recoverable for every violation of this section of this ordinance, and of the conditions of said bond. § 3. That the proprietors or persons keeping such pistol gallery shall not permit any minors to shoot in such gallery without the written consent of the lawful guardian of such minor, unless such guardian be personally present, and consenting to such shooting; nor shall the proprietors or keepers of such gallery permit any shooting in the same after eleven o'clock at night, or on Sunday, nor shall such shooting gallery be allowed to be kept open for shooting after eleven o'clock at night or on Sunday. Any violation of this ordinance is hereby declared a misdemeanor, and each offender, on conviction shall be fined in any sum not less than five nor more than fifty dollars for any violation of this ordinance, recoverable as other fines. § 4. Any person or persons shall before putting up or using such pistol or shooting gallery, first apply for, and obtain license, as other licenses are obtained, and shall pay for such license the sum of one hundred dollars per annum for each and every pistol or shooting gallery establishment under the provision of this ordinance. § 5. That the board of Mayor and Aldermen retain the power and right to, at any time, repeal this ordinance and revoke and recall any license to keep a pistol gallery, by refunding a pro rata part of the amount paid for any license then outstanding.]

1879 Tenn. Pub. Acts 135-36, An Act to Prevent the Sale of Pistols, chap. 96, § 1.
It shall be a misdemeanor for any person to sell, or offer to sell, or to bring into the State for the purpose of selling, giving away, or otherwise disposing of belt or pocket pistols, or revolvers, or any other kind of pistols, except army or navy pistol; Provided that this act shall not be enforced against any persons now having license to sell such articles until the expiration of such present license.

## **TEXAS**

Charter and Revised Ordinances of the City of Galveston, and All Ordinances in Force to April 2d, 1872 Page 94, Image 107 (1873) available at The Making of Modern Law: Primary Sources. 1872
[Ordinances of the City of Galveston, Taxes – License Tax and Ad-Valorem Tax,] Art. 418, § 26. Every keeper of a billiard or other like table, for public use, a tax of twenty dollars for each and every table so kept; and every keeper of a tenpin alley, a tax of thirty dollars for each and every alley so kept for public use. Every keeper of a pistol or rifle gallery, a tax of twenty-five dollars.

Revised Ordinances of the City of Fort Worth, Texas, 1873-1884 Page 64-65, Image 62-63 (1885) available at The Making of Modern Law: Primary Sources. 1880

Ordinances of the City of Fort Worth, An Ordinance prohibiting the shooting off, firing or discharging of Fire-arms; the firing, exploding or setting off of Squibs, Firecrackers, Torpedoes, Roman Candles, Sky-rockets or other things containing powder or other explosive matter, or the throwing of any fire balls, or making of any bon-fires in the corporate limits of the City of Fort Worth. Be it ordained by the City Council of the City of Fort Worth: § 1. It shall be unlawful for any person or persons to shoot off, fire, or discharge any gun, pistol, revolver or any firearm of any description, or to fire, explode or set off any squib, firecracker, torpedo, roman candle, sky-rocket, or other thing containing powder or other explosive matter, or to throw any fire-ball or make any bon-fire in the corporate limits of this city, and that any person or persons violating the provisions of this ordinance, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be fined in any sum not less than one dollar nor more than one hundred dollars. Provided that this shall not apply to any licensed shooting gallery nor to the shooting of dogs running at large in violation of the city ordinances

The Laws of Texas 1822-1897. Austin's Colonization Law and Contract; Mexican Constitution of 1824; Federal Colonization Law; Colonization Laws of Coahuila and Texas; Colonization Law of State of Tamaulipas; Fredonian Declaration of Indpendence; Laws and Decrees, with Constitution of Coahuila and Texas; San Felipe Convention; Journals of the Consultation; Proceedings of the General Council; Goliad Declaration of Independence; Journals of the Convention at Washington; Ordinances and Decrees of the Consultation; Declaration of Independence; Constitution of the Republic; Laws, General and Special, of the Republic; Annexation Resolution of the United States; Ratification of the Same by Texas; Constitution of the United States; Constitutions of the State of Texas, with All the Laws, General and Special, Passed Thereunder, Including Ordinances, Decrees, and Resolutions, with the Constitution of the Confederate States and the Reconstruction Acts of Congress Page 234-235, Image 734-735 (Vol. 6, 1898) available at The Making of Modern Law: Primary Sources. 1898
[An Act to Incorporate the Town of Round Top, County of Fayette, . . . Article Tenth. That from and after the passage of this act it shall be unlawful to fire any pistol, rifle, shot gun, or other kind of fire-arms, within the limits of the town of Round Top, and any person violating this act shall be guilty of a misdemeanor, and on conviction thereof shall be fined not less than five nor more than twenty-five dollars, to be collected by the mayor of the town; but this act shall not prevent any gunsmith, within the limits of the town, from discharging on the premises thereof, fire-arms made or repaired in his shop, for the purpose of training such fire-arms; provided, that none but gunsmiths shall have the privilege of being authorized to discharge fire-arms; and for that purpose each gunsmith shall build a rock wall, in front of which he shall cause a target to be placed, The mayor shall issue a permit to any gunsmith applying for the same, for the period of one year, which permit may be renewed after its expiration.]

Revised Ordinances of the City of Victoria Texas Page 75, Image 77 (1899) available at The Making of Modern Law: Primary Sources. 1899
[Ordinances of the City of Victoria,] Revised Penal Ordinances: Discharging Firearms, § 1. If any person shall discharge any gun, pistol or firearm of any description on or across any public square, street or alley, or elsewhere within the corporate limits of the City of Victoria, whether the premises on or across which such fire arm is discharged be public or private he shall be fined in any sum not to exceed ten dollars. § 2. Exceptions. The provisions of the foregoing section shall not be construed to apply to gunsmiths discharging fire arms brought to them for repairs, or

to training guns or pistols of their own make, when done with the permission and at a place approved by the City Marshal; nor shall parties shooting in galleries licensed by the city come within the meaning of the preceding article. § 3. If any person shall discharge any gun, pistol or fire arm of any description as alarm for fire, or upon the discovery of any fire, or during the progress of any fire, he shall be fined in any sum not to exceed twenty-five dollars.

1919 Tex. Gen. Laws 297-98, An Act to Preserve, Propagate, Distribute, and Protect the Wild Game, Wild Birds, Wild Fowl of the State . . . , ch. 157, § 42.
It shall be unlawful for any citizen of this State to hunt outside of the county of his residence with a gun without first having procured from the Game, Fish and Oyster Commissioner or one of his deputies or from the County Clerk of the County in which he resides a license to hunt, and for which he shall pay to the officer from whom he secures such license the sum of two ($2.00) dollars. . . Any person hunting any game or birds protected by the laws of the State, and who shall refuse to show his license herein provided for to any sheriff . . . on demand shall be deemed guilty of a violation of the provisions of this law, and any person violating any of the provisions of this Section shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum of not less than ten (10.00) dollars nor more than one hundred (100.00) dollars.

1931 Tex. Gen. Laws 447, Occupation Tax on Sale of Pistols, ch. 267, 3, 447 (requiring retail dealers to keep registries of sales of firearms).

## UTAH

An Ordinance Prohibiting the Sale of Arms, Ammunition, or Spiritous Liquors to the Indians, in Acts, Resolutions and Memorials Passed at the Several Annual Sessions of the Legislative Assembly of the Territory of Utah 63 (Henry McEwan 1866). 1850
"Sec. 1. Be it ordained by the General Assembly of the State of Deseret: That if any person shall hereafter trade or give any guns, rifles, pistols or any other deadly weapons, ammunition or spirituous liquors to any Indian, without having a license, he shall, on conviction thereof before any Justice of the Peace, he fined in a sum not exceeding one hundred dollars for each offense, and also forfeit all the property received from the Indian, which shall be sold and the proceeds thereof paid into the public treasury."

Revised Ordinances and Resolutions of the City Council of Salt Lake City, in the Territory of Utah, with Congressional and Territorial Laws on Townsites and Great Salt Lake City Charter, and Amendments Page 161-162, Image 196-197 (1875) available at The Making of Modern Law: Primary Sources. 1875
Ordinances of Salt Lake City, Relating to Gunpowder, Gun Cotton and Nitro-Glycerine, § 1. Be it ordained, by the City Council of Salt Lake City, that it shall not be lawful for any person or persons to keep, sell or give away, gunpowder, gun-cotton, or nitro-glycerine, in any quantity without permission of the City Council; Provided, any person may keep, for his own use, not exceeding five pounds of gun powder, one pound of gun cotton, or one ounce of nitro-glycerine. § 2. All permits , when issued , shall be registered by the Recorder, and shall state the name and place of business, and date of permit, and the same shall not be granted for a longer time than one year; and no person to whom any permits may be issued, shall have or keep, at his place of business or elsewhere, within the city, (except in such places as may be approved by the City

98

Council), a greater quantity of gunpowder or guncotton than twenty-five pounds, and the same shall be kept in tin canisters or cases, and nitro-glycerine not to exceed five ounces, and in a situation remote from fires lighted lamps or candles. Nor shall any person sell or weigh gunpowder, gun cotton, or nitro-glycerine, after the lighting of lamps or gas in the evening , unless in sealed canisters or cases. It shall be the duty of every person to whom a permit shall be given to keep a sign at the front door of his place of business, with the word gunpowder painted or printed thereon in large letters. § 3. No person shall convey or carry any gunpowder exceeding one pound in quantity through any street or alley in the city, unless the said gunpowder is secured in tight cans, kegs or cases, sufficient to prevent the same from being spilled or scattered , and in no quantity exceeding one hundred pounds, except under the direction of a police officer. § 4. A violation of any clause of this ordinance shall subject the offender to a fine, for each offence, in any sum not exceeding one hundred dollars.

The Revised Ordinances of Salt Lake City, Utah, Chapter XXVI, Misdemeanors, p. 283 Sec. 14 (1888)
Dangerous and Concealed Weapons.
SEC. 14. Any person who shall carry any slingshot, or any concealed deadly weapon , without the permission of the mayor first had and obtained, shall, upon conviction, be liable to a fine not exceeding fifty dollars.

1905 Utah Laws 197, An Act for the Protection of Fish, Game, and Birds . . . , ch. 118, § 30.
It shall be unlawful for any non-resident person or for resident who is not a citizen of the United States to kill any game, animals, birds or fish in this State, without first having procured the license to do so hereinafter provided for. Any non-resident person or any resident who is not a citizen of the United States, upon the payment to the State Commissioner, of the sum of twenty-five dollars, shall be entitled to receive a license, from said commissioner, which will entitle him to hunt and kill game, animals, birds and fish, for the period of one year subject to all the laws of this State for the protection of fish and game.

## **VERMONT**

Act of Incorporation and By-Laws of the Village of Bradford Page 14, Image 15 (1890 ) available at The Making of Modern Law: Primary Sources. 1890
[Ordinances of the Village of Bradford] By-laws, Miscellaneous, § 6. Any person who shall fire any cannon, swivel gun, pistol, torpedo, squib, cracker, or throw any fire ball, in any street, alley or lane, except by permission of the trustees, shall be fined five dollars.

Act of Incorporation and By-Laws of the Village of Bradford. 1890 Page 12-13, Image 13-14 (1891) available at The Making of Modern Law: Primary Sources.
Ordinances of the Village of Bradford, § 11. The Trustees may grant licenses, for one year or less, to keep gun powder or gun cotton or other explosives for sale, if in their opinion the public safety is not endangered thereby. Said gun powder or gun cotton or other explosive shall be kept in close tin canisters which shall only be opened in the day time. § 12. The license shall specify the quantity allowed and the place where such gun powder or gun cotton and other explosives shall be kept, and on every building in which such gunpowder or gun cotton or other explosives is kept for sale shall be placed in a conspicuous position a sign with the words, "Licensed to sell

Powder," printed or painted thereon. § 13. The Trustees may also grant licenses to store gun powder and other explosives in larger quantities in places used for no other purpose which they consider at a safe distance from other buildings. § 14. The Trustees may at any time inspect the premises where gun powder, gun cotton and other explosives are kept, in order to satisfy themselves that the regulations are complied with. § 15. Any person who shall without license keep in any building in the Village any nitro-glycerine, or more than half a pound of gun powder or two ounces of gun cotton, which shall be only for his own use, shall be fined five dollars for every day so offending. § 16. All licenses granted by the Trustees by virtue of these by-laws shall be signed by a majority of the Trustees and recorded in the office of the Clerk of the Corporation at the expense of the person licensed and shall not become valid until so recorded. § 17. The Trustees are authorized to revoke any license mentioned in these by-laws, whether granted by themselves or their predecessors in office, whenever in their opinion the public good requires it. Such revocation shall be recorded in the Clerk's office, and shall become operative whenever the Trustees shall deliver a written notice thereof to the person whose license is revoked.

Act of Incorporation and By-Laws of the Village of Northfield Page 19-20, Image 19-20 (1894) available at The Making of Modern Law: Primary Sources. 1894
Regulations for Handling Explosives, Artcle XV., § 1. No person shall at any time keep within the limits of said Village, any powder, or guncotton, without a written license, signed by a majority of the trustees, who shall have discretionary power to grant the same for retailing purposes ; not, however, exceeding twenty pounds shall be kept in any one building at a time, and that to be kept in close metal cans, or flasks, which are not to be opened except in the day time, Said license specify the building, or place where said powder or guncotton shall or may be kept, the quantity such person may keep, and shall be conditional that any Trustee may at any time make inspection of the quantity of powder or gun-cotton kept, and the manner of keeping the same; said license to be in force until revoked by a majority of the Trustees. And it shall be the duty of the person or persons so licensed to procure said license to be recorded in the records of said Village, and to put up, in some conspicuous place on every building within the limits of the Village in which he has powder or guncotton stored, a sign with the words "LICENSED TO SELL GUNPOWDER." Provided, that a majority of the Trustees may grant license for storing or keeping larger quantities, and that any person may keep not over two pounds which shall be kept in a metallic flask or a powder horn. Article XVI. PENALTY FOR VIOLATION OF ABOVE ARTICLE. § 1. If any person shall keep, without a license therefore, or as provided in the XVth article, any powder, or gun cotton, or either of said articles, or shall keep either of said articles in any buildings or places except those mentioned in his license, he shall forfeit and pay to the treasurer of said Village Five dollars for each day said powder or guncotton shall be suffered to remain within the limits of said village.

Quoted in Brief of Amicus Curiae Patrick J. Charles at App. 13, N.Y. State Rifle & Pistol Ass'n, v. City of New York (Ordinances of the City of Barre, Vermont). 1895
CHAPTER 16, SEC. 18. No person, except on his own premises, or by the consent and permission of the owner or occupant of the premises, and except in the performance of some duty required by law, shall discharge any gun, pistol, or other fire arm loaded with ball or shot, or with powder only, or firecrackers, serpent, or other preparation whereof gunpowder or other explosive substance is an ingredient, or which consists wholly of the same, nor shall make any

100

bonfire in or upon any street, lane, common or public place within the city, except by authority of the city council.

CHAPTER 38, SEC. 7. No person shall carry within the city any steel or brass knuckles, pistol, slung shot, stiletto, or weapon of similar character, nor carry any weapon concealed on his person without permission of the mayor or chief of police in writing.

1908 Vermont Session Laws 132, § 1.

No person shall at any time hunt, shoot, pursue, take or kill any of the wild animals, wild fowl or birds of this state, nor use a gun for hunting the same, without having first procured a license therefor as hereinafter provided, and then only during the respective periods of the year when it shall be lawful, and subject to all the provisions of chapter 220 of the Public Statutes. . .

## __VIRGINIA__

Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force; with a New and Complete Index. To Which are Prefixed the Declaration of Rights, and Constitution, or Form of Government Page 187, Image 195 (1803) available at The Making of Modern Law: Primary Sources. 1792
[An Act to Reduce into one, the Several Acts Concerning Slaves, Free Negroes, and Mulattoes (1792),] § 8. No negro or mulatto whatsoever shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive, but all and every gun, weapon, and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person, and upon due proof thereof made before any Justice of the Peace of the County or Corporation where such seizure shall be, shall by his order be forfeited to the seizor for his own use ; and moreover, every such offender shall have and receive by order of such Justice, any number of lashes not exceeding thirty-nine, on his or her bare back, well laid on, for every such offense. § 9. Provided, nevertheless, That every free negro or mulatto, being a house-keeper, may be permitted to keep one gun, powder and shot; and all negroes and mulattoes, bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder, shot, and weapons offensive or defensive, by license from a Justice of Peace of the County wherein such plantation lies, to be obtained upon the application of free negroes or mulattoes, or of the owners of such as are slaves.

1805 Va. Acts 51, An Act Concerning Free Negroes and Mulatoes
That no free negro or mulato shall be suffered to keep or carry any firelock of any kind… without first obtaining a license from the court…

1806 Va. Acts 51, ch. 94
Required every "free negro or mulatto" to first obtain a license before carrying or keeping "any fire-lock of any kind, any military weapon, or any powder or lead."

The Charters and Ordinances of the City of Richmond, with the Declaration of Rights, and Constitution of Virginia Page 227, Image 274 (1859) available at The Making of Modern Law: Primary Sources. 1859
[Ordinances of Richmond,] Nuisances Not in Streets, § 11. If any person shall sell, or expose for sale in this city, any torpedos, popcrackers, squibs, or other fire-works, of any kind whatever,

101

except in packages containing each at least one hundred, or shall without permission in writing from the mayor, discharge, or set off, in any street or alley of the city, any balloon, rocket, torpedo, popcracker, fireworks or any combination of gunpowder, or any other combustible or dangerous material; or if any person shall, except under the fortieth section of the ordinance concerning streets, without necessity fire or discharge in this city any cannon, gun, pistol, or other fire-arms of any kind, or shall make therein any unusual noise, whereby the inhabitants thereof may be alarmed, or raise or fly a kite in this city, or if any auctioneer shall use any bell or herald to notify the public of any sale, except of real property, every such person herein offending, shall pay a fine of not less than one nor more than twenty dollars.

1908 Va. Laws 381, An Act To Amend And Re-Enact Section 3780 Of The Code In Relation To Carrying Concealed Weapons, § 3780
If any person carry about his person, hid from common observation, any pistol, dirk, bowie knife, razor, slungshot, or any weapon of like kind he shall be fined not less than twenty dollars nor more than one hundred dollars, or be committed to jail not more than thirty days, or both, in the discretion of the court, or jury, trying the case: and such pistol, dirk, bowie knife, razor, slungshot, or any weapon of like kind, shall be forfeited to the Commonwealth and may be seized by an officer as forfeited. Upon conviction of the offender the said weapon shall be sold by the officer and the proceeds accounted for and paid over as provided in section twenty-one hundred and ninety; provided, that this section shall not apply to any police officer, town or city sergeant, constable, sheriff, conservator of the peace, collecting officer while in the discharge of his official duty: provided the judge of any circuit or hustings court in term time, upon a written application and satisfactory proof of the good character and necessity of the applicant to carry concealed weapon may grant such permission for one year; the order making same shall be entered in the order book of such court.

1926 Va. Acts. 285-87, CHAP. 158-An ACT to improve a license tax on pistols and revolvers; to regulate the sale thereof and of ammunition therefor; and to provide that the proceeds of such tax shall be used for the establishment of a diseased and crippled children's hospital, §§ 1-9.
1. Be it enacted by the general assembly of Virginia, That it shall be the duty of every person residing in this State and owning a pistol or revolver therein, to pay on or before the first day of January of each year a license tax of one dollar on each pistol or revolver so owned, or in the event that such pistol or revolver shall be acquired by any such person on or after the first day of February, such license tax shall be forthwith paid thereon. The application for the license shall give the name of the owner, and the number, make and calibre [sic] of such pistol or revolver, which shall be set forth in the license. All pistol or revolver licenses shall run form the first day of January to the first day of the following January. Such license taxes shall be paid to the treasurer of the city or county whrein the said owner resides, and the said treasurer shall not receive more for handling the funds arising from the tax imposed by this act than he receives for handling other State funds. The treasurers shall not receive compensation for their services in issuing the license cards herein provided for. Upon payment of the tax provided for in this section the person paying the same shall be entitled to a license card therefor, showing the year for which the license is paid, the county or city issuing the card, the serial number of the license, and the number, calibre [sic], make and owner of the pistol or revolver. When the license card is issued the treasurer shall record the name of the owner of the pistol or revolver, and the number, calibre [sic] and make thereof with the number of the license, in a book prepared for the purpose.

102

The license cards and book shall be furnished by the boards herein provided and shall be paid out of the funds derived from the pistol and revolver licenses. If any such card should be lost the owner of the card shall pay to the treasurer twenty-five cents for a duplicate card.

2. It shall be the duty of every retailer selling a pistol or revolver in this State, at the time of such sale, to keep a record of the name and address of the purchaser and the number, make and calibre [sic] of the pistol or revolver, and to report once a month to the treasurer of his county or city the names of such purchasers, if any, together with the number, make and calibre [sic] of each pistol or revolver purchased; and all persons receiving or having in their possession a pistol or revolver for the purpose of repairing the same shall report to the treasurer of his county or city once a month giving the name and address of the owner and the calibre [sic], make and serial number of such pistol or revolver.

3. It shall be unlawful for any retailer in this State to sell ammunition for any pistol or revolver to any person unless the person desiring to make such purchase displays the license card for the current year provided for in this act.

4. Any person violating any provision of this act or using a license card not issued to him, for the purpose of purchasing ammunition, or using a license card for the purchase of pistol or revolver ammunition unless the ammunition is intended to be used for the weapon mentioned in the license card shall be guilty of a misdemeanor, and upon conviction shall be fined not less than twenty-five nor more than fifty dollars, or sentenced to the State convict road force for not less than thirty or not more than sixty days, or both, in the discretion of the tribunal trying the case.

5. The provisions of this act shall not apply to any officer authorized by law to carry a pistol or revolver nor to the pistol or revolver of such officer when such pistol or revolver is carried in discharge of his official duty, except that every officer shall list his pistol or revolver with the treasurer of his county or city annually by January first; nor to a pistol of an obsolete type kept as a souvenir, memento or relic, such as cap and ball type, etcetera, or souvenir used or captured by any person or relative in any war. But such pistol shall be registered as herein provided, upon satisfactory proof to the officer issuing such license that the pistol in question comes properly within this exception, in which case, no license tax shall be charged.

6. The tax hereby imposed shall be in lieu of all other taxes on such pistols and revolvers; but nothing in this act shall be construed to apply to such weapons in the stocks of licensed wholesaler or retailers.

7. All funds arising from pistol and revolver licenses, except as hereinbefore provided, shall be kept separate from other funds and shall be paid into the State treasury to establish a fund known as the diseased and crippled children's hospital fund, which shall be used for the purpose of establishing and maintaining within the State at such place or places as may be selected by the board hereinafter provided for, a hospital or hospitals for the care, treatment and vocational training of diseased and crippled children resident in Virginia, or for any such rehabilitation work that the board may deem wise.

Each treasurer shall between the first and fifteenth of July and between the first and fifteenth of January report to the auditor of public accounts collections, which he is required to make by this act, and shall at the same time pay into the State treasury the amount collected less the commissions which he is authorized to retain for collecting same as provided for in this act, and the auditor of public accounts shall keep said funds separate from other funds to be designated and known as "the diseased and cripple children's hospital fund."

8. The administration of the aid fund shall be under the direction of a board of seven physicians to be appointed by the governor. . . . [Description of board and its functions].

9. The State treasurer shall make payments from the fund hereinabove created on warrants from the auditor of public accounts, issued on vouchers certified by the chairman of the board hereinabove created on authority of the board.

1934 Va. Acts 137-39, An Act to define the term "machine gun"; to declare the use and possession of a machine gun for certain purposes a crime and to prescribe the punishment therefor, ch. 96, §§ 1-7.

§ 1. Where used in this act; (a) "Machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than seven shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device, and also applies to and includes weapons, loaded or unloaded, from which more than sixteen shots or bullets may be rapidly, automatically, semi-automatically or otherwise discharged without reloading. (b) "Crime of violence" applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, . . .

§ 2. Possession or use of machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by death or by imprisonment in the State penitentiary for a term not less than twenty years.

§ 3. Unlawful possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the State penitentiary for a term of not less than ten years.

§ 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose; (a) When the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or (b) When in the possession of , or used by, an unnaturalized foreign born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or (c) When the machine gun is of the kind described in section eight and has not been registered as in said section required; or (d) When empty or loaded pistol shells of thirty (thirty one-hundredths inch or seven and sixty-three one hundredths millimeter ) or larger caliber which have been or are susceptible to use in the machine gun are found in the immediate vicinity thereof.

§ 5. The presence of a machine gun in any room, boat, or vehicle shall be prima facie evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

§ 6. (excludes military police etc. )

§ 7. Every manufacturer or dealer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, load, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold. . .

## WASHINGTON STATE

1881 Wash. Sess. Laws 76, An Act to Confer a City Govt. on New Tacoma, ch. 6, § 34, pt. 15.

[T]o regulate the transportation, storage and sale of gunpowder, giant powder, dynamite, nitro-glycerine, or other combustibles, and to provide or license magazines for the same, and to prevent by all possible and proper means, danger or risk of injury or damages by fire arising from carelessness, negligence or otherwise . . . to regulate and prohibit the carrying of deadly weapons in a concealed manner; to regulate and prohibit the use of guns, pistols and firearms, firecrackers, and detonation works of all descriptions[.]

1881 Wash. Sess. Laws 93, An Act to Incorporate the City of Dayton, chap. 2, § 20.
The city of Dayton shall have power to prevent injury or annoyance from anything dangerous, offensive, or unhealthy, and . . . to regulate the transportation, storing and keeping of gunpowder and other combustibles and to provide or license magazines for the same[.]

1881 Wash. Sess. Laws 121-22, An Act to Incorporate the City of Port Townsend, ch. 2, § 21.
The City of Port Townsend has power to prevent injury or annoyance from anything dangerous, offensive, or unhealthy, and . . . to regulate the transportation and keeping of gunpowder, or other combustibles, and to provide or license magazines for the same[.]

1883 Wash. Sess. Laws 161, An Act to Incorporate the City of Ellensburgh, ch. 2, § 20.
The city of Ellensburg shall have power to prevent injury or annoyance from anything dangerous, offensive, or unhealthy . . . to regulate the transportation storing and keeping of gunpowder and other combustibles and to provide or license magazines for the same[.]

Del Cary Smith, Ordinances of the City of Port Townsend, Washington, Comprising the General Ordinances of the City, Together with the Private Ordinances Now in Force Page 27, Image 28 (1890) available at The Making of Modern Law: Primary Sources. 1890
[Ordinances of Port Townsend, WA,] Division III, Offenses Against Public Safety, Convenience and Health, § 15. Whoever shall fire or discharge any cannon, gun, pistol revolver or any firearm of any description, or shall fire, or explode or set off any squib, firecracker, torpedo or other thing containing powder or other explosive material, without permission from the Mayor or common council so to do, within the city limits, shall, on conviction, be punished by a fine of not less than five nor more than twenty dollars; provided that such permission, when given, shall definitely limit the time of such firing, and may at any time be revoked. But nothing in this section shall prevent the ordinary and usual fireworks demonstration on National holidays; subject, however, to such regulation, control and orders as the City Marshal may deem proper to make for the protection of property from fire.

Albert R Heilig, Ordinances of the City of Tacoma, Washington Page 334, Image 335 (1892) available at The Making of Modern Law: Primary Sources. 1892
Ordinances of Tacoma, Defining Disorderly persons and Prescribing the Punishment for disorderly conduct within the city of Tacoma, § 1. . . . All persons (except police officers as aforesaid) who shall draw, exhibit or attempt to use any deadly weapon upon, to or against another person, in said city with intent to do bodily injury to such person; and All persons (except peace officers as aforesaid and persons practicing at target shooting in a shooting gallery duly licensed) who shall, within the city limits, fire off or discharge any gun, pistol or fire arm of any kind, or bomb, shall be deemed and are disorderly persons, and guilty of a misdemeanor.

Rose M. Denny, ed., The Municipal Code of the City of Spokane, Washington (Spokane, WA; W.D. Knight, 1896), p. 309-10, Ordinance No. A544, Sec. 1. 1895
ORDINANCE No. A544. AN ORDINANCE TO PUNISH THE CARRYING OF CONCEALED WEAPONS WITHIN THE CITY OF SPOKANE.
The City of Spokane does ordain as follows:
SECTION I. If any person within the City of Spokane shall carry upon his person any concealed weapon, consisting of either a revolver, pistol or other fire-arms, or any knife (other than an ordinary pocket knife ), or any dirk or dagger, sling-shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty dollars, nor more than one hundred dollars and costs of prosecution, and be imprisoned until such fine and costs are paid; provided, that this section shall not apply to police officers and other persons whose duty it is to execute process or warrants or make arrests, or persons having a special written permit from the Superior Court to carry weapons.
SECTION 2. This ordinance shall take effect and be in force ten days after its passage.
Passed the City Council January 2, 1895.

Rose M. Denny, The Municipal Code of the City of Spokane, Washington. Comprising the Ordinances of the City (Excepting Ordinances Establishing Street Grades) Revised to October 22, 1896 Page 309-310, Image 315-316 (1896) available at The Making of Modern Law: Primary Sources. 1896
Ordinances of Spokane, An Ordinance to Punish the Carrying of Concealed Weapons within the City of Spokane, § 1. If any person within the City of Spokane shall carry upon his person any concealed weapon, consisting of either a revolver, pistol or other fire-arms, or any knife (other than an ordinary pocket knife) or any dirk or dagger, sling-shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty dollars, nor more than one hundred dollars and costs of prosecution, and be imprisoned until such fine and costs are paid; provided, that this section shall not apply to police officers and other persons whose duty is to execute process or warrants or make arrests, or persons having a special written permit from the Superior Court to carry weapons.

1911 Wash. Sess. Laws 303, An Act Relating to the Carrying of Firearms, Requiring Licenses of Certain Persons, and Fixing a Penalty for the Violation Thereof, ch. 52, § 1.
It shall be unlawful for any person who is not a citizen of the United States, or who has not declared his intention to become a citizen of the United States, to carry or have in his possession at any time any shot gun, rifle or other firearm, without first having obtained a license from the state auditor, and said license is not to be issued by said state auditor except upon the certificate of the consul domiciled in the State of Washington and representing the country of such alien, that he is a responsible person and upon the payment for said license of the sum of fifteen dollars ($15.00)[.]

## WEST VIRGINIA

J. Nelson Wisner, Ordinances and By-Laws of the Corporation of Martinsburg: Berkeley Co., West Virginia, Including the Act of Incorporation and All Other Acts of a Special or General Nature Page 25, Image 25 (1875) available at The Making of Modern Law: Primary Sources. 1875
[Ordinances of Martinsburg, An Ordinance to Prevent Certain Improper Practices Therein Specified,] § 3. If any person shall fire or discharge within such parts of the town which are or shall be laid out into lots, or within two hundred yards of said limits, any cannon, gun, pistol or fire-arms, or any cracker, squib, rocket or fire-works, except it be in case of necessity, or in the discharge of some public duty, or at a military parade by order of the officer in command, or with the permission of the Mayor or Council of the town, such person for every such offence shall forfeit any pay to the town not less than one nor more than five dollars.

J. Nelson Wisner, Ordinances and By-Laws of the Corporation of Martinsburg: Berkeley Co., West Virginia, Including the Act of Incorporation and All Other Acts of a Special or General Nature Page 76, Image 76 (1875) available at The Making of Modern Law: Primary Sources. 1876
[Ordinances of Martinsburg,] An Ordinance in Relation to Pistol Galleries, § 1. Be it ordained by the Council of the Corporation of Martinsburg, That no pistol gallery, in which air guns or pistols, or guns or pistols in which are fired powder, is used, shall be established or carried on within the limits of the Corporation of Martinsburg by any person or persons, until the person or persons desiring to establish or carry on the same shall first obtain from the Mayor, attested by the Clerk of the Corporation, a permit authorizing the person or persons therein named to prosecute said business, and designating the place at which the same is to be carried on. § 2. That the Mayor shall not issue the permit authorized by the first section of this ordinance, unless the building to be used for said pistol gallery, is so detached from adjacent or surrounding private dwellings, that the noise incident to the carrying on of said business, shall not render the said gallery a nuisance to the surrounding or adjacent dwellings. § 3. Any person or persons violating the provisions of this ordinance, shall be fined for the first offense, not less than two nor more than ten dollars, at the discretion of the Mayor, and for any subsequent offence, not less than two or more than thirty dollars, and commitment in the county jail not exceeding thirty days, either or both of said punishment, at the discretion of the Mayor.

Laws and Ordinances for the Government of the City of Wheeling, West Virginia (Wheeling, WV: W. Va. Printing 1891), p.206. 1881
An Ordinance in relation to offenses . . .
SEC. 14. It shall be unlawful for any person to carry any slung shot, colt, or knucklers of lead, brass or other metal or material, or to carry about his person, hid from common observation, any pistol, dirk , bowie knife, or weapon of the like kind, without a permit in writing from the mayor so to do. It shall also be unlawful for any person or persons to sell or give away to a person not of age, any slung shot, colt, or knuckler or knucklers of lead, brass or other metal or material, or any pistol, dirk, bowie knife or weapon of the like kind.

1909 W.Va. Acts 479-80, An Act to Amend and Re-Enact Sections . . . Relating to the Protection and Preservation of Certain Animals, Birds, and Fishes and of Forests and Streams, ch. 60, § 19. The carrying of any uncased gun in any of the fields or woods of this state, by any person not having the lawful right to hunt, pursue or kill game, birds or animals in such fields or woods

shall, as to such person, other than the bona fide owner, or owners of such fields or woods, his or their child or children, tenant or tenants, lessee or lessees, be deemed prima facie evidence of a violation of this section; and any person claiming to hold a license to hunt in this state, having in his possession any gun or other hunting paraphernalia in such woods, or fields, shall, on failure to produce such license for inspection to any warden of this state or owner or agent of the owner of such woods and fields on demand, be deemed guilty of a misdemeanor and shall be punished on conviction, as provided later in this section. Provided, however, that any resident owner, or owners, of farm lands, their resident child or children, or bona fide tenants, shall have the right to hunt, kill and pursue birds or game on such farm lands of which he, or they, are the bona fide owners or tenants, during the season when it is lawful to kill, catch or pursue birds or game, without securing such resident license; and provided, further, that the owners of adjoining lands may each have the privilege of reciprocating the non-licensed privilege, by giving each other written privilege to exchange hunting rights only, on land immediately joining each other, and upon which each party resides.

1925 W.Va. Acts 25-30, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms. . . , ch. 3, § 7, pt. a.

Section 7 (a). If any person, without a state license therefor, carry about his person any revolver or other pistol, dirk, bowie-knife, slung shot, razor, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor and upon conviction thereof be confined in the county jail for a period of not less than six nor more than twelve months for the first offense; but upon conviction of the same person for the second offense in this state, he shall be guilty of a felony and be confined in the penitentiary not less than one or more than five years, and in either case fined not less than fifty nor more than two hundred dollars, in the discretion of the court; and it shall be the duty of the prosecuting attorney in all cases to ascertain whether or not the charge made by the grand jury is the first or second offense, and if it shall be the second offense, it shall be so stated in the indictment returned, and the prosecuting attorney shall introduce the record evidence before the trial court of said second offense, and shall not be permitted to use his discretion in charging said second offense nor in introducing evidence to prove the same on the trial; provided, that boys or girls under the age of eighteen years, upon the second conviction, may, at the discretion of the court, be sent to the industrial homes for boys and girls, respectively, of the state. Any person desiring to obtain a state license to carry any such weapon within one or more counties in this state shall first publish a notice in some newspaper, published in the county in which he resides, setting forth his name, residence and occupation, and that on a certain day he will apply to the circuit court of his county for such state license; and after the publication of such notice for at least ten days before said application is made and at the time stated in said notice upon application to said court, it may grant such person a license in the following manner, to-wit: The applicant shall file with said court his application in writing, duly verified, which said application shall show: First: That said applicant is a citizen of the United States of America. Second: That such applicant has been a bona fide resident of this state for at least one year next prior to the date of such application, and of the county sixty days next prior thereto. Third: That such applicant is over twenty-one years of age; that he is a person of good moral character, of temperate habits, not addicted to intoxication, and has not been convicted of a felony nor of any offense involving the

108

use on his part of such weapon in an unlawful manner. Fourth: The purpose or purposes for which the applicant desires to carry such weapon and the necessity therefor and the county or counties in which said license is desired to be effective. Upon the hearing of such application the court shall hear evidence upon all matters stated in such application and upon any other matter deemed pertinent by the court, and if such court be satisfied from the proof that there is good reason and cause for such person to carry such weapon, and all of the other conditions of this act be complied with, said circuit court or the judge thereof in vacation, may grant said license for such purposes, and no other, as said a circuit court may set out in the said license (and the word "court" as used in this act shall include the circuit judge thereof, acting in vacation); but before the said license shall be effective such person shall pay to the sheriff, and the court shall so certify in its order granting the license, the sum of twenty dollars, and shall also file a bond with the clerk of said court, in the penalty of three thousand five hundred dollars, with good security, signed by a responsible person or persons, or by some surety company, authorized to do business in this state, conditioned that such applicant will not carry such weapon except in accordance with his said application and as authorized by the court, and that he will pay all costs and damages accruing to any person by the accidental discharge or improper, negligent or illegal use of said weapon or weapons. Any such license granted after this act becomes effective shall be good for one year, unless sooner revoked, as hereinafter provided, and be co-extensive with the county in which granted, and such other county or counties as the court shall designate in the order granting such license; except that regularly appointed deputy sheriffs having license shall be permitted to carry such revolver or other weapons at any place, within the state, while in the performance of their duties as such deputy sheriffs and except that any such license granted to regularly appointed railway police shall be co-extensive with the state, and all license fees collected hereunder shall be paid by the sheriff and accounted for to the auditor as other license taxes are collected and paid, and the state tax commissioner shall prepare all suitable forms for licenses and bonds and certificates showing that such license has been granted and to do anything else in the premises to protect the state and see to the enforcement of this act. The clerk of the court shall immediately after license is granted as aforesaid, furnish the superintendent of the department of public safety a certified copy of the order of the court granting such license, for which service the clerk shall be paid a fee of two dollars which shall be taxed as cost in the proceeding; within thirty days after this act becomes effective it shall be the duty of the clerks of each court in this state having jurisdiction to issue pistol licenses to certify to the superintendent of the department of public safety a list of all such licenses issued in his county. Provided, that nothing herein shall prevent any person from carrying any such weapon, in good faith and not for a felonious purpose, upon his own premises, nor shall anything herein prevent a person from carrying any such weapon (unloaded) from the place of purchase to his home or place of residence, or to a place of repair and back to his home or residence; but nothing herein shall be construed to authorize any employee of any person, firm or corporation doing business in this state to carry on or about the premises of such employer any such pistol, or other weapon mentioned in this act for which a license is herein required, without having first obtained the license and given the bond as herein provided; and, provided, further, that nothing herein shall prevent agents, messengers and other employees of express companies doing business as common carriers, whose duties require such agents, messengers and other employees to have the care, custody or protection of money, valuables and other property for such express companies, from carrying any such weapon while actually engaged in such duties, or in doing anything reasonably incident to such duties; provided, such express company shall execute a continuing

bond in the penalty of thirty thousand dollars, payable unto the state of West Virginia, and with security to be approved by the secretary of state of the state of West Virginia, conditioned that said express company will pay all damages, accruing to anyone by the accidental discharge or improper, negligent or illegal discharge or use of such weapon or weapons by such agent, messenger or other employee while actually engaged in such duties for such express company, in doing anything that is reasonably incident to such duties; but the amount which may be recovered for breach of such condition shall not exceed the sum of three thousand five hundred dollars in any one case, and such bond shall be filed with and held by the said secretary of state, for the purpose aforesaid, but upon the trial of any cause for the recovery of damages upon said bond, the burden of proof shall be upon such express company to establish that such agent, messenger or other employee was not actually employed in such duties for such express company nor in doing anything that was reasonably incident to such duties at the time such damages were sustained; and, provided further, that nothing herein shall prevent railroad police officers duly appointed and qualified under authority of section thirty-one of chapter one hundred forty-five of Barnes' code or duly qualified under the laws of any other state, from carrying any such weapon while actually engaged in their duties or in doing anything reasonably incident to such duties; provided, such railroad company shall execute a continuing bond in the penalty of ten thousand dollars payable unto the state of West Virginia and with security to be approved by the secretary of state of the state of West Virginia conditioned that said railroad company will pay all damages accruing to anyone by the accidental discharge or improper, negligent or illegal discharge or use of such weapon or weapons by such railroad special police officer whether appointed in this or some other state while actually engaged in such duties for such railroad company, in doing anything that is reasonably incident to such duties, but the amount which may be recovered for breach of such condition shall not exceed the sum of three thousand five hundred dollars in any one case, and such bond shall be filed with and held by the said secretary of state for the purpose aforesaid but upon the trial of any cause for the recovery of damages upon said bond, the burden of proof shall be upon such railroad company to establish that such railroad police officer was not actually employed in such duties for such railroad company nor in doing anything that was reasonably incident to such duties at the time such damages were sustained; and provided, further, that in case of riot, public danger and emergency, a justice of the peace, or other person issuing a warrant, may authorize a special constable and his posse whose names shall be set forth in said warrant, to carry weapons for the purpose of executing a process, and a sheriff in such cases may authorize a deputy or posse to carry weapons, but the justice shall write in his docket the cause and reasons for such authority and the name of the person, or persons, so authorized, and index the same, and the sheriff or other officer shall write out and file with the clerk of the county court the reasons and causes for such authority and the name, or names of the persons so authorized, and the same shall always be open to public inspection, and such authority shall authorize such special constable, deputies and posses to carry weapons in good faith only for the specific purposes and times named in such authority, and upon the trial of every indictment the jury shall inquire into the good faith of the person attempting to defend such indictment under the authority granted by any such justice, sheriff or other officer, and any such person or persons so authorized shall be personally liable for the injury caused to any person by the negligent or unlawful use of any such weapon or weapons. It shall be the duty of all ministerial officers, consisting of the justices of the peace, notaries public and other conservators of the peace of this state, to report to the prosecuting attorney of the county the names of all persons guilty of violating this section, and any person

110

willfully failing so to do, shall be guilty of a misdemeanor and shall be fined not exceeding two hundred dollars, and shall, moreover, be liable to removal from office for such willful failure; and it shall likewise be the duty of every person having knowledge of the violation of this act, to report the same to the prosecuting attorney, and to freely and fully give evidence concerning the same, and any one failing so to do, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not exceeding one hundred dollars; provided, further, that nothing herein contained shall be so construed as to prohibit sheriffs, their regularly appointed deputies, who actually collect taxes in each county, and all constables in their respective counties and districts, and all regularly appointed police officers of their respective cities, towns or villages, all jailors and game protectors who have been duly appointed as such, and members of the department of public safety of this state, from carrying such weapons as they are now authorized by law to carry, who shall have given bond in the penalty of not less than three thousand five hundred dollars, conditioned for the faithful performance of their respective duties, which said officers shall be liable upon their said official bond, for the damages done by the unlawful or careless use of any such weapon or weapons, whether such bond is so conditioned or not. It shall be unlawful for any person armed with a pistol, gun, or other dangerous or deadly weapon, whether licensed to carry same or not, to carry, expose, brandish, or use, such weapon in a way or manner to cause, or threaten, a breach of the peace. Any person violating this provision of this act shall be guilty of a misdemeanor, and upon conviction, shall be fined not less than fifty nor more than three hundred dollars or imprisoned in the county jail not less than thirty nor more than ninety days, or be punished by both fine and imprisonment in the discretion of the court. Any circuit court granting any such license to carry any of the weapons mentioned in this act, the governor, or the superintendent of the department of public safety, with the consent of the governor, may, for any cause deemed sufficient by said court, or by the governor or by the superintendent of the department of public safety with the approval of the governor aforesaid, as the case may be, revoke any such license to carry a pistol or other weapon mentioned in this act for which a license is required, and immediate notice of such revocation shall be given such licensee in person, by registered mail or in the same manner as provided by law for the service of other notices, and no person whose license has been so revoked shall be re-licensed within one year thereafter; provided, that the authority so revoking such license may, after a hearing, sooner reinstate such licensee.

1925 W.Va. Acts 30-31, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms . . . , ch. 3, § 7, pt. b.

(b) It shall be unlawful for any person to carry, transport, or have in his possession any machine gun, sub-machine gun, and what is commonly known as a high powered rifle, or any gun of a similar kind or character, or any ammunition therefor, except on his own premises or premises leased to him for a fixed term, until such person shall have first obtained a permit from the superintendent of the department of public safety of this state, and approved by the governor, or until a license therefore shall have been obtained from the circuit court as in the case of pistols and all such licenses together with the numbers identifying such rifle shall be certified to the superintendent of the department of public safety. Provided, further, that nothing herein shall prevent the use of rifles by bona fide rifle club members who are freeholders or tenants for a fixed term in this state at their usual or customary place of practice, or licensed hunters in the

actual hunting of game animals. No such permit shall be granted by such superintendent except in cases of riot, public danger, and emergency, until such applicant shall have filed his written application with said superintendent of the department of public safety, in accordance with such rules and regulations as may from time to time be prescribed by such department of public safety relative thereto, which application shall be accompanied by a fee of two dollars to be used in defraying the expense of issuing such permit and said application shall contain the same provisions as are required to be shown under the provisions of this act by applicants for pistol licenses, and shall be duly verified by such applicant, and at least one other reputable citizen of this state. Any such permit as granted under the provisions of this act may be revoked by the governor at his pleasure upon the revocation of any such permit the department of public safety shall immediately seize and take possession of any such machine gun, sub-machine gun, high powered rifle, or gun of similar kind and character, held by reason of said permit, and any and all ammunition therefor, and the said department of public safety shall also confiscate any such machine gun, sub-machine gun and what is commonly known as a high powered rifle, or any gun of similar kind and character and any and all ammunition therefor so owned, carried, transported or possessed contrary to the provisions of this act, and shall safely store and keep the same, subject to the order of the governor.

1925 W.Va. Acts 31-32, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace . . . , ch. 3, § 7, pt. b.
It shall be unlawful for any person, firm or corporation to place or keep on public display to passersby on the streets, for rent or sale, any revolver, pistol, dirk, bowie knife, slung shot or other dangerous weapon of like kind or character or any machine gun, sub-machine gun or high powered rifle or any gun of similar kind or character, or any ammunition for the same. All dealers licensed to sell any of the forgoing arms or weapons shall take the name, address, age and general appearance of the purchaser, as well as the maker of the gun, manufacturer's serial number and caliber, and report the same at once in writing to the superintendent of the department of public safety. It shall be unlawful for any person to sell, rent, give or lend any of the above mentioned arms to an unnaturalized person.

## WISCONSIN

Charter and Ordinances of the City of La Crosse [WI], with the Rules of the Common Council Page 202, Image 205 (1888) available at The Making of Modern Law: Primary Sources. 1888 An Ordinance in Relation to the Discharge of Firearms and firecrackers and to the use and exhibition of fireworks, § 1. No person shall fire or discharge any cannon, gun, fowling piece, pistol or firearms of any description, or fire, explode or set off any squib, cracker or other thing containing powder or other combustible or explosive material, or set off or exhibit any fireworks within the limits of the city of La Crosse, without having first obtained written permission from the mayor, which permission shall limit the time and fix the place of such firing, and shall be subject to be revoked at any time after the same may have been granted. Any violation of this ordinance shall subject the person or persons so violating the same to a fine of not less than one dollar nor exceeding twenty-five dollars; but this ordinance shall not be construed to prohibit the discharge of firearms by the chief of police or any of his subordinates or any peace officer when required or made necessary in the performance of any duty imposed by law.

112

Charter and Ordinances of the City of La Crosse, with the Rules of the Common Council Page 239-242, Image 242-245 (1888) available at The Making of Modern Law: Primary Sources. 1888

Ordinances of La Crosse, An Ordinance to Provide for Licensing Vendors of Gunpowder and Other Explosive Substances and to Regulate the Storing, Keeping and Conveying of all Dangerous and Explosive Materials and Substances within the City of La Crosse, and in relation to the Storage and Sale of Lime Therein, § 1. It shall be unlawful for any person to keep for sale, sell or give away any gunpowder, giant powder, nitro-glycerine, gun-cotton, dynamite or any other explosive substance of like nature or use without having first obtained a license therefor from the city of La Crosse in the manner hereinafter provided. Any person convicted of a violation of this section shall be punished by a fine of twenty-five dollars for each offense. . . § 3. It shall be unlawful for any person licensed pursuant to the foregoing sections of this ordinance to have or keep at his or her place of business an amount of gunpowder or other explosive material greater in the aggregate than fifty pounds at any one time, or to keep the same in any other than cases or canisters made of tin, or other metal holding not to exceed ten pounds each. Such gunpowder or other explosive materials shall be kept in places remote from fires and lighted lamps or candles, and where the same may be easily accessible so as to be removed in case of fire. No person shall sell any gunpowder or other explosive material after the lighting of lamps in the evening unless in sealed canisters or cases; and all places where business is carried on under any such license shall have a sign put up in a conspicuous place at or near the front door thereof with the word "gunpowder" painted thereon in large letters. Any person violating any provision of this section shall, upon conviction, be punished by a fine of not less than five dollars nor more than fifty dollars for each offense; and upon any such conviction the common council may at its discretion by resolution duly passed revoke the license of the person so convicted. This ordinance shall not be construed as to prevent persons who are not vendors of the articles mentioned in the title thereof from keeping gunpowder in quantities not exceeding one pound for their own use.

Charles H. Hamilton, ed., The General Ordinances of the City of Milwaukee to January 1, 1896: With Amendments Thereto and an Appendix (Milwaukee, WI: E. Keough, 1896), pp.692-93, Sec. 25. 1896

Chapter XX. Misdemeanors.

Section 25.  It shall be unlawful for any person except policemen, regular or special, or any officer authorized to serve process, to carry or wear concealed about his person, any pistol or colt, slung-shot, cross-knuckles, knuckles of lead, brass or other metal, or bowie -knife, dirk knife, or dirk or dagger, or any other dangerous or deadly weapon, within the limits of the city of Milwaukee; provided, however, that the chief of police of said city may upon any written application to him made, issue and give a written permit to any person residing within the city of Milwaukee, to carry within the said city a pistol or revolver when it is made to appear to said chief of police that it is necessary for the personal safety of such person or for the safety of his property or of the property with which he may be entrusted, to carry such weapon; and the holding of such permit by such person shall be a bar to prosecution under this ordinance. Said chief of police shall keep the names and residences of all persons to whom he may grant such permits, in a book to be kept for that purpose, and he shall have power to revoke such permit at any time.

Said chief of police shall, upon granting each and every such permit, collect from the person to whom the same is granted, the sum of three ( 3 ) dollars, and he shall pay all moneys so collected by him upon granting such permits, into the city treasury.

Any person who shall wear or carry any such pistol , slung-shot, cross-knuckles, knuckles of brass, lead or other metal, knife, dirk or dagger, or any other dangerous or deadly weapon, within the limits of the city of Milwaukee, contrary to the provisions of this chapter, shall be liable to a penalty of not less than ten nor more than one hundred dollars for each and every offense.

1931-1933 Wis. Sess. Laws 245-47, An Act . . .Relating to Machine Guns and to Make Uniform the Law with Reference Thereto, ch. 76, § 1, pt. 164.01 to 164.06.

164.01 Definitions (a) "Machine gun" applies to and includes a weapon of any description by whatever name known from which more than two shots or bullets may be discharged by a single function of the firing device. . .

164.02 Use of Machine Gun is a Separate Crime. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not less than twenty years.

164.03 Possession for Aggressive Purpose. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term not less than ten years.

164.04 Possession when Presumed For Aggressive Purpose. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose; (1) when the machine gun is on premises not owned or rented, for a bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or (2) when in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or (3) When the machine gun is of the kind described in section 164.08 and has not been registered as in said section required; or (4) When empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been used or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

164.05 Presumptions from Presence of Gun. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

164.06 Exceptions. Nothing contained in this chapter shall prohibit or interfere with the manufacture for, and sale of , machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose; the possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake; the possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifestly not aggressive or offensive. . . [manufacturers and owners required to register].

## WYOMING

A. McMicken, The Revised Ordinances of the City of Rawlins, Carbon County, Wyoming Page 115-116, Image 116-117 (1893) available at The Making of Modern Law: Primary Sources. 1893

[Ordinances of the] City of Rawlins, Article II, Protection of Persons and Property, § 1. If any person shall within this city fire or discharge any cannon, gun, fowling piece, pistol or firearms of any description, or fire, explode, or set off any squib, cracker, or anything containing powder or other combustible or explosive material, without permission of the Board of Trustees, or the written permission of the mayor (which permission shall limit the time of the firing and shall be subject to be revoked by the mayor or Board of Trustees at any time after the same has been granted) every such person shall, on conviction, be fined in a sum of not less than five dollars and not exceeding one hundred dollars.

1899 Wyo. Sess. Laws 32-33, An Act for the Better Protection of the Game and Fish of this State . . . , ch. 19, § 14.

Any person who is a bona fide citizen of the State of Wyoming shall, upon payment of one dollar to any Justice of the Peace of the county in which he resides, be entitled to receive from said Justice of the Peace, a gun license, which license shall permit such person to pursue, hunt and kill any of the animals mentioned in this Section, during the time allowed therefor. . . . Any person who is not a resident of the State of Wyoming, shall upon payment to any Justice of the Peace of this State of the sum of forty dollars to be entitled to receive from such Justice of the Peace a license, which license shall permit such person to pursue, hunt and kill any of the animals mentioned in this Section, during the time allowed therefor of the current year.

1913 Wyo. Sess. Laws 165, An Act . . . Relating to the Duties of the State Game Warden, Assistant and Deputy Game Wardens, and the Preservation of the Game Animals and Game Birds and Fish of the State of Wyoming . . . , ch. 121, § 38.

That Section 20 . . . be . . . amended . . . § 20. Any person who is not a bona fide elector of this state, or the child or legal ward of a bona fide elector of this state, or a soldier or sailor who is a bona fide elector of the United States, and has been stationed at a government post within this state for one year past, or non-residents having property in this state on which they pay taxes to the amount of $100.00 or over annually, but who shall be a citizen of the United States or a free-holder in this state, shall upon payment of five dollars to any Justice of the Peace . . . be entitled to receive from such officer a gunner's license, which license shall permit such person to kill any of the game birds of this state during the current season under the restrictions heretofore and hereinafter imposed.

1915 Wyo. Sess. Laws 91, An Act Relating to the Preservation of the Game Animals, Game Birds, and Fish of the State of Wyoming . . . , ch. 91, § 13.

There is hereby created a special gun and fish license for aliens. No person, not a bona fide citizen of the United States, shall own or have in his possession, in the State of Wyoming, any gun, pistol or other firearm, or any fishing tackle, without first having obtained the specified license therefor, which such special gun and fish license shall cost the owner the sum of Twenty-five Dollars[.]

1933 Wyo. Sess. Laws 117, An Act Relating to the Registering and Recording of Certain Facts Concerning the Possession and Sale of Firearms by all Wholesalers, Retailers, Pawn Brokers,

115

Dealers and Purchasers, Providing for the Inspection of Such Register, Making the Violation of the Provisions Hereof a Misdemeanor, and Providing a Penalty Therefor, ch. 101, §§ 1-4. § 1. All wholesalers, retailers, dealers and pawn brokers are hereby required to keep a record of all firearms which may come into their possession, whether new or second hand, which record shall be known as the Firearms Register. Such register shall contain the following information, to wit: the name of the manufacturer, person, persons, firm or corporation from whom the firearm was obtained, the date of its acquisition, its manufacturer's number, its color, its caliber, whether the same is new or second hand, whether it is automatic, a revolver, a single shot pistol, a rifle, a shot gun or a machine gun, the name of the party to whom said firearm is sold in such purchasers handwriting and the date of such sale. § 2. Every person who purchases any firearm from any retailer, pawn broker or dealer, shall sign his name or make his mark properly witnessed, if he cannot write, on said Firearm Register, at the time of the delivery to him of any firearm so purchased. § 3. The firearm register, herein required to be kept, shall be prepared by every wholesaler, retailer, pawn broker and dealer in firearms in the state of Wyoming within 30 days after this Act shall become effective and shall thereafter be continued as herein provided. It shall be kept at the place of business of said wholesaler, retailer, pawn broker or dealer, and shall be subject to inspection by any peace officer at all reasonable times. § 4. Any person, firm or corporation who shall fail or refuse to comply with the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not to exceed $100.00, or imprisoned in the County Jail for a period of not to exceed six months, or by both such fine and imprisonment.

Sources: https://firearmslaw.duke.edu/repository/search-the-repository/; Genesa C. Cefali and Jacob D. Charles, "A Brief Overview of Gun Registration in U.S. History," *New Histories of Gun Rights and Regulation,* Joseph Blocher, Jacob D. Charles and Darrell A.H. Miller, eds. (NY: Oxford University Press 2023), 167-94.

**EXHIBIT F**

# EXHIBIT F

# FIREARM HARDWARE RESTRICTIONS TABLE
# (YEARS OF ENACTMENT)

| STATE | AUTOMATIC FIREARMS | SEMI-AUTOMATIC FIREARMS | AMMUNITION FEEDING DEVICES/ FIRING LIMITS |
|---|---|---|---|
| Alabama | | | |
| Alaska | | | |
| Arizona | | | |
| Arkansas | 1931, 1935 | | |
| California | 1927, 1933 | | 1927, 1933 |
| Colorado | | | |
| Connecticut | 1935 | | |
| Delaware | 1931 | | |
| District of Columbia | 1932 | 1932 | 1932 |
| Florida | 1913[1], 1933 | | |
| Georgia | | | |
| Hawaii | 1933 | | 1933 |
| Idaho | | | |
| Illinois | 1931 | 1931* | 1931 |
| Indiana | 1927, 1929 | | |
| Iowa | 1927 | | |
| Kansas | 1933 | | |
| Kentucky | | | |
| Louisiana | 1932 | 1932* | 1932 |
| Maine | | | |
| Maryland | 1927 | | |
| Massachusetts | 1927 | 1927 | 1927 |
| Michigan | 1927, 1929 | 1927, 1929 | 1927 |
| Minnesota | 1933 | 1933 | 1933, 1933 |
| Mississippi | | | |
| Missouri | 1929 | | 1929 |
| Montana | 1935 | | |
| Nebraska | 1929 | | |
| Nevada | | | |

---

[1] "It shall, at any time, be unlawful to hunt wild game in Marion County with guns–known as Automatic guns."

| | | | |
|---|---|---|---|
| New Hampshire | | | |
| New Jersey | 1927, 1934 | | 1920, 1927 |
| New Mexico | | | |
| New York | 1931, 1933 | | |
| North Carolina | 1933 | | 1917 |
| North Dakota | 1931 | | 1931 |
| Ohio | 1933 | 1933 | 1933 |
| Oklahoma | | | |
| Oregon | 1933 | | 1933 |
| Pennsylvania | 1929 | | 1929 |
| Rhode Island | 1927 | 1927 | 1927 |
| South Carolina | 1934 | 1934* | 1934 |
| South Dakota | 1933 | 1933 | 1933 |
| Tennessee | | | |
| Texas | 1933 | | 1933 |
| Utah | | | |
| Vermont | 1923 | | 1923 |
| Virginia | 1934 | 1934 | 1934 |
| Washington State | 1933 | | 1933 |
| West Virginia | 1925 | | |
| Wisconsin | 1929, 1933 | | 1933 |
| Wyoming | 1933 | | |
| NUMBER OF STATES | 36 | 8–11 | 23 |
| NUMBER OF LAWS | 44 | 12 | 26 |

*Ambiguous cases.

Source: https://firearmslaw.duke.edu/repository-of-historical-gun-laws/advanced-search;

HeinOnline

**EXHIBIT G**

## EXHIBIT G

## MACHINE GUN AND SEMI-AUTOMATIC FIREARMS LAWS

## <u>ARKANSAS</u>

1931 Ark. Laws 704, 704-6
ACT 225.
AN ACT to Prohibit the Possession, Transportation or Sale of Machine Guns, and Inflicting Penalty for Violation Thereof.
SECTION 1. It shall be unlawful for any person or persons in any manner to transport from one place to another in this State, or for any railroad company, or express company, or other common carrier, or any officer, agent; or employee of any of them, or any other person acting in their behalf knowingly to ship or to transport from one place to another in this State in any manner or by any means whatsoever, except as hereinafter provided, any firearm of the type commonly known as a machine gun.
SECTION 2. It shall be unlawful for any person to store, keep, possess, or have in possession, or permit another to store, keep, possess, or have in possession, except as hereinafter provided, any firearm of the type commonly known as a machine-gun.
SECTION 3. It shall be unlawful for any person to sell, or give away, or be interested directly or indirectly, in the sale or giving away, of any firearm of the type commonly known as a machine-gun.
SECTION 4. Provided, this Act shall not apply to the military authorities of the State or nation, and provided further, that any peace officer of the State, counties or political subdivision thereof, may possess machine-guns when required in the performance of their duties. After April 1, 1931, every person permitted by this Act to possess a machine-gun, shall file in the office of the Secretary of State, on a blank to be supplied by the Secretary of State, an application to be properly sworn to, which shall include his name and address, and the serial number of the machine-gun which he desires to possess. Thereupon, the Secretary of State shall file such application his office, registering such officer in a book or index to be kept for that purpose, and assign to him a number, and issue to him a card, which he shall keep with him while he has such machine-gun in his possession. Such registration shall be made on the date application is received and filed with the Secretary of State, and shall expire on December 31, of the year in which said license is issued.

SECTION 5. Any person violating any part of this law shall upon conviction be fined in any sum not more than $1,000.00, and not less than $100.00, and the machine-gun or guns found in his possession shall be confiscated and-the title thereof shall pass to the political subdivision of the State making the capture.

SECTION 6. All laws and parts of laws in conflict herewith are hereby repealed, and whereas criminals are using machine-guns for illegal purposes, this Act being necessary for the immediate preservation of the public peace, health, and safety, an emergency is hereby declared, and it shall be in force and effect from and after its passage.

Approved: March 26th, 1931.

1935 Ark. Laws 171, 171-75

ACT 80.

"AN ACT Relating to Machine Guns, and to Make Uniform the Law With Reference Thereto."

Be It Enacted by the General Assembly of the State of Arkansas;

SECTION 1. "Machine Gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than five shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. . . .

SECTION 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of (not less than twenty years).

SECTION 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of (not less than ten years).

SECTION 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose;

(a) when the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) when in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) when the machine gun is of the kind described in Section 8 and has not been registered as in said section required; or

(d) when empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

3

SECTION 5. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

SECTION 6. Nothing contained in this act shall prohibit or interfere with 1. the manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose; 2. the possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake; 3. the possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifestly not aggressive or offensive.

SECTION 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given, or delivered, or from whom it was
received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every manufacturer shall permit any 'marshal, sheriff or police officer to inspect his entire stock of machine guns, parts, and supplies therefor, and shall produce the register, herein required, for inspection. A violation
of any provision of this section shall be punishable by a fine of (not less than ............ hundred dollars).

SECTION 8. Every machine gun now in this State adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the (Secretary of state), on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within 24 hours after its acquisition. Blanks for registration shall be prepared by the (secretary of
State), and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which the gun was acquired. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section, shall be presumed to possess the same for offensive or aggressive purpose.

SECTION 9. Warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record upon application of the (district attorney), shall have jurisdiction and power to order any machine gun, thus or otherwise legally seized, to be confiscated and

4

either destroyed or delivered to a peace officer of the State or a political subdivision thereof. . . .

SECTION 14. WHEREAS, under the present law of the state of Arkansas the officers of the state are powerless to effectively combat crime, therefore, it being necessary for the preservation of the public peace, health and safety, an emergency is hereby declared, and this act shall take effect and be in force from and after its passage and approval.

APPROVED: February 26, 1935.


## CALIFORNIA:

1927 Cal. Stat. 938, An Act to Prohibit the Possession of Machine Rifles, Machine Guns and Submachine Guns Capable of Automatically and Continuously Discharging Loaded Ammunition of any Caliber in which the Ammunition is Fed to Such Guns from or by Means of Clips, Disks, Drums, Belts or other Seperable Mechanical Device, and Providing a Penalty for Violation Thereof, ch. 552, §§ 1-2.

§ 1. . . . [E]very person, firm or corporation, who within the State of California possesses any firearm of the kind commonly known as a machine gun shall be guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison not to exceed three years or by a fine not to exceed five thousand dollars or by both such fine and imprisonment. Provided, however that nothing in this act shall prohibit police departments and members thereof, sheriffs, and city marshals or the military or naval forces of this state or of the United States from possessing such firearms for official use in the discharge of their duties.

§ 2. The term machine gun as used in this act shall be construed to apply to and include all firearms known as machine rifles, machine guns or submachine guns capable of discharging automatically and continuously loaded ammunition of any caliber in which the ammunition is fed to such gun from or by means of clips, disks, drums, belts or other separable mechanical device.

1933 Cal. Stat. 1169

§ 2. [E]very person, firm or corporation, who within the State of California sells, offers for sale, possesses or knowingly transports any firearms of the kind commonly known as a machine gun … is guilty of a public offense…

 § 3. The term machine gun as used in this act shall be construed to apply to and include all firearms known as machine rifles, machine guns, or submachine guns capable of discharging automatically and continuously loaded ammunition of any caliber in which the ammunition is fed to such gun from or by means of clips,

5

discs, drums, belts or other separable mechanical device and all firearms which are automatically fed after each discharge from or by means of clips, discs, drums, belts or other separable mechanical device having a capacity greater than ten cartridges.

1933 Cal. Stat. 1169

§ 2. [E]very person, firm or corporation, who within the State of California sells, offers for sale, possesses or knowingly transports any firearms of the kind commonly known as a machine gun … is guilty of a public offense…

§ 3. The term machine gun as used in this act shall be construed to apply to and include all firearms known as machine rifles, machine guns, or submachine guns capable of discharging automatically and continuously loaded ammunition of any caliber in which the ammunition is fed to such gun from or by means of clips, discs, drums, belts or other separable mechanical device and all firearms which are automatically fed after each discharge from or by means of clips, discs, drums, belts or other separable mechanical device having a capacity greater than ten cartridges.

## CONNECTICUT

1935 Conn. Laws 389, 389-94

CHAPTER 152

AN ACT CONCERNING MACHINE GUNS.

Be it enacted by the Senate and House of Representatives in General Assembly convened:

SECTION 1. The term "Machine Gun," as used in this act, shall apply to and include a weapon of any description, loaded or unloaded, from which more than five shots or bullets may be rapidly, or automatically, or semi-automatically, discharged from a magazine, by a single function of the firing device. . . .

SEC. 2. Any person who shall possess or use a machine gun in the perpetration or attempted perpetration of a crime of violence shall be imprisoned not more than twenty years.

Sc. 3. Any person who shall possess or use a machine gun for an offensive or aggressive purpose shall be imprisoned not more than ten years.

SEC. 4. The possession or use of a machine gun shall be presumed to be for an offensive or aggressive purpose: (a) When the machine gm shall be on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun was found; or (b) when in the possession of, or use by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any state or federal court of record of the

6

United States of America, its territories or insular possessions; or (e) when the machine gun shall be of the kind described in section seven hereof and has not been registered as in said section required; or (d) when empty or loaded pistol shells of thirty (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun shall be found in the immediate vicinity thereof.

SEc. 5. The presence of a machine gun in any room, boat or vehicle shall be presumptive evidence of the possession or use of the machine gun by each person occupying such room, boat or vehicle.

SEc. 6. Each manufacturer shall keep a register of all machine guns manufactured or handled by him. Such register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of each machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered. Upon demand, any manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, and parts and supplies therefor, and shall produce the register, herein required, for inspection. Any person who shall violate any provision of this section shall be fined not more than two thousand dollars.

SEc. 7. Each machine gun in this state on July 1, 1935, adapted to use pistol cartridges of thirty (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the commissioner of the state police on July 1, 1935, and annually thereafter on the first day of July. If acquired after July 1, 1935, it shall be registered within twenty-four hours after its acquisition and, thereafter, annually, on the first day of July. Blanks for registration shall be prepared by said commissioner and furnished upon application. To comply with this section, the application as filed shall show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which the gun was acquired. The registration data shall not be subject to inspection by the public. Any person who shall fail to register any gun as required by this section shall be presumed to possess the same for an offensive or aggressive purpose. The provisions of this section shall not apply to any machine gun which has been registered under the provisions of section six of this act and which is still in the actual possession of the manufacturer.

SEC. 8. A warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of thirty (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record, upon application of

7

the state's attorney, shall have authority to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the state or of a political subdivision thereof.
SEC. 9. No provision of this act shall apply to the manufacture of machine guns for sale or transfer to the United States government, to any state, territory or possession of the United States or to any political subdivision thereof or to the District of Columbia.
Sec. 10. This act shall take effect from its passage.

## DELAWARE:

1931 Del. Laws 813, An Act Making it Unlawful for any Person or Persons Other than the State Military Forces or Duly Authorized Police Departments to have a Machine Gun in his or their Possession, and Prescribing a Penalty for Same, ch. 249, § 1.
On and after the passage and approval of this Act it is and shall be unlawful for any person or persons other than the State Military Forces or duly authorized Police Departments to have a machine gun in his or their possession, within the State of Delaware. Any person or persons convicted under the provisions of this Act shall be deemed guilty of a felony and shall be punished by either fine or imprisonment, or both, in the discretion of the Court . . . .

## DISTRICT OF COLUMBIA:

District of Columbia 1932:
1932, Public-No. 275-72D Congress
CHAPTER 465
H.R. 8754
AN ACT To Control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties to prescribe rules of evidence, and for other purposes.
DEFINITIONS
SECTION 1. "Pistol," as used in this Act, means any firearm with a barrel less than twelve inches in length. "Sawed-off shotgun" as used in this Act, means any shotgun with a barrel less than twenty inches in length. "Machine gun," as used in this Act, means any firearm which shoots automatically or semiautomatically more than twelve shots without reloading. . . .
SEC. 2. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment

8

for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than ten years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than fifteen years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than thirty years.

PERSONS FORBIDDEN TO POSSESS CERTAIN FIREARMS

SEC. 3. No person who has been convicted in the District of Columbia or elsewhere of a crime of violence shall own or have in his possession a pistol, within the District of Columbia.

CARRYING CONCEALED WEAPONS

SEC. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

EXCEPTIONS

SEC. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law -enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

ISSUE OF LICENSES TO CARRY

SEC. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United

9

States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed. The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.

SEC. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of eighteen years.

TRANSFERS REGULATED

SEC. 8. No seller shall within the District of Columbia deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, except in the case of sales to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law enforcement officers, and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase of a pistol the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. The seller shall, within six hours after such application, sign and attach his address and deliver one copy to such person or persons as the superintendent of police of the District of Columbia may designate, and shall retain the other copy for six years. No machine gun, sawed-off shotgun, or

blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia. This section shall not apply to sales at wholesale to licensed dealers.

DEALERS TO BE LICENSED

SEC. 9. No retail dealer shall within the District of Columbia sell or expose for sale or have in his possession with intent to sell, any pistol, machine gun. sawed - oft shotgun, or blackjack without being licensed as hereinafter provided. No wholesale dealer shall, within the District of Columbia, sell, or have in his

10

possession with intent to sell, to any person other than a licensed dealer, any pistol, machine gun, sawed -oil shotgun, or blackjack.

DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF

SEC. 10. The Commissioners of the District of Columbia may, in their discretion, grant licenses and may prescribe the form thereof, effective for not more than one year from date of issue, permitting the licensee to sell pistols, machine guns, sawed-off shotguns, and blackjacks at retail within the District of Columbia subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be subject to forfeiture and the licensee subject to punishment as provided in this Act. 1. The business shall be carried on only in the building designated in the license. 2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read. 3. No pistol shall be sold (a) if the seller has reasonable cause to believe that the purchaser is not of sound mind or is a drug addict or has been convicted in the District of Columbia or elsewhere of a crime of violence or is under the age of eighteen years, and (b) unless the purchaser is personally known to the seller or shall present clear evidence of his identity. No machine gun, sawed-off shotgun,

or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained

from the superintendent of police of the District of Columbia. 4. A true record shall be made in a book kept for the purpose the form of which may be prescribed by the Commissioners, of pistols, machine guns, and sawed-off shotguns in the possession of the licensee, which said record shall contain the date of purchase, the caliber, make, model, and manufacturer's number of the weapon, to which shall be added, when sold, the date of sale. 5. A true record in duplicate shall be made of every pistol, machine gun, sawed-off shotgun, and blackjack sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners of the District of Columbia and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other and shall contain the date of sale, the name, address, occupation, color, and place of birth of the purchaser, and, so far as applicable, the caliber, make, model, and manufacturer's number of the weapon, and a statement signed by the purchaser that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. One copy of said record shall, within seven days, be forwarded by mail to the superintendent of police of the District of Columbia and the other copy retained by the seller for six years. 6. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of said premises where it can readily

11

be seen from the outside. No license to sell at retail shall be granted to anyone except as provided in this section.

FALSE INFORMATION FORBIDDEN

SEC. 11. No person, shall, in purchasing a pistol or in applying for a license to carry the same, or in purchasing a machine sawed-off shotgun, or blackjack within the District of Columbia, give false information or offer false evidence of his identity.

ALTERATION OF IDENTIFYING MARKS PROHIBITED

SEC. 12. No person shall within the District of Columbia change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark or identification on any pistol,

machine gun, or sawed-off shotgun. Possession of any pistol, machine gun, or sawed-off shotgun upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia: Provided, however, That nothing contained in this section shall apply to any officer or agent of any of the departments of the United States or the District of Columbia engaged in experimental work.

SEC. 13. This Act shall not apply to toy or antique pistols unsuitable for use as firearms.

SEC. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms: Provided, however, That machine guns, or sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen,

or other duly appointed law -enforcement officers, officers or employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securities, or other valuables, wholesale dealers

and retail dealers licensed under section 10 of this Act.

PENALTIES

SEC. 15. Any violation of any provision of this Act for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.

CONSTITUTIONALITY

SEC. 16. If any part of this Act is for any reason declared void, provision not to affect remainder, such invalidity shall not affect the validity of the remaining portions of this Act.

Approved, July 8, 1932.

https://www.loc.gov/resource/llsalvol.llsal_047/?sp=675&st=text&r=0.041,0.112,0.75,0.862,0

## FLORIDA:

1913 Fla. 117, An Act to Regulate the Hunting of Wild Deer etc., § 8.
It shall, at any time, be unlawful to hunt wild game in Marion County with guns–known as Automatic guns.

1933 Fla. Laws 623, An Act to Prevent Throwing of Bombs and the Discharge of Machine Guns Upon, or Across Any Public Road in the State of Florida . . ., ch. 16111, § 1.
That it shall be unlawful for any person to throw any bomb or to shoot off or discharge any machine guns upon, across or along any road, street or highway in the State of Florida, or upon or across any public park in the State of Florida, or in, upon or across any public place where people are accustomed to assemble in the State of Florida, and the casting of such bomb or the discharge of such machine gun in, upon or across such public street, or in, upon or across such public park, or in, upon or across such public place, whether indoors or outdoors, including all theatres and athletic stadiums, with intent to do bodily harm to any person or with intent to do damage to the property of any person, shall be a felony and shall be punishable by death.

## HAWAII:

1933 Haw. Special Sess. Laws 117, An Act . . . Regulating The Sale, Transfer And Possession Of Certain Firearms, Tear Gas And Ammunition: § 2.
Except as permitted under the provisions of this Act, no person, firm or corporation shall own, possess, sell, offer for sale or transport any firearm of the kind commonly known as a machine gun or any shell cartridge or bomb containing or capable of emitting tear gas or any other noxious gas. Provided, however, that nothing in this Act contained shall prohibit the sale to, purchase by, or possession of such firearms by any city and county, county, territorial or federal officer where such firearms are required for professional use in the discharge of his duties, nor to the transportation of such firearms for or on behalf of police departments and members thereof, sheriffs, or the military or naval forces of this Territory or of the

13

United States and "Provided, further that nothing in this Act shall prohibit police departments and members thereof, sheriffs, or the military or naval forces of the territory or of the United States from possessing or transporting such shells, cartridges or bombs for professional use in the discharge of their duties. "The term 'shell, cartridge or bomb', as used in this Act shall be construed to apply to and include all shells, cartridges, or bombs capable of being discharged or exploded through or by the use of percussion caps, fuses, electricity, or otherwise, when such discharge or explosion will cause or permit the release or emission of tear gases. The term 'machine gun' as used in this Act shall be construed to apply to and include machine rifles, machine guns and submachine guns capable of automatically and continuously discharging loaded ammunition of any caliber in which the ammunition is fed to such guns from or by means of clips, disks, drums, belts or other separable mechanical device."

1933 Haw. Sess. Laws 36, An Act Regulating the Sale, Transfer, and Possession of Firearms and Ammunition, § 2.
Definitions. "Firearm" as used in this Act means any weapon, the operating force of which is an explosive. This definition includes pistols, revolvers, rifles, shotguns, machine guns, automatic rifles, noxious gas projectors, mortars, bombs, cannon and sub-machine guns. The specific mention herein of certain weapons does not exclude from the definition other weapons operated by explosives. "Crime of violence" as used in this Act means any of the following crimes, namely: murder, manslaughter, rape, kidnapping, robbery, burglary, and those certain crimes set forth in Sections 4130 and 4131 of said Revised Laws. "Pistol" or "revolver" as used in this Act, means and includes any firearm of any shape whatsoever with barrel less than twelve inches in length and capable of discharging loaded ammunition or any noxious gas. "'Person" as used in this Act includes individuals, firms, corporations and copartnerships, and includes wholesale and retail dealers.

**ILLINOIS:**

1931 Ill. Laws 452-53, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, §§ 1-2.
§ 1. For purposes of this Act the term "machine gun" apples to and includes all firearms commonly known as machine rifles, machine guns and sub-machine guns of any calibre whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts, or other separable mechanical device.

The term "manufacturer" shall apply to and include all persons dealing with machine guns as merchandise.

§ 2. It is unlawful for any person to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun within this State, except that 1. Sheriffs, constables, marshals, police officers and other duly appointed peace officers may purchase, possess, carry and transport machine guns. 2. The provisions of this Act shall not apply to the Army, Navy or Marine Corps of the United States, the National Guard, and organizations authorized by law to purchase or receive machine guns from the United States, or from this State, and the members of such Corps, National Guard and organizations while on duty, may possess, carry and transport machine guns. 3. Persons, organizations or institutions possessing war relics may purchase and possess machine guns which are relics of any war in which the United States was involved, may exhibit and carry such machine guns in the parades of any military organization, and may sell, offer to sell, loan or give such machine guns to other persons, organizations or institutions possessing war relics. 4. Guards or messengers employed by common carriers, banks and trust companies, and pay-roll guards or messengers may possess and carry machine guns while actually employed in and about the shipment, transportation or delivery, or in the guarding of any money, treasure, bullion, bonds or other thing of value, and their employers may purchase or receive machine guns and keep them in their possession when such guns are not being used by such guards or messengers 5. Manufacturers and merchants may sell, keep or offer for sale, loan or give away, purchase, possess and transport, machine guns, in the same manner as other merchandise except as hereinafter provided, and common carriers may possess and transport unloaded machine guns, as other merchandise.

1931 Ill. Laws 453, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, § 4.

Every manufacturer or merchant shall keep a register of all machine guns manufactured or handled by him. This register shall show the date of the sale, loan, gift, delivery or receipt of any machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received, and the purpose for which the person to whom the machine gun was sold, loaned, given or delivered, purchased or obtained said machine gun. Upon demand, every manufacturer or merchant shall permit any sheriff or deputy sheriff, or any police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register herein required and all written permits to purchase or possess a machine gun, which he has retained and filed in his place of business for inspection by such officer.

15

1931 Ill. Laws 454, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, § 7.

Any person committing or attempting to commit arson, assault, burglary, kidnapping, larceny, rioting, or robbery while armed with a machine gun shall be imprisoned in the penitentiary for his natural life, or for a term not less than five years.

## INDIANA:

1927 Ind. Acts 469, Public Offenses—Ownership, Possession or Control of Machine Guns or Bombs—Penalty, ch. 156, § 1.

. . . [W]hoever shall be the owner of, or have in his possession, or under his control, in an automobile, or in any other way, a machine gun or bomb loaded with explosives, poisonous or dangerous gases, shall be deemed guilty of a felony, and upon conviction thereof, shall be imprisoned for a term of not less than one year nor more than five years.

1927 Ind. Acts 469, Operation of Machine Guns, Discharge of Bombs—Offense and Penalty:, ch. 156, § 2.

Whoever shall discharge, fire off, or operate any loaded machine gun, or whoever shall drop form an airplane, automobile, or from any building or structure, or who shall throw, hurl, or drop from ground or street, or keep in his possession and under his control any bomb filled with deadly or dangerous explosives, or dangerous or poisonous gases, shall be deemed guilty of a felony and upon conviction shall be imprisoned for a term of not less than two nor more than ten years.

1929 Ind. Acts 139, Criminal Offenses—Commission of or Attempt to Commit Crime While Armed with Deadly Weapon, ch.55, § 1.

Be it enacted by the general assembly of the State of Indiana, That any person who being over sixteen years of age, commits or attempts to commit either the crime of rape, robbery, bank robbery, petit larceny or grand larceny while armed with a pistol, revolver, rifle, shotgun, machine gun or any other firearm or any dangerous or deadly weapon, or while any other person present and aiding or assisting in committing or attempting to commit either of said crimes is armed with any of said weapons, shall be guilty of a seperate felony in addition to the crimes above named and upon conviction shall be imprisoned for a determinate period of not less than ten years nor more than twenty years . . . .

16

## IOWA:

1927 Iowa Acts 201, An Act to prohibit the Possession or Control of Machine Guns. . . ., §§ 1-2.

§ 1. No person, firm, partnership, or corporation shall knowingly have in his or its possession or under his or its control any machine gun which is capable of being fired from the shoulder or hip of a person, and by the recoil of such gun.

§ 2. No person, firm, partnership, or corporation shall do any act with the intent to enable any other person, firm, partnership, or corporation to obtain possession of such gun.

## KANSAS:

1933 Kan. Sess. Laws 76, An Act Relating to Machine Guns and Other Firearms Making the Transportation or Possession Thereof Ulawful in Certain Cases, Providing for Search, Seizure and Confiscation Thereof in Certain Cases, Relating to the Ownership and Registration of Certain Firearms, and Providing Penalties for the Violation of this Act, ch. 62, §§ 1-3.

§ 1. That is shall be unlawful for any person, firm, or corporation other than a sheriff or other peace officer or any military unit of the state or of the United States or any common carrier for hire, to transport or have in his possession or under his control a firearm known as a machine rifle, machine gun, or submachine gun: Provided, That banks, trust companies or other institutions or corporations subject to unusual hazard from robbery or holdup, may secure permits form the sheriff of the county in which they are located for one or more of their employees to have such firearms: Provided further, That museums, American Legions posts, and other similar patriotic organizations may possess such firearms, when no usable as a weapon and when possessed as a curiosity, ornament or keepsake.

§ 2. That any person violating the provisions of the preceding section shall be guilty of a felony, and upon conviction shall be subject to imprisonment in the state penitentiary for not less than one year nor more than five years.

§ 3. Upon complaint being made on oath to any officer authorized to issue process for the apprehension of offenders that a firearm or firearms known as a machine rifles, machine guns or sub-machine guns as described in this act, are concealed in any particular house or place, and if such magistrate shall be satisfied that there are reasonable grounds for believing same to be true, he shall issue a warrant to search the house or place for such firearms . . . .

## LOUISIANA:

17

1932 La. Acts 337-38, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, and Providing a Penalty for a Violation Hereof . . . , §§ 1-2.

§ 1. . . . for the purpose of this Act the term "machine gun" applies to and include all firearms commonly known as machine rifles, machine guns and sub-machine guns of any caliber whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts, or other separable mechanical device.

§ 2. It is unlawful for any person to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun within this State, except that (exceptions for law enforcement, military, war relics, museums, guards, messengers) . . . .

## MARYLAND:

1927 Md. Laws 156, § 388-B.

That not person, persons house, company, association or body corporate, shall deposit, keep or have in his, her, their or its possession any spirituous or fermented liquors, or intoxicating drinks of any kind whatsoever, or any article used or sold as a beverage in the composition of which, whiskey, brandy, high wines or alcoholic, spirituous or fermented liquors shall be an ingredient or ingredients, in any automobile or other vehicle in which any device for the prevention or arrest or apprehension of said motor vehicle, or the occupants thereof of the type commonly known as a smoke screen is carried, whether the said device be attached as a part of said motor vehicle in which any gun, pistol, revolver, rifle machine gun, or other dangerous or deadly weapon of any kind whatsoever is carried, whether in said automobile or vehicle, or on the person of any occupant of the same.

## MASSACHUSETTS:

1927 Mass. Acts 416, An Act Relative to Machine Guns and Other Firearms, ch. 326, § 5 (amending §10)

. . . Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, a pistol or revolver, loaded or unloaded, or possesses a machine gun as defined in section one hundred and twenty-one of chapter one hundred and forty… or whoever so carries any stiletto, dagger, dirk knife, slung shot, metallic knuckles or sawed off shotgun, or whoever, when arrested upon a warrant for an alleged crime or when arrested while committing a crime or a breach or disturbance of the public peace, is armed with, or has on his person, or has on his person or under his control in a vehicle, a billy or dangerous

18

weapon other than those herein mentioned, shall be punished by imprisonment for not less than six months nor more than two and a half years in a jail . .

1927 Mass. Acts 413, An Act Relative to Machine Guns and Other Firearms, ch. 326, §§ 1-2 (amending §§ 121, 123)
§ 1. In sections one hundred and twenty-two to one hundred and twenty-nine, inclusive, "firearms" includes a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of barrel, not including any revolving, detachable or magazine breach, does not exceed twelve inches, and a machine gun, irrespective of the length of the barrel. Any gun of small arm calibre designed for rapid fire and operated by a mechanism, or any gun which operates automatically after the first shot has been fired, either by gas action or recoil action, shall be deemed to be a machine gun for the purposes of said sections, and of sections one hundred and thirty-one and one hundred and thirty one B. . .
§ 2. . . Eighth, That no pistol or revolver shall be sold, rented or leased to a person who has not a permit, then in force, to purchase, rent or lease the same issued under section one hundred and thirty-one A, and that no machine gun shall be sold, rented or leased to a person who has not a license to possess the same issued under section one hundred and thirty-one. . .

## MICHIGAN:

1927 Mich. Pub. Acts 888-89, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3.
It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag or bludgeon. Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison not more than five years, or by both such fine and imprisonment in the discretion of the court. . . .

1929 Mich. Pub. Acts 529, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3.
It shall be unlawful within this state to manufacture, sell, offer for sale or possess any machine gun or firearm which can be fired more than sixteen times without reloading or any muffler, silencer, or device for deadening or muffling the sound of

a discharged firearm, or any bomb, or bomb shell, blackjack, slung shot, billy, metallic knuckles, sand club, sand bag, or bludgeon or any gas ejecting device, weapon, cartridge, container, or contrivance designed or equipped for or capable of ejecting any gas which will either temporarily or permanently disable, incapacitate, injure or harm any person with whom it comes in contact.

## MINNESOTA:

1933 Minn. Laws 231-33, An Act Making It Unlawful to Use, Own, Possess, Sell, Control or Transport a "Machine Gun", as Hereinafter Defined, and Providing a Penalty for the Violation Thereof, ch. 190, §§ 1-3.
§ 1. Definitions. (a) Any firearm capable of loading or firing automatically, the magazine of which is capable of holding more than twelve cartridges, shall be a machine gun within the provisions of the Act. (b) Any firearm capable of automatically reloading after each shot is fired, whether firing singly by separate trigger pressure or firing continuously by continuous trigger pressure; which said firearm shall have been changed, altered or modified to increase the magazine from the original design as manufactured by the manufacturers thereof, or by the addition thereto of extra and/or longer grips or stocks to accommodate such extra capacity, or by the addition, modification and/or attachment thereto of any other device capable of increasing the magazine capacity thereof, shall be a machine gun within the provisions of this Act. (c) A twenty-two caliber light sporting rifle, capable of firing continuously by continuous trigger pressure, shall be a machine gun within the provisions of this Act. But a twenty-two caliber light sporting rifle, capable of automatically reloading but firing separately by separate trigger pressure for each shot, shall not be a machine gun within the provisions of this Act and shall not be prohibited hereunder, whether having a magazine capacity of twelve cartridges or more. But if the same shall have been changed, altered, or modified, as prohibited in section one (b) hereof, then the same shall be a machine gun within the provisions of this Act.
§ 2. Application. This Act shall not apply to sheriffs, coroners, constables, policemen or other peace officers, or to any warden, superintendent or head keeper of any prison, penitentiary, county jail or other institution for retention of any person convicted or accused of crime, while engaged in the discharge of official duties, or to any public official engaged in the enforcement of law; nor to any person or association possessing a machine gun not usable as a weapon and possessed as a curiosity, ornament or keepsake; when such officers and persons and associations so excepted shall make and file with the Bureau of Criminal Apprehension of this state within 30 days after the passage of this Act, a written

report showing the name and address of such person or association and the official title and position of such officers . . .

§ 3. Machine guns prohibited. Any person who shall own, control, use, possess, sell or transport a machine gun, as herein defined, in violation of this Act, shall be guilty of a felony.

## MISSOURI:

1929 Mo. Laws 170, Crimes and Punishment, Prohibiting the Sale, Delivery, Transportation, Possession, or Control of Machine Rifles, Machine Guns and Sub-machine Guns, and Providing Penalty for Violation of Law, §§ 1-2.

§ 1. Unlawful to sell, deliver, transport or have in possession any machine gun. – It shall be unlawful for any person to sell, deliver, transport, or have in actual possession or control any machine gun, or assist in, or cause the same to be done. Any person who violates this act shall be guilty of a felony and punished by imprisonment in the state penitentiary not less than two (2) nor more than thirty (30) years, or by a fine not to exceed five thousand dollars, or by both such fine and imprisonment. Provided, that nothing in this act shall prohibit the sale, delivery, or transportation to police departments or members thereof, sheriffs, city marshals or the military or naval forces of this state or of the United States, or the possession and transportation of such machine guns, for official use by the above named officers and military and naval forces in the discharge of their duties.

§ 2. The term "machine-gun" defined – The term "machine gun" as used in this act shall be construed to apply to and include all firearms known as machine rifles, machine guns or sub-machine guns capable of discharging automatically and continuously loaded ammunition of any caliber in which the ammunition is fed to such gun from or by means of clips, disks, drums, belts or other separable mechanical device.

## MONTANA

1935 Mont. Laws 57, 57-60

CHAPTER 43

An Act Relating to Machine Guns, and Their Association with Crimes of Violence as Herein Defined, Providing Presumptions Respecting the Use or Possession Thereof, Search Warrants for Machine Guns, Registration of the Same, and to Make Uniform the Law with Reference Thereto.

Be it enacted by the Legislative Assembly of the State of Montana:

Section 1. Definitions. "Machine Gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than

21

six shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. . . .

Section 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the State Penitentiary for a term of not less than twenty years.

Section 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the State Penitentiary for a term of not less than ten years.

Section 4. Possession or use of a machine gun shall be used for presumed to be for offensive or aggressive purpose: offensive or aggressive purpose:

(a) When the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) When in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) When the machine gun is of the kind described in Section 8 and has not been registered as in said section required; or

(d) When empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

Section 5. The presence evidence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

Section 6. Exceptions. Nothing contained in this Act shall prohibit or interfere with:

1. The manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose;

2. The possession of a machine gun for scientific purpose, or the possession of a machine gun not useable as a weapon and possessed as a curiosity, ornament, or keepsake;

3. The possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifestly not aggressive or offensive.

Section 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun

was sold, loaned, given or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts,

and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provision of this section shall be punishable by a fine of not less than One Hundred Dollars ($100.00).

Section 8. Every machine gun now in this state adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the Secretary of State, on the effective date of this Act, and annually thereafter. If acquired hereafter it shall be registered

within twenty-four hours after its acquisition. Blanks for registration shall be prepared by the Secretary of State, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which, the gun was acquired. The registration date shall not be subject to inspection by the public. Any person failing to register any gun as required by this Section, shall be presumed to possess the same for offensive or aggressive purpose.

Section 9. Warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber possessed in violation of this Act, may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record, upon application of the County Attorney, shall have jurisdiction and power to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the state or a political subdivision thereof. . . .

Approved February 20, 1935.


## NEBRASKA:

1929 Neb. Laws 674, An Act Prohibiting the Sale, Possession and Transportation of Machine Guns within the State of Nebraska; and Prescribing Penalties for the Violation of the Provisions Hereof, ch. 190, §§ 1-2.

§ 1. Machine Guns – Sale Unlawful – Penalty – It shall be unlawful for any person, firm or corporation, its or their agents or servants, to sell or cause to be sold or otherwise to dispose of any machine gun to any person in the State of Nebraska, except officers of the law, agents of the United States government, or agents of the law enforcement department of the State of Nebraska. If any person, firm or

corporation, or its or their agents or servants violate any of the provisions of this section, they shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in a sum not less than one thousand dollars nor more than ten thousand dollars.

§ 2. U.S. Army and National Guard Exempt – It shall be unlawful for any person or persons, except officers of the law, soldiers of the United States Army, or officers and enlisted men of the National Guard of this state, to transport any machine gun on any highway within this state, or to have in possession for any unlawful purpose any machine gun. Any person violating any of the provisions of this section shall be deemed guilty of a felony and upon conviction thereof, shall be imprisoned in the state penitentiary for not less than one year nor more than ten years.

## NEW JERSEY:

1920 N.J. Laws 67, An Act to Amend an Act Entitled, "An Act for the Protection of Certain Kinds of Birds, Game and Fish, to Regulate Their Method of Capture, and Provide Open and Close Seasons for Such Capture and Possession," ch. 31, § 9.
It shall be unlawful to use in hunting fowl or animals of any kind any shotgun or rifle holding more than two cartridges at one time, or that may be fired more than twice without reloading, or to use any silencer on any gun rifle or firearm when hunting for game or fowl under a penalty of twenty dollars for each offense.

1927 N.J. Laws 742, A Further Supplement to an Act Entitled, "An Act for the Punishment of Crimes," ch. 321, § 1.
No pawnbroker shall hereafter sell or have in his possession for sale or to loan or give away, any machine gun, automatic rifle, revolver, pistol, or other firearm, or other instrument of any kind known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, dagger, dirk, dangerous knife, stiletto, bomb or other high explosive. Any pawnbroker violating the provisions of this act shall be guilty of a high misdemeanor and punished accordingly.

1927 N.J. Laws 180-81, A Supplement to an Act Entitled "An Act for the Punishment of Crimes," ch. 95, §§ 1-2.
§ 1. The term "machine gun or automatic rifle," as used in this act, shall be construed to mean any weapon, mechanism or instrument not requiring that the trigger be pressed for each shot and having a reservoir, belt or other means of storing and carrying ammunition which can be loaded into the said weapon,

mechanism or instrument and fired therefrom at a rate of five or more shots to the second.

§ 2. Any person who shall sell, give, loan, furnish or deliver any machine gun or automatic rifle to another person, or any person who shall purchase, have or possess any machine gun or automatic rifle, shall be guilty of a high misdemeanor; provided, the provisions of this section shall not apply to any person who has procured and possesses a license to purchase, have and possess a machine gun or automatic rifle as hereinafter provided for; nor to the authorized agents and servants of such licensee; or to the officers and members of any duly authorized military organization; nor to the officers and members of the police force of any municipality, nor to the officers and members of the State Police force; nor to any sheriff or undersheriff; nor to any prosecutor of the pleas, his assistants, detectives and employees.

1934 N.J. Laws 394-95, A Further Supplement to an Act Entitled "An Act for the Punishment of Crimes," ch. 155, §§ 1-5.

§ 1. A gangster is hereby declared to be an enemy of the state.

§ 2. Any person in whose possession is found a machine gun or a submachine gun is declared to be a gangster; provided, however, that nothing in this section contained shall be construed to apply to any member of the military or naval forces of this State, or to any police officer of the State or of any county or municipality thereof, while engaged in his official duties.

§ 3. Any person, having no lawful occupation, who is apprehended while carrying a deadly weapon, without a permit so to do and how has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster.

§ 4. Any person, not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster; provided, however, that nothing in this section contained shall in any wise be construed to include any participant or sympathizer in any labor dispute.

§ 5. Any person convicted of being a gangster under the provisions of this act shall be guilty of a high misdemeanor, and shall be punished by a fine not exceeding ten thousand dollars ($10,000.00), or by imprisonment not exceeding twenty years, or both.

## **NEW YORK:**

1931 N.Y. Laws 1033, An Act to Amend the Penal Law in Relation to Carrying and Use of Glass Pistols, ch. 435, § 1.

A person who attempts to use against another an imitation pistol, or who carries or possesses any instrument or weapon of the kind commonly known as a black-jack, slungshot, billy, sand club, sandbag, metal knuckles, bludgeon, or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine gun, sawed off shot-gun, or any other dangerous or deadly instrument, or weapon is guilty of a misdemeanor, and if he has been previously convicted of any crime he is guilty of a felony.

1933 N.Y. Laws 1639, An Act to Amend the Penal Law, in Relation to the Sale, Possession and Use of Sub-Machine Guns, ch. 805, §§ 1, 3.

§ 1. . . A person who sells or keeps for sale, or offers or gives, disposes of or transports any instrument or weapon of the kind usually known as a machine-gun or a sub-machine gun to any person is guilty of a felony, except that the manufacture of machine-guns and sub-machine guns as merchandise and the sale and shipment thereof direct to regularly constituted or appointed state or municipal police departments, sheriffs, policemen, and other peace officers, and to state prisons, penitentiaries and county jails, and to military and naval organizations shall be lawful.

§ 3. . . . A machine gun is a weapon of any description, irrespective of size, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun. A person who possesses or uses such machine-gun is guilty of a felony. The presence of such machine-gun in any room, dwelling, structure, or vehicle shall be presumptive evidence of its illegal possession by all the persons occupying the place where such machine gun is found.

## NORTH CAROLINA:

1917 N.C. Sess. Laws 309, Pub. Local Laws, An Act to Regulate the Hunting of Quail in Harnett County, ch. 209, § 1.

That the open season for hunting quail shall be from the first day of December to the fifteenth day of January following each succeeding year, and that it shall be unlawful to kill quail with any gun or guns that shoot over two times before reloading, and any person violating any of the provisions of this act shall be guilty of a misdemeanor.

26

1933 N.C. Sess. Laws 387

CHAPTER 261

AN ACT TO MAKE THE POSSESSION OF MACHINE GUNS AND OTHER LIKE WEAPONS UNLAWFUL.

The General Assembly of North Carolina do enact:

SECTION 1. It shall be unlawful for any person, firm or corporation to manufacture, sell, give away, dispose of, use or possess machine guns, sub-machine guns, or other like weapons: Provided, however, that this section shall not apply to the following:

Banks, merchants, and recognized business establishments for use in their respective places of business, who shall first apply to and receive from the Clerk of the Superior Court of the county in which said business is located, a permit to possess the said weapons for the purpose of defending the said business; officers and soldiers of the United States army, when in discharge of their official duties, officers and soldiers of the militia and the State guard when called into actual service, officers of the State, or of any county, city or town, charged with the execution of the laws of the State, when acting in the discharge of their official duties: Provided, further, that automatic shotguns and pistols or other automatic weapons that shoot less than sixteen shots shall not be construed to be or mean a machine gun or sub-machine gun under this act; and that any bona fide resident of this State who now owns a machine gun used in former wars, as a relic or souvenir, may retain and keep same as his or her property without violating the provisions of this act upon his reporting said ownership to the Clerk of the Superior Court of the county in which said person lives.

SEC. 2. Any person violating any of the provisions of this act shall be guilty of a misdemeanor and shall be fined not less than five hundred ($500.00) dollars, or imprisoned for not less than six months, or both, in the discretion of the court.

SEC. 3. That all laws and clauses of laws in conflict with the provisions of this act are hereby repealed.

SEC. 4. That this act shall be in full force and effect from and after its ratification.

Ratified this the 11th day of April, A. D. 1933.

**NORTH DAKOTA:**

1931 N.D. Laws 305-06, An Act to Prohibit the Possession, Sale and Use of Machine Guns, Sub-Machine Guns, or Automatic Rifles and Defining the Same . . . , ch. 178, §§ 1-2.

§ 1. The term "machine gun, sub-machine gun or automatic rifle" as used in this act shall be construed to mean a weapon mechanism or instrument not requiring the trigger be pressed for each shot and having a reservoir, belt or other means of

27

storing and carrying ammunition which can be loaded into the said weapon, mechanism or instrument and fired therefrom at a rate of five or more shots to the second.

§ 2. Any person who shall sell, give, loan, furnish or deliver any machine gun, sub-machine gun, automatic rifle of a caliber larger than twenty-two, or a bomb loaded with explosives or poisonous or dangerous gases to another person, or any person who shall purchase, have or possess any machine gun, sub-machine gun, automatic rifle, or a caliber larger than twenty-two or a bomb loaded with explosives or poisonous or dangerous gases, shall be guilty of a felony and shall be punished by imprisonment in the state penitentiary not to exceed ten years, or by a fine of not more than three thousand dollars, or both. Provided, that the provisions of this act shall not apply to any person who has procured and possesses a license to purchase, sell, have or possess a machine gun, sub-machine gun, automatic rifle, of a caliber larger than twenty-two, or bomb loaded with explosives or poisonous or dangerous gases, as hereinafter provided for, nor to the authorized agents and servants of such licensee or to the officers and members of any duly authorized military organization, nor to the officers and members of the police force of any municipality, nor to any Sheriff, deputy sheriff, nor any other officer having police powers under the laws of the State.

## OHIO:

1933 Ohio Laws 189-90, Reg. Sess., An Act. . . Relative to the Sale and Possession of Machine Guns, § 1.

That § 12819 of the General Code be supplemented . . . to read as follows: Definitions. § 12819-3. For the purpose of this act, a machine gun, a light machine gun or a sub-machine gun shall be defined as any firearm which shoots automatically, or any firearm which shoots more than eighteen shots semi-automatically without reloading. Automatically as above used means that class of firearms which, while the trigger on the firearm is held back continues to fire successive shots. Semi-automatically means that class of firearm which discharges one shot only each time the trigger is pulled, no manual reloading operation being necessary between shots. Machine gun permit; application; bond or applicant; exceptions. § 12819-4. No person shall own, possess, transport, have custody of or use a machine gun, light machine gun or sub-machine gun, unless he first procures a permit therefor from and at the direction of the adjutant general of Ohio, who shall keep a complete record of each permit so issued. A separate permit shall be obtained for each gun so owned, possessed or used. The adjutant general shall require each applicant for such permit to give an accurate description of such weapon, the name of the person from whom it was or is to be obtained, the name of

28

the person or persons to have custody thereof and the place of residence of the applicant and custodian. Before obtaining such permit each applicant shall give bond to the state of Ohio, to be approved by the adjutant general in the sum of five thousand dollars, conditioned to save the public harmless by reason of any unlawful use of such weapon while under the control of such applicant or under the control of another with his consent; and any person injured by such improper use may have recourse on said bond. Provided, however, that this section shall not affect the right of the national guard of Ohio, sheriffs, regularly appointed police officers of incorporated cities and villages, regularly elected constables, wardens and guards of penitentiaries, jails, prisons, penal institutions or financial institutions maintaining their own police force and such special officers as are now or may be hereafter authorized by law to possess and use such weapons when on duty.  Any person who owns, possesses or has custody of a machine gun, light machine gun or sub-machine gun at the time when this section shall become effective, shall have thirty days thereafter in which to comply with the provisions of this section. Penalty for possession, transportation, etc., without permit. § 12819-5. Whoever owns, possesses, transports or has custody of or uses a machine gun, light machine gun or sub-machine gun without a permit, as provided by section 12819-4 of the General Code, or whoever having such permit, uses or consents to the use by another of such weapon in an unlawful manner, shall be guilty of a felony and upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than ten years. [War trophies excepted].

## **OREGON:**

1933 Or. Laws 489, An Act to Amend Sections 72-201, 72-202, 72-207, Oregon Code 1930, ch. 315, §§ 3-4.
§ 3. Except as otherwise provided in this act, it shall be unlawful for any person within this state to possess or have in his possession any machine gun . . .
§ 4. The unlawful concealed carrying upon the person or within the vehicle of the carrier of any machine gun, pistol, revolver or other firearm capable of being concealed upon the person is a nuisance. Any such weapons taken from the person or vehicle of any person unlawfully carrying the same are herby declared to be nuisances, and shall be surrendered to the magistrate before whom said person shall be taken . . .

1933 Or. Laws 488, An Act to Amend Sections 72-201, 72-202, 72-207, Oregon Code 1930, § 2.
On and after the date upon which this act takes effect no unnaturalized foreign-born person and no person who has been convicted of a felony against the person

or property of another or against the government of the United States or the state of Oregon or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver, or other firearms capable of being concealed upon the person, or machine gun. The terms "pistol," "revolver," and "firearms capable of being concealed upon the person" as used in this acts shall be construed to apply to and include all firearms having a barrel less than 12 inches in length. The word "machine gun" shall be construed to be a weapon of any description by whatever name known, loaded or unloaded, from which two or more shots may be fired by a single pressure upon the trigger device. Any person who shall violate the provisions of this section shall be guilty of a felony and, upon conviction thereof, be punishable by imprisonment in the state penitentiary for not less than one nor more than five years.

## PENNSYLVANIA:

1929 Pa. Laws 777, An Act prohibiting the sale, giving away, transfer, purchasing, owning, possession and use of machine guns: §§1-4
§ 1. Be it enacted, etc., That the term "machine gun" as used in this act, shall mean any firearm that fires two or more shots consecutively at a single function of the trigger or firing device.
§ 2. It shall be unlawful for any person, copartnership, association or corporation to sell, or give, or transfer, any machine gun to any person, copartnership, association or corporation within this Commonwealth; and it shall be unlawful for any person, copartnership, association, or corporation to purchase, own or have in possession any machine gun. Any person violating any of the provisions of this section shall be guilty of a felony, and, on conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars, and undergo imprisonment by separate or solitary confinement at labor not exceeding five years.
§ 3. Any person who shall commit, or attempt to commit, any crime within this Commonwealth, when armed with a machine gun, shall, upon conviction of such crime or attempt to commit such crime, in addition to the punishment for the crime for which he has been convicted, be sentenced to separate and solitary confinement at labor for a term not exceeding ten years. Such additional penalty of imprisonment shall commence upon the expiration or termination of the sentence imposed for the crime of which he stands convicted, and shall not run concurrently with such sentence.
§ 4. Nothing contained in this act shall prohibit the manufacture for, and sale of, machine guns to the military forces of the United States, or of the Commonwealth of Pennsylvania, or to any police department of this Commonwealth, or of any political subdivision thereof, nor to the purchase or possession of machine guns by

30

such governments and departments; and nothing contained in this act shall prohibit any organization, branch, camp or post of veterans, or any veteran of any war in which the United States was engaged, from owning and possessing a machine gun as a relic, if a permit for such ownership or possession has been obtained from the sheriff of the county, which permit is at all times attached to such machine gun. The sheriffs of the several counties are hereby authorized, upon application and the payment of a fee of one dollar, to issue permits for the ownership and possession of machine guns by veteran and organizations, branches, camps or posts of veterans and organizations, branches, camps or posts of veterans, upon production to the sheriff of such evidence as he may require that the organization, branch, camp or post is a bona fide organization of veterans, or that any such veteran applicant is a veteran of good moral character and reputation, and that the ownership and possession of such machine gun is actually desired as a relic.

1929 Pa. Laws 777, An Act prohibiting the sale, giving away, transfer, purchasing, owning, possession and use of machine guns: § 3.
§ 3. Any person who shall commit, or attempt to commit, any crime within this Commonwealth, when armed with a machine gun, shall upon conviction of such crime or attempt to commit such crime, in addition to the punishment for the crime for which he has been convicted, be sentenced to separate and solitary confinement at labor for a term not exceeding ten years. Such additional penalty of imprisonment shall commence upon the expiration or termination of the sentence imposed for the crime of which he stands convicted, and shall not run concurrently with such sentence.

## RHODE ISLAND:

1927 R.I. Pub. Laws 256, An Act to Regulate the Possession of Firearms: §§ 1, 12.
§ 1. When used in this act the following words and phrases shall be construed as follows: "pistol" shall include any pistol or revolver, and any shot gun, rifle or similar weapon with overall less than twenty-six inches, but shall not include any pistol without a magazine or any pistol or revolver designed for the use of blank cartridges only. "machine gun" shall include any weapon which shoots automatically and any weapon which shoots more than twelve shots semi-automatically without reloading. "Firearm shall include any machine gun or pistol. . . "crime of violence" shall mean and include nay of the following crimes or any attempt to commit any of the same, viz.murder, manslaughter, rape, mayhem, assault or battery involving grave bodily injury, robbery, burglary, and breaking and entering. "sell" shall include let or hire, give, lend and transfer, and the word

31

"purchase" shall include hire, accept and borrow, and the expression "purchasing" shall be construed accordingly. . .

§ 12. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any firearm. Possession of any firearm upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.

1927 (January Session) R.I. Pub. Laws 256, An Act to Regulate the Possession of Firearms: §§ 1, 4, 5, 6

§ 1. When used in this act the following words and phrases shall be construed as follows: "Pistol" shall include any pistol or revolver, and any shot gun, rifle or similar weapon with overall less than twenty-six inches, but shall not include any pistol without a magazine or any pistol or revolver designed for the use of blank cartridges only. "machine gun" shall include any weapon which shoots automatically and any weapon which shoots more than twelve shots semi-automatically without reloading. "Firearm shall include any machine gun or pistol. . . "Crime of violence" shall mean and include any of the following crimes or any attempt to commit any of the same, viz.: murder, manslaughter, rape, mayhem, assault or battery involving grave bodily injury, robbery, burglary, and breaking and entering. "Sell" shall include let or hire, give, lend and transfer, and the word "purchase" shall include hire, accept and borrow, and the expression "purchasing" shall be construed accordingly. . .

§ 4. No person shall, without a license therefor, issued as provided in section six hereof, carry a pistol in any vehicle or concealed on or about his person, except in his dwelling house or place of business or on land possessed by him, and no person shall manufacture, sell, purchase or possess a machine gun except as otherwise provided in this act.

§ 5. The provisions of section four shall not apply to sheriffs, deputy sheriffs, the superintendent and members of the state police, prison or jail wardens or their deputies, members of the city or town police force or other duly appointed law enforcement officers, nor to members of the army, navy or marine corps of the United States, or of the national guard, when on duty, or of organizations by law authorized to purchase or receive firearms from the United States or this state, nor to officers or employees of the United States authorized by law to carry a concealed firearm, nor to duly authorized military organizations when on duty, nor to members thereof when at or going to or from their customary places of assembly, nor to the regular and ordinary transportation of pistols as merchandise, nor to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his

32

home or place of business, or in moving goods from one place or abode or business to another.

§ 6. The licensing authorities of any city or town shall upon application of any person having a bona fide residence or place of business within such city or town, or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the authorities of any other state or subdivision of the United States, issue a license to such person to carry concealed upon his person a pistol within this state for not more than one years from date of issue, if it appears the applicant has good reason to fear an injury to his person or property or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the attorney-general and shall bear the fingerpring, name, address, description and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent to the attorney-general and the triplicate shall be preserved for six years by the licensing authorities issuing said license. A fee of two dollars may be charged and shall be paid for each license, to the officer issuing the same. Before issuing any such permit the applicant for the same shall be required to give bond to the city or town treasurer in the penal sum of three hundred dollars, with surety satisfactory to the authority issuing such permit, to keep the peace and be of good behavior. Every such permit shall be valid for one year from the date when issued unless sooner revoked. The fee charged for the issuing of such license or permit shall be applied in accordance with the provisions of section thirty-three of chapter 401 of the general laws.

1927 R. I. Pub. Laws 256, An Act to Regulate the Possession of Firearms: §§ 1, 4, 7, 8.

§ 1. When used in this act the following words and phrases shall be construed as follows: "Pistol" shall include any pistol or revolver, and any shot gun, rifle or similar weapon with overall less than twenty-six inches, but shall not include any pistol without a magazine or any pistol or revolver designed for the use of blank cartridges only. "Machine gun" shall include any weapon which shoots automatically and any weapon which shoots more than twelve shots semi-automatically without reloading. "Firearm shall include any machine gun or pistol. . . "Crime of violence" shall mean and include any of the following crimes or an attempt to commit any of the same, viz.: murder, manslaughter, rape, mayhem, assault or battery involving grave bodily injury, robbery, burglary, and breaking and entering. "Sell" shall include let or hire, give, lend and transfer, and the word "purchase" shall include hire, accept and borrow, and the expression "purchasing" shall be construed accordingly. . .

§ 4. No person shall, without a license therefor, issued as provided in section six hereof, carry a pistol in any vehicle or concealed on or about his person, except in his dwelling house or place of business or on land possessed by him, and no person shall manufacture, sell, purchase or possess a machine gun except as otherwise provided in this act.

§ 7. The attorney-general may issue a permit to any banking institution doing business in this state or to any public carrier who is engaged in the business of transporting mail, money, securities or other valuables, to possess and use machine guns under such regulations as the attorney general may prescribe.

§ 8. It shall be unlawful within this state to manufacture, sell, purchase or possess except for military or police purposes, any muffler, silencer or device for deadening or muffling the sound of a firearm when discharged.

1927 R.I. Pub. Laws 256, An Act to Regulate the Possession of Firearms, §§1, 3

§ 1. When used in this act the following words and phrases shall be construed as follows: "pistol" shall include any Pistol or revolver, and any shot gun, rifle or similar weapon with overall less than twenty-six inches, but shall not include any pistol without a magazine or any pistol or revolver designed for the use of blank cartridges only. "machine gun" shall include any weapon which shoots automatically and any weapon which shoots more than twelve shots semi-automatically without reloading. "Firearm shall include any machine gun or pistol. . . "Crime of violence" shall mean and include any of the following crimes or any attempt to commit any of the same, viz.: murder, manslaughter, rape, mayhem, assault or battery involving grave bodily injury, robbery, burglary, and breaking and entering. "sell" shall include let or hire, give, lend and transfer, and the word "purchase" shall include hire, accept and borrow, and the expression "purchasing" shall be construed accordingly. . .

§ 3. No person who has been convicted in this state or elsewhere of a crime of violence shall purchase own, carry or have in his possession or under his control any firearm.

## SOUTH CAROLINA:

1934 S.C. Acts 1288, An Act regulating the use and possession of Machine Guns: §§ 1 to 6.

§ 1. "Machine gun" defined. – Be it enacted by the General Assembly of the State of South Carolina: For the purposes of this Act the word "machine gun" applies to and includes all firearms commonly known as machine rifles, machine guns and sub-machine guns of any caliber whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the

34

ammunition is fed to such gun from or by means of clips, disks, belts or other separable mechanical device.

§ 2. Transportation of Machine Gun. – It shall be unlawful for any person or persons in any manner to transport from one place to another in this State, or from any railroad company, or express company, or other common carrier, or any officer, agent or employee of any of them, or any other person acting in their behalf knowingly to ship or to transport form one place to another in this State in any manner or by any means whatsoever, except as hereinafter provided, any firearm as described hereinabove or commonly known as a machine gun.

§ 3. Storing, Keeping, and/or Possessing Machine Gun. – It shall be unlawful for any person to store, keep, possess, or have in possession, or permit another to store, keep, possess, or have in possession, except as hereinafter provided, any firearem of the type defined above or commonly known as a machine gun.

§ 4. Selling, Renting or Giving away Machine Gun. – It shall be unlawful for any person to sell, rent, or give away, or be interested directly or indirectly, in the sale, renting or giving away, or otherwise disposing of any firearm of the type above described or commonly known as a machine gun.

§ 5. Exceptions – Register Machine Guns. – The provisions of this Act shall not apply to the army, navy or marine corps of the United States, the National Guard, and organizations authorized by law to purchase or received machine guns from the United States, or from this State, and the members of such corps. National Guard and organizations while on duty or at drill, may possess, carry and transport machine guns, and, Provided, further, That any peace officer of the State, counties or political sub-division thereof. State Constable, member of the Highway patrol, railway policemen, warden, superintendents, headkeeper or deputy of any State prison, penitentiary, workhouse, county jail, city jail, or other institution for detention of persons convicted or accused of crime, or held as witnesses in criminal cases, or persons on duty in the postal service of the United States, or common carrier while transporting direct to any police department, military or naval organization, or persons authorized by law to possess or use a machine gun, may possess machine guns when required in the performance of their duties, nor shall the provisions of this Act be construed to apply to machine guns kept for display as relics and which are rendered harmless and not useable. Within thirty days after the passage of this Act every person permited by this Act to possess a machine gun or immediately after any person is elected to or appointed to any office or position which entitles such person to possess a machine gun, shall file on the office of the Secretary of State on a blank to be supplied by the Secretary of State on application therefor, an application to be properly sworn to, which shall be approved by the Sheriff of the county in which the applicant resides or has its principal place of business, which shall include the applicants name, residence and

business address, description including sex, race, age weight, height, color of eyes, color of hair, whether or not ever charged or convicted of any crime, municipal, State or otherwise, and where, if so charged, and when same was disposed of. The applicant shall also give the description including the serial number and make the machine gun which he possesses or desires to possess. Thereupon the Secretary of State shall file such application in his office, registering such applicant togther with the information required in the application in a book or index to be kept for that purpose, and assign to him a number, an dissue to him a card which shall bear the signature of the applicant, and which he shall keep with him while he has such machine gun in his possession. Such registeration shall be made on the date application is received and filed iwth the Secretary of State, and shall expire on December 31, of the year in which said license is issued.

§ 6. Penalty – Any person violating any of the provisions of this Act shall be guilty of a felony, and, on conviction thereof shall be sentenced to pay a fine not exceeding One Thousand Dollars, and undergo imprisonment by separate or solitary confinement at labor not exceeding twenty (20) years.

## SOUTH DAKOTA:

1933 S.D. Sess. Laws 245-47, An Act Relating to Machine Guns, and to Make Uniform the Law with Reference Thereto, ch. 206, §§ 1-8.

§ 1. "machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded from which more than five shots or bullets may be rapidly or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device. "Crime of Violence" apples to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering, and larceny. "Person" applied to and includes firm, partnership, association or corporation.

§ 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than twenty years.

§ 3. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not more than fifteen years.

§ 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose; (a) When the machine gun is on premises not owned or rented for bona fide permanent residence or business occupancy by the person in whose possession the machine gun may be found; or (b) when in the possession of, or used by, an unnaturalized foreign born person, who has been convicted of a crime

36

of violence in any court of record, state or federal of the United States of America, its territories or insular possessions; or (c) when the machine gun is of the kind described in §8 and has not been registered as in said section required; or (d) when empty or loaded pistol shells of 30 or larger caliber which have been or are susceptible or use in the machine gun are found in the immediate vicinity thereof.

§ 5. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

§ 6. Exceptions. Nothing contained in this act shall prohibit or interfere with (1.) the manufacture for, and sale of, machine guns to the miltary forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose; (2.) The possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake; (3.) The possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifstly not aggresive or offensive.

§ 7. Every manufacturer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned given or delivered, or from whom received. Upon demand every manufacturer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provisions of this section shall be punishable by a fine of not more than five hundred dollars, or by imprisonment in the county jail, nfor not exceeding six months or by both such fine and imprisonment.

§ 8. Every machine gun now in this state adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber shall be registered in the office of the Secretary of State, on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within 24 hours after its acquisition. Blanks for registration shall be prepared by the Secretary of STate, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, ande from whom and the purpose for which, the gun was acquired. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section shall be presumed to possess the same for offensive and aggressive purpose.

## TEXAS:

1933 Tex. Gen. Laws 219-20, 1st Called Sess., An Act Defining "Machine Gun" and "Person"; Making It an Offense to Possess or Use Machine Guns. . . , ch. 82, §§ 1-4, 6

§ 1. Definition. "Machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than five (5) shots or bullets may be automatically discharged from a magazine by a single functioning of the firing device. "Person" applies to and includes firm, partnership, association or corporation.

§ 2. Whosoever shall possess or use a machine gun, as defined in Section 1, shall be guilty of a felony and upon conviction thereof, shall be confined in the State Penitentiary, for not less than two nor more than ten (10) years.

§ 3. Whoever shall sell, lease, give, barter, exchange, or trade, or cause to be sold, leased, given, bartered, exchanged, or traded, a machine gun as hereinabove defined to any person shall be guilty of a felony and upon conviction thereof, shall be confined to the State Penitentiary, for not less than two (2) nor more than (10) years.

§ 4. [Excludes military, police, unusable keepsakes, prison officers.]

§ 6. The fact that there are many gangsters purchasing machine guns in Texas, causing a menace to the citizenry of Texas, creates an emergency and imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

## VERMONT:

1923 Vt. Acts and Resolves 127, An Act to Prohibit the Use of Machine Guns and Automatic Rifles in Hunting, § 1.

A person engaged in hunting for game who uses, carries, or has in his possession a machine gun of any kind or description, or an automatic rifle of military type with a magazine capacity of over six cartridges, shall be fined not more than five hundred dollars nor less than fifty dollars. The presence of such a firearm in a hunting camp shall be presumptive evidence that the possessor of such a firearm has violated the provisions of this section.

## VIRGINIA:

1934 Va. Acts 137-39, An Act to define the term "machine gun"; to declare the use and possession of a machine gun for certain purposes a crime and to prescribe the punishment therefor, ch. 96, §§ 1-7.

§ 1. Where used in this act; (a) "Machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than seven shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device, and also applies to and includes weapons, loaded or unloaded, from which more than sixteen shots or bullets may be rapidly, automatically, semi-automatically or otherwise discharged without reloading. (b) "Crime of violence" applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, . . .

§ 2. Possession or use of machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by death or by imprisonment in the State penitentiary for a term not less than twenty years.

§ 3. Unlawful possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the State penitentiary for a term of not less than ten years.

§ 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose; (a) When the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or (b) When in the possession of , or used by, an unnaturalized foreign born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or (c) When the machine gun is of the kind described in section eight and has not been registered as in said section required; or (d) When empty or loaded pistol shells of thirty (thirty one-hundredths inch or seven and sixty-three one hundredths millimeter ) or larger caliber which have been or are susceptible to use in the machine gun are found in the immediate vicinity thereof.

§ 5. The presence of a machine gun in any room, boat, or vehicle shall be prima facie evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

§ 6. (excludes military police etc. )

§ 7. Every manufacturer or dealer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, load, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received; and the

purpose for which it was acquired by the person to whom the machine gun was sold. . .

## WASHINGTON:

1933 Wash. Sess. Laws 335-36, An Act Relating to Machine Guns, Regulating the Manufacture, Possession, Sale of Machine Guns and Parts, and Providing Penalty for the Violation Thereof, and Declaring an Emergency, ch. 64, §§ 1-5.

§ 1. That it shall be unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession, or under control, any machine gun, or any part thereof capable of use or assembling or repairing any machine gun: provided, however, that such limitation shall not apply to any peace officer in the discharge of official duty, or to any officer or member of the armed forces of the United States or the State of Washington.

§ 2. For the purpose of this act a machine gun is defined as any firearm or weapon known as a machine gun, mechanical rifle, submachine gun, and/or any other weapon, mechanism, or instrument not requiring that the trigger be pressed for each shot and having a reservoir clip, disc, drum belt, or other separable mechanical device for storing, carrying, or supplying ammunition which can be loaded into such weapon, mechanism, or instrument, and fired therefrom at the rate of five or more shots per second.

§ 3. Any person violating any of the provisions of this act shall be guilty of a felony.

§ 4. All machine guns, or parts thereof, illegally held or possessed are hereby declared to be contraband, and it shall be the duty of all peace officers, and/or any officer or member of the armed forces of the United States or the State of Washington to seize said machine gun, or parts thereof, wherever and whenever found.

§ 5. This act is necessary for the immediate preservation of public health and safety, and shall take effect immediately.

## WEST VIRGINIA:

1925 W.Va. Acts 31-32, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace . . . , ch. 3, § 7, pt. b.

It shall be unlawful for any person, firm or corporation to place or keep on public display to passersby on the streets, for rent or sale, any revolver, pistol, dirk, bowie knife, slung shot or other dangerous weapon of like kind or character or any machine gun, sub-machine gun or high powered rifle or any gun of similar kind or character, or any ammunition for the same. All dealers licensed to sell any of the

forgoing arms or weapons shall take the name, address, age and general appearance of the purchaser, as well as the maker of the gun, manufacturer's serial number and caliber, and report the same at once in writing to the superintendent of the department of public safety. It shall be unlawful for any person to sell, rent, give or lend any of the above mentioned arms to an unnaturalized person.

1925 W.Va. Acts 30-31, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms . . . , ch. 3, § 7, pt. b. (b) It shall be unlawful for any person to carry, transport, or have in his possession any machine gun, sub-machine gun, and what is commonly known as a high powered rifle, or any gun of a similar kind or character, or any ammunition therefor, except on his own premises or premises leased to him for a fixed term, until such person shall have first obtained a permit from the superintendent of the department of public safety of this state, and approved by the governor, or until a license therefore shall have been obtained from the circuit court as in the case of pistols and all such licenses together with the numbers identifying such rifle shall be certified to the superintendent of the department of public safety. Provided, further, that nothing herein shall prevent the use of rifles by bona fide rifle club members who are freeholders or tenants for a fixed term in this state at their usual or customary place of practice, or licensed hunters in the actual hunting of game animals. No such permit shall be granted by such superintendent except in cases of riot, public danger, and emergency, until such applicant shall have filed his written application with said superintendent of the department of public safety, in accordance with such rules and regulations as may from time to time be prescribed by such department of public safety relative thereto, which application shall be accompanied by a fee of two dollars to be used in defraying the expense of issuing such permit and said application shall contain the same provisions as are required to be shown under the provisions of this act by applicants for pistol licenses, and shall be duly verified by such applicant, and at least one other reputable citizen of this state. Any such permit as granted under the provisions of this act may be revoked by the governor at his pleasure upon the revocation of any such permit the department of public safety shall immediately seize and take possession of any such machine gun, sub-machine gun, high powered rifle, or gun of similar kind and character, held by reason of said permit, and any and all ammunition therefor, and the said department of public safety shall also confiscate any such machine gun, sub-machine gun and what is commonly known as a high powered rifle, or any gun of similar kind and character and any and all ammunition therefor so owned,

41

carried, transported or possessed contrary to the provisions of this act, and shall safely store and keep the same, subject to the order of the governor.

## WISCONSIN:

1928-1929 Wis. Sess. Laws 157, An Act to Create . . . the Statutes, Relating to Machine Guns and Providing a Penalty, ch. 132, § 1.
Any person who shall own, use or have in his possession a machine gun shall be punished by imprisonment in the state prison for a term the minimum of which shall be one year and the maximum fifteen years. Nothing in this section shall be construed as prohibiting police officers, national guardsmen, sheriffs and their deputies from owning, using or having in their possession a machine gun while actually engaged in the performance of their lawful duties; nor shall any person or organization be prohibited form possessing any machine gun received from the government as a war trophy.

1931-1933 Wis. Sess. Laws 245-47, An Act . . .Relating to Machine Guns and to Make Uniform the Law with Reference Thereto, ch. 76, § 1, pt. 164.01 to 164.06.
164.01 Definitions (a) "Machine gun" applies to and includes a weapon of any description by whatever name known from which more than two shots or bullets may be discharged by a single function of the firing device. . .
164.02 Use of Machine Gun is a Separate Crime. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term of not less than twenty years.
164.03 Possession for Aggressive Purpose. Possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the state penitentiary for a term not less than ten years.
164.04 Possession when Presumed For Aggressive Purpose. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose; (1) when the machine gun is on premises not owned or rented, for a bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or (2) when in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or (3) When the machine gun is of the kind described in section 164.08 and has not been registered as in said section required; or (4) When empty or loaded pistol shells of 30 (.30 in. or 7.63 mm.) or larger caliber which have been used or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

42

164.05 Presumptions from Presence of Gun. The presence of a machine gun in any room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle shall be evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

164.06 Exceptions. Nothing contained in this chapter shall prohibit or interfere with the manufacture for, and sale of , machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose; the possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake; the possession of a machine gun other than one adapted to use pistol cartridges of 30 (.30 in. or 7.63 mm.) or larger caliber, for a purpose manifestly not aggressive or offensive. . . [manufacturers and owners required to register].

1931-1933 Wis. Sess. Laws 778, An Act . . . Relating to the Sale, Possession, Transportation and Use of Machine Guns and Other Weapons in Certain Cases, and Providing a Penalty, ch. 359, § 1.

No person shall sell, possess, use or transport any machine gun or other full automatic firearm, nor shall any person sell, possess, use or transport any bomb, hand grenade, projectile, shell or other container of any kind or character into which tear gas or any similar substance is used or placed for use to cause bodily discomfort, panic, or damage to property. (2) Any person violating any of the provisions of this section shall be punished by imprisonment in the state prison for a term of not less than one year nor more than three years. (3) [doesn't apply to police, military etc.].

## **WYOMING:**

1933 Wyo. Sess. Laws 117, An Act Relating to the Registering and Recording of Certain Facts Concerning the Possession and Sale of Firearms by all Wholesalers, Retailers, Pawn Brokers, Dealers and Purchasers, Providing for the Inspection of Such Register, Making the Violation of the Provisions Hereof a Misdemeanor, and Providing a Penalty Therefor, ch. 101, §§ 1-4.

§ 1. All wholesalers, retailers, dealers and pawn brokers are hereby required to keep a record of all firearms which may come into their possession, whether new or second hand, which record shall be known as the Firearms Register. Such register shall contain the following information, to wit: the name of the manufacturer, person, persons, firm or corporation from whom the firearm was obtained, the date of its acquisition, its manufacturer's number, its color, its

43

caliber, whether the same is new or second hand, whether it is automatic, a revolver, a single shot pistol, a rifle, a shot gun or a machine gun, the name of the party to whom said firearm is sold in such purchasers handwriting and the date of such sale.

§ 2. Every person who purchases any firearm from any retailer, pawn broker or dealer, shall sign his name or make his mark properly witnessed, if he cannot write, on said Firearm Register, at the time of the delivery to him of any firearm so purchased.

§ 3. The firearm register, herein required to be kept, shall be prepared by every wholesaler, retailer, pawn broker and dealer in firearms in the state of Wyoming within 30 days after this Act shall become effective and shall thereafter be continued as herein provided. It shall be kept at the place of business of said wholesaler, retailer, pawn broker or dealer, and shall be subject to inspection by any peace officer at all reasonable times.

§ 4. Any person, firm or corporation who shall fail or refuse to comply with the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not to exceed $100.00, or imprisoned in the County Jail for a period of not to exceed six months, or by both such fine and imprisonment.

SOURCE:  https://firearmslaw.duke.edu/repository/search-the-repository/; HeinOnline

44