# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**MICHAEL O'NEIL, et al.**

    *Plaintiffs*

**v.**

**PETER F. NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and THE STATE OF RHODE ISLAND**

*Defendants*

**C.A. No. 23-cv-00070-WES-PAS**

## STATE DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Now come Defendants Peter F. Neronha, in his official capacity as Attorney General of the State of Rhode Island, and the State of Rhode Island, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Rhode Island (LR 56), hereby submit their Statement of Undisputed Facts, together with references to supporting evidence, in support of their concurrently filed motion for summary judgment.

| No. | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 1 | Under R.I. Gen. Laws § 11-47-18(a), "[t]he Attorney General may issue a license or permit to any person twenty-one (21) years of age or over to carry a pistol or revolver, whether concealed or not, upon his person upon a proper showing of need . . . ." | Attorney General's Weapons Carry Permit Packet [Weapons Carry Permit Packet], Ex. A, p.17; Troiano Deposition (Mar. 22, 2024), Ex. B, pp.36-37 (authenticating Weapons Carry Permit Packet). |

| 2 | On January 23, 2021, the Attorney General's Office issued a "Pistol Permit Policy" explaining how the Office determines "a proper showing of need." | Weapons Carry Permit Packet, Ex. A, p.5. |
|---|---|---|
| 3 | The Attorney General's Pistol Permit Policy remains available on the Attorney General's website. | Pistol Permits, State of Rhode Island Attorney General, https://www.riag.ri.gov/about-our-office/divisions-and-units/bureau-criminal-identification-bci/pistol-permits (last accessed Nov. 22, 2024); Decl. of Edward Troiano (July 31, 2023), Ex. C, ¶ 3. |
| 4 | According to that Pistol Permit Policy, factors the Attorney General considers for a "proper showing of need" include the following:<br><br>1. Has the applicant demonstrated a specific articulable risk to life, limb or property? If so, has the applicant demonstrated how a pistol permit will decrease the risk?<br>2. Can the applicant readily alter his or her conduct, or undertake reasonable measures other than carrying a loaded firearm, to decrease the danger to life, limb or property?<br>3. Are there means of protection available to the applicant other than the possession of a loaded firearm that will alleviate the risk to his or her person or property?<br>4. Has the applicant demonstrated the skill, training and ability to properly use a firearm in accordance with Rhode Island laws?<br>5. Has the applicant presented a plan to properly secure the firearm so that it does not fall into unauthorized hands?<br>6. How greatly will the possession of a loaded firearm by the applicant increase the risk of harm to the applicant or to the public?<br>7. Has the applicant demonstrated that he or she will not use the firearm for an unlawful or improper purpose, and that he or she has not used a firearm for an unlawful or improper purpose in the past?<br>8. Does past unlawful, dangerous, or violent conduct of the applicant justify denial at the | Weapons Carry Permit Packet, Ex. A, p.4. |

| | | |
|---|---|---|
| | Attorney General's discretion even if it is not sufficient to disqualify the applicant as a matter of law from possessing a firearm?<br>9. Has the applicant been issued a protective order pursuant to chapter 15-5, chapter 15-15, or chapter 8- 8.1 of the general laws?<br>10. Any and all other factors deemed lawful and appropriate by the Attorney General to demonstrate that the applicant is or is not a person suitable to possess a loaded firearm in public | |
| 5 | Plaintiff Michael O'Neil applied to the Attorney General for a license to carry with an application dated October 25, 2020. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Michael O'Neil (Jan. 25, 2021) [O'Neil Denial Letter], Ex. D, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.67 (authenticating O'Neil Denial Letter). |
| 6 | At the time of his application, Plaintiff Michael O'Neil had a permit to carry a pistol or revolver issued by the City of Warwick and valid until November 26, 2023. | O'Neil Denial Letter, Ex. D, p.1. |
| 7 | In a letter accompanying his application, Plaintiff Michael O'Neil referenced his travel between "clubs" carrying "firearms, targets and ammunition" as the sole basis for needing an Attorney General pistol permit. | O'Neil Denial Letter, Ex. D, p.1. |
| 8 | On January 25, 2021, the Attorney General's Office issued a letter informing Plaintiff Michael O'Neil that his application was denied. | O'Neil Denial Letter, Ex. D, p.1. |
| 9 | The January 25, 2021, letter to Plaintiff Michael O'Neil explained that there were "two avenues to apply for a permit to carry a firearm" in Rhode Island, citing the relevant statutes and caselaw. | O'Neil Denial Letter, Ex. D, p.1. |
| 10 | The January 25, 2021, letter to Plaintiff Michael O'Neil cited the Attorney General's Pistol Permit Policy for the factors considered in finding "a proper showing of need." | O'Neil Denial Letter, Ex. D, p.1. |
| 11 | The January 25, 2021, letter to Plaintiff Michael O'Neil explained that the factors considered under the Pistol Permit Policy apply to all applicants, whether or not the applicant previously held a license to carry issued by the Attorney General. | O'Neil Denial Letter, Ex. D, p.1. |

| 12 | The January 25, 2021, letter to Plaintiff Michael O'Neil explained that O'Neil's application was denied "[s]ince the City of Warwick permit you currently hold already provides you with the ability to lawfully carry a pistol or revolver in the State of Rhode Island, your application does not demonstrate a proper showing of need for the Office of Attorney General to issue another permit.  Doing so, [sic] would be duplicative of the permit you already hold." | O'Neil Denial Letter, Ex. D, p.2. |
|---|---|---|
| 13 | The January 25, 2021, letter to Plaintiff Michael O'Neil stated that the applicant had the opportunity to meet with representatives of the Attorney General's Office "to present any additional information they feel would provide a reason for reconsideration of their application." | O'Neil Denial Letter, Ex. D, p.2. |
| 14 | Plaintiff Michael O'Neil requested and received an appointment, held on March 10, 2021, to appeal the denial of his application. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Michael O'Neil (Apr. 1, 2021) [O'Neil Denial Review Letter], Ex. E, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.75 (authenticating O'Neil Denial Review Letter) |
| 15 | On April 1, 2021, the Attorney General's Office sent Plaintiff Michael O'Neil a letter documenting the meeting and affirming the denial of his application. | O'Neil Denial Review Letter, Ex. E, pp.1-2. |
| 16 | The April 1, 2021, letter recounted how, at the March 10, 2021, meeting, Plaintiff Michael O'Neil's legal counsel represented as an additional reason for issuing the license that O'Neil was a "public figure" due to his position as "vice-president of the Rhode Island Second Amendment coalition," putting O'Neil "at additional risk of harm from gun control advocates." | O'Neil Denial Review Letter, Ex. E, p.1. |
| 17 | The April 1, 2021, letter recounted how, at the March 10, 2021, meeting, Plaintiff Michael O'Neil's legal counsel "affirmed that [O'Neil] currently hold[s] an active permit to carry a pistol or revolver in the State of Rhode Island, issued by the Town of Warwick." | O'Neil Denial Review Letter, Ex. E, p.1. |
| 18 | The April 1, 2021, letter recounted how, at the March 10, 2021, meeting, the Attorney General's Office informed Plaintiff Michael O'Neil's legal counsel that the Warwick gun license already held by O'Neil "addresses this risk as he articulated it." | O'Neil Denial Review Letter, Ex. E, p.1. |

| 19 | The April 1, 2021, letter recounted how, at the March 10, 2021, meeting, Plaintiff Michael O'Neil's legal counsel listed as other reasons for needing an additional license issued by the Attorney General: legal counsel's "assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; and having both permits allows a town issued permit holder to bypass the waiting period and background check imposed by State law." | O'Neil Denial Review Letter, Ex. E, p.1. |
|---|---|---|
| 20 | The April 1, 2021, letter recounted how, at the March 10, 2021, meeting, Plaintiff Michael O'Neil's legal counsel "further stated that a denial of [O'Neil's] application would need to be disclosed on future applications for a permit to carry in other states." | O'Neil Denial Review Letter, Ex. E, p.1. |
| 21 | The April 1, 2021, letter affirmed denial of Plaintiff O'Neil's application for the following reasons:<br>• "Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State."<br>• "The Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process."<br>• "You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license."<br>• "Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue."<br>• "Similarly, having a State issued permit so that you can avoid the State's mandatory background check and waiting period, is not a | O'Neil Denial Review Letter, Ex. E, pp. 1-2. |

| | | |
|---|---|---|
| | need it is a desire. Moreover, the Town of Warwick permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws. § 11-47-35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you."<br>• "As delineated in this list of factors contained in your application packet, which are considered by the Attorney General for a proper showing of need, this office takes into account, among others, whether: the applicant has demonstrated a specific articulable risk to life, limb or property; the applicant can readily alter his or her conduct or undertake reasonable measures other than carrying a loaded firearm, to decrease the danger to life limb or property; and if there are means of protection available to the applicant other than the possession of a loaded firearm that will alleviate the risk to his or her person or property. These factors clearly articulate this Office's general authority to issue a permit only upon a proper showing of need. The additional concerns raised by [O'Neil] and [O'Neil's legal counsel] do not rise to this level." | |
| 22 | The April 1, 2021, letter further noted that "although not a factor in" the denial, Plaintiff Michael O'Neil's application was incomplete without the "authorization to conduct and release information for a background check." | O'Neil Denial Review Letter, Ex. E, p.2. |
| 23 | On July 8, 2021, Plaintiff O'Neil submitted a "Motion to Reconsider" to the Attorney General's Office on the following bases:<br>• "That the Petitioner has secured and maintained a permit from the Rhode Island Department of the Attorney General for approximately 12 years."<br>• "That there was no substantial and/or material changes in his circumstances since his last appliocation [sic]."<br>• "That a 'denial' from the AG will negatively affect him in his renewal applications from the Commonwealth of Massachusetts, the State of | O'Neil Motion to Reconsider, Ex. F, p.1. |

| | | |
|---|---|---|
| | Connecticut and other state(s) from which Mr. O'Neil has CCW permits." | |
| 24 | On July 21, 2021, the Attorney General's Office issued Plaintiff O'Neil a letter denying his Motion to Reconsider. | Letter from Michael W. Field, Assistant Attorney General, to Michael O'Neil (July 21, 2021) [O'Neil Motion to Reconsider Denial Letter], Ex. G, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.76 (authenticating O'Neil Motion to Reconsider Denial Letter). |
| 25 | In its July 21, 2021, letter, the Attorney General's Office explained that the impact of the denial on other states' licensing schemes was no basis for issuing a permit, as already explained by the April 1, 2021, letter. | O'Neil Motion to Reconsider Denial Letter, Ex. G, p.1. |
| 26 | In its July 21, 2021, letter, the Attorney General's Office explained that the lack of a material change in circumstances since O'Neil was previously granted a license from the Attorney General's Office "did not demonstrate a proper showing of need." | O'Neil Motion to Reconsider Denial Letter, Ex. G, p.1. |
| 27 | On August 6, 2021, Plaintiff O'Neil filed an amended petition for writ of certiorari of the Attorney General's denial to the Rhode Island Supreme Court. | Docket in O'Neil v. Rhode Island Department of the Attorney General, SU-2021-0175-MP, Ex. H, p.1. |
| 28 | On December 17, 2021, the Rhode Island Supreme Court issued an order denying Plaintiff O'Neil's petition for writ of certiorari. | Docket in O'Neil v. Rhode Island Department of the Attorney General, SU-2021-0175-MP, Ex. H, p.2. |
| 29 | Plaintiff Richard Cook applied to the Attorney General for a license to carry with an application dated April 16, 2021. | Cook Deposition, Ex. I, p.17:2. |
| 30 | At the time of his application, Plaintiff Cook had a permit to carry a pistol or revolver issued by the Town of Charlestown. | Letter from Michael J. Figueiredo, Deputy Chief, Bureau of Criminal Identification and Investigation, to Richard Cook (Aug. 4, 2021) [Cook Denial Letter], Ex. J, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.77 (authenticating Cook Denial Letter). |

| 31 | On August 4, 2021, the Attorney General's Office issued a letter informing Plaintiff Cook that his application was denied. | Cook Denial Letter, Ex. J, p.1. |
|----|----|----|
| 32 | The August 4, 2021, letter to Plaintiff Cook explained that his permit application was being denied because "CCW permits issued by Rhode Island Cities and Town[s] under Rhode Island General Law 11-47-11 gives the same authority to carry a concealed firearm as the office of the Attorney General." | Cook Denial Letter, Ex. J, p.1. |
| 33 | The August 4, 2021, letter to Plaintiff Cook invited Plaintiff Cook to notify the Attorney General's Office by email regarding any special circumstances regarding his need for a license issued by the Attorney General in addition to his town-issued license. | Cook Denial Letter, Ex. J, p.1. |
| 34 | Plaintiff Cook requested and received an appointment, held on December 15, 2021, to appeal the denial of his application. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Richard Cook (Dec. 21, 2021) [Cook Denial Review Letter], Ex. K, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.83 (authenticating Cook Denial Review Letter). |
| 35 | On December 21, 2021, the Attorney General's Office sent Plaintiff Cook a letter documenting the meeting and affirming the denial of his application. | Cook Denial Review Letter, Ex. K, p.1. |
| 36 | The December 21, 2021, letter recounted how, at the December 15, 2021, meeting, Plaintiff Cook's legal counsel listed as reasons for needing an additional license issued by the Attorney General: legal counsel's "assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; having both permits allows a town issued permit holder to bypass the waiting period and background check imposed by State law; and that an 'AG permit' differs from a town permit in that it allows for the open carrying of a handgun." | Cook Denial Review Letter, Ex. K, p.1. |
| 37 | The December 21, 2021, letter recounted how, at the December 15, 2021, meeting, Plaintiff Cook's legal counsel "further stated that a denial of [Cook's] application would need to be disclosed on future applications for a permit to carry in other states." | Cook Denial Review Letter, Ex. K, p.1. |
| 38 | The December 21, 2021, letter affirmed denial of Plaintiff Cook's application for the following reasons: | Cook Denial Review Letter, Ex. K, p.2. |

|  |  |  |
|---|---|---|
|  | • "Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State."<br>• "[T]he Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process."<br>• "You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license."<br>• "Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue."<br>• "Similarly, having a State issued permit so that you can avoid the State's mandatory background check and waiting period, is not a need it is a desire. Moreover, the Town of Warwick permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws. § 11-47-35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you."<br>• "[N]either [counsel] nor [Cook] provided any information or justification for" Cook's need to open carry a handgun. |  |
| 39 | On January 1, 2022, Plaintiff Cook filed a petition for writ of certiorari of the Attorney General's denial to the Rhode Island Supreme Court. | Docket in Cook v. Neronha et al., SU-2022-0004-MP, Ex. L, p.1. |
| 40 | On February 15, 2023, the Rhode Island Supreme Court issued an order denying Plaintiff Cook's petition for writ of certiorari. | Docket in Cook v. Neronha et al., SU-2022-0004-MP, Ex. L, p.2. |

| 41 | In August 2021, Plaintiff Donald Labriole applied to the Attorney General for a license to carry. | Labriole Deposition, Ex. M, p.13:24. |
| 42 | At the time of his application, Plaintiff Labriole had a permit to carry a pistol or revolver issued by the Town of West Greenwich. | Letter from Michael J. Figueiredo, Deputy Chief, Bureau of Criminal Identification and Investigation, to Donald Labriole (Nov. 7, 2021) [Labriole Denial Letter], Ex. N, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.85 (authenticating Labriole Denial Letter). |
| 43 | On November 7, 2021, the Attorney General's Office issued a letter informing Plaintiff Labriole that his application was denied. | Labriole Denial Letter, Ex. N, p.1. |
| 44 | The November 7, 2021, letter to Plaintiff Labriole explained that his permit application was being denied because "CCW permits issued by Rhode Island Cities and Towns under Rhode Island General Law 11-47-11 gives the same authority to carry a concealed firearm as the office of the Attorney General." | Labriole Denial Letter, Ex. N, p.1. |
| 45 | The November 7, 2021, letter to Plaintiff Labriole invited him to notify the Attorney General's Office by email regarding any special circumstances regarding his need for a license issued by the Attorney General in addition to his town-issued license. | Labriole Denial Letter, Ex. N, p.1. |
| 46 | Plaintiff Labriole requested and received an appointment, held on February 2, 2022, to appeal the denial of his application. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Donald Labriole (March 4, 2022) [Labriole Denial Review Letter], Ex. O, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.86 (authenticating Labriole Denial Review Letter). |
| 47 | On March 4, 2022, the Attorney General's Office sent Plaintiff Labriole a letter documenting the meeting and affirming the denial of his application. | Labriole Denial Review Letter, Ex. O, p.1. |
| 48 | The March 4, 2022, letter recounted how, at the February 2, 2022, meeting, Plaintiff Labriole's legal counsel listed as reasons for needing an additional license issued by the Attorney General: legal counsel's assertion "that the AG permit allows for reciprocity to | Labriole Denial Review Letter, Ex. O, p.1. |

| | | |
|---|---|---|
| | carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; having both permits allows a town issued permit holder to bypass the waiting period and background check imposed by State law; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; and that the Office of Attorney General does not specify anywhere that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General." | |
| 49 | The March 4, 2022, letter affirmed denial of Plaintiff Labriole's application for the following reasons:<br>• "Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State."<br>• "[T]he Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process."<br>• "You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license."<br>• "Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue."<br>• "Similarly, having a State issued permit so that you can avoid the State's mandatory background check and waiting period, is not a need it is a desire. Moreover, the Town of Warwick permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws. § 11-47- | Labriole Denial Review Letter, Ex. O, p.2. |

|  |  |  |
|---|---|---|
|  | 35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you."<br><br>• "This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific need." |  |
| 50 | On March 28, 2022, Plaintiff Labriole filed a petition for writ of certiorari of the Attorney General's denial to the Rhode Island Supreme Court. | Docket in Labriole v. Neronha et al., SU-2022-0085-MP, Ex. P, p.1. |
| 51 | On February 15, 2023, the Rhode Island Supreme Court issued an order denying Plaintiff Labriole's petition for writ of certiorari. | Docket in Labriole v. Neronha et al., SU-2022-0085-MP, Ex. P, p.2. |
| 52 | In September 2021, Plaintiff Richard Laporte applied to the Attorney General for a license to carry. | Second Amend. Compl., ECF No. 18, ¶ 29. |
| 53 | At the time of his application, Plaintiff Laporte had a permit to carry a pistol or revolver issued by the Town of West Greenwich. | Letter from Michael J. Figueiredo, Deputy Chief, Bureau of Criminal Identification and Investigation, to Richard Laporte (Jan. 14, 2022) [Laporte Denial Letter], Ex. Q, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.89 (authenticating Laporte Denial Letter). |
| 54 | On January 14, 2022, the Attorney General's Office issued a letter informing Plaintiff Laporte that his application was denied. | Laporte Denial Letter, Ex. Q, p.1. |
| 55 | The January 14, 2022, letter to Plaintiff Laporte explained that his permit application was being denied because "CCW permits issued by Rhode Island Cities and Towns under Rhode Island General Law 11-47-11 gives the same authority to carry a concealed firearm as the office of the Attorney General." | Laporte Denial Letter, Ex. Q, p.1. |
| 56 | The January 14, 2022, letter to Plaintiff Laporte invited him to notify the Attorney General's Office by email regarding any special circumstances regarding his need for a license issued by the Attorney General in addition to his town-issued license. | Laporte Denial Letter, Ex. Q, p.1. |

| 57 | Plaintiff Laporte requested and received an appointment, held on April 27, 2022, to appeal the denial of his application. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Richard Laporte (May 5, 2022) [Laporte Denial Review Letter], Ex. R, p.1. |
|----|----|----|
| 58 | On May 5, 2022, the Attorney General's Office sent Plaintiff Laporte a letter documenting the meeting and affirming the denial of his application. | Laporte Denial Review Letter, Ex. R, p.1. |
| 59 | The May 5, 2022, letter recounted how, at the April 27, 2022, meeting, Plaintiff Laporte's legal counsel listed as reasons for needing an additional license issued by the Attorney General: legal counsel's assertion "that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not specify anywhere the criteria used for evaluating an application and specifically that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General; a denial by the Attorney General could result in a loss of unemployment and the inability to collect unemployment compensation; and an AG permit has a barcode on it that can be scanned to verify the validity of the permit." | Laporte Denial Review Letter, Ex. R, pp.1-2. |
| 60 | The May 5, 2022, letter affirmed denial of Plaintiff Laporte's application for the following reasons:<br>• "Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State."<br>• "[T]he Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process."<br>• "You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are | Laporte Denial Review Letter, Ex. R, p.2. |

|  |  |  |
|---|---|---|
|  | seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license." <br> • "Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue." <br> • "This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*." <br> • When asked if Laporte was "required to carry a handgun for employment purposes," legal counsel "stated that you were not required to do so. Therefor, a denial of your application would have no effect on your employment or your ability to collect unemployment benefits." <br> • "The fact that an AG permit has a barcode, and a municipal permit may or may not have one, has no relevance to an assessment of your need to carry a handgun." |  |
| 61 | On May 10, 2022, Plaintiff Laporte filed a petition for writ of certiorari of the Attorney General's denial to the Rhode Island Supreme Court. | Docket in Laporte v. Neronha et al., SU-2022-0133-MP, Ex. S, p.1. |
| 62 | On February 15, 2023, the Rhode Island Supreme Court issued an order denying Plaintiff Laporte's petition for writ of certiorari. | Docket in Laporte v. Neronha et al., SU-2022-0133-MP, Ex. S, p.2. |
| 63 | In April 2022, Plaintiff Daniel Patterson applied to the Attorney General for a license to carry. | Second Amend. Compl., ECF No. 18, ¶ 29. |
| 64 | At the time of his application, Plaintiff Patterson had a permit to carry a pistol or revolver issued by the Town of Exeter. | Letter from Michael J. Figueiredo, Deputy Chief, Bureau of Criminal Identification and Investigation, to Daniel Patterson (April 23, 2022) [Patterson Denial Letter], Ex. T, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.91 |

| | | (authenticating Patterson Denial Letter). |
|---|---|---|
| 65 | On April 23, 2022, the Attorney General's Office issued a letter informing Plaintiff Patterson that his application was denied. | Patterson Denial Letter, Ex. T, p.1. |
| 66 | The April 23, 2022, letter to Plaintiff Patterson explained that his permit application was being denied because "CCW permits issued by Rhode Island Cities and Towns under Rhode Island General Law 11-47-11 gives the same authority to carry a concealed firearm as the office of the Attorney General." | Patterson Denial Letter, Ex. T, p.1. |
| 67 | The April 23, 2022, letter to Plaintiff Patterson invited him to notify the Attorney General's Office by email regarding any special circumstances regarding his need for a license issued by the Attorney General in addition to his town-issued license. | Patterson Denial Letter, Ex. T, p.1. |
| 68 | Plaintiff Patterson requested and received an appointment, held on June 22, 2022, to appeal the denial of his application. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Daniel Patterson (June 22, 2022) [Patterson Denial Review Letter], Ex. U, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.92 (authenticating Patterson Denial Review Letter) |
| 69 | On June 22, 2022, the Attorney General's Office sent Plaintiff Patterson a letter documenting the meeting and affirming the denial of his application. | Patterson Denial Review Letter, Ex. U, p.1. |
| 70 | The June 22, 2022, letter recounted how, at the June 22, 2022, meeting, Plaintiff Patterson's legal counsel listed as reasons for needing an additional license issued by the Attorney General: legal counsel's assertion "that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit . . . as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not specify anywhere the criteria used for evaluating an application and specifically that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General; having both permits allows a town issued permit holder to bypass . . . the | Patterson Denial Review Letter, Ex. U, pp.1-2. |

| | | |
|---|---|---|
| | waiting period and background check imposed by State law and that the AG's permit may be needed for certain specific types of employment such as security." | |
| 71 | The June 22, 2022, letter affirmed denial of Plaintiff Patterson's application for the following reasons:<br>• "Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State."<br>• "[T]he Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process."<br>• "You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license."<br>• "Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue."<br>• "Similarly, having duplicate town and State issued permits so that you can avoid the State's mandatory background check and waiting period, is not a need it is a desire. Moreover, the Town of Exeter permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws § 11-47-35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you."<br>• "This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. | Patterson Denial Review Letter, Ex. U, p.2. |

|  | | |
|---|---|---|
|  | Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*."<br>• "You make no reference to working in the security sector in your original application. Therefor, a denial of your application would have no effect on your employment." | |
| 72 | On July 1, 2022, Plaintiff Patterson filed a petition for writ of certiorari of the Attorney General's denial to the Rhode Island Supreme Court. | Docket in Patterson v. Neronha et al., SU-2022-0200-MP, Ex. V, p.1. |
| 73 | On February 15, 2023, the Rhode Island Supreme Court issued an order denying Plaintiff Patterson's petition for writ of certiorari. | Docket in Patterson v. Neronha et al., SU-2022-0200-MP, Ex. V, p.2. |
| 74 | In January 2022, Plaintiff Joseph Patton applied to the Attorney General for a license to carry. | Patton Deposition, Ex. W, p.16:17-18. |
| 75 | At the time of his application, Plaintiff Patton had a permit to carry a pistol or revolver issued by the Town of Foster. | Letter from Michael J. Figueiredo, Deputy Chief, Bureau of Criminal Identification and Investigation, to Joseph Patton (Jan. 25, 2022) [Patton Denial Letter], Ex. X, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.93 (authenticating Patton Denial Letter). |
| 76 | On January 25, 2022, the Attorney General's Office issued a letter informing Plaintiff Patton that his application was denied. | Patton Denial Letter, Ex. X, p.1. |
| 77 | The January 25, 2022, letter to Plaintiff Patton explained that his permit application was being denied because "CCW permits issued by Rhode Island Cities and Towns under Rhode Island General Law 11-47-11 gives the same authority to carry a concealed firearm as the office of the Attorney General." | Patton Denial Letter, Ex. X, p.1. |
| 78 | The January 25, 2022, letter to Plaintiff Patton invited him to notify the Attorney General's Office by email regarding any special circumstances regarding his need for a license issued by the Attorney General in addition to his town-issued license. | Patton Denial Letter, Ex. X, p.1. |
| 79 | Plaintiff Patton requested and received an appointment, held on April 27, 2022, to appeal the denial of his application. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Joseph |

| | | |
|---|---|---|
| | | Patton (May 5, 2022) [Patton Denial Review Letter], Ex. Y, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.94 (authenticating Patton Denial Review Letter). |
| 80 | On May 5, 2022, the Attorney General's Office sent Plaintiff Patton a letter documenting the meeting and affirming the denial of his application. | Patton Denial Review Letter, Ex. Y, p.1. |
| 81 | The May 5, 2022, letter recounted how, at the April 27, 2022, meeting, Plaintiff Patton's legal counsel listed as reasons for needing an additional license issued by the Attorney General: legal counsel's assertion "that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not specify anywhere the criteria used for evaluating an application and specifically that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General; a denial by the Attorney General could result in a loss of unemployment and the inability to collect unemployment compensation; and an AG permit has a barcode on it that can be scanned to verify the validity of the permit." | Patton Denial Review Letter, Ex. Y, pp.1-2. |
| 82 | The May 5, 2022, letter affirmed denial of Plaintiff Patton's application for the following reasons:<br>• "Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State."<br>• "[T]he Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process."<br>• "You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that | Patton Denial Review Letter, Ex. Y, p.2. |

|  |  |  |
|---|---|---|
|  | would honor an Attorney General issued license, but not a town issued license." <br>• "Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue." <br>• "This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*." <br>• When asked if Patton was "required to carry a handgun for employment purposes," legal counsel "stated that you were not required to do so. Therefor, a denial of your application would have no effect on your employment or your ability to collect unemployment benefits." <br>• "The fact that an AG permit has a barcode, and a municipal permit may or may not have one, has no relevance to an assessment of your need to carry a handgun. Neither you, nor [legal counsel], presented any factual circumstances as to how this directly related to your application." |  |
| 83 | On May 10, 2022, Plaintiff Patton filed a petition for writ of certiorari of the Attorney General's denial to the Rhode Island Supreme Court. | Docket in Patton v. Neronha et al., SU-2022-0134-MP, Ex. Z, p.1. |
| 84 | On February 15, 2023, the Rhode Island Supreme Court issued an order denying Plaintiff Patton's petition for writ of certiorari. | Docket in Patton v. Neronha et al., SU-2022-0134-MP, Ex. Z, p.2. |
| 85 | In January 2022, Plaintiff Peter Trementozzi applied to the Attorney General for a license to carry. | Trementozzi Deposition, Ex. AA, p.23:6-8. |
| 86 | At the time of his application, Plaintiff Trementozzi had a permit to carry a pistol or revolver issued by the Town of Scituate, Rhode Island. | Letter from Michael J. Figueiredo, Deputy Chief, Bureau of Criminal Identification and Investigation, to Peter Trementozzi (Mar. 12, 2022) |

| | | [Trementozzi Denial Letter], Ex. BB, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.94-95 (authenticating Trementozzi Denial Letter) |
|---|---|---|
| 87 | On March 12, 2022, the Attorney General's Office issued a letter informing Plaintiff Trementozzi that his application was denied. | Trementozzi Denial Letter, Ex. BB, p.1. |
| 88 | The March 12, 2022, letter to Plaintiff Trementozzi explained that his permit application was being denied because "CCW permits issued by Rhode Island Cities and Towns under Rhode Island General Law 11-47-11 give the same authority to carry a concealed firearm as the office of the Attorney General." | Trementozzi Denial Letter, Ex. BB, p.1. |
| 89 | The March 12, 2022, letter to Plaintiff Trementozzi invited him to notify the Attorney General's Office by email regarding any special circumstances regarding his need for a license issued by the Attorney General in addition to his town-issued license. | Trementozzi Denial Letter, Ex. BB, p.1. |
| 90 | Plaintiff Trementozzi requested and received an appointment, held on April 27, 2022, to appeal the denial of his application. | Letter from Edward Troiano, Chief, Bureau of Criminal Identification and Investigation, to Peter Trementozzi (May 4, 2022) [Trementozzi Denial Review Letter], Ex. CC, p.1; Troiano Deposition (Mar. 22, 2024), Ex. B, p.95 (authenticating Trementozzi Denial Review Letter). |
| 91 | On May 4, 2022, the Attorney General's Office sent Plaintiff Trementozzi a letter documenting the meeting and affirming the denial of his application. | Trementozzi Denial Review Letter, Ex. CC, p.1. |
| 92 | The May 4, 2022, letter recounted how, at the April 27, 2022, meeting, Plaintiff Trementozzi's legal counsel listed as reasons for needing an additional license issued by the Attorney General: legal counsel's assertion "that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not specify anywhere the criteria used for evaluating an application and specifically that an applicant who | Trementozzi Denial Review Letter, Ex. CC, pp.1-2. |

| | | |
|---|---|---|
| | holds a town permit will not be approved for a permit issued by the Attorney General; a denial by the Attorney General could result in a loss of unemployment and the inability to collect unemployment compensation; and an AG permit has a barcode on it that can be scanned to verify the validity of the permit." | |
| 93 | The May 4, 2022, letter affirmed denial of Plaintiff Trementozzi's application for the following reasons:<br><br>• "Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State."<br><br>• "[T]he Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process."<br><br>• "You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license."<br><br>• "Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue."<br><br>• "This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*."<br><br>• When asked if Trementozzi was "required to carry a handgun for employment purposes," legal counsel "stated that you were not required to do so. Therefor, a denial of your | Trementozzi Denial Review Letter, Ex. CC, p.2. |

| | | |
|---|---|---|
| | application would have no effect on your employment or your ability to collect unemployment benefits."<br>• "The fact that an AG permit has a barcode, and a municipal permit may or may not have one, has no relevance of your need to carry a handgun. Neither you, nor [legal counsel], presented any factual circumstances as to how this directly related to your application." | |
| 94 | On May 10, 2022, Plaintiff Trementozzi filed a petition for writ of certiorari of the Attorney General's denial to the Rhode Island Supreme Court. | Docket in Trementozzi v. Neronha et al., SU-2022-0135-MP, Ex. DD, p.1. |
| 95 | On February 15, 2023, the Rhode Island Supreme Court issued an order denying Plaintiff Trementozzi's petition for writ of certiorari. | Docket in Trementozzi v. Neronha et al., SU-2022-0135-MP, Ex. DD, p.2. |
| 96 | At his February 27, 2024, deposition, when asked why he needed an open carry permit, Plaintiff Cook responded "I'm not sure." | Cook Deposition, Ex. I, p.22:7. |
| 97 | At his February 26, 2024, deposition, when asked why he needed an open carry permit, Plaintiff Laporte responded "It's nice to have the option. I probably would not use it, but it's nice to have the option." | Laporte Deposition, Ex. EE, p.33:22-23. |
| 98 | At his February 27, 2024, deposition, when asked why he needed an open carry permit, Plaintiff Patton responded "I prefer concealed, so you're not advertising you have a gun." | Patton Deposition, Ex. W, p.25:3-4. |
| 99 | At his February 26, 2024, deposition, when asked about the advantages of an open carry permit, Plaintiff Patterson responded "I don't have to worry about breaking a law if my gun is being seen." | Patterson Deposition, Ex. FF, pp. 52:25-53:1. |
| 100 | At his February 26, 2024, deposition, when asked how being denied an open carry permit would impact his employment, Plaintiff Patterson responded "I would have to keep looking down to make sure the firearm is covered. Like I said, five months out of the year we're working in T-shirts." | Patterson Deposition, Ex. FF, p.13:11-13. |
| 101 | At his February 26, 2024, deposition, when asked about the advantages of an open carry permit, Plaintiff Trementozzi responded "Well, I could seek employment if I wanted to with an armored car, security company as an armed guard." | Trementozzi Deposition, Ex. AA, p.32:17-19. |
| 102 | At his February 26, 2024, deposition, when asked about current plans to work in security, Plaintiff Trementozzi admitted that he has not filed any | Trementozzi Deposition, Ex. AA, p.33:25. |

|  | application for employment with an armed security company. |  |
|---|---|---|
| 103 | At his February 26, 2024, deposition, when asked about the advantages of an open carry permit, Plaintiff O'Neil responded "Open carry, for security jobs. Open carry for anything that you would want to be employed by. If you wanted to pick up part-time work, you have to go through the whole process if you have the permit already." | O'Neil Deposition, Ex. GG, p.52:12-16. |
| 104 | At his February 26, 2024, deposition, when asked how being denied an open carry permit would impact his employment, Plaintiff O'Neil responded that his current jobs did not require an open carry permit. | O'Neil Deposition, Ex. GG, p.52:18. |
| 105 | At his February 26, 2024, deposition, when asked about his plans for providing security services, Plaintiff O'Neil responded ". . . I've been thinking about the security aspect of it, and that's something for the future." | O'Neil Deposition, Ex. GG, p.53:4-6. |
| 106 | At his March 22, 2024, deposition, when asked why he needed to openly carry firearms, Plaintiff Labriole responded "I work in all areas of the state. I do all kinds of work. . . . Sometimes if the gun is exposed, it stops things from happening. People see it. Well, we're not going to mess with that." | Labriole Deposition, Ex. M, p.18:11-16. |
| 107 | At his March 22, 2024, deposition, Plaintiff Labriole admitted that he has never been in a situation where he would have used a weapon had he had one available. | Labriole Deposition, Ex. M, p.10:10. |
| 108 | At his March 22, 2024, deposition, when asked about the distinction between open and concealed carry on the job, Plaintiff Labriole replied "I would carry open if I had the opportunity to, but I would carry concealed. If she felt uncomfortable with me having a gun, I would carry concealed." [referring to the court reporter as "she"] | Labriole Deposition, Ex. M, pp.9:18-10:2. |
| 109 | At his October 11, 2024, deposition, Plaintiffs' expert Clayton Cramer testified that "Open carry means that you are carrying a firearm in a way that is readily visible.  It is not concealed under your clothes or anywhere else.  Usually that means being carried in a holster of some sort.  Sometimes—I remember seeing them carried in a pocket before, openly, with the butt of the gun visible.  But that would be included as well." | Cramer Deposition, Ex. HH, pp.11:23-12:4. |
| 110 | At his October 11, 2024, deposition, Plaintiffs' expert Clayton Cramer testified that "A lot of people, like my daughter, for example, she feels, it sort of disturbs her | Cramer Deposition, Ex. HH, p.140:16-22. |

|  | | |
|---|---|---|
|  | when she sees an open carry.  It doesn't disturb her that she knows a lot of people are carrying concealed. That's an example of social stigma, there's certain level of disapproval where people are clearly uncomfortable." |  |
| 111 | At his October 11, 2024, deposition, Plaintiffs' expert Clayton Cramer testified, when asked about social stigma against carrying deadly weapons openly during the Early Republic, "There might well have been some social stigma to it, but that doesn't necessarily – there's no laws about it." | Cramer Deposition, Ex. HH, p.142:13-15. |
| 112 | At his October 17, 2024, deposition, Plaintiffs' expert Clayton Cramer testified "that laws that prohibited concealed carry were considered permissible, because they left open carry available as a method of carrying weapons for self-defense." | Cramer Deposition, Ex. HH, p.196:4-7. |
| 113 | On page 86 of his book *Concealed Weapon Laws of the Early Republic*, Plaintiffs' expert Clayton Cramer wrote "As the Louisiana statute's preamble showed and will be seen with some of the Alabama editorials, banning of concealed carrying of deadly weapons was often carelessly equated with a ban on *any* form of wearing deadly weapons. This suggests (but does not prove) that the open carrying of deadly weapons was subject to sufficient social stigma to guarantee that a ban on concealed carry was, effectively, a ban on all carrying.". | Exhibit 9 to Cramer Deposition, Ex. II, p.9; Cramer Deposition, Ex. HH, p.136 (authenticating book excerpts in Exhibit 9). |

Dated: November 27, 2024

Respectfully submitted,

DEFENDANTS PETER F. NERONHA
and THE STATE OF RHODE ISLAND,

By their Attorneys,

*/s/ James J. Arguin*
James J. Arguin (#10972)

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (#10742)

Special Assistant Attorneys General
Office of the Attorney General
150 South Main Street
Providence, R.I. 02903
(401) 274-4400 exts. 2078/2074

(401) 222-2995 (Fax)
jarguin@riag.ri.gov/pmeosky@riag.ri.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ James J. Arguin*