**EXHIBIT A**

# WEAPONS CARRY PERMIT PACKET

## POLICY
*
## LAWS
*
## APPLICATION


PLAINTIFF'S EXHIBIT
1 TROIANO
3-22-24
PENGAD 800-631-6989



## PETER F. NERONHA
## ATTORNEY GENERAL

Dear Applicant:

By applying for a permit to carry a pistol or revolver with the Department of Attorney General, you are exercising your right under Rhode Island General Law §11-47-18. It is this statute which gives the Department of Attorney General the right and responsibility to administer this program in accordance with the law. It is intended as a service to the people of Rhode Island.

It is important to remember that a permit to carry a pistol or revolver does not authorize you to use the firearm. Such usage of a handgun is regulated by other provisions of RI law. Please carefully read the enclosed policy regarding the issuance of the pistol or revolver permit. It is intended to serve as a guideline to aid you in understanding the authority and responsibility of the Attorney General to carry out RI law.

Also contained in this application are the RI General Laws relating to weapons, known as the <u>Firearms Act</u>. Before you are granted a permit to carry a pistol or revolver, you must acknowledge that you are familiar with the provisions of the Act.

This application package does not include Federal laws pertaining to firearms. You must observe both Federal and RI laws. Federal law is administered by Federal agencies. For information relative to Federal regulation of firearms, you may contact the Bureau of Alcohol, Tobacco, and Firearms.

The application itself must be filled out completely and truthfully. It is a crime to knowingly give false information to obtain a permit to carry a pistol or revolver. Please read the instructions carefully and note that first time and renewal applicants must supply all information being requested to the Bureau of Criminal Identification Unit at the time of application.

The submission of the application for a permit to carry a pistol or revolver is the beginning of a process of review by members of the BCI Unit, which culminates in a recommendation of affirmation or denial. Should your application be denied, you will be advised by mail. If you wish to appeal this finding, you may contact the Chief of the BCI Unit at 274-4400 and a personal interview will be scheduled to reconsider the application.

A successful applicant for a permit to carry a pistol or revolver will be notified by mail to respond personally to the Department of Attorney General to obtain the permit. Please exercise your privilege to carry a pistol or revolver in the State of Rhode Island responsibly, properly, and safely.

Sincerely yours,

Adi Goldstein
Deputy Attorney General

2

## **PISTOL PERMIT POLICY**

### INTRODUCTION

Pursuant to Rhode Island General Laws § 11-47-18, the Attorney General may issue a license or permit to carry a pistol or revolver to any person twenty-one (21) years of age or over upon a proper showing of need. This statute requires the Attorney General to deny a pistol permit to all persons who do not demonstrate a proper showing of need to carry a pistol or revolver on their person. If an individual is able to demonstrate a proper showing of need, the Attorney General then has discretion to issue or deny a pistol permit. The Providence Journal Company v. Pine, No. C.A. 96-6274, (R.I. Super. Ct., June 24, 1998). No one in the State has a right to obtain a pistol permit. A pistol permit is a privilege left to the sound discretion of the Attorney General. Id.

The Attorney General will exercise his discretion in a manner designed to protect the public at large as well as the individual applicant for a pistol permit.

Pursuant to R.I. Gen. Laws § 11-47-15, the applicant must also qualify to obtain a permit. The right to carry a loaded, concealed firearm in public is different from the right to purchase or possess a handgun in one's own home or business. The privilege to carry a concealed firearm is limited to those who demonstrate a need for, and an understanding and acceptance of, this responsibility.

The Attorney General does not discriminate in the issuance of a pistol permit on grounds of race, sex, national origin, or any other reason prohibited by law.

### PROCEDURE

An applicant for a pistol permit must complete the entire application in full as explained in steps 1-15 on pages 34 and 35 Submit the completed application to the Attorney General at 4 Howard Avenue, Cranston, Rhode Island 02920. The Attorney General then checks the applicant's background with state, local and federal law enforcement databases. The Attorney General may also check Court records and other sources for pending criminal cases, restraining orders and/or discrepancies in the applicant's background, including prior history of mental illness.

The Attorney General will not issue a pistol permit to any applicant who is prohibited from possessing or carrying a firearm under any State or Federal law (e.g. 18 U.S.C. § 922(g)) or pursuant to any Court order.

If this initial check does not disqualify the applicant from obtaining a pistol permit, the Attorney General shall review the application on an individual basis to determine whether there has been a proper showing of need, as required by the statute, and whether the applicant is qualified.

The Office of the Attorney General may revoke, at any time, a license to carry permit pursuant to R.I.G.L. 11-47-13. A permit which has been revoked will not be returned to the permittee, regardless of any change in the circumstances which led to the revocation. This provision does not bar an individual from reapplying for a new permit.

3

## PROPER SHOWING OF NEED

In considering each individual application for a pistol permit the Attorney General must determine whether or not the applicant has demonstrated a proper showing of need to carry a loaded firearm in public, and consider the individual's demonstration of skill and responsibility to safely carry and use a firearm in compliance with all State, Federal and local laws. Because a loaded, concealed firearm in untrained hands presents danger to the public and the applicant, the Attorney General must consider countervailing risks to the public in assessing need.

While there cannot be any set formula or criteria to limit or restrict the Attorney General's discretion to issue or deny a pistol permit, the Attorney General considers the following factors in assessing an applicant's proper showing of need.

1. Has the applicant demonstrated a specific articulable risk to life, limb or property? If so, has the applicant demonstrated how a pistol permit will decrease the risk?

2. Can the applicant readily alter his or her conduct, or undertake reasonable measures other than carrying a loaded firearm, to decrease the danger to life, limb or property?

3. Are there means of protection available to the applicant other than the possession of a loaded firearm that will alleviate the risk to his or her person or property?

4. Has the applicant demonstrated the skill, training and ability to properly use a firearm in accordance with Rhode Island laws?

5. Has the applicant presented a plan to properly secure the firearm so that it does not fall into unauthorized hands?

6. How greatly will the possession of a loaded firearm by the applicant increase the risk of harm to the applicant or to the public?

7. Has the applicant demonstrated that he or she will not use the firearm for an unlawful or improper purpose, and that he or she has not used a firearm for an unlawful or improper purpose in the past?

8. Does past unlawful, dangerous or violent conduct of the applicant justify denial at the Attorney General's discretion even if it is not sufficient to disqualify the applicant as a matter of law from possessing a firearm?

9. Has the applicant been issued a protective order pursuant to chapter 15-5, chapter 15-15, or chapter 8-8.1 of the general laws?

10. Any and all other factors deemed lawful and appropriate by the Attorney General to demonstrate that the applicant is or is not a person suitable to possess a loaded firearm in public.

After assessing the above factors, the Attorney General in his sole discretion shall grant or deny the pistol permit. In certain cases, the Attorney General may issue a pistol permit with restrictions in lieu of a denial.

4

After   In addition to these reasons, the Attorney General will give consideration to those persons who seek renewal of existing permits who have demonstrated through their actions and experience a level of responsibility commensurate with that expected of one who is privileged to carry a loaded firearm in the public sector.

## RESPONSIBILITIES

Approved holders must maintain, use, and store their firearm or firearms in a responsible manner. All permit holders are required to inform their respective city or town police departments, as well as the Bureau of Criminal Identification of the Department of Attorney General, within 24 hours of becoming aware of the loss or theft of a weapon. If you do not report a loss or theft timely, your permit may be suspended.

## CONCLUSION

This policy is meant as a general guideline to aid the public in understanding the Attorney General's authority to carry out the requirements of Rhode Island General Laws § 11-47-18 and it shall be followed as a guideline in the assessment of applications for a pistol permit. This policy is not intended to and does not confer any rights on any person. As required by law, the Attorney General shall retain the right to accept or reject any application for a pistol permit upon his sole determination of "a proper showing of need."

This policy supersedes all prior policies.
Dated: January 23, 2001

5

# CHAPTER 11-47
# Weapons

## Index Of Sections

- § 11-47-1 Short title.

- § 11-47-2 Definition of terms.

- § 11-47-3 Carrying dangerous weapons or substances when committing crime of violence.

- § 11-47-3.1 Carrying a stolen firearm when committing a crime of violence.

- § 11-47-4 Being armed prima facie evidence of intention.

- § 11-47-5 Possession of arms by person convicted of crime of violence or who is a fugitive from justice.

- § 11-47-5.1 Larceny of a firearm.

- § 11-47-6 Mental incompetents, drug addicts, and drunkards prohibited from possession.

- § 11-47-7 Possession of firearm by alien.

- § 11-47-8 License or permit required for carrying pistol – Possession of machine gun.

- § 11-47-9 Persons exempt from restrictions.

- § 11-47-9.1 Additional exemptions.

- § 11-47-10 License or permit not required to carry to target range.

- § 11-47-11 License or permit to carry concealed pistol or revolver.

- § 11-47-12 License or permit fee.

- § 11-47-13 Revocation of license or permit.

- § 11-47-14 Licenses and permits to banks and carriers.

- § 11-47-15 Proof of ability required for license or permit.

- § 11-47-15.1 Qualifications required of law enforcement officers appointed after June 6, 1970.

- **§ 11-47-15.2 Definitions of law enforcement firing positions.**

- **§ 11-47-15.3 Commission on law enforcement standards and training.**

- **§ 11-47-16 Certification of qualification.**

- **§ 11-47-17 Qualifications required of law enforcement officers appointed after June 17, 1959.**

- **§ 11-47-17.1 Mandatory or discretionary nature of § 11-47-15.1 requirements – Qualification reports to be filed.**

- **§ 11-47-18 License or permit issued by attorney general on showing of need – Issuance to retired police officers.**

- **§ 11-47-19 Machine gun manufacturers' licenses or permits.**

- **§ 11-47-20 Sale or possession of silencers.**

- **§ 11-47-20.1 Armor-piercing bullets.**

- **§ 11-47-20.2 Possession during commission of a felony.**

- **§ 11-47-20.3 Injury or death of law enforcement officer.**

- **§ 11-47-21 Restrictions on possession or carrying of explosives or noxious substances.**

- **§ 11-47-22 Forfeiture and destruction of unlawful firearms.**

- **§ 11-47-23 False information in securing firearm or license.**

- **§ 11-47-24 Alteration of marks of identification on firearms.**

- **§ 11-47-25 Antique firearms and collections.**

- **§ 11-47-26 Penalties for violations.**

- **§ 11-47-27 Standard of proof under §§ 11-47-1 – 11-47-34.**

- **§ 11-47-28 Arrest and detention for possession of firearms.**

- **§ 11-47-29 Certification of conviction of alien.**

- **§ 11-47-30 Sale, transfer or delivery of firearms to minors.**

- **§ 11-47-31 Sale, transfer or delivery of ammunition to minors.**

- **§ 11-47-32 Possession of ammunition by minor.**

§ 11-47-33 Possession of firearms by minors.

§ 11-47-34 Firearms permits to minors.

§ 11-47-35 Sale of concealable weapons – Safety courses and tests – Review board – Issuance of permits to certain government officers.

§ 11-47-35.1 Persons exempt from § 11-47-35.

§ 11-47-35.2 Sale of rifles/shotguns.

§ 11-47-35.3 Annual report on application process administration.

§ 11-47-36 Purchase of concealable firearms from out of state dealers.

§ 11-47-37 Sale to minors and others forbidden.

§ 11-47-38 Dealers to be licensed.

§ 11-47-39 Issuance and conditions of dealer's license.

§ 11-47-40 Register of sales of firearms – Display of firearms.

§ 11-47-41 Government firearm registration prohibited.

§ 11-47-42 Weapons other than firearms prohibited.

§ 11-47-43 Collectors and police officers exempt from § 11-47-42.

§ 11-47-44 Standard of proof under §§ 11-47-42 and 11-47-43.

§ 11-47-45 Arrest and detention for possession of weapon prohibited by § 11-47-42.

§ 11-47-46 Sections 11-47-42 – 11-47-45 inapplicable to firearms.

§ 11-47-47 Display of weapons.

§ 11-47-48 Report of gunshot wounds.

§ 11-47-48.1 Report of lost or stolen weapons.

§ 11-47-49 Firing across highways prohibited.

§ 11-47-49.1 Firing in Blackstone Valley Flood Plain prohibited.

§ 11-47-50 Firing without landowner's permission – Firing in compact area.

§ 11-47-51 Loaded weapons in vehicles.

- **§ 11-47-51.1 Discharge of firearm or incendiary or explosive substance or device from motor vehicle.**

- **§ 11-47-52 Carrying of weapon while under the influence of liquor or drugs.**

- **§ 11-47-53 Limitation of prosecutions under §§ 11-47-49 – 11-47-52 – Fines.**

- **§ 11-47-54 Licensing of shooting galleries.**

- **§ 11-47-55 Enforcement of chapter.**

- **§ 11-47-56 Constitutionality.**

- **§ 11-47-57 "Mace" or similar substances.**

- **§ 11-47-58 Firearms – State pre-emption.**

- **§ 11-47-59 Possession of knife during commission of crime.**

- **§ 11-47-60 Possession of firearms on school grounds.**

- **§ 11-47-60.1 Safe storage.**

- **§ 11-47-60.2 Possession of weapons on school grounds – Notification.**

- **§ 11-47-61 Drive-by shootings.**

- **§ 11-47-62 Immunity from prosecution – Criminal or civil.**

# TITLE 11
# Criminal Offenses

## CHAPTER 11-47
## Weapons

**§ 11-47-1 Short title.** – This chapter may be cited as the firearms act.

**§ 11-47-2 Definition of terms.** – When used in this chapter, the following words and phrases shall be construed as follows:

(1) "Antique firearm" shall be defined as that term is defined under the provisions of title 18, United States Code, subsection 921 (18 U.S.C. § 921).

(2) "Crime of violence" shall mean and include any of the following crimes or an attempt to commit any of them; murder, manslaughter, rape, first or second degree sexual assault, first or second degree child molestation, kidnapping, first and second degree arson, mayhem, robbery, burglary, breaking and entering, any felony violation involving the illegal manufacture, sale, or delivery of a controlled substance, or possession with intent to manufacture, sell, or deliver a controlled substance classified in schedule I or schedule II of § 21-28-2.08, any violation of § 21-28-4.01.1 or 21-28-4.01.2 or conspiracy to commit any violation of these statutes, assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony; upon any conviction of an offense punishable as a felony offense under § 12-29-5.

(3) "Firearm" shall include any machine gun, pistol, rifle, air rifle, air pistol, "blank gun," "BB gun," so-called, or other instrument from which steel or metal projectiles are propelled, or which may readily be converted to expel a projectile, except recurve, compound, or longbows and except such instruments propelling such projectiles which instruments are designed or normally used for a primary purpose other than as a weapon. The frame or receiver of any such weapon shall be construed as a firearm under the provisions of this section.

(4) "Fugitive from justice" shall mean any person who has fled from any state, territory, the District of Columbia, or possession of the United States to avoid prosecution for a crime of violence or to avoid giving testimony in any criminal proceeding.

(5) "Licensing authorities" shall mean the board of police commissioners of a city or town where such board has been instituted, the chief of police or superintendent of police of other cities and towns having a regular

(6) organized police force, and, in towns where there is no chief of police or superintendent of police, it shall mean the town clerk who may issue licenses upon the recommendation of the town sergeant, and it shall also mean any other person or body duly authorized by the city or town charter or by state law.

(7) "Machine gun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term

10

shall also include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if the parts are in the possession or under the control of a person.

(8) "Person" shall include individual, partnership, firm, association, or corporation.

(9) "Pistol" shall include any pistol or revolver, and any shotgun, rifle, or similar weapon with overall length less than twenty-six inches (26"), but shall not include any pistol or revolver designed for the use of blank cartridges only.

(10) "Sawed-off rifle" shall mean any rifle with overall length of less than twenty-six inches (26") and/or barrel length of less than sixteen inches (16").

(11) "Sawed-off shotgun" shall mean any shotgun with overall length of less than twenty-six inches (26") and/or barrel length of less than eighteen inches (18").

(12) "Sell" shall include let or hire, give, lend, and transfer, and the word "purchase" shall include hire, accept, and borrow, and the expression "purchasing" shall be construed accordingly.

### § 11-47-3 Carrying dangerous weapons or substances when committing crime of violence. – No person shall commit or attempt to commit a crime of violence when armed with or having available any firearm, any explosive substance, any noxious liquid, gas, or substance, or any acid. Every person violating the provisions of this section shall be punished for the first such conviction by imprisonment for not less than three (3) nor more than ten (10) years; and for a second conviction under this section by imprisonment for not less than ten (10) nor more than twenty (20) years and for a third or subsequent such conviction the person so convicted shall be sentenced to not less than fifteen (15) years to life imprisonment; and for the penalties provided in this section he or she shall not be afforded the provisions of suspension or deferment of sentence, nor probation.

### § 11-47-3.1 Carrying a stolen firearm when committing a crime of violence. – No person shall commit a crime of violence when armed with or having available a stolen firearm. Every person violating the provisions of this section shall be punished for the first conviction by imprisonment for not less than five (5) nor more than ten (10) years; and for a second conviction under this section by imprisonment for not less than fifteen (15) nor more than twenty (20) years, and for a third or subsequent conviction under this section by imprisonment for not less than twenty (20) years and may be imprisoned for life. The sentence imposed shall be consecutive to the underlying sentence for the crime of violence.

### § 11-47-4 Being armed prima facie evidence of intention. – In the trial of a person for committing or attempting to commit a crime of violence the fact that he or she was armed with or had available a pistol or revolver without license to carry it, or was armed with or had available a machine gun, shall be prima facie evidence of his or her intention to commit the crime of violence.

### § 11-47-5 Possession of arms by person convicted of crime of violence or who is a fugitive from justice. – (a) No person who has been convicted in this state or elsewhere of a crime of violence or who is a fugitive from justice shall purchase, own, carry, transport, or have in his or her possession any firearm.

(a)

(b) Notwithstanding the provisions of subsection (a) herein, no person convicted of an offense punishable as a
felony offense under § 12-29-5 shall purchase, own, carry, transport, or have in his or her possession any
firearm, for a period of two (2) years following the date of such conviction.

(c) No person who is in community confinement pursuant to the provisions of § 42-56-20.2 or who is otherwise
subject to electronic surveillance or monitoring devices as a condition of parole shall purchase, carry,
transport, or have in his or her possession any firearm. This subsection shall not apply to any person who
has not been convicted of (or pleaded guilty or nolo contendere to) a crime of violence in a court of
competent jurisdiction.

(d) Every person violating the provisions of this section shall, upon conviction, be punished by imprisonment
for not less than two (2) nor more than ten (10) years; and for penalties provided in this section he or she
shall not be afforded the benefit of suspension or deferment of sentence nor of probation.

## § 11-47-5.1 Larceny of a firearm. –

(a) Every person who shall steal any firearm shall be deemed guilty of larceny. Firearm, as utilized in this
section only, shall not apply to an air rifle, air pistol, "blank gun," or "BB gun." Every person violating the
provisions of this section shall be punished, upon conviction, by imprisonment for not less than one year nor
more than five (5) years; and for penalties provided in this section he or she shall not be afforded the
provisions of suspension or deferment of sentence nor of probation.

(b) No person shall steal any firearm as defined in this section and then sell, lend, or transfer such firearm or
firearms. Any person convicted of violating the provisions of this subsection shall be punished by
imprisonment for not less than ten (10) years nor more than twenty (20) years, and further provided that the
sentence shall be consecutive to any other sentence he or she may receive or is serving.

## § 11-47-6 Mental incompetents, drug addicts, and drunkards prohibited from possession. – No person
who is under guardianship or treatment or confinement by virtue of being a mental incompetent, or who has
been adjudicated or is under treatment or confinement as a drug addict, or who has been adjudicated or is under
treatment or confinement as an habitual drunkard, shall purchase, own, carry, transport, or have in his or her
possession or under his or her control any firearm. Any person affected by the provisions of this section, other
than a person who has been pronounced criminally insane by competent medical authority, after the lapse of a
period of five (5) years from the date of being pronounced cured by competent medical authority, may, upon
presentation of an affidavit issued by competent medical authority to the effect that he or she is a mentally
stable

person and a proper person to possess firearms, make application for the purchase of the firearm(s). Any person
affected by the provisions of this section, in making application for the purchase of firearms and in executing
the application, thereby voluntarily waives his or her right to refuse or refrain from disclosing any confidential
information, including, but not limited to, any information arising from the physician-patient relationship,
pertinent to a determination by the proper authorities regarding the approval or disapproval of this application.
Any person affected by the provisions of this section, in making application for the purchase of firearms and in
executing the application, further agrees to allow the proper authorities to investigate any and all medical
records of the applicant pertinent to a determination by the authorities regarding the approval or disapproval of
this application. In the event that the application is approved and if the person has no other disqualifying record
he or she will be allowed to purchase and possess firearms.

**§ 11-47-7 Possession of firearm by alien.** – No unnaturalized foreign born person who entered the United States in violation of the laws of the United States or, having legally entered the United States in a lawful manner but now remains in the United States in violation of the laws of the United States, shall purchase, own, carry, transport, or have in his or her possession or under his or her control any firearm.

When any person is charged under this section, the law enforcement agency bringing said charge shall, prior to arraignment, notify the United States Office of Immigration and Naturalization of said charge and further notify the court, at arraignment, of the alleged status of the person so charged.

**§ 11-47-8 License or permit required for carrying pistol – Possession of machine gun.** –
(a) No person shall, without a license or permit, issued as provided in §§ 11-47-11, 11-47-12 and 11-47-18, carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed, except in his or her dwelling house or place of business or on land possessed by him or her or as provided in §§ 11-47-9 and 11-47-10. The provisions of the above section shall not apply to any person who is the holder of a valid license or permit issued by the licensing authority of another state, or territory of the United States, or political subdivision thereof, allowing him or her to carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed, provided the person is merely transporting the firearm through the state in a vehicle or other conveyance without any intent on the part of said person to detain him or herself or remain within the state of Rhode Island. No person shall manufacture, sell, purchase, or possess a machine gun except as otherwise provided in this chapter. Every person violating the provision of this section shall, upon conviction, be punished by imprisonment for not less than one nor more than ten (10) years or by a fine up to ten thousand dollars ($10,000), or both, and except for a first conviction under this section shall not be afforded the provisions of suspension or deferment of sentence, nor a probation.

(b) No person shall have in his or her possession or under his or her control any sawed-off shotgun or sawed-off rifle as defined in § 11-47-2. Any person convicted of violating this subsection shall be punished by imprisonment for up to ten (10) years or by a fine of up to five thousand dollars ($5,000), or both, and for any subsequent conviction.

(c) No person shall have in his or her possession or under his or her control any firearm while the person delivers, possesses with intent to deliver, or manufactures a controlled substance. Any person convicted of violating this subsection shall be punished by imprisonment for not less than two (2) years nor more than twenty (20) years; and further provided, that the sentence shall be consecutive to any sentence the person may receive for the delivery, possession with intent to deliver, or the manufacture of the controlled substance. It shall not be a defense to a violation of this subsection that a person has a license or permit to carry or possess a firearm.

**§ 11-47-9 Persons exempt from restrictions.** – The provisions of § 11-47-8 shall not apply to sheriffs, deputy sheriffs, the superintendent and members of the state police, members of the Rhode Island airport police department, assistant director (adult services), deputy assistant director, associate directors, members of the Rhode Island state marshals, correctional officers, all within the department of corrections, members of the city or town police force, capitol police investigators of the department of attorney general appointed pursuant to § 42-9-8.1, the director, assistant director, and other inspectors and agents at the Rhode Island state fugitive task force appointed pursuant to § 12-6-7.2, railroad police while traveling to and from official assignments or while on assignments, conservation officers, or other duly appointed law enforcement officers, nor to members of the army, navy, air force, marine corps of the United States, the national guard, or organized reserves, when on duty, nor to members of organizations by law authorized to purchase or receive firearms from the United States or this state, provided such members are at or going to or from their places of assembly or target practice, nor to officers or employees of the United States authorized by law to carry a concealed firearm, nor to any civilian guard or criminal investigator carrying sidearms or a concealed firearm in the performance of his or her official

13

duties under the authority of the commanding officer of the military establishment in the state of Rhode Island where he or she is employed by the United States, nor to any civilian guard carrying sidearms or a concealed firearm in the performance of his or her official duties under the authority of the adjutant general where he or she is employed guarding a national guard facility, provided, however, that the commanding officer of such military establishment shall have on file with the attorney general of this state a list of the names and addresses of all such civilian guards and criminal investigators so authorized, nor to duly authorized military organizations when on duty, nor to members when at or going to or from their customary places of assembly, nor to the regular and/or ordinary transportation of pistols as merchandise, nor to any person while carrying a pistol unloaded and securely wrapped from the place of purchase to his or her home or place of business, or in moving goods from one place of abode or business to another. Persons exempted by the provisions of this section from the provisions of § 11-47-8 shall have the right to carry concealed firearms everywhere within this state; provided, however, that this shall not be construed as giving the right to carry concealed firearms to a person transporting firearms as merchandise or as household or business goods.

**§ 11-47-9.1 Additional exemptions.** – The provisions of §§ 11-47-8 and 11-47-11 shall not apply to members of the state police, members of city or town police forces, and members of the Rhode Island airport police department. Persons exempted by the provisions of this section from the provisions of § 11-47-8 shall have the right to carry concealed firearms everywhere within this state; provided, however, that this shall not be construed as giving the right to carry concealed firearms to a person transporting firearms as merchandise or as household or business goods.

**§ 11-47-10 License or permit not required to carry to target range.** – No license or permit shall be required for the purpose of carrying or transporting any pistol or revolver from one's home or place of business to a bona fide target practice range, nor from a bona fide target practice range to one's home or place of business, to engage in any shoot meet, or practice, provided that the pistol or revolver is broken down, unloaded and carried as openly as circumstances will permit, or provided that the pistols or revolvers are unloaded and secured in a separate container suitable for the purpose.

**§ 11-47-11 License or permit to carry concealed pistol or revolver.** –
(a) The licensing authorities of any city or town shall, upon application of any person twenty-one (21) years of age or over having a bona fide residence or place of business within such city or town, or of any person twenty-one (21) years of age or over having a bona fide residence within the United States and a license or permit to carry a pistol or revolver concealed upon his or her person issued by the authorities of any other

(b) state or subdivision of the United States, issue a license or permit to the person to carry concealed upon his or her person a pistol or revolver everywhere within this state for four (4) years from date of issue, if it appears that the applicant has good reason to fear an injury to his or her person or property or has any other proper reason for carrying a pistol or revolver, and that he or she is a suitable person to be so licensed. The license or permit shall be in triplicate in form to be prescribed by the attorney general and shall bear the fingerprint, photograph, name, address, description, and signature of the licensee and the reason given for desiring a license or permit and in no case shall it contain the serial number of any firearm. The original shall be delivered to the licensee. Any member of the licensing authority, its agents, servants, and employees shall be immune from suit in any action, civil or criminal, based upon any official act or decision, performed or made in good faith in issuing a license or permit under this chapter.

(c) Notwithstanding any other chapter or section of the general laws of the state of Rhode Island, the licensing authority of any city or town shall not provide or release to any individual, firm, association or corporation the name, address, or date of birth of any person who has held or currently holds a license or permit to carry

14

a concealed pistol or revolver. This section shall not be construed to prohibit the release of any statistical data of a general nature relative to age, gender and racial or ethnic background nor shall it be construed to prevent the release of information to parties involved in any prosecution of § 11-47-8 or in response to a lawful subpoena in any criminal or civil action which said person is a party to such action.

**§ 11-47-12 License or permit fee.** – A fee of forty dollars ($40.00) shall be charged and shall be paid for each license or permit to the licensing authority issuing the same. Every such license or permit shall be valid for four (4) years from the date when issued unless sooner revoked. The fee charged for issuing of such license or permit shall be applied for the use and benefit of the city, town, or state of Rhode Island.

**§ 11-47-13 Revocation of license or permit.** – Any such license or permit may be revoked for just cause at any time by the authority granting it, and, upon revocation, such authority shall give immediate notice to the attorney general, who shall immediately note the revocation, with the date of revocation, upon the copy of the license or permit on file in his or her office.

**§ 11-47-14 Licenses and permits to banks and carriers.** – The attorney general may issue a license or permit to any banking institution doing business in this state or to any public carrier who is in the business of transporting mail, money, securities, or other valuables, to possess and use machine guns under such regulations as the attorney general may prescribe.

**§ 11-47-15 Proof of ability required for license or permit.** – No person shall be issued a license or permit to carry a pistol or revolver concealed upon his or her person until he or she has presented certification as prescribed in § 11-47-16 that he or she has qualified with a pistol or revolver of a caliber equal to or larger than the one he or she intends to carry, that qualification to consist of firing a score of 195 or better out of a possible score of 300 with thirty (30) consecutive rounds at a distance of twenty-five (25) yards on the army "L" target, firing "slow" fire. The "slow" fire course shall allow ten (10) minutes for the firing of each of three (3) ten (10) shot strings.
(4)

**§ 11-47-15.1 Qualifications required of law enforcement officers appointed after June 6, 1970.** – Except as provided in § 11-47-15.3, all law enforcement officers of this state and its political subdivisions whose permanent appointment shall take place later than June 6, 1970, shall qualify on the official national rifle association B-21 police combat target firing a score of 165 or better out of a possible score of 250 with fifty (50) rounds in the distance, time period, and position required in the course.
Stage A. – 7 yards 10 shots crouch position, time 25 seconds.
Stage B. – 12 yards 5 shots point shoulder left hand 5 shots point shoulder right hand, both unsupported and 5 shots    kneeling, time 75 seconds.
Stage C. – 21 yards 5 shots point shoulder left hand supported, 5 shots point shoulder right hand supported, time 45 seconds.
Stage D. – 25 yards 5 shots prone, 5 shots left hand barricade, 5 shots right hand barricade, time one minute 45 seconds.
All stages are started with the weapon loaded with 5 rounds and holstered.

**§ 11-47-15.2 Definitions of law enforcement firing positions.** –
(a) Crouch Position – Exerted effort to reduce the size of the body, weapon may be fired with one or two hands, the shooter may not drop to his or her knee(s).

(b) Point Shoulder – A semi-crouch position with weapon held at shoulder level.

(c) Kneeling – Kneeling on one knee, the other extended towards the target. One arm may be supported on the forward knee. The weapon may be fired with either hand and may be supported by the free hand.

(d) Barricade – Standing on both feet drawing the weapon and using the free hand to support it, with the use of the barricade.

(e) Prone – Body extended on the ground, head towards the target. The weapon may be supported by both hands which are extended towards the target. The shooter shall assume this position by dropping to his or her knees. Weapon shall be drawn while in kneeling position, free hand shall be extended forward to support shooter as he continues into the prone position.

## §11-47-15.3 Commission on law enforcement standards and training. –

(A) In lieu of the provisions of §§ 11-47-15.1, 11-47-15.2 and 11-47-17; each law enforcement department of this state and its political subdivisions may, on an annual basis, submit to the commission on law enforcement standards and training, herein after referred to as the commission, a proposal for the training and qualification of their officers on all firearms which they are authorized to carry or use in the performance of their official duties.

(B) Each such proposal shall include training and qualification in the following areas:
(1) Decision shooting
(2) Reduced light shooting
(3) Moving targets
(4) Use of cover
(5) Nondominate hand shooting
(6) Alternate position shooting
(7) Reloading drills
(8) Malfunction drills

(B) A minimum number of one hundred (100) rounds shall be fired by each officer during the training and qualification.

(C) Qualification shall be no less than twenty percent (20%) nor more than fifty percent (50%) of the total rounds fired. A minimum qualifying score shall be sixty-six percent (66%) of the rounds fired during the qualification phase.

(D) The commission shall review each proposal and, within fourteen (14) days notify the department, in writing, whether the proposal is accepted or rejected. In the case of rejection, the commission shall make recommendations to the department which, if implemented, would make the proposal acceptable. Upon receipt of this notification, the department shall have fourteen (14) days to submit a new proposal that is acceptable to the commission.

(E) In the event that a department neglects to submit a proposal to the commission or fails to submit a proposal that is approved by the commission, the officers of that department shall be required to fulfill the requirements for qualification as set out in §§ 11-47-15.1, 11-47-15.2, 11-47-17 or 11-47-17.1.

(F) All law enforcement officers of this state and its political subdivisions whose permanent appointment shall take place after July 1, 1997, will be required to qualify under the provisions of this section with all weapons which they are authorized to carry or use in the execution of their official duties.

16

(G) Any law enforcement officer of this state and its political subdivisions whose permanent appointment took place prior to July 1, 1997, may elect to qualify under the applicable provisions of §§ 11-47-15.1, 11-47-15.2, 11-47-17 or 11-47-17.1.

**§ 11-47-16 Certification of qualification.** – The range officer of the Rhode Island state police, the range officer of any city or town police department maintaining a regular and continuing firearms training program, a pistol instructor certified by the National Rifle Association and/or the United States Revolver Association, and other qualified persons as the attorney general may designate are authorized to certify the qualification required by §§ 11-47-15 and 11-47-15.1. The certification required by §§ 11-47-15 and 11-47-15.1 and § 11-47-15.3 shall be accomplished on a form to be prescribed by the attorney general.

**§ 11-47-17 Qualifications required of law enforcement officers appointed after June 17, 1959.** – Except as provided in § 11-47-15.3 all law enforcement officers of this state and its political subdivisions whose permanent appointment shall take place after June 17, 1959, will be required to qualify with the pistol or revolver with which they are armed prior to their permanent appointment, that qualification to be the same as that required in § 11-47-15. Constables, special officers, and all law enforcement officers who by law are authorized to carry side-arms and whose appointments are made on a recurring basis will be required to qualify not later than one year following the date of enactment of this section, and their commissions or warrants will be plainly marked or stamped "QUALIFIED WITH PISTOL OR REVOLVER" and will be signed and dated by the

certifying authority attesting to that fact. The failure of any law enforcement officer to qualify under the provisions of this section revokes his privilege of carrying a pistol or revolver, whether concealed or not, on or about his or her person. All law enforcement officers of this state and its political subdivisions will repeat this qualification at periods of not more than one year.

**§ 11-47-17.1 Mandatory or discretionary nature of § 11-47-15.1 requirements – Qualification reports to be filed.** –
(a) All law enforcement officers of this state and its political subdivisions whose permanent appointment shall take place later than June 6, 1970 shall be required to qualify with the pistol or revolver with which they are armed prior to their permanent appointment, that qualification to be as required in §§ 11-47-15.1 and 11-47-15.3. All permanent appointed law enforcement officers of this state and its political subdivisions who are required to qualify under § 11-47-17, may, at the discretion of the officer, qualify under either §§ 11-47-15, 11-47-15.1 or 11-47-15.3. The failure of any law enforcement officer to qualify under the provisions of this section revokes his or her privilege of carrying a pistol or revolver, whether concealed or not, on or about his or her person. Qualification under this section will be required at periods of not more than one year.
(b) Copies of all of the qualification reports shall be filed with the office of the attorney general.

**§ 11-47-18 License or permit issued by attorney general on showing of need – Issuance to retired police officers.** –
(a) The attorney general may issue a license or permit to any person twenty-one (21) years of age or over to carry a pistol or revolver, whether concealed or not, upon his or her person upon a proper showing of need, subject to the provisions of §§ 11-47-12 and 11-47-15, that license or permit may be issued notwithstanding the provisions of § 11-47-7.
(b) All state police officers and permanent members of city and town police forces of this state who have retired in good standing after at least twenty (20) years of service or retired in good standing due to a physical disability other than a psychological impairment, may be issued a license or permit by the attorney general subject to the provisions of §§ 11-47-12 and 11-47-15. Any member of the licensing authority, and its

17

(b) agents, servants, and employees shall be immune from suit in any action, civil or criminal, based upon any official act or decision, performed or made in good faith in issuing a license or permit under this chapter.

(c) Notwithstanding any other chapter or section of the general laws of the state of Rhode Island, the attorney general shall not provide or release to any individual, firm, association or corporation the name, address, or date of birth of any person who has held or currently holds a license or permit to carry a concealed pistol or revolver. This section shall not be construed to prohibit the release of any statistical data of a general nature relative to age, gender and racial or ethnic background nor shall it be construed to prevent the release of information to parties involved in any prosecution of § 11-47-8 or in response to a lawful subpoena in any criminal or civil action which said person is a party to such action.

§ 11-47-19 Machine gun manufacturers' licenses or permits. – The attorney general may issue to any person, firm, or corporation, engaged in manufacturing in this state, a license or permit to manufacture and sell machine guns and any or all machine gun parts under such regulations as the attorney general may prescribe.

§ 11-47-20 Sale or possession of silencers. – It shall be unlawful within this state to manufacture, sell, purchase, or possess any muffler, silencer, or device for deadening or muffling the sound of a firearm when discharged. Violations of this section shall be punished by imprisonment for not less than one year and one day.

§ 11-47-20.1 Armor-piercing bullets. – It shall be unlawful within this state for any person to import, manufacture, sell, purchase, or otherwise transfer any bullets which have steel inner cores or cores of equivalent hardness and truncated cones and which are designed for use in pistols as armor-piercing or metal-piercing bullets. Any person who violates the provisions of this section shall be punished by imprisonment for not more than three (3) years or a fine of not more than five thousand dollars ($5,000), or both. This section shall not apply to the purchase of those bullets by the Rhode Island State Police, by any city or town police department of the state of Rhode Island; or by the department of environmental management for display as a part of a firearms training course under its auspices.

§ 11-47-20.2 Possession during commission of a felony. – Any person who uses bullets referred to in § 11-47-20.1 in the commission of a felony or who carries bullets of that kind in any weapon during the commission of a felony, shall, in addition to the punishment provided for the commission of such felony, be punished by imprisonment for not less than one year nor more than ten (10) years or a fine of not more than ten thousand dollars ($10,000), or both.

§ 11-47-20.3 Injury or death of law enforcement officer. – Any person who uses such bullets as defined in § 11-47-20.1 in the shooting of any law enforcement officer acting in the performance of his or her official duties so as to cause injury or death to the officer shall, upon conviction, be sentenced to life imprisonment.

§ 11-47-21 Restrictions on possession or carrying of explosives or noxious substances. – Any person, except a member of the state police, the sheriff or the sheriff's deputies, a member of the police force of any city or town, or a member of the army, navy, air force, or marine corps of the United States, or of the national guard or organized reserves when on duty, who possesses, or carries on or about his or her person or in a vehicle, a bomb or bombshell, except for blasting or other commercial use, or who, with intent to use the same unlawfully against the person or property of another, possesses or carries any explosive substance, or any noxious liquid, gas, or substance, shall be guilty of a violation of this chapter and punished as provided in § 11-47-26.

18

**§ 11-47-22 Forfeiture and destruction of unlawful firearms.** – No property right shall exist in any firearm unlawfully possessed, carried, or used, and all unlawful firearms are hereby declared to be nuisances and forfeited to the state. When forfeited firearms shall be taken from any person, they shall be surrendered to the superintendent of state police, or to the chief of police in the city or town in which they are taken, or to the town sergeant of such town where there is no chief or superintendent of police. The officer to whom they are surrendered shall, except upon a certificate of a justice of the superior court or the attorney general that the nondestruction of the weapons is necessary or proper to the ends of justice, proceed to destroy all such firearms at stated intervals of not more than one year. Provided, however, that if any forfeited firearm shall be found to be the property of an innocent owner, it shall be returned to the owner if and when no longer needed for purposes of evidence. Any owner of a firearm who shall knowingly fail to report the loss or theft of the firearm to the proper law enforcement authorities shall not be entitled to its return.

**§ 11-47-23 False information in securing firearm or license.** – No person shall, in purchasing, or otherwise securing delivery of a shotgun, rifle, pistol, or revolver, or in applying for a license to carry it, give false information or offer false evidence of his or her identity. Violation of the provisions of this section may be punished by imprisonment for not more than five (5) years.

**§ 11-47-24 Alteration of marks of identification on firearms.** – No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any firearm. Possession of any firearm upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated it. Violation of the provisions of this section may be punished by imprisonment for not more than five (5) years.

**§ 11-47-25 Antique firearms and collections.** – This chapter shall not apply to antique firearms unsuitable for use, nor to collections of firearms utilized and maintained for educational, scientific, or any similar purpose without intent to use the firearms.

**§ 11-47-26 Penalties for violations.** – Unless otherwise specified, any violation of any provision of this chapter shall be punished by a fine of not more than one thousand dollars ($1,000) or imprisonment for not more than five (5) years or both such fine and imprisonment; provided, however, that a violation of any of the provisions of §§ 11-47-1 – 11-47-34, inclusive, with relation to air rifle, air pistol, "blank gun," "BB gun," so-called, or other instrument other than a machine gun, shotgun, rifle, or pistol, from which steel or other metal projectiles are propelled, shall for the first offense be punished by a fine of not more than fifty dollars ($50.00) and for the second or any subsequent offense by a fine of not more than one hundred dollars ($100) or by imprisonment for not more than thirty (30) days, or both; and provided, further, however, that the provisions of chapter 1 of title 14 shall apply in the case of any person under the age of eighteen (18) years.

**§ 11-47-27 Standard of proof under §§ 11-47-1 – 11-47-34.** – No negative allegation of any kind need be averred or proved in any complaint under §§ 11-47-1 – 11-47-34, inclusive, and the carrying or use of any firearm contrary to the provisions of those sections shall be evidence that the possession, carrying or use of any firearm is unlawful, but the respondent in any case brought under those sections may show any fact that would render the possession, or use, or carrying of the firearm lawful.

**§ 11-47-28 Arrest and detention for possession of firearms.** – Every officer authorized to make an arrest may, without complaint and warrant, arrest any person who has in his or her possession any firearm, whenever the officer has reasonable ground to suspect that the person possesses or is using or is carrying the firearm contrary to law. Any person so arrested may be detained a reasonable time, not exceeding twenty-four (24) hours, for the purpose of making an investigation concerning the person, but no person so arrested shall be detained longer than twenty-four (24) hours without complaint being made against him or her before some proper court or justice. If the officer making the arrest shall at any time within the twenty-four (24) hours satisfy himself or

herself that there is no ground for making a criminal complaint against the person, he or she shall thereupon be discharged from custody.

**§ 11-47-29 Certification of conviction of alien.** – In the case of the conviction under §§ 11-47-1 – 11-47-34, inclusive, of a person who is not a citizen of the United States, it shall be the duty of the clerk of the court in which conviction is secured to certify the fact of the conviction to the proper officer of the United States government having supervision of the deportation of aliens.

**§ 11-47-30 Sale, transfer or delivery of firearms to minors.** – It shall be unlawful within this state for any person to sell, transfer, give, convey, or cause to be sold, transferred, given or conveyed any firearm to any person under eighteen (18) years of age, except for the limited purposes set forth in §§ 11-47-33 and 11-47-34 and with the prior approval or consent of the parent or legal guardian of the minor.

**§ 11-47-31 Sale, transfer or delivery of ammunition to minors.** – It shall be unlawful within this state for any person to sell, transfer, give, convey, or cause to be sold, transferred, given or conveyed any ammunition, including any priming charge of powder, propelling charge of powder, or any form of missile or projectile to be ejected from a firearm to any person under eighteen (18) years of age, except for the limited purposes set forth in §§ 11-47-33 and 11-47-34 and with the prior approval or consent of the parent or legal guardian of the minor.

**§ 11-47-32 Possession of ammunition by minor.** – Except as provided in § 11-47-33, it shall be unlawful within this state for any person under eighteen (18) years of age to possess and use ammunition, including any priming charge of powder, propelling charge of powder, or any form of missile or projectile to be ejected from a firearm.

**§ 11-47-33 Possession of firearms by minors.** – (a) It shall be unlawful within this state for any person under eighteen (18) years of age to possess and use any firearm unless he or she shall hold a permit as provided in § 11-47-34, and unless the person is in the presence of a parent or guardian or supervising adult at any regular and recognized camp or rifle range approved by the Rhode Island state police or by the chief of police of the city or town in which the camp or rifle range is located and provided further that this provision shall not apply to minors engaged in lawful hunting activity under the supervision of a parent or qualified adult, minors participating in Reserve Officer Training Corps programs, ceremonial parade activities, competitive and target shooting, participants in state militia activities and minors participating in a basic firearms education program, and provided, further, however, that a person under eighteen (18) years of age may carry a firearm, unloaded, in a suitable case to and from his or her home and the camp or range and from the camp or range to other camp or range when accompanied by a parent, guardian or supervising adult.

(b) For purposes of this section only, the term "qualified adult" shall mean any person twenty-one (21) years of age or older and permitted by law to possess and use said firearm.

**§ 11-47-34 Firearms permits to minors.** – The Rhode Island state police or the chief of police of the city or town in which the person resides shall issue permits to any person under eighteen (18) years of age only upon satisfactory proof of being engaged in a course of training in the use of firearms at a regular and recognized camp or rifle range, and further provided that the person has the written consent of a parent or guardian. Valid membership cards of junior gun clubs or of junior divisions of senior gun clubs incorporated in the state of Rhode Island shall be prima facie evidence of the person under eighteen (18) years of age being engaged in a course of training in the use of firearms at a regular and recognized camp or rifle range.

**§ 11-47-35 Sale of concealable weapons – Safety courses and tests – Review board – Issuance of permits to certain government officers. –**

(a) No seller shall deliver a pistol or revolver to a purchaser until seven (7) days shall have elapsed from twelve o'clock (12:00) noon of the day following the day of application for the purchase, and when delivered, the pistol or revolver shall be unloaded and securely wrapped, with the bill of sale to be enclosed within the wrapper with the pistol or revolver. Any citizen of the United States and/or lawful resident of this state who is twenty-one (21) years of age or older, and any nonresident member of the armed forces of the United States who is stationed in this state and who is twenty-one (21) years of age or older, may upon application purchase or acquire a pistol or revolver. At the time of applying for the purchase of a concealable firearm, the purchaser shall: (A) complete and sign in triplicate and deliver to the seller the application form described below, and in no case shall it contain the serial number of the pistol or revolver; and (B) shall present to the seller a pistol/revolver safety certificate issued by the department of environmental management. The certificate shall be retained in the possession of the buyer. The pistol/revolver safety certificate shall certify that the purchaser has completed a basic pistol/revolver safety course as shall be administered by the department of environmental management.

(Face of application form)
Application to Purchase Pistol or Revolver
Date . . . . . . . . . . . . . . . . . . . . . . Hour A.M. P.M.
Name
Address
(Street and number) (City or town) (State)
Date of Birth . . . . . . . . . . . . . . . . . . . . . . . . . Place of Birth
Height . . . . . . . . . . . . Weight . . . . . . . . . . . . . . Color hair
Color eyes
Scars
Tattoos
Other identifying marks
Are you a citizen of the United States
Are you a citizen of Rhode Island
How long
Where stationed
(Armed Forces only)
Have you ever been convicted of a crime of violence
(See § 11-47-2)
Have you ever been adjudicated or under confinement as addicted to a controlled substance
Have you ever been adjudicated or under confinement for alcoholism
Have you ever been confined or treated for mental illness
From whom is pistol or revolver being purchased
Seller's address

21

Seller's signature
Applicant's signature
(See § 11-47-23 for penalty for false information on this application)
(Reverse side of application form)
AFFIDAVIT: I certify that I have read and am familiar with the provisions of §§ 11-47-1 – 11-47-55, inclusive, of the general laws of the State of Rhode Island and Providence Plantations, and that I am aware of the penalties for violation of the provisions of the cited sections. I further certify that I have completed the required basic pistol/revolver safety course.
Signed
(over)
County of
State of Rhode Island
Subscribed and sworn before me this . . . . day of . . . . A.D. 20. .
Notary Public
Other

(2) The seller shall on the date of application, sign and forward by registered mail or by delivery in person, the original and duplicate copies of the application to the superintendent of the Rhode Island state police or the chief of police in the city or town in which the seller has his or her residence or place of business. The superintendent of the Rhode Island state police or the chief of police in the city or town in which the seller has his or her residence or place of business shall mark or stamp the original copy of the application form with the date and the time of receipt and return it by the most expeditious means to the seller. The triplicate copy duly signed by the seller shall within seven (7) days, be sent by him or her by registered mail to the attorney general. The seller shall retain the original copy duly receipted by the police authority to whom sent or delivered for a period of six (6) years with other records of the sale. It shall be the duty of the police authority to whom the duplicate copy of the application form is sent or delivered to make a background check of the applicant to ascertain whether he or she falls under the provisions of § 11-47-5, 11-47-6, 11-47-7, or 11-47-23. If, after the lapse of seven (7) days from twelve o'clock (12:00) noon of the day following application, no disqualifying information has been received from the investigating police authority by the seller, he or she will deliver the firearm applied for to the applicant. Upon the finding of no disqualifying information under the provisions of the above cited sections of this chapter, and in no case later than thirty (30) days after the date of application, the duplicate and triplicate copies of the application will be destroyed. Retention of the duplicate and triplicate copies in violation of this act or any unauthorized use of the information contained therein by a person or agency shall be punishable by a fine of not more than one thousand dollars ($1,000). The provisions of this section shall not apply to bona fide sales at wholesale to duly licensed retail dealers, nor to purchases by retail dealers duly licensed under the provisions of § 11-47-39.

(b) The department of environmental management shall establish the basic pistol/revolver safety course required hereunder. Said safety course shall consist of not less than two (2) hours of instruction in the safe use and handling of pistols and revolvers and the course shall be available to buyers continually throughout the year at convenient times and places but at least monthly at locations throughout the state, or more frequently as required. Proficiency in the use of pistols or revolvers shall not be prerequisite to the issuance of the safety certificate. No person shall be required to complete the course more than once, provided however, that any person completing the course who is unable to produce the safety certificate issued by the department of environmental management shall be required to take the course again unless such person provides evidence to said department that he or she has successfully completed the course.
(d) The administration of the basic pistol/revolver safety course required by this section shall not exceed the cost of thirty-five thousand dollars ($35,000) in any fiscal year.

(c) After January 1, 1980, proof of passage of the department of environmental management's basic hunter safety course will be equivalent to the pistol/revolver safety certificate mandated by this section.

22

(d) Any person who has reason to believe that he or she does not need the required handgun safety course may, at any time after May 8, 1980, apply by any written means to the department of environmental management to take an objective test on the subject of matter of the handgun safety course. The test shall be prepared, as well as an instruction manual upon which the test shall be based, by the department. The manual shall be made available by any means to the applicant who may, within the time limits for application, take the objective test at the department or at any location where the handgun safety course is being given. Any person receiving a passing grade on the test shall be issued a pistol/revolver safety certificate by the department.

(e) There is hereby established within the department of environmental management a review board which shall consist of five (5) members as follows: one member from the Rhode Island house of representatives to be appointed by the speaker, one member from the Rhode Island senate to be appointed by the majority leader, two (2) members who are residents of the state representing the public, to be appointed by the governor, one of whom shall be from the Rhode Island rifle and revolver association, and the director of the department of environmental management or his or her designee. The legislative members of the review board shall serve so long as they shall remain members of the house from which they were appointed and until their successors are duly appointed and qualified. The board members representing the public shall serve at the pleasure of the governor. Vacancies shall be filled in like manner as the original appointments.

(2) It shall be the duty of the review board to monitor and evaluate the development of the basic pistol/revolver safety course required by this section, to ensure compliance with the provisions of subsection (b) of this section, and to periodically make or recommend such changes in the safety course as the review board deems advisable, not inconsistent with the provisions of this section. It shall further be the duty of the review board to decide all appeals from any decisions of the department of environmental management rendered pursuant to its responsibilities as set forth in subsection (b) of this section.

(3) There shall be no civil liability incurred and no cause of action of any nature shall arise against any member of the review board or its agents, servants, or employees as a result of any decisions made by the board or for any action taken by the board or its members, agents, servants, or employees.

(f) The following persons shall be issued basic pistol/revolver permits by the department of environmental management: sheriffs, deputy sheriffs, the superintendent and members of the state police, prison or jail wardens or their deputies, members of the city or town police force, members of the park police, conservation officers, and officers of the United States government authorized by law to carry a concealed firearm and, at the discretion of the department of environmental management, any person who can satisfactorily establish that he or she formerly held, such office or were so authorized.

(g) Any person who is serving in the army, navy, air force, marine corps or coast guard on active duty shall not be required to obtain a basic pistol/revolver safety certificate or basic pistol/revolver permit under this section so long as he or she remains on such active duty.

(h) Any person who is serving in the active reserve components of the army, navy, air force, marine corps or coast guard, or any person in an active duty paid status in the Rhode Island national guard, shall not be required to obtain a basic pistol/revolver safety certificate under this section so long as he or she remains in active status.

§ 11-47-35.1 Persons exempt from § 11-47-35. – The provisions of § 11-47-35 shall not apply to full-time members of the state police, or full-time members of the state marshal's office, or full-time members of city or town police departments, or state marshals or correctional officers or persons licensed under § 11-47-11.

## §11-47-35.2 Sale of rifles/shotguns. –

(a) No seller shall deliver a rifle or shotgun to a purchaser thereof until seven (7) days shall have elapsed from twelve o'clock (12:00) noon of the day following the day of application for the purchase, and when delivered, the rifle or shotgun shall be unloaded and securely wrapped, with the bill of sale therefor to be enclosed within the wrapper with the rifle or shotgun. Any citizen of the United States and/or lawful resident of this state who is eighteen (18) years of age or older, and any non-resident member of the armed forces of the United States who is stationed in this state and who is eighteen (18) years of age or older, may, upon application, purchase or acquire a rifle or shotgun. At the time of applying for the purchase of a shotgun or rifle the purchaser shall complete and sign in triplicate and deliver to the seller the application form described below, and in no case shall it contain the serial number of the rifle or shotgun.

(Face of application form)

Application to Purchase Shotgun or Rifle

Date . . . . . . . . . . . . . . . . . . . . . . Hour A.M. P.M.

Name

Address

(Street and number) (City or town) (State)

Date of Birth . . . . . . . . . . . . . . . . . . . . . . . . . . Place of Birth

Height . . . . . . . . . . . . . Weight . . . . . . . . . . . . . . Color hair

Color eyes

Scars

Tattoos

Other identifying marks

Are you a citizen of the United States

Are you a citizen of Rhode Island

How long

Where stationed

(Armed Forces only)

Have you ever been convicted of a crime of violence

(See § 11-47-2 General Laws of Rhode Island)

Have you ever been adjudicated or under confinement as addicted to a controlled substance

Have you ever been adjudicated or under confinement for alcoholism

Have you ever been confined or treated for mental illness

From whom is shotgun or rifle being purchased

Seller's address

Seller's signature

Applicant's signature

(See § 11-47-23 for penalty for false information on this application)

(Reverse side of application form)

AFFIDAVIT: I certify that I have read and am familiar with the provisions of §§ 11-47-1 – 11-47-59, inclusive, of the general laws of the State of Rhode Island and Providence Plantations, and that I am aware of the penalties for violation of the provisions of the cited sections.

Signed

County of

State of Rhode Island

Subscribed and sworn before me this . . . . day of . . . . A.D. 19. .

Notary Public

(b) The seller shall, on the date of application, sign and forward by registered mail or by delivery in person, the original and duplicate copies of the application to the superintendent of the Rhode Island state police or the chief of police in the city or town in which the seller has his or her residence or place of business. The superintendent of the Rhode Island state police or the chief of police in the city or town in which the seller has

24

his or her residence or place of business shall mark or stamp the original copy of the application form with the date and time of receipt and return it by the most expeditious means to the seller. The triplicate copy duly signed by the seller shall within seven (7) days be sent by him or her by registered mail to the attorney general. The seller shall retain the original copy duly receipted by the police authority to whom sent or delivered for a period of six (6) years with other records of the sale. It shall be the duty of the police authority to whom the duplicate copy of the application form is sent or delivered to make a background check of the applicant to ascertain whether he or she falls under the provisions of § 11-47-5, 11-47-6, 11-47-7, or 11-47-23. If after the lapse of seven (7) days from twelve o'clock (12:00) noon of the day following application, no disqualifying information has been received from the investigating police authority by the seller, he or she will deliver the firearm applied for to the applicant. Upon the finding of no disqualifying information under the provisions of the above cited sections of this chapter, and in no case later than thirty (30) days after the date of application, the duplicate and triplicate copies of the application will be destroyed. Retention of the duplicate and triplicate copies in violation of this chapter or any unauthorized use of the information contained therein by a person or agency shall be punishable by a fine of not more than one thousand dollars ($1,000). The provisions of this section shall not apply to bona fide sales at wholesale to duly licensed retail dealers, nor to purchases by retail dealers duly licensed under the provisions of § 11-47-39.

(c) The provisions of this section shall not apply to full-time members of the state police or full-time members of city or town police departments, or persons licensed under §§ 11-47-9 and 11-47-11, or to sales of air rifles or " BB guns" or to sales of antique firearms as defined in § 11-47-2.

**§ 11-47-35.3 Annual report on application process administration.** – The attorney general shall provide the judiciary committees of the senate and house of representatives an annual report including the number of applications made pursuant to this section for the prior calendar year. The report shall include, but not be limited to, the number of applications received from sellers, the number of applications resulting in a determination that the potential buyer or transferee was prohibited from receipt or possession of a firearm pursuant to Rhode Island or federal law, the estimated costs of administering this section, and the number of instances in which a person requests amendment of the record pertaining to the person pursuant to §§ 11-47-35 and 11-47-35.2.

**§ 11-47-36 Purchase of concealable firearms from out of state dealers.** – No citizen of this state shall purchase any concealable firearm outside of the state of Rhode Island unless he or she has duly executed the application form prescribed in § 11-47-35, the application form to be obtained by the purchaser from the city or town clerk of the city or town in which he or she resides or has his place of business. The original and duplicate copies of the application shall be delivered in person, duly executed, by the purchaser to the superintendent of the Rhode Island state police or to the chief of police of the city or town in which the purchaser resides. The purchaser shall send the triplicate copy of the application by registered mail to the attorney general within twenty-four (24) hours of the time of filing with the appropriate police authority cited above. It shall be the duty of the police authority to whom the original and duplicate copies of the application are delivered to check the applicant's record to ascertain whether he or she falls under the provisions of § 11-47-5, 11-47-6, 11-47-7, or 11-47-23. If after the lapse of seventy-two (72) hours from twelve o'clock (12:00) noon of the day following the date of application, no disqualifying record has been found by the investigating police authority, the original and duplicate copies of the application marked or stamped "approved" and signed by the investigating police authority will be returned to the applicant by the most expeditious means. The approved duplicate copy of the application shall be sent by the purchaser to the out-of-state dealer as proof of lawful purchase, and the original shall be retained by the purchaser along with the bill of sale for the firearm purchased for a period of six (6) years as proof of lawful purchase. The triplicate copy of the application shall be retained by the attorney general for a period which shall in no case exceed ninety (90) days, provided that no evidence of the nature as would disqualify the applicant has been found.

25

**§ 11-47-37 Sale to minors and others forbidden.** – No person shall sell a pistol or revolver to any person under the age of twenty-one (21) or to one who he or she has reasonable cause to believe falls under the provisions of §§ 11-47-5, 11-47-6, 11-47-7, or 11-47-23.

**§ 11-47-38 Dealers to be licensed.** – No retail dealer shall sell or otherwise transfer, or expose for sale or transfer, or have in his or her possession with intent to sell, or otherwise transfer, any pistol, revolver, or other firearm without being licensed as hereinafter provided.

**§ 11-47-39 Issuance and conditions of dealer's license.** – The duly constituted licensing authorities of any city, town, or political subdivision of this state may grant licenses in form prescribed by the attorney general effective for not more than one year from date of issue, permitting the licensee to sell pistols and revolvers at retail within this state subject to the following conditions in addition to those specified in §§ 11-47-35 and 11-47-36, for breach of any of which the license shall be forfeited and the licensee subject to punishment as provided in this chapter:

(1) The business shall be carried on only in the building designated in the license.

(2) The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

(3) No pistol or revolver shall be sold in violation of any provision of this chapter, nor shall a pistol or revolver be sold under any circumstances unless the purchaser is personally known to the seller or shall present clear evidence of his or her identity.

(4) The fee for issuing the license shall be five dollars ($5.00). The fee charged for the issuing of the license shall be applied for the use and benefit of the city or town.

**§ 11-47-40 Register of sales of firearms – Display of firearms. –**

(a) Every person, firm, or corporation selling a pistol, revolver, or other firearm whether the seller is a retail dealer, pawnbroker, or otherwise, shall keep a register in which shall be entered at the time of sale, the date of sale, name, age, and residence of every purchaser of the a pistol, revolver, or other firearm, together with the caliber, make, model, manufacturer's number, or other mark of identification on the pistol, revolver, or other firearm. Every person, firm, or corporation who shall fail to keep a register and to enter the acts required by this section, shall, upon conviction, be punished as provided in this chapter. The register shall be open at all reasonable hours for the mandatory monthly inspection of licensed firearm dealers to be conducted by state and/or local police officials.

(b) This section shall not apply to wholesale dealers' bona fide sales at wholesale to duly licensed retail dealers. It shall be unlawful for any person, firm, or corporation dealing in firearms to display any pistol, revolver, or imitation thereof, or any firearm of a size which may be concealed upon the person, or placard advertising the sale thereof, in any part of the premises of the person, firm, or corporation where it can be readily seen from the outside. Firearm as utilized in this section only shall not apply to an air rifle, air pistol, "blank gun," or "BB gun."

**§ 11-47-41 Government firearm registration prohibited.** – No government agency of this state or its political subdivisions shall keep or cause to be kept any list or register of privately owned firearms or any list or register of the owners of those firearms; provided, however, that the provisions of this section shall not apply to firearms

which have been used in committing any crime of violence, nor to any person who has been convicted of a crime of violence.

## § 11-47-42 Weapons other than firearms prohibited. –

(a) No person shall carry or possess or attempt to use against another any instrument or weapon of the kind commonly known as a blackjack, slingshot, billy, sandclub, sandbag, metal knuckles, slap glove, bludgeon, stun-gun, or the so called "Kung-Fu" weapons, nor shall any person, with intent to use unlawfully against another, carry or possess a dagger, dirk, stiletto, sword-in-cane, bowie knife, or other similar weapon designed to cut and stab another, nor shall any person wear or carry concealed upon his person, any of the above-mentioned instruments or weapons, or any razor, or knife of any description having a blade of more than three (3) inches in length measuring from the end of the handle where the blade is attached to the end of the blade, or other weapon of like kind or description. Any person violating the provisions of this subsection shall be punished by a fine of not more than one thousand dollars ($1,000), or by imprisonment for not more than one year, or both, and the weapon so found shall be confiscated.

(2) Provided, however, any person violating the provisions of this subsection while he or she is incarcerated within the confines of the adult correctional institution shall be punished by a fine of not less than one thousand dollars ($1,000) nor more than three thousand dollars ($3,000), or by imprisonment for not less than one year nor more than five (5) years, or both, and the weapon so found shall be confiscated.

(b) No person shall sell to a person under eighteen (18) years of age, without the written authorization of the minor's parent or legal guardian, any stink bomb, blackjack, slingshot, bill, sandclub, sandbag, metal knuckles, slap glove, bludgeon, stungun, paint ball gun, so called "kung-fu" weapons, dagger, dirk, stiletto, sword-in-cane, bowie knife, razor, or knife of any description having a blade of more than three inches (3") in length as described in subsection (a), or any multi-pronged star with sharpened edges designed to be used as a weapon and commonly known as a chinese throwing star, except that an individual who is actually engaged in the instruction of martial arts and licensed under § 5-43-1 may carry and possess any multi-pronged star with sharpened edges for the sole purpose of instructional use. Any person violating the provisions of this subsection shall be punished by a fine of not less than one thousand dollars ($1,000) nor more than three thousand dollars ($3,000), or by imprisonment for not less than one year, nor more than five (5) years or both, and the weapons so found shall be confiscated.

## § 11-47-43 Collectors and police officers exempt from § 11-47-42. – The provisions of § 11-47-42, so far as they forbid the possession of certain instruments or weapons, shall not apply to any person who possesses or is making a collection of the same as curios, or for educational, professional, scientific, or any other lawful purpose, without intent to use the instrument or weapon unlawfully. Nor shall the provisions of § 11-47-42, so far as they relate to the possession or carrying of any billy, apply to sheriffs, constables, police, or other officers or guards whose duties require them to arrest or to keep and guard prisoners or property, nor to any person summoned by those officers to aid them in the discharge of their duties while actually engaged in their duties.

## § 11-47-44 Standard of proof under §§ 11-47-42 and 11-47-43. – No negative allegation of any kind need be averred or proved in any complaint under §§ 11-47-42 and 11-47-43, and the possession of any blackjack, slingshot, billy, sandclub, sandbag, metal knuckles, bludgeon, dirk, dagger, stiletto, or other similar weapon designed to cut and stab another, and the carrying or use of any of the instrument or weapons or of any of the instruments or weapons forbidden by § 11-47-42 to be carried, worn, or used, shall be evidence that the possession, use, wearing, or carrying, as the case may be, of any of the instrument or weapon, is unlawful, but the respondent in any case may show any fact that would render the possession or use, or wearing or carrying of the instrument or weapon lawful.

**§ 11-47-45 Arrest and detention for possession of weapon prohibited by § 11-47-42.** – Every officer authorized to make an arrest for any criminal offense may arrest without complaint and warrant any person who has in his or her possession any instrument or weapon described in § 11-47-42 whenever the officer has reasonable ground to suspect that the person possesses, or is using, wearing or carrying the instrument or weapon contrary to law. Any person so arrested may be detained a reasonable time, not exceeding twenty-four (24) hours, for the purpose of making an investigation concerning the person, but no person so arrested shall be detained longer than twenty-four (24) hours without complaint being made against him or her before some proper court or justice. If the officer making the arrest shall at any time within the twenty-four (24) hours satisfy himself or herself that there is no ground for making a criminal complaint against the person, he or she shall be discharged from custody.

**§ 11-47-46 Sections 11-47-42 – 11-47-45 inapplicable to firearms.** – The provisions of §§ 11-47-42 – 11-47-45, inclusive, shall not be construed to relate to the possession and carrying of air guns, pistols or firearms of any description.

**§ 11-47-47 Display of weapons.** – No person, firm, or corporation shall display in a place of business by means of a window display any pistol, revolver, or other firearm, as defined in § 11-47-2, or any dagger, dirk, bowie knife, stiletto, metal knuckles, or blackjack; provided, however, that dealers in sporting goods may include in a window display pistols or revolvers upon a permit issued by the chief of police or town sergeant of any city or town. Any person, firm, or corporation violating the provisions of this section shall be punished by a fine not exceeding twenty-five dollars ($25.00) for the first offense and one hundred dollars ($100) for every subsequent offense.

**§ 11-47-48 Report of gunshot wounds.** – Every physician attending or treating a case of bullet wound, gunshot wound, powder burn, or any other injury arising from or caused by the discharge of a gun, pistol, or other firearm, or whenever any the case is treated in a hospital, sanitarium, dispensary, or other institution the person in charge thereof shall report the case at once to the police authorities of the town or city where the physician, hospital, sanitarium, dispensary or institution is located. This section shall not apply to wounds, burns, or injuries received by any member of the armed forces of the United States or of this state while engaged in the actual performance of duty. Whoever violates any provision of this section shall be punished by a fine of not less than fifty dollars ($50.00) nor more than one hundred dollars ($100).

**§ 11-47-48.1 Report of lost or stolen weapons.** – Every person who owns a firearm shall report the loss or theft of their firearm to the local law enforcement agency within twenty-four (24) hours of the discovery of the loss or theft. Whoever knowingly violates this section shall be punished by a fine of not less than fifty dollars ($50.00) nor more than one hundred dollars ($100).

**§ 11-47-49 Firing across highways prohibited.** – Every person who shall discharge any firearm or other contrivance arranged to discharge shot, bullets, arrows, darts, or other missiles in or across any public road, street, square, or lane shall, upon conviction be guilty of a misdemeanor, and as such, shall be subject to a fine not exceeding five hundred dollars ($500) or one year in prison, or both.

**§ 11-47-49.1 Firing in Blackstone Valley Flood Plain prohibited.** – Every person who shall hunt or discharge any firearm within the Blackstone Valley Flood Plains or Marshes, also known as the "Valley Marshes," shall

28

be subject to a fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500) for the first offense, a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500) or imprisonment for sixty (60) days, or both, for the second offense, and for any subsequent offense a fine of not less than one hundred fifty dollars ($150) nor more than five hundred dollars ($500) or imprisonment for ninety (90) days, or both.

**§ 11-47-50 Firing without landowner's permission – Firing in compact area. –** (a) Every person, not being at the time under military duty, who shall discharge any firearm, " BB gun", or other contrivance arranged to discharge shot, bullets, arrows, darts, or other missiles, within the compact part of any city or town, or who shall discharge a firearm or other contrivance elsewhere, except upon land owned or occupied by him or her or by permission of the owner or occupant of the land on or into which he or she may shoot, shall be guilty of a misdemeanor, and as the, shall be subject to a fine not exceeding five hundred dollars ($500) or one year in prison, or both; provided, however, that any city or town may by ordinance permit the discharge on nonposted land.

(b) The provisions of this section shall not apply to the owner of land who uses, or who gives permission to another to use without charge, a recurve, compound or longbow, provided that they are not used within two hundred fifty feet (250') of a dwelling house.

**§ 11-47-51 Loaded weapons in vehicles. –** It is unlawful for any person to have in his or her possession a loaded rifle or loaded shotgun or a rifle or shotgun from the magazine of which all shells and cartridges have not been removed, in or on any vehicle or conveyance or its attachments while upon or along any public highway, road, lane, or trail within this state; provided, however, that the provisions of this section shall not apply to sheriffs, deputy sheriffs, the superintendent and members of the state police, prison or jail wardens or their deputies, members of the city or town police force, investigators of the department of attorney general appointed pursuant to § 42-9-8.1, the director, assistant director and other inspectors and agents at the Rhode Island state fugitive task force appointed pursuant to § 12-6- 7.2, nor to other duly appointed law enforcement officers, including conservation officers, nor to members of the army, navy, air force, or marine corps of the United States, or the national guard or organized reserves, when on duty, nor to officers or employees of the United States authorized by law to carry a concealed firearm, nor to any civilian guard or criminal investigator carrying sidearms or a concealed firearm in the performance of his or her official duties under the authority of the commanding officer of the military establishment in the state of Rhode Island where he or she is employed by the United States.

**§ 11-47-51.1 Discharge of firearm or incendiary or explosive substance or device from motor vehicle. –**
(a) No person shall unlawfully discharge a firearm or incendiary or explosive substance or device from a motor vehicle in a manner which creates a substantial risk of death or serious personal injury to another person. Every person violating the provisions of this section shall be punished by imprisonment for not less than ten (10) years nor more than twenty (20) years and shall be fined not less than five thousand dollars ($5,000.00) nor more than fifty thousand dollars ($50,000.00), or both.

(2) In all the cases, the justice imposing sentence shall impose not less than the minimum sentence of ten (10) years imprisonment and may only impose a sentence less than that minimum if he or she finds that substantial and compelling circumstances exist which justify imposition of the alternative sentence. The a finding may be based upon the character and background of the defendant, the cooperation of the defendant with law enforcement authorities, the nature and circumstances of the offense and/or the nature and quality of the evidence presented at trial. If a sentence which is less than imprisonment for a term of ten (10) years is

imposed, the trial justice shall set forth on the record the circumstances which he or she found as justification for imposition of the lesser sentence.

(b) Any person injured as a result of a violation of this section shall be entitled to the civil remedies provided by § 7-15-4.

§ 11-47-52 **Carrying of weapon while under the influence of liquor or drugs.** – It is unlawful to carry or transport any firearm in this state when intoxicated or under the influence of intoxicating liquor or narcotic drugs.

§ 11-47-53 **Limitation of prosecutions under §§ 11-47-49 – 11-47-52 – Fines.** – No complaint for a violation of any of the provisions of §§ 11-47-49 – 11-47-52, inclusive, shall be sustained unless brought within thirty (30) days after the commission of the offense, and all fines for the violation shall inure to the state.

§ 11-47-54 **Licensing of shooting galleries.** – Every person who shall keep any pistol gallery, rifle gallery, or other building or other enclosure in any city or town of this state, where firearms are used, without a license from the duly constituted licensing authority of the city or town, shall, upon conviction, be fined two hundred dollars ($200) for the first offense, and five hundred dollars ($500) for each subsequent offense; provided, however, that the provisions of this section shall not apply to organizations that receive arms and ammunition from the United States or this state.

§ 11-47-55 **Enforcement of chapter.** – Sheriffs, deputy sheriffs, the superintendent and members of the state police, members of the city or town police force, or other duly appointed law enforcement officers, including conservation officers, shall have the power to enforce the provisions of this chapter.

§ 11-47-56 **Constitutionality.** – If any part of this chapter is for any reason declared void, its invalidity shall not affect the validity of the remaining portions of this chapter.

§ 11-47-57 **"Mace" or similar substances.** – Any person eighteen (18) years of age or over may carry on his or her person and use, unless otherwise prohibited by law, any non-lethal noxious substance or liquid for his protection or the protection of others; however, the use of any non-lethal noxious substance or liquid for any other purpose shall be punishable by a fine of not more than twenty-five dollars ($25.00).

§ 11-47-58 **Firearms – State pre-emption.** – The control of firearms, ammunition, or their component parts regarding their ownership, possession, transportation, carrying, transfer, sale, purchase, purchase delay, licensing, registration, and taxation shall rest solely with the state, except as otherwise provided in this chapter. how

§ 11-47-59 **Possession of knife during commission of crime.** – No person shall commit or attempt to commit any crime of violence while having in his or her possession a knife with a blade more than three (3) inches long. Every person violating the provisions of this section shall upon conviction, be sentenced for a term not less than one year nor more than five (5) years and/or fined not exceeding three thousand dollars ($3,000).

§ 11-47-60 **Possession of firearms on school grounds.** – (a) No person shall have in his or her possession any firearm or other weapons on the school grounds. For the purposes of this section, school grounds shall mean the property of a public or private elementary or secondary school or in those portions of any building, stadium, or other structure on school grounds which were, at the time of the violation, being used for an activity sponsored by or through such a school in this state or while riding school provided transportation. Every person violating the provisions of this section shall, upon conviction, be sentenced to imprisonment for not less than one year nor more than five (5) years, or shall be fined not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000). Any juvenile adjudicated delinquent pursuant to this statute shall, in addition to whatever other penalties are imposed by the family court, lose his/her license to operate a motor vehicle for up to six (6) months. If such a juvenile has not yet obtained the necessary age to obtain said license, the court may impose as part of its sentence, a delay in his/her right to obtain the license when eligible to do so, for a period of up to six (6) months.

(b) The provisions of this section shall not apply to any person who shall be exempt pursuant to the provisions of §§ 11-47-9, 11-47-11, and 11-47-18 or to the following activities when the activities are officially recognized and sanctioned by the educational institution: (1) firearm instruction and/or safety courses; (2) government-sponsored military-related programs such as ROTC; (3) interscholastic shooting and/or marksmanship events; (4) military history and firearms collection courses and/or programs; and (5) the use of blank guns in theatrical and/or athletic events.

(c) The provisions of this section shall not apply to colleges, universities, or junior colleges.

§ 11-47-60.1 **Safe storage.** – (A) Nothing in this section shall be construed to reduce or limit any existing right to purchase and own firearms and/or ammunition or to provide authority to any state or local agency to infringe upon the privacy of any family, home or business except by lawful warrant.

(B) A person who stores or leaves on premises under his or her control, a loaded firearm and who knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or guardian and the child obtains access to the firearm and thereby causes injury to himself/herself or any other person, is guilty of the crime of "Criminal Storage of a Firearm" and upon conviction shall be fined not more than one thousand dollars ($1,000) or imprisoned for not more than one (1) year or both. For purposes of this section, a child shall be defined as any person who has not attained the age of sixteen (16) years.

(C) The aforementioned provisions shall not apply whenever any of the following occurs: (1) The child obtains the firearm as a result of an illegal entry of any premises by any person or an illegal taking of the firearm from the premises of the owner without permission of the owner; (2) Firearm is kept in a locked container or in a location which a reasonable person would believe to be secured; (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person; (4) The firearm is locked with a locking device; (5) The child obtains or obtains and discharges the firearm in a lawful act of self-defense or defense of another person; (6) The person who keeps a loaded firearm on any premises which is under his/her custody or control has no reasonable expectations, based on objective facts and circumstances, that a child is likely to be present on the premises.

(D) If the person who allegedly violated this section, is the parent or guardian of a child who is injured or who dies as the result of an accidental shooting, the attorney general's department shall consider among other factors, the impact of the injury or death on the person who has allegedly violated this section when decided whether to prosecute an alleged violation.
It is the intent of the general assembly that a parent or guardian of a child who is injured or who dies of an accidental shooting, shall be prosecuted only in those instances in which the parent or guardian behaved in a grossly negligent manner.

**§ 11-47-60.2 Possession of weapons on school grounds – Notification. –** (a) If a student is found to be carrying a weapon, as defined in § 11-47-42, a firearm or replica of same, or commits an aggravated assault on school grounds as defined in § 11-47-60, the principal/designee shall immediately notify the student's parents and the local police and turn the weapon over, if any, to the local enforcement agency.

(b) Any person who has reasonable cause to know that any person is in violation of this statute shall notify the principal/designee. The principal/designee shall forthwith notify the student's parents and the local police. Any person acting in good faith who makes such a report under this section shall have immunity from any civil liability that might otherwise be incurred or imposed as a result of making the report.

(c) School superintendents shall receive notice from the clerk of the family court regarding the disposition of all cases involving juveniles from their school districts adjudged pursuant to this statute. This information shall remain confidential and be shared with school officials who deal directly with the student.

(d) The provisions of this section should not apply to the following activities when the activities are officially recognized and sanctioned by the educational institution: (1) firearm instructed and/or safety course; (2) government-sponsored military-related programs such as ROTC; (3) interscholastic shooting and/or

(e) marksmanship events; (4) military history and firearms collection courses and/or programs; and (5) the use of blank guns in theatrical and/or athletic events.

(f) The provisions of this section shall not apply to colleges, universities or junior colleges.


**§ 11-47-61 Drive-by shootings. –** Every person who shall discharge a firearm from a motor vehicle in a manner which creates a substantial risk of death or serious injury shall, upon conviction, be fined not less than five thousand dollars ($5,000) nor more than fifty thousand dollars ($50,000) or imprisoned for not less than ten (10) years nor more than twenty (20) years, or both.

**§ 11-47-62 Immunity from prosecution – Criminal or civil. –** Notwithstanding the provisions of any general or special law, rule or regulation to the contrary, it shall be lawful for an owner of a rifle, pistol, silhouette, archery, skeet, trap, black powder, or other similar range to operate said range in excess of the applicable noise or noise pollution, law, ordinance or by-law provided said owner of the range continues to be in compliance with any applicable noise control law, ordinance or by-laws in existence at the time of the construction of such range. No owner shall be liable in any action for nuisance, and no court shall enjoin the use or operation of said range on the basis of noise or noise pollution provided said owner continues to be in compliance with any noise control law, ordinance or by-laws in effect at the time of the construction of the range.
No standards in rules adopted by any state, city or town agency for limiting levels of noise in terms of decibel level which may occur in the outdoor atmosphere shall apply to the ranges exempted from liability under the provisions of this section.
Nothing in this section shall be construed to authorize or permit an owner of a rifle, pistol, silhouette, archery, skeet, trap, black powder, or other similar range to change the use and/or type of said range, or to expand the use and/or type of said range.

32

# REVISED 02/20/2020

## INSTRUCTIONS FOR LICENSE TO CARRY A CONCEALABLE WEAPON

### NO APPLICATIONS WILL BE CONSIDERED UNLESS THE FOLLOWING HAVE BEEN ACCOMPLISHED:

1. This official application form must be filled out completely by the applicant. Including the AFFIDAVIT, and the AUTHORIZATION FOR REALEASE OF INFORMATION that must signed and NOTARIZED. Please **PRINT OR TYPE** application or IT WILL BE RETURNED.

2. The application must be MUST BE SIGNED AND STAMPED by the local Police Chief or a city hall official in the city or town of the applicant's permanent residence.

3. Enclose two (2) 2" X 2" pictures of the applicant taken without headgear or glasses. This photo must be a clear, colored picture of the head and face. Please PRINT applicant's name on the back of each picture. NO laminated photos will be accepted.

4. **NEW** applications require both three (3) references **AND** reference letters and are to be submitted along with the application. All three references are to be TYPED (not handwritten) a letter for the applicant pertaining to the gun permit and must be SIGNED, DATED AND NOTARIZED. Reference letters must be written by the reference, not the applicant, and cannot be identical.
**RENEWAL** applicants require three (3) references. NO reference LETTERS are need.

5. Proof of qualification before a certified weapons instructor; i.e., N.R.A. Instructor or Police range instructor must be supplied along with **a copy of THE INSTRUCTOR'S** NRA/FBI firearms **INSTRUCTOR CERTIFICATION.** Qualifications will only be accepted up to one-year-old and you **cannot** qualify yourself.

6. Submit a photocopy of TWO types of positive identification. That is signed, dated, and stamped by a Notary Public, attesting to be true copies. i.e. License, State I.D., Passport, Resident Card, Birth Certificate, Permit issued from your home or other State.

7. All NON-RESIDENT APPLICANTS must include a copy of their home state permit.

8. All **new** pistol permits issued from this office must have a full set of applicant's fingerprints submitted on a FBI FINGERPRINT APPLICANT CARD [FD-258 (Rev. 12-29-82)] included with the application. Fingerprint card must be signed by applicant. This is not necessary for a renewal application UNLESS your permit has been expired for over 5 years.

9. If the permit is to be USED FOR EMPLOYMENT, a **typed and signed** letter of explanation must be submitted on your employer's letterhead and included with the application. Also, please include a copy of the business license as proof that the business exists.

10. If the permit is NOT for employment, a typed letter must be submitted by the applicant stating the reasons why a carry concealed weapons permit is NEEDED on a FULL TIME BASIS. All letters must be dated. We will not accept a photocopy of any letter. Please include ANY DOCUMENTATION THAT WILL SUPPORT THE NEEDS MENTIONED IN YOUR LETTER.

33

11. Retired Police Officers applying under 11-47-18 must submit a letter of verification from the Chief of Police of the department which they retired from stating that they have completed 20 years of good standing.

12. A Forty dollar ($40.00) payable via check, money order, credit, or debit must be presented when picking up permit. DO NOT SEND a check or money order WITH YOUR APPLICATION.

13. Applicant will be notified by mail of approval or denial of permit. If approved, applicant must appear in person to pick up permit. This application, fingerprint card, and photo's become part of the records of the Attorney General and will <u>not</u> be returned.

14. If at any time you would like **TO CHECK ON THE STATUS** of your application please come in person with a valid form of Photo Identification.

15. All **permits will expire FOUR (4) YEARS from the date of issue**. The renewal of your permit is your obligation. No notification of expiration of the permit will be sent to you. Please allow a maximum of **90 DAYS for processing of your application** due to the fact that this department is dependent on other agencies for information necessary to complete the application.

**PLEASE NOTE:**
The recipient of this permit agrees that he/she shall not duplicate or allow to be duplicated the permit or any part of it, including, but not limited to, the State Seal or a facsimile thereof contained therein in any matter. The recipient expressly agrees that any violation of this provision is grounds to revoke his or her permit.

34





# APPLICATION FOR LICENSE TO CARRY A CONCEALABLE WEAPON

DATE _____        PERMIT NUMBER _____

NAME _____
        First                        Middle                    Last

PERMANENT
ADDRESS _____
        Number & Street Name    (No P.O. Boxes accepted)

_____
        City  or  Town                    State                    Zip

TELEPHONE
NUMBER _____
        Home                        Business                Other

E-MAIL (optional) _____

If we need to contact you, which is your preferred method of contact?    Mail  /  Phone  /  E-Mail

SOCIAL SECURITY NUMBER_____OCCUPATION_____

EMPLOYER_____

Employer's Address    Street Name and Number        City or Town    State & Zip

DETAIL JOB
DESCRIPTION_____

_____

DATE OB BIRTH_____    PLACE OF BIRTH_____

Height_____    Weight_____    Eye color_____    Hair color_____

LIST ALL ADDRESSES FOR **THE LAST THREE YEARS,** including dates and locations:

_____

_____

35




Have you ever been arrested or charged for any offense?  ☐ Yes  ☐ No — IF SO, GIVE DEATAILS:

_____

_____

Have you ever been cited or summoned for any violation?  ☐ Yes  ☐ No — IF SO, GIVE DETAILS:

_____

Have you ever been under guardianship or confined or treated for mental illness?  ☐ Yes  ☐ No — IF SO, GIVE DETAILS:_____

_____

Have you ever been convicted of a crime?  ☐ Yes  ☐ No — IF SO, GIVE DETAILS:_____

_____

Have you ever PLED NOLO CONTENDRE to any charge or violation?  ☐ Yes  ☐ No — IF SO,GIVE DETAILS:

_____

Are you under indictment in any court for a crime punishable by imprisonment exceeding one year? ☐ Yes  ☐ No — IF SO, GIVE DETAILS AND DATES:_____

_____

Have you applied for a permit to carry a concealed pistol or revolver from the Attorney General or a local city or town in Rhode Island?  ☐ Yes  ☐ No — IF SO, GIVE CITY OR TOWN_____

ACTIVE? _____    EXPIRED? _____    DENIED?_____    REVOKED?_____
**(If so, enclose photocopy, notary-signed and dated, attesting copies are true)**

Have you ever applied for a pistol permit to carry a handgun in another state?  ☐ Yes  ☐ No — IF YES, STATE AND CITY:_____ Were you denied?_____
IS SO, GIVE DETAILS_____
**(Enclose photocopy, notary-signed and dated, attesting copies are true)**

HAVE YOU EVER HAD A LEGAL NAME CHANGE?  ☐ Yes  ☐ No — IF YES, PLEASE STATE FORMER NAME_____

PLEASE LIST NICKNAMES OR ALIAS USED BY YOU_____

_____

ARE YOU A CITIZEN OF THE UNITED STATES?       ☐ Yes ☐ No  HOW LONG? _____
**(If you are not a citizen of the United States, a copy of both sides of your alien registration card must be included with this application.)**

36





TO THE CHIEF OF POLICE OR CITY HALL OFFICIAL_____

City or Town and State

THIS IS TO INFORM YOU THAT _____

Applicant's Name      (Printed or Typed)

Is applying for a pistol permit to carry a concealed pistol or revolver in the state of Rhode Island. We would like for you to verify that this subject lives in your city or town or state, in your jurisdiction only.

**( POLICE CHIEF MAY SEND IN LETTER IF HE OR SHE WISHES REGARDING THE APPLICANT )**

_____

Police Chief or City Hall's Official Signature      Date
** An official stamp or seal is requested **

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**AFFIDAVIT**

I CERTIFY THAT **I HAVE READ AND I AM FAMILIAR** WITH THE PROVISIONS OF **11-47-1 TO 11-47-62**, INCLUSIVE, OF THE GENERAL LAWS OF RHODE ISLAND, 1956, AS AMENDED, AND **THAT I AM AWARE** OF THE PENALTIES FOR VIOLATIONS OF THE PROVISIONS OF THE CITED SECTIONS. I FURTHER UNDERSTAND THAT ANY ALTERATION OF THIS PERMIT IS JUST CAUSE FOR REVOCATION.

_____

**Applicant's Signature**

BEFORE A NOTARY PUBLIC

SUBSCRIBED AND SWORN TO BEFORE ME IN _____

CITY                    STATE

THIS_____   DAY OF_____, 20_____.

_____        _____
**Notary Public Signature**                    **Notary Stamp Required**

37

 

NOTE: ALL MUST QUALIFY IN ACCORDANCE TO 11-47-15
THE RI **COMBAT COURSE** IS FOR LAW ENFORCEMENT PERSONNEL ONLY

**INSTRUCTOR MUST COMPLETE SECTION BELOW WITHIN ONE (1) YEAR <u>PRIOR</u> TO SUBMITTING APPLICATION.**

WEAPON QUALIFICATION SCORE:    CAL.OF WEAPON_____

AMY-L_____    SCORE_____    R.I. COMBAT_____    SCORE_____

_____
**Signature** of N.R.A. instructor or POLICE RANGE OFFICER              **DATE**

_____
PRINTED NAME & TELEPHONE NO# OF **N.R.A. INSTRUCTOR** OR **POLICE RANGE OFFICER**

_____
**N.R.A. NUMBER** OR **POLICE DEPARTMENT NAME**

COPY OF N.R.A. CERTIFICATE OR CERTIFICATION CARD WITH VISIBLE EXPIRATION DATE **MUST BE INCLUDED**

_____

**THREE (3) REFERENCES ARE REQUIRED:**

_____
Name                    Address/City/State/Zip        Area Code/Tele No#        Years Known

_____
Name                    Address/City/State/Zip        Area Code/Tele No#        Years Known

_____
Name                    Address/City/State/Zip        Area Code/Tele No#        Years Known

38

# AUTHORIZATION FOR RELEASE OF INFORMATION

I,_____, hereby give the Office of Attorney General the authority to conduct a comprehensive investigation of my background including, but not limited to, oral discussions with any person concerning my background. I also authorize a review and full disclosure of all records and any other information concerning myself whether such records and other information are public, private, privileged or confidential. This includes records maintained by past and present employers, law enforcement, public utility companies, state and federal agencies including but not limited to the Division of Taxation, the Internal Revenue Services, and any Health Care facility which dispenses care and treatment for social, mental or emotional difficulties.

To the custodian of the records discussed herein, I hereby authorize you to release information to the bearer of this *Authorization for Release of Information.* I consider a copy of the *Authorization for Release of Information* to be as valid as the original even though a copy does not have my original signature.

I hereby release to the Office of Attorney General and anyone who gives written or oral information about me to the Office of Attorney General from any claims of liability or damages which may occur as a result of the background investigation. This release of liability also extends my heirs, associations, assigns and representatives.

_____                    _____
Signature                                          Date

Sworn to before me in the city of _____ State of _____
this _____ day of _____, 20___.

                                                   _____
                                                   Notary Public

                                                   _____
                                                   Commission Expires

Notary Stamp required

39

**EXHIBIT B**

**In the Matter Of:**

MICHAEL ONEIL V. PETER F. NERONHA

23-cv-70

**EDWARD TROIANO**

*March 22, 2024*



800.211.DEPO (3376)
EsquireSolutions.com

```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
 2

 3

 4   Michael O'Neil, Et Al.

 5         Vs.                        C.A. NO:  23-cv-70

 6   Peter F. Neronha, in his Official
     Capacity as Attorney General of the
 7   State of Rhode Island, and the
     State of Rhode Island
 8

 9
     ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
10

11

12                     DEPOSITION OF
                       EDWARD TROIANO
13

14                     MARCH 22, 2024
                        10:00 A.M.
15

16
                     4 HOWARD AVENUE
17                CRANSTON, RI   02920

18

19

20

21

22

23

24                 ELIZABETH GREELEY
                CERTIFIED COURT REPORTER
25
```



```
 1              (DEPOSITION COMMENCED AT 9:57 A.M.)

 2                      EDWARD TROIANO

 3         Being duly sworn, deposes and testifies as

 4    follows:

 5              THE REPORTER:  Would you state your name

 6    for the record, please?

 7              THE WITNESS:  Edward Troiano,

 8    T-R-O-I-A-N-O.

 9              EXAMINATION BY MR. LYONS

10         Q.  Mr. Troiano, my name is Tom Lyons.  We met

11    out in the hallway briefly beforehand.  I am one of

12    the attorneys representing the Plaintiffs in a lawsuit

13    pending in Federal Court in which the lead Plaintiff's

14    name is Michael O'Neil.

15         The Attorney General, Mr. Neronha, is one of the

16    Defendants.  Frank Saccoccio, who is sitting next to

17    me, also represents the Plaintiffs.  In terms of your

18    title, do you go by Chief Troiano, Mr. Neronha (sic),

19    or something else?

20         A.  I go by Chief Troiano.  Peter Neronha is the

21    Attorney General, but thank you for the promotion.  I

22    appreciate it.

23         Q.  Yes.  I'll contact the General Attorney and

24    let him know that he has been relieved of his duties.

25    Have you ever been deposed before?
```



```
 1        Q.  Okay.  Does the Attorney General subsequently
 2   inform you that the reason he is, for example, denying
 3   or approving the denial of a concealed carry permit is
 4   that the person has a municipal permit?
 5              MR. ARGUIN:  Objection, deliberative
 6   process.  You can answer.
 7        A.  I don't recall him ever providing that
 8   feedback to me.
 9              MR. LYONS:  Okay.  Let's start looking at
10   some documents.  We can get a little more specific
11   here.
12              (EXHIBIT 1 PLAINTIFFS' MARKED FOR ID)
13                   (BRIEF RECESS)
14        Q.  Let me show you the one with the exhibit
15   sticker on it, just in case it turns out, hopefully
16   there isn't any difference between them.  I want to
17   make sure you're referring to the official exhibit.
18   Let me show you what has been marked as Plaintiffs'
19   Exhibit 1, and ask you if you've ever seen this
20   document before?
21        A.  Yes, sir.
22        Q.  What is this document?
23        A.  This is the application packet for the permit
24   to carry from the Attorney General's Office.
25        Q.  This is the packet that you were describing
```



1  that Chief Correlas showed you when you became chief

2  of BCI?

3      A.  Substantively, yes, although there are minor

4  differences.

5      Q.  Okay.  I was going to actually ask about

6  that.  Because if you go to the fifth page, it

7  indicates that this document is dated January 23,

8  2001; do you see that?

9      A.  Yes.

10      Q.  But it refers to this facility, which I

11  understand was, has only been open for five years or

12  so?

13      A.  About six, yes.

14      Q.  Six years.  If you go back to Page 3, there's

15  the reference to the address here.  See the second

16  line below Procedure; there is a reference to 4 Howard

17  Avenue, Cranston?

18      A.  Yes.

19      Q.  Obviously, 4 Howard Avenue, Cranston, did not

20  exist in 2001?

21      A.  Correct.

22      Q.  Do you know, so I assume this has been

23  revised since this facility was built?

24      A.  Yes.

25      Q.  Do you know what changes have been made since



EDWARD TROIANO                                        March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                               67

```
 1        Q.  Okay.  Has the Attorney General's review of
 2   concealed carry permit applications changed at all
 3   since the Bruen decision?
 4        A.  No.
 5              (EXHIBIT 5 PLAINTIFFS' MARKED FOR ID)
 6        Q.  Do you recognize this document?
 7        A.  I do.
 8        Q.  Is this a letter that you sent to the
 9   Plaintiff, Michael O'Neil, explaining why the Attorney
10   General has denied his application for renewal of a
11   concealed carry permit?
12        A.  Yes.
13        Q.  The third paragraph of the letter, which
14   starts on the bottom of the first page and carries
15   over to the second page appears to be the paragraph
16   which sets forth the reasons why the application was
17   denied; would you agree with that?
18        A.  Yes.
19        Q.  It looks like, to me, you can clarify this if
20   I'm mistaken, there are two reasons which are set
21   forth for the denial of the application?
22              MR. ARGUIN:  Objection.  The letter
23   speaks for itself, but you can answer to the extent
24   you can.
25        Q.  Let me withdraw the question.  His
```



EDWARD TROIANO                                          March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                              75

```
 1   appeal appointment.  He came in.  Actually, I don't
 2   recall if he came in.  That was, I think, right around
 3   the time of COVID.  That may have been a call that we
 4   had with Mr. Saccoccio, but he did have an appeal
 5   appointment, whether virtually or in person, in which
 6   those factors were discussed in more detail.
 7        Mr. Saccoccio brought up his rationale or
 8   clarification for additional reasons for Mr. O'Neil's
 9   application.  Then Mr. O'Neil was sent a subsequent
10   letter providing additional clarification on the
11   reasons for his denial.
12              MR. LYONS:  Okay.
13              (EXHIBIT 6 PLAINTIFFS' MARKED FOR ID)
14        Q.  Let me show you what's been marked as
15   Exhibit 6, and ask you if you recognize this document?
16        A.  I do.
17        Q.  Okay.  Is this that letter to which you just
18   referred that was sent to Mr. O'Neil after the
19   discussion that took place with Mr. Saccoccio and
20   Mr. O'Neil and apparently Deputy Chief Michael
21   Figueiredo?
22        A.  Yes.
23        Q.  In this letter do you set forth with more
24   specificity the reasons why you believe he had not
25   made a proper showing of need?
```



1      A.  Yes.

2      Q.  Was there anything that you recall that was

3  an additional reason which is not set forth in this

4  letter?

5      A.  I don't recall there being anything

6  additional, no, sir.

7              MR. LYONS:  Okay.

8              (EXHIBIT 7 PLAINTIFFS' MARKED FOR ID)

9              (BRIEF RECESS)

10     Q.  Let me show you what's been marked as

11 Exhibit 7, and ask you if you recognize this document?

12     A.  I do.

13     Q.  This refers to a Motion For Reconsideration;

14 do you agree?

15     A.  Yes.

16     Q.  The letter is signed by Michael Figueiredo?

17     A.  Yes.

18     Q.  Do you know why it was Mr. Figueiredo who

19 signed this letter as opposed to you or

20 Mr. Figueiredo?

21     A.  I don't have a specific recollection, no.

22     Q.  Were you involved in the preparation of this

23 letter?

24     A.  Certainly, Mike would have sent me a draft of

25 it, yes, but I didn't author it.



EDWARD TROIANO                                                    March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                           77

```
1        Q.  Would you agree that this letter sets forth
2    the Attorney General's Office's reasons for denial of
3    the motion for reconsideration?
4        A.  I would agree that yes, it sets forth the
5    reason that the reconsideration motion was denied.
6              MR. LYONS:  Okay.  Off the record.
7              (OFF THE RECORD)
8              (EXHIBIT 8 PLAINTIFFS' MARKED FOR ID)
9        Q.  Let me show you what's been marked as
10   Exhibit 8, and ask you if you recognize this document?
11       A.  I do.
12       Q.  Is this a letter which Mr. Figueiredo sent to
13   Richard Cook explaining the reason for his denial of
14   the renewal of his concealed carry permit?
15       A.  Yes.
16       Q.  The second sentence of the letter says, While
17   reviewing your application, it has come to our
18   attention that you currently hold an active carry
19   concealed weapons permit issued by the Town of
20   Charlestown, Rhode Island; do you see that sentence?
21       A.  I do.
22       Q.  Was that the only reason why Mr. Cook's
23   renewal application was denied?
24       A.  The exact reason was set forth in
25   Paragraph 2.
```



1   demonstration of need?

2       A.  It would have to be -- again, I didn't make

3   the exact statement that is contained in the e-mail.

4   But generally speaking, unless there's specific

5   examples as to why the reciprocity is needed, your

6   demonstration of need is for the State of

7   Rhode Island, why do you need a carry permit in the

8   State of Rhode Island.

9       If you need it outside of the State of

10  Rhode Island isn't, in general, isn't a consideration

11  for showing of a need within the State of

12  Rhode Island.

13      Q.  In other words, the response to Mr. Cook

14  accurately reflects the policy of the Attorney

15  General's Office; is that correct?

16      A.  I would say that it is, generally speaking,

17  yes.

18      Q.  Okay.  Well, we'll take a look at their

19  letters, but again, the Attorney General's Office does

20  not consider reciprocity to be a basis for a showing

21  of need?

22      A.  Generally speaking, yes.

23          MR. LYONS:  Okay.

24          (EXHIBIT 10 PLAINTIFFS' MARKED FOR ID)

25      Q.  Let me show you what has been marked as



```
 1   Exhibit 10.  I'm going to ask you if you recognize
 2   this letter?
 3        A.  I do.
 4        Q.  This letter sets forth your response to a
 5   meeting that you had with Mr. Cook that involved him,
 6   Mr. Saccoccio, you and Michael Figueiredo; is that
 7   correct?
 8        A.  Yes.
 9        Q.  In that meeting Mr. O'Neil and/or
10   Mr. Saccoccio set forth -- not Mr. O'Neil.  Mr. Cook
11   and/or Mr. Saccoccio set forth reasons why Mr. Cook's
12   renewal application should be granted, and you were
13   responding to those reasons; is that correct?
14        A.  Correct.
15        Q.  Does the letter set forth all of the reasons
16   why Mr. Cook's renewal application was denied based on
17   that meeting?
18        A.  So it addresses the additional reasons that
19   were brought up during the meeting, yes.
20        Q.  Okay.  Well, it also addresses the
21   reciprocity issue, correct?
22        A.  I believe it does, yes.
23        Q.  It's in the first full paragraph at the top
24   of the second page?
25        A.  Yes, correct.
```



1      Q.  Okay.  If you go down to the fourth full
2    paragraph on that page, there is a sentence which
3    says, quote, While Mr. Saccoccio pointed out the valid
4    distinction that a permit issued by this office allows
5    for the open carrying of a hand gun, neither he nor
6    you provided any information or justification for your
7    need to do so, even when you were specifically asked
8    if you had this need; do you see that?
9      A.  I do.
10      Q.  Is it your understanding that if a person
11    wants to engage in the open carry of a hand gun, first
12    of all, they need to have an Attorney General permit
13    in Rhode Island?
14      A.  Correct.
15      Q.  Is it also your understanding that in order
16    to get the Attorney General's permit for open carry,
17    that they still have to make a showing of need as
18    determined by the Attorney General's Office?
19      A.  Yes.
20      Q.  The showing of need is the same showing of
21    need we have discussed previously as set forth in the
22    factors in Exhibit 1 and you have elaborated on?
23      A.  Yes.
24            (EXHIBIT 11 PLAINTIFFS' MARKED FOR ID)
25      Q.  Let me show you what has been marked as



EDWARD TROIANO                                          March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                    85

```
 1   Exhibit 11, and ask if you recognize this document?
 2        A.  I do.
 3        Q.  Okay.  Is this a letter dated November 7,
 4   2021 which was sent by Michael Figueiredo to Donald
 5   Labriole explaining why his concealed carry renewal
 6   application was denied?
 7        A.  Yes.
 8        Q.  The reason that is set forth in here is in
 9   the second sentence of the first full paragraph; would
10   you agree?
11        A.  I would say that's in the second paragraph.
12        Q.  Okay.  Well, maybe we're agreeing on the same
13   thing.  Let me, the second sentence of the letter
14   says, While reviewing your application, it has come to
15   our attention that you have applied for and received a
16   concealed weapon permit from West Greenwich,
17   Rhode Island; do you see that?
18        A.  I do.
19        Q.  Then in the second paragraph you state that
20   this gives him the same authority to carry a concealed
21   weapon as the Attorney General's permit would have?
22        A.   Correct.
23        Q.  So the reason that his renewal application
24   was denied was that he had a municipal permit from the
25   Town of West Greenwich?
```



 1              THE WITNESS:  That gave him the same

 2    authority?

 3              MR. LYONS:  Correct.

 4        A.  Yes.

 5        Q.  It is the view of the Attorney General's

 6    Office that that means he has not made a proper

 7    showing of need?

 8        A.  Correct.

 9              (EXHIBIT 12 PLAINTIFFS' MARKED FOR ID)

10        Q.  Let me show you what's been marked as

11    Exhibit 12, and I'll ask you if you recognize this?

12        A.  I do.

13        Q.  Is this a letter which you sent to

14    Mr. Labriole on March 4, 2022 explaining the reasons

15    for the denial of his application?

16        A.  Yes.  This was a letter sent subsequent to an

17    interview with him.

18        Q.  Correct.  In other words, this was preceded

19    by an initial letter that was sent to him?

20        A.  Yes.

21        Q.  And then a meeting with, again, Mr. Labriole,

22    Mr. Saccoccio, Mr. Figueiredo and you?

23        A.  Yes.

24        Q.  In this letter you set forth all the

25    additional, all the reasons why Mr. Labriole's renewal



1   application was denied?

2        A.  This was a letter, again, addressing the

3   reasons in response to additional information brought

4   forth at the appeal interview and addressing those.

5        Q.  Okay.

6        A.  So in other words, sometime the original

7   letter addresses one issue.  I don't know that that

8   specific issue is reiterated in this without reading

9   the whole thing.

10       Q.  That's fair enough.  If you go to the second

11  page, the fourth full paragraph begins, Included in

12  your original denial letter was a copy of Pages 4 and

13  5 of our application packet; do you see that

14  paragraph?

15       A.  I do.

16       Q.  The paragraph continues, This office does not

17  have a policy that an individual issued a CCW permit

18  from a town under Section 11-47-11 will not be

19  approved for a license to carry a hand gun by this

20  office; therefore, no such guidance is or would be

21  provided to applicants.  Okay, do you see that?

22       A.  I do.

23       Q.  Then it continues, A decision to issue an

24  additional LTC -- does LTC stand for License To Carry

25  in this?



EDWARD TROIANO                                             March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                   89

1          (EXHIBIT 13 PLAINTIFFS' MARKED FOR ID)

2      Q.  Let me show you what's been marked as

3   Exhibit 13, and ask you if you recognize this

4   document?

5      A.  I do.

6      Q.  Is this a letter dated January 14, 2022 from

7   Michael Figueiredo to Richard Laporte reporting the

8   denial of his concealed carry permit renewal

9   application?

10     A.  Yes.

11     Q.  The second sentence, it says, While reviewing

12  your application, it has come to our attention that

13  you have applied for and received a concealed weapons

14  permit from North Kingstown, Rhode Island; do you see

15  that?

16     A.  I do.

17     Q.  Then it goes on to provide the same

18  explanation that was set forth in the letter to

19  Mr. Labriole, is that correct, which is Exhibit 11?

20     A.  Yes.

21     Q.  Again, in this case it was the Attorney

22  General's position that whether or not he had a

23  concealed carry permit from a municipality, he was

24  being denied an application because he had not made a

25  special showing of need, or the showing of need that



```
 1        A.  Yes.  Again, I'll reiterate what I said on
 2   the previous applications.  It's not the mere fact
 3   that he has a permit.  It's the authority that that
 4   permit gives him that is the basis for the denial.
 5              MR. LYONS:  Okay.  I'm going to show you
 6   another exhibit.  I will apologize that it is, in
 7   fact, a photograph of a denial letter which was
 8   included in an e-mail.  I don't have the original.
 9   I'm going to use this instead.
10              (EXHIBIT 14 PLAINTIFFS' MARKED FOR ID)
11        Q.  Let me show you what's been marked as
12   Exhibit 14.  Setting aside the fact that it's included
13   in an e-mail, have you seen the letter which is
14   photographed in this exhibit?
15        A.  Yes.
16        Q.  Would you agree with me it's a letter from
17   Michael Figueiredo to Daniel Patterson dated April 23,
18   2022 denying his application for the renewal of his
19   concealed carry permit?
20        A.  Yes.
21        Q.  This letter is essentially identical to the
22   letter which was sent to Mr. Laporte which has been
23   marked as Exhibit 13, except that it refers to Exeter,
24   Rhode Island, instead of North Kingstown,
25   Rhode Island; would you agree with that?
```



```
 1        A.   I would.
 2              MR. LYONS:   Okay.
 3              (EXHIBIT 15 PLAINTIFFS' MARKED FOR ID)
 4        Q.   Let me show you what has been marked as
 5   Exhibit 15, and ask you if you recognize this letter?
 6        A.   I do.
 7        Q.   Is this a letter that you sent to Daniel
 8   Patterson dated June 22, 2022 after an appeal
 9   interview via audio conference in which Mr. Patterson
10   and Mr. Saccoccio, you, and an investigator named John
11   Rabbitt were involved?
12        A.   Yes.
13        Q.   Who is John Rabbitt?
14        A.   He's an investigator with the BCI office.
15        Q.   What is his role with respect to the review
16   of concealed carry permit applications?
17        A.   He doesn't really play a role.  He was just a
18   second individual present during the interview.
19        Q.   Okay.  Why was he there?
20        A.   Just essentially as a witness.
21        Q.   Okay, all right.  The letter to
22   Mr. Patterson, with the exception of one paragraph,
23   appears to me to be identical to the letter to
24   Mr. Labriole?
25              MR. ARGUIN:  Exhibit 12.
```



```
 1        Q.  Exhibit 12, and for that matter -- well, no,
 2   I'll just say identical to the letter to Mr. Labriole.
 3   I'll point out the one paragraph that looks different
 4   to me -- actually, I take it back.  There are a couple
 5   of differences.  I'll withdraw the question.
 6        Does this letter, Exhibit 15, set forth all the
 7   reasons why Mr. Patterson's application to renew his
 8   concealed carry permit was denied?
 9        A.  Yes.
10              (EXHIBIT 16 PLAINTIFFS' MARKED FOR ID)
11        Q.  Let me show you what has been marked as
12   Exhibit 16, and ask you if you recognize this?
13        A.  I do.
14        Q.  Is this a letter from Michael Figueiredo to
15   Joseph Patton dated January 25, 2022 setting forth the
16   reason or reasons why his application to renew his
17   concealed carry permit was denied?
18        A.  Yes.
19        Q.  Apart from the reference to the specific
20   municipality, is this letter identical to the other
21   letters which Mr. Figueiredo sent to, for example,
22   Mr. Laporte, Mr. Patterson?
23        A.  Yes.
24              (EXHIBIT 17 PLAINTIFFS' MARKED FOR ID)
25        Q.  Let me show you what has been marked as
```



```
 1   Exhibit 17, and ask you if you recognize this?

 2        A.  Yes.

 3        Q.  It appears that there was an appeal interview

 4   on, via video conference on April 27 in which

 5   Mr. Patton, you, Mr. Saccoccio, Mr. Figueiredo and the

 6   Plaintiff, Peter Trementozzi, all participated; would

 7   you agree with that?

 8        A.  Yes.

 9        Q.  Mr. Trementozzi participated because he was

10   also appealing the denial of his application; is that

11   correct?

12        A.  Yes.

13        Q.  Does this letter set forth all the reasons

14   why Mr. Patton's application was denied to renew his

15   permit?

16        A.  In addition to the initial denial letter,

17   yes.

18              MR. LYONS:  Okay.

19              (EXHIBIT 18 PLAINTIFFS' MARKED FOR ID)

20        Q.  Let me show you what has been marked

21   Exhibit 18, and ask you if there's, ask you if you

22   recognize this document?

23        A.  I do.

24        Q.  Is this a letter that Mr. Figueiredo sent to

25   Mr. Trementozzi dated March 12, 2022 denying his
```



 1    application to renew his concealed carry permit?

 2         A.  Yes.

 3         Q.  Apart from the reference to the specific

 4    municipality, is this letter identical to the other

 5    initial denial letters that Mr. Figueiredo sent to

 6    some of the other Plaintiffs?

 7         A.  It is.

 8         Q.  I gather this is a form letter?

 9         A.  Yes.  Well, template, yes.

10              MR. LYONS:  Okay.

11              (EXHIBIT 19 PLAINTIFFS' MARKED FOR ID)

12         Q.  Let me show you what has been marked as

13    Exhibit 19, and ask you if you recognize this?

14         A.  Yes.

15         Q.  Is this a letter that you sent to

16    Mr. Trementozzi on May 4, 2022 after that same appeal

17    interview in which Mr. Patton also participated?

18         A.  It is.

19         Q.  Is this letter also a template, based on a

20    template?

21         A.  Yes.  Well, I mean, so I would say yes, the

22    language here is used, is repeated, certainly, because

23    these are denied for the same, or at least similar

24    reasons.  So yes, the language is certainly repeated.

25         Q.  In many case the language is identical?



```
 1              C-E-R-T-I-F-I-C-A-T-E

 2   I, ELIZABETH GREELEY, a Notary Public, in and for the
     State of Rhode Island, duly commissioned and qualified
 3   to administer oaths, do hereby certify that the
     foregoing Deposition of Edward Troiano, a Witness in
 4   the above-entitled cause, was taken before me on
     behalf of the Plaintiffs, at the Offices of the
 5   Attorney General, 4 Howard Avenue, Cranston,
     Rhode Island on March 22, 2024 at 10:00 A.M.; that
 6   previous to examination of said witness, who was of
     lawful age, he was first sworn by me and duly
 7   cautioned to testify to the truth, the whole truth,
     and nothing but the truth, and that he thereupon
 8   testified in the foregoing manner as set out in the
     aforesaid transcript.
 9
     I further certify that the foregoing Deposition was
10   taken down by me in machine shorthand and was later
     transcribed by computer, and that the foregoing
11   Deposition is a true and accurate record of the
     testimony of said witness.
12
     Pursuant to Rules 5(d) and 30(f) of the Federal Rules
13   of Civil Procedure, original transcripts shall not be
     filed in Court; therefore, the original is delivered
14   to and retained by Plaintiffs' Attorney, Thomas Lyons.

15   Reading and signing of the Deposition was waived by
     the Witness.
16
     IN WITNESS WHEREOF, I have hereunto set my hand this
17   2nd day of April, 2024.

18

19
     _____
20   ELIZABETH GREELEY, NOTARY PUBLIC
     CERTIFIED COURT REPORTER
21   MY COMMISSION EXPIRES:  04/07/2026

22

23

24

25
```



**EXHIBIT C**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **MICHAEL O'NEIL,** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **C.A. No.: 23-cv-70** |
| | : | |
| | : | |
| **PETER F. NERONHA, in his official** | : | |
| **Capacity as Attorney General of the State** | : | |
| **Of Rhode Island, and THE STATE OF** | : | |
| **RHODE ISLAND** | : | |
| *Defendants,* | : | |

## DECLARATION OF EDWARD TROIANO

1.    I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.    I am the Chief for the Bureau of Criminal Identification and Investigation ("BCI"), Rhode Island Office of the Attorney General ("RIAG"), a position I have served in since January 1, 2019. Prior to that, I was a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives from 1994-2019. During that time, I twice served as the Acting Resident Agent in Charge for the Providence Field Office, between February 8, 2013 and April 6, 2013 and July 25, 2014 and February 3, 2015. I served as an undercover agent and as a Special Response Team (tactical team) operator. I have received numerous awards for my service, including eight ATF Special Act/Service Awards and designation as the top overall and academic award for my graduating class at the ATF national academy.

3.    As part of my job responsibilities as the Chief for BCI, I oversee the Attorney General's pistol permit process. That process is described in numerous publications accessible to the public at the following web address: https://www.riag.ri.gov/about-our-office/divisions-and-units/bureau-criminal-identification-bci/pistol-permits.

4.    In evaluating applications for pistol permits, RIAG takes into account the factors explained in the referenced publications. In the general case, if an applicant articulates a sufficient showing of need for a RIAG-issued permit, in addition to a municipal permit the applicant already holds, RIAG will consider that need and may issue the second permit. An example of the types of reasons that may lead to issuance of a RIAG permit to an applicant who already possesses a municipal permit would include an articulated need to open carry in order to deter robbery in the operation of a federally licensed firearms retail dealership.

5.    On at least one occasion in the past, RIAG has issued a RIAG permit to an applicant who already possessed a municipal permit because the applicant articulated a need to open carry in order to deter robbery at the applicant's storefront workplace.

6.    In the course of my duties, I have had opportunity to examine Mr. O'Neil's file and I was present at the March 10, 2021 in-person meeting.  I have also read the amended complaint in this matter. Mr. O'Neil did not present the facts about any need to open carry, or that he intended on opening a Federally licensed firearms dealership or any other retail business on this occasion or during any of the subsequent appeals. In fact, the last communication from Mr. O'Neil's legal counsel to this office regarding his application was a "motion to reconsider" dated July 8, 2021, attached hereto as Exhibit A. The reasons documented in this letter as the basis for reconsideration make no mention of a need to open carry or a firearms dealership.

7.    If Mr. O'Neil presented the facts alleged in the complaint on his application, the RIAG would consider whether to issue a RIAG permit in addition to Mr. O'Neil's municipal permits based on those facts, applying the reasoning expressed above and taking into consideration past decisions to issue permits.

Edward Troiano

Date: July 31, 2023

**EXHIBIT D**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

January 25, 2021

Mr. Michael O'Neil

255 Warner Brook Drive

Warwick, RI  02889



PLAINTIFF'S EXHIBIT 5 TROIANO 3-22-24

Dear Mr. O'Neil,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 1301005. We have received this application, dated by you on October 25, 2020.

As you may be aware, the State of Rhode Island offers two avenues to apply for a permit to carry a firearm under R.I.G.L. §§ 11-47-11 and 11-47-18. Both laws fulfill the statutory requirement under R.I.G.L. § 11-47-8.1 requiring a license or permit to carry a pistol. These statutes are outlined in the Office of Attorney General Weapons Carry Permit Application Packet, which you completed. You submitted your application to this Office under the provisions of R.I.G.L. § 11-47-18, which requires that an applicant must demonstrate a "proper showing of need," and grants the Attorney General discretion whether to issue a permit.  See Mosby v. Devine, 851 A.2d 1031, 1047 (R.I. 2004) ("§ 11-47-18 vest the [Office of Attorney General] with extremely broad discretion to grant or deny a license even when there has been 'a proper showing of need'"). Also included in this application packet is a section which addresses some of the factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents/PERMIT%20APPLICATION%202020.pdf (page 4-5).This section also reminds applicants that, although these are some factors which are considered, there is no "set formula or criteria to limit or restrict the Attorney General's decision to issue or deny a pistol permit…" I have attached a copy of these guidelines to this letter for your reference.

These guidelines and the requirement for a proper showing of need apply to all applicants, whether or not you currently or previously have held a license to carry, issued by this Office. In a letter submitted with your application, you reference the fact that, while traveling to different "clubs", you "…carry firearms, targets and ammunition." You make no other statements in your letter which can be reasonably interpreted as a statement of your need to carry a concealed firearm. Also, while conducting a preliminary review of your application, it was discovered that you currently hold an active permit to carry a concealed weapon issued by the City of Warwick, which does not expire until November 26, 2023. As outlined above, by statute, a permit to carry a concealed weapon issued by a municipality,



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

provides you with the same lawful authority as a permit issued by this Office to carry a pistol or revolver anywhere within this State. Since the City of Warwick permit you currently hold already provides you with the ability to lawfully carry a pistol or revolver in the State of Rhode Island, your application does not demonstrate a proper showing of need for the Office of Attorney General to issue another permit. Doing so, would be duplicative of the permit you already hold.

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a permit to carry a pistol or revolver, to deny your application due to the fact that you have not provided a proper showing of need for a permit to be issued.

The Office of Attorney General provides LTC applicants, whose applications have been denied, the opportunity to meet with representatives of this Office to present any **additional** information they feel would provide a reason for reconsideration of their application. Due to COVID-19 restrictions, these meetings will only be conducted via audio or video conference call. Should you wish to schedule this meeting, please contact Zoreilis Perez, at 401-274-4400, ext. 2510.

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

Attachment: Weapons Carry Permit Packet

**EXHIBIT E**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

April 1, 2021

Mr. Michael O'Neil

255 Warner Brook Drive

Warwick, RI 02889



PLAINTIFF'S
EXHIBIT
6
3-22-24

Dear Mr. O'Neil,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 1301005. This application was originally denied on January 25, 2021, due to a failure to demonstrate a proper showing of need. A copy of the letter outlining the reason for that decision is attached for your reference.

Subsequent to that decision, you requested and received an appointment to appeal the denial of your application. This appeal interview took place, via video conference, on March 10, 2021. Present during this conference were you, your attorney Mr. Saccoccio, Deputy Chief Michael Figueiredo and me.

During this meeting, Mr. Saccoccio initially stated that the additional reason you believed a permit should be issued to you was that Mr. Saccoccio believes you to be a "public figure", due to your position as vice-president of the Rhode Island Second Amendment Coalition. He argued this position puts you at additional risk of harm from gun control advocates. Mr. Saccoccio also affirmed that you currently hold an active permit to carry a pistol or revolver in the State of Rhode Island, issued by the Town of Warwick. At this time, I informed Mr. Saccoccio that this Office believes the permit he already holds addresses this risk as he articulated it.

Mr. Saccoccio then stated he believed denying your application because you already hold a permit issued by a town was not valid for the following reasons: his assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; and having both permits allows a town issued permit holder to bypass the waiting period and background check imposed by State law. He further stated that a denial of your application would need to be disclosed on future applications for a permit to carry in other states.

Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State. Additionally, the Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license to carry application process. You also have presented no

evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license.

Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue.

Similarly, having a State issued permit so that you can avoid the State's mandatory background check and waiting period, is not a need it is a desire. Moreover, the Town of Warwick permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws § 11-47-35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you.

Included in your original denial letter was a copy of pages 4 and 5 of our application packet, which address some of the factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents /PERMIT%20APPLICATION%202020.pdf (page 4-5). As delineated in this list of factors contained in your application packet, which are considered by the Attorney General for a proper showing of need, this office takes into account, among others, whether: the applicant has demonstrated a specific articulable risk to life, limb or property; the applicant can readily alter his or her conduct or undertake reasonable measures other than carrying a loaded firearm, to decrease the danger to life limb or property; and if there are means of protection available to the applicant other than the possession of a loaded firearm that will alleviate the risk to his or her person or property. These factors clearly articulate this Office's general authority to issue a permit only upon a proper showing of need. The additional concerns raised by you and Mr. Saccoccio do not rise to this level.

In addition, although not a factor in your denial, your refusal to submit a complete application, namely the authorization to conduct and release information for a background check, does not allow this Office to subject your application to the same examination process as all other applicants, ensuring the review process is consistent, thorough and fair.

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a permit to carry a pistol or revolver, to deny your application due to the fact that you have not provided a proper showing of need for a permit to be issued.



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue • Cranston, RI 02920
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

Attachment: LTC decision letter

**EXHIBIT F**

Case 1:23-cv-00070-WES-PAS    Document 35-1    Filed 11/27/24    Page 75 of 236 PageID
#: 1676
Case 1:23-cv-00070-WES-PAS   Document 1-5   Filed 02/15/23   Page 1 of 1 PageID #: 65

# Saccoccio Law Office
### Attorneys and Counselors at Law

**Hon. Frank R. Saccoccio Esq. & David Comerford** (of counsel)

*Licensed in Rhode Island                                  928 Atwood Avenue
Massachusetts & Fed Ct.                            Johnston, Rhode Island 02919
                                                           Phone (401) 944-1600
                                                           Fax    (401) 942-8921

Frank.CSLawOffice@gmail.com

Date: July 8, 2021

State of Rhode Island
Dept. of AG – BCI Division
4 Howard Avenue
Cranston, Rhode Island 02919
Phone: (401) 274-4400

          RE: Michael P. O'Neil
          Application No.: 1301005
          CCW Denial

MOTION TO RECONSIDER

          Now comes the petitioner, Michael P. O'Neil, and respectfully requests that the
Department of the Attorney General, BCI Division, reconsider the Denial of his renewal for his
AG CCW Permit. This is based on the following:

          That the Petitioner has secured and maintained a permit from the Rhode Island
Department of the Attorney General for approximately 12 years.
          That there was no substantial and/or material changes in his circumstances since his last
appliocation.
          That a "denial" from the AG will negatively affect him in his renewal applications from
the Commonwealth of Massachusetts, the State of Connecticut and other state(s) from which Mr.
O'Neil has CCW permits.

Wherefore, the applicate, Mr. Michael P. O'Neil respectfully requests the Department of the
Attorney General reconsider his renewal application. Mr. O'Neil requests a written response to
this Request for a reconsideration.

                                        Cordially,

                                        /s/ Frank R. Saccoccio

                                        _____

                                        Hon. Frank R. Saccoccio Esq.
                                        Saccoccio Law Office

FRS:frs
Copy: file

1

**EXHIBIT G**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

150 South Main Street · Providence, RI 02903
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*



July 21, 2021

Frank R. Saccoccio, Esquire
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island 02919
Frank.CSLawoffice@gmail.com

Re: Motion to Reconsider

Dear Attorney Saccoccio:

I am in receipt of your motion for reconsideration dated July 8, 2021, but received on July 13, 2021. You seek reconsideration based on the assertion that the Petitioner, Michael P. O'Neil, has maintained a concealed license permit from the Rhode Island Office of Attorney General for approximately 12 years and that there has been no substantial and/or material change in circumstances. You also relate that a "denial" will negatively affect renewal applications the Petitioner may submit to other states.

This latter issue was addressed in the Office of Attorney General's April 1, 2021 letter and your July 8, 2021 letter provides no basis to consider this decision. The remaining two issues that serve as the basis for your motion to reconsider also provide no basis to reconsider this Office's determination that the Petitioner's application did not demonstrate a proper showing of need.

Accordingly, the motion for reconsideration is denied.

Very truly yours,

*/s/ Michael W. Field*
Michael W. Field
Assistant Attorney General

cc: Edward Troiano, BCI Chief

**EXHIBIT H**

Supreme Court

# Case Summary

### Case No. SU-2021-0175-MP

| | | |
|---|---|---|
| **Michael O'Neil v. Rhode Island Department of the Attorney General** | § § | Location: **Supreme Court** <br> Filed on: **08/04/2021** |

---

## Case Information

**Statistical Closures**                                    Case Type:   Miscellaneous Petition
12/17/2021   Permission Denied                          Case Status: **12/17/2021   Closed**

---

## Party Information

| | | |
|---|---|---|
| **Plaintiff** | **O'Neil, Michael P.** | **SACCOCCIO, FRANK R.** <br> *Retained* |
| **Defendant** | **Neronha, Peter F.** | **FIELD, MICHAEL W.** <br> *Retained* |
| | | **SADECK, KATHERINE CONNOLLY** <br> *Retained* |
| | **Troiano, Edward** | **FIELD, MICHAEL W.** <br> *Retained* |
| | | **SADECK, KATHERINE CONNOLLY** <br> *Retained* |

---

## Case Events

08/04/2021
Petition for Writ of Certiorari

08/05/2021
Papers Rejected, Notice Issued

08/06/2021
Amended Petition
    Party:   Plaintiff O'Neil, Michael P.

08/06/2021
Memorandum Filed
    Party:   Plaintiff O'Neil, Michael P.

08/06/2021
Entry of Appearance
    Party:   Attorney of Record SACCOCCIO, FRANK R.

08/06/2021
Other
    Party:   Plaintiff O'Neil, Michael P.

08/25/2021
Entry of Appearance
    Party:   Attorney of Record SADECK, KATHERINE CONNOLLY

08/25/2021
Appendix
    Party:   Defendant Neronha, Peter F.;
             Defendant Troiano, Edward

08/25/2021
Objection to Petition
    Party:   Defendant Neronha, Peter F.;

**Supreme Court**
## Case Summary
**Case No. SU-2021-0175-MP**

Defendant Troiano, Edward

| | |
|---|---|
| 08/26/2021 | Appendix |
| | Party:  Defendant Neronha, Peter F.; |
| | Defendant Troiano, Edward |
| 08/31/2021 | Hard Copies Filed |
| 09/20/2021 | Hard Copies Filed |
| 12/17/2021 | Order - Petition for Writ of Certiorari Denied |

---

## Financial Information

| **Plaintiff**    O'Neil, Michael P. | | |
|---|---|---|
| Total Financial Assessment | | 150.00 |
| Total Payments and Credits | | 150.00 |
| **Balance Due as of 11/26/2024** | | **0.00** |
| 08/05/2021 | Transaction Assessment | 150.00 |
| 08/05/2021 | Electronic Payment | Receipt # SU-2021-03267 | (150.00) |

# EXHIBIT I

**In the Matter Of:**

O'NEIL V. NERONHA

23-cv-00070-WES-PAS

---

**RICHARD A. COOK**

*February 27, 2024*

---



800.211.DEPO (3376)
EsquireSolutions.com

```
 1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF RHODE ISLAND
 2

 3

 4   Michael O'Neil, et al.

 5        Vs.              C.A. NO:  23-cv-00070-WES-PAS

 6   Peter F. Neronha, in his
     Official Capacity as
 7   Attorney General of the
     State of Rhode Island, and
 8   the State of Rhode Island

 9

10   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

11

12                  DEPOSITION OF
                  RICHARD A. COOK
13
                 FEBRUARY 27, 2024
14                   3:00 P.M.

15

16              150 SOUTH MAIN STREET
               PROVIDENCE, RI   02903
17

18

19

20

21

22

23

24              ELIZABETH GREELEY
            CERTIFIED COURT REPORTER
25
```



```
 1              (DEPOSITION COMMENCED AT 2:45 P.M.)
 2                     RICHARD A. COOK
 3        Being duly sworn, deposes and testifies as
 4   follows:
 5              THE REPORTER:  Would you state your name
 6   for the record, please?
 7              THE WITNESS:  Richard A. Cook, C-O-O-K.
 8              EXAMINATION BY MR. ARGUIN
 9        Q.  Mr. Cook, I'm James Arguin.  I'm a Special
10   Assistant Attorney General representing the Attorney
11   General in this proceeding.
12        A.  Ah-ha.
13        Q.  I'm with my colleague --
14              MR. MEOSKY:  Paul Meosky, Special
15   Assistant Attorney General.
16        Q.  What I would like to do before we get into
17   any questions about the case is just give you some
18   overview of how the deposition works and how we'll
19   proceed; is that okay?
20        A.  Okay.
21        Q.  Have you ever been deposed before?
22        A.  No.
23        Q.  Have you ever testified in court before?
24        A.  No.
25        Q.  Just so you know, the stenographer, who just
```



```
 1   member?
 2        A.   No.
 3        Q.   What about any crime ever reported against
 4   your business?
 5        A.   Not that I can recall.
 6        Q.   Okay.  Now, do you recall when your last
 7   licensed to carry with the Attorney General expired?
 8        A.   I'm thinking two to three years ago.  I'm not
 9   sure of that at all.
10        Q.   Do you recall when you filed your license for
11   renewal with the Attorney General?
12        A.   I don't remember.
13             (EXHIBIT 1 DEFENDANT'S MARKED FOR ID)
14        Q.   I'm showing you what's been marked as
15   Exhibit 1, Mr. Cook.  Could you look through that and
16   see if you can find the application we were just
17   discussing?
18        A.   Okay.
19        Q.   Does that refresh your recollection as to
20   when you filed your application for renewal with the
21   Attorney General?
22        A.   It appears to be, yes.
23        Q.   Could you tell us, when did you seek to
24   renew?
25        A.   I think that says, is that a four?
```



```
 1        Q.  Yes.

 2        A.  4/16/21.

 3        Q.  Yes.  Do you recall when the Attorney General

 4   responded to your application?

 5        A.  I do not recall.

 6        Q.  Did the Attorney General approve or deny your

 7   license?

 8        A.  I believe they denied it.

 9        Q.  Okay.  If you just flip a few pages back,

10   you'll see a letter referencing that; can you identify

11   that?

12            MR. SACCOCCIO:  To clarify the record,

13   there are two.  Which one are you referring to?

14        Q.  It's at the top.  Here we go, right there.

15   It's on Page 4, the one with the letter -- sorry, the

16   next page, the one with the letterhead from the

17   Attorney General's office.  It's a letter dated

18   December 20, 2021.

19        A.  Okay.

20        Q.  Does that refresh your recollection

21   whether --

22        A.  I don't remember this letter exactly, but I

23   know I was denied.

24        Q.  Okay.  Since that denial, have you taken any

25   steps to file a new application with the Attorney
```



RICHARD A. COOK                                           February 27, 2024
O'NEIL V. NERONHA                                                      22

1        A.   I'm not sure of the difference.  I know with

2    a state permit that is allowed.  I know with the town

3    permit it is not.

4        Q.   What benefit do you see being gained by not

5    being able to carry open as opposed to carrying

6    concealed?

7        A.   I'm not sure.

8        Q.   What do you think you could do with a permit

9    to carry open that you can't do with a permit to carry

10   concealed?

11       A.   I'm not sure of that, how to answer that.

12            MR. ARGUIN:  All right.  I don't have

13   anything further.  Frank?

14            MR. SACCOCCIO:  That's it.  I'm good.

15            (DEPOSITION CLOSED AT 3:10 P.M.)

16

17

18

19

20

21

22

23

24

25



RICHARD A. COOK                                          February 27, 2024
O'NEIL V. NERONHA                                                      23

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2
       I, ELIZABETH GREELEY, a Notary Public, in and for the
 3    State of Rhode Island, duly commissioned and qualified
      to administer oaths, do hereby certify that the
 4    foregoing Deposition of Richard Cook, a Plaintiff in
      the above-entitled cause, was taken before me on
 5    behalf of the Defendant, at the offices of the
      Attorney General, 150 South Main Street, Providence,
 6    Rhode Island on February 27, 2024 at 3:00 P.M.; that
      previous to examination of said witness, who was of
 7    lawful age, he was first sworn by me and duly
      cautioned to testify to the truth, the whole truth,
 8    and nothing but the truth, and that he thereupon
      testified in the foregoing manner as set out in the
 9    aforesaid transcript.

10     I further certify that the foregoing Deposition was
      taken down by me in machine shorthand and was later
11    transcribed by computer, and that the foregoing
      Deposition is a true and accurate record of the
12    testimony of said witness.

13     Pursuant to Rules 5(d) and 30(f) of the Federal Rules
      of Civil Procedure, original transcripts shall not be
14    filed in Court; therefore, the original is delivered
      to and retained by Defendant's Attorney, James Arguin.
15
       Reading and signing of the Deposition was waived by
16    the Witness.

17     IN WITNESS WHEREOF, I have hereunto set my hand this
      6th day of March, 2024.
18

19
            
20
      _____
21    ELIZABETH GREELEY, NOTARY PUBLIC
      CERTIFIED COURT REPORTER
22    MY COMMISSION EXPIRES:  04/07/2026

23

24

25
```



**EXHIBIT J**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue • Cranston, RI 02920
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*



PLAINTIFF'S
EXHIBIT
8
3-22-24

Richard Cook

**MAILED**
8/4/21 LC

9489 0090 0027 6111 8601 57

Thank you for taking the time to apply for a concealed carry weapons permits through the Rhode Island Attorney General office, under Rhode Island General law 11-47-18. While reviewing your application it has come to our attention that you currently hold an active carry concealed weapons permit, issued by the town of Charlestown, Rhode Island.

CCW permits issued by Rhode Island Cities and Town under Rhode Island General law 11-47-11 gives the same authority to carry a concealed firearm as the office of Attorney General. Due to the facts listed above, you will not be issued a concealed carry weapons permit through the Attorney General's Office at this time.

If there are any special circumstances that you would need the State issued CCW license, please notify this office via Email at CCWpermits@riag.ri.gov.

Applications may be withdrawn without prejudice by emailing your withdrawal letter to CCWpermits@RIAG.RI.GOV

Respectfully

Michael J Figueiredo

# EXHIBIT K



# STATE OF RHODE ISLAND
## OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue • Cranston, RI 02920
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*
December 20, 2021



Mr. Richard Cook

4650 South County Trail

Charlestown, RI  02813

Dear Mr. Cook,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 9008033. This application was originally denied on August 4, 2021, due to a failure to demonstrate a proper showing of need. Specifically, you already hold an active permit to carry a concealed weapons permit, issued by the town of Charlestown, RI. To issue you a second permit would be duplicative. A copy of the letter outlining the reason for that decision is attached for your reference.

Subsequent to that decision, you requested and received an appointment for an interview to appeal the denial of your application. This appeal interview took place, via a telephone conference call, on December 15, 2021. Present during this conference were you, your attorney Mr. Saccoccio, Deputy Chief Michael Figueiredo and me.

At the start of the meeting, I informed you and Mr. Saccoccio the purpose of the meeting was to allow you and Mr. Saccoccio to provide additional information or clarification to your application that would merit reconsideration of the initial denial of your application. It was also explained that this was not a judicial hearing or an administrative hearing subject to regulations under the Rhode Island Administrative Procedures Act, RIGL, §42-35-1, et seq.

During this meeting, Mr. Saccoccio stated he had several reasons why you should be granted a permit. While Mr. Saccoccio expressed general opinions about this Office's application procedures and his own legal theory, this letter will only address what can be construed as additional information which directly pertains to your application and the reason why it was denied.

Mr. Saccoccio stated he believed denying your application because you already hold a permit issued by a town was not valid for the following reasons: his assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; having both permits allows a town issued permit holder to bypass the waiting period and background check imposed by State law; and that an "AG permit" differs from a town permit in that it allows for the open carrying of a handgun. He further stated that a denial of your application would need to be disclosed on future applications for a permit to carry in other states.

Finally, he stated that the Office of Attorney General does not outline specific guidelines for what it considers to be a proper showing of need.

Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State. Additionally, the Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license-to-carry application process. You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license.

Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue.

Similarly, having a State issued permit so that you can avoid the State's mandatory background check and waiting period, is not a need it is a desire. Moreover, the Town of Charlestown permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws § 11-47-35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you.

While Mr. Saccoccio pointed out the valid distinction that a permit issued by this Office allows for the open carrying of a handgun, neither he nor you provided any information or justification for your need to do so, even when you were specifically asked if you had this need.

Included in your original denial letter was a copy of pages 4 and 5 of our application packet, which address factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents/PERMIT%20APPLICATION%202020.pdf (page 4-5).

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a license to carry a pistol or revolver, to affirm the initial denial of your application due to the fact that you have not provided a proper showing of need for a permit to be issued.

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

Attachment: LTC decision letter

**EXHIBIT L**

Supreme Court

## Case Summary

### Case No. SU-2022-0004-MP

| | | | |
|---|---|---|---|
| **Richard Cook v. Rhode Island Department of the Attorney General** | § § | Location: | **Supreme Court** |
| | | Filed on: | **01/01/2022** |

---

## Case Information

**Statistical Closures**                                    Case Type:   Miscellaneous Petition
02/15/2023   Permission Denied                              Case Status:   **02/15/2023   Closed**

---

## Party Information

| | | |
|---|---|---|
| **Plaintiff** | Cook, Richard | **SACCOCCIO, FRANK R.**<br>*Retained* |
| **Defendant** | RI Department of Attorney General | **SADECK, KATHERINE CONNOLLY**<br>*Retained*<br>**FIELD, MICHAEL W.**<br>*Retained* |

---

## Case Events

01/01/2022    Petition for Writ of Certiorari
                    Party:   Plaintiff Cook, Richard

01/18/2022    Entry of Appearance
                    Party:   Attorney of Record SADECK, KATHERINE CONNOLLY

01/18/2022    Motion for Extension of Time
                    Party:   Defendant RI Department of Attorney General

01/18/2022    Motion for Extension of Time Granted by Clerk

01/27/2022    Hard Copies Filed

02/09/2022    Objection to Petition
                    Party:   Defendant RI Department of Attorney General

02/09/2022    Miscellaneous Motion
                    Party:   Defendant RI Department of Attorney General

02/09/2022    Memorandum in Support of Motion/Objection to Motion
                    Party:   Defendant RI Department of Attorney General

02/09/2022    Appendix
                    Party:   Defendant RI Department of Attorney General

02/09/2022    Hard Copies Filed

02/11/2022    Memorandum Filed
                    Party:   Plaintiff Cook, Richard

02/14/2022    Supplemental Memorandum in Support/Opposition to Petition

**Supreme Court**
**Case Summary**

**Case No. SU-2022-0004-MP**

Party:   Defendant RI Department of Attorney General

02/14/2022   Hard Copies Filed

02/15/2023   🗎
Order - Petition for Writ of Certiorari Denied

---

## Financial Information

---

| **Plaintiff**     Cook, Richard | | |
|---|---|---:|
| Total Financial Assessment | | 150.00 |
| Total Payments and Credits | | 150.00 |
| **Balance Due as of 11/26/2024** | | **0.00** |
| 01/04/2022   Transaction Assessment | | 150.00 |
| 01/04/2022   Electronic Payment | Receipt # SU-2022-00017 | (150.00) |

# EXHIBIT M

1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF RHODE ISLAND
2

3

4   Michael O'Neil, Et Al.

5        Vs.              C.A. NO:  23-cv-00070-WES-PAS

6   Peter F. Neronha, in his Official
    Capacity as Attorney General of the
7   State of Rhode Island, and the
    State of Rhode Island
8

9
    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
10

11

12              DEPOSITION OF
            DONALD T. LABRIOLE, JR.
13
               MARCH 22, 2024
14                1:30 P.M.

15

16            4 HOWARD AVENUE
           CRANSTON, RI  02920
17

18

19

20

21

22

23
            ELIZABETH GREELEY
24       CERTIFIED COURT REPORTER

25



```
 1              (DEPOSITION COMMENCED AT 1:37 P.M.)

 2                    DONALD T. LABRIOLE, JR.

 3        Being duly sworn, deposes and testifies as

 4   follows:

 5              THE REPORTER:  Would you state your name

 6   for the record, please?

 7              THE WITNESS:  Donald T. Labriole, Jr.,

 8   L-A-B-R-I-O-L-E.

 9              EXAMINATION BY MR. MEOSKY

10        Q.  Hello, Mr. Labriole.  My name is Paul Meosky.

11   I'm a Special Assistant Attorney General for the State

12   of Rhode Island.  I am here with my colleague, who

13   will introduce himself.

14              MR. ARGUIN:  James Arguin.

15        Q.  Today, as you know, we're going to take your

16   deposition in the matter of O'Neil versus Neronha.

17   First things first, I'm going to walk you through the

18   general guidelines of how this deposition will go.

19        Then I will ask you a couple of questions about

20   your background, who you are, where you work, then I'm

21   going to ask a few questions about your application

22   for a permit from the AG's office; does that make

23   sense?

24        A.  Yes.

25        Q.  Okay.  So to get started, I first want to let
```



DONALD T. LABRIOLE, JR.                                    March 22, 2024
O'NEIL V. NERONHA                                                      9

1        Q.  You go yourself, okay.  As a condition of
2    employment, do you need to carry a weapon with you?
3        A.  I do, because I collect sometimes.  It
4    depends on the job I'm on.  Sometimes I have money
5    handed to me unexpectedly.  I don't expect to have it
6    handed to me.
7        Q.  We'll go there in a second.  It's your own
8    company, so presumably you would not be fired if you
9    did not carry a gun?
10       A.  That's correct.
11       Q.  The next part, you're self-employed, I guess
12   I suppose that you have given yourself permission to
13   carry a gun on the premises?
14       A.  I have.
15       Q.  Is there any distinction made between open
16   and concealed carry; does it matter to you from a job
17   policy?
18       A.  I would carry open if I had the opportunity
19   to, but I would carry concealed.  If she felt
20   uncomfortable with me having a gun, I would carry
21   concealed.
22       Q.  She, being?
23       A.  I'm just using her as an example.  If we were
24   on a job site and somebody said, I feel
25   uncomfortable --



DONALD T. LABRIOLE, JR.                                    March 22, 2024
O'NEIL V. NERONHA                                                      10

```
 1              MR. LYONS:  Let the record reflect the
 2    witness is referring to the court reporter.
 3         A.  Just as a point of reference.  If Frank told
 4    me he felt uncomfortable, I would carry concealed.
 5         Q.  Thank you.  On a job have you ever discharged
 6    or used a weapon?
 7         A.  Never.
 8         Q.  Have you ever been in a situation where you
 9    would have used a weapon had you had one available?
10         A.  No.
11         Q.  Have you ever been employed in law
12    enforcement?
13         A.  No.
14         Q.  Have you ever been employed in security
15    services of any sort?
16         A.  No.
17         Q.  Do you have any intention to become employed
18    in security or law enforcement?
19         A.  Not today.
20         Q.  In the immediate future?
21         A.  Things change.  If the economy crashes and my
22    company is no longer (inaudible), it's possible.
23         Q.  To clarify, right now you don't have any
24    plans?
25         A.  Not right now.
```



DONALD T. LABRIOLE, JR.                                    March 22, 2024
O'NEIL V. NERONHA                                                    13

```
 1        Q.  Sir, can you please, just for the record, do
 2   you recognize this as your application?
 3                THE WITNESS:  Yes, but why would it say
 4   '21?
 5                MR. MEOSKY:  That's the date it had on it
 6   when it was submitted.
 7                THE WITNESS:  It expired in 2020, did it
 8   not?
 9                MR. SACCOCCIO:  You can't ask me
10   questions.
11        A.  I actually have the permit.
12        Q.  That's great.  Can you look at that?
13        A.  Unless I wrote the wrong date on it, that's a
14   possibility, too.  I'm not saying I'm perfect.
15        Q.  Look at the dates.
16                MR. LYONS:  For the record, the witness
17   is looking in his wallet for a permit.
18        A.  Here it is.  Wow, I didn't know I was going
19   to need my glasses.  2021 expires, so I made an
20   incorrect statement.
21        Q.  Which month?
22        A.  11.
23        Q.  Then you applied in?
24        A.  August of 2021.  Sorry, it's my own fault.
25                MR. SACCOCCIO:  For the record, he was
```



1   those states before?

2        A.   Yes.

3        Q.   Okay.  You were allowed reciprocity to do so?

4        A.   Yes.

5        Q.   Using your state AG's permit?

6        A.   Yes.

7        Q.   Okay.  Then final question, I suppose, why do

8   you feel the need to open carry versus concealed

9   carry?

10       A.   That's a good question.  Depends on where I

11  am.  If we're working on a site, I work in all areas

12  of the state.  I do all kinds of work.  I don't just

13  do irrigation work, as I am a pipefitter and a burner

14  service tech, too.  Sometimes if the gun is exposed,

15  it stops things from happening.  People see it.  Well,

16  we're not going to mess with that.

17       Q.   But to clarify, you never had an experience

18  where you've needed to use a weapon on a site?

19       A.   Never.

20       Q.   Have you ever had an experience where you

21  open carried on a site?

22       A.   No.

23            MR. MEOSKY:  Okay.  I believe those are

24  all the questions we have prepared.

25            MR. LYONS:  Copy, please.



1              C-E-R-T-I-F-I-C-A-T-E

2    I, ELIZABETH GREELEY, a Notary Public, in and for the
     State of Rhode Island, duly commissioned and qualified
3    to administer oaths, do hereby certify that the
     foregoing Deposition of Donald T. Labriole, Jr., a
4    Plaintiff in the above-entitled cause, was taken
     before me on behalf of the Defendant, at the Offices
5    of the Attorney General, 4 Howard Avenue, Cranston,
     Rhode Island on March 22, 2024 at 1:30 P.M.; that
6    previous to examination of said witness, who was of
     lawful age, he was first sworn by me and duly
7    cautioned to testify to the truth, the whole truth,
     and nothing but the truth, and that he thereupon
8    testified in the foregoing manner as set out in the
     aforesaid transcript.

9
     I further certify that the foregoing Deposition was
10   taken down by me in machine shorthand and was later
     transcribed by computer, and that the foregoing
11   Deposition is a true and accurate record of the
     testimony of said witness.

12
     Pursuant to Rules 5(d) and 30(f) of the Federal Rules
13   of Civil Procedure, original transcripts shall not be
     filed in Court; therefore, the original is delivered
14   to and retained by Defendant's Attorney, Paul Meosky.

15   Reading and signing of the Deposition was waived by
     the Witness.

16
     IN WITNESS WHEREOF, I have hereunto set my hand this
17   2nd day of April, 2024.

18
19   
20   _____
     ELIZABETH GREELEY, NOTARY PUBLIC
21   CERTIFIED COURT REPORTER
     MY COMMISSION EXPIRES:  04/07/2026
22

23

24

25



800.211.DEPO (3376)
EsquireSolutions.com

**EXHIBIT N**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov



*Peter F. Neronha*
*Attorney General*

**November 7, 2021**

**Donald Labriole**

**16 Nichole Lane**
**Coventry, RI 02816**

9489 0090 0027 6111 8571 64

Thank you for taking the time to apply for a concealed carry weapons permit through the Rhode Island Attorney Generals office. Under Rhode Island General law 11-47-18. While reviewing your application it has come to our attention that you have applied for and received a concealed weapons permit, from **West Greenwich,** Rhode Island

CCW permits issued by Rhode Island and Cities and Towns under Rhode Island General Laws 11-47-11 give the same authority to carry a a concealed firearm as the office of the Attorney General. Due to the facts listed above you will not be issued a concealed carry weapons permit through the Attorney Generals office at this time.

If there are any special circumstances that you would need the State Issued CCW permit, please notify this office via Email at CCWpermits@riag.ri.gov

Applications may be withdrawn without prejudice by emailing your withdrawal letter to CCWpermits@riag.ri.gov.

Respectfully,

Michael J. Figueiredo, Deputy Chief

Bureau of Criminal Identification and Investigations

**EXHIBIT O**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue • Cranston, RI 02920
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*
March 4, 2022



Mr. Donald Labriole

16 Nichole Lane

Coventry, RI 02816

Dear Mr. Labriole,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 9309034. This application was originally denied on November 7, 2022, due to a failure to demonstrate a proper showing of need. Specifically, you already hold an active permit to carry a concealed weapons permit, issued by the town of West Greenwich, RI. To issue you a second permit would be duplicative.

Subsequent to that decision, you requested and received an appointment for an interview to appeal the denial of your application. This appeal interview took place, via a video conferenc, on February 2, 2022. Present during this conference were you, your attorney Mr. Saccoccio, Deputy Chief Michael Figueiredo and me.

At the start of the meeting, I informed you and Mr. Saccoccio the purpose of the meeting was to allow you and Mr. Saccoccio to provide additional information or clarification to your application that would merit reconsideration of the initial denial of your application. It was also explained that this was not a judicial hearing or an administrative hearing subject to regulations under the Rhode Island Administrative Procedures Act, RIGL, §42-35-1, et seq.

During this meeting, Mr. Saccoccio stated he had several reasons why you should be granted a permit. While Mr. Saccoccio expressed general opinions about this Office's application procedures and his own legal theory, this letter will only address what can be construed as additional information which directly pertains to your application and the reason why it was denied.

Mr. Saccoccio stated he believed denying your application because you already hold a permit issued by a town was not valid for the following reasons: his assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; having both permits allows a town issued permit holder to bypass the waiting period and background check imposed by State law; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; and that the Office of Attorney General does not specify anywhere that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General.

Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State. Additionally, the Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license-to-carry application process. You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license.

Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue.

Similarly, having duplicate town and State issued permits so that you can avoid the State's mandatory background check and waiting period, is not a need it is a desire. Moreover, the Town of West Greenwich permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws § 11-47-35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you.

Included in your original denial letter was a copy of pages 4 and 5 of our application packet, which address factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents /PERMIT%20APPLICATION%202020.pdf (page 4-5). This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*. As outlined above, you did not articulate this need despite being asked specifically.

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a license to carry a pistol or revolver, to affirm the initial denial of your application due to the fact that you have not provided a proper showing of need for a permit to be issued.

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

# EXHIBIT P

Supreme Court

## Case Summary

### Case No. SU-2022-0085-MP

| | | | | |
|---|---|---|---|---|
| **Donald Labriole v. Rhode Island Department of the Attorney General** | § § | | Location: | **Supreme Court** |
| | | | Filed on: | **03/26/2022** |

---

## Case Information

**Statistical Closures**                                        Case Type:   Miscellaneous Petition
02/15/2023   Permission Denied                          Case Status:   **02/15/2023   Closed**

---

## Party Information

| **Plaintiff** | **Labriole, Donald** | SACCOCCIO, FRANK R. *Retained* |
|---|---|---|
| **Defendant** | **Rhode Island Department of Attorney General** | FIELD, MICHAEL W. *Retained* |
| | | SADECK, KATHERINE CONNOLLY *Retained* |

---

## Case Events

| | |
|---|---|
| 03/26/2022 | Petition for Writ of Certiorari  Party:   Plaintiff Labriole, Donald |
| 03/28/2022 | Papers Rejected, Notice Issued |
| 03/28/2022 | Amended Petition  Party:   Plaintiff Labriole, Donald |
| 03/28/2022 | Memorandum Filed  Party:   Plaintiff Labriole, Donald |
| 03/28/2022 | Other  Party:   Plaintiff Labriole, Donald |
| 04/14/2022 | Entry of Appearance  Party:   Attorney of Record SADECK, KATHERINE CONNOLLY |
| 04/14/2022 | Objection to Petition  Party:   Defendant Rhode Island Department of Attorney General |
| 01/18/2023 | Hard Copies Filed |
| 01/20/2023 | Hard Copies Filed |
| 02/15/2023 | Order - Petition for Writ of Certiorari Denied |

---

## Financial Information

**Plaintiff**   Labriole, Donald

**Supreme Court**
**Case Summary**

**Case No. SU-2022-0085-MP**

| | | |
|---|---|---:|
| Total Financial Assessment | | 150.00 |
| Total Payments and Credits | | 150.00 |
| **Balance Due as of 11/26/2024** | | **0.00** |

| | | | |
|---|---|---|---:|
| 03/28/2022 | Transaction Assessment | | 150.00 |
| 03/28/2022 | Electronic Payment | Receipt # SU-2022-00340 | (150.00) |

# EXHIBIT Q

# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

**1/14/2022**



Richard Laporte

91 7199 9991 7034 0813 6318

84 Forest Park Drive

North Kingstown Rhode Island 02852

Permit #1308011


Thank you for taking the time to apply for a concealed carry weapons permit through the Rhode Island Attorney Generals office. Under Rhode Island General law 11-47-18. While reviewing your application it has come to our attention that you have applied for and received a concealed weapons permit, from **North Kingstown,** Rhode Island

CCW permits issued by Rhode Island and Cities and Towns under Rhode Island General Laws 11-47-11 give the same authority to carry a a concealed firearm as the office of the Attorney General. Due to the facts listed above you will not be issued a concealed carry weapons permit through the Attorney Generals office at this time.

If there are any special circumstances that you would need the State Issued CCW permit, please notify this office via Email at CCWpermits@riag.ri.gov

Applications may be withdrawn without prejudice by emailing your withdrawal letter to CCWpermits@riag.ri.gov.


Respectfully,

Michael J. Figueiredo, Deputy Chief

Bureau of Criminal Identification and Investigations

**EXHIBIT R**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*
May 5, 2022

Mr. Richard Laporte

84 Forest Park Drive

North Kingstown, RI 02852

9489 0090 0027 6111 8598 61 Laporte

*mailed 5/5/22*

Dear Mr. Laporte,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 1308011. This application was originally denied on January 14, 2022, due to a failure to demonstrate a proper showing of need. Specifically, you already hold an active permit to carry a concealed weapons permit, issued by the town of North Kingstown, RI. To issue you a second permit would be duplicative.

Subsequent to that decision, you requested and received an appointment for an interview through your attorney Mr. Frank Saccoccio, to appeal the denial of your application. This appeal interview took place, via a video conference, on April 27, 2022. Present during this conference were your attorney Mr. Saccoccio, me, Deputy Chief Michael Figueiredo, Mr. Peter Trementozzi and Mr. Joseph Patton. Mr. Saccoccio informed me that you would not be personally attending the meeting. Per his request as your legal representative, Mr. Trementozzi and Mr. Patton, who were also appealing their denials, were allowed to participate in the same conference call as they were also represented by Mr. Saccoccio.

At the start of the meeting, I informed you and Mr. Saccoccio the purpose of the meeting was to allow you and Mr. Saccoccio to provide additional information or clarification to your application that would merit reconsideration of the initial denial of your application. It was also explained that this was not a judicial hearing or an administrative hearing subject to regulations under the Rhode Island Administrative Procedures Act, RIGL, §42-35-1, et seq.

During this meeting, Mr. Saccoccio stated he had several reasons why you should be granted a permit. While Mr. Saccoccio expressed general opinions about this Office's application procedures, other application denials he has appealed to the Rhode Island Supreme Court and his own legal theories, this letter will only address what can be construed as additional information which directly pertains to your application and the reason why it was denied

Mr. Saccoccio stated he believed denying your application because you already hold a permit issued by a town was not valid for the following reasons: his assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not

specify anywhere the criteria used for evaluating an application and specifically that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General; a denial by the Attorney General could result in a loss of unemployment and the inability to collect unemployment compensation; and an AG permit has a barcode on it that can be scanned to verify the validity of the permit.

 Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State. Additionally, the Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license-to-carry application process. You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license.

Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need.  Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue.

Included in your original denial letter was a copy of pages 4 and 5 of our application packet, which address factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents /PERMIT%20APPLICATION%202020.pdf (page 4-5). This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office.  Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*.

Mr. Saccoccio was asked specifically if you were required to carry a handgun for employment purposes. He stated that you were not required to do so. Therefor, a denial of your application would have no effect on your employment or your ability to collect unemployment benefits.

The fact that an AG permit has a barcode, and a municipal permit may or may not have one, has no relevance to an assessment of your need to carry a handgun. Neither you, nor Mr. Saccoccio, presented any factual circumstance as to how this directly related to your application.

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a license to carry a pistol or revolver, to affirm the initial denial of your application due to the fact that you have not provided a proper showing of need for a permit to be issued.

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

**EXHIBIT S**

Supreme Court

## Case Summary

### Case No. SU-2022-0133-MP

| | | | | | |
|---|---|---|---|---|---|
| **Richard Laporte v. Rhode Island Department of the Attorney General** | § § | | Location: | **Supreme Court** | |
| | | | Filed on: | **05/10/2022** | |

---

## Case Information

**Statistical Closures**                                          Case Type:   Miscellaneous Petition
02/15/2023   Permission Denied                          Case Status: **02/15/2023   Closed**

---

## Party Information

| | | |
|---|---|---|
| **Plaintiff** | **Laporte, Richard** | **SACCOCCIO, FRANK R.** *Retained* |
| **Defendant** | **Department of the Attorney General** | **FIELD, MICHAEL W.** *Retained* |
| | | **SADECK, KATHERINE CONNOLLY** *Retained* |

---

## Case Events

| Date | Event |
|---|---|
| 05/10/2022 | Petition for Writ of Certiorari<br>    Party:   Plaintiff Laporte, Richard |
| 10/19/2022 | Memorandum in Support/Opposition to Petition<br>    Party:   Plaintiff Laporte, Richard |
| 11/14/2022 | Entry of Appearance<br>    Party:   Attorney of Record SHEA, ANDREA |
| 11/14/2022 | Motion for Extension of Time<br>    Party:   Defendant Department of the Attorney General |
| 11/14/2022 | Motion for Ext of Time to File Memo Opposition to Petition<br>    Party:   Defendant Department of the Attorney General |
| 11/14/2022 | Motion for Extension of Time Granted by Clerk |
| 11/14/2022 | Motion for Extension of Time Granted by Clerk |
| 12/19/2022 | Objection to Petition<br>    Party:   Defendant Department of the Attorney General |
| 12/19/2022 | Appendix<br>    Party:   Defendant Department of the Attorney General |
| 01/18/2023 | Hard Copies Filed |
| 02/02/2023 | Entry of Appearance<br>    Party:   Attorney of Record SADECK, KATHERINE CONNOLLY |
| 02/02/2023 | Motion to Withdraw as Counsel |

**Supreme Court**
**Case Summary**

**Case No. SU-2022-0133-MP**

Party:   Attorney of Record SHEA, ANDREA

02/15/2023    
Order - Petition for Writ of Certiorari Denied

---

## Financial Information

---

**Plaintiff**    Laporte, Richard
| | |
|---|---|
| Total Financial Assessment | 150.00 |
| Total Payments and Credits | 150.00 |
| **Balance Due as of 11/26/2024** | **0.00** |

| 05/11/2022 | Transaction Assessment | | 150.00 |
|---|---|---|---|
| 05/11/2022 | Electronic Payment | Receipt # SU-2022-01272 | (150.00) |

**EXHIBIT T**



**Gmail**

Frank Saccoccio <frank.cslawoffice@gmail.com>

## Denial

1 message

**dan patterson** <shanbri@msn.com>
To: "frank.cslawoffice@gmail.com" <frank.cslawoffice@gmail.com>

Sat, Apr 30, 2022 at 12:40 PM

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

4/23/2022

**Daniel Patterson**

**332 S. County Trail**

**Exeter Rhode Island 02822**

Thank you for taking the time to apply for a concealed carry weapons permit through the Rhode Island Attorney General's office. Under Rhode Island General law 11-47-18. While reviewing your application it has come to our attention that you have applied for and received a concealed weapons permit, from Exeter Rhode Island

CCW permits issued by Rhode Island and Cities and Towns under Rhode Island General Laws 11-47-11 give the same authority to carry a concealed firearm in the state of Rhode Island as the office of the Attorney General. Due to the facts listed above you will not be issued a concealed carry weapons permit through the Attorney General's office at this time.

If there are any special circumstances that you would need the State Issued CCW permit, please notify this office via Email at CCWpermits@riag.ri.gov

Applications may be withdrawn without prejudice by emailing your withdrawal letter to CCWpermits@riag.ri.gov.

Respectfully,

Michael Figueiredo, Deputy Chief

Bureau of Criminal Identification and Investigations



PLAINTIFF'S
EXHIBIT
14
3-22-24
PENGAD 800-631-6989

Need more information, I got lots
Dan
Sent from my iPhone

# EXHIBIT U



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*
June 22, 2022



Mr. Daniel Patterson

332 S. County Trail

Exeter, RI 02822

Dear Mr. Patterson,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 2605000. This application was originally denied on April 23, 2022, due to a failure to demonstrate a proper showing of need. Specifically, you already hold an active permit to carry a concealed weapons permit, issued by the town of Exeter, RI. To issue you a second permit would be duplicative.

Subsequent to that decision, you requested and received an appointment for an interview through your attorney Mr. Frank Saccoccio, to appeal the denial of your application. This appeal interview took place, via audio conference, on June 22, 2022. Present during this conference were you, your attorney Mr. Saccoccio, me and Investigator John Rabbitt.

At the start of the meeting, I informed you and Mr. Saccoccio the purpose of the meeting was to allow you and Mr. Saccoccio to provide additional information or clarification to your application that would merit reconsideration of the initial denial of your application. It was also explained that this was not a judicial hearing or an administrative hearing subject to regulations under the Rhode Island Administrative Procedures Act, RIGL, §42-35-1, et seq.

During this meeting, Mr. Saccoccio stated he had several reasons why you should be granted a permit. While Mr. Saccoccio expressed general opinions about this Office's application and evaluation procedures, other application denials he has appealed to the Rhode Island Supreme Court and his own legal theories, this letter will only address what can be construed as additional information which directly pertains to your application and the reason why it was denied

Mr. Saccoccio stated he believed denying your application because you already hold a permit issued by a town was not valid for the following reasons: his assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit, referred to as "staggering" by Mr. Sacciccio, as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not specify anywhere the criteria used for evaluating an application and specifically that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General; having both permits allows a town issued permit holder to bypass the

holder to bypass the waiting period and background check imposed by State law and that the AG's permit may be needed for certain specific types of employment such as security.

Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State. Additionally, the Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license-to-carry application process. You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license.

Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue.

Similarly, having duplicate town and State issued permits so that you can avoid the State's mandatory background check and waiting period, is not a need it is a desire. Moreover, the Town of Exeter permit which you currently possess allows for this exception (i.e., to avoid the State's mandatory background check and waiting period) under R.I. Gen. Laws § 11-47-35.1, a permit issued by this Office would not. As such, this circumstance does not demonstrate a need or even a benefit for you.

Included in your original denial letter was a copy of pages 4 and 5 of our application packet, which address factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents /PERMIT%20APPLICATION%202020.pdf (page 4-5). This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*.

Both you and Mr. Saccoccio were asked specifically if you are required to carry a handgun for security or employment purposes. Neither of you offered a "yes" or "no" answer, instead Mr. Saccoccio referred back to your reasons as stated in your original application. You make no reference to working in the security sector in your original application. Therefor, a denial of your application would have no effect on your employment.

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a license to carry a pistol or revolver, to affirm the initial denial of your application due to the fact that you have not provided a proper showing of need for a permit to be issued.



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

**EXHIBIT V**

Supreme Court

## Case Summary

### Case No. SU-2022-0200-MP

| | | | | |
|---|---|---|---|---|
| **Daniel Patterson v. Rhode Island Department of the Attorney General** | § § | | Location: | **Supreme Court** |
| | | | Filed on: | **07/01/2022** |

---

## Case Information

**Statistical Closures**                                                Case Type:  Miscellaneous Petition
02/15/2023  Permission Denied                                 Case Status:  **02/15/2023  Closed**

---

## Party Information

**Plaintiff**    **Patterson, Daniel**                **SACCOCCIO, FRANK R.**
                                                      *Retained*

**Defendant**  **Department of the Attorney General**  **SADECK, KATHERINE CONNOLLY**
                                                      *Retained*

                                                      **FIELD, MICHAEL W.**
                                                      *Retained*

---

## Case Events

| | |
|---|---|
| 07/01/2022 | Petition for Writ of Certiorari<br>    Party:   Plaintiff Patterson, Daniel |
| 09/14/2022 | Hard Copies Filed |
| 09/14/2022 | Hard Copies Filed |
| 09/16/2022 | 📄<br>Papers Rejected, Notice Issued |
| 09/16/2022 | 📄<br>Memorandum Filed<br>    Party:   Plaintiff Patterson, Daniel |
| 09/19/2022 | Hard Copies Filed |
| 10/06/2022 | 📄<br>Entry of Appearance<br>    Party:   Defendant Department of the Attorney General |
| 10/07/2022 | 📄<br>Motion for Ext of Time to File Memo Opposition to Petition<br>    Party:   Defendant Department of the Attorney General |
| 10/11/2022 | 📄<br>Motion for Extension of Time<br>    Party:   Defendant Department of the Attorney General |
| 10/11/2022 | 📄<br>Motion for Ext of Time to File Memo Opposition to Petition<br>    Party:   Defendant Department of the Attorney General |
| 10/11/2022 | Motion for Extension of Time Granted by Clerk |
| 10/11/2022 | Motion for Extension of Time Granted by Clerk |
| 11/03/2022 | 📄<br>Motion for Ext of Time to File Memo Opposition to Petition<br>    Party:   Defendant Department of the Attorney General |

**Supreme Court**
**Case Summary**

Case No. SU-2022-0200-MP

| | |
|---|---|
| 11/03/2022 | Motion for Ext of Time to File Memo Opposition to Petition |
| 11/03/2022 | Motion for Extension of Time Granted by Clerk |
| 11/03/2022 | Motion for Extension of Time Granted by Clerk |
| 12/07/2022 | Objection to Petition |
| | Party: Defendant Department of the Attorney General |
| 12/07/2022 | Appendix |
| | Party: Defendant Department of the Attorney General |
| 01/18/2023 | Hard Copies Filed |
| 02/02/2023 | Entry of Appearance |
| | Party: Attorney of Record SADECK, KATHERINE CONNOLLY |
| 02/02/2023 | Motion to Withdraw as Counsel |
| | Party: Attorney of Record SHEA, ANDREA |
| 02/15/2023 | Order - Petition for Writ of Certiorari Denied |

---

## Financial Information

| | | | |
|---|---|---|---|
| **Plaintiff** | Patterson, Daniel | | |
| Total Financial Assessment | | | 150.00 |
| Total Payments and Credits | | | 150.00 |
| **Balance Due as of 11/26/2024** | | | **0.00** |
| 07/01/2022 | Transaction Assessment | | 150.00 |
| 07/01/2022 | Electronic Payment | Receipt # SU-2022-06150 | (150.00) |

# EXHIBIT W

In the Matter Of:

O'NEIL V. NERONHA

23-cv-00070-WES-PAS

---

**JOSEPH B. PATTON**

*February 27, 2024*

---



800.211.DEPO (3376)
*EsquireSolutions.com*

```
 1                UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF RHODE ISLAND
 2


 3


 4    Michael O'Neil, et al.

 5         Vs.              C.A. NO:  23-cv-00070-WES-PAS

 6    Peter F. Neronha, in his
      Official Capacity as
 7    Attorney General of the
      State of Rhode Island, and
 8    the State of Rhode Island

 9

10    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

11

12                    DEPOSITION OF
                    JOSEPH B. PATTON
13
                   FEBRUARY 27, 2024
14                      2:00 P.M.

15


16                150 SOUTH MAIN STREET
                  PROVIDENCE, RI   02903
17

18

19

20

21

22

23

24              ELIZABETH GREELEY
             CERTIFIED COURT REPORTER
25
```



JOSEPH B. PATTON                                       February 27, 2024
O'NEIL V. NERONHA                                                      4

 1              (DEPOSITION COMMENCED AT 2:00 P.M.)

 2                   JOSEPH B. PATTON

 3         Being duly sworn, deposes and testifies as

 4    follows:

 5                   THE REPORTER:  Would you state your name

 6    for the record, please?

 7                   THE WITNESS:  Joseph B. Patton,

 8    P-A-T-T-O-N.

 9                   EXAMINATION BY MR. ARGUIN

10         Q.  Good afternoon, Mr. Patton.  I'm James

11    Arguin.  I'm a Special Assistant Attorney General, and

12    I'm representing the Attorney General in this

13    proceeding.  With me is my colleague --

14                   MR. MEOSKY:  Paul Meosky, Special

15    Assistant Attorney General, also with the AG's office.

16         Q.  You've just been sworn in.  Have you ever

17    been deposed before?

18         A.  No.

19         Q.  Have you ever testified in court before?

20         A.  Once, yes.

21         Q.  How long ago was that?

22         A.  20 plus years.

23         Q.  Okay.  Just to refresh your recollection,

24    everything we're saying today is going to be taken

25    down by a stenographer.  So the stenographer prepares



 1   violence protective order for a family member or
 2   household member?
 3        A.  No.
 4        Q.  Have you ever reported a crime committed
 5   against you?
 6        A.  No.
 7        Q.  Have you ever committed a crime reported
 8   against a family member or household member?
 9        A.  No.
10        Q.  Apart from any reports you may have filed
11   with law enforcement, would you ever consider yourself
12   to have been a victim of a crime?
13        A.  No.
14        Q.  All right.  Let me ask you a few questions.
15   You filed your application for renewal of your
16   concealed carry permit with the Attorney General in
17   January of 2022; is that correct?
18        A.  I believe so, yes.
19        Q.  Do you recall, how many, have you ever
20   previously held -- let me rephrase that.  When was the
21   last license to carry that you received from the
22   Attorney General issued?
23        A.  The one I went for was a renewal, so it would
24   be four years before that.
25        Q.  When was your renewal; when did your last one



1      Q.  Does your current concealed weapon permit
2  issued by the Town of Foster allow you to carry a
3  handgun to and from your home?
4      A.  Yes.
5      Q.  Does your current concealed weapon permit
6  issued by the Town of Foster allow you to carry a
7  handgun while you're at work?
8      A.  Not at the Post Office, but yes.
9      Q.  Even at the Post Office, if your employer
10  allowed it, your permit would allow it, correct?
11      A.  Yes.
12      Q.  Certainly when you're on calls for your LLC,
13  your permit from the Town of Foster allows you to
14  carry a weapon --
15      A.  Yes.
16      Q.  -- on calls?  Can you also, does your permit
17  from the Town of Foster also allow you to carry a
18  handgun for any kind of sporting or recreational
19  activities?
20      A.  Yes.
21      Q.  Does your permit from the Town of Foster
22  allow you to carry a handgun in public?
23      A.  It's concealed, but yes.
24      Q.  Let me ask you about that:  What do you see
25  as the difference between open carry and concealed?



1   In terms of the benefit to you, why do you need an
2   open carry versus a concealed?
3       A.  I prefer concealed, so you're not advertising
4   you have a gun.
5       Q.  So what could you do differently if you had
6   the AG's license to carry that you can't do with your
7   current license to carry from Foster?
8       A.  I'm worried about my renewals, if they'll
9   take the town's instead of the state.
10      Q.  Which renewals are you worried about, the
11  ones out of state?
12      A.  Out of state, correct.
13      Q.  But to date, you haven't been denied any
14  license by any other state; is that correct?
15      A.  Correct.
16      Q.  All of your licenses with Connecticut,
17  New Hampshire and Florida remain valid?
18      A.  Correct.
19      Q.  As we've already established, the Connecticut
20  license doesn't expire until August 2026?
21      A.  Correct.
22      Q.  New Hampshire license doesn't expire until
23  August 31, 2026, correct?
24      A.  Correct.
25      Q.  Florida doesn't expire until May 13, 2028,



```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

     I, ELIZABETH GREELEY, a Notary Public, in and for the
 3   State of Rhode Island, duly commissioned and qualified
     to administer oaths, do hereby certify that the
 4   foregoing Deposition of Joseph B. Patton, a Plaintiff
     in the above-entitled cause, was taken before me on
 5   behalf of the Defendant, at the offices of the
     Attorney General, 150 South Main Street, Providence,
 6   Rhode Island on February 27, 2024, at 2:00 P.M.; that
     previous to examination of said witness, who was of
 7   lawful age, he was first sworn by me and duly
     cautioned to testify to the truth, the whole truth,
 8   and nothing but the truth, and that he thereupon
     testified in the foregoing manner as set out in the
 9   aforesaid transcript.

10   I further certify that the foregoing Deposition was
     taken down by me in machine shorthand and was later
11   transcribed by computer, and that the foregoing
     Deposition is a true and accurate record of the
12   testimony of said witness.

13   Pursuant to Rules 5(d) and 30(f) of the Federal Rules
     of Civil Procedure, original transcripts shall not be
14   filed in Court; therefore, the original is delivered
     to and retained by Defendant's Attorney, James Arguin.
15
     Reading and signing of the Deposition was waived by
16   the Witness and.

17   IN WITNESS WHEREOF, I have hereunto set my hand this
     6th day of March, 2024.
18

19

20                                  

21   _____
     ELIZABETH GREELEY, NOTARY PUBLIC
22   CERTIFIED COURT REPORTER
     MY COMMISSION EXPIRES:  04/07/2026
23

24

25
```



# EXHIBIT X



# STATE OF RHODE ISLAND

# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue • Cranston, RI 02920
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

1/25/2022



**Joseph Patton**                    ᕱᒪ ᒎᒪᑺᑺ ᑺᑺᑺᒪ ᒎᑌᘊᑌ ᑌᕼᒪᘊ ᕗᘊᑌᒪ

**7 Maple Rock RD**

**Foster Rhode Island 02825**

**Permit # 9811040**

Thank you for taking the time to apply for a concealed carry weapons permit through the Rhode Island Attorney Generals office. Under Rhode Island General law 11-47-18. While reviewing your application it has come to our attention that you have applied for and received a concealed weapons permit, from **Foster,** Rhode Island

CCW permits issued by Rhode Island and Cities and Towns under Rhode Island General Laws 11-47-11 give the same authority to carry a a concealed firearm as the office of the Attorney General. Due to the facts listed above you will not be issued a concealed carry weapons permit through the Attorney Generals office at this time.

If there are any special circumstances that you would need the State Issued CCW permit, please notify this office via Email at CCWpermits@riag.ri.gov

Applications may be withdrawn without prejudice by emailing your withdrawal letter to CCWpermits@riag.ri.gov.

Respectfully,

Michael J. Figueiredo, Deputy Chief

Bureau of Criminal Identification and Investigations

**EXHIBIT Y**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*
May 5, 2022



Mr. Joseph Patton

7 Maple Rock Road

Foster, RI  02825

Dear Mr. Patton,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 9811040. This application was originally denied on January 25, 2022, due to a failure to demonstrate a proper showing of need. Specifically, you already hold an active permit to carry a concealed weapons permit, issued by the town of Foster, RI. To issue you a second permit would be duplicative.

Subsequent to that decision, you requested and received an appointment for an interview through your attorney Mr. Frank Saccoccio, to appeal the denial of your application. This appeal interview took place, via a video conference, on April 27, 2022. Present during this conference were you, me, your attorney Mr. Saccoccio, Deputy Chief Michael Figueiredo and Mr. Peter Trementozzi. Per your request and that of Mr. Saccoccio, Mr. Trementozzi, who was also appealing his denial, was allowed to participate in the same conference call as he was also represented by Mr. Saccoccio.

At the start of the meeting, I informed you and Mr. Saccoccio the purpose of the meeting was to allow you and Mr. Saccoccio to provide additional information or clarification to your application that would merit reconsideration of the initial denial of your application. It was also explained that this was not a judicial hearing or an administrative hearing subject to regulations under the Rhode Island Administrative Procedures Act, RIGL, §42-35-1, et seq.

During this meeting, Mr. Saccoccio stated he had several reasons why you should be granted a permit. While Mr. Saccoccio expressed general opinions about this Office's application procedures, other application denials he has appealed to the Rhode Island Supreme Court and his own legal theories, this letter will only address what can be construed as additional information which directly pertains to your application and the reason why it was denied

Mr. Saccoccio stated he believed denying your application because you already hold a permit issued by a town was not valid for the following reasons: his assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not specify anywhere the criteria used for evaluating an application and specifically that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General; a denial by the

Attorney General could result in a loss of unemployment and the inability to collect unemployment compensation; and an AG permit has a barcode on it that can be scanned to verify the validity of the permit.

Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State. Additionally, the Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license-to-carry application process. You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license.

Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue.

Included in your original denial letter was a copy of pages 4 and 5 of our application packet, which address factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents /PERMIT%20APPLICATION%202020.pdf (page 4-5). This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*.

Mr. Saccoccio was asked specifically if you were required to carry a handgun for employment purposes. He stated that you were not required to do so. Therefor, a denial of your application would have no effect on your employment or your ability to collect unemployment benefits.

The fact that an AG permit has a barcode, and a municipal permit may or may not have one, has no relevance to an assessment of your need to carry a handgun. Neither you, nor Mr. Saccoccio, presented any factual circumstance as to how this directly related to your application.

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a license to carry a pistol or revolver, to affirm the initial denial of your application due to the fact that you have not provided a proper showing of need for a permit to be issued.

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

**EXHIBIT Z**

Supreme Court

## Case Summary

### Case No. SU-2022-0134-MP

| | | | | |
|---|---|---|---|---|
| **Joseph Patton v. Rhode Island Department of the Attorney General** | § § | | Location: | **Supreme Court** |
| | | | Filed on: | **05/10/2022** |

---

## Case Information

**Statistical Closures**
02/15/2023   Permission Denied

Case Type:   Miscellaneous Petition
Case Status:   **02/15/2023   Closed**

---

## Party Information

| **Plaintiff** | **Patton, Joseph** | **SACCOCCIO, FRANK R.** *Retained* |
|---|---|---|
| **Defendant** | **Department of the Attorney General** | **SADECK, KATHERINE CONNOLLY** *Retained* |
| | | **FIELD, MICHAEL W.** *Retained* |

---

## Case Events

| | |
|---|---|
| 05/10/2022 | Petition for Writ of Certiorari  Party:   Plaintiff Patton, Joseph |
| 09/14/2022 | Hard Copies Filed |
| 09/14/2022 | Hard Copies Filed |
| 09/16/2022 | Papers Rejected, Notice Issued |
| 09/16/2022 | Memorandum Filed  Party:   Plaintiff Patton, Joseph |
| 09/19/2022 | Hard Copies Filed |
| 10/06/2022 | Entry of Appearance  Party:   Attorney of Record SHEA, ANDREA |
| 10/07/2022 | Motion for Ext of Time to File Memo Opposition to Petition  Party:   Defendant Department of the Attorney General |
| 10/11/2022 | Motion for Extension of Time  Party:   Defendant Department of the Attorney General |
| 10/11/2022 | Motion for Ext of Time to File Memo Opposition to Petition  Party:   Defendant Department of the Attorney General |
| 10/11/2022 | Motion for Extension of Time Granted by Clerk |
| 10/11/2022 | Motion for Extension of Time Granted by Clerk |
| 11/03/2022 | Motion for Ext of Time to File Memo Opposition to Petition  Party:   Defendant Department of the Attorney General |

**Supreme Court**

### Case Summary

**Case No. SU-2022-0134-MP**

| | |
|---|---|
| 11/03/2022 | Motion for Ext of Time to File Memo Opposition to Petition<br>Party:   Defendant Department of the Attorney General |
| 11/03/2022 | Motion for Extension of Time Granted by Clerk |
| 11/03/2022 | Motion for Extension of Time Granted by Clerk |
| 12/07/2022 | Objection to Petition<br>Party:   Defendant Department of the Attorney General |
| 12/07/2022 | Appendix<br>Party:   Defendant Department of the Attorney General |
| 01/18/2023 | Hard Copies Filed |
| 02/02/2023 | Entry of Appearance<br>Party:   Attorney of Record SADECK, KATHERINE CONNOLLY |
| 02/02/2023 | Motion to Withdraw as Counsel<br>Party:   Attorney of Record SHEA, ANDREA |
| 02/15/2023 | Order - Petition for Writ of Certiorari Denied |

---

### Financial Information

---

**Plaintiff**     Patton, Joseph

| | | |
|---|---|---|
| Total Financial Assessment | | 150.00 |
| Total Payments and Credits | | 150.00 |
| **Balance Due as of 11/26/2024** | | **0.00** |
| 05/11/2022   Transaction Assessment | | 150.00 |
| 05/11/2022   Electronic Payment | Receipt # SU-2022-01275 | (150.00) |

**EXHIBIT AA**

```
1                 UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
2


3


4   Michael O'Neil, et al.

5        Vs.              C.A. NO:  23-cv-00070-WES-PAS

6   Peter F. Neronha, in his
    Official Capacity as
7   Attorney General of the
    State of Rhode Island, and
8   the State of Rhode Island


9


10  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


11


12                    DEPOSITION OF
               PETER ANTHONY TREMENTOZZI, III

13


14                  FEBRUARY 26, 2024
                       10:00 A.M.

15


16


17               150 SOUTH MAIN STREET
                 PROVIDENCE, RI  02903

18


19


20


21


22


23


24               ELIZABETH GREELEY
             CERTIFIED COURT REPORTER

25
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1              APPEARANCES OF COUNSEL

 2   On Behalf of the Plaintiff, Michael O'Neil,
                                        et al:
 3        SACCOCCIO LAW
          BY:  FRANK SACCOCCIO, ESQUIRE
 4        928 Atwood Avenue
          Johnston, RI  02919
 5           -AND-
          STRAUSS, FACTOR, LANG & LYONS
 6        BY:  THOMAS LYONS, ESQUIRE
          One Davol Square
 7        Suite 305
          Providence, RI  02903

 8

 9

10

11   On Behalf of the Defendant, the Peter Neronha and
                             the State of Rhode Island:
12        STATE OF RHODE ISLAND
          DEPT. OF ATTORNEY GENERAL
13        BY:  JAMES ARGUIN, ESQUIRE
          BY:  PAUL MEOSKY, ESQUIRE
14        150 South Main Street
          Providence, RI  02903
15

16

17

18

19

20

21

22

23

24

25
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1                    INDEX OF EXAMINATION

 2    WITNESS:  PETER ANTHONY TREMENTOZZI, III

 3    EXAMINATION                                       PAGE
      BY MR. ARGUIN                                       4
 4    BY MR. SACCOCCIO                                   34

 5

 6

 7

 8

 9

10

11                    INDEX TO EXHIBITS
                        (None Offered)
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1              (DEPOSITION COMMENCED AT 10:00 A.M.)

 2                  PETER ANTHONY TREMENTOZZI, III

 3        Being duly sworn, deposes and testifies as

 4     follows:

 5              THE REPORTER:  Would you state your name

 6     for the record, please?

 7              THE WITNESS:  Peter Anthony Trementozzi,

 8     III, T-R-E-M-E-N-T-O-Z-Z-I.

 9                  EXAMINATION BY MR. ARGUIN

10        Q.  Thank you.  Good morning, Peter.

11        A.  Nice to meet you.

12        Q.  May I call you Mr. Trementozzi, or Peter?

13        A.  Peter is fine.

14        Q.  I'm James Arguin.  I'm a Special Assistant

15     Attorney General for the State of Rhode Island.

16              (OFF THE RECORD)

17              MR. ARGUIN:  The witness was sworn.  I

18     was just introducing myself.

19        Q.  I'm James Arguin, Special Assistant Attorney

20     General for the State of Rhode Island representing the

21     Attorney General in this lawsuit.  Mr. Trementozzi,

22     have you ever been deposed before?

23        A.  No, sir.

24        Q.  Have you ever testified in court before?

25        A.  Not since I was 12.
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1          Q.   Okay.  Now, what you may not recall from your
2    last time testifying, a stenographer takes down
3    everything that is said, just like in court.  So the
4    stenographer is present today and will record our
5    conversation, our questions this morning; is that
6    okay?
7          A.   That's fine.
8          Q.   Now, just like in court, you were just sworn
9    to give testimony.  Do you understand that your
10   testimony here today is under the pains and penalties
11   of perjury?
12         A.   Yes.
13         Q.   Although this is a much less formal setting
14   than a courtroom, you understand that your testimony
15   during this deposition is the same as if you were in
16   court?
17         A.   Yes.
18         Q.   Now, the way we'll proceed is I'll ask
19   questions to you.  Please just wait until I finish
20   before you start answering; do you understand?
21         A.   Yes, sir.
22         Q.   It's also important that whenever I ask a
23   question you answer yes or no, verbalize it.
24         A.   Okay.
25         Q.   The stenographer can't take down any kind of



```
 1   nods, or shakes, or nonverbal expressions.
 2        A.  Right.
 3        Q.  At the same time, I'll wait for you to answer
 4   the question.  I'll wait for you to provide your
 5   response before I ask the next question, okay?
 6        A.  Yes.
 7        Q.  If you don't hear a question and you would
 8   like me to repeat it, please just say so.  I'm happy
 9   to do so; is that okay?
10        A.  Yes.
11        Q.  Also, if there is something that you do not
12   understand with my question, just ask me to clarify;
13   I'm happy to do that as well.
14        A.  Okay.
15        Q.  Now, it's very normal during the course of
16   the deposition that one of your attorneys may object
17   to any question I may ask, but please, unless they
18   instruct you not to answer, you're still required to
19   provide an answer.
20        A.  Okay.
21        Q.  Also, while I'm asking questions, please
22   provide your response fully.  You may consult your
23   attorney, but not while a question is pending; is that
24   clear?
25        A.  Yes.
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1        Q.  So if I ask a question and you want to
2    consult your attorney, please provide your answer
3    first, and then we can take a break, and you can
4    consult with your attorney.
5        A.  Okay.
6        Q.  Now, some of the questions that we may ask
7    today may be based on your best recollection.  It's
8    important to distinguish between your best
9    recollection and a guess.  So simply stated, best
10   recollection is something that you have a reason to
11   know or basis for knowing, whereas a guess, in
12   contrast, is something you may have no idea about.
13       For example, you could probably estimate the
14   length of this table that you're sitting at today,
15   because you can see it; you can observe it.  But if I
16   asked you something else, like what is the length of
17   my table at home, you probably have no basis for
18   knowing that, so you would be just guessing.
19       When I ask for best recollection, please just
20   keep that distinction in mind.  I don't want you to
21   guess.  I just want your best recollection.
22       A.  Okay.
23       Q.  Now, what we will be doing today is asking
24   some questions about your background and specifically
25   your application for a license to carry a pistol or



1    revolver from the Attorney General.

2         A.   Okay.

3         Q.   Before I begin asking any background

4    questions, is there any reason why you may not be able

5    to answer a question fully or accurately this morning?

6         A.   None that I can think of, no.

7         Q.   Are there any circumstances that you're aware

8    of that could in some way impair your judgment or

9    ability to respond?

10        A.   No, sir.

11        Q.   Okay.  Now what we'll do is turn to some

12   background questions, and then get into the reason for

13   your application.

14        A.   Okay.

15             MR. ARGUIN:  Let me pause and have my

16   colleague introduce himself, who just walked into the

17   room.

18             MR. MEOSKY:  Hi.  I'm Paul Meosky,

19   M-E-O-S-K-Y.  I'm with the AG's office.  Sorry I'm

20   late.

21        Q.   Okay.  Where do you currently reside?

22        A.   I currently reside at 173 Brown Avenue in

23   Johnston, Rhode Island.

24        Q.   Do you have any other homes?

25        A.   No, sir.



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1        Q.  How long have you lived on Brown Avenue in
2   Johnston?
3        A.  12 years now, approximately.  Not exact.
4        Q.  Are there any other household members living
5   there with you?
6        A.  Yes.
7        Q.  Who else?  Just by relationship is fine.
8        A.  My wife and my two children.
9        Q.  Okay.  How old are your children?
10       A.  16 and 14.
11       Q.  Are you presently employed?
12       A.  Yes.
13       Q.  Where are you employed?
14       A.  I'm employed by General Dynamics Electric
15   Boat.
16       Q.  Where is that company located?
17       A.  165 Dillabur Avenue in North Kingstown.
18       Q.  How long have you been employed by General
19   Dynamics Electric Boat?
20       A.  22 years.
21       Q.  What position do you hold with General
22   Dynamics?
23       A.  Right now I'm an operations supervisor for
24   piping.
25       Q.  Okay.  Just briefly, what does that entail?



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1        A.  I'm responsible to put a crew of pipefitters
 2   to work, and make sure they accomplish the goals of,
 3   obviously, building a submarine.
 4        Q.  Okay.  Is that the general nature of the
 5   business where you work at your facility?
 6        A.  Yes.
 7        Q.  Building submarines?
 8        A.  We build submarines.
 9        Q.  How long have you held your current position
10   as operations supervisor?
11        A.  Seven months.
12        Q.  What about before that?
13        A.  I was also an NDT instructor.
14        Q.  What is NDT?
15        A.  Nondestructive testing, sorry.
16        Q.  Noun destructive?
17        A.  Nondestructive testing.
18        Q.  How long did you hold that position?
19        A.  About two years.
20        Q.  What were the basic responsibilities of that
21   position?
22        A.  Basically I was a teacher, teaching
23   nondestructive testing.
24        Q.  Just familiarize me, what is nondestructive
25   testing?
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1        A.   Basically it's a weld inspection where you

 2   make sure the weld isn't going to break without

 3   actually destroying the weld.

 4        Q.   Now, does General Dynamics make it a

 5   condition of your employment to carry a handgun to

 6   work?

 7        A.   No, sir.

 8        Q.   Even if it's not a condition of employment,

 9   have any of your supervisors at General Dynamics asked

10   you to carry a handgun to work?

11        A.   No, sir.

12        Q.   Have any of your supervisors at General

13   Dynamics ever told you that it's okay or permissible

14   for you to bring a gun to work?

15        A.   No, sir.

16        Q.   Now, apart from General Dynamics, do you have

17   any other employment?

18        A.   I do.

19        Q.   Such as?

20        A.   I work for Big Bear Hunting and Fishing.

21        Q.   Any others?

22        A.   Yes.  I own Leatherneck Ammunition Company,

23   L-E-A-T-H-E-R-N-E-C-K, Ammunition Company.

24        Q.   Any others?

25        A.   No, sir.
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1      Q.  What about, where is Big Bear Hunting and
2  Fishing located?
3      A.  It's 401 Putnam Pike.  That's in Glocester.
4      Q.  Glocester?
5      A.  Rhode Island.
6      Q.  Rhode Island.  What is the nature of Big Bear
7  Hunting and Fishing, the business?
8      A.  We sell guns, ammunition, and fishing
9  supplies.
10     Q.  How long have you been employed there?
11     A.  Two and-a-half years.
12     Q.  What is your position there?
13     A.  I'm a salesman.
14     Q.  Is there an area of specialization, in terms
15  of what you sell?
16     A.  I typically stick to the firearms side.
17     Q.  What kind of, do you know generally what the
18  volume of business is there; what kind of firearms are
19  you selling?
20     A.  Everything and anything that's legal.
21  Anything from handguns to hunting rifles to muzzle
22  loading to, we even sell archery supplies.
23     Q.  Does Big Bear Hunting and Fishing require you
24  to carry a gun to work?
25     A.  Not required, but expected.



PETER ANTHONY TREMENTOZZI, III                February 26, 2024
O'NEIL vs NERONHA

```
 1        Q.  Why is it expected?

 2        A.  Because we deal in large volumes of cash

 3   sometimes.  We -- I mean, we're a gun store, so I

 4   mean, with all the things that are going on, it's

 5   happening more and more that gun stores are getting

 6   robbed.

 7        Q.  Who at Big Bear conveyed this expectation to

 8   you?

 9        A.  My boss.

10        Q.  What is that person's name?

11        A.  Will.  Oh, God, what is Will's last name?

12   That's bad.  I've known the guy for two and-a-half

13   years.  Will, wow, that's bad.  You'll have to excuse

14   me; I'm having a moment here.

15             MR. ARGUIN:  Take your time.

16             MR. LYONS:  If it comes to you any time

17   during the deposition, you don't have to do it right

18   now.

19        Q.  We can keep going, but we'll probably come

20   back to it.

21        A.  Okay.

22        Q.  What is Will's position at the company?

23        A.  He's a partial owner.  The other owner is

24   Andre Mendes.  Oh, it's Will Worthy.

25        Q.  Will Worthy, okay.  Do you want to spell that
```



PETER ANTHONY TREMENTOZZI, III                        February 26, 2024
O'NEIL vs NERONHA

 1  for the record, so we get it right?

 2        A.  W-O-R-T-H-Y.

 3        Q.  The other one was?

 4        A.  Andre Mendes.

 5        Q.  M-E-N-D-E-S or Z?

 6        A.  I believe it's an S.

 7        Q.  How did Will Worthy convey this expectation

 8  for employees to carry a gun to the workplace to you?

 9        A.  It was never really conveyed in the sense

10  that he told us, Hey, I want you guys to be armed at

11  work.  It's more expected of us, being in the business

12  that we're in.

13        Q.  All right.  Did Mr. Worthy ever say directly,

14  Please bring a gun to work?

15        A.  No, sir, he did not.

16        Q.  Okay.  What about Mr. Mendes; did he ever

17  make that statement to you, Please bring a gun to

18  work?

19        A.  No, sir.

20        Q.  Did they ever indicate that if you failed to

21  bring a gun to work you could not continue working for

22  Big Bear Hunting and Fishing?

23        A.  No, sir.

24        Q.  How do you draw, how do you make the

25  conclusion that that's an expectation of work; what



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

 1    are you basing that on?

 2         A.   Typically, I mean, every once in awhile

 3    they'll ask what gun I'm carrying, so...

 4         Q.   Okay.  When was the last time they asked you

 5    that?

 6         A.   A couple of weeks ago.

 7         Q.   Can you estimate, was it a month or more than

 8    a month?

 9         A.   About two weeks ago.

10         Q.   How did that conversation come about; what

11    were the circumstances?

12         A.   Well, they didn't approach me so much as we

13    were standing at the counter.  He said, What are you

14    carrying today?

15         Q.   And what were you carrying?

16         A.   A Smith and Wesson M&P and 45 ACP.

17         Q.   Were you carrying concealed or open?

18         A.   At that point it was concealed.

19         Q.   Any other conversations recently with either

20    Mr. Worthy or Mr. Mendes about carrying a gun to work?

21         A.   Not in the last couple of weeks, no.

22         Q.   Is it fair to say that Mr. Worthy, when he

23    asked you what type you were carrying, he knew you

24    were carrying a gun, or regularly carry a gun?

25         A.   Yes.



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1        Q.  Is it a fact that they wanted, they encourage
 2   you to carry a gun, or that it's okay for you to carry
 3   a gun?
 4        A.  I would say they're encouraging us to carry a
 5   gun.
 6        Q.  Okay.  What other statements or other
 7   circumstances can you point to that would show that
 8   kind of encouragement?
 9        A.  None that I can think of at the moment.
10        Q.  So by encouraging, is the fact that they
11   asked you what you're carrying --
12        A.  Yes.
13        Q.  Did they make any comment in response when
14   you told them what you were carrying?
15        A.  They said it was nice.
16        Q.  I'm sorry, it was nice?
17        A.  Nice.
18        Q.  Okay.  Any explanation as to why they thought
19   it was nice?
20        A.  No.
21        Q.  Now, what about this Leatherneck Ammunition
22   Company; where is that located?
23        A.  I am actually in the same, I am in a detached
24   building at 401 Putnam Pike.  That's also in
25   Glocester, Rhode Island.
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1        Q.  How long have you worked at Leatherneck
2    Ammunition Company?
3        A.  Since last May.
4        Q.  So May 2023?
5        A.  Yes.
6        Q.  What is your position with Leatherneck?
7        A.  I'm the owner.
8        Q.  Has the company, when did the company open
9    then?
10       A.  In May.
11       Q.  In May 2023, okay.
12       A.  Yes.
13       Q.  What is the nature of Leatherneck Ammunition
14   Business?
15       A.  I manufacture and remanufacture ammunition.
16       Q.  What kind of ammunition?
17       A.  All kinds of ammunition, pistol and rifle
18   ammunition.
19       Q.  Do you sell firearms there?
20       A.  No, sir.
21       Q.  Do you distribute firearms there?
22       A.  No, sir.
23       Q.  Is this a commercial operation or retail
24   operation?
25       A.  Commercial.



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1        Q.   What is the nature of your business; are you

2    selling to other firearm stores or to individual

3    clients?

4        A.   I sell more of a wholesale through Big Bear.

5        Q.   Could you explain that in more detail; what

6    does that mean?

7        A.   I manufacture it.  I sell it to them.  They

8    sell it to the public.

9        Q.   Again, we're talking about ammunition?

10       A.   Yes, ammunition.

11       Q.   This is your own company, so there is no one

12   to tell you whether you can bring a gun to work or

13   not?

14       A.   Yes.

15       Q.   Do you regularly bring a gun to work?

16       A.   Yes.

17       Q.   What kind of gun do you usually carry to

18   Leatherneck Ammunition?

19       A.   My Smith and Wesson M&P and 45 or Sig Sauer

20   P365.

21       Q.   Do you carry those as concealed weapons, or

22   as open carry?

23       A.   That depends.

24       Q.   What does it depend on?

25       A.   Typically when I'm in my shop, it's exposed.



1    If I go outside, it would mostly be concealed.

2        Q.   Sorry.   It's concealed when?

3        A.   Typically when I'm outside my shop.   If I'm

4    in the parking lot.

5        Q.   Okay.   But when you're in your shop, you

6    carry open?

7        A.   Yes.

8        Q.   I think I already asked, any other

9    employment, besides these, General Dynamics, Big Bear,

10   and Leatherneck?

11       A.   Not sure if you would consider it employment,

12   but I am a volunteer firefighter in Scituate.

13       Q.   Okay.   When did you start becoming a

14   volunteer firefighter in Scituate?

15       A.   October of 2015.

16       Q.   What kind of position do you hold; is there a

17   title?

18       A.   I'm just a firefighter.

19       Q.   Firefighter, okay.   How often are you called

20   upon to, for your volunteer services?

21       A.   It depends.   Usually I am there for an

22   overnight on a Friday night.   I'll show up and stay

23   the night, because I'm out of town.   Sometimes I'll

24   respond for things during the day if I'm home.

25       Q.   How much would you estimate, say, in the past



PETER ANTHONY TREMENTOZZI, III                              February 26, 2024
O'NEIL vs NERONHA

```
 1   month how often are you volunteering with the fire
 2   department?
 3        A.   Four days per month on the Friday night.
 4        Q.   Four days per month?
 5        A.   Four days per month.
 6        Q.   Has anyone at the Scituate Fire Department
 7   required you to carry a gun to work?
 8        A.   No, sir.
 9        Q.   Has anyone at the Scituate Fire Department
10   encouraged you to carry a gun to work?
11        A.   No, sir.
12        Q.   Has anyone at the Scituate Fire Department
13   said it's okay to carry a gun to work?
14        A.   I never asked the question.
15        Q.   Okay.  Do you carry a gun to work?
16        A.   No, sir.
17        Q.   To Scituate Fire Department?
18        A.   No, sir.
19        Q.   All right.  I want to shift now to your
20   application to the Attorney General.  Do you recall
21   filing your application with the Attorney General for
22   a license to carry?
23        A.   Yes, sir.
24        Q.   Do you recall that the application asked,
25   standard form application asked a series of questions
```



PETER ANTHONY TREMENTOZZI, III                February 26, 2024
O'NEIL vs NERONHA

 1   about past criminal records?

 2        A.  Yes, sir.

 3        Q.  Do you recall that when you filled out your

 4   application with the AG you answered no to questions

 5   about whether you had any criminal record?

 6        A.  Yes, sir.

 7        Q.  Is that correct?

 8        A.  Yes.

 9        Q.  Has anything changed since the time you filed

10   that application?

11        A.  No, sir.

12        Q.  So it remains true that you have no criminal

13   record?

14        A.  Yes, sir.

15        Q.  No arrests?

16        A.  No arrests.

17        Q.  No citations or summons?

18        A.  No, sir.

19        Q.  No pleas to any kind of criminal charges?

20        A.  No, sir.

21        Q.  Have you ever been subject to a domestic

22   violence protective order for a family member or

23   household member?

24        A.  No, sir.

25        Q.  Has anyone, or I should say, have you ever



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

 1 | reported a crime committed against you?

 2 |      A.  No, sir.

 3 |      Q.  What about, have you ever reported a crime

 4 | committed against a family member?

 5 |      A.  No, sir.

 6 |      Q.  What about against any of your property or

 7 | your business?

 8 |      A.  No, sir.

 9 |      Q.  Apart from any reports you filed or you may

10 | have filed, have you ever considered yourself to be a

11 | victim of a crime?

12 |      A.  No, sir.

13 |      Q.  Now, you applied to the Rhode Island Attorney

14 | General to renew your license to carry a pistol or

15 | revolver, correct?

16 |      A.  Yes.

17 |      Q.  When did your last license to carry issued by

18 | the Attorney General expire, do you recall?

19 |      A.  I believe it was 2020.

20 |      Q.  Do you recall approximately the month?

21 |      A.  Actually, I have it.

22 |      Q.  Okay.  We're talking here about the AG

23 | license, right?

24 |      A.  Yes.  So it expired March 25 of, actually,

25 | 2022.  Sorry.



PETER ANTHONY TREMENTOZZI, III                February 26, 2024
O'NEIL vs NERONHA

```
 1              MR. LYONS:  Let the record reflect that
 2   the witness is checking his license, which he was
 3   carrying in his wallet.
 4        Q.  So when did you file your renewal application
 5   with the Attorney General?
 6        A.  I believe it was probably January.
 7        Q.  2022, correct?
 8        A.  Yes, sir.
 9        Q.  Do you recall when the Attorney General
10   denied your application?
11        A.  Not the exact date.  Sometime at the end of
12   February.
13        Q.  Would it refresh your recollection, in your
14   complaint you indicated it was March 12?
15        A.  Okay.
16        Q.  Now, since that denial in 2022, have you
17   filed any new application with the Attorney General
18   for a license to carry?
19        A.  I have not.
20        Q.  Do you currently hold any license to carry or
21   firearms permit issued by any city or town in
22   Rhode Island?
23        A.  I do.
24        Q.  Where do you hold, which town or city issued
25   that license?
```



```
1          A.   The Town of Scituate, Rhode Island.

2          Q.   Do you recall when that license was issued?

3          A.   I can check that one, too.  April 23 of 2020.

4          Q.   When does that one expire?  Four years later?

5          A.   April 23 of 2024.

6               MR. LYONS:  Again, let the record reflect

7     the witness was checking his permit in his wallet.

8          Q.   Now, that expiration date is coming up soon,

9     April 23, 2024.  Do you have any current plans to

10    renew that application?

11         A.   I do.

12         Q.   Have you submitted a renewal application?

13         A.   I have.

14         Q.   What is the status of your renewal

15    application?

16         A.   The police chief in Scituate has decided

17    he's not going to renew my permit, because I am not a

18    resident of Scituate.

19         Q.   When did you receive that decision?

20         A.   I got a phone call about three weeks ago.

21         Q.   The stated reason was you're not a resident

22    of Scituate?

23         A.   I am not a resident of the Town of Scituate.

24         Q.   Okay.  Have you, you have not received a

25    formal written response to that permit application?
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1        A.   No, sir.  I have an appointment tomorrow.

2        Q.   To follow up with the Scituate Police?

3        A.   With the Scituate Police, yes.

4        Q.   Apart from Scituate, do you have any other

5   permits, firearms permits or licenses issued by any

6   other town in Rhode Island?

7        A.   No, sir.

8        Q.   Do you have any current plans to file any

9   applications in any other city or town in

10  Rhode Island?

11       A.   Not at the moment, no.

12       Q.   Have you ever applied for a permit in your

13  town of residence, Johnston?

14       A.   No, sir.

15       Q.   Do you understand that if your Scituate

16  permit is not renewed, you could reapply with the

17  Attorney General for a firearm license to carry from

18  the Attorney General?

19       A.   I did not know that, no.

20       Q.   Now, do you currently hold any federal

21  firearms licenses issued by the Bureau of Alcohol,

22  Tobacco and Firearms?

23       A.   I do.

24       Q.   What kind of license do you hold with them?

25       A.   Collector of curios and relics.



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
1          Q.   When was that license issued?
2          A.   I don't recall.  The first time was, I
3   believe, 2016.
4          Q.   Do you know when it expires?
5          A.   I honestly don't know.
6          Q.   What does that license allow you to do?
7          A.   It allows me to acquire and dispose of curio
8   and relic firearms without having to go through a
9   firearms dealer.
10         Q.   It's not a license to carry then?
11         A.   No, sir.
12         Q.   So it has no impact on your ability to open
13  carry or conceal carry?
14         A.   No, sir.  I also have an 06 federal firearms
15  license.  It allows me to manufacture and sell
16  ammunition.
17         Q.   What is that license called?
18         A.   It's just a federal firearms license to
19  manufacture ammunition.
20         Q.   That's related to your business?
21         A.   Yes, sir.
22         Q.   Do you know when that license was issued?
23         A.   That was issued in May of last year, May of
24  2023.
25         Q.   Okay.  Do you know how long it's current for?
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1        A.   Until 2025 or '27.  I actually have that one.
2   Actually, sorry, it's June 1 of 2026 it expires.  So
3   it was issued June 1, 2023.  It's good for three
4   years.
5        Q.   Again, does that license have any impact on
6   your ability to carry a weapon?
7        A.   No, sir.
8        Q.   It's strictly to the ammunitions?
9        A.   Yes.
10        Q.   What about any other state; do you hold
11   licenses to carry in any other states?
12        A.   I do.
13        Q.   Which states?
14        A.   New Hampshire.
15        Q.   Any others?
16        A.   Florida.
17        Q.   Any others?
18        A.   No, sir.
19        Q.   Let's start with Florida.  When, do you
20   recall when that license was issued?
21        A.   That license was issued, let's see, it
22   doesn't tell me when it was issued.
23        Q.   Does it tell you when it expires?
24        A.   It tells me it expires 4/23 of 2026.  These
25   are good for six years, so it had to be issued in



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

 1  2020.

 2       Q.  Okay.  2026 is some time away, but do you

 3  have any current plans to renew that applications?

 4       A.  Yes, sir.

 5       Q.  What does that license allow you to do?

 6       A.  It allows me to carry a firearm when I'm in

 7  Florida concealed.

 8       Q.  So that's a concealed carry license?

 9       A.  Well, it says concealed weapon firearm

10  license, because it covers more than just firearms.

11       Q.  But does it allow you open carry of a

12  handgun?

13       A.  No, sir.

14       Q.  What about the New Hampshire license; do you

15  recall when that was issued?

16       A.  This one was issued September 30 of 2023.

17       Q.  Okay.  When does that one expire?

18       A.  September 30 of 2028.

19            MR. LYONS:  Again, the witness is, as

20  with the Florida license, is checking the licenses

21  which he has in his wallet.

22       Q.  Did you previously hold licenses in Florida

23  or New Hampshire?  Are these the first licenses, these

24  current licenses that you just discussed in Florida,

25  Florida expires in 2026; did you hold a license before



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

 1  that in Florida?

 2        A.  No, sir.  Not before 2020 in Florida.

 3        Q.  What about New Hampshire, before 2023 when

 4  you applied?

 5        A.  I did.  New Hampshire, I must have gotten

 6  New Hampshire in '20 -- well, it had to be before

 7  that.

 8        Q.  So sometime before -- well, if you got your

 9  new license in 2023, so sometime before '23?

10        A.  Well, New Hampshire has been renewed several

11  times.

12        Q.  Let me ask you that:  We don't need exact

13  dates.  When you went to renew your New Hampshire

14  license, did you ever have to disclose the AG's

15  March 2022 denial of your license to carry?

16        A.  Yes, sir.

17        Q.  Is that required by the New Hampshire form?

18        A.  Yes, sir.

19        Q.  Did New Hampshire approve your license?

20        A.  They did.

21        Q.  Knowing that?  Okay.  So has any other state,

22  or has any state ever denied your application because

23  of the AG's March 2022 denial of your license to

24  carry?

25        A.  No, sir.



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1          Q.  Has any other jurisdiction, city or town,
 2   ever denied your application for a firearms license
 3   because of the March 2022 denial from the AG's office?
 4          A.  No, sir.
 5          Q.  I may not have asked, but going back to
 6   New Hampshire, does that license allow you to carry a
 7   concealed weapon?
 8          A.  Yes.
 9          Q.  Your New Hampshire license?
10          A.  Yes.
11          Q.  While in New Hampshire, you can carry a
12   concealed weapon?
13          A.  Yes, sir.
14          Q.  Does it allow you open carry of pistols or
15   revolvers?
16          A.  Yes, sir.
17          Q.  It does allow open carry?
18          A.  It does allow open carry.
19          Q.  Do you have any other licenses in any other
20   jurisdiction?
21          A.  No, sir.
22          Q.  Firearms license, okay.  Now, have you ever
23   sought reciprocity from any other state for a firearms
24   permit issued in Rhode Island?
25          A.  No, sir.
```



1        Q.   Has any state ever denied you reciprocity for

2    a firearms permit issued in the State of Rhode Island?

3        A.   No, sir, that I'm aware of.

4        Q.   Have you ever been denied employment based on

5    the Attorney General's March 2022 decision to deny

6    your license to carry?

7        A.   No, sir.

8        Q.   Or I should say renewal of your license to

9    carry.  Have you ever been denied Unemployment

10   benefits based on the Attorney General's March 2022

11   renewal of your license to carry?

12       A.   No, sir.

13       Q.   While your license to carry issued by the

14   Town of Scituate remains valid, have you been able to

15   carry a handgun while in your home?

16       A.   Yes, sir.

17       Q.   I think we've already gone over this, but

18   have you been able to carry a handgun while at your

19   various places of employment?

20       A.   Yes, sir.

21       Q.   Have you been able to carry a handgun for

22   recreational activities?

23       A.   Yes, sir.

24       Q.   Have you been able to carry a handgun in

25   public?



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

1        A.  Yes, sir.

2        Q.  What would you say is the difference between

3   being able to carry a concealed weapon versus carrying

4   openly?

5        A.  Well, if I can't carry openly in my business,

6   I don't really see much difference between the two.

7        Q.  You don't see the difference between carrying

8   openly and carrying a concealed weapon?

9        A.  The difference between carrying openly,

10  obviously everybody can see it if you're carrying

11  openly.  What was your question?

12       Q.  If you can carry a gun in your home and work,

13  to and from your work, for recreational activities,

14  what would you gain from getting an AG permit that

15  would allow you to open carry as opposed to conceal

16  carry?

17       A.  Well, I could seek employment if I wanted to

18  with an armored car, security company as an armed

19  guard.

20       Q.  Have you ever worked as an armed guard?

21       A.  I have.

22       Q.  When was that?

23       A.  1998.

24       Q.  How long were you employed as an armed guard?

25       A.  Couple of years.



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
1          Q.   How many?  Can you estimate how many?

2          A.   Two and-a-half.

3          Q.   What was the name of the company?

4          A.   Professional Security Services.

5          Q.   Where were they based?

6          A.   245 Macklin Street in Cranston, Rhode Island.

7          Q.   What kind of services do they provide; what

8    kind of security services do they provide?

9          A.   Well, they had a mobile patrol to check

10   accounts.  They also had armed security at various

11   places.

12         Q.   Mobile patrol to check accounts, what kind of

13   accounts were they, residential/commercial?

14         A.   A gold refinery, just various commercial

15   accounts.

16         Q.   Where was the armed security aspect?

17         A.   I was a mobile patrol supervisor.  I was

18   required to carry a weapon.

19         Q.   Now, since 1998, since you left that company,

20   do you have any current plans to go back to

21   Professional Security Services?

22         A.   It's always a possibility.

23         Q.   Have you filed any application for employment

24   recently with an armed security company?

25         A.   No, sir, I have not.
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1                    MR. ARGUIN:  Okay.

 2                    EXAMINATION BY MR. SACCOCCIO

 3       Q.  Just to clarify for my own understanding,

 4  would employment with the armed security company, that

 5  requires open permit; you can't do that with a

 6  concealed permit?

 7       A.  Correct.

 8                    MR. SACCOCCIO:  Okay.  I think we're

 9  good.

10                    (DEPOSITION CLOSED AT 10:25 A.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



PETER ANTHONY TREMENTOZZI, III                    February 26, 2024
O'NEIL vs NERONHA

```
 1                C-E-R-T-I-F-I-C-A-T-E

 2
       I, ELIZABETH GREELEY, a Notary Public, in and for the
 3   State of Rhode Island, duly commissioned and qualified
     to administer oaths, do hereby certify that the
 4   foregoing Deposition of Peter Anthony Trementozzi,
     III, a Plaintiff in the above-entitled cause, was
 5   taken before me on behalf of the Defendant, at the
     offices of the Attorney General, 150 South Main
 6   Street, Providence, Rhode Island on February 26, 2024
     at 10:00 A.M.; that previous to examination of said
 7   witness, who was of lawful age, he was first sworn by
     me and duly cautioned to testify to the truth, the
 8   whole truth, and nothing but the truth, and that he
     thereupon testified in the foregoing manner as set out
 9   in the aforesaid transcript.

10     I further certify that the foregoing Deposition was
     taken down by me in machine shorthand and was later
11   transcribed by computer, and that the foregoing
     Deposition is a true and accurate record of the
12   testimony of said witness.

13   Pursuant to Rules 5(d) and 30(f) of the Federal Rules
     of Civil Procedure, original transcripts shall not be
14   filed in Court; therefore, the original is delivered
     to and retained by Defendant's Attorney, James Arguin.

15
     Reading and signing of the Deposition was waived by
16   the Witness.

17   IN WITNESS WHEREOF, I have hereunto set my hand this
     4th day of March, 2024.
18

19

20   _____
     ELIZABETH GREELEY, NOTARY PUBLIC
21   CERTIFIED COURT REPORTER
     MY COMMISSION EXPIRES:  04/07/2026
22

23

24

25
```



**EXHIBIT BB**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

**3/12/2022**



**Peter Tremeentozzi**                    ٩48٩ ٥٥٩٥ ٥٥27 6111 8577 ٥6

**173 Brown Ave**

**Johnston  Rhode Island 02919**

Thank you for taking the time to apply for a concealed carry weapons permit through the Rhode Island Attorney Generals office. Under Rhode Island General law 11-47-18. While reviewing your application it has come to our attention that you have applied for and received a concealed weapons permit, from **Scituate** Rhode Island

CCW permits issued by Rhode Island and Cities and Towns under Rhode Island General Laws 11-47-11 give the same authority to carry a concealed firearm as the office of the Attorney General. Due to the facts listed above you will not be issued a concealed carry weapons permit through the Attorney Generals office at this time.

If there are any special circumstances that you would need the State Issued CCW permit, please notify this office via Email at CCWpermits@riag.ri.gov

Applications may be withdrawn without prejudice by emailing your withdrawal letter to CCWpermits@riag.ri.gov.

Respectfully,

Michael J. Figueiredo, Deputy Chief

Bureau of Criminal Identification and Investigations

**EXHIBIT CC**



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

4 Howard Avenue · Cranston, RI 02920
(401) 274-4400 · www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*
May 4, 2022



Mr. Peter Trementozzi

173 Brown Avenue

Johnston, RI 02919

Dear Mr. Trementozzi,

This letter is in reference to your application with the Office of Attorney General for a license to carry (LTC) a pistol or revolver, application number 9802058. This application was originally denied on March 12, 2022, due to a failure to demonstrate a proper showing of need. Specifically, you already hold an active permit to carry a concealed weapons permit, issued by the town of Scituate, RI. To issue you a second permit would be duplicative.

Subsequent to that decision, you requested and received an appointment for an interview through your attorney Mr. Frank Saccoccio, to appeal the denial of your application. This appeal interview took place, via a video conference, on April 27, 2022. Present during this conference were you, me, your attorney Mr. Saccoccio, Deputy Chief Michael Figueiredo and Mr. Joseph Patton. Per your request and that of Mr. Saccoccio, Mr. Patton, who was also appealing his denial, was allowed to participate in the same conference call as he was also represented by Mr. Saccoccio.

At the start of the meeting, I informed you and Mr. Saccoccio the purpose of the meeting was to allow you and Mr. Saccoccio to provide additional information or clarification to your application that would merit reconsideration of the initial denial of your application. It was also explained that this was not a judicial hearing or an administrative hearing subject to regulations under the Rhode Island Administrative Procedures Act, RIGL, §42-35-1, et seq.

During this meeting, Mr. Saccoccio stated he had several reasons why you should be granted a permit. While Mr. Saccoccio expressed general opinions about this Office's application procedures, other application denials he has appealed to the Rhode Island Supreme Court and his own legal theories, this letter will only address what can be construed as additional information which directly pertains to your application and the reason why it was denied

Mr. Saccoccio stated he believed denying your application because you already hold a permit issued by a town was not valid for the following reasons: his assertion that the AG permit allows for reciprocity to carry a handgun in certain other states; having a second permit as a backup in case the other permit expires prior to renewal; that a denial of your application would need to be disclosed on future applications for a permit to carry in other states; that the Office of Attorney General does not specify anywhere the criteria used for evaluating an application and specifically that an applicant who holds a town permit will not be approved for a permit issued by the Attorney General; a denial by the

Attorney General could result in a loss of unemployment and the inability to collect unemployment compensation; and an AG permit has a barcode on it that can be scanned to verify the validity of the permit.

Your desire to carry a loaded handgun on your person in other states is not a consideration for this Office evaluating whether you have a need to carry a handgun in *this* State. Additionally, the Attorney General's decision-making process cannot be governed by how his decision may influence, positively or negatively, another State's license-to-carry application process. You also have presented no evidence that you are seeking to obtain a license in any state that would honor an Attorney General issued license, nor have you identified that you are seeking to obtain a license in any state that would honor an Attorney General issued license, but not a town issued license.

Having a second permit in case the first is not renewed on time is a circumstance controlled by you, and therefore, also does not constitute a proper showing of need. Expiration dates are well known to a license holder and a complete, accurate application, submitted well in advance of a permit expiration date, would easily alleviate this issue.

Included in your original denial letter was a copy of pages 4 and 5 of our application packet, which address factors considered by this office in assessing a proper showing of need. These factors are also listed on the Attorney General's official website. See http://www.riag.ri.gov/documents /PERMIT%20APPLICATION%202020.pdf (page 4-5). This Office does not have a policy that an individual issued a CCW permit from a town under §11-47-11, will not be approved for a license to carry a handgun by this office. Therefore, no such guidance is or would be provided to applicants. A decision to issue an additional LTC from this Office would be based upon an additional, specific *need*.

Mr. Saccoccio was asked specifically if you were required to carry a handgun for employment purposes. He stated that you were not required to do so. Therefor, a denial of your application would have no effect on your employment or your ability to collect unemployment benefits.

The fact that an AG permit has a barcode, and a municipal permit may or may not have one, has no relevance to an assessment of your need to carry a handgun. Neither you, nor Mr. Saccoccio, presented any factual circumstance as to how this directly related to your application.

In consideration of the aforementioned circumstances, it has been decided by this Office, in its broad discretion to issue a license to carry a pistol or revolver, to affirm the initial denial of your application due to the fact that you have not provided a proper showing of need for a permit to be issued.

Respectfully,

Edward Troiano,

Chief, Bureau of Criminal Identification and Investigation

Office of the Attorney General

**EXHIBIT DD**

Supreme Court

## Case Summary

### Case No. SU-2022-0135-MP

| | | | | |
|---|---|---|---|---|
| Peter Tremeentozzi v. Rhode Island Department of the Attorney General | § § | | Location: | **Supreme Court** |
| | | | Filed on: | **05/10/2022** |

---

## Case Information

**Statistical Closures**                                          Case Type:  Miscellaneous Petition
02/15/2023  Permission Denied                              Case Status:  **02/15/2023  Closed**

---

## Party Information

| | | |
|---|---|---|
| **Plaintiff** | **Tremeentozzi, Peter** | **SACCOCCIO, FRANK R.** *Retained* |
| **Defendant** | **Department of the Attorney General** | **SADECK, KATHERINE CONNOLLY** *Retained* |
| | | **FIELD, MICHAEL W.** *Retained* |

---

## Case Events

| | |
|---|---|
| 05/10/2022 | Petition for Writ of Certiorari          Party:   Plaintiff Tremeentozzi, Peter |
| 09/14/2022 | Hard Copies Filed |
| 09/14/2022 | Hard Copies Filed |
| 09/16/2022 | Papers Rejected, Notice Issued |
| 09/16/2022 | Memorandum Filed          Party:   Plaintiff Tremeentozzi, Peter |
| 09/19/2022 | Hard Copies Filed |
| 10/06/2022 | Entry of Appearance          Party:   Attorney of Record SHEA, ANDREA |
| 10/07/2022 | Motion for Ext of Time to File Memo Opposition to Petition          Party:   Defendant Department of the Attorney General |
| 10/11/2022 | Motion for Extension of Time          Party:   Defendant Department of the Attorney General |
| 10/11/2022 | Motion for Ext of Time to File Memo Opposition to Petition          Party:   Defendant Department of the Attorney General |
| 10/11/2022 | Motion for Extension of Time Granted by Clerk |
| 10/11/2022 | Motion for Extension of Time Granted by Clerk |
| 11/03/2022 | Motion for Ext of Time to File Memo Opposition to Petition          Party:   Defendant Department of the Attorney General |

**Supreme Court**

**Case Summary**

**Case No. SU-2022-0135-MP**

| | |
|---|---|
| 11/03/2022 | Motion for Ext of Time to File Memo Opposition to Petition<br>Party:   Defendant Department of the Attorney General |
| 11/03/2022 | Motion for Extension of Time Granted by Clerk |
| 11/03/2022 | Motion for Extension of Time Granted by Clerk |
| 12/07/2022 | Objection to Petition<br>Party:   Defendant Department of the Attorney General |
| 12/07/2022 | Appendix<br>Party:   Defendant Department of the Attorney General |
| 01/19/2023 | Hard Copies Filed |
| 02/02/2023 | Entry of Appearance<br>Party:   Attorney of Record SADECK, KATHERINE CONNOLLY |
| 02/02/2023 | Motion to Withdraw as Counsel<br>Party:   Attorney of Record SHEA, ANDREA |
| 02/15/2023 | Order - Petition for Writ of Certiorari Denied |

## Financial Information

**Plaintiff**   Tremeentozzi, Peter

| | | |
|---|---|---|
| Total Financial Assessment | | 150.00 |
| Total Payments and Credits | | 150.00 |
| **Balance Due as of 11/26/2024** | | **0.00** |
| 05/11/2022  Transaction Assessment | | 150.00 |
| 05/11/2022  Electronic Payment | Receipt # SU-2022-01276 | (150.00) |

**EXHIBIT EE**

In the Matter Of:

O'NEIL vs NERONHA

23-cv-00070-WES-PAS

---

# RICHARD A. LAPORTE

*February 26, 2024*

---



800.211.DEPO (3376)
EsquireSolutions.com

```
 1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF RHODE ISLAND
 2

 3

 4   Michael O'Neil, et al.

 5        Vs.              C.A. NO:  23-cv-00070-WES-PAS

 6   Peter F. Neronha, in his
     Official Capacity as
 7   Attorney General of the
     State of Rhode Island, and
 8   the State of Rhode Island

 9

10   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

11

12                  DEPOSITION OF
                   RICHARD LAPORTE
13
                 FEBRUARY 26, 2024
14                  12:00 NOON

15

16              150 SOUTH MAIN STREET
               PROVIDENCE, RI  02903
17

18

19

20

21

22

23

24              ELIZABETH GREELEY
             CERTIFIED COURT REPORTER
25
```



**RICHARD A. LAPORTE**
**O'NEIL vs NERONHA**

```
 1              (DEPOSITION COMMENCED AT 11:56 A.M.)

 2                   RICHARD A. LAPORTE

 3       Being duly sworn, deposes and testifies as

 4   follows:

 5              THE REPORTER:  Would you state your name

 6   for the record, please?

 7              THE WITNESS:  Richard A. Laporte,

 8   L-A-P-O-R-T-E.

 9              EXAMINATION BY MR. ARGUIN

10       Q.  Good afternoon, Mr. Laporte.  I'm James

11   Arguin.  I'm a Special Assistant Attorney General

12   representing the Attorney General in this proceeding.

13   Before we get started, I'd just like to go over some

14   of the basic procedures and rules for your deposition

15   today.  First off, have you ever been deposed before?

16       A.  No.

17       Q.  Have you ever testified in court before?

18       A.  No.

19       Q.  Well, as you met the stenographer on your way

20   in, the stenographer's job is to take down everything

21   that you say and make an accurate record.  It's the

22   same process that's followed in court, and we'll

23   follow that here today.

24       Just like in court, the stenographer swore you in

25   before testifying.  Do you understand that your
```



```
 1        A.   2021.

 2        Q.   Since 2021, have you made any attempts to

 3   renew the permit in Florida?

 4        A.   No, I haven't.

 5        Q.   Connecticut doesn't expire until April 2024?

 6        A.   Correct.

 7        Q.   Have you started, have you -- I thought you

 8   indicated you hadn't yet started the renewal process?

 9        A.   No.  I just got the renewal in the mail.

10        Q.   When is your renewal for Connecticut due?

11        A.   Middle of April.

12        Q.   Any other differences, apart from applying

13   for permits in other states?

14        A.   No.

15             MR. ARGUIN:  Okay.  I think that's all I

16   have.

17             EXAMINATION BY MR. LYONS

18        Q.   Mr. Laporte, assuming that the Rhode Island

19   Attorney General's license is the one that allows you

20   to engage in open carry, would you want the option to

21   be able to do so?

22        A.   It's nice to have the option.  I probably

23   would not use it, but it's nice to have the option.

24             MR. LYONS:  All right.  Thank you.

25             (DEPOSITION CLOSED AT 12:30 P.M.)
```



```
 1                  C-E-R-T-I-F-I-C-A-T-E

 2

 3   I, ELIZABETH GREELEY, a Notary Public, in and for the

 4   State of Rhode Island, duly commissioned and qualified

 5   to administer oaths, do hereby certify that the

 6   foregoing Deposition of Richard A. Laporte, a

 7   Plaintiff in the above-entitled cause, was taken

 8   before me on behalf of the Defendant, at the offices

 9   of the Attorney General, 150 South Main Street,

10   Providence, Rhode Island on February 26, 2024 at

11   12:00 P.M.; that previous to examination of said

12   witness, who was of lawful age, he was first sworn by

13   me and duly cautioned to testify to the truth, the

14   whole truth, and nothing but the truth, and that he

15   thereupon testified in the foregoing manner as set out

16   in the aforesaid transcript.

17

18   I further certify that the foregoing Deposition was

19   taken down by me in machine shorthand and was later

20   transcribed by computer, and that the foregoing

21   Deposition is a true and accurate record of the

22   testimony of said witness.

23

24   Pursuant to Rules 5(d) and 30(f) of the Federal Rules

25   of Civil Procedure, original transcripts shall not be
```



 1  filed in Court; therefore, the original is delivered

 2  to and retained by Defendant's Attorney, James Arguin.

 3

 4  Reading and signing of the Deposition was waived by

 5  the Witness.

 6

 7  IN WITNESS WHEREOF, I have hereunto set my hand this

 8  4th day of March, 2024.

 9

10

11

12  

13

14  _____

15  ELIZABETH GREELEY, NOTARY PUBLIC

16  CERTIFIED COURT REPORTER

17  MY COMMISSION EXPIRES:  04/07/2026

18

19

20

21

22

23

24

25



**EXHIBIT FF**

**In the Matter Of:**

O'NEIL vs NERONHA

23-cv-00070-WES-PAS

---

**DANIEL W. PATTERSON**

*February 26, 2024*

---

*Confidential*



800.211.DEPO (3376)
*EsquireSolutions.com*

1                 UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
2

3

4    Michael O'Neil, et al.

5         Vs.              C.A. NO:  23-cv-00070-WES-PAS

6    Peter F. Neronha, in his
     Official Capacity as
7    Attorney General of the
     State of Rhode Island, and
8    the State of Rhode Island

9

10   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

11

12             CONFIDENTIAL DEPOSITION OF
                  DANIEL W. PATTERSON
13
                  FEBRUARY 26, 2024
14                    2:00 P.M.

15

16              150 SOUTH MAIN STREET
                PROVIDENCE, RI  02903
17

18

19

20

21

22

23

24              ELIZABETH GREELEY
            CERTIFIED COURT REPORTER
25



```
 1              (DEPOSITION COMMENCED AT 1:30 P.M.)

 2                    DANIEL W. PATTERSON

 3        Being duly sworn, deposes and testifies as

 4   follows:

 5              THE REPORTER:  Would you state your name

 6   for the record, please?

 7              THE WITNESS:  Daniel W. Patterson,

 8   P-A-T-T-E-R-S-O-N.

 9              EXAMINATION BY MR. ARGUIN

10        Q.  Sir, you've now been sworn, Mr. Patterson.

11   Let me first start by just reviewing some of the rules

12   for depositions, and then we'll get into some

13   questioning about your renewal application with the

14   Attorney General.  Have you ever been deposed before?

15        A.  Probably 20 years ago.

16        Q.  Not a recent time?

17        A.  No.

18        Q.  What about testifying in court?

19        A.  What do you mean by justifying (sic) in

20   court?

21        Q.  Have you ever testified in court?

22        A.  About 20 years, same case.

23        Q.  What was the nature of that case?

24        A.  Collection case.  I'm in the construction

25   business.
```



DANIEL W. PATTERSON  Confidential                           February 26, 2024
O'NEIL vs NERONHA                                                          12

 1  explosives, it's the detonators that any bad person

 2  would want.  You can make explosives from ingredients

 3  in a supermarket.

 4       So all the licenses are still active.  It's just

 5  a matter of picking up the phone and reinstating

 6  insurance, back in business.  So I have both federal,

 7  and I'm licensed in three states.

 8       Q.  Right.  For explosives?

 9       A.  For explosives.

10       Q.  So is it because of your, the work

11  L.A. Patterson was doing with explosives that your

12  employer required you to carry a weapon?

13       A.  I'm the employer, really.  So there's also

14  another business I'm involved in.  We'll get to that

15  next.  Active explosives, there is a firearm -- let me

16  word it a different way.  When I'm actively engaged in

17  the explosives trade, I do carry a firearm.

18       Q.  What kind of firearm do you carry when you're

19  engaged in the explosives trade?

20       A.  Either a 1911 Chamberlain 45 or the newer

21  ones now, M&P, Smith and Wesson 9 millimeter.

22       Q.  So sidearms, handguns?

23       A.  Sidearm, yes.

24       Q.  Do you carry them as concealed weapons or

25  open?



```
1        A.  When you're out in the field when it's
2   90 degrees, you're not going to conceal it.  A day
3   like today, it could be concealed.  It depends on the
4   working conditions.
5        Q.  Well, would it prevent you from doing your
6   job if you had to carry it as a concealed weapon as
7   opposed to open carry?
8        A.  If I had to conceal, it was concealed
9   100 percent of the time, yes.
10        Q.  How would it impact you?
11        A.  I would have to keep looking down to make
12   sure the firearm is covered.  Like I said, five months
13   out of the year we're working in T-shirts.
14        Q.  You mentioned because of the economic
15   downturn with construction that impacted, I guess,
16   with the insurance and the explosives and detonators.
17   The business, are you currently engaged in the
18   explosives trade?
19        A.  No, but I still keep all the licenses active.
20   The magazines are still intact at my facility.  Those
21   are inspected by the ATM when he does his compliance
22   checks.  I have to keep everything up to date to keep
23   those licenses.
24
25
```




1   impact on that, right?  That's a DEM rule?

2       A.  Yes.

3       Q.  Does the AG rule, would that allow, would the

4   AG authorizing you a license to carry, would that

5   impact your --

6       A.  I couldn't answer that question.  I don't

7   know.

8       Q.  What's the difference in your view between

9   being permitted to carry a concealed weapon and

10  carrying an open carry, the same weapon?

11      A.  When I'm in that store, I'm carrying open.

12  When I'm running up to a break-in at my building, I'm

13  not making sure it's in a holster hidden.

14      Q.  Apart from when you're working in the store,

15  do you mean the firearms store or your other places of

16  business?

17      A.  Anywhere around that building, yes.

18      Q.  Meaning?  Which building are we talking

19  about?

20      A.  Shanbri Farms, LLC.

21      Q.  Apart from carrying at Shanbri Farms and

22  responding to those, the break-ins we've discussed,

23  what other differences do you see with the open carry

24  versus concealed carry?

25      A.  I don't have to worry about breaking a law if



1   my gun is being seen.

2         Q.  Any other issues?

3         A.  No.

4         Q.  Any other distinctions you see between the

5   open carry and concealed carry?

6         A.  Not at this time.

7              MR. ARGUIN:  Okay.  All right.  That's

8   all I have.  Thank you very much for coming in.

9              (DEPOSITION CLOSED AT 2:35 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1

 2

 3                    C-E-R-T-I-F-I-C-A-T-E

 4
     I, ELIZABETH GREELEY, a Notary Public, in and for the
 5   State of Rhode Island, duly commissioned and qualified
     to administer oaths, do hereby certify that the
 6   foregoing Deposition of Daniel W. Patterson, a
     Plaintiff in the above-entitled cause, was taken
 7   before me on behalf of the Defendant, at the offices
     of the Attorney General, 150 South Main Street,
 8   Providence, Rhode Island on February 26, 2024 at
     2:00 P.M.; that previous to examination of said
 9   witness, who was of lawful age, he was first sworn by
     me and duly cautioned to testify to the truth, the
10   whole truth, and nothing but the truth, and that he
     thereupon testified in the foregoing manner as set out
11   in the aforesaid transcript.

12   I further certify that the foregoing Deposition was
     taken down by me in machine shorthand and was later
13   transcribed by computer, and that the foregoing
     Deposition is a true and accurate record of the
14   testimony of said witness.

15   Pursuant to Rules 5(d) and 30(f) of the Federal Rules
     of Civil Procedure, original transcripts shall not be
16   filed in Court; therefore, the original is delivered
     to and retained by Defendant's Attorney, James Arguin.
17
     Reading and signing of the Deposition was waived by
18   the Witness.

19   IN WITNESS WHEREOF, I have hereunto set my hand this
     4th day of March, 2024.
20

21

22   _____
     ELIZABETH GREELEY, NOTARY PUBLIC
23   CERTIFIED COURT REPORTER
     MY COMMISSION EXPIRES:  04/07/2024
24

25
```



# EXHIBIT GG

**In the Matter Of:**

O'NEIL vs NERONHA

23-cv-00070-WES-PAS

---

**MICHAEL PAUL O'NEIL**

*February 26, 2024*

---



800.211.DEPO (3376)
*EsquireSolutions.com*

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
 2

 3

 4   Michael O'Neil, et al.

 5       Vs.             C.A. NO:  23-cv-00070-WES-PAS

 6   Peter F. Neronha, in his
     Official Capacity as
 7   Attorney General of the
     State of Rhode Island, and
 8   the State of Rhode Island

 9

10   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

11

12                  DEPOSITION OF
                 MICHAEL PAUL O'NEIL
13
                  FEBRUARY 26, 2024
14                    4:00 P.M.

15

16               150 SOUTH MAIN STREET
                 PROVIDENCE, RI   02903
17

18

19

20

21

22

23

24              ELIZABETH GREELEY
             CERTIFIED COURT REPORTER
25
```



MICHAEL PAUL O'NEIL                                   February 26, 2024
O'NEIL vs NERONHA                                                    4

```
 1                (DEPOSITION COMMENCED AT 3:45 P.M.)

 2                     MICHAEL PAUL O'NEIL

 3       Being duly sworn, deposes and testifies as

 4   follows:

 5                THE REPORTER:  Would you state your name

 6   for the record, please?

 7                THE WITNESS:  Michael Paul O'Neil,

 8   O-N-E-I-L.

 9                EXAMINATION BY MR. ARGUIN

10       Q.  Thank you, Mr. O'Neil.  I'm James Arguin.

11   I'm a Special Assistant Attorney General representing

12   the Attorney General in this case.  This is my

13   colleague.

14                MR. MEOSKY:  Paul Meosky, nice to meet

15   you.

16                THE WITNESS:  Nice to meet you.

17       Q.  Today, I first want to review with you kind

18   of the rules for the deposition and how we will be

19   proceeding today.  Then also we'll get into some of

20   the background on your application for renewal of your

21   license to carry with the Attorney General.  Before we

22   get started, have you ever been deposed before?

23       A.  No.

24       Q.  Have you ever testified in court?

25       A.  No.
```



 1      Q.  Well, have you applied?

 2      A.  I don't have to apply.  If you read the law,

 3   it states whether you can carry or not.  If they

 4   accept, like in North Carolina it says that they will

 5   accept an out-of-state permit to carry, because there

 6   is no, there is no nonresident permit.

 7      Q.  Okay.  So that's your understanding of

 8   Tennessee; that it would, your permit from the, the

 9   one you have from Warwick would be sufficient to carry

10   in Tennessee?

11      A.  I believe it's, it's constitutional.

12      Q.  Okay.  What do you see as the primary

13   difference between a permit that allows you to carry a

14   concealed weapon and a permit that allows you to open

15   carry?

16      A.  Okay.  So you're talking about from a town

17   permit to an Attorney General permit, right?

18      Q.  Yes, just in general, what's the difference;

19   what do you get from an open carry that you cannot get

20   from a concealed carry?

21      A.  Concealed carry permit, they are, for a town

22   permit in the State of Rhode Island, you can purchase

23   a firearm, have the federal background check, and

24   there is no seven-day wait.  The Attorney General's

25   permit, you're allowed to open carry.  You cannot open



1   carry with a town permit.

2        Also, it gives you overlap.  Overlap is when you

3   have one town that doesn't issue, one Attorney General

4   that doesn't issue.  So if you have a town permit and

5   the Attorney General permit, and one decides not to

6   issue when Attorney Generals change, like in this

7   instance, this is why I'm here.  It covers you to

8   still have a permit while you're trying to get your

9   permit back from the Attorney General or the town.

10       Q.  Okay.  What's the benefit of open carry?  Why

11  do you need open carry versus concealed carry?

12       A.  Open carry, for security jobs.  Open carry

13  for anything that you would want to be employed by.

14  If you wanted to pick up part-time work, you would

15  have to go through the whole process if you have the

16  permit already.

17       Q.  But none of your current jobs require this?

18       A.  No.

19       Q.  Open carry, right?

20       A.  No.

21       Q.  So in terms of future jobs, there is

22  potential for you providing security services like you

23  mentioned for transfers, gun transfers?

24       A.  Right, yes.

25       Q.  Is there, apart from the transfer of guns,



1   any other current plans, or any other prospects for

2   providing that kind of security service?

3       A.   Like I said, I just started this business.

4   When this is up and running, then I've been thinking

5   about the security aspect of it, and that's something

6   for the future.

7       Q.   Okay.  Just to be clear, that kind of

8   transfer that you were talking about of the firearms,

9   is that limited to the estates or people who die and

10  leave their guns, or is it something else?

11      A.   No, it's something else.  Like I could work

12  for, say, like D&L.

13      Q.   Sorry, what is D --

14      A.   D&L is a firearms store.  It's one of the

15  biggest in the state.  I could, you know, I could be a

16  runner, and if he has firearms that need to go to

17  Massachusetts or Connecticut and there is a number of

18  them, then, you know, he has runners that would allow

19  you to, you transfer from one state to the other.  So

20  I would still need to have my Massachusetts permit or

21  my Connecticut permit and my Rhode Island permit.

22      Q.   Are there any open positions with D&L?

23      A.   I don't know.

24      Q.   You haven't seen any job advertisements for

25  this kind of work?



MICHAEL PAUL O'NEIL                              February 26, 2024
O'NEIL vs NERONHA                                              54

 1        A.  No.  I talked to them about it in the past,

 2   so...

 3        Q.  Do you know whether D&L requires their -- is

 4   it called a runner; is that the position you're

 5   describing?

 6        A.  I'm just saying it's a runner.

 7        Q.  Does D&L require those people as a condition

 8   of employment to carry a weapon, carry a firearm?

 9        A.  I could not tell you.  I don't want to speak

10   for him.

11            MR. ARGUIN:  Okay.  I think that's all I

12   have.

13            EXAMINATION BY MR. SACCOCCIO

14        A.  I have a couple of clarification questions.

15   Mr. O'Neil, you were asked to look at a copy of what

16   they marked as Exhibit A, your application from 2020;

17   is that correct?

18        A.  Yes.

19        Q.  This isn't your first application to the

20   Attorney General's Office; is that correct?

21        A.  No.

22        Q.  In the past you've done multiple actual

23   renewals through the Attorney General, correct?

24        A.  Two renewals.

25        Q.  On those renewals you actually included



MICHAEL PAUL O'NEIL                          February 26, 2024
O'NEIL vs NERONHA                                            57

1                    C-E-R-T-I-F-I-C-A-T-E

2

        I, ELIZABETH GREELEY, a Notary Public, in and for the
3    State of Rhode Island, duly commissioned and qualified
     to administer oaths, do hereby certify that the
4    foregoing Deposition of Michael Paul O'Neil, a
     Plaintiff in the above-entitled cause, was taken
5    before me on behalf of the Defendant, at the offices
     of the Attorney General, 150 South Main Street,
6    Providence, Rhode Island on February 26, 2024 at
     4:00 P.M.; that previous to examination of said
7    witness, who was of lawful age, he was first sworn by
     me and duly cautioned to testify to the truth, the
8    whole truth, and nothing but the truth, and that he
     thereupon testified in the foregoing manner as set out
9    in the aforesaid transcript.

10      I further certify that the foregoing Deposition was
     taken down by me in machine shorthand and was later
11   transcribed by computer, and that the foregoing
     Deposition is a true and accurate record of the
12   testimony of said witness.

13   Pursuant to Rules 5(d) and 30(f) of the Federal Rules
     of Civil Procedure, original transcripts shall not be
14   filed in Court; therefore, the original is delivered
     to and retained by Defendant's Attorney, James Arguin.

15
     Reading and signing of the Deposition was waived by
16   the Witness.

17   IN WITNESS WHEREOF, I have hereunto set my hand this
     4th day of March, 2024.

18

19          

20

21   _____
     ELIZABETH GREELEY, NOTARY PUBLIC
     CERTIFIED COURT REPORTER
22   MY COMMISSION EXPIRES:  04/07/2026

23

24

25

**EXHIBIT HH**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                    DISTRICT OF RHODE ISLAND

 3

 4   MICHAEL O'NEIL, ET AL.,

 5        Plaintiffs,

 6

 7     vs.                    Case No. 23-CV-00070-WES-PAS

 8

 9   PETER F. NERONHA, IN HIS OFFICIAL CAPACITY AS ATTORNEY

10   GENERAL OF THE STATE OF RHODE ISLAND, AND THE STATE OF

11   RHODE ISLAND,

12        Defendant.

13              ~~~~~~~~~~~~~~~~~~~~~

14                    VOLUME 1

15            Videoconference Deposition of
                    CLAYTON CRAMER
16
                    October 11, 2024
17                    10:02 a.m.

18              Taken via Zoom at:
                  Caldwell, Idaho
19

20

21

22

23

24

25   Court Reporter - Michele A. Durig, RPR
```



```
 1  representing the plaintiffs.  And, yes, we stipulate
 2  to the deposition.
 3          ATTORNEY MEOSKY:  And then Paul Meosky for the
 4  State.  Also stipulating to the same.
 5                        *   *   *
 6                  CLAYTON CRAMER,
 7  having been duly sworn, was examined and testified as
 8  follows:
 9                      EXAMINATION
10  BY ATTORNEY ARGUIN:
11      Q.  All right.  Mr. Cramer, let me reintroduce
12  myself to you directly.  Thank you for joining us.
13  I'm sure it's very early there in Idaho.
14          I'm James Arguin.  I'm representing the
15  Attorney General in this matter with my colleague Paul
16  Meosky, who is also on the call.
17          Now, I understand you've been deposed before;
18  is that correct?
19      A.  Yes, I have.
20      Q.  Okay.  So I won't go through the whole
21  rigamarole, but let me just confirm a few basic ground
22  rules before we begin so we're all on the same page.
23      A.  Right.
24      Q.  Is that okay?
25      A.  Yes.
```



1  of the issuance of concealed weapon permits.

2      Q.  And by "Frank," are you referring to

3  plaintiff's counsel, Mr. Saccoccio?

4      A.  Right.  Like I said --

5      Q.  I'm not sure I'm pronouncing it correctly

6  either, but I think that's correct.

7          All right.  And, specifically, what was it he

8  asked you to look into?  The history of concealed

9  weapon carry?

10     A.  Concealed weapon permit licensing.

11     Q.  I'm sorry?

12     A.  Concealed weapon permit licensing.

13     Q.  And what -- are you familiar with that term,

14  "concealed weapon licensing"?

15     A.  Yes, I'm familiar with it.

16     Q.  And what does that mean to you?  How would you

17  define it?

18     A.  It means that in order to lawfully carry a

19  concealed weapon, you require a license of some sort

20  issued by either a local or state authority of some

21  sort.

22     Q.  Do those local or state licensing for

23  concealed weapon carry mean you can carry a weapon

24  outside the home for self-defense?

25     A.  Yes.  In some cases -- it's more broad than



CLAYTON CRAMER                                    October 11, 2024
O'NEIL vs NERONHA                                              11

 1  that.  In some cases, it does not specify limitation

 2  on the purpose for it.

 3      Q.  Okay.  So -- but it includes the right for

 4  self-defense?

 5      A.  Yes.

 6      Q.  Can you tell me, are there other forms of

 7  carrying a handgun that satisfy the need for

 8  self-defense -- the right for self-defense?

 9      A.  There are other methods, yes.

10      Q.  And could you tell me, what are some of those

11  other methods?

12      A.  A person could carry a firearm openly.  I

13  think it's sort of bad taste to do so because it tends

14  to scare people who do not know why you're carrying a

15  gun.

16          See, here in Idaho, open carry is lawful.

17  Just, to me, it's just sort of -- sort of in poor

18  taste.  Like passing gas in an elevator.  I mean, it

19  causes people to be uncomfortable and sometimes afraid

20  without any good reason.

21      Q.  And how do you describe open carry?  What does

22  that look like?

23      A.  Open carry means that you are carrying a

24  firearm in a way that is readily visible.  It is not

25  concealed under your clothes or anywhere else.



1  Usually that means being carried in a holster of some

2  sort.  Sometimes -- I remember seeing them carried in

3  a pocket before, openly, with the butt of the gun

4  visible.  But that would be included as well.

5       Q.  When you carry a weapon openly in a holster,

6  does that mean that the gun itself is visible?

7       A.  Yes.

8       Q.  Okay.  So would you -- what about if you're

9  carrying a holster and you have, like, a blazer on

10  that covers the holster?

11       A.  That would be concealed.  Some states, like

12  Arizona, have held that the carrying of a weapon,

13  whether the holster is visible, is still considered

14  open carry even if the gun itself is not visible.

15       Q.  I'm sorry.  Maybe I -- could you repeat that?

16  I'm just trying to -- I was just trying to make

17  that -- follow that point.

18       A.  Okay.  A few states, like Arizona, have ruled

19  that if a person is carrying a gun in a holster, even

20  if the gun is not visible, if the holster is visible,

21  that means that it is openly carried.

22       Q.  Oh, okay.

23       A.  And there is an antebellum decision from the

24  Louisiana Supreme Court that addresses this question

25  about a gun that was concealed and became visible as



CLAYTON CRAMER                                          October 11, 2024
O'NEIL vs NERONHA                                                    13

1  the person moved in a way that it became visible as

2  their coat moved to the side.  They ruled in that case

3  that was concealed carry in violation of Louisiana

4  law.

5        Q.  So is the major distinction whether someone

6  else can see the -- the firearm?

7        A.  Yes.

8        Q.  Okay.  Now, apart from Attorney Saccoccio, did

9  you speak to anyone else about the issues in this case

10  before preparing your report?

11        A.  Yes.  Mr. Lyons I've spoken to on several

12  occasions.

13        Q.  Okay.  And apart from Mr. Lyons --

14  Attorney Lyons and Attorney Saccoccio, did you speak

15  to anyone in preparation for your deposition today?

16        A.  No.

17        Q.  Have you ever spoken to Mr. Michael O'Neal,

18  who is one of the plaintiffs in this case?

19        A.  No, I have not.

20        Q.  Have you spoken to any of the other plaintiffs

21  who are named in this case?

22        A.  No, I have not.

23        Q.  Okay.  Mr. Cramer, did you review any

24  materials in preparation for today's deposition?

25        A.  I reviewed the declarations by Brandon Revis



1          this -- I'd like to mark this as Exhibit 9.

2                    (Exhibit 9, marked)

3          Q.    (By Attorney Arquin)  And, Mr. Cramer, is

4    this the title page of your book on Concealed Weapon

5    Laws of the Early Republic?

6          A.    Yes.

7          Q.    Okay.  I'd like to go to one of the

8    discussions you have and ask you about this particular

9    quote.  Let me increase the font here.  This is on

10   page 86.  You see this?  Is that clear to you, page

11   86?

12         A.    Yes.

13         Q.    I'm referring particularly to this

14   passage on the second full paragraph, As the Louisiana

15   -- starting with, As the Louisiana statute's preamble

16   showed, do you see that?

17         A.    Yes.

18         Q.    What I was wondering, you go on to say,

19   As the Louisiana statute's preamble showed, and will

20   be seen with some of the Alabama editorials, banning

21   of concealed carrying of deadly weapons was often

22   carelessly equated with a ban on any form of wearing

23   deadly weapons.

24                And then you proceed, the next sentence



CLAYTON CRAMER                                          October 11, 2024
O'NEIL vs NERONHA                                                    137

1  says, This suggests, but does not prove, that the open

2  carrying of deadly weapons was subject to sufficient

3  social stigma to guarantee that a ban on concealed

4  carry was, effectively, a ban on all carrying.

5         Do you see that passage from your book?

6     A.    Yes.

7     Q.    And my question is, what social stigma

8  are you referring to in this passage?

9     A.    Well, it's certainly the case that if you

10  were carrying a Bowie knife, it would certainly mark

11  you as a potentially pretty dangerous person, and

12  because Bowie knives weren't often used in these sort

13  of sudden combats where someone felt insulted and felt

14  they had to do something about it.  Although the fact

15  that the laws in question only banned concealed carry,

16  as I pointed out, suggests, but does not prove, the

17  fact is that -- the fact that various State and

18  Supreme courts recognized open carry was protected

19  suggests that this could not have been a -- it's just

20  carelessness on the part of the people writing these

21  editorials.

22     Q.    But could it also not reflect the fact

23  that because of the, what you say is the stigma, the

24  social stigma, that open carry wasn't really a problem



1  back then?

2      A.    Well, it might not have been a problem in

3  the sense that people were not afraid of it.  I mean,

4  one of the things that I did find in the research I've

5  done is that the number of times that there is a

6  distinction made between concealed carry which is

7  regarded as the act of a ruffian and open carry which

8  seems not to have generated the same sort of general

9  hostility or hatred.

10          Concealed carry receives an enormous

11 amount of review from a lot of these court cases where

12 State Supreme courts are having to decide whether

13 concealed carry laws are Constitutional or not.

14     Q.    And let me -- why do you -- what's the

15 distinction you draw, because here in the book, this

16 paragraph in the book, you are talking about all

17 open -- open carrying of all weapons.  So, how -- it

18 seems like earlier you were drawing a distinction

19 between, you know, carrying a Bowie knife and carrying

20 other forms of deadly weapons, is that a distinction

21 you would draw or not?

22     A.    I would say that Bowie knives, there is a

23 panic over Bowie knives that takes place in the 1830s.

24 I think the problem was there was already an issue



CLAYTON CRAMER                                    October 11, 2024
O'NEIL vs NERONHA                                             139

```
 1   they were concerned about.  There was a specific
 2   incident in the Arkansas legislature, 1837, I think it
 3   also played a role in this, two members of the
 4   legislature got into argument on the floor of the
 5   Arkansas House of Legislature, State House.  Both of
 6   them drew concealed Bowie knives, which was already
 7   illegal there, and they proceeded to get into a fight.
 8   One of them died, and the survivor, who was the
 9   Speaker of the House, was expelled by the House for
10   conduct unbecoming of a member.  And shortly -- within
11   a few months of that incident, which was widely
12   reported, there are these laws passed almost
13   everywhere in the southern states regulating concealed
14   carry and often just -- in the case of Tennessee, just
15   Bowie knives.
16        Q.    My point is, this statement in your book
17   refers to open carrying of all deadly weapons, not
18   just Bowie knives, correct?
19        A.    I don't quite understand what you asked.
20        Q.    I'm just pointing out, the quote from
21   your book is that this -- the suggestion is that the
22   open carrying of deadly weapons in all forms was
23   subject to sufficient social stigma that it wasn't
24   done?
```



CLAYTON CRAMER                                          October 11, 2024
O'NEIL vs NERONHA                                                    140

 1          A.      As I pointed out, suggests, does not

 2    prove.  The fact is that there are certain level of --

 3    if you're in Idaho, as I think I mentioned previously,

 4    open carry is lawful.  For the most part, people do

 5    not do it very often.  I've seen people do it, but it

 6    seems pretty rare.

 7          Q.      Let me --

 8          A.      It's bad manners.

 9          Q.      I'm sorry.  Were you finished?

10          A.      It's sort of bad manners, as far as I'm

11    concerned, and a lot of other people in Idaho feel

12    much the same way.

13          Q.      Yeah.

14          A.      We allow concealed carry without licenses

15    here.  And that's one of the reasons that open carry

16    seems to be coming less common.  A lot of people, like

17    my daughter, for example, she feels, it sort of

18    disturbs her when she sees an open carry.  It doesn't

19    disturb her that she knows a lot of people are

20    carrying concealed.  That's an example of social

21    stigma, there's certain level of disapproval where

22    people are clearly uncomfortable.

23          Q.      Well, I wonder if this, to your point

24    there, I'm moving within Exhibit 9 to page 114 of your



1   book on Concealed Weapon Laws in the Early Republic,

2   and I want to direct your attention to this quote

3   here, Birkbeck, do you see that, The editor's note?

4        A.    I'm not seeing it, no.

5             ATTORNEY LYONS:  It's not up on the

6        screen, Jim.

7             ATTORNEY ARQUIN:  Oh, I'm going to

8        stop sharing there.  Hold on.  Let me put it

9        back up.  Let me reload that.  I don't know.

10       It stopped for some reason.

11       Q.    (By Attorney Arquin)  Do you see that

12  now?  This is again Exhibit 9, Concealed Weapon Laws

13  of the Early Republic, page 114, and I was directing

14  your attention to the full paragraph here beginning

15  with, The editor's note?

16       A.    Yes.

17       Q.    What I'm referring to is this quote from

18  Birkbeck.  I'm wondering if you can expand upon it

19  where you wrote that, A dirk is said to be a common

20  appendage to the dress of a planter in this part of

21  Virginia.

22            And then it goes on, That a dirk is said

23  to be suggests that such weapons were commonly

24  carried, but not openly.



1          And can you expand on what you mean in

2    this portion of your book?

3          A.    Well, Birkbeck says, is said to be, what

4    that means is this is what people think.  Doesn't

5    necessarily mean it's true.  I mean, it could be that,

6    in fact, a lot of people were carrying dirks concealed

7    in that part of Virginia, but there's a lot of things

8    where people say or people think but it isn't

9    necessarily true.

10         Q.    But it still suggests, does it not, that

11   there were social stigma against carrying deadly

12   weapons openly during the Early Republic?

13         A.    Might well be.  There might well have

14   been some social stigma to it, but that doesn't

15   necessarily -- there's no laws about it.

16         Q.    Okay.

17         A.    And of course, Bruen is looking at what

18   laws existed.

19         Q.    But, again, going back to our early

20   conversation, legislators often act in response to

21   social problems?

22         A.    People --

23         Q.    If the culture was, this wasn't a

24   problem, why would there be a law?



CLAYTON CRAMER                                      October 11, 2024
O'NEIL vs NERONHA                                            143

1        A.       Legislators respond to perceived social

2    problems, not necessarily actual problems.

3        Q.       Let me go to another section of your

4    book.  Let me go back.  I'm referring now to Exhibit

5    9, again, your book on Concealed Carry, page 101,

6    where you're discussing, you see, a Georgia law from

7    1837?

8        A.       Right.

9        Q.       Do you recollect that law that you

10   discussed here?

11       A.       Yes.

12       Q.       Here's the page.

13       A.       Yes, I see it.

14       Q.       And I'll scroll through to see if you can

15   refresh your recollection on this.  I know you've

16   looked at it before.

17       A.       Yes.  It is a law that was

18   extraordinarily poorly written.  It talks about

19   carrying of deadly weapons, but it then exempts

20   carrying certain categories of deadly weapons which

21   shall be exposed plainly to view.

22       Q.       Yeah.  So, this Georgia law from 1837

23   banned carrying of all types of -- banned all carrying

24   of deadly weapons, does it not?



```
1                    REPORTER'S CERTIFICATE

2

3              I, Michele A. Durig, a Notary Public within

4    and for the State of Ohio, duly commissioned and

5    qualified, the officer before whom the foregoing

6    proceedings were taken, do hereby certify that the

7    foregoing transcript is a true and correct record of

8    the proceedings; that said proceedings were taken by

9    me stenographically and thereafter reduced to

10   typewriting under my supervision; and that I am

11   neither counsel for, related to, nor employed by any

12   of the parties to this case and have no interest,

13   financial or otherwise, in its outcome.

14             Certified by me this 22nd day of October,

15   2024.

16

17

18

19   _____

20   Michele A. Durig, RPR, Court Reporter
     My notary commission expires July 5, 2028
21

22

23

24
```



1    UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF RHODE ISLAND

3

4         I, ROXANNE C. COSTIGAN, do certify that
     pursuant to notice, there came before me on
5    October 11, 2024, VIA ZOOM PLATFORM, the following
     named person, to wit:  CLAYTON E. CRAMER, who was by
6    me duly sworn to testify to the truth and nothing but
     the truth as to his knowledge touching and concerning
7    the matters in controversy in this cause; that h3 was
     thereupon examined upon his oath and said examination
8    reduced to writing by me; and that the deposition is
     a true record of the testimony given by the witness,
9    to the best of my knowledge and ability.

10        I further certify that I am not a relative or
     employee of counsel or attorney for any of the
11   parties, or a relative or employee of such parties,
     nor am I financially interested in the outcome of the
12   action.

13        WITNESS MY HAND, this 17th day of October,
     2024.
14

15        _____
                Roxanne C. Costigan
16

17
     My Commission expires:  June 19, 2031
18

19

20

21

22

23

24



**In the Matter Of:**

O'NEIL vs NERONHA, ET AL.

23-cv-00070-WES-PAS

---

**CLAYTON CRAMER**

*October 17, 2024*

*Vol. II*

---



800.211.DEPO (3376)
EsquireSolutions.com

 1   with me.

 2

 3                    CLAYTON CRAMER,

 4   first duly sworn to tell the truth relating to said

 5   cause, testified remotely as follows:

 6

 7                    EXAMINATION

 8   QUESTIONS BY MR. ARGUIN:

 9      Q.   Okay.  Good morning, Mr. Cramer.  Thanks for

10   joining us again.

11      A.   Thank you.

12      Q.   Can you hear me okay?

13      A.   Yes.

14      Q.   Okay.  I won't repeat all the ground rules

15   we covered at the last deposition.

16           Do you recall those instructions we

17   discussed at the beginning of the last session?

18      A.   Yes.

19      Q.   Okay.  So bottom line, if you need me to

20   repeat a question or clarify a question, just let me

21   know.

22           And on that score, I understand from Mr.

23   Lyons that there was some matters you wanted to

24   clarify or adjust from our last session.  Please feel

25   free to go ahead and do that now.



1  Constitution guarantee of the right to keep and bear

2  arms.

3         So because it does say "But that so much of

4  it, as contains a prohibition against bearing arms

5  openly, is in conflict with the Constitution, and

6  void."  So open carry is protected by the Second

7  Amendment, but concealed carry is not protected.  They

8  can go ahead and suppress concealed carry.  We -- open

9  carry.

10     Q.   Does this opinion -- is this an example of a

11 law where they suppressed one form of public carry but

12 allowed another form of public carry?

13     A.   Well, that is the problem.  Some parts of

14 the law seem to prohibit open carry as well.  However,

15 other parts of the law say that open carry, these

16 weapons are not prohibited.

17         So like I said, it is a poorly written law.

18 At one point it seems to be trying to ban both

19 concealed and open carry, and then another part says

20 but open carry is not subject to being punished under

21 this law, so it is inconsistent.  It is a very

22 scrambled piece of logic.  It is one of the reasons

23 that the Georgia Supreme Court overturned it.

24     Q.   Okay.  But in the Georgia Supreme Court

25 decision they seem to be making a distinction between



1  a law that bans all forms of public carry and laws

2  that prohibit only one form of public carry?

3     A.   Right.  And that is the whole point of this

4  section is that laws that prohibited concealed carry

5  were considered permissible, because they left open

6  carry available as a method of carrying weapons for

7  self-defense.

8     Q.   Are you aware of any examples from your

9  research where there was a law that prohibited open

10 carry but allowed concealed carry?

11    A.   Not that I can think of.  Part of the reason

12 is that concealed carry was regarded as especially a

13 heinous sort of activity, because it was associated

14 with these problems of insults leading to unfair

15 advantages being taken by having a concealed weapon.

16         And open carry seems not to have

17 generally -- in the antebellum period.  In the

18 postbellum period open carry starts to become an issue

19 because black people are carrying arms openly.

20    Q.   But in the modern day is it true that states

21 have approached this in different ways in terms of

22 public carry; is that correct?

23    A.   They have.  In some states --

24    Q.   Sorry.

25    A.   Some states like California until -- until



CLAYTON CRAMER Vol. II                                    October 17, 2024
O'NEIL vs NERONHA, ET AL.                                           215

```
 1                    REPORTER'S CERTIFICATE

 2               I, TAYLOR KIDD, CSR No. 1214, Certified

 3   Shorthand Reporter, certify:

 4               That the foregoing proceedings were taken

 5   before me at the time and place therein set forth, at

 6   which time the witness was put under oath by me;

 7               That the testimony and all objections made

 8   were recorded stenographically by me and were

 9   thereafter transcribed by me or under my direction;

10               That the foregoing is a true and correct

11   record of all testimony given, to the best of my

12   ability;

13               I further certify that I am not a relative

14   or employee of any attorney or party, nor am I

15   financially interested in this action.

16               IN WITNESS WHEREOF, I set my hand and seal

17   this 31st day of October, 2024.

18

19

20               _Taylor Kidd_
                 _____

21               TAYLOR KIDD, CSR No. 1214

22               Notary Public

23               P.O. Box 4525

24               Pocatello, Idaho 83205

25               My Commission Expires 7/11/2029
```

