UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL O'NEIL, et al.<br>    Plaintiffs | )<br>)<br>) |
| Vs. | )   C.A. 23-cv-70 |
| PETER F. NERONHA, in his official capacity as<br>Attorney General of the State of Rhode Island, and<br>THE STATE OF RHODE ISLAND<br>    Defendants | )<br>)<br>)<br>)<br>) |

**PLAINTIFFS' STATEMENT OF DISPUTED FACTS**

Pursuant to LR Cv 56, Plaintiffs hereby respond to Defendants' Statement of Undisputed Facts as follows:

1. Admitted.

2. Admitted that Exhibit A is the Policy issued on January 23, 2021. Disputed to the extent the Attorney General's Office had issued a substantially identical Pistol Permit Policy when Plaintiffs had previously obtained or renewed their RIAG pistol permits. (Exhibit 15, Troiano Depo. pp. 31-32[1]).

3. Admitted.

4. Admitted that those factors are and were the factors the RIAG considered when it previously granted Plaintiffs' applications for their RIAG pistol permits and when the RIAG most recently denied Plaintiffs' applications to renew their RIAG pistol permits.

5. Disputed to the extent Plaintiff O'Neil's application was for a renewal of his RIAG permit, not an application for a new permit. (Plaintiffs' Exhibit 1 in support of their Motion for Summary Judgment.) Otherwise, admitted.

---

[1] To avoid confusion, Plaintiffs will identify their exhibits filed in support of their Motion for Summary Judgment and their Objection to Defendants' Motion *seriatim*, beginning here with Exhibit 15. Exhibits 15-24 are attached to Plaintiffs' Statement of Additional Undisputed Facts.

6. Admitted.

7. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

8. Admitted.

9. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

10. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

11. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

12. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

13. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

14. Admitted.

15. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

16. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

17. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

18. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

19. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

20. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

21. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

22. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

23. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

24. Admitted.

25. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

26. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

27. Admitted.

28. Admitted.

29. Disputed to the extent Plaintiff Cook's application was for a renewal of his RIAG permit, not an application for a new permit. (Plaintiffs' Exhibit 7). Otherwise, admitted.

30. Admitted.

31. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

32. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

33. Admitted.

34. Admitted.

35. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

36. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

37. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

38. Admitted.

39. Admitted.

40. Admitted.

41. Disputed to the extent Plaintiff Labriole's application was for a renewal of his RIAG permit, not an application for a new permit. (Plaintiffs' Exhibit 5). Otherwise, admitted.

42. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

43. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

44. Admitted.

45. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

46. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

47. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

48. Admitted.

49. Admitted.

50. Admitted.

51. Admitted.

52. Disputed to the extent Plaintiff Laporte's application was for a renewal of his RIAG permit, not an application for a new permit. (Plaintiffs' Exhibit 3). Otherwise, admitted.

53. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

54. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

55. Admitted.

56. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

57. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

58. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Disputed to the extent Plaintiff Patterson's application was for a renewal of his RIAG permit, not an application for a new permit. (Plaintiffs' Exhibit 4). Otherwise, admitted.

64. Admitted.

65. Admitted.

66. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

67. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

68. Admitted.

69. Admitted.

70. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

71. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

72. Admitted.

73. Admitted.

74. Disputed to the extent Plaintiff Patton's application was for a renewal of his RIAG permit, not an application for a new permit. (Plaintiffs' Exhibit 6). Otherwise, admitted.

75. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

76. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

77. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

78. Admitted.

79. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

80. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

81. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

82. Admitted.

83. Admitted.

84. Admitted.

85. Disputed to the extent Plaintiff Tremontozzi's application was for a renewal of his RIAG permit, not an application for a new permit. (Plaintiffs' Exhibit 2). Otherwise, admitted.

86. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

87. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

88. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

89. Admitted.

90. Plaintiffs state the referenced document is authentic and speaks for itself as a whole.

91. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

92. Plaintiffs state the referenced document is authentic and speaks for itself as a whole. Plaintiffs admit that the document contains the quoted language.

93. Admitted.

94. Admitted.

95. Admitted.

96. Admits Plaintiff Cook gave the quoted deposition testimony.

97. Admits Plaintiff Laporte gave the quoted deposition testimony.

98. Admits Plaintiff Patton gave the requested deposition testimony.

99. Admits Plaintiff Patterson gave the quoted deposition testimony.

100.    Admits Plaintiff Patterson gave the quoted deposition testimony.

101. Admits Plaintiff Trementozzi gave the quoted deposition testimony.

102. Admits Plaintiff Trementozzi gave the quoted deposition testimony.

103. Admits Plaintiff O'Neil gave the quoted deposition testimony.

104. Admits Plaintiff O'Neil gave the quoted deposition testimony.

105. Admits Plaintiff O'Neil gave the quoted deposition testimony.

106. Admits Plaintiff Labriole gave the quoted deposition testimony.

107. Admits Plaintiff Labriole gave the quoted deposition testimony.

108. Admits Plaintiff Labriole gave the quoted deposition testimony.

109. Admits Cramer gave the quoted deposition testimony.

110. Admits Cramer gave the quoted deposition testimony.

111. Admits Cramer gave the quoted deposition testimony.

112. Admits Cramer gave the quoted deposition testimony.

113. Admits Cramer gave the quoted deposition testimony.

Plaintiffs also dispute facts set forth in Defendants' Memorandum in Support of their Motion for Summary Judgment, as follows:

114. On pages 28-29, Defendants' Memorandum states: "For example, a 1642 provision in the colony of New Netherland (later New York) prohibited the drawing or displaying of knives. Spitzer Decl. at 12."

Response: First, the American traditions about arms bearing are English, not Dutch. Second, reading the law in full, instead of a carefully selected quote shows a larger issue. After discussing the underlying problem: "Whereas we hear daily, God help us, of many accidents, caused for most part by quarrels, drawing of knives and fighting… Therefore, we hereby ordain, decree and enact, agreeably to the ordinance made last year in Holland by the High and Mighty Lords States General,

8

that no one shall presume to draw a knife much less wound any person…"[2] This did not prohibit open carry but the drawing of a knife, apparently as a threat. *Drawing* a weapon is fundamentally different from *carrying* a weapon. If drawing a weapon is not brandishing, it is certainly "assault with a deadly weapon." (Cramer Declaration in support of Plaintiffs' Objection, ¶ 5-6, Exhibit 21).

115. On page 29, Defendants' Memorandum states: "1686 New Jersey law adopted "An Act Against Wearing Swords" and prohibited the wearing of 'pistols' and other specified weapons 'privately'—though it also levied penalties for the open carrying of weapons."

Response: *Bruen* specifically rejected the relevance of this law. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2145 (2022). (Id., ¶ 7-8).

116. On page 29, Defendants argue what they assert are American copies of the Statute of Northampton, including: "And several colonial governments adopted laws that 'mirrored the British Statute of Northampton, where the very fact of carrying a firearm was considered to be in terror of the people and was therefore prohibited by that statute.'"

Response: *Bruen* specifically rejected the relevance of these statutes. *Id.* at 2144. (Id., ¶ 9).

117. On page 29, Defendants' Memorandum states: "'In 1801, for example, Tennessee adopted a law that prohibited the carrying of quote any dirk, large knife, pistol or any other dangerous weapon' both privately and publicly. Rivas Decl. At 24."

Response: The selectively quoted statute reuses the language of the Statute of Northampton already rejected by *Bruen*. Worse, quoting only section 6 missed the larger purpose and narrow focus of the law. This was "An Act for the restraint of idle and disorderly persons… Whereas it becomes necessary for the welfare of the community, to suppress wandering, disorderly and idle persons…

---

[2] New York State, LAWS AND ORDINANCES OF NEW NETHERLAND, 1638-1674 33 (1868), https://babel.hathitrust.org/cgi/pt?id=coo1.ark:/13960/t83j4269t&seq=71, last accessed January 1, 2025.

endeavoring to maintain himself by gaming or other undue means…"[3] Tennessee passed a vagrancy law for "persons of ill fame or suspicious character." This was not aimed at the general population, but a particularly disreputable group. (Id., ¶ 10).

118.  On page 29, Defendants' Memorandum states: "Georgia enacted a similar law in 1837."

Response:  In no way was the 1837 Georgia law similar. It was not narrowly focused on a particular disreputable group, nor did it use the Statute of Northampton language. It also banned the sale of many types of weapons.[4] Regardless, the Georgia Supreme Court later held that broad statutory restrictions on open carry were unconstitutional. Nunn v. State, 1 Ga. 243 (1845). (Id., ¶ 11).

119.  On page 29, Defendants' Memorandum states: "Spitzer Decl. at 14 (quoting a 1694 Massachusetts law, a 1701 New Hampshire law, and an North Carolina 1792 collection of statutes)." (Id., ¶ 12).

Response: Spitzer cites a 1694 Massachusetts law that does not exist, at least in the published version. "1694 Mass. Laws 12, no. 6, An Act for the Punishing of Criminal Offenders." It is unclear if Spitzer means ch. 12, or ch. 6. Ch. 6: "An Act For Highwayes,"[5] or Ch. 12: "An Act

---

[3] 1801 Tenn. Laws 259, 260-261, ch. 22, § 2.
[4] 2 A Digest Of The Statute Laws Of The State Of Georgia : In Force Prior To The Session Of The General Assembly Of 1851 / Compiled And Published Under The Authority Of The General Assembly By Thomas R.R. Cobb 848. (1851), https://babel.hathitrust.org/cgi/pt?id=njp.32101044496683&seq=200&q1=%22manufactured+and+sold+for+the+purpose+of+wearing,+or%22, , last accessed January 1, 2025.
[5] Id. at 136, https://books.google.com/books?id=ouEwYQ-FKtUC&newbks=1&newbks_redir=0&dq=For%20the%20better%20amending%20and%20keeping%20in%20repair%20and%20clear%20the%20highways%20and%20common%20roads%20acts%20and%20resolves%20of%20the%20province%20of%20massachusetts&pg=PA136#v=onepage&q=For%20the%20better%20amending%20and%20keeping%20in%20repair%20and%20clear%20the%20highways%20and%20common%20roads%20acts%20and%20resolves%20of%20the%20province%20of%20massachusetts&f=false, last accessed January 1, 2025.

10

For A New Establishment And Regulation Of The Chancery."[6] Spitzer cites a 1701 New Hampshire law that does not exist. "1701 N.H. Acts and Laws 15." The session laws do not have chapter numbers so we must assume he means p. 15: which has laws prohibiting rape, willful burning, and adultery.[7] Spitzer cites a book as purportedly collecting North Carolina Statutes. That 1792 collection was of English statutes not North Carolina laws, including the *Bruen*-rejected Statute of Northampton. Spitzer has frequently misrepresented this as a North Carolina session law. Rephrasing this as "North Carolina 1792 collection of statutes" does nothing to save this. (Id., ¶ 13-15).

120.    On page 30, Defendants' Memorandum states: "And the 1850s, Pennsylvania, Hawaii, and the District of Columbia criminalized the carrying of firearms or other specified deadly weapons, whether they were carried in a concealed manner or openly."

Response: The *Kingdom* of Hawaii has nothing to do with American legal tradition.[8] The District of Columbia ordinance is less clear than Spitzer would like. The title is, "An act to prevent the carrying of concealed *and* dangerous weapons in the City of Washington." [emphasis added] The text of the law might be read as banning all carry of a list of deadly weapons, but the title can be

---

[6] Id. at 144, https://books.google.com/books?id=ouEwYQ-FKtUC&newbks=1&newbks_redir=0&dq=%22%E2%80%9CAn%20Act%20For%20A%20New%20Establishment%20And%20Regulation%20Of%20The%20Chancery.%E2%80%9D%20massachusetts&pg=PA144#v=onepage&q=%22%E2%80%9CAn%20Act%20For%20A%20New%20Establishment%20And%20Regulation%20Of%20The%20Chancery.%E2%80%9D%20massachusetts&f=false, last accessed January 1, 2025.

[7] 1 LAWS OF NEW HAMPSHIRE 15 (1904), https://babel.hathitrust.org/cgi/pt?id=mdp.39015047789402&seq=121, last accessed January 1, 2025.

[8] Kingdom of Hawaii, THE CIVIL CODE OF THE HAWAIIAN ISLANDS, ch. 1 (1859), https://books.google.com/books?id=eNxIAQAAMAAJ&pg=PA5&dq=%22The+King,+The+Nobles,+And+The+Representatives+Of+The+Hawaiian+Islands+%22&hl=en&newbks=1&newbks_redir=0&sa=X&ved=2ahUKEwjdmoecn8OHAxUYEjQIHfwUBXIQ6AF6BAgJEAI#v=onepage&q=%22The%20King%2C%20The%20Nobles%2C%20And%20The%20Representatives%20Of%20The%20Hawaiian%20Islands%20%22&f=false, last accessed January 1, 2025.

equally read as banning the carrying of weapons that are both concealed *and* dangerous. Certainly, people were carrying concealed pistols in D.C. at the time. An accidental discharge on the floor of the House in 1860 shows this:

> The gentleman from Virginia had alluded to fact that a firearm had fallen on the floor. It was due to truth to say that, about the time he was talking somewhat excitedly in reference to the harsh and unjust remark by his colleague, a pistol in his breast-pocket accidentally fell to the floor. No man who knew him believed that he would use a pistol except in an honorable way. He regretted that this accident had occurred. He put the pistol in his pocket last night about twelve o'clock, to protect himself, if necessary, for he resided in the neighborhood of English Hill, where out rages have been committed, and wanted to feel secure in going home. Until he came to Washington, he bad never thought it necessary to be armed. He did not carry a pistol for any purpose here, but for his protection while passing through this sometimes violent city. He had seen occasions when, to protect one's self from insult, it was necessary to carry firearms.[9]

(Id., ¶ 16-17).

121.     On page 30, Defendants' Memorandum states: "For example, an 1850 North Carolina measure imposed a one-dollar tax on all pistols and other weapons "'worn or carried about the person of the owner.' Spitzer Decl., Ex. C at 97."

Response: Not on p. 97 in Spitzer Exhibit C, and not from 1850. It is on p. 91 of Exhibit C. Spitzer lists three North Carolina laws adopted between 1856 and 1859, all identified as "An Act Entitled 'Revenue.'" The 1866 version was also explicitly a revenue measure: "That for the support of the State Government, and to meet appropriations made by law, a tax shall be levied upon the subjects embraced in the following schedule, to be listed and paid as shall be directed by law." It taxed harps, pianos and carrying a "dirk, bowie-knife, pistol, sword-cane, dirk-cane and rifle-cane…" (Id., ¶ 18).

---

[9] An Excitement, *Holmes County* [Ohio] *Republican*, Jan. 26, 1860, 1, https://chroniclingamerica.loc.gov/lccn/sn84028820/1860-01-26/ed-1/seq-1/, last accessed December 11, 2024.

Respectfully submitted,

**PLAINTIFFS,**
By their attorneys,

/s/ *Thomas W. Lyons*
Thomas W. Lyons          #2946
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

/s/ *Frank R. Saccoccio*
Frank R. Saccoccio Esq. #5949
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island 02919
(401) 944-1600 * 942-8921 Fax
Frank.CSLawOffice@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons