# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **MICHAEL O'NEIL, et al.**<br><br>*Plaintiffs*,<br><br>v.<br><br>**PETER F. NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and THE STATE OF RHODE ISLAND**<br><br>*Defendants*. | **C.A. No. 23-cv-00070-WES-PAS** |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE

Plaintiffs move to exclude evidence from the Duke Center for Firearms Law's Repository of Historical Gun Laws ("the Duke Repository") and HeinOnline as "inadmissible hearsay" and to strike the State's proffered testimony from Professor Robert Spitzer, who used both the Duke Repository and Hein Online in preparing his expert declaration. Plaintiffs' motion should be denied in its entirety. The Duke Repository and HeinOnline are nationally recognized research tools allowing experts like Professor Spitzer to readily access the historical laws underlying their opinions on the history of firearms regulation. The laws compiled within the Duke Repository and HeinOnline and relied upon in Professor Spitzer's declaration are not hearsay. Such laws are routinely subject to judicial notice. Moreover, even if hearsay, Spitzer's use of the Duke Repository and HeinOnline would be permitted under Federal Rule of Evidence 803(17) as a compilation generally relied upon by legal historians as well as under Rule 703 as evidence upon which experts in the field would reasonably rely. For these reasons, Plaintiffs' motion in limine should be denied.

I.    **Professor Spitzer's Testimony Relies on Historical Statutes, Regulations, and Ordinances Subject to Judicial Notice.**

Professor Spitzer's citations to statutes compiled in the Duke Repository are not hearsay because he is not citing the Duke Repository for the truth of any statements therein but rather using the database to locate relevant historical statutes, ordinances, and regulations.  Professor Spitzer's expert opinion relies on the text of the laws, and those laws are not hearsay.  "[W]hen a copy of a [law] is placed in the record, it is not 'evidence' nor is it fact," and the court "may take judicial notice of law at any time."  *Berrios-Romero v. Estado Libre Asociado de Puerto Rico*, 641 F.3d 24, 27 (1st Cir. 2011).

Judicial notice is appropriate here.  Indeed, this Court is "bound to take judicial notice, without plea or proof" of "[t]he law of any state of the Union, whether depending upon statutes or upon judicial opinions."  *Lamar v. Micou*, 114 U.S. 218, 223 (1885).  Federal courts may also take judicial notice of state regulations, *Roemer v. Board of Public Works of Maryland*, 426 U.S. 736, 742 n.4. (1976) (taking judicial notice of rules and regulations adopted by the Maryland Board of Public Works); § 201:4 Judicial notice: ascertaining the appropriate law, 2 Handbook of Fed. Evid. § 201:4 (9th ed.), and city ordinances, *United States v. Alexander*, 467 Fed. Appx. 355, 360-61 (6th Cir. 2012) ("Most circuits that have spoken on the issue confirm that [judicial notice] applies to local and municipal law.").[1]  Other courts considering Second Amendment challenges have

---

[1] The First Circuit has suggested, in dicta, that "Municipal ordinances and private codes referred to in statutes historically have not been included within this general rule of judicial notice of law. Under traditional rules, even a municipal ordinance must be put into evidence."  *Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320.  However, as the Sixth Circuit recognized in *Alexander*, the *Getty Petroleum* court was asked to take notice "where a party had failed to produce any copy whatsoever of a private, non-governmental code of safety standards," not a municipal ordinance actually produced to the court. *Alexander*, 467 Fed. Appx. at 360 n.5.  Moreover, increased access to such laws via the internet renders *Getty*'s reasoning obsolete.  2 Graham's Handbook of Federal Evidence § 201:4 (9th ed.) ("The taking of judicial notice of such items is said to rest in the court's discretion; a discretion likely to become a

taken judicial notice of similar laws, including many of the same laws referenced in Professor Spitzer's report.  See *Baird v. Bonta*, 709 F. Supp. 3d 1091, 1100 (E.D. Cal. 2023), *appeal filed*, (9th Cir. Feb. 1, 2024).

For the Court's convenience, digitized copies of the historical statutes at issue are attached to the State's accompanying Motion for Judicial Notice.  Regardless of how these statutes are accessed, whether via the Duke Repository, HeinOnline, Internet Archive, HathiTrust, a state archive, or other research platform, the laws are not hearsay and remain subject to judicial notice. Indeed, were it otherwise, parties would not be allowed to rely on laws accessed through commonly used research platforms, such as Westlaw or Lexis, or referenced in secondary sources, like Wright and Miller's Federal Practice and Procedure.   There is no such prohibition against citing laws accessed via databases, and thus this Court should deny Plaintiffs' motion to exclude these historical laws from the record.

## II.    Laws Found on the Duke Repository and HeinOnline Are Admissible Evidence Under Rule 803(17) as Part of a Compilation Generally Used and Relied Upon by Legal Historians.

Even if citations to an online compendium of laws constituted hearsay, the laws accessed through the repository would still be admissible as a "list[], director[y], or other compilation[] that [is] generally relied on by the public or by persons in particular occupations."  Fed. R. Evid. 803(17).   The First Circuit has previously applied the 803(17) exception to admit similar

--------------------------------------------------------------------

requirement as the internet makes the easy accurate ascertainment of such governing laws readily available.") (citing *Getty*, 391 F.3d at 333-34 (1st Cir. 2004) (Lipez, C.J., concurring) ("Where this law can be readily retrieved from a simple citation, providing that citation to the court will usually suffice.")). *See also* 1 Mueller & Kirkpatrick's Federal Evidence § 2:13 (4th ed.) ("Federal courts are sometimes reluctant to notice municipal ordinances, although notice generally is taken when the ordinance is readily accessible in compiled form.").

Even if Defendants were required to submit the city ordinances as evidence, the versions submitted with this response would be admissible under Rule 803(8)'s public records exception to hearsay, which Plaintiffs concede would admit "statutes and ordinances compiled and published by a state or local government." Plfs.' Memo. in Supp. of His Mot. in Limine. ECF No. 33-1 at 6.

compilations of historical sources.  For instance, in *United States v. Mount*, 896 F.2d 612, 625 (1st Cir. 1990), the Court admitted *The Collected Works of Abraham Lincoln* as a reliable source for locating original Lincoln documents where the expert testified that those in her trade used the collection for such a purpose.  Likewise, in this case, Professor Spitzer has testified that the Duke Repository is "generally regarded as a highly reliable, extremely scrupulous compendium" for locating old laws.  Spitzer Depo. at 42:18-23, ECF No. 33-2.  Thus, even if hearsay, the Duke Repository would be admissible as a "compilation[] generally used and relied upon . . . by persons in [the] particular occupation[]" of legal history.

Professor Spitzer is not alone in relying on the Duke Repository to locate historical gun laws and regulations.  For example, Joseph Blocher, faculty co-director for the Duke Center for Firearms Law, has testified before the Senate Judiciary Committee on the long history of gun regulation in this country, citing the Duke Repository for its collection of "more than 1,600 historical gun laws from the Medieval Age through the 1930s."  Written Testimony of Joseph Blocher, Lanty L. Smith Professor of Law, Duke University Law School, *After the Highland Park Attack: Protecting Our Communities from Mass Shootings: Hearing Before the Sen. Comm. on the Judiciary*, 117th Cong. at 2 n.7 (July 20, 2022), https://www.judiciary. senate.gov/committee-activity/hearings/after-the-highland-park-attack-protecting-our-communities-from-mass-shootings.  Federal courts have likewise relied on the Duke Repository, which has been cited in opinions issued by the First, Third, Fourth, Fifth, and Ninth Circuits.  *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 49 n.17 (1st Cir. 2024);  *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122, 147 (3d Cir. 2024) (Restrepo, J., dissenting), *vacated on other grounds and remanded sub nom. Paris v. Lara*, 2024 WL 4486348; *Bianchi v. Brown*, 111 F.4th 438, 465 n.3 (4th Cir. 2024); *United States v. Daniels*, 77 F.4th 337, 344 (5th Cir. 2023), *vacated on other*

*grounds and remanded*, 144 S. Ct. 2707 (2024); *Jones v. Bonta*, 35 F.4th 704, 753 (9th Cir. 2022) (Stein, J., dissenting in part).  The Fourth Circuit explicitly thanked the Duke Center for its "good work . . . in building its Repository of Historical Gun Laws," *Bianchi*, 111 F.4th at 465 n.3, while the Fifth Circuit labelled the repository a "notable repositor[y] of historical gun laws," *Daniels*, 77 F.4th at 344.  District courts have similarly recognized the value of the Duke Repository.  The District of Nevada, for instance, called the Duke Repository "a reliable source that is consistently updated with new research," 2024 WL 4432818, at *6 (D. Nev. Oct. 7, 2024), while the Northern District of New York recommended that other district courts rely on the Duke Repository as a finding aid alongside another database, such as HeinOnline, to obtain PDF copies of the laws once identified.  *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 297 n.72 (N.D.N.Y. 2022), *vacated in part on other grounds and remanded*, 120 F.4th 941 (2d Cir. 2024).

Plaintiffs offer no persuasive rationale for why this Court should not follow its sister courts' example and advice in recognizing the Duke Repository as a valuable tool in undertaking the historical analysis required by the *Bruen* standard.  *See Antonyuk*, 639 F. Supp. 3d at 297 n.72 (noting that the Duke Repository is "the sole public database of such historical gun laws" identified by the court).  Any ancillary questions Plaintiffs' may have about the Duke Repository's origins and maintenance are readily answered on the repository website, cited by Plaintiffs' own expert Clayton Cramer in his declaration submitted in support of the Motion in Limine.  *See* About the Repository, *Duke Center for Firearms Law* (last accessed Dec. 12, 2024), https://firearmslaw.duke.edu/repository-of-historical-gun-laws/about-the-repository; ECF No. 33-4 at ¶ 25 (citing Historical Gun Laws, *Duke Center for Firearms Law*, https://firearmslaw.duke.edu/repository-of-historical-gun-laws).

Likewise, HeinOnline—whose reliability Plaintiffs also challenge—is recognized as "a premier online database," Rhode Island State Law Library, *Library Services for the Legal Community* (2024), https://www.courts.ri.gov/programs-services/Documents/Library ServicesForTheLegalCommunity.pdf, cited by numerous courts for historical laws, *e.g.*, *Bin-Jiang Tao v. Citibank, N.A.*, 445 Fed. Appx. 951, 956 (9th Cir. 2011); *Nelson v. Town of Johnsbury Selectboard*, 198 Vt. 277, 285 n.5 (2015); *Amber Intern. Nav., Inc. v. Reprinter Intern. Shipping Co., S.A.*, 2009 WL 1883251, at *4 n.8, *5 n.9 (S.D.N.Y. June 30, 2009). HeinOnline has received many awards from the American Association of Law Libraries, New Product Award, American Association of Law Libraries (2024), https://www.aallnet.org/community/recognition/awards-program/new-product-award, and is recommended as a valuable resource for legal research by the Library of Congress, *Federal Statues: A Beginner's Guide*, *Library of Congress*, https://guides.loc.gov/federal-statutes/session-laws, the Rhode Island Supreme Court Law Library, *Library Services for the Legal Community* (2024), https://www.courts.ri.gov/programs-services/Documents/Library ServicesForTheLegalCommunity.pdf, and law schools across the country, *State Legislative Information*, *Stanford Law School* (Dec. 2, 2024 12:27 PM), https://guides.law.stanford.edu/locatingstatematerials; *Guide to Legal History Databases*, *Georgetown Law* (Sept. 2022), https://guides.ll.georgetown.edu/legalHistory; *What is Hein Online?*, *Purdue University Northwest* (Dec. 18, 2024 8:58 AM), https://guides.pnw.edu/c.php?g=1000437&p=7243634; *Law Journals: Source Pulling and Cite-Checking Resources for Staff Members, Columbia Law School* (Sept. 7, 2024 2:07 PM), https://guides.law.columbia.edu/c.php?g=1360008&p=10122669; *Researching Legislative History*, *Yale Law School*, https://library.law.yale.edu/research-guides/researching-legislative-

history; *Environmental Law*, *UChicago Library* (Aug. 21, 2024 2:43 PM), https://guides.lib.uchicago.edu/c.php?g=297411&p=2680412.

The consensus is clear: the Duke Repository and HeinOnline are compilations of historical laws "generally used and relied upon" by legal historians. Thus, if either were considered hearsay, they would be admissible under Rule 803(17).

## III. Professor Spitzer's Citations to the Duke Repository and HeinOnline Are Permitted Under Rule 703 as Evidence Experts in the Field Would Reasonably Rely Upon

Finally, even if laws compiled by the Duke Repository or HeinOnline were hearsay and not otherwise admissible—though neither is hearsay, let alone inadmissible hearsay—Professor Spitzer's expert opinion would still be admissible under Rule 703. Professor Spitzer's expert opinion reviews numerous primary and secondary sources, as would any expert rendering an opinion on legal history—including the Plaintiffs' own expert, Mr. Cramer. In reviewing those sources, he was free to use nationally renowned databases like the Duke Repository or HeinOnline to locate historical statutes, and no case cited by Plaintiffs says anything to the contrary. Finally, any issue Plaintiffs take with Professor Spitzer's citations or contextualization of his sources go to the weight, not the admissibility, of his opinion. Thus, this Court should deny Plaintiffs' motion to exclude Professor Spitzer's testimony.

### A. Professor Spitzer's expert opinion draws from a variety of primary and secondary sources, consistent with a generally accepted historical methodology.

The Federal Rules of Evidence expressly permit experts to rely on inadmissible evidence, including hearsay, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703; *United States v. Pérez-Vásquez*, 6 F.4th 180, 198 (1st Cir. 2021) ("'properly qualified experts whose work is based on reliable principles and methods may rely on inadmissible hearsay evidence in forming an expert opinion'"

as long as they "'relay that opinion, once formed, through their own testimony.'") (quoting *United States v. Sandoval*, 6 F.4th 63, 86 (1st Cir. 2021)).  "[I]t is the process of amalgamating the potentially testimonial statements . . . that separates admissible [expert] opinion . . . from an inadmissible transmission of testimonial statements."  *Id*. (quoting *United States v. Rios*, 830 F.3d 403, 418 (6th Cir. 2016)) (alterations in the original).

Professor Spitzer's testimony presents precisely the sort of amalgamation permitted under Rule 703.  Professor Spitzer cites the Duke Repository once in his report, as one of several platforms, including HeinOnline, for accessing the laws compiled in Table 1: Colonial, State, and Territorial Weapons Brandishing and Display Laws in 36 States, 1642-1931. Spitzer Decl. 17, ECF No. 34-3. He also cites the Duke Repository in his supporting exhibits as a platform for accessing some of the laws compiled in Exhibit B: Types of Carry Restriction Laws (Years of Enactment), ECF No. 34-4 at 56; Exhibit C: Dangerous Weapons Laws, *id*. at 116, 180, 190, 193; Exhibit D: Table of Weapons Licensing Laws, *id*. at 198; Exhibit E: License and Licensing Laws, *id.* at 314; Exhibit F: Firearm Hardware Restrictions Table (Years of Enactment), *id*. at 317; and Exhibit G: Machine Gun and Semi-Automatic Firearms Laws, *id*. at 361.  Professor Spitzer testified at deposition that the laws he accessed via the Duke Repository constitute primary source material, and that over the past ten years, he has located PDF copies of various statutes within the Duke Repository and found no substantive errors.  Spitzer Depo. at 42:13-43:21, ECF No. 33-2. He further testified that the Duke Repository "is generally regarded as a highly reliable, extremely scrupulous compendium of old laws."  *Id*. at 42:18-20.  In addition to statutes located on the Duke Repository, he cited statutes located via HeinOnline, caselaw, and journal publications.  Spitzer Decl. 17, ECF No. 34-3.  He also cited to various secondary sources in his declaration, such as Carl T. Bogus's *Madison's Militia*, *id*. at 38 n.132, Randolph Roth's *American Homicide*, *id*. at 6

n.5, Sam B. Warner's "The Uniform Pistol Act," 7 n.8, and his own scholarship, *id.* at 1 n.1, 6 n.5, 7 n.7.

Professor Spitzer's review of these sources led him to the conclusion that, "[t]aken together, these numerous and varied laws make clear that the default in American history was weapons regulation and restriction." *Id.* at 5. There is no contention that Professor Spitzer is citing hearsay evidence merely to "parrot[] the conclusions of others," but rather he "present[s] [his] independent judgment and specialized understanding" of the historical record before him. *United States v. Sandoval*, 6 F.4th 63, 87 (1st Cir. 2021) (rejecting hearsay challenge to expert opinion based on conversations with law enforcement officers) (internal quotations omitted). The First Circuit has recognized that such reliance on primary and secondary sources "is consistent with generally accepted historical methodology," and thus Professor Spitzer has "fulfilled the historian's role of 'surveying a daunting amount of historical sources,' evaluating their reliability, and providing a basis for a 'reliable narrative[] about the past.'" *United States v. Kantengwa*, 781 F.3d 545, 562 (1st Cir. 2015). *See also Alabama State Conference of the NAACP v. Alabama*, 2020 WL 579385, at *4 (M.D. Ala. Feb. 5, 2020) (reliance on secondary sources did not render expert testimony on history of judicial selection unreliable). Using nationally recognized databases such as the Duke Repository and HeinOnline is perfectly consistent with that methodology. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 2017 WL 5905509, at *7 (D.D.C. Nov. 28, 2017) (admitting expert testimony relying on a database considered a "premiere independent source[]" archiving "traditional print and digital media"); *cf. In re Ballantyne Brands, LLC*, 656 B.R. 117, 149 (Bankr. W.D.N.C. Oct. 2, 2023) (admitting expert testimony relying on a "reliable database service with 50 million plus wage data points" due to its "national scope" and "specificity").

9

Moreover, Plaintiffs' expert, Mr. Cramer, testified at deposition that he engages in a similarly mixed methodology, citing to both primary and secondary sources in forming his own opinions. Cramer Depo. Vol. I at 63:12 (Exhibit A) (admitting to using secondary sources in his expert report in this case). Mr. Cramer further testified that he does not always check the primary source for information gathered in databases he deems reliable. Cramer Depo. Vol. I at 66:1-67:15 (Exhibit A) (admitting to using the *USA Today* mass killing database without verifying all of its primary sources). In fact, Mr. Cramer has testified to using the Duke Repository when gathering laws to prepare his own historical opinions in other Second Amendment cases. Decl. of Clayton E. Cramer in *United States v. Fowler*, Case No. 1:23-cr-165 (E.D. Va.), ECF 31-1 at 2-3 (Exhibit B). Plaintiffs' motion would thus hold Defendant's experts to a more stringent methodology than their own expert would follow, presenting a classic case of "do what I say, not as I do." This Court should reject such a double standard.

Plaintiffs' counterargument focuses on the final sentence of Rule 703, which addresses whether otherwise inadmissible evidence may be disclosed to a jury. Fed. R. Evid. 703. The "substantially outweighs" test Plaintiff puts forward does not limit the evidence Professor Spitzer may consider in forming his expert opinion. It only comes into play if and when Defendants attempt to present the evidence to a jury. "When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose," and Rule 703 recognizes as much "in limiting the admissibility of such evidence only as to juries." *Ambrose v. Roeckeman*, 749 F.3d 615, 621 (7th Cir. 2014). Regardless, Plaintiffs identify no prejudicial effect from citing laws accessible via the Duke Repository or HeinOnline, and any imaginable prejudice would be cured by the Defendants' production of the laws in question with their accompanying

Motion for Judicial Notice. *Cf. Berrios-Romero*, 641 F.3d 24, 27 (1st Cir. 2011) (taking judicial notice of district court opinion though proponent failed to offer an English copy as required by local rules where appellate counsel remedied the error).

### B. Plaintiffs' caselaw on unreliable databases in fields other than history is inapplicable to the Duke Repository, an academically curated database in the field of history.

The database caselaw cited by Plaintiffs is likewise off-base. The Rule 703 determination is "context-specific." *United States v. Chase*, 2005 WL 6733654, at *21 (D. Vt. Sept. 16, 2005). The admissibility determination looks to the type of evidence "*reasonably relied upon by experts in the particular field*." *United States v. Corey*, 207 F.3d 84, 89 (1st Cir. 2000) (citing Fed. R. Evid. 703) (emphasis added by the court). Yet none of the cases cited by the Plaintiffs involve the field of history or comparable repositories of primary sources.

For example, Plaintiffs' "leading case," *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 126 (M.D. Pa. 2015), was a contract dispute involving expert testimony on financial damages. The plaintiffs in that case had destroyed their records, forcing their experts to rely on speculative sales projections—projections which the experts failed to verify. *Id*. at 128. The court found those projections "highly self-serving" and refused to admit expert testimony "drawn from a well that Plaintiffs themselves had poisoned" by intentionally destroying records. *Id*. at 125, 138. Moreover, the experts continued to use the projections after the actual sales data were recovered and proved the projections overinflated. *Id*. at 141. The court found this decision "exceedingly questionable" and the reliance on such "flawed ballpark guesstimates" rather than actual sales data "highly unreasonable." *Id*. at 141.

*Bruno* has no bearing on this case, which does not involve financial projections or "guesstimates" of any kind. Professor Spitzer relied on actual laws, as would any scholar of legal history, gathered from a database curated by a renowned academic institution. References to those

11

laws, with links to the texts, are included in Professor Spitzer's Supplemental Declaration, submitted with this Response. Spitzer Suppl. Decl. (Exhibit C).  PDF versions of the laws at issue are also attached as exhibits to the State's accompanying motion for judicial notice.  "[W]hile Plaintiff[s] focus[] on the possibility that [Professor Spitzer] has not independently verified underlying facts on which he bases his opinion, it disregards that the facts themselves are indeed reliable." *Shire Viropharma Inc. v. CSL Behring LLC*, 2021 WL 1227097, at \*11, n.5 (D. Del. Mar. 31, 2021) (distinguishing *Bruno*).  The reliability of the underlying facts—i.e., the self-evident existence of the laws Professor Spitzer reviews—easily distinguishes this case from *Bruno*.

Plaintiffs' other citations are similarly inapposite.  *See Beam v. Watco Transloading, LLC*, 639 F. Supp. 3d 791, 800 (S.D. Ill. 2022) (in medical billing context, database of insurance reimbursement rates not credible evidence of what providers actually charge for services); *Swiercynski v. Arnold Foods Co.*, 265 F. Supp. 2d 802, 811-12 (E.D. Mich. 2003) (in contract damages context, expert's deposition testimony disavowed the only database underlying his estimate of plaintiff's owner-operator equity interest); *Stender v. Lucky Stores, Inc.*, 803 F. Supp. 259, 328-29 (N.D. Cal. 1992) (in sex discrimination context, databases constructed from small and poorly designed surveys and in violation of stipulated-to requirements were deemed unreliable); *Stricker v. Secretary of Health and Human Services*, 170 Fed. Cl. 701, 717-18 (Ct. Cl. 2024) (citing *Tompkins v. Sec'y of Health & Hum. Servs.*, 117 Fed. Cl. 713, 721 (2014)) (in medical causation context, database unreliable where it had no data on the base rate for adverse reactions); *In re Med Diversified, Inc.*, 346 B.R. 621, 630-31 (Bank. E.D.N.Y. 2006) (in bankruptcy valuation context, expert analysis excluded where it "relied heavily on a very small database of publicly held companies" and "was applied in a manner that was skewed to disfavor" the opposing party).  In contrast to those cases, Professor Spitzer offered his expert opinion in a legal history context by

reviewing actual laws accessed through reliable databases such as the Duke Repository and HeinOnline.

   C.  Alleged citation errors do not render the substance of Professor Spitzer's expert opinion unreliable.

Plaintiffs also nitpick various citations on the Duke Repository and HeinOnline, but those critiques do not go to the substance of the sources underpinning Professor Spitzer's testimony. Any citation errors are of no consequence as Defendants are providing verifiable PDFs of the statutes at issue with their accompanying Motion for Judicial Notice as well as a Supplemental Declaration from Professor Spitzer with links to the sources. Indeed, Plaintiffs' own Motion in Limine shows that the alleged citation errors did not prevent Plaintiffs from attempting to rebut Professor Spitzer's testimony. For example, Plaintiffs claim that an 1821 Maine law does not appear at the location cited in Professor Spitzer's report, and yet the Plaintiffs were apparently able to locate the statute because they take issue with Professor Spitzer's interpretation of its text. ECF No. 33-1 at 5. And once again, Plaintiffs are throwing stones from a glass house as their expert freely admits to having made similar citation errors himself. Cramer Depo. Vol. I at 84:14 (Exhibit A). Nonetheless, Mr. Cramer testified that such administrative errors did not detract from the overall reliability of his opinion. *Id*. at 89:24-91:5.

In any case, courts do not demand 100% accuracy for a source to be considered reliable for expert testimony. *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 953 (N.D. Ill. 2010). In *Walden*, for example, the court rejected a similar challenge to an expert's methodology "because the search engines used by [expert] are not always accurate." *Id*. In rejecting that argument, the court recognized that "[t]he same can be said, however, of almost any research method." *Id*. The court also found the expert's "reliance on computer searches of databases, as well as the sources found through those searches . . . reasonable given that it is a common way for academics to do

research." *Id.* (citing Rule 703). Professor Spitzer was likewise justified in using the Duke Repository and HeinOnline to locate historical laws informing his expert opinion.

    D.  <u>Plaintiffs' differing interpretation of laws underlying Professor Spitzer's expert opinion goes to the weight, not the admissibility, of that opinion.</u>

Plaintiffs also claim Professor Spitzer quoted statutes out of context. Contextualizing Professor Spitzer's testimony is a matter for cross-examination and goes to the weight, not the admissibility, of his expert evidence. "'Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded.' Rather, the testimony should be admitted, and any remaining challenges merely go to the weight, as opposed to the admissibility, of the expert testimony." *United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018). In *Ramer*, the Sixth Circuit rejected a challenge to an expert who relied on "decades of self-reported data from numerous sources." *Id.* Specifically, the court held that any argument about theoretically better sources of data "merely go to the weight, as opposed to the admissibility, of the expert testimony." *Id.* "The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion." *International Adhesive Coating Co., Inc. v. Bolton Emerson Intern., Inc.*, 851 F.2d 540, 545 (1st Cir. 1988). Plaintiffs will have that opportunity at trial.

* * * * *

In sum, Plaintiffs may quibble about a citation or a quotation, but the Federal Rules of Evidence are clear that "an expert opinion is not inadmissible simply because the court or a party's lawyer can pose sensible questions challenging whether the expert's conclusions follow from the support he or she provided." *Collision Communications, Inc. v. Nokia Solutions and Networks OY*, 691 F. Supp. 3d 360, 368 (D.N.H. 2023). Indeed, the Advisory Committee notes to the 2023

Amendments to Rule 702 clarifies that "nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support.  The Rule 104(a) standard does not require perfection."  Fed. R. Evid. 702 advisory committee notes to 2023 amendments.  Rather, "[i]t is up to the parties to present their competing arguments for and against the other's opinion to the jury, and for the jury to decide which opinion is superior by assigning weight and credibility to the expert testimony." *Collision Communications*, 691 F. Supp. 3d at 369.  Thus, this Court should deny Plaintiffs' motion to exclude Professor Spitzer's testimony and its basis on the Duke Repository and HeinOnline—both eminently respected research tools in the field of legal history research—and allow the factfinder to decide which testimony is the most credible.

## CONCLUSION

For all of these reasons, Plaintiffs motion to exclude laws located through the Duke Repository or HeinOnline as well as to exclude Professor Spitzer's expert opinion based on those laws should be denied.

Dated: January 6, 2025

Respectfully Submitted,

PETER F. NERONHA
and THE STATE OF RHODE ISLAND,

By their Attorneys,

*/s/ James J. Arguin*
James J. Arguin (#10972)

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (#10742)

Special Assistant Attorneys General
Office of the Attorney General
150 South Main Street
Providence, R.I. 02903
(401) 274-4400 exts. 2078 | 2074
(401) 222-2995 (Fax)
jarguin@riag.ri.gov | pmeosky@riag.ri.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ James J. Arguin*