## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**MICHAEL O'NEIL, et al.**

    *Plaintiffs*

**v.**

**PETER F. NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and THE STATE OF RHODE ISLAND**

    **Defendants.**

**C.A. No. 23-cv-00070-WES-PAS**

### DEFENDANTS' STATEMENT OF DISPUTED FACTS IN RESPONSE TO (1) PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS AND (2) PLAINTIFFS' STATEMENT OF DISPUTED FACTS

Pursuant to LR Cv 56, Defendants hereby respond to (1) Plaintiffs' Statement of Additional Undisputed Facts and (2) Plaintiff's Statement of Disputed Facts as follows:

### Response to Plaintiffs' Statement of Additional Undisputed Facts (ECF No. 41)

| No. | Plaintiffs' Statement | State's Response |
|---|---|---|
| 1 | Plaintiffs' RIAG CCW permit applications that Defendants denied were all applications to renew CCW permits that Defendants had previously issued. (Plaintiffs' Declarations filed in support of Plaintiffs' Motion for Summary Judgment, Exhibits 1-7)). | Undisputed. |
| 2 | Defendants denied Plaintiffs' applications because Plaintiffs had municipal CCW permits and did not "need" the RIAG permits. (Id.). (Troiano Depo., p. 35, excerpts attached as Exhibit 15; Saccoccio Affidavit attached as Exhibit 16, ¶ 2). | Undisputed that one of the reasons for denying Plaintiffs' applications was because they failed to demonstrate a special need for a pistol permit from the Attorney |

| | | |
|---|---|---|
| | | General's Office where they already had municipal CCW permits. Troiano Dep. (Ex. 15 to Plaintiffs' Statement of Additional Undisputed Facts) 35:1-6 (agreeing that Plaintiffs' applications were denied "in part" because they already had municipal permits); Exs. D, E, J, K, N, O, Q, R, T, U, X, Y, BB, CC to Defs.' Statement of Undisputed Facts, ECF No. 35-1 (letters from BCI explaining reasons for denying Plaintiffs' applications). |
| 3 | Plaintiffs had municipal permits when their prior RIAG permits were issued. (Exhibits 1- 7). | Undisputed. |
| 4 | Defendants' written factors for determining "need" had not changed. (Troiano Depo., p. 31-32). | Undisputed to the extent the factors for reviewing applications for pistol permits issued by the Attorney General's Office have not changed since Edward Troiano became Chief of the Bureau of Criminal Identification and Investigation in 2019. |
| 5 | Attorney Frank Saccoccio represented each of the Plaintiffs in their departmental appeals of the denials of their renewal applications. (Exhibit 16, ¶ 1). | Undisputed. |
| 6 | Plaintiffs collectively presented a number of reasons for the renewal of their RIAG CCW permits, including, but not limited to, reciprocity with other states, securing a secondary permit in the event the AG LTC renewal was delayed and/or denied, the lack of any written or published standards for approval, the removal of any waiting period on additional firearm purchases, and the ability to open carry or carry concealed. (Id., ¶ 9). | Undisputed. |
| 7 | The RIAG again denied each of the Plaintiffs' renewal applications the meeting / appeal hearing based on the failure to provide a proper showing of need, based on the broad discretion of the Rhode Island Department of Attorney General, | Undisputed that Plaintiffs' applications for Attorney General pistol permits were denied *in part* because they held municipal permits, but the BCI also addressed the |

| | | |
|---|---|---|
| | because they each had a municipal CCW permit. (Id., ¶ 10; Exhibit 15, p. 35) | various reasons Plaintiffs alleged for needing an Attorney General permit. Exs. D, E, J, K, N, O, Q, R, T, U, X, Y, BB, CC to Defs.' Statement of Undisputed Facts, ECF No. 35-1 (letters from BCI explaining reasons for denying Plaintiffs' applications). Disputed to the extent that the Attorney General's Office does not have a policy of denying an application simply because a person has a municipal permit.  Dep. of Edward Troiano (Ex. A) at 88:6-24. |
| 8 | Whether an applicant has a municipal CCW permit is not one of the specific written factors Defendants have identified as relevant when determining need. (Defs.' Exhibit A, p. 4). | Disputed. Whether an applicant has a municipal CCW permit is relevant to the first criterion listed on page 4 of the Attorney General Weapons Carry Permit Packet: "Has the applicant demonstrated a specific articulable risk to life, limb or property? If so, has the applicant demonstrated how a pistol permit will decrease the risk?" *See* Ex. A to Defs.' Statement of Undisputed Facts, ECF No. 35-1 (Attorney General Weapons Carry Permit Packet). |
| 9 | Plaintiff O'Neil operates a business out of his home engaged in the transfer of firearms from one person to another pursuant to a federal firearms license (FFL). (O'Neil depo., pp. 12-15, excerpts attached as Exhibit 17). He stores the firearms in his house. He provides the security for his home and those firearms. (Id., pp. 15-16). He would like the option of open carry for purposes of securing those transfers of firearms. (Id. pp. 19-20, 52). | Undisputed. |
| 10 | Plaintiff Trementozzi works part-time as a firearms salesman at Big Bear Hunting and Fishing in Gloucester, Rhode Island. (Trementozzi depo., p. 12, excerpts attached as Exhibit 18). The owner of the business has conveyed to Trementozzi the expectation that he will be armed when he works there. (Id., pp. 12-16). Trementozzi also operates his own business that manufactures | Undisputed. |

| | | |
|---|---|---|
| | ammunition, and he sells the ammunition to Big Bear. (Id., pp. 16, 18). When he is in his shop he carries his weapon openly. (Id., p. 18). Trementozzi has previously worked as a security guard and would like the ability to engage in open carry so he could return that that work if he wanted. (Id., p. 32). | |
| 11 | When Plaintiff Trementozzi testified at his deposition that his municipal CCW permit was not renewed, Defendants' counsel told him he could apply for the RIAG CCW permit. (Id., p. 25). | Disputed that Defendants' counsel "told" Plaintiff Trementozzi that he could apply for an Attorney General permit. Rather, the Defendants' counsel asked Plaintiff Trementozzi whether he "underst[oo]d that if your Scituate permit is not renewed, you could reapply with the Attorney General for a firearm license to carry from the Attorney General?" Plaintiffs' Statement of Additional Undisputed Facts 59, ECF No. 41-4 (Trementozzi Dep. excerpt). |
| 12 | Plaintiff Patterson runs a construction business that uses explosives. (Patterson depo., p. 12, excerpts attached as Exhibit 19). When he is engaged in that business, he carries a firearm for self-defense. (Id., p. 13, 16). He would like the option to engage in open carry so he does not have to worry about whether his firearm is concealed. (Id.). He would be able to get the firearm out of its holster faster if it was not concealed. (Id., p. 19). Patterson also operates a gun shop. (Id., p. 20). He has between 250 and 300 firearms in his inventory. (Id.). Patterson takes delivery of 3-5 firearms a week. (Id., p. 21). He engages in open carry when he works at the gun shop. (Id., p. 22). He has had about eight attempted break-ins at the gun shop since 2005. (Id. p. 31). Patterson wants the open of open carry because he does not want to worry about whether his weapon is concealed when he is carrying for his businesses or responding to a break-in. (Id., pp. 52-53). | Disputed that concealed carry as opposed to open carry in any way impedes Patterson's right to self-defense. *See* Cramer Dep. 11:6-15, Ex. HH to Defs.' Statement of Undisputed Facts, ECF No. 35-1 (admitting open- and concealed-carry are both forms of self-defense); *Baird v. Bonta*, 709 F. Supp. 3d 1091, 1139-40 (E.D. Cal. 2023) (finding "no evidence to suggest handguns are ineffective for self-defense when concealed"). |
| 13 | Plaintiff Laporte would like an open-carry license because he is applying for positions in the private | Disputed. Laporte does not testify on pages 19-20 of his deposition that he would like or need a license to open |

| | | |
|---|---|---|
| | security business. (Laporte depo., p. 19-20, excerpts attached as Exhibit 20). | carry weapons because of his application to a security position at URI. Plaintiffs' Statement of Additional Undisputed Facts 75, ECF No. 41-4 (Laporte Dep. excerpt). To the contrary, he testifies that he "probably would not use" open carry even if he had the option. App. to Defs.' Statement of Undisputed Facts Ex. EE (Laporte Dep.) 33:22-23, ECF No. 35-1. |
| 14 | Plaintiff Labriole would like the option to engage in open carry. (Labriole depo. p. 9, excerpts attached as Exhibit 21). He is in the construction business working outside and he believes open carry discourages crime. (Id., p. 18). He collects payments and sometimes receives payments unexpectedly. (Id., p. 9). | Undisputed. |
| 15 | Plaintiff Cook would like the option to engage in open carry because it is his constitutional right. (Cook Declaration, ¶ 8, Exhibit 7). | Disputed. At Cook's deposition, he testified that he was "not sure" what benefit there would be to getting an Attorney General permit in addition to his municipal permit. App. to Defs' Statement of Undisputed Facts Ex. I (Cook Dep.) 22:1-11, ECF No. 35-1. |
| 16 | Defendants point to a sentence in Clayton Cramer's book Concealed Weapon Laws of the Early Republic: "This suggests (but does not prove) that the open carrying of deadly weapons was subject to sufficient social stigma to guarantee that a ban on concealed carry was, effectively, a ban on all carrying." | Undisputed. |
| 17 | It helps to read the whole book, including p. 63: Francis Law Olmsted's description of a not completely concealed Colt revolver on a Kentucky railroad in 1853 strongly suggested that concealed carrying of handguns was at least common, if not widespread: In the cars in Kentucky a modest young man was walking through with the hand[le] of a Colt out of his pocket-skirt be-hind. It made some laugh & a gentleman with us called out, "You'll lose your Colt, Sir." The man turned and | Disputed for the reasons set forth in the declarations and testimony of Defendants' experts. Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |

| | | |
|---|---|---|
| | after a mo-ment joined the laugh and pushed the handle into the pocket. John said, "There might be danger in laughing at him." "Oh no," replied our companion, evidently supposing him serious, "he would not mind a laugh." "It's the best place to carry your pistol, after all," said he. "It's less in your way than anywhere else. And as good a place for your knife as anywhere else is down your back, so you can draw over your shoulder." "Are pistols generally carried here?" "Yes, very generally." Allison said commonly, but he thought not generally [emphasis in original]. (Cramer Declaration in Support of Plaintiffs' Objection to Summary Judgment, Exhibit 22, ¶ 19) | |
| 18 | Cramer states that for historians, one of the more difficult questions to answer about an historical period is: How common was a behavior? Personal diaries and diaries may be good sources; they suffer the problem that an ordinary activity may not merit any attention simply because it is ordinary. (Id., ¶ 20). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |

| | | |
|---|---|---|
| | | To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
| 19 | Newspapers suffer an additional problem. When the carrying of firearms appears in newspapers of the antebellum period, we can assume that it was because of some other aspect of its carriage: its place, or how it is subsequently used. (Id., ¶ 21-22). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment").

To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. |

| | | Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
|---|---|---|
| 20 | Here are a few examples where the pistol appears because of the newsworthy aspects. Dr. James Reynolds was tried in Philadelphia for riot and "assault… with an intent to kill." Dr. Reynolds drew a pistol when surrounded by a threatening mob.2F 3 His counsel defended him against a claim of premeditation because of his possession of a pistol: The times are altered, or party violence has become less serious; we see, indeed, that the spirit of party yet preserves a disposition to assassination, in the threats against Dr. R's. life, and that he at the present time has occasion to act on the defensive as every one did at these periods; there is no danger to be apprehended from a man who carries a sword-cane or other weapon of defence; there is no law in Pennsylvania to prevent it; every man has a right to carry arms who apprehends himself to be in danger. If every man has a right, was not this gentleman justifiable in putting arms in his pocket, when so special an occasion commanded him? (Id., ¶ 23). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| 21 | The news coverage of the death of Charles Arndt, a member of the Wisconsin Territorial Legislature apparently at the hands of another member, James R. Vineyard, suggest that Vineyard's carrying of a revolver was sufficiently normal that he felt comfortable showing his recently acquired revolver to other members of the legislature some minutes before: Richard H. M'Goon testified, that he came to the American hotel some time | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the |

| | | |
|---|---|---|
| | previous. That he had a pistol with six barrels. [The pistol was produced in court. It had six barrels joined in one common cylinder, the barrels from four to five inches long It was so constructed that by pressing on the trigger it was cocked and fired immediately, the cylinder revolving at the same time, so that the whole six loads could be discharged as rapidly as the triggers could be pressed]. M'Goon testified that he was in Vineyard's room on the same day of his arrival. Several were present, among them Vineyard—and the conversation turned upon pistols. He took his out of his over-coat pocket, and it was passed from hand to hand for inspection. He returned it to his over-coat pocket. [emphasis added]. (Id., ¶ 24). | reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| 22 | Some references suggest that the carrying of a pistol was common enough that some people should not do so: Curiosity. The very last curiosity we have seen spoken of in the papers, is a wheel that came off a dog's tail when it was a wagging - - The individual who perpetrated that should not carry a pistol. (Id., ¶ 25). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v.* |

| | | |
|---|---|---|
| | | *Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment").<br><br>To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
| 23 | Newspapers also report the carrying of pistols as a sign of how bad the street crime situation had become. The carrying of a pistol was considered a rational response to a bad situation: Our readers at a distance may judge of the state of affairs in this city, when we inform them that we actually knew a printer, who deems it necessary to carry a pistol to protect himself from highway robbers? When our trade has to resort to such means for protection, surely no one is safe. Pittsburgh Dispatch.(Id., ¶ 26). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions |

| | | |
|---|---|---|
| | | after the expert opinion disclosure deadline and after they filed for summary judgment").<br><br>To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
| 24 | A Methodist preacher and newspaper editor gives insights into the carrying of pistols in 1843: A CLERICO-POLITICO CURIOSITY. The Jonesboro' (Tenn.) Whig, with Mr. Clay's name, in tremendous letters, at its mast, is edited by a Methodist preacher. The following is the leading editorial in the last number received at this office: A SIX BARREL PISTOL. The lying editor of the Sentinel has now repeated between fifty and one hundred times, in five weeks, that we own and carry a pistol having six barrels.-- What will the public think, when we solemnly declare that we own no such pistol, nor have we during the past few years. We own but two in the world, each of which has one barrel --one we carry, and the other we loaned to Mr. Jones, the day after the second fight with Crouch. One of these pistols we; bought in the spring of 1840, and have owned it ever since. The one we keep constantly about us, cost thirty-five dollars; the one we let Mr. Jones have cost ten dollars. Neither has nor ever had more than one barrel. We have had, during the last three years, some three different pistols sent to our care, by friends in adjoining counties--one to be handed to a certain gentleman, and the other two to be repaired; all which was attended to, and, so far as we know, are now in the possession of their proper owners. The pistol with which Jones shot Crouch was not ours, nor did he receive it from us. Still, as said heretofore, if he had applied to us for one of our pistols before, instead of after the fight, he should have had it. And if we had been at home, instead of eight miles from town, as we were, the | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |

| | | |
|---|---|---|
| | probability is he would have had our fine pistol, in which event Mr. Crouch's skull would not have turned out bullet-proof as it did! We have now given a true detail of the character, cost, and origin of our arms, and of the facts relating to Jones' pistol. For the want of this information, Haynes has lied frequently and egregiously. He can make any use of this knowledge he may choose. Meanwhile, if it will cause him to tell the truth hereafter, our object, in furnishing it, will have been accomplished. Now, our readers, doubtless, would like to know in whose district this paper is published. It is Mr. Arnold's, of course. (Id., ¶ 27). | |
| 25 | This account tells us that having a loaded pistol in a San Francisco saloon was not startling. The near miss of an accidental death was the "man bites dog" aspect: Narrow Escape.— On Sunday last as a Dr. Hunter was examining a pistol, and, handling it carelessly in the bar-room at the corner of Merchant and Kearny streets the pistol exploded, the ball passed through the wall into Mr. Marshall's saloon, within a few inches of the head of Mr. Ketcher, the city marshal's clerk, who was in there, and passed through the opposite wall over a vacant lot and struck a brick wall. It was very fortunate that no one was killed.— S. F. Trans. (Id., ¶ 28). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |

| | | |
|---|---|---|
| | | To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
| 26 | Newspapers reported another carrying of a pistol because of an accident with fortunately no lethal consequences that happened on the floor of the U.S. House of Representatives in 1860, when a pistol fell to the floor and discharged: The gentleman from Virginia had alluded to fact that a firearm had fallen on the floor. It was due to truth to say that, about the time he was talking somewhat excitedly in reference to the harsh and unjust remark by his colleague, a pistol in his breast-pocket accidentally fell to the floor. No man who knew him believed that he would use a pistol except in an honorable way. He regretted that this accident had occurred. He put the pistol in his pocket last night about twelve o'clock, to protect himself, if necessary, for he resided in the neighborhood of English Hill, where out rages have been committed, and wanted to feel secure in going home. Until he came to Washington, he bad never thought it necessary to be armed. He did not carry a pistol for any purpose here, but for his protection while passing through this sometimes violent city. He had seen occasions when, to protect one's self from insult, it was necessary to carry firearms. (Id., ¶ 29). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| 27 | These were in the first 20 matches of an internet search for the words "pistol" and "carry" within five words of each other for newspapers 1756-1860. (Id., ¶ 30). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be |

| | | |
|---|---|---|
| | | submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| 28 | J.D. Borthwick described how Gold Rush San Francisco was awash in places of entertainment with signs that announced, "No weapons admitted." While Borthwick thought little of the entertainments available, he did describe why it was nonetheless worth going: if only to watch the company arrive, and to see the practical enforcement of the weapon clause in the announcements. Several doorkeepers were in attendance, to whom each man as he entered delivered up his knife or his pistol, receiving a check for it, just as one does for his cane or umbrella at the door of a picture-gallery. Most men draw a pistol from behind their back, and very often a knife along with it; some carried their bowie-knife down the back of their neck, or in their breast; demure, pious-looking men, in white neckcloths, lifted up the bottom of their waistcoat, and revealed the butt of a revolver; others, after | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 |

| | | |
|---|---|---|
| | having already disgorged a pistol, pulled up the leg of their trousers, and abstracted a huge bowie-knife from their boot; and there were men, terrible fellows, no doubt, but who were more likely to frighten themselves than any one else, who produced a revolver from each trouserpocket, and a bowie-knife from their belt. If any man declared that he had no weapon, the statement was so incredible that he had to submit to be searched; an operation which was performed by the doorkeepers, who, I observed, were occasionally rewarded for their diligence by the discovery of a pistol secreted in some unusual part of the dress. (Id., ¶ 31). | (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| 29 | Isaac Weld's account of travels between 1795 and 1797 discussed how in the backcountry, "The people all travel on horseback, with pistols and swords…." Pim Fordham, while staying at Princeton, Indiana, in 1817-18, reported that, "Yesterday 8 men on foot armed with pistols and rifles came into the town from Harmony. They had been in pursuit of an absconded debtor from Vincennes." It was no problem to persuade eight men armed with pistols and rifles to pursue a mere debtor, and Fordham found nothing surprising about them being so armed. Fordham described an associate judge as carrying "a pair of pistols at his saddle bow; and altogether [he] looks more like a Dragoon Officer in plain clothes, than a Judge." The pistols themselves were not remarkable; what was remarkable, at least to a transplanted Englishman, was that a judge was carrying them.(Id., ¶ 32). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |

| | | |
|---|---|---|
| | | To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
| 30 | Fordham also described a party in the Illinois Territory that had excluded some "vulgar" party-crashers. Some of Fordham's party "armed themselves with Dirks (poignards [daggers] worn under the clothes)" to resist another such attempt, but later, "In going away some of the gentlemen were insulted by the rabble, but the rumour that they were armed with dirks and pistols prevented serious mischief." While the antecedent of "they were armed" is unclear, that it prevented serious mischief by "the rabble" suggests that members of Fordham's party were the ones armed; pistols were weapons commonly enough carried to be a realistic deterrent to "the rabble." According to Fordham (and many other travelers), the flatboat men who worked the Mississippi River were a wild and dangerous population. Fordham warned, "But I would advise all travellers going alone down the river, to get one man at least that they can depend upon, and to wear a dagger or a brace of pistols; for there are no desperadoes more savage in their anger than these men." [emphasis added].(Id., ¶ 33). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. |

| | | |
|---|---|---|
| | | Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
| 31 | Francis Baily's Journal of a Tour in Unsettled Parts of North America in 1796 & 1797 is awash in hunting and guns. (He came to America from Britain at least in part to hunt.). (Id., ¶ 34). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| 32 | Washington, D.C. was still largely woods when Baily visited it. To emphasize how far the new capital had to go before it would be a large city, Baily reported, "Game is plenty in these parts, and, what perhaps may appear to you remarkable, I saw some boys who were out a shooting, actually kill several brace of partridges in what will be one of the most public streets of the city." It was not boys out shooting that was remarkable to Baily; | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the |

| | | |
|---|---|---|
| | what was significant is that they were shooting in what would be one of the main boulevards of America's capital.(Id., ¶ 35). | reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| | | To the extent this statement is admissible, disputed for the reasons set forth in the declarations and testimony of Defendants' experts. Rivas Decl. ¶ 10, ECF No. 34-2; Rivas Dep. 104:11-23, ECF No. 42-2 (Ex. B to Defs.' Statement of Disputed Facts). |
| 33 | Robert Baird's View of the Valley of the Mississippi reads like a real estate promotional guide, emphasizing the enormous benefits from moving to these largely unsettled states— but still admits some unsavory aspects of the frontier. A few instances of violence appear in Baird's promotional work, such as St. Louis and its dueling problem, but they are usually in conjunction with a positive statement such as, "A great moral change is, however, going forward here." Baird also reported a dispute at cards aboard a steamboat, "Pistols and dirks were drawn!"(Id., ¶ 36). | **Objection**: Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) |

| | | |
|---|---|---|
| | | (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| 34 | Defendants have two experts with respect to the historical tradition of firearms regulations, Dr. Brennan Rivas and Dr. Michael Spitzer. (Their expert declarations are attached to Plaintiffs' Statement of Undisputed Facts in Support of their Motion for Summary Judgment as Exhibits 9 and 10, respectively). Rivas testified that she has found three states, Massachusetts, West Virginia and Texas, and one territory, Idaho, that passed statutes barring the open carry of firearms. (Plaintiffs' SUF # 41). Rivas said that she was aware of some municipal restrictions on open carry but added that there was no authoritative, searchable database of such regulations. (Id. # 42). Rivas found that licensing requirements for open carrying were "generally local." (Id. # 43) | Disputed. Defendants' experts are named Dr. Brennan Rivas and Professor *Robert* Spitzer. Also, Rivas testified that in addition to Massachusetts, Texas, West Virginia, and Idaho, other states and territories had "going armed" statutes that restricted open carry. Rivas Dep. (Ex. B) 102:25-103:18; Rivas Decl. ¶¶ 34-40, ECF No. 34-2. Also, Rivas testified that "the carry licensing laws from the nineteenth century were generally local," but she also testified that "[T]hey are uneven in terms of whether they specifically say openly carrying weapons or concealed carrying of weapons." Rivas Dep. 101:18-102:13, ECF No. 42 (Ex. B to Defs.' Statement of Disputed Facts). |
| 35 | Rivas found that in Tennessee and Arkansas, open carry was statutorily less restricted than concealed carry as it was thought that open carry was less dangerous than concealed carry because other people could see who had a weapon and avoid them. (Id. # 44). Rivas found that people engaged in public carry "in preparation for an unforeseen potential emergency." (Id. # 45). | Disputed. Rivas testified that the Tennessee and Arkansas laws discussed starting on page 112 of her deposition transcript were designed "to minimize open-carry as much as possible." Rivas Dep. 112:6-114:1, ECF No. 42 (Ex. B to Defs.' Statement of Disputed Facts). Rivas |

| | | |
|---|---|---|
| | | found that nineteenth-century Americans might engage in concealed public carry in preparation for "an unforeseen, potential emergency," but she also noted broad condemnation of "such preemptive arming that was divorced from a known, articulable threat." Her overall conclusion was that "nineteenth-century Americans created regulations that aimed to suppress the everyday, casual carrying of deadly weapons for preemptive self-defense when there was no specific, articulable threat to the weapon-carrier." Rivas Decl. ¶¶ 10, 67, ECF No. 34-2. See also Rivas Dep. 110:4-114:1 (ECF No. 42 (Ex. B to Defs.' Statement of Disputed Facts) (explaining that the emergency exception "crafted a way of allowing open-carry that was a very narrow needle to thread"). |
| 36 | Rivas found in her research that the most common constraint on public carry was social disapproval of the practice. She cited newspaper articles calling on people to restrain from public carry. As a result, people more frequently engaged in concealed carry. (Id. # 46). | Disputed. Rivas found that the historical "nationwide consensus about the constitutionality of concealed-carry restrictions was essentially a nationwide consensus about the efficacy of prohibiting the most convenient and most popular manner of carrying deadly weapons" such that "[t]hese laws defied Americans who wanted to be preemptively armed to do so openly and face the legal and personal consequences that followed, including being stopped by or reported to police, being ostracized, being denied entry into mercantile establishments, and being presumed to be a dangerous person or a ruffian." ECF 34-2 (Rivas Decl.) at ¶ 70. In support of this conclusion, she cites newspaper articles in addition to historical laws, legislative history, |

cases, and personal papers, among other sources. Rivas Dep. 105:11-106:22, ECF No. 42 (Ex. B to Defs.' Statement of Disputed Facts); Rivas Decl. ¶¶ 62-70, ECF No. 34-2.

Rivas also explained that there were two broad approaches to manner of carry restrictions in the early Republic, one adopted by Northern states and a second adopted by Southern states. Rivas Decl. ¶¶ 32-36, ECF No. 34-2. While the approaches varied, both traditions uniformly recognized the role of governments in regulating the manner of public carry. *Id.* at ¶ 32 ("Taken together, the two regulatory strategies tightly restricted the public carrying of weapons. . . ."). She further testifies that "[f]ocusing on southern, concealed carry cases without exploring the larger context of social attitudes toward weapon-carrying has led to an emphasis on judges' protection of open-carry without considering socio-cultural factors limiting such behavior." *Id.* at ¶ 62.

Northern states adopted the existing English model based on the Statute of Northampton, which broadly prohibited carrying weapons in populated public areas. *Id.* at ¶¶ 32-36 (*citing* 1786 Va. Laws ch. 49 and 1795 Mass. Laws ch. 2, 436). This approach often created statutory exemptions for people who had a specific need to carry weapons in public, while broadly prohibiting most carry. *See id.* The Revised Statutes of the Commonwealth of Massachusetts, Passed November 4, 1835 (Dutton & Wentworth 1836), ch. 134, § 16, illustrates this approach. *Id.* at ¶ 34. This statute restricted the carrying of a "dirk,

|  |  | dagger, sword, pistol, or other offensive or dangerous weapon, without reasonable cause to fear an assault or other injury." *Id.*; *see also* ECF No. 44, Ex. 28. "[N]umerous states adopted verbatim the penal code version of the Massachusetts public carry law." Rivas Decl. at ¶ 35 (collecting examples from Wisconsin (1939), Maine (1840), Michigan (1846), Virginia (1847), Minnesota (1851), and Oregon (1853)). All of these states restricted "going armed" in public without reasonable cause to fear harm.[1] *Id.* |
|  |  | Southern states adopted a different approach by broadly prohibiting concealed carry but leaving open carry largely unregulated. *See* Rivas Decl. ¶¶ 36-38, ECF No. 34-2. These laws generally "provided a list of prohibited deadly weapons that could not be concealed on the person and penalized violators with a fine and/or jail time." *Id.* at ¶ 38 (collecting examples from Indiana (1819), Florida Territory (1835), Georgia (1837), Arkansas (1837), Virginia (1838), Alabama (1839) and other states and territories). Under this approach, prohibitions on concealed carry were regarded as necessary to "counteract a vicious state of society growing out of the habit of carrying concealed weapons, and to prevent bloodshed and assassinations committed upon unsuspecting persons." *State v. Chandler*, 5 La. |

---

[1] These examples are just some of the restrictions on open carry that are part of our Nation's history. Additional examples are discussed in the State's motion for summary judgment and opposition to Plaintiffs' motion for summary judgment. ECF No. 34-1 at 28-39 and ECF No. 38 at 8-21. *See also* Rivas Decl. ¶ 6 (summarizing manner of carry restrictions); Declaration of Professor Robert Spitzer, ECF No. 34-3, Ex. C (summarizing historical statutes that restricted open carry).

| | | |
|---|---|---|
| | | Ann. 489, 490 (1850). Open carry, in contrast, was seen as "calculated to incite men to manly and noble defense of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations." *Id.*<br><br>Idaho (1888), West Virginia (1882), and Texas (1871) enacted laws that fell somewhere in between these two approaches. Like the Southern states' approach, these states broadly prohibited the carrying of enumerated weapons but, unlike the Southern states' approach, did not distinguish between the manner of carry. Rivas Decl. ¶ 40, ECF No. 34-2. Like the Northern states' approach, the restrictions enacted by these states generally applied to both open and concealed carry of enumerated weapons, with Texas providing an exception, like the Massachusetts law, for those with "reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing." *Id.* |
| 37 | Rivas also found that long arms, such as rifles and shotguns, were not considered deadly weapons and generally not included in the regulations of such weapons, unlike concealable weapons, such as pistols and knives. (Rivas depo., pp. 64-68, excerpts attached as Exhibit 21). | Undisputed. |
| 38 | Defendants' other expert, Robert Spitzer, testified that he did not specifically address in his expert declaration whether or not Rhode Island's regulatory scheme is consistent with a historical tradition of open carry regulations. (PSUF, # 47). Spitzer said he has not been asked to render an opinion on that. (Id. # 48). Spitzer testified he could not specifically recall a previous case in which he has previously been retained as an expert | Disputed to the extent the statement suggests that Spitzer has not previously been retained as an expert on cases involving either concealed or open carry. Spitzer Dep. 53:24-54:19, ECF No. 42 (Ex. A to Defs.' Statement of Disputed Facts) (testifying that "I'm sure it must have come up in some manner."). |

| | | |
|---|---|---|
| | that involved either concealed carry or open carry. (Id., p. 49). | |
| 39 | For the period from the early 1800s up to 1860, Spitzer's Declaration identifies the District of Columbia and what he says are four states that enacted laws restricting the carrying of named weapons, whether open or concealed, Georgia, Florida, the borough of York, Pennsylvania, and Hawaii. (Id. # 50). Spitzer acknowledged that the Georgia Supreme Court struck down the statute's restriction on open carry as unconstitutional. (Id. # 51). Spitzer agrees that the Massachusetts act passed in 1751 did not prohibit an individual from engaging in either open or concealed carry. (Id. # 52). Most of the statutes that Spitzer identifies as purportedly restricting public carry of firearms were promulgated after 1868. (Id., # 53-55). Some of the statutes Spitzer identifies for the period 1791 to 1868 are surety laws. (Id. # 56). Some of the statutes Spitzer identifies were promulgated by territories or a foreign country (Hawaii). (Id. # 55). | Disputed to the extent that Spitzer specified that the Georgia Supreme Court worded its decision "a very particular way" but were "more dubious about restrictions on open carry as compared to concealed carry." *Id.* at 85:22-86:1. Likewise, disputed to the extent that the Massachusetts Act passed in 1751 restricted open or concealed carry when individuals were in groups of a certain size or greater. *Id.* at 81:11-82:8. |
| 40 | At his deposition, Plaintiffs' expert Clayton Cramer testified that in his research he had not come across any laws that prohibited open carry but allowed concealed carry. (Cramer depo., p. 196, excerpt attached as Exhibit 23). | Undisputed. |
| 41 | At her deposition, Defendants' expert Brennan Rivas testified that long arms (such as rifles and shotguns) were considered less dangerous than concealable weapons which were considered "deadly weapons" and that the historical regulations focused on concealable weapons. (Rivas depo., pp. 64-68, excerpt attached as Exhibit 24). | Disputed to the extent Rivas did not discuss the relative dangers of weapons she classified as "deadly weapons" and other types of weapons. See Rivas Dep. 64:16-68:7, ECF No. 41-10 (Ex. 24 to Plaintiffs' Statement of Additional Undisputed Facts). |

## Response to Plaintiffs' Statement of Disputed Facts (ECF No. 40)

| No. | Plaintiffs' Statement | State's Response |
|---|---|---|
| 114 | On pages 28-29, Defendants' Memorandum states: "For example, a 1642 provision in the colony of New Netherland (later New York) | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is |

| | | |
|---|---|---|
| | prohibited the drawing or displaying of knives. Spitzer Decl. at 12." Response: First, the American traditions about arms bearing are English, not Dutch. Second, reading the law in full, instead of a carefully selected quote shows a larger issue. After discussing the underlying problem: "Whereas we hear daily, God help us, of many accidents, caused for most part by quarrels, drawing of knives and fighting… Therefore, we hereby ordain, decree and enact, agreeably to the ordinance made last year in Holland by the High and Mighty Lords States General, that no one shall presume to draw a knife much less wound any person…" This did not prohibit open carry but the drawing of a knife, apparently as a threat. Drawing a weapon is fundamentally different from carrying a weapon. If drawing a weapon is not brandishing, it is certainly "assault with a deadly weapon." (Cramer Declaration in support of Plaintiffs' Objection, ¶ 5-6, Exhibit 21). | thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)).<br><br>To the extent this statement is not a legal conclusion or opinion, disputed in its entirety for the reasons set forth in the declarations of Defendants' experts. Spitzer Decl. ¶ 24, ECF No. 34-3. |
| 115 | On page 29, Defendants' Memorandum states: "1686 New Jersey law adopted "An Act Against Wearing Swords" and prohibited the wearing of 'pistols' and other specified weapons 'privately'—though it also levied penalties for the open carrying of weapons." Response: *Bruen* specifically rejected the relevance of this law. New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S.Ct. 2111, 2145 (2022). (Id., ¶ 7-8). | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)).<br><br>To the extent this statement is not a legal conclusion or opinion, disputed in its entirety for the reasons set forth in the declarations of Defendants' experts. Spitzer Decl. ¶ 25, ECF No. 34-3. |
| 116 | On page 29, Defendants argue what they assert are American copies of the Statute of Northampton, including: "And several colonial governments | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is |

| | | |
|---|---|---|
| | adopted laws that 'mirrored the British Statute of Northampton, where the very fact of carrying a firearm was considered to be in terror of the people and was therefore prohibited by that statute.'" Response: Bruen specifically rejected the relevance of these statutes. Id. at 2144. (Id., ¶ 9). | thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)).<br><br>To the extent this statement is not a legal conclusion or opinion, disputed in its entirety for the reasons set forth in the declarations of Defendants' experts. Spitzer Decl. ¶¶ 25-28, ECF No. 34-3; Rivas Decl. ¶¶ 32-40, ECF No. 34-2. |
| 117 | On page 29, Defendants' Memorandum states: "'In 1801, for example, Tennessee adopted a law that prohibited the carrying of quote any dirk, large knife, pistol or any other dangerous weapon' both privately and publicly. Rivas Decl. At 24." Response: The selectively quoted statute reuses the language of the Statute of Northampton already rejected by Bruen. Worse, quoting only section 6 missed the larger purpose and narrow focus of the law. This was "An Act for the restraint of idle and disorderly persons… Whereas it becomes necessary for the welfare of the community, to suppress wandering, disorderly and idle persons… endeavoring to maintain himself by gaming or other undue means…" Tennessee passed a vagrancy law for "persons of ill fame or suspicious character." This was not aimed at the general population, but a particularly disreputable group. (Id., ¶ 10). | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)).<br><br>To the extent this statement is not a legal conclusion or opinion, disputed in its entirety for the reasons set forth in the declarations of Defendants' experts. Spitzer Decl. ¶ 26, ECF No. 34-3; Rivas Decl. ¶¶ 17, 33, 37, 41, ECF No. 34-2. |
| 118 | On page 29, Defendants' Memorandum states: "Georgia enacted a similar law in 1837." Response: In no way was the 1837 Georgia law | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is |

| | | |
|---|---|---|
| | similar. It was not narrowly focused on a particular disreputable group, nor did it use the Statute of Northampton language. It also banned the sale of many types of weapons. Regardless, the Georgia Supreme Court later held that broad statutory restrictions on open carry were unconstitutional. Nunn v. State, 1 Ga. 243 (1845). (Id., ¶ 11). | thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)).<br><br>To the extent this statement is not a legal conclusion or opinion, disputed in its entirety for the reasons set forth in the declarations of Defendants' experts. Spitzer Decl. ¶ 12, ECF No. 34-3; Rivas Decl. ¶¶ 38, 53-54, ECF No. 34-2; Spitzer Dep. 83:9-86:1, ECF No. 42 (Ex. A to Defs.' Statement of Disputed Facts). |
| 119 | On page 29, Defendants' Memorandum states: "Spitzer Decl. at 14 (quoting a 1694 Massachusetts law, a 1701 New Hampshire law, and an North Carolina 1792 collection of statutes)." (Id., ¶ 12). Response: Spitzer cites a 1694 Massachusetts law that does not exist, at least in the published version. "1694 Mass. Laws 12, no. 6, An Act for the Punishing of Criminal Offenders." It is unclear if Spitzer means ch. 12, or ch. 6. Ch. 6: "An Act For Highwayes,"4F 5 or Ch. 12: "An Act For A New Establishment And Regulation Of The Chancery." Spitzer cites a 1701 New Hampshire law that does not exist. "1701 N.H. Acts and Laws 15." The session laws do not have chapter numbers so we must assume he means p. 15: which has laws prohibiting rape, willful burning, and adultery. Spitzer cites a book as purportedly collecting North Carolina Statutes. That 1792 collection was of English statutes not North Carolina laws, including the Bruen-rejected Statute of Northampton. Spitzer has frequently misrepresented this as a North Carolina session law. Rephrasing this as "North Carolina 1792 | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)).<br><br>To the extent this statement is not a legal conclusion or opinion, disputed in its entirety for the reasons set forth in the declarations of Defendants' experts. Spitzer Decl. ¶¶ 9, 25-26, ECF No. 34-3; Rivas Decl. ¶ 33, ECF No. 34-2. Copies of Massachusetts, New Hampshire, and North Carolina laws at issue were provided to the |

| | | |
|---|---|---|
| | collection of statutes" does nothing to save this. (Id., ¶ 13-15). | Court with Defendants' Motion for Judicial Notice, ECF No. 44 (see Exs. 2, 5, 19). |
| 120 | On page 30, Defendants' Memorandum states: "And the 1850s, Pennsylvania, Hawaii, and the District of Columbia criminalized the carrying of firearms or other specified deadly weapons, whether they were carried in a concealed manner or openly." Response: The Kingdom of Hawaii has nothing to do with American legal tradition.7F 8 The District of Columbia ordinance is less clear than Spitzer would like. The title is, "An act to prevent the carrying of concealed and dangerous weapons in the City of Washington." [emphasis added] The text of the law might be read as banning all carry of a list of deadly weapons, but the title can be equally read as banning the carrying of weapons that are both concealed and dangerous. Certainly, people were carrying concealed pistols in D.C. at the time. An accidental discharge on the floor of the House in 1860 shows this: The gentleman from Virginia had alluded to fact that a firearm had fallen on the floor. It was due to truth to say that, about the time he was talking somewhat excitedly in reference to the harsh and unjust remark by his colleague, a pistol in his breast-pocket accidentally fell to the floor. No man who knew him believed that he would use a pistol except in an honorable way. He regretted that this accident had occurred. He put the pistol in his pocket last night about twelve o'clock, to protect himself, if necessary, for he resided in the neighborhood of English Hill, where out rages have been committed, and wanted to feel secure in going home. Until he came to Washington, he bad never thought it necessary to be armed. He did not carry a pistol for any purpose here, but for his protection while passing through this sometimes violent city. He had seen occasions when, to protect one's self from insult, it was necessary to carry firearms. (Id., ¶ 16-17). | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)). Defendants further object because Plaintiffs are introducing new expert testimony not produced by the Rule 26(a)(2)(D) deadline. Such untimely testimony is inadmissible and thus cannot be submitted in support of Plaintiffs' statements of fact. Thus, the Court should strike all references to this untimely expert evidence for the reasons set forth in Defendants' accompanying Motion to Strike Clayton Cramer's Supplemental Declaration. *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (striking untimely expert report offered as an exhibit in opposition to summary judgment); *Wannall v. Honeywell, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), aff'd, 775 F.3d 425 (D.C. Cir. 2014) (same). Defendants are unfairly prejudiced by the introduction of new expert evidence so late in the proceedings. *Baker v. Indian Prairie Community Unit, School Dist. 204*, 1999 WL 988799, at *3 (N.D. Ill. Oct. 27, 1999) (not allowing plaintiffs to "ambush Defendants with new expert opinions |

| | | |
|---|---|---|
| | | after the expert opinion disclosure deadline and after they filed for summary judgment"). |
| | | To the extent this statement is admissible and not a legal conclusion or opinion, disputed in its entirety for the reasons set forth in the declarations of Defendants' experts. Spitzer Decl. ¶¶ 14-15, 18 ECF No. 34-3; Rivas Decl. ¶¶ 33, 65-70 ECF No. 34-2; Rivas Dep. 105:11-106:22, ECF No. 42 (Ex. B to Defs.' Statement of Disputed Facts). |
| 121 | On page 30, Defendants' Memorandum states: "For example, an 1850 North Carolina measure imposed a one-dollar tax on all pistols and other weapons "'worn or carried about the person of the owner.' Spitzer Decl., Ex. C at 97." Response: Not on p. 97 in Spitzer Exhibit C, and not from 1850. It is on p. 91 of Exhibit C. Spitzer lists three North Carolina laws adopted between 1856 and 1859, all identified as "An Act Entitled 'Revenue.'" The 1866 version was also explicitly a revenue measure: "That for the support of the State Government, and to meet appropriations made by law, a tax shall be levied upon the subjects embraced in the following schedule, to be listed and paid as shall be directed by law." It taxed harps, pianos and carrying a "dirk, bowie-knife, pistol, sword-cane, dirk-cane and rifle-cane…" (Id., ¶ 18). | **Objection**. Defendants object because the statement amounts to a legal conclusion or opinion and is thus not a "fact" material to this motion for summary judgment. *See Carreiro v. Stop & Shop Supermarket Co.*, 2008 WL 2944660, at *5 n.9 (D.R.I. July 31, 2008) (striking legal conclusions from statement of undisputed facts) (citing *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001)). |

Dated:  January 27, 2025                    Respectfully Submitted,

                                            PETER F. NERONHA
                                            and THE STATE OF RHODE ISLAND,

                                            By their Attorneys,

                                            */s/ James J. Arguin*

James J. Arguin (#10972)

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (#10742)

Special Assistant Attorneys General
Office of the Attorney General
150 South Main Street
Providence, R.I. 02903
(401) 274-4400 exts. 2078/2064
(401) 222-2995 (Fax)
jarguin@riag.ri.gov/pmeosky@riag.ri.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2025, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ James J. Arguin*