# Exhibit A

# In the Matter Of:

MICHAEL ONEIL V. PETER F. NERONHA

23-cv-70

# EDWARD TROIANO

*March 22, 2024*

1                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
2

3

4   Michael O'Neil, Et Al.

5        Vs.                        C.A. NO:  23-cv-70

6   Peter F. Neronha, in his Official
    Capacity as Attorney General of the
7   State of Rhode Island, and the
    State of Rhode Island
8

9
    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
10

11

12                  DEPOSITION OF
                    EDWARD TROIANO
13

14                  MARCH 22, 2024
                     10:00 A.M.
15

16
                    4 HOWARD AVENUE
17              CRANSTON, RI   02920

18

19

20

21

22

23

24              ELIZABETH GREELEY
            CERTIFIED COURT REPORTER
25



1          (DEPOSITION COMMENCED AT 9:57 A.M.)

2               EDWARD TROIANO

3       Being duly sworn, deposes and testifies as

4  follows:

5               THE REPORTER:  Would you state your name

6  for the record, please?

7               THE WITNESS:  Edward Troiano,

8  T-R-O-I-A-N-O.

9               EXAMINATION BY MR. LYONS

10      Q.  Mr. Troiano, my name is Tom Lyons.  We met

11  out in the hallway briefly beforehand.  I am one of

12  the attorneys representing the Plaintiffs in a lawsuit

13  pending in Federal Court in which the lead Plaintiff's

14  name is Michael O'Neil.

15      The Attorney General, Mr. Neronha, is one of the

16  Defendants.  Frank Saccoccio, who is sitting next to

17  me, also represents the Plaintiffs.  In terms of your

18  title, do you go by Chief Troiano, Mr. Neronha (sic),

19  or something else?

20      A.  I go by Chief Troiano.  Peter Neronha is the

21  Attorney General, but thank you for the promotion.  I

22  appreciate it.

23      Q.  Yes.  I'll contact the General Attorney and

24  let him know that he has been relieved of his duties.

25  Have you ever been deposed before?

1   application was denied because he had not made a

2   proper showing of need; would you agree with that?

3      A.  I would.

4      Q.  Would you also agree that the letter, which

5   you wrote, sets forth two reasons why he has not made

6   a proper showing of need?

7      A.  Yes.

8      Q.  Is the first reason set forth in the -- well,

9   let me withdraw the question.  The second sentence of

10  that paragraph says, In a letter submitted with your

11  application, you reference the fact that while

12  traveling to different "clubs," you "carry firearms,

13  targets, and ammunition."  You make no other

14  statements in your letter which can be reasonably

15  interpreted as a statement of your need to carry a

16  concealed firearm.

17     Was that one of the reasons why Mr. O'Neil's

18  renewal application was denied?

19     A.  Yes.

20     Q.  Then the paragraph goes on and says, Also,

21  while conducting a preliminary review of your

22  application, it was discovered that you currently hold

23  an active permit to carry a concealed weapon issued by

24  the City of Warwick, which does not expire until

25  November 26, 2023; do you see that?

1      A.  I do.

2      Q.  Was that a second reason why Mr. O'Neil's

3   application to renew his permit was denied?

4      A.  Well, the second reason is that, yes, that

5   permit gave him the same authority to carry a firearm

6   as the permit he was currently applying for.  So that

7   was the reason, not the mere fact that he had a

8   physical permit.

9      It was the fact that that permit that he did have

10  from the City of Warwick gave him the same substantive

11  authority to carry a firearm as the permit we would

12  have issued.

13     Q.  Okay.  If he had not had a permit from the

14  City of Warwick, would the first reason that we

15  discussed, that he did not make a showing of need in

16  his letter, have been sufficient grounds to deny the

17  request for the renewal of his application?

18        MR. ARGUIN:  Objection, calls for

19  speculation, but you can answer to the extent you can.

20     A.  I don't know as we sit here today, sir.

21     Q.  All right.  If he, if he had made a proper

22  showing of need in his letter, would the fact that he

23  had a permit from the City of Warwick have been

24  considered a sufficient reason to deny his

25  application?

EDWARD TROIANO                                                    March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                           70

1        A.  I can't answer that question, because the

2     fact that he had the permit is partial to the decision

3     whether he had and demonstrated a proper showing of

4     need.

5        Q.  Okay.  Well, I understood there were two

6     reasons, as we discussed a little while ago, one of

7     which was he already had a permit from the City of

8     Warwick.  The other one of which was the reasons he

9     set forth in his letter that he, while traveling to

10    clubs, he carries firearms, targets and ammunition;

11    that was not a sufficient showing of need?

12       A.  Correct.

13       Q.  So there were two ways in which he did not

14    make, in which he did not have a need, if I understand

15    correctly:  One of which was he already had a City of

16    Warwick permit.  Two, his letter did not set forth the

17    proper showing of need for an Attorney General permit,

18    separate and apart from whether or not he had the

19    municipal permit?

20       A.  Yes, the two reasons as outlined, correct.

21       Q.  What I'm trying to clarify is, if he did not

22    have the municipal permit, would the letter that he,

23    in which he sets forth his need, have been sufficient

24    to allow him to get an Attorney General permit?

25       A.  As I just stated, I can't see that sitting

1    here.  It would be the same deliberative process as I

2    exercised before.  I would have to go back, look at

3    his file and everything in it, and formulate an

4    opinion.

5       Q.  Assuming Mr. O'Neil did not have the Warwick

6    municipal permit, what would he needed to have shown

7    in his letter in order to demonstrate need, apart from

8    what was already set forth?

9       A.  I think that's addressed in Pages 4 and 5 of

10   the Attorney General's packet.

11      Q.  Okay.  So in other words -- let me withdraw

12   the question.  When you reviewed his letter, did it

13   meet the showing of a, of need, a proper showing of

14   need according to the factors that are set forth on

15   Page 4 of Exhibit 1?

16      A.  No.

17      Q.  In what respect did it fail to make a proper

18   showing of need, according to those factors?

19      A.  In the two instances that I outlined in the

20   letter to Mr. O'Neil, I think it sets forth fairly

21   clearly why it failed to meet those.

22      Q.  Okay.  In other words, which particular

23   factors were applicable to Mr. O'Neil's application of

24   the factors that are set forth on Page 4 of Exhibit 1?

25      A.  Well, I think certainly the first factor, in

1    that had the applicant demonstrated a specific

2    articulable risk to life, limb or property.

3        Q.  Okay.  Any other applicable factors here?

4        A.  Yes.  So under the more generalized, any and

5    all other factors that the Attorney General takes into

6    account based on its discretion, the fact that he

7    already had the ability to carry a permit in the State

8    of Rhode Island.

9        Q.  Okay, I understand that.  As I understand

10   that, that particular factor that you just mentioned,

11   the fact that he had a municipal permit applied to

12   each of the Plaintiffs' applications; in other words,

13   each of them had a municipal permit?

14       A.  Yes.

15       Q.  All right.  That was a reason that their

16   renewal applications were denied, because they did not

17   have a need based on the fact that they had a

18   municipal permit; is that correct?

19       A.  It's correct, Counselor.  I'm not trying to

20   be argumentative to you.  I understand what you're

21   saying.  I think it's, for purposes of the record, I

22   think it's proper to say that it's not the mere fact

23   that he has a permit.  It's what that permit allows

24   him to do that is the factor.

25       So if you are applying to the Attorney General

1  for a permit to carry a concealed firearm in the State

2  of Rhode Island and you already had the legal

3  authority to do so by means of a permit issued from

4  the city, then there is no, therefore, no need

5  inherently for us to issue another permit.

6      Q.  Okay.  I think I understand that that's the

7  Attorney General's position.

8      A.  Correct.

9      Q.  What I was trying to figure out was, with

10  respect to Mr. O'Neil's application, I understood

11  there was an additional reason beyond that, as you set

12  forth with respect to reference to his letter.  That's

13  what I was trying to get at.

14      What, with respect to the letter, had he failed

15  to show?  I just want to make, and you referred to

16  factor Number 1 on Page 4 of Exhibit 1.  I was just

17  trying to figure out if there were other factors with

18  respect to the letter.

19      A.  Yes.

20      Q.  Okay.  What other factors?

21      A.  I think I just outlined one of them, which is

22  Question 1.

23      Q.  Right.  So my question was -- I'm sorry if I

24  was unclear.  Do any of the other factors apply to

25  that reason to determine he had not made a showing of

EDWARD TROIANO                                    March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                          74

1   need?

2      A.  Well, I mean, again, I guess it's part of the

3   deliberative process.  If I were, at the time that I

4   analyzed his application, I'm sure that I went through

5   in more detail some of these factors.

6      You're asking me here today to recall at the time

7   if there were other factors, and you know, certainly

8   Number 1 jumps out at me.  There may and probably were

9   additional factors.

10     Q.  Okay.  Do you know if those additional

11  factors, or what factors, in fact, you considered or

12  memorialized in any manner in any document?

13     A.  They are not.

14     Q.  Okay.  How would an applicant know which

15  factors had been applied in determining that he had

16  not made a proper showing of need if it's not set

17  forth in the denial letter?

18     A.  Well, in my opinion, it is set forth in the

19  denial letter.  If you're asking if there was anything

20  additional, there would not be.

21     Q.  In other words, the applicant does not

22  receive a letter or some other written communication

23  which says you failed to show a specific articulable

24  risk to life, limb or property, for example?

25     A.  Well, in Mr. O'Neil's case, he did request an

1    appeal appointment.  He came in.  Actually, I don't

2    recall if he came in.  That was, I think, right around

3    the time of COVID.  That may have been a call that we

4    had with Mr. Saccoccio, but he did have an appeal

5    appointment, whether virtually or in person, in which

6    those factors were discussed in more detail.

7        Mr. Saccoccio brought up his rationale or

8    clarification for additional reasons for Mr. O'Neil's

9    application.  Then Mr. O'Neil was sent a subsequent

10   letter providing additional clarification on the

11   reasons for his denial.

12           MR. LYONS:  Okay.

13           (EXHIBIT 6 PLAINTIFFS' MARKED FOR ID)

14       Q.  Let me show you what's been marked as

15   Exhibit 6, and ask you if you recognize this document?

16       A.  I do.

17       Q.  Okay.  Is this that letter to which you just

18   referred that was sent to Mr. O'Neil after the

19   discussion that took place with Mr. Saccoccio and

20   Mr. O'Neil and apparently Deputy Chief Michael

21   Figueiredo?

22       A.  Yes.

23       Q.  In this letter do you set forth with more

24   specificity the reasons why you believe he had not

25   made a proper showing of need?

EDWARD TROIANO                                           March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                    76

1      A.  Yes.

2      Q.  Was there anything that you recall that was

3   an additional reason which is not set forth in this

4   letter?

5      A.  I don't recall there being anything

6   additional, no, sir.

7          MR. LYONS:  Okay.

8          (EXHIBIT 7 PLAINTIFFS' MARKED FOR ID)

9          (BRIEF RECESS)

10     Q.  Let me show you what's been marked as

11  Exhibit 7, and ask you if you recognize this document?

12     A.  I do.

13     Q.  This refers to a Motion For Reconsideration;

14  do you agree?

15     A.  Yes.

16     Q.  The letter is signed by Michael Figueiredo?

17     A.  Yes.

18     Q.  Do you know why it was Mr. Figueiredo who

19  signed this letter as opposed to you or

20  Mr. Figueiredo?

21     A.  I don't have a specific recollection, no.

22     Q.  Were you involved in the preparation of this

23  letter?

24     A.  Certainly, Mike would have sent me a draft of

25  it, yes, but I didn't author it.

EDWARD TROIANO                                          March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                   77

1      Q.  Would you agree that this letter sets forth

2  the Attorney General's Office's reasons for denial of

3  the motion for reconsideration?

4      A.  I would agree that yes, it sets forth the

5  reason that the reconsideration motion was denied.

6          MR. LYONS:  Okay.  Off the record.

7          (OFF THE RECORD)

8          (EXHIBIT 8 PLAINTIFFS' MARKED FOR ID)

9      Q.  Let me show you what's been marked as

10  Exhibit 8, and ask you if you recognize this document?

11      A.  I do.

12      Q.  Is this a letter which Mr. Figueiredo sent to

13  Richard Cook explaining the reason for his denial of

14  the renewal of his concealed carry permit?

15      A.  Yes.

16      Q.  The second sentence of the letter says, While

17  reviewing your application, it has come to our

18  attention that you currently hold an active carry

19  concealed weapons permit issued by the Town of

20  Charlestown, Rhode Island; do you see that sentence?

21      A.  I do.

22      Q.  Was that the only reason why Mr. Cook's

23  renewal application was denied?

24      A.  The exact reason was set forth in

25  Paragraph 2.

EDWARD TROIANO                                                March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                        78

1      Q.  Okay, which says he already has an active

2   concealed carry permit issued by a municipality?

3      A.  Which gives him the same authority to carry a

4   concealed firearm, yes.

5      Q.  There was no other reason of the denial of

6   his renewal application?

7      A.  Correct.

8          MR. LYONS:  Okay.

9          (EXHIBIT 9 PLAINTIFFS' MARKED FOR ID)

10      Q.  Let me show you what has been marked as

11   Exhibit 9, and ask you if you recognize this document?

12   I will recognize for the record that the bottom half

13   of it is an e-mail from Mr. Cook to the Attorney

14   General's Office, and I don't have the entire part of

15   Mr. Cook's e-mail attached to this, but I'm not sure

16   there is anything pertinent missing.

17      A.  I can't say that I recognize this specific

18   document, Counselor.  I certainly recognize that it's

19   an e-mail from our office to Mr. Cook.

20      Q.  The e-mail address is CCW permits at

21   RIAGRI.GOV; do you see that?

22      A.  I do.

23      Q.  Is that an e-mail address for the BC office

24   at the Rhode Island Attorney General's Office?

25      A.  Yes.  So it's an in box that is administered

EDWARD TROIANO                                                    March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                            79

1   by the individual that processes the permits for us.

2      Q.  It appears that this e-mail from Mr. Cook is

3   a response to the previous letter which Mr. Figueiredo

4   sent to him, which is dated August 4, 2021?

5      A.  It looks like it's a response, at least from

6   my quick read of it, to the e-mail below on the second

7   half of the page.

8      Q.  I'm sorry.  I'm referring to Mr. Cook's

9   e-mail.

10     A.  Okay.

11     Q.  Mr. Cook's e-mail is dated August 17, 2021;

12  would you agree with that?  At least it appears to be?

13     A.  Yes.

14     Q.  The previous letter, Exhibit 8, which was

15  sent to him denying his renewal application, went out

16  on August 4, 2021?

17     A.  Yes.

18     Q.  Would you agree with me that the e-mail from

19  Mr. Cook to the Attorney General's Office in the

20  second paragraph -- actually, in the first and second

21  paragraphs, sets forth reasons why he thinks his

22  renewal application should be granted?

23     A.  Yes.

24     Q.  One of the reasons that he sets forth is the

25  issue of reciprocity in 23 other states that the town

EDWARD TROIANO                                                    March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                                            80

1   permit does not provide; do you see that?

2       A. I do, yes.

3       Q. What do you understand reciprocity to mean?

4       A. I think there's a slight difference in terms

5   of people's understanding, but what it means to me is

6   that other states recognize a Rhode Island permit.

7       Q. Okay. So there are two things: One is if

8   you're in another state engaging in concealed carry

9   and law enforcement asks you what your authority is

10  for that, you may be able to show them your

11  Rhode Island permit, and they will recognize that as

12  sufficient authority to engage in concealed carry; is

13  that one meaning of reciprocity?

14      A. It could be, sir. Again, without knowing the

15  specific state law, I can't agree or disagree with

16  your conclusion.

17      Q. I'm not getting into a specific state law.

18  I'm just saying my understanding is there are two

19  different kinds of what we might call reciprocity.

20      A. Right.

21      Q. One is which I described, which is your

22  Rhode Island permit gives you authority to engage in

23  concealed carry in another state. The other kind of

24  reciprocity may be the fact that you have a

25  Rhode Island permit means you can get a permit from

1  another state; would you agree that's another

2  possibility?

3      A.  Yes, that's another possibility, sure.

4      Q.  Kind of reciprocity here?

5      A.  Yes.

6      Q.  Okay.  The Attorney General's Office, as I

7  read this letter -- well, let me back up.  Do you have

8  any idea who sent the response to Mr. Cook that's at

9  the top of Exhibit 9?

10     A.  I could only assume.  I don't have a

11  specific, I don't have specific information as to

12  exactly who it would have been, but my assumption

13  would be that it would be Angelica DeFusco.

14     Q.  Who is Angelica DeFusco?

15     A.  She is the young lady that handles the

16  permitting process.  In other words, the

17  administrative part of it, putting the files together,

18  responding to inquiries that we receive in this in

19  box.

20     Q.  Okay.  Whether or not it was Ms. DeFusco,

21  what the e-mail says is that our office does not

22  consider reciprocity a proper demonstration of need;

23  do you see that?

24     A.  I do.

25     Q.  Why is it reciprocity isn't a proper

1  demonstration of need?

2      A.  It would have to be -- again, I didn't make

3  the exact statement that is contained in the e-mail.

4  But generally speaking, unless there's specific

5  examples as to why the reciprocity is needed, your

6  demonstration of need is for the State of

7  Rhode Island, why do you need a carry permit in the

8  State of Rhode Island.

9      If you need it outside of the State of

10  Rhode Island isn't, in general, isn't a consideration

11  for showing of a need within the State of

12  Rhode Island.

13      Q.  In other words, the response to Mr. Cook

14  accurately reflects the policy of the Attorney

15  General's Office; is that correct?

16      A.  I would say that it is, generally speaking,

17  yes.

18      Q.  Okay.  Well, we'll take a look at their

19  letters, but again, the Attorney General's Office does

20  not consider reciprocity to be a basis for a showing

21  of need?

22      A.  Generally speaking, yes.

23          MR. LYONS:  Okay.

24          (EXHIBIT 10 PLAINTIFFS' MARKED FOR ID)

25      Q.  Let me show you what has been marked as

1   Exhibit 10.  I'm going to ask you if you recognize

2   this letter?

3       A.  I do.

4       Q.  This letter sets forth your response to a

5   meeting that you had with Mr. Cook that involved him,

6   Mr. Saccoccio, you and Michael Figueiredo; is that

7   correct?

8       A.  Yes.

9       Q.  In that meeting Mr. O'Neil and/or

10  Mr. Saccoccio set forth -- not Mr. O'Neil.  Mr. Cook

11  and/or Mr. Saccoccio set forth reasons why Mr. Cook's

12  renewal application should be granted, and you were

13  responding to those reasons; is that correct?

14      A.  Correct.

15      Q.  Does the letter set forth all of the reasons

16  why Mr. Cook's renewal application was denied based on

17  that meeting?

18      A.  So it addresses the additional reasons that

19  were brought up during the meeting, yes.

20      Q.  Okay.  Well, it also addresses the

21  reciprocity issue, correct?

22      A.  I believe it does, yes.

23      Q.  It's in the first full paragraph at the top

24  of the second page?

25      A.  Yes, correct.

EDWARD TROIANO                                        March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                    84

1    Q.  Okay.  If you go down to the fourth full

2    paragraph on that page, there is a sentence which

3    says, quote, While Mr. Saccoccio pointed out the valid

4    distinction that a permit issued by this office allows

5    for the open carrying of a hand gun, neither he nor

6    you provided any information or justification for your

7    need to do so, even when you were specifically asked

8    if you had this need; do you see that?

9    A.  I do.

10    Q.  Is it your understanding that if a person

11    wants to engage in the open carry of a hand gun, first

12    of all, they need to have an Attorney General permit

13    in Rhode Island?

14    A.  Correct.

15    Q.  Is it also your understanding that in order

16    to get the Attorney General's permit for open carry,

17    that they still have to make a showing of need as

18    determined by the Attorney General's Office?

19    A.  Yes.

20    Q.  The showing of need is the same showing of

21    need we have discussed previously as set forth in the

22    factors in Exhibit 1 and you have elaborated on?

23    A.  Yes.

24         (EXHIBIT 11 PLAINTIFFS' MARKED FOR ID)

25    Q.  Let me show you what has been marked as

1  Exhibit 11, and ask if you recognize this document?

2      A.  I do.

3      Q.  Okay.  Is this a letter dated November 7,

4  2021 which was sent by Michael Figueiredo to Donald

5  Labriole explaining why his concealed carry renewal

6  application was denied?

7      A.  Yes.

8      Q.  The reason that is set forth in here is in

9  the second sentence of the first full paragraph; would

10  you agree?

11      A.  I would say that's in the second paragraph.

12      Q.  Okay.  Well, maybe we're agreeing on the same

13  thing.  Let me, the second sentence of the letter

14  says, While reviewing your application, it has come to

15  our attention that you have applied for and received a

16  concealed weapon permit from West Greenwich,

17  Rhode Island; do you see that?

18      A.  I do.

19      Q.  Then in the second paragraph you state that

20  this gives him the same authority to carry a concealed

21  weapon as the Attorney General's permit would have?

22      A.  Correct.

23      Q.  So the reason that his renewal application

24  was denied was that he had a municipal permit from the

25  Town of West Greenwich?

EDWARD TROIANO                                        March 22, 2024
MICHAEL ONEIL V. PETER F. NERONHA                              86

1          THE WITNESS:  That gave him the same

2   authority?

3          MR. LYONS:  Correct.

4     A.  Yes.

5     Q.  It is the view of the Attorney General's

6   Office that that means he has not made a proper

7   showing of need?

8     A.  Correct.

9          (EXHIBIT 12 PLAINTIFFS' MARKED FOR ID)

10     Q.  Let me show you what's been marked as

11   Exhibit 12, and I'll ask you if you recognize this?

12     A.  I do.

13     Q.  Is this a letter which you sent to

14   Mr. Labriole on March 4, 2022 explaining the reasons

15   for the denial of his application?

16     A.  Yes.  This was a letter sent subsequent to an

17   interview with him.

18     Q.  Correct.  In other words, this was preceded

19   by an initial letter that was sent to him?

20     A.  Yes.

21     Q.  And then a meeting with, again, Mr. Labriole,

22   Mr. Saccoccio, Mr. Figueiredo and you?

23     A.  Yes.

24     Q.  In this letter you set forth all the

25   additional, all the reasons why Mr. Labriole's renewal

1  application was denied?

2      A.  This was a letter, again, addressing the

3  reasons in response to additional information brought

4  forth at the appeal interview and addressing those.

5      Q.  Okay.

6      A.  So in other words, sometime the original

7  letter addresses one issue.  I don't know that that

8  specific issue is reiterated in this without reading

9  the whole thing.

10     Q.  That's fair enough.  If you go to the second

11  page, the fourth full paragraph begins, Included in

12  your original denial letter was a copy of Pages 4 and

13  5 of our application packet; do you see that

14  paragraph?

15     A.  I do.

16     Q.  The paragraph continues, This office does not

17  have a policy that an individual issued a CCW permit

18  from a town under Section 11-47-11 will not be

19  approved for a license to carry a hand gun by this

20  office; therefore, no such guidance is or would be

21  provided to applicants.  Okay, do you see that?

22     A.  I do.

23     Q.  Then it continues, A decision to issue an

24  additional LTC -- does LTC stand for License To Carry

25  in this?

1    A.  It does.

2       Q.  From this office based on a specific need.

3   As outlined above, you did not articulate this need,

4   despite being asked specifically; do you see that?

5       A.  I do.

6       Q.  In other words, if I understand that

7   correctly, what you're saying is that the Attorney

8   General's position is that it does not have a policy

9   of denying an application simply because a person has

10  a municipal permit?

11      A.  Correct.

12      Q.  In other words, the person can still get a

13  permit if they, an Attorney General permit even if

14  they have a municipal permit if they show some other

15  need beyond that, or some need?

16      A.  Correct.

17      Q.  Okay.  The needs that we discussed are the

18  same needs, the needs that they would have to show are

19  the same needs that we have discussed earlier?

20      A.  Yes.

21      Q.  Okay.  In other words, having a municipal

22  permit is not a bar, shall we say, to getting an

23  Attorney General permit?

24      A.  It is not.

25          MR. LYONS:  It is not, okay.

1           C-E-R-T-I-F-I-C-A-T-E

2   I, ELIZABETH GREELEY, a Notary Public, in and for the
    State of Rhode Island, duly commissioned and qualified
3   to administer oaths, do hereby certify that the
    foregoing Deposition of Edward Troiano, a Witness in
4   the above-entitled cause, was taken before me on
    behalf of the Plaintiffs, at the Offices of the
5   Attorney General, 4 Howard Avenue, Cranston,
    Rhode Island on March 22, 2024 at 10:00 A.M.; that
6   previous to examination of said witness, who was of
    lawful age, he was first sworn by me and duly
7   cautioned to testify to the truth, the whole truth,
    and nothing but the truth, and that he thereupon
8   testified in the foregoing manner as set out in the
    aforesaid transcript.

9
    I further certify that the foregoing Deposition was
10  taken down by me in machine shorthand and was later
    transcribed by computer, and that the foregoing
11  Deposition is a true and accurate record of the
    testimony of said witness.

12
    Pursuant to Rules 5(d) and 30(f) of the Federal Rules
13  of Civil Procedure, original transcripts shall not be
    filed in Court; therefore, the original is delivered
14  to and retained by Plaintiffs' Attorney, Thomas Lyons.

15  Reading and signing of the Deposition was waived by
    the Witness.

16
    IN WITNESS WHEREOF, I have hereunto set my hand this
17  2nd day of April, 2024.

18

19

    _____
20  ELIZABETH GREELEY, NOTARY PUBLIC
    CERTIFIED COURT REPORTER
21  MY COMMISSION EXPIRES:  04/07/2026

22

23

24

25