UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **MICHAEL O'NEIL, et al.**<br>*Plaintiffs*<br><br>v.<br><br>**PETER F. NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and THE STATE OF RHODE ISLAND**<br>*Defendants.* | C.A. No. 23-cv-00070-WES-PAS |

### REPLY TO PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR JUDICIAL NOTICE

Plaintiffs agree that the Court should take judicial notice of all but one of the statutes provided with Defendants' Motion for Judicial Notice. Pls.' Resp. to Defs.' Mot. Jud. Notice 1, ECF No. 45. However, this Court should grant Defendants' Motion in its entirety because Plaintiffs' concern regarding item 19, an excerpt from Francois-Xavier Martin's *A Collection of the Statutes of the Parliament of England in Force in the State of North-Carolina* (hereinafter "the Martin Collection"), relies on their misinformed belief that the excerpted statute was not in effect in North Carolina at the time the Martin Collection was published. Pls. Resp. Defs. Mot. Jud. Notice 1-2. That contention is refuted by the very title of the Martin Collection, which identifies itself as a collection of the statutes "in force in the State of North-Carolina," as demanded by the North Carolina legislature. Ex. 19 to Defs.' Mot. Jud. Notice 1, ECF No. 44-19. In addition, the State Defendants submitted a sworn declaration by their expert Robert Spitzer attesting that the

excerpted statute "was still in force in North Carolina in 1792." Ex. C to Defs.' Opp. to Pls.' Mot. in Limine ¶ 19, ECF No. 43-3.

Plaintiffs present no evidence disproving that claim. They merely gesture towards the Martin Collection's preface, which explains that the publisher included a few obsolete statutes regarding fee-tail, tenure, and other property matters unrelated to the Statute of Northampton. The Martin Collection 2-3, ECF No. 44-19. Likewise, the original language of the excerpted statute has no bearing on this Court's ability to take notice of the version published in the Martin Collection, which presents, under the aegis of the North Carolina legislature, the statutory language in force in 1792 North Carolina, not 1328 England. *See, e.g., New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 40 (quoting an English version of the 1328 Statute of Northampton); *Range v. Attorney General United States*, 124 F.4th 218, 242 n.18 (3d. Cir. 2024) (Matey, J., concurring) (citing the Martin Collection for North Carolina's version of the Statute of Northampton). And neither Plaintiffs' citation to *Bruen* nor *Huntly* indicates that the Statute of Northampton was not in effect in 1792 North Carolina. *See Bruen*, 597 at 40-46 (weighing the 1328 Statute of Northampton's place in the nation's tradition of firearms regulation but saying nothing about its enforceability in 1792 North Carolina); *State v. Huntly*, 3 Ired. 418, 420 (1843) (*rejecting* the defendant's argument, quoted by Plaintiffs' Response, that "going about armed with unusual and dangerous weapons, to the terror of the people" was not a chargeable offense).

Moreover, Plaintiffs' argument overlooks how states in the early republic continued to apply English statutes as their own. *See* 1 *James Kent*, *Commentaries on American Law* 473 (3d ed. 1836) ("It is also the established doctrine, that English statutes, passed before the emigration of our ancestors, and applicable to our situation, and in amendment of the law, constitute a part of the common law of this country."); *see, e.g.*, *The Public Laws of the State of Rhode-Island and*

2

*Providence Plantations* 78 (1798) ("[I]n all cases in which provision is not made, either at common law, or by the statutes aforesaid, the statute laws of England, which have heretofore been introduced into practice in this State, shall continue to be in force, until the General Assembly shall especially provide therefor."), *available at* https://babel.hathitrust.org/cgi/pt?id=mdp.35112203944048&seq=86.  A later edition of the North Carolina compilation under a new set of editors also includes the Statute of Northampton, only confirming that Martin was right to include the statute in the 1792 version submitted to this Court. 1 *Laws of the State of North-Carolina* 87 (1821) (listing "2 Edward 3, 1328, Chap. 3" as among those "Statutes and Parts of Statues of Great Britain, Reported as Being in Force in This State, by the Commissioners Appointed under the Act of 1817, Entitled, 'An Act for the Revision of the Acts of the General Assembly'"), *available at* https://digital.ncdcr.gov/Documents/Detail/laws-of-the-state-of-north-carolina-including-the-titles-of-such-statutes-and-parts-of-statutes-of-great-britain-as-are-in-force-in-said-state-...-with-marginal-notes-and-references-1821-v.1/558788?item=679764.

Finally, Defendants do not concede anything by submitting these historical statutes for this Court's judicial notice.  This Court "may take judicial notice of law at any time," no matter what the parties file or fail to file.  *See Berrios-Romero v. Estado Libre Asociado de Puerto Rico*, 641 F.3d 24, 27 (1st Cir. 2011).  Defendants' Motion was nothing more than a courtesy to aid the Court in the swift resolution of this case.  It does not "essentially admit" the validity of Plaintiffs' spurious attacks on Defendants' expert Professor Robert Spitzer.  Pls. Reply Respecting Their Mot. in Limine 1, ECF No. 46.  To the contrary, the Motion demonstrates the baselessness of any doubt cast on the existence of these statutes simply because Plaintiffs disagree with how Professor

Spitzer cited the statutes. Thus, it is apparent that Professor Spitzer's expert opinion is grounded in the historical record and entirely reliable.

For these reasons, as well as the reasons set forth in Defendants' Motion for Judicial Notice, ECF No. 44, this Court should take notice of all statutes set forth in Defendants' Motion.

Dated: January 28, 2025

Respectfully Submitted,

PETER F. NERONHA
and THE STATE OF RHODE ISLAND,

By their Attorneys,
*/s/ James J. Arguin*
James J. Arguin (#10972)

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (#10742)

Special Assistant Attorneys General
Office of the Attorney General
150 South Main Street
Providence, R.I. 02903
(401) 274-4400 exts. 2078 | 2064
(401) 222-2995 (Fax)
jarguin@riag.ri.gov | pmeosky@riag.ri.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ James J. Arguin*