UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL O'NEIL, et al.           )
    Plaintiffs                   )
                                 )
Vs.                              )    C.A. 23-cv-70
                                 )
PETER F. NERONHA, in his official capacity as    )
Attorney General of the State of Rhode Island, and    )
THE STATE OF RHODE ISLAND        )
    Defendants                   )

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE THE SUPPLEMENTAL DECLARATION OF PLAINTIFFS' EXPERT CLAYTON CRAMER**

The Court should deny Defendants' Motion to Strike the Supplement Declaration of Clayton Cramer for three reasons. First, the initial 18 paragraphs of the Declaration consist of Cramer's restated qualifications, (¶¶ 1-4), and Cramer's comments on Defendants' citations to historical statutes in their Motion for Summary Judgment (¶¶ 5-18). As just one example, Defendants' Memorandum cites a 1686 New Jersey law. (¶ 7). Cramer responds that the Supreme Court specifically rejected the relevance of this statute in Bruen. (¶ 8).

Otherwise, Cramer criticizes the use of out of context quotes from these statutes or the use of statutes that do not exist where Defendants' expert has cited to them. For example, Defendants cite an 1801 Tennessee statute. Cramer responds:

> The selectively quoted statute reuses the language of the Statute of Northampton already rejected by Bruen. Worse, quoting only section 6 missed the larger purpose and narrow focus of the law. This was "An Act for the restraint of idle and disorderly persons… Whereas it becomes necessary for the welfare of the community, to suppress wandering, disorderly and idle persons… endeavoring to maintain himself by gaming or other undue means…"[1] Tennessee passed a vagrancy law for "persons of ill fame or suspicious character." This was not aimed at the general population, but a particularly disreputable group.

---

[1] 1801 Tenn. Laws 259, 260-261, ch. 22, § 2.

1

(¶ 10). Similarly:

> Spitzer cites a 1694 Massachusetts law that does not exist, at least in the published version. "1694 Mass. Laws 12, no. 6, An Act for the Punishing of Criminal Offenders." It is unclear if Spitzer means ch. 12, or ch. 6. Ch. 6: "An Act For Highwayes,"[2] or Ch. 12: "An Act For A New Establishment And Regulation Of The Chancery."[3]

(¶ 13). Some of Cramer's criticisms are also set forth in his Declaration in Support of Plaintiffs' Motion in Limine. Accordingly, those comments and materials are already before the Court.

Second, most of the rest of Cramer's supplemental declaration consists of quotations from publicly available historical materials about the historical use of firearms. (¶¶ 19-36). Paragraph 19 contains a quote from Cramer's book, <u>Concealed Carry Laws of the Early Republic</u>, responding to Defendants' use of a different quotation from the same book. Almost all the rest of the materials cited in Paragraphs 20-36 are available on the internet. (See, Cramer Declaration, ¶ 30 and n. 22). For that reason, Defendants do not need to consult with their experts about them; they can simply click on the links provided to see that the materials say what Plaintiffs said they say. Obviously, if Plaintiffs misquoted or misused the materials, Defendants were free to point out any errors (and they have not done so).

---

[2] Id. at 136, https://books.google.com/books?id=ouEwYQ-FKtUC&newbks=1&newbks_redir=0&dq=For%20the%20better%20amending%20and%20keeping%20in%20repair%20and%20clear%20the%20highways%20and%20common%20roads%20acts%20and%20resolves%20of%20the%20province%20of%20massachusetts&pg=PA136#v=onepage&q=For%20the%20better%20amending%20and%20keeping%20in%20repair%20and%20clear%20the%20highways%20and%20common%20roads%20acts%20and%20resolves%20of%20the%20province%20of%20massachusetts&f=false, last accessed February 5, 2025.

[3] Id. at 144, https://books.google.com/books?id=ouEwYQ-FKtUC&newbks=1&newbks_redir=0&dq=%22%E2%80%9CAn%20Act%20For%20A%20New%20Establishment%20And%20Regulation%20Of%20The%20Chancery.%E2%80%9D%20massachusetts&pg=PA144#v=onepage&q=%22%E2%80%9CAn%20Act%20For%20A%20New%20Establishment%20And%20Regulation%20Of%20The%20Chancery.%E2%80%9D%20massachusetts&f=false, last accessed February 5, 2025.

Plaintiffs point out that Defendants marked excerpts of Cramer's book as an exhibit during his deposition. Defendants' counsel and Cramer had an extended colloquy about them. (Exhibit 1). Cramer asserted that open carry was not considered a problem despite any supposed social stigma:

> Well, [open carry] might not have been a problem in the sense that people were not afraid of it. I mean, one of the things that I did find in the research I've done is that the number of times that there is a distinction made between concealed carry which is regarded as the act of a ruffian and open carry which seems not to have generated the same sort of general hostility or hatred.

(Id. p. 138). The additional materials in Paragraphs 19-36 simply add additional support to that conclusion.

Moreover, these materials were submitted in response to Defendants' using the quotation from Cramer's book about the historical use of firearms in their Memorandum in support of summary judgment. (ECF # 34-1, p. 38). Defendants use the quotation to argue that open carry of firearms was not a common practice. Notably, that quotation did not appear in any of Defendants' experts' declarations (or elsewhere in any discovery responses). Instead, Defendants' expert, Brennan Rivas, cited newspaper articles from that time period criticizing open carry. Cramer responds with newspaper articles and book excerpts showing it was a common practice despite any criticism. Defendants do not challenge the authenticity of the materials Cramer cited just as Plaintiffs do not challenge the authenticity of Rivas' materials. So, Plaintiffs are simply doing what Defendants' expert did.

The important issue is what the materials indicate with respect to the relevant issue. Both sides have had ample opportunity to argue that. Defendants' argument is that there was a social stigma attached to open carry. Plaintiffs' argument is that regardless of any supposed social stigma,

3

both Rivas' and Cramer's materials show open carry occurred. Legislatures generally let it occur, and on the few occasions when they did try to ban open carry, state supreme courts struck down the bans as unconstitutional.

Third, the last paragraph of Cramer's supplemental declaration is simply a summary of paragraphs 5-18 criticizing Defendants' Motion for Summary Judgment:

> Rhode Island's Motion for Summary Judgment relies on laws that do not exist; have been specifically rejected by *Bruen* as irrelevant for understanding the meaning of the Second Amendment; misreading laws that banned brandishing as bans on open carry, laws from independent kingdoms far outside the traditions to which *Bruen* refers; and laws that were not about public safety but gathering revenue.

(¶ 37). These comments echo those Cramer made in his prior declarations in support of Plaintiffs' Motion for Summary Judgment and Motion in Limine. There is nothing new in that paragraph.

Plaintiffs note that the First Circuit cases on which Defendants rely deal with exclusion of an entirely new expert witness identified after the close of expert discovery. Primus v. U.S., 389 F.3d 231, 236 (1st Cir. 2004), was a medical malpractice case in which plaintiff's counsel was permitted to supplement the disclosure of a previously identified expert when the court indicated it would exclude the testimony of the newly identified expert. Similarly, in Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 60 (1st Cir. 2001), the plaintiff supported its objection to summary judgment in a securities case with a declaration from an entirely new expert witness not previously disclosed in discovery. Likewise, in Science Applications International Corp. v. U.S. 169 Fed.Cl. 643, 674 (Cl.Ct. 2024), the party attempted to insert an entirely new theory into the case through a supplemental expert witness affidavit.

What Defendants have not cited is a case that excludes additional expert facts presented in response to the opponent's facts. To the contrary, the First Circuit and other courts have held that expanding the scope of an expert's testimony—sometimes after the close of discovery, but before

4

trial—may be permissible if the opposing party is not significantly prejudiced. <u>Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.</u>, 240 F.3d 1, 10-11 (1st Cir. 2001); see also; <u>Talbert v. City of Chicago</u>, 236 F.R.D. 415, 425 (N.D.Ill. 2006); <u>Williams v. City of Chattanooga</u>, 2018 WL 11463529 at *2 (E.D.Tenn. 2018). Here, Defendants questioned Cramer about some statements in one of his books. Cramer developed some additional facts in response to those questions. These are historical facts in the public domain and readily accessible to Defendants and their experts throughout the case. Defendants have identified no specific, substantive prejudice associated with Cramer raising them. Regardless, Cramer can rely on the facts to support his opinion even if the facts are not admissible at trial. F.R.E. 703.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Strike.

Respectfully submitted,

**PLAINTIFFS,**
By their attorneys,

| | |
|---|---|
| <u>/s/ Thomas W. Lyons</u> | <u>/s/ Frank R. Saccoccio</u> |
| Thomas W. Lyons        #2946 | Frank R. Saccoccio Esq. #5949 |
| Strauss, Factor, Laing & Lyons | Saccoccio Law Office |
| One Davol Square, Suite 305 | 928 Atwood Avenue |
| Providence, RI 02903 | Johnston, Rhode Island 02919 |
| (401) 456-0700 | (401) 944-1600 * 942-8921 Fax |
| tlyons@straussfactor.com | Frank.CSLawOffice@gmail.com |

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2025, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons