UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
MICHAEL P. O'NEIL, et al.,         )
                                   )
        Plaintiffs,                )
                                   )
    v.                             )    C.A. No. 23-070 WES
                                   )
PETER F. NERONHA, et al.,          )
                                   )
        Defendants.                )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Senior District Judge.

This is a case about the scope of the Second Amendment, in which Plaintiffs sue the State of Rhode Island and its Attorney General ("AG") for denying them permits to openly carry a handgun in public. Pending before the Court are the parties' cross motions for summary judgment, and three related evidentiary motions. The Court has determined that no hearing is needed. For the reasons explained below, the Court GRANTS Defendants' Motion for Summary Judgment, Dkt. No. 34; and DENIES (1) Plaintiffs' Motion for Summary Judgment, Dkt. No. 31, (2) Plaintiffs' Motion in Limine, Dkt. No. 33, (3) Defendants' Motion for Judicial Notice, Dkt. No. 44, and (4) Defendants' Motion to Strike, Dkt. No. 50.

**I. BACKGROUND**

The Rhode Island Firearms Act, R.I. Gen. Laws §§ 11-47-1 to -64, "regulate[s] the possession and use of an array of weapons,

including pistols, rifles and other deadly weapons." Mosby v. Devine, 851 A.2d 1031, 1045 (R.I. 2004).  "The purpose of the Firearms Act is 'to prevent criminals and certain other persons from acquiring firearms generally and handguns in particular without at the same time making unduly difficult such acquisition for other members of society.'" Id. at 1050 (quoting State v. Storms, 308 A.2d 463, 466 (R.I. 1973)).  In general, it requires a permit to publicly carry a handgun.  R.I. Gen. Laws § 11-47-8.

To obtain a handgun permit, the Act establishes "[t]wo separate and distinct licensing procedures." Mosby, 851 A.2d at 1047.  The first, set out in § 11-47-11, "is mandatory – an applicant who meets the criteria set forth in § 11-47-11 is entitled to a gun permit." Id.  Local officials issue these permits and are limited to issuing only concealed carry permits ("restricted permits").  R.I. Gen. Laws § 11-47-11.

The second procedure, detailed in § 11-47-18, "provides for the discretionary grant of a firearms license by the [AG] 'upon a proper showing of need.'" Mosby, 851 A.2d at 1047 (quoting R.I. Gen. Laws § 11-47-18).  These discretionary permits authorize both open and concealed carry ("unrestricted permits").  R.I. Gen. Laws § 11-47-18.  Under Rhode Island law, permits of this nature are a privilege and there is no constitutionally protected liberty interest in obtaining one.  Mosby, 851 A.2d at 1048-49.

Neither § 11-47-18 nor any other section of the Act defines

2

the term "proper showing of need," but the AG has issued policy guidance with a non-exclusive list of factors that he considers. Defs.' Statement Undisputed Facts ("DSUF") ¶¶ 2, 4, Dkt. No. 35. But the AG retains "discretion to refuse a license even if a person makes 'a proper showing of need.'" Mosby, 851 A.2d at 1048. Although this discretion is broad, it is not unlimited; the AG "must adhere to minimum procedural requirements when rejecting an application." Id. at 1051. "A rejected applicant is entitled to know the evidence upon which the [AG] based [his] decision and the rationale for the denial." Id. The AG's decision is also subject to judicial review for legal error. Id.

\* \* \*

Plaintiffs in this case are seven residents and citizens of Rhode Island. 2d Am. Verified Compl. ("Operative Compl.") ¶¶ 1-7, Dkt. No. 21. Each possesses a restricted permit. Pls.' Statement Undisputed Facts ("PSUF") ¶¶ 4-5, Dkt. No. 32. And each previously possessed an additional unrestricted permit. Id. ¶ 4. But in 2021, the AG denied all their renewal applications for these unrestricted permits, finding that they did not need them because they already had restricted permits. Id. ¶ 7. Plaintiffs appealed their application denials and, following a hearing, the AG again denied their renewal applications. Pls.' Additional Statement Undisputed Facts ("PSAUF") ¶¶ 5, 7, Dkt. No. 41.

3

**C. Procedural History**

Plaintiffs filed this lawsuit in February 2023. See generally Compl., Dkt. No. 1. Their Operative Complaint has two counts. In Count I, they allege that Defendants are liable under 42 U.S.C. § 1983 because the denial of their unrestricted permit applications violated their Second Amendment rights. Operative Compl. ¶¶ 57-75. And in Count II, they state two separate claims. First, they allege that Defendants are liable under § 1983 because the denial of their applications violated their Fourteenth Amendment due process rights. Id. ¶¶ 76-82. Second, they claim that the denial violated their due process rights under Article 1, § 2 of the Rhode Island Constitution. Id. Plaintiffs challenge the Firearms Act's permitting structure only to the extent that Defendants applied it to deny them unrestricted permits. Pls.' Obj. Defs.' Mot. ("Pls.' Obj.") 2, Dkt. No. 39.

For relief, Plaintiffs ask the Court for an order (1) enjoining Defendants to issue unrestricted permits to Plaintiffs; (2) declaring that § 11-47-18 of the Act violates the Second Amendment insofar as it requires a "proper showing of need"; (3) declaring that the process for obtaining an unrestricted permit violates the due process guarantees of the Fourteenth Amendment and Article 1, § 2 of the Rhode Island Constitution; and (4) awarding Plaintiffs costs of this lawsuit. Operative Compl. 14.

Plaintiffs and Defendants cross move for summary judgment.

See generally Pls.' Mot. Summ. J. ("Pls.' Mot."), Dkt. No. 31; Defs.' Mot. Summ. J. ("Defs.' Mot."), Dkt. No. 34.

## II. LEGAL STANDARD

The Court must grant summary judgment to either party if they show "that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] dispute is genuine when the evidence is such 'that a reasonable jury could resolve the point in favor of the nonmoving party.'" Quintana-Dieppa v. Dep't of the Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)). A fact is material when it has "the 'potential to affect the outcome of the suit under the applicable law.'" Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)).

The Court must view "'the entire record in the light most hospitable to the [nonmoving party],'" drawing "'all reasonable inferences in that party's favor.'" Id. (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). But it shall not rely on "'conclusory allegations, improbable inferences, [or] unsupported speculation.'" Id. (alteration in original) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III. DISCUSSION

Applying this standard to the applicable law and facts, the

Court finds that Defendants are entitled to summary judgment on Counts I and II.

### A. Count I: Section 1983 Second Amendment Claim

The Court begins with Count I, Plaintiffs' § 1983 Second Amendment claim. Plaintiffs move for summary judgment, arguing that they "have a constitutional right to engage in open carry of firearms," which cannot be lawfully conditioned upon their ability to show sufficient "need." Pls.' Mem. Supp. Pls.' Mot. ("Pls.' Mem.") 17, 29, Dkt. No. 31-1. Defendants also move for summary judgment, contending that the Act's permitting structure – as applied to Plaintiffs – satisfies the Second Amendment because it provides Plaintiffs the right to concealed carry. Defs.' Mem. Reasons Supp. Defs.' Mot. ("Defs.' Mem.") 17, Dkt. No. 34-1.

Under the Second Amendment, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has held that this provision "confer[s] an individual right to keep and bear arms," District of Columbia v. Heller, 554 U.S. 570, 595 (2008); and further that the term "bear Arms" includes "carrying handguns publicy," N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 32 (2022).

"To assess plaintiffs' claim that Rhode Island's [permitting structure] violates the Second Amendment," the Court must first "consider whether 'the Second Amendment's plain text covers' the

6

[plaintiffs' proposed conduct]." Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 43 (1st Cir. 2024) (quoting Bruen, 597 U.S. at 17). "If it does, [the Court] then consider[s] whether Rhode Island's [permitting structure] is 'consistent with this Nation's historical tradition of firearm regulation' and thus permissible under the Second Amendment." Id. (quoting Bruen, 597 U.S. at 17).

The parties disagree as to the threshold question of whether the text of the Second Amendment covers open public carry of firearms. Pls.' Mem. 17-29; Defs.' Mem. 19-22. And while Bruen held that the Second Amendment's plain text protects "carrying handguns publicly for self-defense," 597 U.S. at 32, it did not go so far as to declare that the text requires open carry. See Baird v. Bonta, 709 F. Supp. 3d 1091, 1125 (E.D. Cal. 2023).

But the Court need not dive too deeply into this question because, even assuming the text covers open carry, Defendants' application of the Firearms Act to regulate Plaintiffs' manner of public carry is within the Nation's historical tradition of regulation. Plaintiffs' argument to the contrary is foreclosed by Bruen itself. There, the Supreme Court concluded that "[t]he historical evidence from antebellum America does demonstrate that the manner of public carry was subject to reasonable regulation." Bruen, 597 U.S. at 59. And it drew that conclusion, in part, from its finding that historically, "States could lawfully eliminate

7

one kind of public carry – concealed carry – so long as they left open the option to carry openly." Id. The Firearms Act, through its permitting structure, does just this, albeit in reverse: it regulates Plaintiffs' manner of public carry in that it limits their right to open carry but leaves unaffected their right to concealed carry.[1]

Plaintiffs make much of the fact that the Act's permitting structure reverses common historical regulations allowing open carry and limiting concealed carry. See Pls.' Mem. 17-29. But the Second Amendment is not "a law trapped in amber." United States v. Rahimi, 602 U.S. 680, 691 (2024). Per the Supreme Court's direction in Rahimi, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" Id. at 692 (alteration in original) (quoting Bruen, 597 U.S. at 29). In doing

---

[1] The Court also notes that in Bruen, the Supreme Court counted forty-three states in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." 597 U.S. at 13. It included Rhode Island in this list. Id. at 13 n.1 (first citing R.I. Gen. Laws § 11-47-11; and then citing Gadomski v. Tavares, 113 A.3d 387, 392 (R.I. 2015)). Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately "to underscore" the fact that "the Court's decision does not affect" these forty-three state permitting structures. Id. at 79 (Kavanaugh, J., concurring).

8

so, the Court concludes that Defendants' application of the Act's permitting structure to Plaintiffs is relevantly similar to historical regulations, and thus consistent with the Second Amendment.[2]

**B. Count II**

The Court now turns to Count II, in which Plaintiffs sue Defendants for allegedly violating their due process rights under (1) the Fourteenth Amendment (via § 1983) and (2) Article 1, § 2 of the Rhode Island Constitution.

**1. Section 1983 Fourteenth Amendment Due Process Claim**

Plaintiffs move for summary judgment on their § 1983 Fourteenth Amendment claim, arguing that § 11-47-18 is unconstitutionally "vague and overbroad," insofar as it requires them to make a "proper showing of need." Pls.' Mem. 32-37. Defendants also seek summary judgment, claiming that Plaintiffs (1) do not have a protected liberty or property interest in an unrestricted permit, Defs.' Mem. 39-40, and (2) even if they do, "the statutory procedures relating to the [AG's] denial of their § 11-47-18 applications" were sufficient, id. at 41.

---

[2] The Court's decision rests on the binding precedent set by the Supreme Court in Bruen, 597 U.S. 1, and Rahimi, 602 U.S. 680. Thus, the Court need not undertake its own review of historical laws regulating the public carry of firearms. For that reason, the parties' evidentiary motions are not material to its decision. See Pls.' Mot. Limine, Dkt. No. 33; Defs.' Mot. Judicial Notice, Dkt. No. 44; Defs.' Mot. Strike, Dkt. No. 50.

The parties' arguments seem to reflect a lack of shared understanding as to the nature of Plaintiffs' due process challenge. Plaintiffs, in their Operative Complaint, appeared to frame their lawsuit as making procedural due process, vagueness, and overbreadth challenges. Operative Compl. ¶¶ 77-82. Further, Plaintiffs initially appeared to raise both as-applied and facial challenges to the Firearms Act's permitting structure. Id. ¶¶ 80-81.

But Plaintiffs' responsive briefing to Defendants' Motion resolves at least some of this confusion, clarifying that they are not attempting to make a procedural due process challenge or a facial challenge. Pls.' Obj. 2. Rather, they raise only "an as-applied challenge" to Defendants' denial of their unrestricted permit applications for being allegedly "unconstitutionally vague and overbroad." Id.

Plaintiffs' vagueness challenge falls short. "The vagueness inquiry . . . incorporates two basic concerns: 1) concerns about fair notice, and about the related danger of chilling expression, and 2) concerns about excessive discretion being invested in administering and enforcing officials." Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 93 (1st Cir. 2004) (collecting cases). The first concern "classically arises where the government imposes criminal sanctions for conduct or speech." Id. at 94. "And the concern over subjective decision making has most effect in

10

government licensing schemes." Id.

Plaintiffs argue that neither § 11-47-18 nor the AG's policy guidance sufficiently defines the phrase "proper showing of need." Pls.' Obj. 29. They also say that Defendants' denial of their unrestricted permit applications was "arbitrary and capricious." Id. These claims clearly implicate the vagueness doctrine's concern with vesting excessive discretion to government officials.

As an initial matter, it is not clear that the void for vagueness doctrine applies to permit denials such as those at issue in this case. To the Court's knowledge, its application to permitting procedures has only occurred in the First Amendment context. See Ridley, 390 F.3d at 93-95 (collecting cases).

But even assuming the vagueness doctrine applies to a permitting scheme in the Second Amendment context, the AG's application of § 11-47-18 survives scrutiny. The Court agrees that the phrase "proper showing of need" in § 11-47-18, "if read in a vacuum, might be problematic." URI Student Senate v. Town of Narragansett, 631 F.3d 1, 14 (1st Cir. 2011). But the phrase here does not occur in a vacuum. Rather, the AG provides policy guidance interpreting the phrase. DSUF Ex. A, at 3-5, Dkt. No. 35-1. And further, the Rhode Island Supreme Court has construed the phrase to find that, in exercising his discretion, the AG is "a finder of fact, not a master of puppets." Mosby, 851 A.2d at 1050. Indeed, the Mosby court went out of its way to explain that:

11

> As a matter of policy, this Court will not countenance any system of permitting under the Firearms Act that would be committed to the unfettered discretion of an executive agency. Although the court's authority to review the decision is limited, it is not nonexistent. One does not need to be an expert in American history to understand the fault inherent in a gun-permitting system that would allow a licensing body carte blanche authority to decide who is worthy of carrying a concealed weapon. The constitutional right to bear arms would be illusory, of course, if it could be abrogated entirely on the basis of an unreviewable unrestricted licensing scheme. Such review is available through a common-law writ of certiorari.

Id. at 1050-51. And to facilitate judicial review, the Mosby court held that "the [AG] must adhere to minimum procedural requirements when rejecting an application filed under § 11-47-18," including informing a denied permit applicant of "the evidence upon which the department based its decision and the rationale for the denial." Id. at 1051.

Considering that, in Rhode Island, an unrestricted license is a privilege and not a right, these interpretive safeguards add clarity to the statute and do not mean that the law is impermissibly vague. See Ridley, 390 F.3d at 94-95 (collecting cases showing that "[e]xcessive discretion and vagueness inquiries . . . are not static inquiries, impervious to context"); see also Shuttlesworth v. City of Birmingham, 394 U.S. 147, 155 (1969) (accepting that a state Supreme Court may construe a discretionary permitting provision in a manner that satisfies due process).

Plaintiffs' overbreadth challenge fares no better. "The

overbreadth doctrine is 'a . . . type of facial challenge,' under which a law may be invalidated under the First Amendment 'as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" Hightower v. City of Boston, 693 F.3d 61, 81 (1st Cir. 2012) (quoting United States v. Stevens, 559 U.S. 460, 473 (2010)) (internal quotation marks omitted).  In harmony with these principles, the First Circuit has explicitly held that there is no overbreadth challenge in the context of the Second Amendment. Id. at 82-83 (collecting cases).  True, Plaintiffs say that their claim is an as-applied challenge, and Hightower dealt with a facial challenge.  Id.  But to the extent, if any, that an overbreadth challenge exists on an as-applied basis, the Court sees no reason why it would apply in the Second Amendment context.

### 2. Rhode Island Constitutional Due Process Claim

Defendants ask for summary judgment on Plaintiffs' Article 1, § 2 due process claim.  They argue that the claim fails "because no direct cause of action exists [to enforce it] under the state constitution."  Defs.' Mem. 43.  While the Court does not necessarily agree with that proposition, Defendants are entitled to summary judgment nonetheless.

Article 1, § 2 states in relevant part: "No person shall be deprived of life, libery or property without due process of law . . . ."  R.I. Const. art. 1, § 2.  This provision provides due

13

process protections similar to those provided by the Fourteenth Amendment.  See Doe v. Brown Univ., 253 A.3d 389, 399 (R.I. 2021).  But Rhode Island law does not provide a separate, private cause of action to enforce this provision, as federal law does to enforce the Fourteenth Amendment via § 1983.

The Rhode Island Supreme Court has held that Article 1, § 2 does not create a private cause of action for money damages.  Doe, 253 A.3d at 401.  But as Plaintiffs note, this case differs from Doe because they seek equitable relief and not damages.  Pls.' Obj. 34.  And they cite numerous cases which appear to show that Rhode Island case law places no bar to constitutional claims seeking equitable relief.  Id. at 31-32 (collecting cases); see, e.g., Moreau v. Flanders, 15 A.3d 565, 574, 581-82 (R.I. 2011) (finding plaintiffs had standing to raise constitutional claims to state action, including an Article 1, § 2 claim, in a case where plaintiffs sought declaratory and injunctive relief).

But interesting as the issue may be, whether Plaintiffs have the right to sue on the state constitutional claim is little more than academic: Because Plaintiffs' claim here mirrors their § 1983 Fourteenth Amendment claim, it fails on the merits for the same reasons discussed above.

**IV. CONCLUSION**

For the reasons explained above, Defendants are entitled to summary judgment on Counts I and II of Plaintiffs' Operative

14

Complaint.  Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment, Dkt. No. 34; and DENIES (1) Plaintiffs' Motion for Summary Judgment, Dkt. No. 31, (2) Plaintiffs' Motion in Limine, Dkt. No. 33, (3) Defendants' Motion for Judicial Notice, Dkt. No. 44, and (4) Defendants' Motion to Strike, Dkt. No. 50.

IT IS SO ORDERED.

*[signature: Wesmith]*
William E. Smith
Senior District Judge
Date: August 1, 2025